1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   FREDERICK K. LOWELL #66641
2  BRUCE A. ERICSON #76342
   ANITA D. STEARNS MAYO #142749
3  MARC H. AXELBAUM #209855
   AUGUST O. STOFFERAHN #229957
4  50 Fremont Street
   Post Office Box 7880
5  San Francisco, CA 94120-7880
   Telephone: (415) 983-1000
6  Facsimile: (415) 983-1200
   marc.axelbaum@pillsburylaw.com
7
   Attorneys for Plaintiffs
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
   _____ DIVISION
11
                                                    No. _____
12 COMMITTEE ON JOBS CANDIDATE
   ADVOCACY FUND and BUILDING
13 OWNERS AND MANAGERS                              [CIVIL RIGHTS]
   ASSOCIATION OF SAN FRANCISCO
14 INDEPENDENT EXPENDITURE                          **COMPLAINT FOR**
   POLITICAL ACTION COMMITTEE,                      **DECLARATORY AND**
15 political action committees organized under      **INJUNCTIVE RELIEF**
   the laws of California and of the City and
16 County of San Francisco,
17                            Plaintiffs,
18      vs.
19 DENNIS J. HERRERA, in his official
   capacity as City Attorney of the City and
20 County of San Francisco, KAMALA D.
   HARRIS, in her official capacity as District
21 Attorney of the City and County of San
   Francisco, the SAN FRANCISCO ETHICS
22 COMMISSION of the City and County of San
   Francisco, and CITY AND COUNTY OF
23 SAN FRANCISCO,
24                            Defendants.
25
26
27
28

1       Plaintiffs **COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND** (the

2   "JOBS FUND") and **BUILDING OWNERS AND MANAGERS ASSOCIATION OF**

3   **SAN FRANCISCO INDEPENDENT EXPENDITURE PAC** ("BOMA IE PAC")

4   (collectively, "Plaintiffs"), by and for their complaint against Defendants, allege as follows:

5                     **INTRODUCTION**

6       1.    Plaintiffs bring this action to challenge the constitutionality of the San

7   Francisco Campaign Finance Reform Ordinance (the "Ordinance") insofar as the Ordinance

8   imposes limits on contributions to organizations that make "independent expenditures"

9   supporting or opposing candidates for elective office in the City and County of San

10   Francisco (the "City").

11       2.    "'Independent expenditure' means an expenditure made by any person in

12   connection with a communication which expressly advocates the election or defeat of a

13   clearly identified candidate or the qualification, passage or defeat of a clearly identified

14   measure, or taken as a whole and in context, unambiguously urges a particular result in an

15   election but which is not made to or at the behest of the affected candidate or committee."

16   Cal. Gov. Code § 82031.

17       3.    The Ordinance severely limits independent political speech by preventing

18   persons from associating with others for the purpose of making independent expenditures

19   supporting or opposing candidates for elective office in the City.

20       4.    Under the Ordinance, a person can contribute no more than a total of $500

21   per year to a particular political committee for the purpose of making independent

22   expenditures in support of or opposition to all the candidates running for City office—no

23   matter how many offices are open or how many candidates are competing for those offices.

24   San Francisco Campaign & Government Conduct Code ("SFCGCC") § 1.114(c)(1).

25       5.    The Ordinance also severely limits independent political speech by

26   prohibiting a person from giving more than $3,000 in the aggregate to *all* independent

27   expenditure committees per calendar year (in other words, a person cannot contribute $500

28   apiece to more than six independent expenditure committees).  SFCGCC § 1.114(c)(2).

1    6.    The Ordinance severely limits the constitutional rights of individual

2    contributors and organizations to participate in the political process by banding together to

3    make expenditures for independent electoral communications.

4    7.    The Ordinance also impermissibly discriminates against persons acting in

5    concert to express their views.

6    8.    Under the Ordinance, a rich individual acting alone can spend as much as he

7    or she wants on independent expenditures, but persons of more modest means cannot pool

8    their resources to do the same thing.

9    9.    In these respects, the Ordinance violates the guarantees of free speech and

10    association contained in the First Amendment to the United States Constitution (as made

11    applicable to states and municipalities by the Fourteenth Amendment to the United States

12    Constitution).

13    **JURISDICTION**

14    10.    This Court has subject matter jurisdiction over this action pursuant to

15    28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a).

16    11.    This action is brought to prevent deprivation of Plaintiffs' free speech and

17    associational rights, which arise under the laws and Constitution of the United States,

18    including the First and Fourteenth Amendments and 42 U.S.C. § 1983.

19    12.    Plaintiffs have been and are threatened with the deprivation of these rights

20    by the operation of certain campaign finance provisions set forth in the Ordinance, which is

21    codified in the SFCGCC.

22    13.    A true and correct copy of the Ordinance is attached to this complaint as

23    Exhibit A, and is incorporated herein by reference.

24    **VENUE AND INTRADISTRICT ASSIGNMENT**

25    14.    Venue in this district is proper under 28 U.S.C. §§ 1391(b).  Defendants

26    Dennis J. Herrera ("Herrera"), in his official capacity as City Attorney of the City and

27    County of San Francisco, Kamala D. Harris ("Harris"), in her official capacity as District

28    Attorney for the City and County of San Francisco, the San Francisco Ethics Commission

1   (the "Ethics Commission"), and the City and County of San Francisco (collectively,

2   "Defendants") maintain their principal offices in and conduct official business in the City

3   and County of San Francisco, State of California, which is contained in this judicial district.

4   Additionally, the events giving rise to the claims asserted by Plaintiffs have occurred or will

5   occur in this district.

6       15.     Pursuant to Civil Local Rules 3-2(c), 3-2(d) and 3-5(b), this action should be

7   assigned to the San Francisco Division or the Oakland Division.

8                                    **THE PARTIES**

9       16.     Plaintiff JOBS FUND was established as a general purpose political action

10  committee in 1999 for the purpose of making independent expenditures to support City

11  candidates who support economic development.

12      17.     Committee on JOBS ("JOBS"), a California nonprofit mutual benefit

13  corporation founded in 1991, created the JOBS FUND as part of its mission to enhance and

14  revitalize the business conditions and environment for individuals and organizations doing

15  business in San Francisco.  JOBS has received recognition of its tax-exempt status as a

16  mutual benefit corporation pursuant to Internal Revenue Code Section 501(c)(6) (26 U.S.C.

17  § 501(c)(6)).

18      18.     BOMA IE PAC was formed as a general purpose political action committee

19  in 1999 for the purpose of making independent expenditures to support candidates for local

20  elective office who will promote the goals of the commercial real estate industry, the

21  broader business community and the residents of San Francisco.

22      19.     BOMA IE PAC was organized by the Building Owners and Managers

23  Association of San Francisco ("BOMA-SF"), a California nonprofit mutual benefit

24  corporation.  BOMA-SF was incorporated under the non-profit laws of California in 1939

25  and has received recognition of its tax-exempt status as a mutual benefit corporation

26  pursuant to Internal Revenue Code Section 501(c)(6).

27

28

1    20.    The primary goal of BOMA-SF is to advance the commercial real estate

2  industry in San Francisco, San Mateo, Marin and Sonoma Counties through advocacy,

3  professional development and information exchange.

4    21.    Plaintiffs solicit funds from individuals and corporations for independent

5  expenditures in support of or in opposition to candidates and ballot measures.  Plaintiffs

6  also support political education efforts.

7    22.    As described below, Plaintiffs seek to make independent expenditures in

8  connection with the 2007 San Francisco elections, but are and will be severely limited in

9  doing so by the operation of Sections 1.114(c)(1) and (2) of the Ordinance.

10    23.    Defendant Herrera is the City Attorney of the City and County of San

11  Francisco and is responsible for enforcing the civil penalties set forth in the Ordinance.

12  Defendant Herrera is sued in his official capacity as City Attorney.  Ordinance §§ 1.104(g),

13  1.168.

14    24.    Defendant Harris is the District Attorney for the City and County of San

15  Francisco and is responsible for enforcing the criminal penalties set forth in the Ordinance.

16  Defendant Harris is sued in her official capacity as District Attorney.  Ordinance

17  §§ 1.104(g), 1.168.

18    25.    Defendant Ethics Commission is the City department that has the specific

19  authority to administer, enforce and provide advice concerning the Ordinance.  Ordinance

20  §§ 1.104(g), 1.164, 1.168.  The Ethics Commission is the department specified in the

21  Ordinance for filing the various campaign disclosure reports required by the Ordinance.

22    26.    Defendant the City is the municipal corporation known by the name of San

23  Francisco and includes all its divisions, commissions, departments, officers, and employees

24  who are charged with enforcement of campaign finance laws, including the City Attorney,

25  District Attorney and the Ethics Commission.

26                              **GENERAL ALLEGATIONS**

27    27.    On November 6, 2007, the City and County of San Francisco will hold

28  elections for the offices of Mayor, District Attorney and Sheriff.

1    28.    Plaintiffs wish to make various independent expenditures to support or

2    oppose candidates in the 2007 election, as they have done in past San Francisco elections.

3    29.    The Ordinance will restrict political activity in connection with this election.

4    30.    The San Francisco Board of Supervisors first enacted campaign finance

5    restrictions in 1973, when it passed a wide-ranging ordinance that, among other things,

6    established contribution and expenditure limits.

7    31.    Since 1973 by successive amendments the Ordinance has become more and

8    more restrictive.

9    32.    By 1999, as the Ordinance was then interpreted by the San Francisco City

10    Attorney, the Ordinance imposed limits on contributions to persons and committees who

11    would utilize those funds to make independent expenditures to support or oppose

12    candidates for City office.

13    33.    In 1999, this Court held that the version of the Ordinance then in effect was

14    unconstitutional insofar as it restricted contributions to independent expenditure committees

15    and enjoined its enforcement. *See* Order Granting Plaintiffs' Motion for a Preliminary

16    Injunction, filed September 8, 1999 in *San Franciscans for Sensible Government, et al. v.*

17    *Louise Renne, et al.,* No. C-99-2456-CW (N.D. Cal.) ("*San Franciscans for Sensible*

18    *Government*").

19    34.    The Ninth Circuit affirmed the issuance of that preliminary injunction. *San*

20    *Franciscans for Sensible Government, et al. v. Louise Renne, et al.,* No. 99-16995 (9th Cir.

21    Oct. 20, 1999).

22    35.    Since then, successive amendments to the Ordinance have established

23    restrictions on independent expenditures similar to those enjoined in *San Franciscans for*

24    *Sensible Government,* as discussed below.

25    36.    As currently constituted, the Ordinance establishes a comprehensive and

26    restrictive campaign finance law that applies to all candidates seeking municipal elective

27    office in San Francisco, all persons who contribute to their campaigns, and all political

28

1    committees active in San Francisco, including committees that make independent

2    expenditures.  Ordinance §§ 1.104(a), 1.104(f), 1.100(b)(7).

3        37.    The campaign finance scheme created by the Ordinance severely limits the

4    amount of independent political speech permitted during San Francisco elections.

5    Independent speech by organizations is restricted by limiting the amount individuals and

6    other entities can contribute to those groups.

7        38.    The Ordinance severely restricts the rights of individuals to associate freely

8    with others when engaging in political speech.  By restricting the amount an individual can

9    contribute to independent expenditure committees, the Ordinance discriminates against

10    individuals who would band together to engage in political speech.

11        39.    Section 1.114(c)(1) of the Ordinance provides that "[n]o person shall make,

12    and no committee treasurer shall solicit or accept, any contribution which will cause the

13    total amount contributed by such person to the committee to exceed $500 per calendar

14    year."

15        40.    Section 1.114(c)(2) provides that "[n]o person shall make, and no committee

16    treasurer shall solicit or accept, any contribution which will cause the total amount

17    contributed by such person to all committees to exceed $3000 per calendar year."

18        41.    For purposes of these limits, the Ordinance defines "committee" to "mean

19    any committee making expenditures to support or oppose a candidate, but shall not include

20    candidates' campaign committees."  Ordinance § 1.114(c)(3).

21        42.    The Ordinance, in defining "committee," also makes reference to the

22    California Government Code, see Ordinance § 1.104(d), which defines "committee" as

23    "any person or combination of persons who directly or indirectly" receives contributions of

24    $1,000 or more a year, or makes "campaign contributions" of $10,000 or more a year, or

25    makes "independent expenditures" of $1,000 or more a year.  Gov't Code § 82013.

26        43.    Plaintiffs already receive contributions of $1,000 or more a year and thus

27    qualify as "committees" under Government Code Section 82013 and the Ordinance.

28

1    44.    Past contributors have informed Plaintiffs that they would have given more

2    than $500 per calendar year to Plaintiffs if it were not for the limits imposed by Section

3    1.114(c) of the Ordinance.

4    45.    These contributors also have informed Plaintiffs that they would give more

5    than $500 during 2007 to Plaintiffs to support independent expenditures Plaintiffs intend to

6    make in support of or in opposition to candidates in the 2007 San Francisco elections, but

7    for the limits imposed by Section 1.114(c) of the Ordinance.

8    46.    Plaintiffs want to solicit and receive more than $500 during 2007 from

9    donors to make independent expenditures in support of or against certain candidates in the

10    2007 elections.

11    47.    Plaintiffs want to solicit and receive contributions from donors who may

12    also be planning to give, or have already given, $3000 to other committees during 2007, so

13    that they can make independent expenditures in support of or against certain candidates in

14    the 2007 elections.

15    48.    The Ordinance restricts and will continue to restrict Plaintiffs' ability to

16    make independent expenditures in support of or in opposition to San Francisco candidates.

17    49.    It is extremely difficult for Plaintiffs to finance any of their intended

18    communications because the severe limits imposed by Section 1.114(c) of the Ordinance

19    preclude them from raising sufficient funds to make independent expenditures.

20    50.    Two judges in this district have recently enjoined the enforcement of similar

21    limits on contributions to independent expenditure committees. *See* Dkt. 21, *OakPAC v.*

22    *City of Oakland*, No. C-06-6366-MJJ (Oct. 19, 2006); Dkt. 46, *San Jose Silicon Valley*

23    *Chamber of Commerce Political Action Committee v. City of San Jose*, No. C-06-4252-JW,

24    *appeal docketed*, USCA No. 06-17001 (9th Cir. Oct. 25, 2006).

25    51.    As noted in paragraphs 32 through 34 above, a third judge in this district

26    previously enjoined San Francisco from enforcing a prior version of the Ordinance, and the

27    Ninth Circuit affirmed the issuance of that preliminary injunction.

28

1   52.    Plaintiffs and others in similar positions are currently attempting to chart a

2   course of action for fundraising and making independent expenditures for the municipal

3   election of November 6, 2007.

4   53.    The limits set forth in the Ordinance have had and will continue to have a

5   chilling effect on the political speech and association of Plaintiffs and other political

6   committees, political parties and individuals who would otherwise make or accept

7   contributions for independent expenditures.

8   54.    Sections 1.114(c)(1) and (2) of the Ordinance are facially invalid under the

9   First and Fourteenth Amendments to the United States Constitution.

10   55.    In addition, as applied and implemented by Defendants, Sections 1.114(c)(1)

11   and (2) of the Ordinance are invalid under the First and Fourteenth Amendments to the

12   United States Constitution.

13   56.    Plaintiffs have suffered and will continue to suffer irreparable injury as a

14   result of Defendants' conduct.

15   57.    Plaintiffs have no plain, speedy or adequate remedy at law.

16                                    **FIRST CLAIM**

17                        **(Declaratory Relief – 28 U.S.C. § 2201)**

18                                **(Against All Defendants)**

19   58.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 57

20   above.

21   59.    An actual controversy has arisen and now exists between Plaintiffs and

22   Defendants relating to the constitutionality of Defendants' implementation, application and

23   enforcement of Sections 1.114(c)(1) and (2) of the Ordinance in the November 2007

24   election in San Francisco.

25   60.    Plaintiffs contend that the Ordinance, on its face and as implemented and

26   enforced by Defendants, violates the First and Fourteenth Amendments to the United States

27   Constitution.

28

1    61.    An actual controversy exists in that Plaintiffs contend that Sections

2   1.114(c)(1) and (2) are unconstitutional and Defendants contend that Sections 1.114(c)(1)

3   and (2) are constitutional.

4    62.    A judicial declaration providing a clear explication of Plaintiffs' rights and

5   Defendants' duties with respect to the election is necessary and appropriate at this time.

6    63.    Plaintiffs seek a judicial declaration that Defendants may not implement or

7   enforce Sections 1.114(c)(1) and (2) of the Ordinance.

8                                  **SECOND CLAIM**

9        **(First and Fourteenth Amendments to the United States Constitution)**

10                          **(Against All Defendants)**

11    64.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 57

12   above.

13    65.    The provisions of the Ordinance described above violate Plaintiffs' rights of

14   free speech and association guaranteed by the First Amendment, as incorporated through

15   the Fourteenth Amendment, to the United States Constitution.

16                                  **THIRD CLAIM**

17   **(42 U.S.C. § 1983 – Interference with First and Fourteenth Amendment Rights)**

18                          **(Against All Defendants)**

19    66.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1

20   through 57 above.

21    67.    The aforesaid actions of Defendants in implementing and enforcing the

22   Ordinance were, are, and will be undertaken under color of statutes, regulations, customs

23   and usages of defendant City and County of San Francisco within the meaning of 42 U.S.C.

24   § 1983.

25    68.    Said actions of Defendants will deprive Plaintiffs of the rights, privileges

26   and immunities secured to them by the Constitution and laws, including but not limited to

27   Plaintiffs' rights to speak, to associate, and to participate fully and equally in the political

28   process.

1    69.    By implementing and enforcing Sections 1.114(c)(1) and (2) of the

2    Ordinance, Defendants have violated and/or will violate Plaintiffs' rights to free speech and

3    freedom of association, and those of all San Francisco voters, under the First Amendment,

4    as incorporated through the Fourteenth Amendment, to the United States Constitution.

5    70.    Plaintiffs therefore request an injunction against the implementation and

6    enforcement of Sections 1.114(c)(1) and (2) of the Ordinance.

7                                              **PRAYER**

8        WHEREFORE, Plaintiffs pray for judgment as follows:

9    1.    A declaration, pursuant to 28 U.S.C. § 2201, that Sections 1.114(c)(1) and

10    (2) of the Ordinance are unconstitutional—facially and as implemented and enforced by

11    Defendants—under the First and Fourteenth Amendments to the United States Constitution.

12    2.    A temporary restraining order, a preliminary injunction and a permanent

13    injunction, enjoining Defendants, their agents, servants and employees, and all persons

14    acting under them, in concert with or for them from applying Sections 1.114(c)(1) and (2)

15    of the Ordinance, as implemented and enforced by Defendants, to the November 2007 and

16    future elections.

17    3.    Injunctive relief against Defendants, their agents, servants and employees,

18    and all persons acting under them, enjoining application of any portion of the Ordinance

19    that is contrary to state or federal law, or is otherwise found invalid.

20    4.    For Plaintiffs' costs of suit and reasonable attorneys' fees as permitted under

21    law.

22    //

23    //

24    //

25    //

26    //

27    //

28    //

1    5.    For such other and further relief as the Court deems just and reasonable.

2    Dated:  June 18, 2007.

3                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                         FREDERICK K. LOWELL
4                                        BRUCE A. ERICSON
                                         ANITA D. STEARNS MAYO
5                                        MARC H. AXELBAUM
                                         AUGUST O. STOFFERAHN
6                                        50 Fremont Street
                                         Post Office Box 7880
7                                        San Francisco, CA 94120-7880

8                                        By  _____
                                                Marc H. Axelbaum
9
                                         Attorneys for Plaintiffs COMMITTEE ON JOBS
10                                       CANDIDATE ADVOCACY FUND and
                                         BUILDING OWNERS AND MANAGERS
11                                       ASSOCIATION OF SAN FRANCISCO
                                         INDEPENDENT EXPENDITURE PAC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **CERTIFICATE OF INTERESTED PERSONS**

2    Pursuant to Federal Rule of Civil Procedure 7.1 and Civil L.R. 3-16, the

3    undersigned certifies that the following listed persons, associations of persons, firms,

4    partnerships, corporations (including parent corporations) or other entities (i) have a

5    financial interest in the subject matter in controversy or in a party to the proceeding, or (ii)

6    have a non-financial interest in that subject matter or in a party that could be substantially

7    affected by the outcome of this proceeding:

8    **COMMITTEE ON JOBS** (described above)

9    **BUILDING OWNERS AND MANAGERS ASSOCIATION OF SAN**

10    **FRANCISCO** (described above).

11    Dated:  June 18, 2007.

12

13                                    PILLSBURY WINTHROP SHAW PITTMAN
                                      LLP
                                      FREDERICK K. LOWELL
14                                    BRUCE A. ERICSON
                                      ANITA D. STEARNS MAYO
15                                    MARC H. AXELBAUM
                                      50 Fremont Street
16                                    Post Office Box 7880
                                      San Francisco, CA 94120-7880
17

18                                    By _____
                                            Marc H. Axelbaum
19
                                      Attorneys for Plaintiffs
20                                    COMMITTEE ON JOBS CANDIDATE
                                      ADVOCACY FUND and BUILDING OWNERS
21                                    AND MANAGERS ASSOCIATION OF SAN
                                      FRANCISCO INDEPENDENT EXPENDITURE
22                                    PAC

23

24

25

26

27

28

**EXHIBIT A**

San Francisco Campaign and Governmental Conduct Code (10.14.06 update)
CHAPTER 1: CAMPAIGN FINANCE

Sec. 1.100. Purpose and Intent.
Sec. 1.102. Citation.
Sec. 1.103. Amendment or Repeal of Chapter.
Sec. 1.104. Definitions.
Sec. 1.106. Adoption of General Law--Exceptions.
Sec. 1.107. Training for Treasurers
Sec. 1.108. Candidate Campaign Contribution Trust Accounts and Campaign
Contingency Accounts.
Sec. 1.110. Campaign Statements--Public Access.
Sec. 1.112. Electronic Campaign Disclosure.
Sec. 1.113. Disclosure Requirements During Signature Gathering Periods for Initiatives,
Referenda and Recalls.
Sec. 1.114. Contribution Limits.
Sec. 1.115. Coordination of Expenditures.
Sec. 1.116. Limits on Loans to Candidates.
Sec. 1.118. Payment of Accrued Expenses.
Sec. 1.120. Contribution Limits--Post-Election Legal Proceedings.
Sec. 1.122. Solicitation or Acceptance of Campaign Contributions--Limitations.
Sec. 1.126. Contribution Limits--Contractors Doing Business with the City, the Unified
School District and the San Francisco Community College District.
Sec. 1.128. Acceptance or Rejection of Voluntary Expenditure Ceilings.
Sec. 1.130. Amount of Expenditure Ceilings.
Sec. 1.134. Expenditure Ceilings Lifted.
Sec. 1.134.5. Lifting of Individual Expenditure Ceilings.
Sec. 1.135. Supplemental Reporting.
Sec. 1.136. Public Financing of Election Campaigns.
Sec. 1.138. Supervisor Election Campaign Fund; Appropriation of Funds.
Sec. 1.138.5. Mayoral Election Campaign Fund; Appropriation of Funds.
Sec. 1.140. Eligibility to Receive Public Financing--Candidates for the Board of
Supervisors.
Sec. 1.140.5. Eligibility to Receive Public Financing--Candidates for Mayor.
Sec. 1.142. Process for Establishing Eligibility; Certification by the Ethics Commission.
Sec. 1.144. Disbursement of Public Funds--Candidates for the Board of Supervisors.
Sec. 1.144.5. Disbursement of Public Funds--Candidates for Mayor.
Sec. 1.146. Termination of Payments.
Sec. 1.148. Restrictions on Use of Public Funds; Unexpected Public Funds.
Sec. 1.150. Audit; Repayment.
Sec. 1.152. Supplemental Reporting in Elections for Board of Supervisors and Mayor.
Sec. 1.154. Insufficient Funds in Supervisor Election Campaign Fund.
Sec. 1.156. Report to the Mayor and Board of Supervisors.
Sec. 1.158. Implementing Regulations; Forms.
Sec. 1.160. No Limitation of Candidate Liability.
Sec. 1.161. Disclosure and Filing Requirements for Mass Mailings.
Sec. 1.161.5. Disclosure and Filing Requirements for Electioneering Communications.

Sec. 1.162. Independent Expenditures for Mass Mailings.
Sec. 1.162.5 Disclosure Requirements—Campaign Advertisements.
Sec. 1.163. Disclosure Requirements—Recorded Telephone Messages.
Sec. 1.163.5. Distribution of Campaign Advertisements Containing False Endorsements.
Sec. 1.164. Duties of Ethics Commission.
Sec. 1.166. Duties of Enforcement Authority.
Sec. 1.168. Enforcement; Advice.
Sec. 1.170. Penalties.
Sec. 1.172. Extension of Deadlines that Fall on Weekends and Holidays.
Sec. 1.174. Effect of Violation on Certification of Election Results.
Sec. 1.176. Rules of Construction.
Sec. 1.178. Severability.

SEC. 1.100. PURPOSE AND INTENT.
(a)  Huge sums of moneys often are necessary to finance American election campaigns. Inherent to the high cost of election campaigning is the problem of improper influence, real or potential, exercised by campaign contributors over elected officials. In addition, this fundraising distracts public officials seeking reelection from focusing upon important public matters, encourages contributions which may have a corrupting influence, and gives incumbents an unfair fundraising advantage over potential challengers. These developments undermine the integrity of the governmental process, the competitiveness of campaigns and public confidence in local officials.
(b)  It is the purpose and intent of the People of the City and County of San Francisco in enacting this Chapter to:
(1)  Place realistic and enforceable limits on the amount individuals may contribute to political campaigns in municipal elections and to provide full and fair enforcement of all the provisions in this Chapter;
(2)  Ensure that all individuals and interest groups in our city have a fair opportunity to participate in elective and governmental processes;
(3)  Create an incentive to limit overall expenditures in campaigns, thereby reducing the pressure on candidates to raise large campaign war chests for defensive purposes beyond the amount necessary to communicate reasonably with voters;
(4)  Reduce the advantage of incumbents and thus encourage competition for elective office;
(5)  Allow candidates and officeholders to spend a smaller proportion of their time on fundraising and a greater proportion of their time dealing with issues of importance to their constituents' community;
(6)  Ensure that serious candidates are able to raise enough money to communicate their views and positions adequately to the public, thereby promoting public discussion of the important issues involved in political campaigns;
(7)  Limit contributions to candidates and committees, including committees that make independent expenditures, to eliminate or reduce the appearance or reality that large contributors may exert undue influence over elected officials;
(8)  Assist voters in making informed electoral decisions and ensure compliance with campaign contribution limits through the required filing of campaign statements detailing the sources of campaign contributions and how those contributions have been expended;

(9)  Make it easier for the public, the media and election officials to efficiently review and compare campaign statements by requiring committees that meet certain financial thresholds to file copies of their campaign statements on computer diskettes or other designated electronic media;

(10)  Help restore public trust in governmental and electoral institutions; and

(11)  Help ensure the integrity of the election process by prohibiting campaign advertisements that contain knowing false endorsements of current and former public officials, candidates, political clubs, and organizations.  Such false endorsements undermine the integrity of the electoral process by misleading and confusing voters about the actual support for or opposition to candidates or ballot measures and it is too burdensome for individual voters, inundated with campaign messages, to verify the accuracy of such claims and for persons whose positions are misrepresented to correct the misrepresentations close in time to the election.

(c)  This Chapter is enacted in accordance with the terms of Sections 5 and 7 of Article XI of the Constitution of the State of California and Section 1.101 of the Charter of the City and County of San Francisco.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation Former Administrative Code Section 16.501; amended by Ord. 114-76, App. 4/2/76; Proposition N, 11/7/95)


SEC. 1.102. CITATION.

This Chapter may be cited as the San Francisco Campaign Finance Reform Ordinance. (Added by Ord. 71-00, File No. 000358, App. 4/28/2000) (Derivation Former Administrative Code Section 16.502; amended by Ord. 114-76, App. 4/2/76; Proposition N, 11/7/95)


SEC. 1.103. AMENDMENT OR REPEAL OF CHAPTER.

The voters may amend or repeal this Chapter. The Board of Supervisors may amend this Chapter if all of the following conditions are met:

(a)  The amendment furthers the purposes of this Chapter;

(b)  The Ethics Commission approves the proposed amendment in advance by at least a four-fifths vote of all its members;

(c)  The proposed amendment is available for public review at least 30 days before the amendment is considered by the Board of Supervisors or any committee of the Board of Supervisors; and

(d)  The Board of Supervisors approves the proposed amendment by at least a two-thirds vote of all its members.

(Added by Ord. 3-06, File No. 051439, App. 1/20/2006)


SEC. 1.104. DEFINITIONS.

Whenever in this Chapter the following words or phrases are used, they shall mean:

(a)  "Candidate" shall mean any individual listed on the ballot for election to any City elective office or who otherwise has taken affirmative action to seek nomination or election to such office. The term "candidate" shall also mean the candidate's campaign committee.

(b) "Charitable organization" shall mean an entity exempt from taxation pursuant to Title 26, Section 501 of the United State Code.

(c) "City elective office" shall mean the offices of Mayor, Member of the Board of Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor, Public Defender, Member of the Board of Education of the San Francisco Unified School District and Member of the Governing Board of the San Francisco Community College District. The Board of Supervisors shall be deemed to consist of eleven separate City elective offices, the San Francisco Community College District shall be deemed to consist of seven separate City elective offices, and the Board of Education of the San Francisco Unified School District shall be deemed to consist of seven separate City elective offices.

(d) "Committee" shall be defined as set forth in the Government Code of the State of California (commencing at Section 81000).

(e) "Contribution" shall be defined as set forth in Government Code of the State of California (commencing at Section 81000); provided, however, that "contribution" shall include loans of any kind or nature.

(f) "Election" shall mean any primary, general, or special municipal election held in the City and County of San Francisco for City elective office, regardless of whether the election is conducted by district or Citywide.

(g) "Enforcement authority" shall mean the District Attorney of the City and County of San Francisco for criminal enforcement, the City Attorney for civil enforcement, and the Ethics Commission for administrative enforcement. Nothing in this Chapter shall be construed as limiting the authority of any law enforcement agency or prosecuting attorney to enforce the provisions of this Chapter under any circumstances where such law enforcement agency or prosecuting attorney otherwise has lawful authority to do so.

(h) "Ethics Commission" shall mean the San Francisco Ethics Commission.

(i) "Executive Director" shall mean the Executive Director of the Ethics Commission, or the Executive Director's designee.

(j) "Individual Expenditure Ceiling" shall mean the expenditure ceiling established for each individual candidate for Mayor who has been certified by the Ethics Commission as eligible to receive public funds under this Chapter.

(k) "Matching contribution" shall mean a contribution up to $500, that is made by an individual, other than the candidate, who is a resident of San Francisco. Matching contributions shall not include loans, contributions that are received more than 18 months before the date of the election, contributions made by the candidate's immediate family or qualifying contributions, and must comply with all requirements of this Chapter. Matching contributions under $100 that are not made by written instrument must be accompanied by written documentation of the contributor's name and address.

(l) "Measure" shall mean any City, San Francisco Unified School District or San Francisco Community College District referendum, recall or ballot proposition, whether or not it qualifies for the ballot.

(m) "Person" shall mean any individual, partnership, corporation, association, firm, committee, club or other organization or group of persons, however organized.

(n) "Qualified campaign expenditure" for candidates includes all of the following:

(1)  Any expenditure made by a candidate, or by a committee controlled by the candidate, for the purpose of influencing or attempting to influence the actions of the voters for the election of the candidate to City elective office.

(2)  A nonmonetary contribution provided to the candidate, officeholder or committee controlled by the candidate.

(3)  The total cost actually paid or incurred by the candidate or controlled committee of the candidate for a slate mailing or other campaign literature produced or authorized by more than one candidate.

(4)  Expenses incurred, but for which payment has not yet been made.

(5)  Expenses associated with complying with applicable laws, including but not limited to the California Political Reform Act, Government Code Section 81000, et seq., and the provisions of this Chapter.

(6)  "Qualified campaign expenditure" shall not include filing fees, expenses incurred in connection with an administrative or judicial proceeding, payments for administrative, civil or criminal fines, including late filing fines, costs incurred after the election that do not directly affect the outcome of the election, including but not limited to utility bills, expenses associated with an audit, and expenses related to preparing post-election campaign finance disclosure reports as required by the California Political Reform Act, Government Code section 81000, et seq., and the provisions of this Chapter, or for inaugural activities or officeholder expenses.

(o)  "Qualifying contribution" shall mean a contribution of not less than $10 and not more than $100 that is made by an individual who is a resident of San Francisco and that complies with all requirements of this Chapter. Qualifying contributions shall not include loans, contributions that are received more than 18 months before the date of the election or contributions made by the candidate or the candidate's immediate family. Qualifying contributions under $100 that are not made by written instrument must be accompanied by written documentation of the contributor's name and address.

(p)  "Recorded telephone message" shall mean a recorded audio message that expressly supports or opposes a candidate for City elective office that is distributed by telephone.

(q)  "Surplus funds" shall mean funds remaining in a candidate's campaign account at the time the candidate leaves City elective office, or at the end of the post-election reporting period following the defeat of the candidate for City elective office, whichever occurs last, and funds remaining in the campaign account of a committee primarily formed to support or oppose a measure at the end of the post-election reporting period following the election at which the measure appeared on the ballot.

(r)  "Total Opposition Spending" shall mean the sum of any expenditures made or expenses incurred by any person or persons for the purpose of making independent expenditures, electioneering communications or member communications in opposition to a specific candidate for Mayor.

(s)  "Total Supportive Funds" shall mean the sum of all contributions received by a candidate for Mayor other than any funds in the candidate's Campaign Contingency Account, plus the expenditures made or expenses incurred by any person or persons for the purpose of making independent expenditures, electioneering communications or member communications in support of that same candidate.

(t)  "Trust Account Limit," shall mean the amount of funds in the Campaign Contribution Trust Account of a candidate for Mayor who has been certified by the

5

Ethics Commission as eligible to receive public funds under this Chapter such that the expenditure of this amount would cause the candidate to reach, but not exceed, the candidate's Individual Expenditure Ceiling. The Trust Account Limit shall be reduced as the candidate spends money and shall be increased when his or her Individual Expenditure Ceiling increases.

(u) "Voter" means an individual registered to vote in San Francisco.

(v) "Written instrument" means a check, credit card receipt, or record of electronic transfer of funds.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 187-01, File No. 010779, App. 8/31/2001; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation Former Administrative Code Section 16.503; amended by Ord. 361-80, App. 8/5/80; Ord. 365-94 App. 10/28/94; Proposition N, 11/7/95)

SEC. 1.106. ADOPTION OF GENERAL LAW--EXCEPTIONS.

Except as otherwise provided in, or inconsistent with, this Chapter or other provisions of local law, the provisions of the Government Code of the State of California (commencing at Section 81000), relating to local elections including any subsequent amendments, are hereby incorporated as part of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.504; amended by Ord. 114-76, App. 4/2/76)

SEC. 1.107. TRAINING FOR TREASURERS.

(a) Training Requirements.

(1) Candidates. Every candidate for City elective office and their treasurers shall attend a training program conducted or sponsored by the Ethics Commission prior to each election at which the candidate's name will appear on the ballot.

(2) Treasurers. Every committee treasurer shall attend the next training program conducted or sponsored by the Ethics Commission after the date the committee files either its original statement of organization or an amendment to a statement of organization designating a new treasurer.

(b) Exception. An individual who serves as the treasurer for more than one committee is not required to attend a training required by subsection (a) if that individual has attended such a training within the previous 12 months.

(c) Definition. For the purposes of this section, "committee" shall mean any committee that: (1) qualifies as committee pursuant to subdivision (a) of Section 82013 of the California Government Code as incorporated into this Chapter by Section 1.104; and (2) is required to file its semi-annual campaign statements with the Ethics Commission. (Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.108. CANDIDATE CAMPAIGN CONTRIBUTION TRUST ACCOUNTS AND CAMPAIGN CONTINGENCY ACCOUNTS.

(a) CANDIDATE CAMPAIGN CONTRIBUTION TRUST ACCOUNTS.

(1)  Establishment of Account. Each treasurer for a candidate shall establish a campaign contribution trust account for the candidate at an office of a bank located in the City and County of San Francisco, the account number and branch identification of which shall be filed with the Ethics Commission within 10 days of the establishment of the account. All of the expenditures by the candidate for the City elective office sought shall be made from that account.

(2)  Prohibition on Multiple Accounts. All funds, services or in-kind contributions received by a City elective officer, or by any person or committee on behalf of a City elective officer, for expenses incurred directly in connection with carrying out the usual and necessary duties of holding office shall be deposited, credited or otherwise reported to the officer's campaign contribution trust account and shall be subject to the contribution limits in Section 1.114 of this Chapter. Nothing in this Section shall prohibit an officer from spending personal funds on official or related business activities.

(3)  Account Limits. A candidate for Mayor who has been certified by the Ethics Commission as eligible to receive public funds under this Chapter shall not, at any time, have an amount of funds greater than the candidate's Trust Account Limit in his or her Campaign Contribution Trust Account.

(b)  CAMPAIGN CONTINGENCY ACCOUNTS FOR CANDIDATES FOR MAYOR.

(1)  Notwithstanding any other section of this Code, including subsection (a)(2), a candidate for Mayor who has been certified by the Ethics Commission as eligible to receive public funds under this Chapter may maintain a Campaign Contingency Account separate from his or her Campaign Contribution Trust Account into which he or she may deposit contributions in anticipation of the candidate's Individual Expenditure Ceiling being raised. All contributions deposited into this account shall be reported as if it were deposited into the candidate's Campaign Contribution Trust Account.

(2)  No expenditures shall be made from a Campaign Contingency Account established pursuant to this section. Funds may be transferred between a candidate's Campaign Contingency Account and the candidate's Campaign Contribution Trust Account, provided that the amount of funds in the candidate's Campaign Contribution Trust Account does not exceed the candidate's Trust Account Limit. All funds that qualify as matching contributions and are transferred from the Campaign Contingency Account to the Campaign Contribution Trust Account shall be eligible to be matched with public funds in accordance with the procedures set forth in this Chapter. Within 10 days after the date of the election, the candidate shall turn over all funds in the Campaign Contingency Account to the Mayoral Election Campaign Fund.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.505; amended by Ord. 114-76, App. 4/2/76; Proposition N, 11/7/95; Ord. 386-95, App. 12/14/95)


SEC. 1.110. CAMPAIGN STATEMENTS--PUBLIC ACCESS.

(a)  INSPECTION AND COPYMAKING. Campaign statements are to be open for public inspection and reproduction at the office of the Ethics Commission during regular business hours and such additional hours as the Ethics Commission determines

appropriate. The Commission shall provide public notice of the hours that the office is open for inspection and reproduction.

(b) RETENTION. Every campaign statement required to be filed in accordance with Section 1.106 shall be preserved by the Ethics Commission for the period required under Section 81009 of the California Government Code and any subsequent amendments thereto, or such additional periods as the Ethics Commission determines appropriate, provided that the period of retention is not less than eight years from the date the statement was required to be filed.

(Formerly Secs. 1.110 and 1.112; added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.506; amended by Ord. 114-76, App. 4/2/76; Ord. 386-95, App. 12/14/95)

SEC. 1.112. ELECTRONIC CAMPAIGN DISCLOSURE.

(a) FILING ELECTRONIC CAMPAIGN STATEMENTS.

(1) Filing Electronic Copies of Campaign Statements. Whenever any committee that meets the requirements of Subsection (b) of this Section is required by this Chapter or the California Political Reform Act (Government Code Section 81000 et seq.) to file a campaign disclosure statement or report with the Ethics Commission, the committee shall file at the same time a copy of the statement or report in an electronic format with the Ethics Commission, provided the Ethics Commission has prescribed the format at least 60 days before the statement or report is due to be filed.

(2) Continuous Filing of Electronic Statements. Once a committee is subject to the electronic filing requirements imposed by this Section, the committee shall remain subject to the electronic filing requirements, regardless of the amount of contributions received or expenditures made during each reporting period, until the committee files a termination statement pursuant to this Chapter and the California Political Reform Act (Government Code Section 81000 et seq.).

(3) Disclosure of Expenditure Dates. All electronic statements filed under this Section shall include the date any expenditure required to be reported on the statement was incurred, provided that the Commission's forms accommodate the reporting of such dates.

(b) COMMITTEES SUBJECT TO ELECTRONIC FILING REQUIREMENTS. A committee is subject to this Section if the committee is: (1) required to file a statement of organization under this Chapter and the California Political Reform Act (Government Code Sections 81000 et seq.); and (2) is controlled by a candidate, or is formed or exists primarily to support or oppose a candidate, or is formed or exists primarily to support or oppose a ballot measure which is being voted on only in the City and County, or is a general purpose committee active only in the City and County; and (3) receives contributions, or makes independent expenditures, totaling $5,000 or more in a calendar year.

(Added by Proposition O, 11/7/2000; amended by Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Former Sec. 1.112 was added by Ord. 114-76, App. 4/2/76; amended by Ord. 386-95, App. 12/14/95; renumbered by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000)

SEC. 1.113. DISCLOSURE REQUIREMENTS DURING SIGNATURE GATHERING
PERIODS FOR INITIATIVES, REFERENDA AND RECALLS.

(a)  In order to ensure that any person interested in the finances of any committee that is
raising or spending funds to support or oppose a measure, such committees shall file their
financial disclosure documents on dates that are within the time period in which
signatures are gathered.

(b)  For initiatives and recalls, campaign disclosure statements shall be filed on the 15th
day of the signature gathering period covering days 1-10, on the 30th day covering days
11-25, and every 30 days thereafter for the 30-day period ending five days earlier through
the end of the signature-gathering period.

(c)  For referenda, which have a 30-day signature gathering period, campaign disclosure
statements shall be filed on the 10th day of the period covering days 1-5, on the 25th day
of the period covering days 6-20, and by the 60th day after the end of the period covering
days 21-30.

(d)  Otherwise, campaign statements shall be completed and filed as specified in this
Chapter and state law.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.114. CONTRIBUTION LIMITS.

(a)  LIMITS ON CONTRIBUTIONS TO CANDIDATES.

(1)  Per Candidate Limit. No person other than a candidate shall make, and no candidate
campaign treasurer shall solicit or accept, any contribution which will cause the total
amount contributed by such person to such candidate in an election to exceed $500.

(2)  Overall Limit. No person shall make any contribution which will cause the total
amount contributed by such person to all candidates in an election to exceed $500
multiplied by the number of City elective offices to be voted on at that election.

(b)  LIMITS ON CONTRIBUTIONS FROM CORPORATIONS. No corporation
organized pursuant to the laws of the state of California, the United States, or any other
state, territory, or foreign country, whether for profit or not, shall make a contribution to a
candidate for City elective office, provided that nothing in this subsection shall prohibit
such a corporation from establishing, administering, and soliciting contributions to a
separate segregated fund to be utilized for political purposes by the corporation, provided
that the separate segregated fund complies with the requirements of federal law including
section 432(e) and 441b of Title 2 of the United States Code, including any subsequent
amendments to those sections.

(c)  LIMITS ON CONTRIBUTIONS TO COMMITTEES.

(1)  Per Committee Limit. No person shall make, and no committee treasurer shall solicit
or accept, any contribution which will cause the total amount contributed by such person
to the committee to exceed $500 per calendar year.

(2)  Overall Limit. No person shall make, and no committee treasurer shall solicit or
accept, any contribution which will cause the total amount contributed by such person to
all committees to exceed $3000 per calendar year.

(3)  Definitions. For purposes of this Subsection, "committee" shall mean any committee
making expenditures to support or oppose a candidate, but shall not include candidates'
campaign committees.

9

(d)  AGGREGATION OF AFFILIATED ENTITY CONTRIBUTIONS.
(1)  General rule. For purposes of the contribution limits imposed by this Section and
Section 1.120, the contributions of an entity whose contributions are directed and
controlled by any individual shall be aggregated with contributions made by that
individual and any other entity whose contributions are directed and controlled by the
same individual.
(2)  Multiple entity contributions controlled by the same persons. If two or more entities
make contributions that are directed and controlled by a majority of the same persons, the
contributions of those entities shall be aggregated.
(3)  Majority-owned entities. Contributions made by entities that are majority-owned by
any person shall be aggregated with the contributions of the majority owner and all other
entities majority-owned by that person, unless those entities act independently in their
decisions to make contributions.
(4)  Definition. For purposes of this Section, the term "entity" means any person other
than an individual and "majority-owned" means a direct or indirect ownership of more
than 50 percent.
(5)  Effective Date. This Subsection shall take effect January 1, 2004.
(e)  CONTRIBUTOR INFORMATION REQUIRED. If the cumulative amount of
contributions received from a contributor is $100 or more, the committee shall not
deposit any contribution that causes the total amount contributed by a person to equal or
exceed $100 unless the committee has the following information: the contributor's full
name; the contributor's street address; the contributor's occupation; and the name of the
contributor's employer or, if the contributor is self-employed, the name of the
contributor's business. A committee will be deemed not to have had the required
contributor information at the time the contribution was deposited if the required
contributor information is not reported on the first campaign statement on which the
contribution is required to be reported.
(f)  FORFEITURE OF UNLAWFUL CONTRIBUTIONS. In addition to any other
penalty, each committee that receives a contribution which exceeds the limits imposed by
this Section or which does not comply with the requirements of this Section shall pay
promptly the amount received or deposited in excess of the amount permitted by this
Section to the City and County of San Francisco and deliver the payment to the Ethics
Commission for deposit in the General Fund of the City and County; provided that the
Commission may provide for the waiver or reduction of the forfeiture.
(g)  RETURN OF CONTRIBUTIONS. A contribution to a candidate or committee
making expenditures to support or oppose a candidate shall not be considered to be
received if it is not cashed, negotiated, or deposited and in addition it is returned to the
donor before the closing date of the campaign statement on which the contribution would
otherwise be reported, except that a contribution to a candidate or committee making
expenditures to support or oppose a candidate made before an election at which the
candidate is to be voted on but after the closing date of the last campaign statement
required to be filed before the election shall not be considered to be deemed received if it
is not cashed, negotiated or deposited and is returned to the contributor within 48 hours of
receipt. For all committees not addressed by this Section, the determination of when
contributions are considered to be received shall be made in accordance with Government
Code Section 81000, et seq.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 126-06, App. 6/23/06; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.508; amended by Ord. 79-83, App. 2/18/83; Proposition N, 11/7/95)

## SEC. 1.115. COORDINATION OF EXPENDITURES.

(a) General. An expenditure is not considered independent and shall be treated as a contribution from the person making the expenditure to the candidate on whose behalf, or for whose benefit the expenditure is made, if the expenditure funds a communication that expressly advocates the nomination, election or defeat of a clearly identified candidate and is made under the following circumstance:

(1) the expenditure is made at the request, suggestion, or direction of, or in cooperation, consultation, concert or coordination with, the candidate on whose behalf , or for whose benefit, the expenditure is made; or

(2) the communication funded by the expenditure is created, produced or disseminated:
(A) after the candidate has made or participated in making any decision regarding the content, timing, location, mode, intended audience, volume of distribution, or frequency of placement of the communication; or

(B) after discussion between the creator, producer or distributor of a communication, or the person paying for that communication, and the candidate or committee regarding the content, timing, location, mode, intended audience, volume of distribution or frequency of placement of that communication, the result of which is agreement on any of these topics.

(b) Rebuttable presumption of coordination. In addition to subsection (a) of this section, there shall be a presumption that an expenditure funding a communication that expressly advocates the nomination, election or defeat of a clearly identified candidate is not independent of the candidate on whose behalf or for whose benefit the expenditure is made, when:

(1) it is based on information about the candidate or committee's campaign needs or plans provided to the spender by the candidate;

(2) it is made by or through any agent of the candidate in the course of the agent's involvement in the current campaign;

(3) the spender retains the services of a person, including a campaign consultant, who provides, or has provided, the candidate with professional services related to campaign or fundrasing strategy for that same election;

(4) the communication replicates, reproduces, republishes or disseminates, in whole or in substantial part, a communication designed, produced, paid for or distributed by the candidate; or

(5) in the same election that the expenditure is made, the spender or spender's agent is serving or served in an executive or policymaking role for the candidate's campaign or participated in strategy or policy making discussions with the candidate's campaign relating to the candidate's pursuit of election to office and the candidate is pursuing the same office as a candidate whose nomination or election the expenditure is intended to influence.

11

(c) Exceptions. Notwithstanding the foregoing, an expenditure shall not be considered a contribution to a candidate merely because:

(1) the spender interviews a candidate on issues affecting the spender;

(2) the spender has obtained a photograph, biography, position paper, press release, or similar material from the candidate;

(3) the spender has previously made a contribution to the candidate;

(4) the spender makes an expenditure in response to a general, non-specific request for support by a candidate, provided that there is no discussion with the candidate prior to the expenditure relating to details of the expenditures;

(5) the spender has invited the candidate or committee to make an appearance before the spender's members, employees, shareholders, or the families thereof, provided that there is no discussion with the candidate prior to the expenditure relating to details of the expenditure;

(6) the spender informs a candidate that the spender has made an expenditure provided that there is no other exchange of information not otherwise available to the public, relating to the details of the expenditure; or

(7) the expenditure is made at the request or suggestion of the candidate for the benefit of another candidate or committee.

(d) Definition. For purposes of this section, the terms "candidate" includes an agent of the candidate when the agent is acting within the course and scope of the agency.
(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.116. LIMITS ON LOANS TO CANDIDATES.

(a) A candidate's loan of personal funds to the candidate's campaign may not exceed at any time more than

(1) $15,000 for a candidate for the Board of Supervisors, Board of Education of the San Francisco Unified School District or the Governing Board of the San Francisco Community College District,

(2) $120,000 for a candidate for Mayor, or

(3) $35,000 for a candidate for Assessor or Public Defender, City Attorney, Treasurer, District Attorney or Sheriff.

(b) A candidate may not charge interest on any loan the candidate has made to the candidate's campaign.

(c) In addition to any other penalty, loans made by a candidate to the candidate's campaign in excess of the amounts in subsection (a) shall be deemed a contribution to the campaign and may not be repaid to the candidate.

(d) Whenever the Ethics Commission adjusts the voluntary expenditure ceilings to reflect changes in the California Consumer Price Index, as authorized under Section 1.130, the Commission is authorized to adjust the loan amounts in this Section to reflect changes in the Consumer Price Index.
(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 228-06, File No. 060501, App. 9/14/2006. Former Sec. 1.116 was added by Ord. 365-94, App. 10/28/94; renumbered by Ord. 71-00, File No. 000358, App. 4/28/2000; repealed by Proposition O, 11/7/2000)

SEC. 1.118. PAYMENT OF ACCRUED EXPENSES.

12

(a)  A candidate who accepts goods or services on credit shall pay for such accrued expenses in full no later than 180 calendar days after receipt of a bill or invoice and in no event later than 180 calendar days after the last calendar day of the month in which the goods were delivered or the services were rendered, unless it is clear from the circumstances that the failure to pay is reasonably based on a good faith dispute. For purposes of this subsection, a good faith dispute shall be presumed if the candidate produces the following:

(1) evidence that the candidate protested the payment of a bill no later than 30 calendar days after the last calendar day of the month in which the goods were delivered or the services were rendered; and

(2) evidence that the protest was based on the time of delivery, quality or quantity of goods delivered or services rendered or the price of the goods delivered or the services provided.

(b)  The provisions of subsection (a) do not apply to debt owed to a financial institution for an outstanding credit card balance.

(c)  Each and every calendar day any accrued expense remains partially or wholly unpaid after the time periods set forth in subsection (a) constitutes a separate violation.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; repealed by Ord. 3-06, File No. 051439, App. 1/20/2006) (Derivation: Former Administrative Code Section 16.509; amended by Ord. 174-80, App. 5/2/80; Proposition N, 11/7/95)

SEC. 1.120. CONTRIBUTION LIMITS--POST-ELECTION LEGAL PROCEEDINGS.
All provisions of this Chapter, unless specified otherwise herein, shall be applicable in any post-election recounts, election contests or other proceedings held pursuant to law. In addition, the following provisions shall be applicable in any such post-election legal proceedings:

(a)  No person other than a candidate shall make, and no candidate shall solicit or accept, any contribution which will cause the total amount contributed by such person in post-election legal proceedings to any candidate to exceed, in addition to the contribution limit contained in Sections 1.114, $100.

(b)  Notwithstanding any other provision of this Chapter to the contrary, for the purposes of conducting post-election recounts, election contests or other proceedings held pursuant to law, the delivery of in-kind legal services by lawyers in support of or in opposition to candidates, including in-kind contributions to committees supporting or opposing candidates, shall not be subject to any contribution limitations set forth in this Chapter.

(c)  If any person violates this Section, each campaign treasurer who received part or all of the contribution or contributions which constitute the violation shall pay promptly the amount received from such person in excess of the amount permitted by this Section to the City and County Treasurer for deposit in the General Fund of the City and County.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 3-06, File No. 051439, App. 1/20/2006) (Derivation: Former Administrative Code Section 16.509-1; added by Ord. 81-83, App. 2/25/83)

SEC. 1.122. SOLICITATION OR ACCEPTANCE OF CAMPAIGN CONTRIBUTIONS-- LIMITATIONS.

(a) DECLARATION OF INTENT REQUIRED. No intended candidate for any City elective office, and no committee acting on behalf of a candidate, shall solicit or accept, or cause to be solicited or accepted, any contribution unless and until said candidate shall have filed a declaration of intention to become a candidate for a specific City elective office with the Department of Elections on a form to be prescribed by the Director of Elections.

No person shall file a declaration of intention to become a candidate for more than one City elective office. For the purposes of this Section a committee acting on behalf of a candidate need not be controlled by or acting under the authorization of the candidate.

(b) USE OF CAMPAIGN FUNDS.

(i) General. Except as otherwise provided in this Chapter, funds in a candidate's campaign account may be used only on behalf of the candidacy for the office specified in the candidate's declaration of intention filed under subsection (a) or for expenses associated with holding that office, provided that such expenditures are reasonably related to a legislative, governmental, or political purpose. Contributions solicited or accepted under this Section for one individual shall not be expended for the candidacy of any other individual or in support of or opposition to any measure, or be donated to a charitable organization. Nothing in this section shall prohibit a candidate in a ranked choice election from expending funds to support the ranking of another candidate if the primary purpose of the expenditure is to further the candidate's own campaign.

(ii) Withdrawal from candidacy. Campaign funds held by an individual who ceases to be a candidate or fails to qualify for an office for which contributions have been solicited or accepted shall be:

(A) returned on a "last in, first out" basis to those persons who have made said contributions;

(B) donated to the City and County of San Francisco; or

(C) donated to a charitable organization.

(c) SURPLUS FUNDS. Surplus funds held by a candidate or committee shall be:

(i) returned on a "last in, first out" basis to those persons who have made said contributions;

(ii) donated to a charitable organization; or

(iii) donated to the City and County of San Francisco,

(d) Transfer of Funds. At any time, funds held in a candidate's campaign account may be transferred to any legally constituted committee established by or on behalf of the candidate under the Government Code of the State of California (commencing at Section 81000). Contributions transferred under this subsection shall be attributed to specific contributors using a "first in, first out" or "last in, first out" accounting method.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510; amended by Ord. 80-83, App. 2/18/83; Ord. 224-96, App. 6/17/96)

Sec. 1.124.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; repealed by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.510-1; added by Proposition N, 11/7/95)

SEC. 1.126. CONTRIBUTION LIMITS--CONTRACTORS DOING BUSINESS WITH THE CITY.

(a) Definitions.

For purposes of this section, the following words and phrases shall mean:

(1) "Person who contracts with" includes any party or prospective party to a contract, as well any member of that party's board of directors, its chairperson, chief executive officer, chief financial officer, chief operating officer, any person with an ownership interest of more than 20 percent in the party, any subcontractor listed in a bid or contract, and any committee, as defined by this Chapter that is sponsored or controlled by the party, provided that the provisions of Section 1.114 of this Chapter governing aggregation of affiliated entity contributions shall apply only to the party or prospective party to the contract.

(2) "Contract" means any agreement or contract, including any amendment or modification to an agreement or contract, with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District, or the San Francisco Community College District for:

(A) the rendition of personal services,

(B) the furnishing of any material, supplies or equipment,

(C) the sale or lease of any land or building, or

(D) a grant, loan or loan guarantee.

(b) Prohibition.

No person who contracts with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District or the San Francisco Community College District,

(1) shall make any contribution to:

(A) an individual holding a City elective office if the contract must be approved by such individual, the board on which that individual serves or a board on which an appointee of that individual serves;

(B) a candidate for the office held by such individual; or

(C) a committee controlled by such individual or candidate

(2) whenever the agreement or contract has a total anticipated or actual value of $50,000 or more, or a combination or series of such agreements or contracts approved by that same individual or board have a value of $50,000 or more in a fiscal year of the City and County

(3) at any time from the commencement of negotiations for such contract until:

(A) the termination of negotiations for such contract; or

(B) six months have elapsed from the date the contract is approved.

(c) Notification.

(1) Prospective Parties to Contracts. Any prospective party to a contract with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District or the San Francisco

Community College District shall inform each person described in subsection (a)(1) of the prohibition in subsection (b) by the commencement of negotiations for such contract.
(2)    Individuals Who Hold City Elective Office. Every individual who holds a City elective office shall, within five business days of the approval of a contract by the officer, a board on which the officer sits or a board of a state agency on which an appointee of the officer sits, notify the Ethics Commission, on a form adopted by the Commission, of each contract approved by the individual, the board on which the individual serves or the board of a state agency on which an appointee of the officer sits. An individual who holds a City elective office need not file the form required by this subsection if the clerk or secretary of a board on which the individual serves or a board of a state agency on which an appointee of the officer serves has filed the form on behalf of the board. (Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-2; added by Proposition N, 11/7/95)

SEC. 1.128. ACCEPTANCE OR REJECTION OF VOLUNTARY EXPENDITURE CEILINGS.
(a) All candidates for City elective office must file a statement with the Ethics Commission indicating whether they accept or do not accept the applicable expenditure ceiling. This statement, which is a public document, shall be filed no later than the deadline for filing nomination papers with the Department of Elections, and may not be withdrawn after such deadline. The form may not be filed prior to June 1 of an election occurring in November or 120 days before an election held at any other time, and once filed may not be withdrawn. A candidate may not accept or reject the applicable expenditure ceiling under this section if the applicable expenditure ceiling has already been lifted under section 1.134 of this Chapter.

The Director of Elections shall cause to be published in the Voter Information Pamphlet, on the same page as appears the candidate's statement of qualifications, a notice informing voters whether the candidate has accepted the voluntary expenditure ceiling. For candidates who have accepted the voluntary expenditure ceiling, the notice shall state: "The above candidate has accepted the City's voluntary spending limit." For candidates who have not accepted the voluntary expenditure ceiling, the notice shall state: "The above candidate has NOT accepted the City's voluntary spending limit." If a candidate was precluded from accepting or rejecting the limits because the expenditure ceiling for a particular race was lifted under section 1.134 of this Chapter before the candidate filed the statement required by this section, the notice for that candidate shall state "The voluntary spending limit was lifted before this candidate decided whether to accept or not accept the limit." The notice shall be printed in the same font size and type as the candidate's statement of qualifications. Nothing in this subsection shall prevent a candidate from participating in a public financing program authorized by this Chapter.
(b) Any candidate who files a statement pursuant to this Section accepting the applicable expenditure ceiling and makes campaign expenditures in excess of the expenditure ceiling, at a time when the ceiling has not been lifted, is subject to the penalties in Section 1.170 for violation of this Chapter.

16

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 293-04, File No. 041396, App. 12/24/2004; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-3; added by Proposition N, 11/7/95)

SEC. 1.130. AMOUNT OF EXPENDITURE CEILINGS.
(a) Any candidate for Assessor, Public Defender, City Attorney, District Attorney, Treasurer, or Sheriff who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $229,000.
(b) Any candidate for Mayor who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $1,375,000.
(c) Any candidate for the Board of Supervisors who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $86,000.
(d) Any candidate for the Board of Education of the San Francisco Unified School District or the Governing Board of the San Francisco Community College District who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $98,000.
(e) The Ethics Commission is authorized to adjust annually the expenditure ceilings imposed by this Section to reflect the change in the California Consumer Price Index for that year.
(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-4; added by Proposition N, 11/7/95)

SEC. 1.132.
(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; repealed by Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-5; added by Proposition N, 11/7/95)

SEC. 1.134. EXPENDITURE CEILINGS LIFTED.
This Section shall apply only if at least one candidate for the City elective office has filed a statement with the Ethics Commission pursuant to Section 1.128 indicating acceptance of the applicable expenditure limits, and the applicable expenditure limit has not already been lifted.
(a) If a candidate who has filed a statement under Section 1.128 declining to accept expenditure ceilings receives contributions or makes qualified campaign expenditures in excess of 100 percent of the applicable expenditure ceiling, or if a person or persons make expenditures or payments, or incur expenses for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to a candidate that total more than 100 percent of the applicable expenditure ceiling, the applicable expenditure limit shall no longer be binding on any candidate seeking election to the same City elective office. This subsection shall not apply to a candidate for Mayor who has been certified by the Ethics Commission as

17

eligible to receive public funds under this Chapter and is therefore subject to an Individual Expenditure Ceiling.

(b)  Any candidate who has not accepted the voluntary expenditure ceiling and who receives contributions, makes expenditures, incurs expenses or has funds in his campaign trust account that exceed 100 percent of the applicable expenditure ceiling shall, within 24 hours of exceeding 100 percent of the applicable expenditure ceiling, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Within 24 hours after receiving such notice, the Ethics Commission shall inform every other candidate for that office that the expenditure ceiling has been lifted.

(c)  Any person that makes expenditures or payments, or incurs expenses for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate in an amount of $5,000 or more shall, within 24 hours of reaching this threshold, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Thereafter, until such time as the applicable expenditure ceiling is lifted, any such person shall file a supplemental statement with the Ethics Commission each time the committee makes expenditures or payments or incurs expenses for the purpose of making independent expenditures, electioneering communications or member communications or incurs expenses in support of or in opposition to any candidate of an additional $5,000. The supplemental statements shall be filed within 24 hours of reaching these spending thresholds. This subsection shall not apply to any expenditures, payments, or expenses incurred for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate for Mayor if the Ethics Commission has certified that at least one candidate for Mayor is eligible to receive public funds under this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 71-05, File No. 041489, App. 4/15/2005; Ord. 75-05, File No. 050624, App. 4/27/2005; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006) (Derivation: Former Administrative Code Section 16.510-6; added by Proposition N, 11/7/95)

SEC. 1.134.5. LIFTING OF INDIVIDUAL EXPENDITURE CEILINGS.
This Section shall apply only if the Ethics Commission has certified that at least one candidate for Mayor is eligible to receive public funds under this Chapter.

(a)  The Executive Director shall lift the Individual Expenditure Ceiling of a candidate for Mayor to an amount equal to the highest level of the Total Supportive Funds of any other candidate seeking election to the same office if such amount is greater than $1,375,000, provided that the Executive Director may lift a candidate's Individual Expenditure Ceilings only in increments of $100,000.

(b)  The Executive Director shall lift the Individual Expenditure Ceiling of a candidate for Mayor by an amount equal to the candidate's Total Opposition Spending, provided that the Executive Director may lift a candidate's Individual Expenditure Ceiling only in increments of $100,000.

(c)  On the fourth business day after a statement is filed pursuant to Section 1.152(b)(3) of this Chapter, the Executive Director shall determine whether to lift the Individual Expenditure Ceilings of each candidate for Mayor pursuant to subsections (a) and (b) of this Section based on the information in the statement unless pursuant to subsection (d) a candidate for Mayor requests that the Executive Director make a determination regarding which candidate or candidates the communication filed with the statement supports or opposes or whether the Communication is neutral.

(d)  Any candidate for Mayor may request that the Executive Director review the original or copy of a communication filed pursuant to Section 1.152(b)(3) of this Chapter to make an independent determination regarding which candidate or candidates for Mayor the communication actually supports or opposes or whether the communication is neutral. Such requests must be filed with the Executive Director within three business days from the date the original or copy of the communication is filed. Factors the Executive Director shall use to determine whether the communication supports or opposes one or more candidates include the following:

(1)  the communication clearly identifies one or more mayoral candidates;

(2)  the timing of the communication coincides with the mayoral campaign;

(3)  the communication targets voters in a particular election;

(4)  the communication identifies one or more candidate's position on a public policy issue and urges the reader or viewer to take action, including calling the candidate to support or oppose the candidate's position;

(5)  the position of one or more candidates on the public policy issue has been raised as distinguishing these candidates from others in the campaign, either in the communication itself or in other public communications;

(6)  the communication is not part of an ongoing series of substantially similar advocacy communications by the organization on the same issue; and

(7)  any other factors the Executive Director deems relevant.

Within three business days of the date the request for a determination is received, the Executive Director shall make his or her initial determination.

Within one business day of the date that the Executive Director makes an initial determination, any candidate for Mayor may submit to the Executive Director a request that the Ethics Commission review the Executive Director's initial determination. Within one business day of receiving the request, the Executive Director shall notify each Commissioner of the candidate's request.

If within one business day of the Executive Director's notice, two or more members of the Commission inform the Executive Director that they would like to review the initial determination, the Executive Director shall schedule a meeting of the Commission on a date that occurs within one week of the Commissioners' requests. If three members of the Commission vote to overrule the Executive Director's initial determination, the Commission shall make a final determination based on the factors set forth above. If no candidate requests review of the Executive Director's initial determination, if a request is made and two or more members of the Commission do not request to review the initial determination, or within one week of two members of the Commission requesting to review the initial determination, at least three members of the Commission do not vote to overrule the Executive Director's initial determination, the Executive Director's determination shall become final.

19

The Executive Director shall determine whether to lift the Individual Expenditure Ceilings of each candidate for Mayor pursuant to subsections (a) and (b) of this Section within one business day of a final determination.
(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.135. SUPPLEMENTAL REPORTING.
(a) Supplemental Preelection Statements. In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, all San Francisco general purpose committees shall file preelection statements before any election held in the City and County of San Francisco at which a candidate for City elective office or City measure is on the ballot, if the committee makes contributions or expenditures totaling five hundred dollars ($500) or more during the period covered by the preelection statement.
(b) Time for Filing Supplemental Preelection Statements. Preelection statements required by this Section shall be filed as follows:
(1) For the period ending 45 days before the election, the statement shall be filed no later than 40 days before the election;
(2) For the period ending 17 days before the election, the statement shall be filed no later than 12 days before the election.
(c) The Ethics Commission may require that these statements be filed electronically.

(Added by Ord. 141-03, File No. 030034, App. 6/27/2003; amended by Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.136. PUBLIC FINANCING OF ELECTION CAMPAIGNS.
Candidates for the Board of Supervisors or Mayor who are certified by the Ethics Commission as eligible to receive public financing of their election campaigns, and who comply with the applicable conditions and restrictions specified in Section 1.140 and 1.140.5 of this Chapter, may receive public funds as provided in this Chapter to defray the costs of their election campaigns.
(Added by Proposition O, 11/7/2000; amended by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.138. SUPERVISOR ELECTION CAMPAIGN FUND; APPROPRIATION OF FUNDS.
(a) ESTABLISHMENT OF SUPERVISOR ELECTION CAMPAIGN FUND. There is hereby established a special fund of the City and County of San Francisco called the Supervisor Election Campaign Fund. All money deposited in the Fund is hereby appropriated for use as specified in this Chapter and the implementing regulations.
(b) APPROPRIATION TO SUPERVISOR ELECTION CAMPAIGN FUND. Each fiscal year the City and County of San Francisco shall appropriate to the Supervisor Election Campaign Fund an amount sufficient to provide funding for election campaigns as authorized by this Chapter for all candidates for the Board of Supervisors who may be eligible to receive such funds. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount required. If at any time the amount appropriated is insufficient to fund all eligible candidates, the Ethics Commission shall notify the

20

Mayor and Board of Supervisors, and the City and County shall appropriate additional funds. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating any additional funds required.

(c) APPROPRIATION TO ETHICS COMMISSION. Each fiscal year the City and County of San Francisco shall appropriate to the Ethics Commission an amount sufficient to pay for the costs of administration of the public financing program. This appropriation shall be in addition to and separate from the regular annual appropriation made to the Ethics Commission. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount required.

(d) LIMITATION ON EXPENDITURE OF FUNDS. The annual appropriation to this public financing program, including the cost of administration, shall not exceed $2.00 per resident of the City and County of San Francisco. At the request of the Ethics Commission, the Controller shall estimate the number of residents of the City and County of San Francisco for purposes of this subsection.

(Added by Proposition O, 11/7/2000; amended by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.138.5. MAYORAL ELECTION CAMPAIGN FUND; APPROPRIATION OF FUNDS.

(a) ESTABLISHMENT OF MAYORAL ELECTION CAMPAIGN FUND. There is established a special fund of the City and County of San Francisco called the Mayoral Election Campaign Fund. All money deposited in the Fund is appropriated for use as specified in this Chapter and the implementing regulations. This special fund is separate from the Election Campaign Fund established in Section 1.138(a) of this Chapter.

(b) APPROPRIATION TO MAYORAL ELECTION CAMPAIGN FUND. Except as provided in subsections (b)(3) and (b)(4), each fiscal year the City and County of San Francisco shall appropriate $2.00 per resident of the City and County of San Francisco to the Mayoral Election Campaign Fund to provide funding for election campaigns as authorized by this Chapter for all candidates for Mayor who may be eligible to receive such funds. At the request of the Ethics Commission, the Controller shall estimate the number of residents of the City and County of San Francisco for purposes of this subsection.

(1) Any funds in the Mayoral Election Campaign Fund not used in one election shall be carried over for use in the following election, provided that at no time shall the total amount in the Mayoral Election Campaign Fund exceed $12 million. Any funds in the Mayoral Election Campaign Fund in excess of $12 million shall be returned to the General Fund.

(2) Funds necessary for the Ethics Commission to administer the public financing program for candidates for Mayor authorized under section 1.136 of this Chapter shall be taken from the Mayoral Election Campaign Fund. The Commission's administrative expenses for such public financing program for any election shall not exceed 15% of the total amount of funds in the Mayoral Election Campaign Fund for that election.

(3) In order to ensure that four years worth of appropriations under this subsection are available to provide public financing to candidates seeking election at the next mayoral election, the City and County of San Francisco shall appropriate $8.00 per resident of the

City and County of San Francisco to the Mayoral Election Campaign Fund by July 1, 2006.

(4) If the Office of Mayor becomes vacant and an election is held to fill the vacancy for the remainder of the term, the City and County of San Francisco shall appropriate additional funds to the Mayoral Election Campaign Fund in an amount that ensures that at least $8.00 per resident is available in the Mayoral Election Campaign Fund for that election and the next regularly scheduled mayoral election.

(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.140. ELIGIBILITY TO RECEIVE PUBLIC FINANCING--CANDIDATES FOR THE BOARD OF SUPERVISORS.

(a) REQUIREMENTS. To be eligible to receive public financing of campaign expenses under this Chapter, a candidate for the Board of Supervisors must:

(1) Be seeking election to the Board of Supervisors and be eligible to hold the office sought;

(2) Have filed a statement indicating that he or she intends to participate in the public financing program under Section 1.142(a) of this Chapter;

(3) Have received at least $5,000 in qualifying contributions from at least 75 contributors before the 70th day before the election;

(4) Be opposed by another candidate who has either established eligibility to receive public financing, or received contributions or made expenditures which in the aggregate equal or exceed $5,000;

(5) Agree to the following conditions:

(A) The candidate bears the burden of proving that each contribution the candidate relies upon to establish eligibility is a qualifying contribution;

(B) The candidate bears the burden of proving that expenditures made with public funds provided under this Chapter comply with Section 1.148 of this Chapter;

(C) The candidate shall not make qualified campaign expenditures which in the aggregate exceed the expenditure limits specified in Section 1.130 of this Chapter, except as provided in Section 1.134 of this Chapter; and

(D) The candidate shall agree to participate in at least one debate with the candidate's opponents.

(6) Have paid any outstanding late fines or penalties, owed to the City by the candidate or any of the candidate's previous campaign committees, which were imposed for violations of Chapters 1 though 5 of this Article, the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704), Chapter 1 of Article II of this Code or Chapters 1 or 2 of Article III of this Code, provided that the Ethics Commission had notified the candidate of such fines or penalties by the time of certification;

(7) Have filed any outstanding forms, owed to the City by the candidate or any of the candidate's previous campaign committees, which were required to be filed pursuant to Chapters 1 through 5 of this Article, the campaign finance provisions of the Political Reform Act (Government Code sections 84100-85704), or Chapter 1, Article III of this Code, provided that the Ethics Commission had notified the candidate of such outstanding forms by the time of certification;

(8) Have no finding by a court within the prior five years that the candidate knowingly, willfully, or intentionally violated Chapters 1 through 4 of this Article or the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704). For purposes of this section, a plea of nolo contendre shall be treated the same as a finding by a court of a willful violation.

(b) ADJUSTMENT OF EXPENDITURE LIMITS AND THRESHOLDS. Whenever the Ethics Commission pursuant to Section 1.130 adjusts the voluntary expenditure ceilings to reflect changes in the California Consumer Price Index, the Commission is authorized to adjust the threshold limits in subsections (a)(3) and (a)(4) of this Section, and Section 1.152, to reflect changes in the California Consumer Price Index.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 236-05, File No. 051033, App. 10/7/2005; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.140.5. ELIGIBILITY TO RECEIVE PUBLIC FINANCING--CANDIDATES FOR MAYOR.

(a) REQUIREMENTS FOR CANDIDATES. To be eligible to receive public financing of campaign expenses under this Chapter, a candidate for Mayor must:

(1) Be seeking election to the office of Mayor and be eligible to hold the office sought;

(2) Have submitted a declaration under Section 1.142(b) of this Chapter indicating that the candidate meets the eligibility criteria of this section;

(3) Have received at least $25,000 in qualifying contributions from at least 250 contributors by the 70th day before the election.

(4) Be opposed by another candidate who has either established eligibility to receive public financing, or received contributions or made expenditures that in the aggregate equal or exceed $50,000;

(5) Agree to the following conditions.

(i) The candidate shall not spend on the candidate's campaign more than the candidate's Individual Expenditure Ceiling of $1,375,000, or as adjusted under Section 1.134.5 of this Chapter;

(ii) The candidate bears the burden of proving that each contribution the candidate relies upon to establish eligibility is a qualifying contribution and that all contributions comply with the requirements set forth in this Chapter;

(iii) The candidate bears the burden of proving that expenditures made with public funds provided under this Chapter comply with Section 1.148 of this Chapter;

(iv) The candidate will not make any payments to a contractor or vendor in return for the contractor or vendor making a campaign contribution to the candidate or make more than a total of 50 payments, other than the return of a contribution, to contractors or vendors that have made contributions to the candidate;

(v) Notwithstanding Sections 1.114 and 1.116, the candidate shall not loan or donate more than $5,000 of his or her own money to the campaign;

(vi) The candidate shall not accept any loans to his or her campaign with the exception of a candidate's loan to his or her own campaign as permitted by this section; and

(vii) The candidate shall agree to participate in at least three (3) debates with the candidate's opponents.

(6)  Have paid any outstanding late fines or penalties, owed to the City by the candidate or any of the candidate's previous campaign committees, which were imposed for violations of Chapters 1 though 5 of this Article, the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704), Chapter 1 of Article II of this Code or Chapters 1 or 2 of Article III of this Code, provided that the Ethics Commission had notified the candidate of such fines or penalties by the timeof certification;

(7)  Have filed any outstanding forms, owed to the City by the candidate or any of the candidate's previous campaign committees, which were required to be filed pursuant to Chapters 1 through 5 of this Article, the campaign finance provisions of the Political Reform Act (Government Code sections 84100-85704), or Chapter 1, Article III of this Code, provided that the Ethics Commission had notified the candidate of such outstanding forms by the time of certification;

(8)  Have no finding by a court within the prior five years that the candidate knowingly, willfully, or intentionally violated Chapters 1 through 4 of this Article or the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704). For purposes of this section, a plea of nolo contendre shall be treated the same as a finding by a court of a willful violation.

(b)  ADJUSTMENT OF EXPENDITURE LIMITS AND THRESHOLDS. The Ethics Commission shall adjust:

(1)  the figures in subsections (a)(3), (a)(4), and (a)(5) of this Section to reflect changes in the California Consumer Price Index, provided that such adjustments shall be rounded off to the nearest $5,000; and

(2)  the maximum amount of a contribution that constitutes a qualifying contribution for mayoral candidates pursuant to section 1.104 to reflect changes in the California Consumer Price Index, provided that such adjustments shall be rounded off to the nearest $10.

(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.142. PROCESS FOR ESTABLISHING ELIGIBILITY; CERTIFICATION BY THE ETHICS COMMISSION.

(a)  STATEMENT OF PARTICIPATION OR NON-PARTICIPATION. Each candidate for the Board of Supervisors or Mayor must sign and verify under penalty of perjury a Statement of Participation or Non-Participation in the public financing program. The statement must be filed by the candidate with the Ethics Commission no later than the deadline for filing nomination papers. On the statement, each candidate shall indicate whether he or she intends to participate in the public financing program. A statement of participation or non-participation may not be amended after the deadline for filing nomination papers.

(b)  DECLARATION BY CANDIDATE.

(1)  Candidates for the Board of Supervisor. To become eligible to receive public financing of campaign expenses under this Chapter, a candidate for the Board of Supervisors shall declare, under penalty of perjury, that the candidate satisfies the requirements specified in Section 1.140. Candidates shall submit the declaration and any supporting material required by the Ethics Commission to the Ethics Commission on or after June 1 of the election year, but no later than the 70th day before the election. Once

24

the declaration and supporting material are submitted, they may not be amended. The declaration and supporting material may be withdrawn and refiled, provided that the refiling is made no later than the 70th day before the election.

(2) Candidates for Mayor. To become eligible to receive public financing of campaign expenses under this Chapter, a candidate for Mayor shall declare, under penalty of perjury, that the candidate satisfies the requirements specified in Section 1.140.5. Candidates shall be permitted to submit the declaration and any supporting material required by the Ethics Commission to the Ethics Commission starting nine (9) months before the date of the election, but no later than the 70th day before the election. Once the declaration and supporting material are submitted, they may not be amended. The declaration and supporting material may be withdrawn and refiled, provided that the refiling is made no later than the 70th day before the election.

(3) Extension of Deadlines. If any deadline imposed by this section falls on a Saturday, Sunday, or legal holiday, the deadline shall be the next business day.

(c) DETERMINATION OF ELIGIBILITY. The Executive Director of the Ethics Commission shall review the candidate's declaration and supporting material to determine whether the candidate is eligible to receive public funds under this Chapter. The Executive Director may audit the candidate's records, interview contributors and take whatever steps the Executive Director deems necessary to determine eligibility. At the request of the Executive Director, the Controller shall assist in this review process.

(d) DETERMINATION OF OPPOSITION. To determine whether a candidate for the Board of Supervisors is opposed as required under Section 1.140(a)(3) of this Chapter or a candidate for Mayor is opposed as required under Section 1.140.5(a)(4) of this Chapter, the Executive Director shall review the material filed pursuant to Section 1.152 of this Chapter, and may review any other material.

(e) CERTIFICATION. If the Executive Director determines that a candidate for the Board of Supervisors has satisfied the requirements of Section 1.140 or a candidate for Mayor has satisfied the requirements of Section 1.140.5, the Executive Director shall notify the candidate and certify to the Controller that the candidate is eligible to receive public financing under this Chapter. The Executive Director shall not certify that a candidate is eligible to receive public financing if the candidate's declaration orsupporting material is incomplete or otherwise inadequate to establish eligibility. The Executive Director shall determine whether to certify a candidate no later than 30 days after the date the candidate submits his or her declaration and supporting material, provided that the Executive Director shall make all determinations regarding whether to certify a candidate no later than the 55th day before the election.

(f) RESUBMISSION. If the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall notify the candidate. Notwithstanding Section 1.142(b) of this Chapter, the candidate may, within five business days of the date of notification, resubmit the declaration and supporting material. If the candidate does not timely resubmit, the Executive Director's determination is final.

If, after viewing resubmitted material, the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall notify the candidate of this fact. Additional resubmissions may be permitted in the Executive Director's discretion. If the candidate fails to resubmit in the

25

time specified by the Executive Director, or if no further resubmissions are permitted, the Executive Director's determination is final.

(g) RECONSIDERATION. A candidate may request that the Executive Director reconsider a final determination that the candidate is ineligible to receive public funds under this Chapter. The candidate must request reconsideration in writing within five days of the date of notification of ineligibility.

(h) APPEAL TO THE ETHICS COMMISSION. If, after reconsideration, the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the candidate may appeal the Executive Director's final determination to the Ethics Commission. The candidate must deliver the written appeal to the Ethics Commission within five days of the date of notification of the Executive Director's determination following reconsideration.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.144. DISBURSEMENT OF PUBLIC FUNDS--CANDIDATES FOR THE BOARD OF SUPERVISORS.

(a) PAYMENT BY CONTROLLER. Upon certifying that a candidate for the Board of Supervisors is eligible to receive public financing under this Chapter, the Executive Director shall forward the certification to the Controller and the Controller shall disburse payments to the candidate from the Supervisor Election Campaign Fund in accordance with the certification and this Section.

(b) TIME OF PAYMENTS. The Controller shall not make any payments under this Chapter to a candidate for the Board of Supervisors until the day following the deadline for filing nomination papers with the Director of Elections.

(c) PAYMENTS FOR ELECTION EXPENSES. Upon certification of eligibility, and in accordance with subsection (b) of this Section, the candidate shall receive a payment of $5,000 from the Supervisor Election Campaign Fund. Thereafter, for each of the first $5,000 dollars of matching contributions raised by the candidate, the candidate shall receive four dollars from the Supervisor Election Campaign Fund. Thereafter, for each additional dollar of matching contributions raised by the candidate, the candidate shall receive one dollar from the Supervisor Election Campaign Fund. The maximum amount of public funds a candidate for the Board of Supervisors may receive to defray election expenses under this Chapter is $43,750. The amount of public funds paid to a candidate for the Board of Supervisors under this Section shall not be affected by the lifting of expenditure limits under Section 1.134.

(d) PRORATION OF FUNDS. Notwithstanding Subsections (c) and (d) of this Section, if the Executive Director makes an initial or the Ethics Commission makes a final determination, pursuant to Section 1.154(b) of this Chapter, that funds in the Supervisor Election Campaign Fund are insufficient, the Executive Director or the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds.

(e) DEPOSIT IN CAMPAIGN CONTRIBUTION TRUST ACCOUNT. Candidates must deposit all payments received from the Supervisor Election Campaign Fund in the candidate's Campaign Contribution Trust Account.

26

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.144.5. DISBURSEMENT OF PUBLIC FUNDS--CANDIDATES FOR MAYOR.
(a) PAYMENT BY CONTROLLER. Upon certifying that a candidate for Mayor is eligible to receive public financing under this Chapter, the Executive Director shall forward the certification to the Controller, and the Controller shall disburse payments to the candidate from the Mayoral Election Campaign Fund in accordance with the certification and this Section.
(b) TIME OF PAYMENTS. The Controller shall not make any payments under this Chapter to any candidate for Mayor more than nine (9) months before the date of the election. Payments from the Controller shall be disbursed to eligible candidates within 48 hours of the Controller receiving notification from the Ethics Commission regarding the amount of the disbursement, except that within 60 calendar days before the election, such payments shall be made within 24 hours.
(c) PAYMENTS FOR ELECTION EXPENSES.
(1) Until the Per Candidate Available Disbursement Limit has been determined, candidates for Mayor who have been certified by the Ethics Commission as eligible to receive public financing for their election campaigns will have access to up to $850,000 in funds from the Mayoral Election Campaign Fund on a first come, first served basis according to the formula set forth in subsection (c)(3) of this Section.
(2) Once the Per Candidate Available Disbursement Limit has been determined, candidates for Mayor who have been certified by the Ethics Commission as eligible to receive public financing for their election campaigns shall have access to funds from the Mayoral Election Campaign Fund as follows:
(A) If the Executive Director determines that the Per Candidate Available Disbursement Limit is greater than $850,000, each participating candidate shall have access to the amount of the Per Candidate Disbursement, subject to the limitations set forth under subsection (c)(3)(D) and (c)(3)(E) of this Section.
(B) If the Executive Director determines the Per Candidate Available Disbursement Limit is less than or equal to $850,000, participating candidates shall have access to funds from the Mayoral Election Campaign Fund on a first come, first served basis up to a maximum per candidate of $850,000.
(3) A candidate for Mayor who is certified as eligible to receive public financing under this Chapter shall receive payments for eligible matching contributions according to the following formula:
(A) Upon qualification the candidate shall receive a one-time payment of $50,000 from the Mayoral Election Campaign Fund.
(B) After the initial payment under subsection (c)(3)(A), for the first $100,000 in matching contributions raised by the candidate, the candidate shall receive four dollars from the Mayoral Election Campaign Fund for each dollar raised.
(C) After the payments under subsection (c)(3)(B), for the next $400,000 in matching contributions raised by the candidate, the candidate shall receive one dollar from the Mayoral Election Campaign Fund for each dollar raised.

(D)  The maximum amount of public funds a mayoral candidate may receive is $850,000, unless the candidate's Individual Expenditure Ceiling is lifted according to the rules set forth under Section 1.134.5. The amount of public funds paid under this Section shall not be affected by the lifting of expenditure limits under Section 1.134.

(E)  If the Per Candidate Available Disbursement Limit has been determined to be an amount greater than $850,000, a candidate who has already received at least $850,000 in disbursements from the City shall continue to be eligible to receive public funds from the City at the rate of one dollar for each dollar of a matching contribution raised up to the Per Candidate Disbursement Limit, provided that no funds shall be disbursed if disbursement of the funds would result in the candidate exceeding his or her Trust Account Limit.

(d)  PER CANDIDATE AVAILABLE DISBURSEMENT LIMIT. On the 59th day before the election, the Executive Director shall divide the total amount of non-administrative funds in the Mayoral Election Campaign Fund by the number of qualified candidates. This number shall be deemed the Per Candidate Available Disbursement Limit. For the purposes of this section, the total amount of non-administrative funds in the Mayoral Election Campaign Fund shall be the total amount of funds that existed in the Fund nine months before the date of election plus any funds deposited into the Fund between that date and the 59th day before the election minus any funds necessary to cover the administrative costs associated with implementing the mayoral public financing program.

If there are candidates who have submitted a Declaration of Qualification but whose eligibility has not been determined as of the 59th day before the election, the Executive Director shall assume that they are qualified for the purposes of determining the Per Candidate Available Disbursement Limit. The Per Candidate Available Disbursement Limit shall be revised upward according to the formula above if and when it is determined that the candidate or candidates in question did not qualify to receive public financing.

Immediately upon calculating the Per Candidate Available Disbursement Limit, the Executive Director shall inform the Controller of the initial determination of the Per Candidate Available Disbursement Limit. Thereafter, the Executive Director shall immediately inform the Controller of any subsequent changes in the Per Candidate Available Disbursement Limit due to a determination that a candidate has not qualified to receive public financing.

(e)  SUBMISSION OF CLAIMS FOR PUBLIC FUNDS. The Ethics Commission shall determine the information needed to submit a claim for payment of public funds. The Executive Director shall certify each request for payment of public funds within four business days of the request, except that within 14 calendar days before the election, when the certification of a request for public funds shall be made within two business days of the request. Any submission of a claim for public funds must include a minimum of $5,000 of matching contributions; provided that in the 14 calendar days preceding an election, a claim must include a minimum of $1,000 of matching contributions. All claims for public funds must be submitted no later than 5:00 P.M. on the 30th day following the date of the election.

28

(f) DEPOSIT IN CAMPAIGN CONTRIBUTION TRUST ACCOUNT. Candidates must deposit all payments received from the Mayoral Election Campaign Fund in the candidate's Campaign Contribution Trust Account.
(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.146. TERMINATION OF PAYMENTS.
The Controller shall terminate all payments to a candidate who is otherwise eligible to receive public financing if the candidate:
(a) withdraws or fails to qualify to have his or her name printed on the ballot for the election for which the candidate applied for public financing;
(b) fails to comply with the conditions specified in Section 1.140 of this Chapter if a candidate for the Board of Supervisors or Section 1.140.5 if a candidate for Mayor; or
(c) knowingly or willfully fails to comply with any of the reporting requirements imposed by this Chapter or the Political Reform Act, California Government Code Section 81000, et seq.
(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)(Former Sec. 1.146 was added by Proposition O, 11/7/2000; repealed by Ord. 141-03, File No. 030034, App. 6/27/2003)

SEC. 1.148. RESTRICTIONS ON USE OF PUBLIC FUNDS; UNEXPENDED PUBLIC FUNDS.
(a) USE FOR QUALIFIED CAMPAIGN EXPENDITURES ONLY. Candidates who receive public financing may use the public funds solely to pay for qualified campaign expenditures, as defined by Section 1.104 of this Chapter, and to repay loans used to pay for qualified campaign expenditures except that public funds may be used to pay filing fees and costs incurred after the election that do not directly affect the outcome of the election, including but not limited to utility bills, expenses associated with an audit, and expenses related to preparing post-election campaign finance disclosure reports as required by the California Political Reform Act, Government Code section 81000, et seq., and the provisions of this Chapter. Candidates may not use public funds to pay for expenses incurred in connection with an administrative or judicial proceeding. Candidates may not use public funds to pay administrative, civil or criminal fines, including late filing fines, or to pay for inaugural activities or officeholder expenses. Candidates may not use public funds to pay post-election bonuses to campaign employees or for election victory celebrations or similar post-election campaign events.

(b) PURCHASE OF EQUIPMENT. Any equipment purchased by a candidate with public funds provided under this Chapter that has a useful life beyond the election campaign for which the funds were provided, and a fair market value exceeding $100, becomes City and County property on the day following the date the candidate is elected or not elected to office.
(c) WITHDRAWAL OR FAILURE TO QUALIFY. Any candidate who receives public financing but who withdraws or fails to qualify to have his or her name printed on the ballot in the election for which the public funds were provided shall repay the Supervisor Election Campaign Fund if the candidate was a candidate for the Board of Supervisors or to the Mayoral Election Campaign Fund if the candidate was a candidate for Mayor the full sum received from the Fund.

(d)  UNEXPENDED PUBLIC FUNDS.

(i)  General. Any candidate who receives public financing and who has unexpended public funds shall pay to the City and County of San Francisco and deliver to the Ethics Commission those funds for deposit in the Supervisor Election Campaign Fund if the candidate was a candidate for the Board of Supervisors or to the Mayoral Election Campaign Fund if the candidate was a candidate for Mayor no later than 30 days after the Ethics Commission completes its audit of the candidate. Unexpended funds may be used to pay for expenses associated with an audit such as bank fees, treasurer fees and storage fees until the Ethics Commission completes its audit of the candidate.

(ii)  Definition. For purposes of this section, unexpended public funds shall mean all funds remaining in the candidate's account on the 30th day after the candidate is elected or not elected to office, regardless of the source of the funds, but shall not exceed the amount of public funds provided to the candidate. Funds raised after this date do not constitute unexpended funds and may be used for any lawful purpose.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.150. AUDIT; REPAYMENT.

(a)  AUDIT. The Ethics Commission shall audit all candidates who receive public financing under this Chapter. Audits of candidates for Mayor conducted under this subsection shall begin within 60 days after the date the candidates' first post-election campaign disclosure report is required to be filed pursuant to Section 1.106 of this Chapter. At the request of the Executive Director, the Controller shall assist in conducting these audits.

(b)  REPAYMENT.

(1)  If the Ethics Commission determines that any portion of the payments made to a candidate from the Supervisor Election Campaign Fund or the Mayoral Election Campaign Fund exceeded the aggregate amount of payments to which the candidate was entitled under this Chapter, the Commission shall notify the Controller and the candidate. In addition to any other penalties, the candidate shall pay to the City and County of San Francisco, and deliver to the Ethics Commission an amount equal to the amount of the excess payments, and if the Commission determines that any amount of any payment made to a candidate from the Supervisor Election Campaign Fund or the Mayoral Election Campaign Fund was used for something other than qualified campaign expenditures, the candidate shall pay to the Ethics Commission an amount equal to the improper expenditure.

(2)  Any candidate for Mayor who receives public funds under this Chapter and exceeds his or her Individual Expenditure Ceiling by ten percent or more shall, in addition to any other penalties, pay to the Ethics Commission an amount equal to the amount of public funds the candidate received under this Chapter.

(3)  Any candidate for the Board of Supervisors who receives public funds under this Chapter and who exceeds, by ten percent or more, an expenditure ceiling that has not been lifted shall, in addition to any other penalties, pay to the Ethics Commission an amount equal to the amount of public funds the candidate received under this Chapter.

30

(4)  All payments delivered to the Ethics Commission under this Section shall be deposited in the Supervisor Election Campaign Fund if made by a candidate for the Board of Supervisors or in the Mayoral Election Campaign Fund if made by a candidate for Mayor.
(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.152. SUPPLEMENTAL REPORTING IN ELECTIONS FOR BOARD OF SUPERVISORS AND MAYOR.
(a)  Candidates for the Board of Supervisors. In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, each candidate for the Board of Supervisors who has filed a statement indicating that he or she does not intend to participate in the public financing program under Section 1.142(a) of this Chapter or who has received notice under Section 1.142 that the candidate is ineligible to receive public funds under this Chapter shall, no later than the deadline for filing nomination papers, file a statement with the Ethics Commission indicating whether the nonparticipating candidate has received contributions, made expenditures or has funds in his or her campaign trust account that in the aggregate equal or exceed $5,000. If the nonparticipating candidate first reaches or exceeds the $5,000 threshold after the deadline for filing nomination papers, or receives notice of ineligibility to receive public funds after that date, the nonparticipating candidate shall, within 24 hours of reaching or exceeding the threshold or receiving notice of ineligibility, file a statement indicating this fact with the Ethics Commission. The supplemental reports are not required if no candidate in a race seeks public financing or if the Executive Director of the Ethics Commission has determined that at least two candidates in a race have received contributions or have funds in their campaign trust account that equal or exceed $5,000.
(b)  Candidates for Mayor.
(1)  In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, each candidate for Mayor shall file a statement with the Ethics Commission indicating when the candidate has received contributions, made expenditures or has funds in his or her Campaign Contribution Trust Account that in the aggregate equal or exceed $50,000 within 24 hours of reaching or exceeding that amount.
(2)  In addition to the supplemental report in subsection (b)(1) of this Section, each candidate for Mayor shall file a statement with the Ethics Commission disclosing when the candidate has received contributions, made expenditures or has funds in his or her Campaign Contribution Trust Account that in the aggregate equal or exceed $1,000,000. The candidate shall file this report within 24 hours of reaching or exceeding the threshold. Thereafter, the candidate shall file an additional supplemental report within24 hours of every time the candidate receives additional contributions, makes additional expenditures or has additional funds in his or her campaign trust account that in the aggregate equal or exceed $50,000.
(3)  Any person that makes independent expenditures, electioneering communications, or member communications that clearly identify any candidate for Mayor in an amount that

31

in the aggregate equals or exceeds $5,000, shall, within 24 hours of reaching or exceeding the spending threshold, provide an original copy of the communication to the Ethics Commission and file a statement with the Ethics Commission disclosing the cost of each communication. Every person who is required to file a statement with the Ethics Commission pursuant to this subsection shall indicate on the statement which candidate or candidates for Mayor the independent expenditures, electioneering communications, or member communications disclosed on the statement are intended to support or oppose, or whether they are intended to be neutral, provided that an independent expenditure may not be neutral. For the purposes of this subsection, the costs of a communication that supports or opposes more than one candidate or ballot measure shall be apportioned among each candidate and measure in the communication.

Thereafter, any such person shall file a supplemental statement with the Ethics Commission each time the person makes independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate for Mayor in an amount that in the aggregate equals or exceeds an additional $5,000. The supplemental statements shall be filed within 24 hours of reaching or exceeding the spending threshold.

The Executive Director shall post the information disclosed on statements required by this subsection on the web page of the Ethics Commission within two business days of the statement being filed.

(4)  The supplemental statements required by subsections (b)(2) and (b)(3) are not required until the Ethics Commission has certified that at least one candidate for Mayor is eligible to receive public funds under this Chapter, provided that within two days of the date that the Ethics Commission provides notice under this subsection that it has certified that a candidate for Mayor is eligible to receive public funds under this Chapter any report that would be required under (b)(2) or (b)(3) must be filed. Within two business days of certifying that at least one candidate for Mayor is eligible to receive public financing under this Chapter, the Ethics Commission shall post a notice on its web page, send out a press release and send written notice by regular or electronic mail to any person who has requested such notice.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.154. INSUFFICIENT FUNDS IN SUPERVISOR ELECTION CAMPAIGN FUND.

(a)  REPORT BY CONTROLLER. At the request of the Ethics Commission, the Controller shall provide a statement of the total amount of funds in the Supervisor Election Campaign Fund.

(b)  DETERMINATION. Within 24 hours of the deadline for filing nomination papers, the Executive Director shall notify the Controller whether the amount in the Supervisor Election Campaign Fund is sufficient to fund all candidates who have filed a notice of intent to participate in the public financing program and who may be eligible to receive public financing. No later than 60 days before the election, the Ethics Commission shall make a final determination whether the amount in the Supervisor Election Campaign Fund is sufficient to fund all candidates for the Board of Supervisors who may be eligible

to receive public financing for their election campaigns under this Chapter. If the Executive Director's initial or the Commission's final determination is that the amount in the Fund is insufficient, the Executive Director or the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds. Notwithstanding an initial determination that the funds are insufficient and the distribution of some funds on a pro rata basis, if the Commission makes a final determination that there are sufficient funds for all eligible candidates, the Commission may distribute the full amount of funds to eligible candidates.
(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.156. REPORT TO THE MAYOR AND BOARD OF SUPERVISORS.
(a)  Following each election at which the Mayor or members of the Board of Supervisors are elected, the Ethics Commission shall submit a report to the Mayor and Board of Supervisors. The report shall state the amount of public funds used to pay for election campaigns in that election and such other information as the Ethics Commission deems useful, including the number of candidates who received public funds; the number of nonparticipating candidates; the amount of qualified campaign expenditures made by all candidates in that election; and the amount of independent expenditures made in connection with the election.
(b)  Following the November 2007 municipal election, the Ethics Commission shall conduct a study and submit a report to the Mayor and Board of Supervisors regarding the feasibility and costs of converting the partial public financing program for Mayoral candidates into a full public financing program.
(Added by Proposition O, 11/7/2000; amended by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.158. IMPLEMENTING REGULATIONS; FORMS.
Pursuant to Charter Section 15.102, the Ethics Commission shall adopt regulations to implement this Chapter. The Ethics Commission shall also specify the form and content of all forms and statements required to be filed under this Chapter.
(Added by Proposition O, 11/7/2000)

SEC. 1.160. NO LIMITATION OF CANDIDATE LIABILITY.
Nothing in this Chapter shall operate to limit the candidate's liability for, nor the candidate's ability to pay, any fines or other payments imposed pursuant to administrative or judicial proceedings.
(Added by Proposition O, 11/7/2000)

SEC. 1.161. DISCLOSURE AND FILING REQUIREMENTS FOR MASS MAILINGS.
(a)  DISCLOSURE.
In addition to the requirements set forth in California Government Code Section 84305, each mass mailing paid for by a candidate for City elective office shall include on the outside of each piece of mail in the mass mailing the following statement in not less than 14 point type and in a color or print which contrasts with the background so as to be easily legible: "paid for by _____ (insert candidate's name and street address)." A

33

post office box may be stated in lieu of a street address if the candidate's address is a matter of public record with the San Francisco Ethics Commission.

(b) FILING.

(1)  Each candidate for City elective office who pays for a mass mailing shall, within five working days after the date of the mailing, file two of the original pieces of the mailing with the San Francisco Ethics Commission.

(2)  Each candidate for City elective office who pays for a mass mailing shall, within five working days after the date of the mailing, file an itemized disclosure statement with the San Francisco Ethics Commission for that mailing.

(3)  A candidate for City elective office shall file the original pieces of mail and the itemized disclosure statement required by subsections (b)(1) and (b)(2) within 48 hours of the date of the mailing if the date of the mailing occurs within the final 16 days before the election.

(4)  Every original filed pursuant to this subsection shall be clearly legible. Every original or copy filed pursuant to this subsection shall be clearly legible.

(c) DEFINITIONS.

(1)  For the purposes of this Section, "Itemized disclosure statement" shall mean a detailed description of the separate costs associated with a mass mailing, including but not limited to photography, design, production, printing, distribution and postage. Each cost shall be disclosed on a form promulgated by the San Francisco Ethics Commission in a manner that demonstrates each separate charge or payment for each mass mailing.

(2)  For the purposes of this Section, "Mass mailing" shall be defined as set forth in the California Political Reform Act (Government Code Sections 81000 et seq.), provided that the mass mailing is paid for by a candidate for City elective office with funds raised for the candidate's campaign, and that the mass mailing advocates for or against candidates for City elective office.

(Added by Ord. 211-01, File No. 010778, App. 10/26/2001; amended by Ord. 89-02, File No. 012130, App. 6/14/2002; Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.161.5. DISCLOSURE AND FILING FOR ELECTIONEERING COMMUNICATIONS.

(a)  DISCLOSURE STATEMENTS.

(1)  Every electioneering communication shall include a disclosure statement identifying the person who paid for the communication. Such disclosure statement shall, at a minimum, contain the following words, "paid for by _____ (insert the name of the person who paid for the communication)."

(2)  Any disclosure statement required by this Section to be in printed form shall be printed in a type and color so as to be easily legible to the intended public.  Such disclosure statement shall be printed in at least 14 point type and in a color or print that contrasts with the background so as to be easily legible to the intended public.

(3)  Any disclosure statement required by this Section to be in spoken form shall be spoken at the same volume and speed as the rest of the communication so as to be clearly audible and understood by the intended public and otherwise appropriately conveyed for the hearing impaired.

(b)  REPORTING OBLIGATIONS.

(1) Every person who makes payments for electioneering communications in an aggregate amount of $1,000 during any calendar year shall, within 48 hours of the disclosure date, file an itemized statement with the San Francisco Ethics Commission.

(2) Each itemized statement required to be filed under this Section shall be filed on a form promulgated by the San Francisco Ethics Commission and shall contain the following information:

(A) the full name, street address, city, state and zip code of the person making payments for electioneering communications;

(B) the name of any individual sharing or exercising direction and control over the person making payments for electioneering communications;

(C) the total amount of payments made by the person for electioneering communications during the calendar year;

(D) a detailed description of each payment made by the person for electioneering communications during the calendar year, provided that the person has not already reported such payments on an itemized statement filed under this Section; such detailed description shall include the date the payment was made, the full name and address of the person to whom the payment was made; the amount of the payment, and a brief description of the consideration for which each payment was made;

(E) a detailed accounting of any payments of $100 or more that the person has received from another person, which were used for making electioneering communications, provided that the person has not already reported such payments received on an itemized statement filed under this Section; such detailed accounting shall include the dollar amount or value of each payment, the date of the payment's receipt, the name, street address, city, state, and zip code of the person who made such payment, the occupation and employer of the person who made such payment, if any, or, if the person is self-employed, the name of the person's business, and the cumulative amount of payments received for the purpose of making electioneering communications from that person during the calendar year;

(F) the total amount of all payments reported under subsection (E) during the calendar year;

(G) a legible copy of the electioneering communication if in printed form, or a transcript of the electioneering communication if in spoken form; and

(H) any other information required by the Ethics Commission consistent with the purposes of this Section.

(3) The filer shall verify, under penalty of perjury, the accuracy and completeness of the information provided in the itemized statement, and shall retain for a period of five years all books, papers and documents necessary to substantiate the itemized statements required by this Section.

(4) The Ethics Commission may require any itemized statement to be filed electronically and may permit any required statement to be filed by facsimile. The Ethics Commission shall promulgate regulations to implement this subsection before any person shall be required to file an itemized statement electronically or permitted to file a statement by facsimile.

(5) If any person files an itemized statement after any deadline imposed by this Section, the Ethics Commission shall, in addition to any other penalties or remedies established in this Chapter, fine the person $10 per day after the deadline until the statement is received

by the Ethics Commission. The Ethics Commission may reduce or waive a fine if the Commission determines that the late filing was not willful and that enforcement will not further the purposes of this Chapter. The Ethics Commission shall deposit funds collected under this Section in the General Fund of the City and County of San Francisco.

(c) DEFINITIONS. Whenever in this Section the following words or phrases are used, they shall mean:

(1) "Disclosure Date" shall mean:

(A) the first date during any calendar year when an electioneering communication is distributed after a person has made payments aggregating $1,000 for electioneering communications; and

(B) after a person has met the threshold under subsection

(A), any date during that same calendar year when an electioneering communication is distributed, if that same person made any payments for such electioneering communication.

(2) "Distributed" shall mean any act that permits an electioneering communication to be viewed, read or heard.

(3) "Electioneering Communication" shall mean any communication, including but not limited to any broadcast, cable, satellite, radio, internet, or telephone communication, and any mailing, flyer, doorhanger, pamphlet, brochure, card, sign, billboard, facsimile, or printed advertisement, that:

(A) refers to a clearly identified candidate for City elective office or a City elective officer who is the subject of a recall election; and

(B) is distributed within 90 days prior to an election for the City elective office sought by the candidate or a recall election regarding the City elective officer to 500 or more individuals who are registered to vote or eligible to register to vote in the election or recall election. There shall be a rebuttable presumption that any that any broadcast, cable, satellite, or radio communication and any sign, billboard or printed advertisement is distributed to 500 or more individuals who are eligible to vote in or eligible to register to vote in an election for the City elective office sought by the candidate or a recall election regarding the City elective officer.

(C) The term "Electioneering Communication" shall not include:

(i) communications that constitute expenditures or independent expenditures under this Chapter;

(ii) communications made by a slate mailer organization if such communications are required to be disclosed under California Government Code Section 81000, et seq.;

(iii) communications paid for by the City or any other local, state or federal government agency;

(iv) spoken communications between two or more individuals in direct conversation unless such communications are made by telephone and at least one of the individuals is compensated for the purposes of making the telephone communication;

(v) communications that appear on bumper stickers, pins, stickers, hat bands, badges, ribbons and other similar memorabilia;

(vi) news stories, commentaries or editorials distributed through any newspaper, radio station, television station, or other recognized news medium unless such news medium is owned or controlled by any political party, political committee or candidate;

36

(vii)  communications to all members, employees and shareholders of an organization, other than a political party, provided that such communications do not constitute general public advertising such as, but not limited to, broadcasting, billboards, and newspaper advertisements;

(viii)  communications that occur during a candidate debate or forum; and

(ix)  communications made solely to promote a candidate debate or forum made by or on behalf of the person sponsoring the debate or forum, provided that such communications do not otherwise discuss the positions or experience of a candidate for City elective office or a City elective officer who is the subject of a recall election.

(4)  "Internet Communication" shall include paid internet advertisements such as "banner" and "pop up" advertisements, paid emails or emails sent to addresses purchased from another person, and similar types of internet communications as defined by the Ethics Commission by regulation, but shall not include web blogs, listserves sent to persons who have contacted the sender, discussion forums, or general postings on web pages.

(5)  "Payment" shall be defined as set forth in Government Code of the State of California (commencing at Section 81000); provided, however, that "payment" shall also include any enforceable promise to make a payment.

(6)  "Refers to a clearly identified candidate for City elective office or a City elective officer who is the subject of a recall election" shall mean any communication that contains the candidate's or officer's name, nickname or image or makes any other unambiguous reference to the candidate or officer such as "your Supervisor" or "the incumbent."

(D)  REGULATIONS. The Ethics Commission shall issue regulations implementing this Section, including regulations defining all members, employees and shareholders of an organization.

(Added by Ord. 71-05, File No. 041489, App. 4/15/2005; amended by Ord. 75-05, File No. 050624, App. 4/27/2005; Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.162. INDEPENDENT EXPENDITURES FOR MASS MAILINGS.

Any person who makes independent expenditures for a mass mailing which support or oppose any candidate for City elective office shall place the following statement on the mailing in typeface no smaller than 14 points:

Notice to Voters
(Required by City and County of San Francisco)
This mailing is not authorized or approved by
any candidate for City and County office
or by any election official. It is paid for by
(name and committee identification number).
(address, city, state).
Total cost of this mailing is (amount).

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.510-7; added by Proposition N, 11/7/95)

SEC. 1.162.5. DISCLOSURE REQUIREMENTS – CAMPAIGN
ADVERTISEMENTS.

(a)    Disclosure. Any campaign advertisement that urges support for or opposition to
one or more candidates for City elective office shall include a disclosure statement
identifying the person who paid for the advertisement. Such disclosure statement shall, at
a minimum, contain the following words, "paid for by _____ (insert the name of the
person who paid for the communication)" and appear at least once on the advertisement.

(1)    Any disclosure statement required by this section to be in printed form shall be
printed in a type and color so as to be easily legible to the intended public. Such
disclosure statement shall be printed in at least 14-point type and in a color or print that
contrasts with the background so as to be easily legible to the intended public.

(2)    Any disclosure statement required by this section to be in spoken form shall be
spoken at the same volume and speed as the rest of the communication so as to be clearly
audible and understood by the intended public and otherwise appropriately conveyed for
the hearing impaired.

(b)    Definitions. For the purposes of this section, the term "campaign advertisement"
means:

(1)    programming received by a television or radio;

(2)    a communication placed in a newspaper; periodical or magazine of general
circulation;

(3)    posters, door hangers, and yard signs produced in quantities of 200 or more; and

(4)    a billboard.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.163. DISCLOSURE REQUIREMENTS--RECORDED TELEPHONE
MESSAGES.

Any recorded telephone message distributed to 500 or more individuals or households
must include the following statement: "paid for by _____ (insert name of
person who paid for the recorded telephone message)." Statements required pursuant to
this Section shall be audible and played at the same volume and speed as the rest of the
recorded telephone message. Any person paying for a recorded telephone message must
maintain a transcript of the message and a record of the number of distributed calls for
each message.

(Added by Ord. 187-01, File No. 010779, App. 8/31/2001; amended by Ord. 141-03, File
No. 030034, App. 6/27/2003)

SEC. 1.163.5. DISTRIBUTION OF CAMPAIGN ADVERTISEMENTS
CONTAINING FALSE ENDORSEMENTS.

(a) Prohibition. No person may sponsor any campaign advertisement that is distributed
within 90 days prior to an election and that contains a false endorsement, where the
person acts with knowledge of the falsity of the endorsement or with reckless disregard
for the truth or falsity of the endorsement. A false endorsement is a statement, signature,
photograph, or image representing that a person expressly endorses or conveys support
for or opposition to a candidate or measure when in fact the person does not expressly

endorse or convey support for or opposition to the candidate or measure as stated or implied in the campaign communication.

(b) Definitions. Whenever in this section the following words or phrases are used, they shall mean:

(1) "Campaign advertisement" is any mailing, flyer, doorhanger, pamphlet, brochure, card, sign, billboard, facsimile, printed advertisement, broadcast, cable, satellite, radio, internet, or recorded telephone advertisement that refers to one or more clearly identified candidates or ballot measures. The term "campaign advertisement" does not include:

(A) bumper stickers, pins, stickers, hat bands, badges, ribbons and other similar campaign memorabilia;

(B) news stories, commentaries or editorials distributed through any newspaper, radio, station, television station or other recognized news medium unless such news medium is owned or controlled by any political party, political committee or candidate; or

(C) material distributed to all members, employees and shareholders of an organization, other than a political party;

(2) "Internet advertisement" includes paid internet advertisements such as "banner" and "pop-up" advertisements, paid emails, or emails sent to addresses purchased from another person, and similar types of internet advertisements as defined by the Ethics Commission by regulation, but shall not include web blogs, listserves sent to persons who have contacted the sender, discussion forums, or general postings on web pages.

(3) "Sponsor" means to pay for, direct, supervise or authorize the production of campaign advertisement.

(c) Enforcement and penalties. The penalties under section 1.170(a) of this Chapter do not apply to violations of this section. Notwithstanding the 60-day waiting period in section 1.168 of this Chapter, a voter may bring an action to enjoin a violation of this section immediately upon providing written notice to the City Attorney. A court may enjoin a violation of this section only upon a showing of clear and convincing evidence of a violation.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.164. DUTIES OF ETHICS COMMISSION.

In addition to other duties required under the Charter and the terms of this Chapter, the Ethics Commission shall:

(a) Prepare and publish written instructions explaining the duties of persons, candidates and committees under this Chapter.

(b) Determine whether required statements and declarations have been filed with the Ethics Commission, and, if so, whether they conform on their face with the requirements of this Chapter.

(c) Notify promptly all persons, candidates and committees known to the Ethics Commission who have failed to file a statement in the form and at the time required by State and local law.

(d) Report apparent violations of this Chapter to the District Attorney.

(e) Compile and maintain a current list of all statements or parts of statements filed with the Ethics Commission pertaining to each candidate and each measure.

(f) Cooperate with the District Attorney and the City Attorney in the performance of their duties as they are related to this Chapter.

(g) Enforce or cause to be enforced the provisions of this Chapter.

(h) Prepare and publish adequate procedures to notify all persons, candidates and committees in advance relative to filing dates and forms required by State and local law. (Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.512; amended by Ord. 292-76, App. 7/17/76; Ord. 386-95, App. 12/14/95)

SEC. 1.166. DUTIES OF ENFORCEMENT AUTHORITY.

In addition to the other duties required of him or her under the provisions of this Chapter, the enforcement authority for civil enforcement shall review such campaign statements filed with the Ethics Commission as the Commission shall refer to him or her for legal compliance with the provisions of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000) (Derivation: Former Administrative Code Section 16.513; amended by Ord. 361-80, App. 8/5/80; Ord. 386-95, App. 12/14/95)

SEC. 1.168. ENFORCEMENT; ADVICE.

(a) ENFORCEMENT--GENERAL PROVISIONS.

Any person who believes that a violation of this Chapter has occurred may file a complaint with the Ethics Commission, City Attorney or District Attorney. The Ethics Commission shall investigate such complaints pursuant to Charter Section C3.699-13 and its implementing regulations. The City Attorney and District Attorney shall investigate, and shall have such investigative powers as are necessary for the performance of their duties under this Chapter.

(b) ENFORCEMENT--CIVIL ACTIONS.

The City Attorney, or any voter, may bring a civil action to enjoin violations of or compel compliance with the provisions of this Chapter.

No voter may commence an action under this Subsection without first providing written notice to the City Attorney of intent to commence an action. The notice shall include a statement of the grounds for believing a cause of action exists. The voter shall deliver the notice to the City Attorney at least sixty days in advance of filing an action. No voter may commence an action under this Subsection if the Ethics Commission has issued a finding of probable cause that the defendant violated the provisions of this Chapter, or if the City Attorney or District Attorney has commenced a civil or criminal action against the defendant, or if another voter has filed a civil action against the defendant under this Subsection.

A Court may award reasonable attorney's fees and costs to any voter who obtains injunctive relief under this Subsection. If the Court finds that an action brought by a voter under this Subsection is frivolous, the Court may award the defendant reasonable attorney's fees and costs.

(c) STATUTE OF LIMITATIONS.

(1) Criminal. Prosecution for violation of this Chapter must be commenced within four years after the date on which the violation occurred.

(2) Civil. No civil action alleging a violation in connection with a campaign statement required under this Chapter shall be filed more than four years after an audit could begin,

40

or more than one year after the Executive Director submits to the Commission any report of any audit conducted of the alleged violator, whichever period is less. Any other civil action alleging a violation of any provision of this Chapter shall be filed no more than four years after the date on which the violation occurred.

(3) Administrative. No administrative action alleging a violation of this Chapter and brought under Charter Section C3.699-13 shall be commenced more than five years after the date on which the violation occurred. The date on which the Commission forwards a complaint or information in its possession regarding an alleged violation to the District Attorney and City Attorney as required by Charter Section C3.699-13 shall constitute the commencement of the administrative action.

(4) Collection of fines and penalties. A civil action brought to collect fines or penalties imposed under this Chapter shall be commenced within four years after the date on which the monetary penalty or fine was imposed. For purposes of this Section, a fine or penalty is imposed when a court or administrative agency has issued a final decision in an enforcement action imposing a fine or penalty for a violation of this Chapter or the Executive Director has made a final decision regarding the amount of a late fine or penalty imposed under this Chapter. The Executive Director does not make a final decision regarding the amount of a late fine or penalty imposed under this Chapter until the Executive Director has made a determination to accept or not accept any request to waive a late fine or penalty where such waiver is expressly authorized by statute, ordinance, or regulation.

(d) ADVICE. Any person may request advice from the Ethics Commission or City Attorney with respect to any provision of this Chapter. The Ethics Commission shall provide advice pursuant to Charter Section C3.699-12. The City Attorney shall within 14 days of the receipt of said written request provide the advice in writing or advise the person who made the request that no opinion will be issued. The City Attorney shall send a copy of said request to the District Attorney upon its receipt. The City Attorney shall within nine days from the date of the receipt of said written request send a copy of his or her proposed opinion to the District Attorney. The District Attorney shall within four days inform the City Attorney whether he or she agrees with said advice, or state the basis for his or her disagreement with the proposed advice.

No person other than the City Attorney who acts in good faith on the advice of the City Attorney shall be subject to criminal or civil penalties for so acting; provided that, the material facts are stated in the request for advice and the acts complained of were committed in reliance on the advice.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered and amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006) (Derivation: Former Administrative Code Section 16.514; amended by Ord. 361-80, App. 8/5/80)

## SEC. 1.170. PENALTIES.

(a) CRIMINAL.

Any person who knowingly or willfully violates any provision of this Chapter shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $5,000 for each violation or by imprisonment in the County jail for a period of not more than six months or by both such fine and imprisonment; provided, however, that

41

any willful or knowing failure to report contributions or expenditures done with intent to mislead or deceive or any willful or knowing violation of the provisions of Section 1.114 of this Chapter shall be punishable by a fine of not less than $5,000 for each violation or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 of this Chapter, or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140.5, whichever is greater.

(b) CIVIL.

Any person who intentionally or negligently violates any of the provisions of this Chapter shall be liable in a civil action brought by the civil prosecutor for an amount up to $5,000 for each violation or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140.5, whichever is greater.

(c) ADMINISTRATIVE.

Any person who intentionally or negligently violates any of the provisions of this Chapter shall be liable in an administrative proceeding before the Ethics Commission held pursuant to the Charter for an amount up to $5,000 for each violation, or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140.5, whichever is greater.

(d) LATE FILING FEES.

(1) Fees for Late Paper Filings. In addition to any other penalty, any person who files a paper copy of any statement or report after the deadline imposed by this Chapter shall be liable in the amount of ten dollars ($10) per day after the deadline until the statement is filed.

(2) In addition to any other penalty, any person who files an electronic copy of a statement or report after the deadline imposed by this Chapter shall be liable in the amount of twenty-five dollars ($25) per day after the deadline until the electronic copy or report_is filed.

(3)    Limitation on Liability. Liability imposed by subsection (d)(1) shall not exceed the cumulative amount stated in the late statement or report, or one hundred dollars ($100), whichever is greater. Liability imposed by subsection (d)(2) shall not exceed the cumulative amount stated in the late statement or report, or two hundred and fifty dollars ($250), whichever is greater.

(4)    Reduction or Waiver. The Ethics Commission may reduce or waive a fee imposed by this subsection if the Commission determines that the late filing was not willful and that enforcement will not further the purposes of this Chapter.

(e) MISUSE OF PUBLIC FUNDS.

Any person who willfully or knowingly uses public funds, paid pursuant to this Chapter, for any purpose other than the purposes authorized by this Chapter shall be subject to the penalties provided in this section.

(f) PROVISION OF FALSE OR MISLEADING INFORMATION TO THE ETHICS COMMISSION; WITHHOLDING OF INFORMATION.

Any person who knowingly or willfully furnishes false or fraudulent evidence, documents, or information to the Ethics Commission under this Chapter, or misrepresents

42

any material fact, or conceals any evidence, documents, or information, or fails to furnish to the Ethics Commission any records, documents, or other information required to be provided under this Chapter shall be subject to the penalties provided in this section.
(g)  PERSONAL LIABILITY.
Candidates and treasurers are responsible for complying with this Chapter and may be held personally liable for violations by their committees.
(h)  JOINT AND SEVERAL LIABILITY.
If two or more persons are responsible for any violation of this Chapter, they shall be jointly and severally liable.
(i)  EFFECT OF VIOLATION ON OUTCOME OF ELECTION.
(1)  If a candidate is convicted of a violation of this Chapter at any time prior to his or her election, his or her candidacy shall be terminated immediately and he or she shall be no longer eligible for election, unless the court at the time of sentencing specifically determines that this provision shall not be applicable. No person convicted of a misdemeanor under this Chapter after his or her election shall be a candidate for any other City elective office for a period of five years following the date of the conviction unless the court shall at the time of sentencing specifically determine that this provision shall not be applicable.
(2)  If a candidate for Mayor is found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more at any time prior to his or her election, he or she is ineligible for election, unless the court specifically determines that this provision shall not be applicable. If feasible, the candidate's name shall be removed from the ballot. No candidate for Mayor who is found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more after his or her election shall be a candidate for any City elective office for a period of 5 years following the court's determination unless the court specifically determines that this provision shall not be applicable. The Ethics Commission may make a recommendation to the Board of Supervisors that a candidate found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more should be removed from office.
(3)  A plea of nolo contendere shall be deemed a conviction for purposes of this Section.
(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered and amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.515; amended by Ord. 361-80, App. 8/5/80; Proposition N, 11/7/95)

SEC. 1.172. EXTENSION OF DEADLINES THAT FALL ON WEEKENDS AND HOLIDAYS.
The Ethics Commission may, by regulation, extend any deadline imposed by this Chapter that falls on a Saturday, Sunday or holiday on which the Ethics Commission is authorized by law to close.
(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)
(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000); repealed by Ord. 141-03, File No. 030034, App. 6/27/2003; (Derivation: Former Administrative Code Section 16.516; amended by Ord. 361-80, App. 8/5/80)

43

SEC. 1.174. EFFECT OF VIOLATION ON CERTIFICATION OF ELECTION RESULTS.

The Director of Elections shall not issue any certificate of nomination or election to any candidate until all of the candidate's campaign declarations, statements, or reports required under State and local law have been filed.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.517; amended by Ord. 114-76, App. 4/2/76)

SEC. 1.176. RULES OF CONSTRUCTION.

This Chapter shall be construed liberally in order to effectuate its purposes. No error, irregularity, informality, neglect or omission of any officer in any procedure taken under this Chapter which does not directly affect the jurisdiction of the Board of Supervisors or the City and County to control campaign contributions shall avoid the effect of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000) (Derivation: Former Administrative Code Section 16.518; amended by Ord. 114-76, App. 4/2/76)

SEC. 1.178. SEVERABILITY.

If any provision of this Chapter, or the application thereof to any person or circumstance, is held invalid, the validity of the remainder of the Chapter and the applicability of such provisions to other persons and circumstances shall not be affected thereby.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000) (Derivation: Former Administrative Code Section 16.519; amended by Ord. 114-76, App. 4/2/76)

S:\C.F.R.O\CFRO text\update 10.16.06.doc