1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   FREDERICK K. LOWELL #66641
2  BRUCE A. ERICSON  #76342
   ANITA D. STEARNS MAYO #142749
3  MARC H. AXELBAUM #209855
   AUGUST O. STOFFERAHN #229957
4  50 Fremont Street
   Post Office Box 7880
5  San Francisco, CA  94120-7880
   Telephone: (415) 983-1000
6  Facsimile: (415) 983-1200

7  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  COMMITTEE ON JOBS CANDIDATE              No. C-07-3199 JSW
    ADVOCACY FUND and BUILDING
13  OWNERS AND MANAGERS                      **MOTION FOR PRELIMINARY
    ASSOCIATION OF SAN FRANCISCO             INJUNCTION**
14  INDEPENDENT EXPENDITURE
    POLITICAL ACTION COMMITTEE,              Date:  September 17, 2007
15  political action committees organized    Time:  1:30 p.m.
    under the laws of California and of the  Judge:  Hon. Jeffrey S. White
16  City and County of San Francisco,        Courtroom:  2

17                          Plaintiffs,      Included herein:
                                             1.  Notice of Motion and Motion
18       vs.                                 2.  Memo of Points and Authorities

19  DENNIS J. HERRERA, in his official       Filed concurrently:
    capacity as City Attorney of the City and 1.  Declaration of Nathan Nayman
20  County of San Francisco, KAMALA D.       2.  Declaration of Marc L. Intermaggio
    HARRIS, in her official capacity as      3.  Request for Judicial Notice
21  District Attorney of the City and County 4.  Proposed Order
    of San Francisco, the SAN FRANCISCO
22  ETHICS COMMISSION of the City and
    County of San Francisco, and CITY AND
23  COUNTY OF SAN FRANCISCO,

24
                            Defendants.
25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION ..................1

ISSUES TO BE DECIDED ..........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

I.      INTRODUCTION. ......................................................................................2

II.     STATEMENT OF FACTS. .........................................................................3

        A.      The Parties. ...................................................................................3

        B.      San Francisco's Limits on Independent Expenditures. ...................5

        C.      The Prior Limits Enjoined as Unconstitutional. .............................6

        D.      The Impact of Section 1.114(c) on Plaintiffs. ...............................7

III.    ARGUMENT. .............................................................................................9

        A.      Standard of Review for a Preliminary Injunction..........................9

        B.      Plaintiffs Are Likely to Succeed on the Merits and Will Suffer
                Irreparable Injury if an Injunction Does Not Issue.......................9

                1.      Plaintiffs are likely to succeed on the merits.........................9

                        a.      Because Section 1.114(c) limits independent
                                expenditures, it is subject to strict scrutiny under the
                                First Amendment. ..................................................10

                        b.      Section 1.114(c) does not serve a compelling
                                government interest. ..............................................14

                        c.      The City's ordinance is not narrowly tailored to serve
                                any compelling government interest, to the extent one
                                is discernible. .......................................................17

                2.      Plaintiffs face irreparable harm unless the Court issues a
                        preliminary injunction. ......................................................19

        C.      Plaintiffs Have Raised Serious Questions Regarding the Validity of
                Section 1.114(c) and the Balance of Hardships Tips Heavily in Their
                Favor...............................................................................20

        D.      The Court Should Waive Any Bond Requirement for Plaintiffs. ...............20

IV.     CONCLUSION. .......................................................................................21

1

# TABLE OF AUTHORITIES

2

## Cases

3  *ACLU v. Heller,*
    378 F.3d 979 (9th Cir. 2004) ................................................................. 14
4

*Alaska, ex rel. Yukon Flats School Dist. v. Native Village of Venetie,*
5      856 F.2d 1384 (9th Cir. 1988) ................................................................. 9

6  *Benda v. Grand Lodge of International Ass'n of Machinists & Aerospace Workers,*
7      584 F. 2d 308 (9th Cir. 1978) ................................................................. 9

8  *Brown v. Cal. Dept. of Transportation,*
    260 F. Supp. 2d 959 (N.D. Cal. 2003) .................................................... 19
9

*Buckley v. Valeo,*
10      424 U.S. 1 (1976) ....................................................................... passim

11  *California Medical Association v. FEC,*
    453 U.S. 182 (1981) ................................................................................ 7
12

*Citizens for Rent Control v. Berkeley,*
13      454 U.S. 290 (1981) .............................................................................. 11

14  *Colorado Republican Fed. Camp. Cmte. v. Federal Election Comm'n,*
    518 U.S. 604 (1996) .............................................................................. 16
15

*Cupolo v. Bay Area Rapid Transit,*
16      5 F. Supp. 2d 1078 (N.D. Cal. 1997) ..................................................... 20

17  *Day v. Holahan,*
    34 F.3d 1356 (8th Cir 1994) ................................................................. 16
18

*Elrod v. Burns,*
19      427 U.S. 347 (1976) .............................................................................. 19

20  *FEC v. Mass. Citizens for Life,*
    479 U.S. 238 (1986) .............................................................................. 17
21

*FEC v. Nat'l Conservative PAC,*
22      470 U.S. 480 (1985) ................................................................. 6, 7, 15, 18

23  *Let's Help Florida v. McCrary,*
    621 F.2d 195 (11th Cir. 1980) ............................................................... 16
24

*Lincoln Club v. City of Irvine,*
25      292 F.3d 934 (9th Cir. 2002) .................................................... 11, 13, 14

26  *NAACP v. Alabama,*
    357 U.S. 449 (1958) .............................................................................. 18
27

*New York Times Co. v. Sullivan,*
28      376 U.S. 254, 266 (1966) ...................................................................... 17

*OakPAC v. City of Oakland*,
 No. 06-CV-06366-MJJ (N.D. Cal. Oct. 19, 2006) ........................................... passim

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
 944 F.2d 597 (9th Cir. 1991) ................................................................................. 9, 19

*Republic of the Philippines v. Marcos*,
 862 F.2d 1355 (9th Cir. 1988) ...................................................................................... 20

*Roth v. U.S.*,
 354 U.S. 476 (1957) ......................................................................................................... 17

*S.O.C., Inc. v. County of Clark*,
 1522 F.3d 1136 (9th Cir. 1998) ..................................................................................... 19

*Sammartano v. First Judicial District Court*,
 303 F.3d 959 (9th Cir. 2002) ......................................................................................... 19

*San Franciscans for Sensible Government v. Renne*,
 No. 99-16995 (9th Cir. Oct. 20, 1999) .......................................................................... 7

*San Franciscans for Sensible Government v. Renne*,
 No. C-99-02456-CW (N.D. Cal. 1999) ................................................................... passim

*San Jose Silicon Valley Chamber of Commerce PAC v. City of San Jose*,
 No. C 06-04252-JW, 2006 WL 3832794 (N.D. Cal. Sept. 20, 2006) .............. passim

*San Jose Silicon Valley Chamber of Commerce Political Action Committee
 v. City of San Jose*,
 USCA No. 06-17001 (9th Cir. Oct. 25, 2006)........................................................ 12

**Statutes and Codes**

California Government Code
 Section 82013 ...................................................................................................... 3
 Section 82015 ...................................................................................................... 4
 Section 82031 ...................................................................................................... 4

City of Irvine Campaign Finance Law
 Section 1-2-404(B) ............................................................................................ 11

Oakland Municipal Code
 Section 3.12.050(E) ......................................................................................... 13
 Section 3.12.060(E) ......................................................................................... 13

San Francisco Administrative Code
 Section 16.508(b) ................................................................................................ 6

San Francisco Campaign and Governmental Conduct Code
 Section 1.104(g) .................................................................................................. 5
 Section 1.114(c)(1) ..................................................................................... passim
 Section 1.114(c)(2) ..................................................................................... passim
 Section 1.164 ...................................................................................................... 5
 Section 1.168 ...................................................................................................... 5

United States Code
    Title 2, section 301(17)............................................................................ 4

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 65(c) ............................................................................ 20, 21

San Francisco Ethics Commission Regulations to the Campaign Finance
    Reform Ordinance
    Section 1.114-2 ............................................................... passim

**Other Authorities**

San Francisco Ballot Propositions
    Proposition O (2000) .................................................... 7, 8, 14

1    **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that at 1:30 p.m. on Monday, September 17, 2007, or as

4    soon thereafter as counsel can be heard, in the courtroom of the Honorable Jeffrey S. White,

5    Judge of the United States District Court for the Northern District of California, located at

6    450 Golden Gate Avenue, 17th Floor, Courtroom 2, Plaintiffs **COMMITTEE ON JOBS**

7    **CANDIDATE ADVOCACY FUND** and **BUILDING OWNERS AND MANAGERS**

8    **ASSOCIATION OF SAN FRANCISCO INDEPENDENT EXPENDITURE PAC**

9    ("Plaintiffs") will and hereby do move the Court for a preliminary injunction enjoining

10    Defendants Dennis J. Herrera, Kamala D. Harris, the San Francisco Ethics Commission and

11    the City and County of San Francisco ("City"), along with all of Defendants' agents and

12    employees, from enforcing or otherwise giving effect to sections 1.114(c)(1) and

13    1.114(c)(2) of the San Francisco Campaign Finance Reform Ordinance ("CFRO"), codified

14    in the San Francisco Campaign and Governmental Conduct Code, and Regulation 1.114-2

15    of the Regulations to the CFRO ("CFRO Reg. 1.114-2"), to the extent that they limit

16    contributions and expenditures by committees that make independent expenditures

17    supporting or opposing candidates in City elections, and both therefore violate the First and

18    Fourteenth Amendments to the Constitution of the United States.  Plaintiffs further request

19    the preliminary injunction remain in effect during the pendency of this case.  This motion is

20    based on this notice, the following memorandum of points and authorities, the declarations

21    of Nathan Nayman and Marc L. Intermaggio, the request for judicial notice and the

22    proposed order filed herewith, the Complaint, all papers filed and proceedings held in this

23    case, and such other matters as the Court may consider.

24    **ISSUES TO BE DECIDED**

25    1.    Do CFRO §§ 1.114(c)(1) and 1.114(c)(2) and CFRO Reg. 1.114-2—which

26    limit the amount of money political committees can raise and spend on independent

27    expenditures in City elections—violate the free speech and associational guarantees of the

28    First and Fourteenth Amendments to the Constitution of the United States?

1    2.    If so, should the Court preliminarily enjoin Defendants from enforcing these

2    provisions in upcoming City elections, as Judges Ware and Jenkins have done with respect

3    to similar restrictions imposed by the cities of San Jose and Oakland?

4    **MEMORANDUM OF POINTS AND AUTHORITIES**

5    **I.    INTRODUCTION.**

6        San Francisco limits campaign fundraising and spending by candidates and their

7    campaign committees; this action does not challenge those limits.  San Francisco also limits

8    political speech by groups of people who are independent of candidates and their campaign

9    committees; this action does challenge those limits.  Two judges of this Court (Judges Ware

10   and Jenkins) have already enjoined similar ordinances in San Jose and Oakland.  A third

11   judge of this Court (Judge Wilken) enjoined San Francisco's previous (and barely different)

12   version of this ordinance.  By this motion, Plaintiffs seek similar relief here.

13       Plaintiffs are political committees who engage in independent speech in support of

14   or against candidates for elective office.  Plaintiffs are independent; they do not coordinate

15   their efforts with any candidate or campaign committee.  In the parlance of campaign

16   finance law, Plaintiffs' efforts are called "independent expenditures" and those who make

17   such expenditures are called "independent expenditure committees."

18       The CFRO restricts the amount of money people can give to committees like

19   Plaintiffs and the amount of money that such committees can spend on political speech.

20   Section 1.114(c)(1) bars anyone from giving more than $500 a year to any one committee

21   making independent expenditures in San Francisco elections.  Section 1.114(c)(2) bars

22   anyone from giving more than an aggregate of $3,000 a year to all committees making

23   independent expenditures.  Both make it unlawful for committees to accept contributions in

24   excess of those limits.  Both, as implemented by CFRO Reg. 1.114-2, severely limit the

25   amount of money that Plaintiffs, other committees and the people who support them can

26   spend on independent expenditures, and therefore severely curtail political speech and the

27   freedom of association.  The ordinances and regulations have harmed and, if left intact, will

28   continue to harm Plaintiffs' ability to make independent expenditures, particularly in the

1    days and weeks before the general election set for November 6, 2007.

2           The CFRO's restrictions prevent like-minded persons – whether they be CEOs or

3    tradesmen, atheists or the faithful – from banding together to amplify their point of view in

4    the political process.  In San Francisco, two people, though they be independent of any

5    candidate or campaign committee, cannot join together to spend even $1,001 to advocate

6    the election of a candidate for office.  But one wealthy person, acting independently, can

7    spend $1,001—or a thousand times that amount—to support the same candidate.  The

8    Constitution forbids this anomaly.

9           This Court has consistently held that limits on independent expenditures such as

10   those challenged here violate the First Amendment.  In 1999 Judge Wilken enjoined an

11   earlier and substantially similar ordinance.  More recently, Judges Ware and Jenkins have

12   held similar limits on independent expenditure committees unconstitutional, and have

13   enjoined their enforcement.  San Francisco's laws, which squelch political speech and

14   impede the freedom of association, should meet the same fate.  The Court should grant this

15   motion and preliminarily enjoin Defendants from enforcing the City's independent

16   expenditure limits.

17   **II.       STATEMENT OF FACTS.**

18   **A.       The Parties.**

19          Plaintiffs are "committees" (within the meaning of Cal. Gov't Code § 82013)[1] that

20   make "independent expenditures" supporting or opposing candidates for political office.

21   _____

22   [1]       Cal. Gov't Code § 82013 defines a "committee" as

23          any person or combination of persons who directly or indirectly does any of
             the following:

24          (a)      Receives contributions totaling one thousand dollars ($1,000) or
25   more in a calendar year.

          (b)      Makes independent expenditures totaling one thousand dollars
26   ($1,000) or more in a calendar year; or

27          (c)      Makes contributions totaling ten thousand dollars ($10,000) or more
             in a calendar year to or at the behest of candidates or committees.

28

1  Declaration of Nathan Nayman ("Nayman Decl."), filed herewith, ¶ 6; Declaration of Marc

2  Intermaggio ("Intermaggio Decl."), filed herewith, ¶ 6.  An "independent expenditure" is

3  "an expenditure made by any person in connection with a communication which expressly

4  advocates the election or defeat of a clearly identified candidate . . . or taken as a whole and

5  in context, unambiguously urges a particular result in an election but which is not made to

6  or at the behest of the affected candidate or committee."  Cal. Gov't Code § 82031; *see also*

7  2 U.S.C. § 301(17).  In contrast, expenditures made to or at the behest of a candidate or a

8  campaign committee are considered campaign contributions and not independent

9  expenditures.  *See* Cal. Gov't Code § 82015.

10      Plaintiff **COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND** ("JOBS

11  Fund") was established as a political action committee in 1999 for the purpose of making

12  independent expenditures to support City candidates who support economic development.

13  Nayman Decl. ¶¶ 4-6.  Committee on JOBS ("JOBS"), a California nonprofit mutual

14  benefit corporation founded in 1991, created the JOBS Fund as part of its mission to

15  enhance and revitalize the business conditions and environment for individuals and

16  organizations doing business in San Francisco.  *Id.* ¶¶ 2, 5.

17      Plaintiff **BUILDING OWNERS AND MANAGERS ASSOCIATION OF SAN**

18  **FRANCISCO INDEPENDENT EXPENDITURE POLITICAL ACTION**

19  **COMMITTEE** ("BOMA IE PAC") was formed as a political action committee in 1999 for

20  the purpose of making independent expenditures to support candidates for local elective

21  office who will promote the goals of the commercial real estate industry, the broader

22  business community and residents of San Francisco.  Intermaggio Decl. ¶¶ 4-5.  BOMA IE

23  PAC was organized by the Building Owners and Managers Association of San Francisco

24  ("BOMA-SF"), a California nonprofit mutual benefit corporation.  *Id.* ¶¶ 2, 4.  The primary

25  goal of BOMA-SF is to advance the commercial real estate industry in San Francisco, San

26  Mateo, Marin and Sonoma Counties through advocacy, professional development and

27  information exchange.  *Id.* ¶ 2.

28      Defendants are City Attorney Dennis Herrera, District Attorney Kamala Harris, the

1    San Francisco Ethics Commission and the City and County of San Francisco.  The

2    individuals and the Ethics Commission are named as defendants because the CFRO gives

3    them the job of enforcing the limits challenged by this lawsuit.  CFRO §§ 1.104(g), 1.164,

4    1.168.[2]

5    **B.    San Francisco's Limits on Independent Expenditures.**

6        Plaintiffs challenge Sections 1.114(c)(1) and 1.114(c)(2) of the Ordinance

7    (collectively, "Section 1.114(c)"), which restrict contributions to independent expenditure

8    committees:

9            (c)        LIMITS ON CONTRIBUTIONS TO COMMITTEES.

10           (1)        Per Committee Limit. No person shall make, and no committee
             treasurer shall solicit or accept, any contribution which will cause the total
11           amount contributed by such person to the committee to exceed $500 per
             calendar year.

12           (2)        Overall Limit. No person shall make, and no committee treasurer
             shall solicit or accept, any contribution which will cause the total amount
13           contributed by such person to all committees to exceed $3,000 per calendar
             year.

14           (3)        Definitions. For purposes of this Subsection, "committee" shall mean
             any committee making expenditures to support or oppose a candidate, but
15           shall not include candidates' campaign committees.

16    CFRO § 1.114(c).  Thus, a person can contribute no more than $500 a year to a committee

17    for the purpose of making independent expenditures in support of or opposition to all the

18    candidates running for City office — no matter how many offices are on the ballot or how

19    many candidates are competing for those offices.  *Id.* § 1.114(c)(1).  A person also cannot

20    give more than $3,000 in the aggregate to all independent expenditure committees per

21    calendar year.  *Id.* § 1.114(c)(2).  In other words, if a person contributes the maximum

22    allowable amount of $500 to committees making independent expenditures, he or she can

23    give to no more than six committees.

24        CFRO Reg. 1.114-2 closes the loop by permitting independent expenditures only if

25    they are funded by contributions that abide by these limits:

26    _____

27    [2]        The CFRO is codified in the San Francisco Campaign and Governmental Conduct
      Code and is set forth in full as an attachment to the Complaint and as Exhibit C to
28    Plaintiffs' Request for Judicial Notice ("RFJN"), filed herewith.

1        (2) Exception.  A committee may solicit and accept contributions in excess of the limits established by section 1.114(c) if the committee makes

2        expenditures for any lawful purpose other than supporting or opposing candidates for City elective office, provided that funds received from

3        contributions in excess of the limits set forth in section 1.114(c) are used only for lawful purposes other than supporting or opposing candidates for

4        City elective office.

5  CFRO Reg. 1.114-2(a)(2) (the Regulations are set forth in full as Exhibit B to the RFJN).

6  In other words, a person can give and a committee can receive contributions that exceed the

7  limits set forth in Section 1.114(c), but the committee is expressly forbidden from using

8  amounts in excess of the limits to fund independent expenditures.

9  **C.**      **The Prior Limits Enjoined as Unconstitutional.**

10        On September 8, 1999, Judge Wilken enjoined the City from enforcing a similar

11  ordinance that limited contributions to independent expenditure committees.  At the time,

12  Section 16.508(b) of the San Francisco Administrative Code provided that

13        For candidates who adopt the expenditure ceilings [of this] Chapter, no person other than a candidate shall make, and no campaign treasurer shall

14        accept, any contribution which will cause the total amount contributed by such person with respect to a single election in support of or opposition to

15        such candidate, *including contributions to political committees supporting or opposing such candidate*, to exceed $500.

16

17  *San Franciscans for Sensible Government v. Renne*, No. C-99-02456-CW (N.D. Cal. 1999)

18  (emphasis added), RFJN Ex. H, at 3.  The City Attorney had interpreted section 16.508(b)

19  to bar individuals from contributing more than $500 in the aggregate to a candidate's

20  campaign and to committees making independent expenditures to support that particular

21  candidate.  *Id.* at 5-8.  The District Attorney dissented from the City Attorney's position,

22  stating that "'attempting to control independent committee expenditures (by improperly

23  controlling contributions) [is] contrary to the mandates of [*Federal Election Comm'n v.*

24  *National Conservative PAC*, 470 U.S. 480 (1985)].'"  *Id.* at 6-7; *see also id.* at 8.

25        A non-profit corporation, its political committee and an individual contributor to the

26  committee filed suit in this Court and moved for a preliminary injunction against the City's

27  contribution limits as they applied to committees making independent expenditures.

28  Observing that "the Supreme Court has indicated that making contributions to PACs and

1    political parties, which make only independent expenditures and neither make contributions

2    to, nor coordinate their expenditures with, candidates or candidate-controlled committees, is

3    highly protected speech and may not be regulated," Judge Wilken granted the motion.  *Id.*

4    at 13 & n. 2 (citing *California Medical Association v. FEC*, 453 U.S. 182, 197-99 (1981)

5    (plurality opinion); *id.* at 202-03 (Blackmun, J., concurring); and *Federal Election Comm'n*

6    *v. National Conservative PAC*, 470 U.S. 480, 497-98 (1985)).  Finding that the City's

7    restrictions imposed just such a regulation, Judge Wilken enjoined the City

8         from enforcing § 16.508 of the Ordinance *to the extent that it limits the*
          *amount that an individual or entity may contribute to independent political*
9         *action committees that have made and will make only independent*
          *expenditures in support of or in opposition to a candidate* and that neither
10        make direct contributions to a candidate or candidate-controlled committee
          nor coordinate their expenditures with a candidate or candidate-controlled
11        committee.

12   *Id.* at 16 (emphasis added).  The Ninth Circuit affirmed.  *San Franciscans for Sensible*

13   *Government v. Renne,* No. 99-16995 (9th Cir. Oct. 20, 1999) (attached as Ex. I to the

14   RFJN).  The parties thereafter settled the case, with the City agreeing not to enforce the

15   limits the Court had enjoined.  RFJN Ex. J, at 9 (stipulated judgment).

16        Undeterred, the next year Defendant San Francisco Ethics Commission promoted a

17   ballot measure (Proposition O) containing restrictions on independent expenditure

18   committees similar to those enjoined in *SFSG*.  RFJN Ex. A (2000 San Francisco ballot

19   pamphlet, Proposition O and arguments for and against).  Proposition O was approved in

20   the 2000 election and it took effect at the beginning of 2001.  RFJN Ex. C.  The measure

21   became part of the Ordinance at issue in this litigation, including the independent

22   expenditure contribution limits now set forth in Section 1.114(c).

23   **D.    The Impact of Section 1.114(c) on Plaintiffs.**

24        The limits set by Section 1.114(c) severely restrict Plaintiffs' ability to communicate

25   their political messages to San Francisco voters.  Nayman Decl. ¶¶ 13-20; Intermaggio

26   Decl. ¶¶ 15-19.  If Plaintiffs were not constrained by the $500 and $3,000 aggregate limits,

27   they would be able to, and would, raise and spend more money communicating their

28   political messages more effectively and to more voters.  Nayman Decl. ¶¶ 13-20;

1    Intermaggio Decl. ¶¶ 15-19.

2        Between the *Renne* decision and the time Proposition O took effect, San Francisco

3    did not impose any limits on contributions to JOBS Fund.  JOBS Fund received $170,284

4    from JOBS's members in calendar year 1999, and $785,000 in calendar year 2000.

5    Nayman Decl. ¶ 15.  Beginning with calendar year 2001, JOBS Fund has received an

6    average of only $4,208 per calendar year.  *Id.*  In 2004, JOBS Fund made an independent

7    expenditure of $9,000 to oppose the candidacy of a supervisor.  *Id.* ¶ 16.  Because of the

8    City's limits, it was extremely difficult to raise the money to pay for that expenditure.  *Id.*

9        In 2006, JOBS's members considered making independent expenditures to oppose

10    certain political candidates, but decided that Section 1.114(c)'s limits would prevent them

11    from having any impact on voters.  *Id.* ¶ 17.  Because Section 1.114(c) has made it so

12    difficult to advocate effectively in support of or in opposition to candidates, JOBS's

13    members have largely re-channeled their efforts into ballot initiatives, as San Francisco

14    cannot impose limits on contributions for or against ballot initiatives.  *Id.* ¶¶ 19-23.  (Thus,

15    perhaps unwittingly, San Francisco encourages people to seek political change through

16    ballot initiatives rather than through their elected representatives.)

17        BOMA IE PAC also has lacked money for independent expenditures as a result of

18    Section 1.114(c).  Intermaggio Decl. ¶¶ 15-17.  Although the IE PAC has raised some

19    money from BOMA-SF's members for independent expenditures, if Section 1.114(c) were

20    not in place, the IE PAC could have communicated its views on candidates for City office

21    far more often and far more effectively.  *Id.*  As with JOBS, Section 1.114(c) has forced

22    BOMA-SF's members to devote most of their attention to ballot initiatives.  *Id*. ¶¶ 18-22.

23        On November 6, 2007, the City will hold elections for the offices of Mayor, District

24    Attorney and Sheriff.  Plaintiffs wish to make various independent expenditures to support

25    or oppose candidates in the 2007 election, as they have done in past San Francisco

26    elections, but the Ordinance will restrict their ability to do so.  Nayman Decl. ¶¶ 12-13, 16,

27    24; Intermaggio Decl. ¶¶ 13-15, 23.  Plaintiffs are currently attempting to chart a course of

28    action for making independent expenditures for the election, but the restrictions imposed by

1    Section 1.114(c) are substantially impeding their ability to do so.  Nayman Decl. ¶ 24;

2    Intermaggio Decl. ¶ 23.  Members' contributions to the JOBS Fund and BOMA IE PAC

3    would have been greater this year (and in years past) but for the limits imposed by Section

4    1.114(c) of the Ordinance.  Nayman Decl. ¶¶ 14-15, 17; Intermaggio Decl. ¶¶ 16.  Thus,

5    Section 1.114(c) restricts and will continue to restrict Plaintiffs' ability to make

6    independent expenditures in support of or in opposition to San Francisco candidates.

7    Nayman Decl. ¶¶ 10-20; Intermaggio Decl. ¶¶ 10-19.

8    **III.    ARGUMENT.**

9    **A.    Standard of Review for a Preliminary Injunction.**

10        A party seeking a preliminary injunction must show "either (1) a combination of

11    probable success on the merits and the possibility of irreparable injury or (2) that serious

12    questions are raised and the balance of hardships tips sharply in its favor."  *Rent-A-Center,*

13    *Inc. v. Canyon Television and Appliance Rental, Inc.,* 944 F.2d 597, 602 (9th Cir. 1991)

14    (internal quotes omitted).  These are not separate tests, but the "outer reaches of a single

15    continuum."  *Benda v. Grand Lodge of International Ass'n of Machinists & Aerospace*

16    *Workers*, 584 F. 2d 308, 315 (9th Cir. 1978).  "The critical element in determining the test

17    to be applied is the relative hardship to the parties.  If the balance of harm tips decidedly

18    toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the

19    merits as when the balance tips less decidedly."  *Alaska, ex rel. Yukon Flats School Dist. v.*

20    *Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988).  The impact on the public

21    interest is also a factor to consider when balancing the hardship to the parties.  *Id.*

22        Plaintiffs meet all of these requirements and are accordingly entitled to a

23    preliminary injunction against Defendants' enforcement of Section 1.114(c).

24    **B.    Plaintiffs Are Likely to Succeed on the Merits and Will Suffer Irreparable**

25    **    Injury if an Injunction Does Not Issue.**

26    **1.    Plaintiffs are likely to succeed on the merits.**

27        As Judge Wilken decided with respect to the predecessor to Section 1.114(c),

28    Plaintiffs are likely to succeed on the merits of their challenge because the limits on

1  independent expenditure committees set forth in Section 1.114(c) violate Plaintiffs' First

2  Amendment rights.

3  **a.    Because Section 1.114(c) limits independent expenditures, it is subject to strict**

4       **scrutiny under the First Amendment.**

5       Limits on independent expenditure committees trigger strict scrutiny — the most

6  exacting form of judicial review required by the Constitution.

7       In *Buckley v. Valeo,* 424 U.S. 1, 20 (1976), the Supreme Court's seminal decision

8  regarding the constitutionality of campaign finance regulation, the Court drew a distinction

9  between limits on expenditures by candidates and political committees, which are subject to

10 strict scrutiny, and limits on contributions to committees affiliated with candidates, which

11 are subject to a more relaxed form of judicial scrutiny.  Limits on expenditures require strict

12 scrutiny because

13       restriction[s] on the amount of money a person or group can spend on
         political communication during a campaign necessarily reduce[s] the
14       quantity of expression by restricting the number of issues discussed, the
         depth of their exploration, and the size of the audience reached.  This is
15       because virtually every means of communicating ideas in today's mass
         society requires the expenditure of money.  The distribution of the humblest
16       handbill or leaflet  entails printing, paper, and circulation costs.  Speeches
         and rallies generally necessitate hiring a hall and publicizing the event.  The
17       electorate's increasing dependence on television, radio, and other mass
         media for news and information has made these expensive modes of
18       communication indispensable instruments of effective political speech.

19 *Id.* at 19.

20       At first blush, *Buckley* would seem to draw a bright line between limits on

21 expenditures (subject to strict scrutiny) and limits on contributions (subject to lesser

22 scrutiny).  But courts have not always observed that bright line — particularly, where, as

23 here, a limit on contributions restrains expenditures.  Thus, the Supreme Court struck down

24 Berkeley's limit on contributions to committees making expenditures to support or oppose

25 ballot measures, reasoning:

26       [A]n individual may make expenditures without limit under [the challenged
         ordinance] but may not contribute beyond the $250 limit when joining with
27       others to advocate common views.  The contribution limit thus automatically
         affects expenditures, and limits on expenditures operate as a direct restraint

28

1    on freedom of expression of a group or committee desiring to engage in
     political dialogue concerning a ballot initiative.

2

3    *Citizens for Rent Control v. Berkeley,* 454 U.S. 290, 299 (1981); *see also id.* at 299-300

4    ("Placing limits on contributions which in turn limit expenditures plainly impairs freedom

5    of expression.").

6        *Lincoln Club v. City of Irvine,* 292 F.3d 934, 938 (9th Cir. 2002) is the controlling

7    Ninth Circuit authority dealing with limits on contributions to committees who make

8    independent expenditures to support or oppose candidates for office. *Lincoln Club* stands

9    for the proposition that such limits must be subjected to strict scrutiny. In that case, the

10   City of Irvine's ordinance prohibited any person, including any political committee, who

11   "makes any independent expenditure during an election cycle in support of or opposition to

12   any City candidate," from accepting during the same election cycle any contribution from

13   any person that exceeded $320. *Id.* at 938 (quoting Section 1-2-404(B) of Irvine's

14   Campaign Financing Law). The practical effect of Irvine's ordinance was to bar the

15   Lincoln Club from making any independent expenditures, because club dues exceeded the

16   statutory limit. *Id.* Such contribution limits, the court noted, constituted an expenditure

17   limit and triggered strict scrutiny because they "place a substantial burden on protected

18   speech (*i.e.*, barring expenditures) . . . ." *Id.* at 939.

19       In applying strict scrutiny, the *Lincoln Club* court distinguished *Buckley* (which

20   dealt with contribution limits to candidates, not independent expenditure committees),

21   noting that "[n]early all of the Supreme Court and Ninth Circuit cases that have considered

22   the constitutionality of contribution limitations, however, have done so in the context of

23   *contributions to candidates* . . . ." *Id.* at 937 (emphasis in original). The court concluded

24   that cases dealing with limits on contributions to candidates did not provide the proper level

25   of scrutiny for "an Ordinance that acts as both an expenditure and a contribution

26   limitation." *Id.*

27       Judges Ware and Jenkins also applied strict scrutiny in striking down limits on

28   independent expenditure committees analogous to those at issue here. In *San Jose Silicon*

1    *Valley Chamber of Commerce PAC v. City of San Jose,* No. C 06-04252-JW, 2006 WL

2    3832794 (N.D. Cal. Sept. 20, 2006) ("*COMPAC*"), Judge Ware considered the

3    constitutionality of a San Jose ordinance that prevented any person from making or

4    receiving "any contribution to or on behalf of an independent committee expending funds

5    or making contributions in aid of and/or opposition to the nomination or election of

6    candidates for city council or mayor which will cause the total amount contributed by such

7    person to exceed [$250] per election." *Id.* at *2.  The ordinance also required that

8    independent committees segregate contributions received or expenditures made for the

9    purpose of influencing such elections from all other contributions or expenditures.  *Id.*  The

10   ordinance permitted contributions to committees in excess of the $250 limit, "so long as no

11   portion of the contribution in excess [thereof] is used to influence San Jose council or

12   mayoral elections." *Id.*  The court held that San Jose's ordinance thus "serve[d] as a

13   content-based expenditure limit — independent committees may spend only $250 per

14   donor, if they are spending to aid or oppose a candidate for San Jose municipal office." *Id.*

15   at *5.  As such, the "appropriate level of constitutional review is strict scrutiny:  the

16   restriction must be narrowly tailored to serve an overriding state interest." *Id.* at *6.[3]

17        In *OakPAC v. City of Oakland*, No. 06-CV-06366-MJJ (N.D. Cal. Oct. 19, 2006),

18   Judge Jenkins considered the constitutionality of an Oakland ordinance that prohibited any

19   person or political committee "that makes independent expenditures supporting or opposing

20   a candidate" from accepting "any contribution for the purpose of influencing elections for

21   city office in excess of" $250 or $100, depending on whether the recipient constituted a

22   "broad-based political committee" or not.[4]  The ordinance permitted contributions to such

23   ─────────────────────

24   [3]    The *COMPAC* defendants have appealed the preliminary injunction order.  *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*,
25   USCA No. 06-17001 (9th Cir. Oct. 25, 2006) (docketing appeal).  The briefs in the appeal are fully submitted; the Ninth Circuit has not yet scheduled oral argument.

26   [4]    A copy of Judge Jenkins' Temporary Restraining Order ("TRO," Dkt. 21 in 06-CV-06366)) is attached as Exhibit E to Plaintiffs' RFJN.  The TRO does not quote the
27   relevant sections of the ordinance (Oak. Mun. Code §§ 3.12.050 & 3.12.060), but they are set forth as Exhibit D to the RFJN.

28

1    persons or committees exceeding the prescribed limits, "so long as no portion of the

2    contribution in excess of the [limits] is used to influence elections for city office."  Oak.

3    Mun. Code §§ 3.12.050(E); 3.12.060(E).

4        In considering the plaintiffs' request for a TRO, Judge Jenkins noted that Oakland's

5    "limits on contributions to independent political committees are triggered only by the

6    content of the speech conducted by the committee, *i.e.*, speech expressly advocating the

7    election or defeat of a candidate."  RFJN Ex. E, at 2.  The Court reasoned that "[b]y

8    limiting the source of funds available for political committees to conduct independent

9    expenditures, [the] challenged provisions act as both a limit on contributions to the

10   committee *and as a limit on its expenditures*."  *Id.* (citing *Lincoln Club*, 292 F.3d at 939)

11   (emphasis in original).  Noting that "in such instances, courts apply strict scrutiny to assess

12   the constitutionality of the regulation," the Court went on to enter the TRO.  *Id.* at 3 (citing

13   *Lincoln Club*, 292 F.3d at 937-39).[5]

14       Section 1.114(c) operates in the same manner as the limits enjoined by *Lincoln*

15   *Club*, *COMPAC* and *OakPAC*.  It dramatically limits the money that Plaintiffs can raise to

16   fund independent speech, diminishing their political voice in City elections.  Because

17   Section 1.114(c) "limit[s] the source of funds available for [Plaintiffs] to conduct

18   independent expenditures," it limits the "quantity of expression" that Plaintiffs may engage

19   in and must accordingly be subjected to strict scrutiny.  *OakPAC*, RFJN Ex. E, at 2-3;

20   *Buckley*, 424 U.S. at 21; *see also Lincoln Club*, 292 F.3d at 939; *COMPAC*, 2006 WL

21   3832794, at *6.

22       Defendants may argue that Section 1.114(c) differs from the limits at issue in

23   *COMPAC* and *OakPAC* on the theory that Section 1.114(c) only limits contributions to

24   committees making independent expenditures, not the expenditures themselves.  This is a

25   distinction without a difference.  The net effect of all three ordinances is the same:  each

26   _____

27   [5]     After the court issued the TRO, it issued a stipulated order staying the case pending
         the outcome of the appeal of the *COMPAC* litigation.  *See OakPAC*, Stipulated Stay
28       Order, Dkt. 32 (Dec. 18, 2006), attached as Exhibit F to the RFJN.

1    constrains how much money committees can spend on independent expenditures.

2    Section 1.114(c) cuts off the source of the expenditures, namely, the members'

3    contributions that pay for them.  The ordinances at issue in *Lincoln Club* and *SFSG* were

4    precisely the same in this respect — and were still subjected to strict scrutiny and found

5    unconstitutional.

6        Here, CFRO Reg. 1.114-2 eliminates any doubt about whether San Francisco's law

7    reaches expenditures.  It provides that a person can give — and a committee can receive —

8    contributions that exceed the limits set forth in Section 1.114(c), but the committee cannot

9    use any amounts in excess of the limits to fund independent expenditures.  As implemented,

10   Section 1.114(c) is therefore no different than the limits at issue in *COMPAC* and *OakPAC*,

11   and is a direct restraint on independent expenditures by political committees.  Accordingly,

12   Section 1.114(c) must be subjected to strict scrutiny.

13   **b.    Section 1.114(c) does not serve a compelling government interest.**

14       An ordinance subject to strict scrutiny can pass muster only if it serves a compelling

15   governmental interest and is narrowly tailored to serve that interest.  *ACLU v. Heller*,

16   378 F.3d 979, 992-93 (9th Cir. 2004); *COMPAC*, 2006 WL 3832794, at *6.  Section

17   1.114(c) does not serve a compelling government interest.  In fact, it is unclear what

18   purpose Section 1.114(c) is supposed to serve.  Section 1.100(b) of the Ordinance lists

19   eleven purposes for the Ordinance as a whole, but does not state which apply to

20   Section 1.114(c) — only one of the eleven refers to independent expenditures (number 7).[6]

21

22   _____

23   [6]    The "Proponent's Argument" that Defendant Ethics Commission published in the
     ballot pamphlet in favor of Proposition O (which when passed in 2000 became the
     Ordinance), does little to illuminate the purpose of the limits now codified in Section
24   1.114(c).  It stated:

25       Currently, there is no limit on contributions to independent committees.  *To
26   reduce the influence of large contributions on elected officials*, the Ethics
     Commission proposes a limit of $500 on the amount a person or entity may
27   contribute to each independent committee and an overall limit of $3,000 per
     year on the amount a donor may contribute to all such committees. . . .

28                                                          (continued…)

1    Regardless, none of the purposes listed in Section 1.100(b) constitutes a compelling

2    government interest for limiting contributions to independent expenditure committees.  Of

3    the eleven purposes, only these might arguably pertain to Section 1.114(c):

4              . . . .

5         (2)   Ensure that all individuals and interest groups in our city have a fair
          opportunity to participate in elective and governmental processes;

6         (3)   Create an incentive to limit overall expenditures in campaigns, thereby
          reducing the pressure on candidates to raise large campaign war chests for
7         defensive purposes beyond the amount necessary to communicate
          reasonably with voters;

8         (4)   Reduce the advantage of incumbents and thus encourage competition
          for elective office;
9
          . . . .
10
          (6)   Ensure that serious candidates are able to raise enough money to
11        communicate their views and positions adequately to the public, thereby
          promoting public discussion of the important issues involved in political
12        campaigns;

13        (7)   Limit contributions to candidates and committees, *including committees
          that make independent expenditures*, to eliminate or reduce the appearance
14        or reality that large contributors may exert undue influence over elected
          officials . . . .

15   CFRO § 1.100(b) (emphasis added).

16            Purpose (7)—the only one that actually mentions independent expenditures—

17   indicates that the Ordinance aims to prevent corruption or the appearance thereof.  But this

18   goal is not served by limits on contributions to independent political committees.  In *FEC v.*

19   *Nat'l Conservative PAC,* 470 U.S. 480, 501 (1985) ("*NCPAC*"), the Supreme Court

20   emphatically rejected the notion that independent expenditures by political committees can

21   be linked to any candidate corruption or the appearance of candidate corruption.  Preventing

22   corruption and the appearance of corruption only justifies the regulation of campaign

23   activity *coordinated with candidates,* not the *independent* activities of political committees,

24   because "the absence of prearrangement and coordination undermines the value of the

25   expenditure to the candidate and thereby alleviates the danger that expenditures will be

26   ────────────────────
     (…continued)

27   *See* RFJN Ex. A, at P-212 (November 7, 2000 ballot, Proposition O and arguments for and
     against) (emphasis added).
28

1   given as a *quid pro quo* for improper commitments from the candidate." *NCPAC,* 470 U.S.

2   at 497-98; *see also California Medical Association,* 453 U.S. at 203 ("In contrast,

3   contributions to a committee that makes only independent expenditures pose no such threat

4   [of corruption].") (Blackmun, J., concurring); *Day v. Holahan,* 34 F.3d 1356, 1365 (8th Cir.

5   1994) ("And the concern of a political *quid pro quo,* for large contributions, which becomes

6   a possibility when the contribution is to an individual candidate . . . is not present when the

7   contribution is given to a political committee or fund that by itself does not have legislative

8   power."); *OakPAC*, RFJN Ex. E, at 3 ("[B]ecause independent expenditures must be

9   conducted without the input or knowledge of the benefiting candidate, the Court finds no

10  basis in the record before it to support limits on contributions to independent expenditure

11  committees under the anti-corruption rationale.").[7]

12      The risk of corruption is particularly slight when the contribution to fund an

13  independent expenditure is made through a political committee.  As the Supreme Court has

14  stated, "[i]f anything, an independent expenditure made possible by a $20,000 donation, but

15  controlled and directed by a party rather than the donor, would seem less likely to corrupt

16  than the same (or a much larger) independent expenditure made directly by that donor."

17  *Colorado Republican Fed. Camp. Cmte. v. Federal Election Comm'n,*  518 U.S. 604, 617

18  (1996) (plurality op.).  Section 1.114(c) does not serve a compelling government interest.[8]

19  _____

20  [7]      Indeed, *Buckley* upheld limits on contributions to candidates under the Federal
         Election Campaign Act of 1971 only to counter the possibility that "large contributions
21       are given to secure a political *quid pro quo* from current and potential officeholders."
         *Buckley,* 424 U.S. at 26; *see also Let's Help Florida v. McCrary*, 621 F.2d 195, 199 (11th
22       Cir. 1980) ("The sole governmental interest that the Supreme Court recognized as a
         justification for restricting contributions was the prevention of quid pro quo corruption
23       between a contributor and a candidate.").

24  [8]      Purposes (2), (3), (4) and (6) seek to limit both contributions and expenditures –
         political speech – by some citizens in an attempt to improve the ability of other
25       individuals, interest groups, and candidates to communicate with the electorate.  But
         playing favorites among these speakers is not a legitimate government interest, much less
26       a compelling one.  Indeed, the Supreme Court rejected this rationale thirty years ago in
         *Buckley:*

27       But the concept that government may restrict the speech of some elements of
         our society in order to enhance the relative voice of others is wholly foreign
28                                                                              (continued…)

1    **c.    The City's ordinance is not narrowly tailored to serve any compelling**

2    **government interest, to the extent one is discernible.**

3    Even if Section 1.114(c) did serve a compelling government interest, it would still

4    fail the First Amendment's strict scrutiny analysis because it is not narrowly tailored.  As

5    the Supreme Court has warned, "[w]here at all possible, government must curtail speech

6    only to the degree necessary to meet the particular problem at hand, and must avoid

7    infringing on speech that does not pose the danger that has prompted regulation."  *FEC v.*

8    *Mass. Citizens for Life,* 479 U.S. 238, 265 (1986).  Section 1.114(c) unduly burdens the

9    freedoms of both speech and association[9] of Plaintiffs and individuals who wish to make

10    independent expenditures to express political viewpoints.

11    While Section 1.114(c) rightly places no limits on the amount an individual can

12    spend on candidate advocacy from his or her own funds (*see Buckley,* 424 U.S. at 39-55), it

13    bars individuals from pooling their money and spending more than $500 apiece supporting

14    or opposing a City candidate, and prevents individuals who have already given $500 to

15    support independent expenditures to six other committees from spending any money to

16    support independent expenditures by a seventh committee.  Whereas a wealthy individual

17    could pay for a $25,000 full-page advertisement in the *San Francisco Chronicle* urging

18    readers to vote for a particular candidate, 25 individuals could not each contribute $1,000

19    for the same ad.  The result is that the ordinance actually favors the political speech of

20    wealthy individuals over those of more modest means.  Like-minded persons who wish to

21    (…continued)

22    to the First Amendment, which was designed "to secure the widest possible
dissemination of information from diverse and antagonistic sources," and "to
assure unfettered exchange of ideas for the bringing about of political and

23    social changes desired by the people."  The First Amendment's protection
against governmental abridgment of free expression cannot properly be made

24    to depend on a person's financial ability to engage in public discussion.

25    *Buckley,* 424 U.S. at 48-49 (*quoting New York Times Co. v. Sullivan,* 376 U.S. 254, 266,
269 (1966); *Roth v. U.S.,* 354 U.S. 476, 484 (1957)).

26    [9]    The constitutional analysis of the rights to free speech and association is a blended
one.  As the Supreme Court has described, "[a] limit on contributions in this setting need

27    not be analyzed exclusively in terms of the right of association or the right of expression.
The two rights overlap and blend."  *Citizens for Rent Control,* 454 U.S. at 300.

28

1   join together to amplify their viewpoints are silenced in the political process.  *See NAACP*

2   *v. Alabama*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private

3   points of view, particularly controversial ones, is undeniably enhanced by group

4   association.").[10]

5       *NCPAC* shows that the Ordinance is not narrowly tailored.  In that case, the Court

6   considered a federal law that proscribed independent expenditure committees from

7   spending more than $1,000 to "further" the election of a Presidential candidate who

8   accepted public financing.  470 U.S. at 482.  In striking down the law, the Supreme Court

9   held that even if $1,000 expenditures posed a risk of corruption, which the Court held they

10  did not, the limit would still be "fatally overbroad," *id*. at 498, amounting to a "wholesale

11  restriction of clearly protected conduct."  *Id.* at 501.  The Court noted that the restriction

12  was not limited to "multimillion dollar war chests; its terms apply equally to informal

13  discussion groups that solicit neighborhood contributions to publicize their views about a

14  particular Presidential candidate."  *Id.* at 501, 498; *see also COMPAC*, 2006 WL 3832794,

15  at *6.

16      Section 1.114(c) is similarly overbroad.  As with the restrictions in *NCPAC*, San

17  Francisco's limits apply to committees large and small — under California law, a political

18  committee need only make independent expenditures of $1,000 or more in a calendar year,

19  *see supra* at n.1, so the limits apply to nearly any group that wants to have a voice in an

20  election.  And the limits apply to committees making any sort of expenditure that "supports

21  _____

22  [10]     To the extent Defendants should argue that committees such as Plaintiffs are
    somehow entitled to less constitutional protection in trying to express the viewpoints of
    their contributors than the individual contributors might be themselves, the Supreme
23  Court has squarely rejected such a notion.  As the Court noted in *NCPAC*:

24          We also reject the notion that the PACs' form of organization or method of
            solicitation diminishes their entitlement to First Amendment protection.  The
25          First Amendment freedom of association is squarely implicated in these
            cases.  NCPAC and FCM are mechanisms by which large numbers of
26          individuals of modest means can join together in organizations which serve
            to "amplif[y] the voice of their adherents."
27
    *NCPAC*, 470 U.S. at 494 (quoting *Buckley*, 424 U.S. at 22) (alteration in original).
28

1  or opposes" a candidate for City office.  Even if Section 1.114(c) did serve a compelling

2  interest — and it doesn't — it is not narrowly tailored to serve that interest.

3  **2.      Plaintiffs face irreparable harm unless the Court issues a preliminary**

4  **injunction.**

5         Without the preliminary injunction sought in this Motion, Plaintiffs will suffer

6  irreparable injury, the second criterion under the first test for the issuance of a preliminary

7  injunction.

8         The standard for establishing irreparable injury when First Amendment freedoms

9  are at stake is low.  "The loss of First Amendment freedoms, for even minimal periods of

10  time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373

11  (1976); *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002);

12  *S.O.C., Inc. v. County of Clark*, 1522 F.3d 1136, 1148 (9th Cir. 1998); *Brown v. Cal. Dept.*

13  *of Transportation*, 260 F. Supp. 2d 959, 968 (N.D. Cal. 2003); *OakPAC*, RFJN Ex. E, at 4.

14         As discussed, the City's unconstitutional limits impose, and have imposed, a heavy

15  burden on Plaintiffs' ability to make independent expenditures.  *See* s*upra* at 7-9.  Plaintiffs

16  have been forced to re-channel most of their efforts into ballot initiatives that promote the

17  interests they support.  *See supra* at 8.  Unless and until Section 1.114(c) is enjoined, those

18  who would like to contribute more than $500 to support the message that Plaintiffs could

19  otherwise communicate in this year's election cannot do so.  And if an individual has

20  already given, or plans to give, $3,000 to other committees making independent

21  expenditures, that person will be completely prevented from contributing to Plaintiffs or

22  other committees whose message that person might also like to support in the election.

23  Ignoring Section 1.114(c) could result in six months in jail, $5,000 in criminal fines, and

24  three times the amount received in excess of the limits in civil and administrative fines, for

25  each violation.  *See* CFRO § 1.170.  These facts more than establish the "possibility of

26  irreparable injury" if the Court does not enjoin Defendants from enforcing Section 1.114(c).

27  *Rent-A-Center*, 944 F.2d at 602 (9th Cir. 1991).

28

1   **C.     Plaintiffs Have Raised Serious Questions Regarding the Validity of Section**

2   **1.114(c) and the Balance of Hardships Tips Heavily in Their Favor.**

3   Under the alternate test for injunctive relief, a party must demonstrate that serious

4   questions of law have been raised that are "substantial, difficult and doubtful as to make

5   them a fair ground for litigation and thus for more deliberative investigation." *Republic of*

6   *the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).  For reasons outlined

7   above, Plaintiffs' constitutional challenge to the City's ordinance easily meets this standard.

8   Indeed, as described, the Ninth Circuit and this Court have consistently struck down

9   limitations analogous to those challenged here.  The questions raised by Plaintiffs' claims

10  are serious and the answer to them is clear:  Section 1.114(c) is unconstitutional.

11  The balance of hardships and public interest also militate in favor of the relief

12  sought by Plaintiffs.  *See OakPAC*, RFJN Ex. E, at 4.  As noted above, the deprivation of

13  First Amendment rights, even for a short period of time, constitutes an irreparable injury

14  under controlling court decisions.  In contrast, the City faces no comparable harm resulting

15  from an injunction.  Its generalized interest in enforcing its laws cannot count for much

16  when the law in question is constitutionally suspect.  To the extent Defendants would argue

17  that Section 1.114(c) prevents corruption in the City's elected officials, that interest is

18  inapplicable here, for the reasons identified above.  An injunction would actually be a boon

19  to the City's interests, in that its citizens will be freer to exercise their core First

20  Amendment rights to speak and associate with one another.  Political debate would be more

21  robust.  The result would be democracy, not hardship.

22  **D.     The Court Should Waive Any Bond Requirement for Plaintiffs.**

23  Under Rule 65(c) of the Federal Rules of Civil Procedure, parties seeking

24  preliminary injunctive relief are required to post a bond with the court, "in such sum as the

25  court deems proper."  "In non-commercial cases, however, courts should consider the

26  hardship a bond requirement would impose on the party seeking the injunction in addition

27  to the expenses the enjoined party may incur as a result of the injunction." *Cupolo v. Bay*

28  *Area Rapid Transit*, 5 F. Supp. 2d 1078, 1086 (N.D. Cal. 1997).  The Court may waive the

1   bond requirement completely when "the balance of equities weighs overwhelmingly in

2   favor of the party seeking the injunction." *Id.*  Judge Jenkins did exactly that with respect

3   to OakPAC.  *OakPAC*, RFJN Ex. E, at 4.

4           This is, of course, a constitutional, not a commercial, case.  Issuing the requested

5   preliminary injunction will not risk any added expense for Defendants.  Conversely, the

6   financial hardship that Plaintiffs would suffer should the Court require them to post a bond

7   would be severe.  Posting a bond would leave Plaintiffs with even fewer resources to make

8   expenditures to support or oppose candidates in this year's election, thereby curbing

9   political speech.  As such, Plaintiffs ask that the Court exercise its discretion and waive the

10  requirement of a bond.

11  **IV.    CONCLUSION.**

12          For the foregoing reasons, the Court should grant Plaintiffs' Motion, and enjoin

13  Defendants from enforcing Sections 1.114(c)(1) and 1.114(c)(2) of the San Francisco

14  Campaign Finance Reform Ordinance.  The Court should also exercise its discretion and

15  waive the bond requirement of Fed. R. Civ. P. 65(c).

16          Dated:  August 10, 2007.

17                                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                                            FREDERICK K. LOWELL
18                                          BRUCE A. ERICSON
                                            ANITA D. STEARNS MAYO
19                                          MARC H. AXELBAUM
                                            AUGUST O. STOFFERAHN
20                                          50 Fremont Street
                                            Post Office Box 7880
21                                          San Francisco, CA 94120-7880

22
                                            By _____/s/ Bruce A. Ericson_____
23                                                      Bruce A. Ericson

24                                          Attorneys for Plaintiffs

25

26

27

28