| | |
|---|---|
| 1 | PILLSBURY WINTHROP SHAW PITTMAN LLP |
|   | FREDERICK K. LOWELL #66641 |
| 2 | BRUCE A. ERICSON #76342 |
|   | ANITA D. STEARNS MAYO #142749 |
| 3 | MARC H. AXELBAUM #209855 |
|   | AUGUST O. STOFFERAHN #229957 |
| 4 | 50 Fremont Street |
|   | Post Office Box 7880 |
| 5 | San Francisco, CA  94120-7880 |
|   | Telephone: (415) 983-1000 |
| 6 | Facsimile: (415) 983-1200 |
| 7 | Attorneys for Plaintiffs |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND and BUILDING OWNERS AND MANAGERS ASSOCIATION OF SAN FRANCISCO INDEPENDENT EXPENDITURE POLITICAL ACTION COMMITTEE, political action committees organized under the laws of California and of the City and County of San Francisco, <br><br>                                Plaintiffs, <br><br>   vs. <br><br>DENNIS J. HERRERA, in his official capacity as City Attorney of the City and County of San Francisco, KAMALA D. HARRIS, in her official capacity as District Attorney of the City and County of San Francisco, the SAN FRANCISCO ETHICS COMMISSION of the City and County of San Francisco, and CITY AND COUNTY OF SAN FRANCISCO, <br><br>                                Defendants. | No. C-07-3199 JSW <br><br>**DECLARATION OF NATHAN NAYMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br>Date:  September 17, 2007 <br>Time:  1:30 p.m. <br>Judge:  Hon. Jeffrey S. White <br>Courtroom:  2 <br><br>Filed concurrently: <br>1. Memorandum of Points & Authorities <br>2. Declaration of Marc L. Intermaggio <br>3. Request for Judicial Notice <br>4. Proposed Order |

700572334v5

Nayman Decl. ISO Preliminary Injunction Motion
No. C-07-3199 JSW

I, **NATHAN NAYMAN**, declare:

1. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Injunction. Except for those matters stated on information and belief, which I believe to be true, I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.

2. I am the Executive Director of Committee on JOBS ("JOBS"), a coalition of San Francisco's largest employers, dedicated to improving the City's economic vitality. Founded as a California nonprofit mutual benefit corporation in 1991, the purpose of JOBS is to enhance and revitalize the business conditions and environment for individuals and organizations doing business in San Francisco. To accomplish this purpose, JOBS promotes commerce and industry to advance economic growth and to enhance the quality of life in the City of San Francisco. With these goals in mind, it often takes positions on issues and advises its members on taking positions on candidates.

3. As Executive Director of JOBS, I develop the strategic plans and programs for JOBS, advocate the interests of business before City officials, represent JOBS with other business, community and political organizations, serve as JOBS' spokesperson with the media, plan meetings and events, and manage all employees, consultants and professional services firms.

4. In 1999, JOBS founded, and since 1999 JOBS has sponsored, a political committee (which is one of the Plaintiffs in this action) called the **COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND** (the "JOBS Fund"). I am the Treasurer of the JOBS Fund.

5. The JOBS Fund supports and opposes candidates for political office in San Francisco. JOBS created the JOBS Fund to support candidates who will promote economic development in San Francisco.

6. On one occasion in the past, the JOBS Fund provided direct support to candidates, but it no longer does so and does not plan to do so in the future. Currently the JOBS Fund does not coordinate its efforts or its expenditures with candidates or their

1  campaign committees.  Instead, the JOBS Fund decides independently whom it will support
2  or oppose, and then determines how it will spend its money to express its viewpoint.  As
3  such, the JOBS Fund is an "independent expenditure" committee.

4       7.   The JOBS Fund uses its funds to pay for communications such as mailings,
5  in which JOBS Fund speaks about issues and candidates.

6       8.   Although I am not a lawyer, because of my position I am familiar with the
7  campaign finance laws that govern JOBS and the JOBS Fund, in particular, the San
8  Francisco Campaign Finance Reform Ordinance (the "CFRO").

9       9.   Because the JOBS Fund, as stated, makes independent expenditures to
10 support or oppose candidates for San Francisco political offices, I understand that it is
11 subject to Sections 1.114(c)(1) and 1.114(c)(2) of the CFRO.  (Below I refer to these limits
12 collectively as "Section 1.114(c).")

13      10.  I understand that Section 1.114(c)(1) of the CFRO prevents the JOBS Fund
14 from accepting more than $500 from any one source per calendar year if those funds are
15 used to support or oppose candidates for San Francisco political office.

16      11.  I understand that Section 1.114(c)(2) prevents the JOBS Fund from
17 accepting any money from a source that has already given, in the aggregate, $3,000 or more
18 in the same calendar year to other committees that make expenditures to support or oppose
19 candidates for San Francisco political office.

20      12.  The JOBS Fund would like to make independent expenditures in the
21 November 2007 election and in other elections in years to come.

22      13.  Section 1.114(c) of the CFRO substantially restricts the JOBS Fund's ability
23 to raise money and support or oppose candidates for San Francisco elective office.

24      14.  In my capacity as Treasurer of the JOBS Fund, I interact with its
25 contributors.  I know that, but for the limits imposed by Section 1.114(c), the JOBS Fund
26 could have raised considerably more money in previous years and could raise considerably
27 more money this year.

28

15. In the two years before Section 1.114(c) took effect (in 2001), the CFRO did not impose any limits on contributions to JOBS Fund. During that span, JOBS Fund received $170,284 from donors during calendar year 1999, and $785,000 during calendar year 2000. Beginning with calendar year 2001, by contrast, JOBS Fund has received an average of only $4,208 in contributions per calendar year.

16. In 2004, JOBS Fund made an independent expenditure of $9,000 to oppose the re-election of one of the incumbent Supervisors. Because of Section 1.114(c), it was extremely difficult to raise the money to pay for that expenditure.

17. In 2006, the JOBS Fund considered making independent expenditures to oppose certain political candidates in the November elections, but decided that Section 1.114(c)'s limits would prevent it from raising enough money to reach any significant number of voters.

18. Had Section 1.114(c)'s limits not been in place, the JOBS Fund could have disseminated its views about elections held since 2000 more frequently, more broadly and more effectively than it has been able to do.

19. Because of the limits imposed by Section 1.114(c), JOBS' members have been forced to devote most of their attention to San Francisco ballot initiatives, instead of candidates for office.

20. Since the enactment of Section 1.114(c), much of the money that JOBS' members would have contributed to the JOBS Fund has instead been contributed to JOBS' Government Reform Fund, which makes expenditures in connection with San Francisco ballot initiatives.

21. I understand that the law does not limit contributions to so-called issues PACs (such as the Government Reform Fund) that support or oppose ballot initiatives.

22. I also understand that issues PACs (such as the Government Reform Fund) may make unlimited expenditures to support or oppose ballot initiatives.

23. For this reason, since 2001 the Government Reform Fund has been able to raise and spend substantially more money than has the JOBS Fund.

24. The JOBS Fund is currently plotting its strategy for fundraising and for making independent expenditures in support of and/or against possible candidates for office in the 2007 election. It must do so promptly if it is to be able to speak out effectively in connection with the 2007 election.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on August 10, 2007, at San Francisco, California.

By: _____
Nathan Nayman