# EXHIBIT A

# City and County of San Francisco
# Voter Information Pamphlet and Sample Ballot

## November 7, 2000   Consolidated Presidential General Election



分區選舉，請翻見第 4 頁
新投票系統，請情見第 5 頁
為保證你投的一票被計算在內
你必須在指定的投票站或以郵寄方式投票
見第 248 頁重要通告

DISTRICT ELECTION, see page 4
NEW VOTING SYSTEM, see page 5
TO BE SURE YOUR BALLOT COUNTS,
You need to vote at your assigned polling place or by mail.
Read the important notice inside the back cover.

ARC
JK
2025
.S6
c.1
2000
SF

ment of Elections: 554-4375    www.sfgov.org/election
rtamento de Elecciones: 554-4366    選務處：554-4367

the back cover of this pamphlet for your polling place address
tre la dirección de su lugar de votación en la cubierta tresera de este folleto
欲知你的投票站的地址請查閱此手冊的封底

**SUPERVISOR - DISTRICT 11**
## Ballot Type 23

PILLSBURY WINTHROP LLP



00094057

ctions
ncisco

# Public Campaign Finance



## PROPOSITION O

**Shall the City provide public financing to candidates for the Board of Supervisors, limit contributions to independent committees, and limit the overall amount a person or group may contribute to all City candidates and political committees?**

**YES** 

**NO** 

## Digest
### by Ballot Simplification Committee

**THE WAY IT IS NOW:** City campaign law limits contributions made directly to candidates for City office and to committees that support or oppose candidates. The limits are $500 for the general election and $250 for a run-off election. Current City law does not:

* provide public money for election campaigns,
* limit the total amount any person or group may contribute to all candidates and committees, or
* limit the amount of money a candidate may loan to his or her campaign.

The City's campaign law may be amended only by the voters. This law is enforced by the Ethics Commission, the City Attorney and the District Attorney.

**THE PROPOSAL:**

Proposition O would provide public campaign financing to candidates for the Board of Supervisors who raise $7,500 in private contributions, meet certain eligibility criteria, and agree to limit their campaign spending to $75,000 in the general election and $20,000 in any run-off election. Publicly financed candidates would be released from the spending limits if an opponent or independent committee exceeded these limits. Eligible candidates could receive up to $43,750 for the general election, and up to $17,000 for any run-off election.

Proposition O would establish new contribution limits. The measure would limit the total amount any person or group could contribute - to all candidates - to $500 multiplied by the number of offices to be filled in the general election, and $250 times the number of offices contested in any run-off election. A person or group would be limited to an additional $500 contribution per political committee, with an overall cap of $3,000 to all political committees per calendar year.

Proposition O also would limit to $15,000 the amount a candidate for the Board of Supervisors could loan his or her campaign.

In addition, Proposition O would allow the Board of Supervisors to amend the City's campaign law, subject to certain conditions. This measure also would permit any voter to file a lawsuit to enforce the campaign law.

**A "YES" VOTE MEANS:** If you vote yes, you want to provide public financing to candidates for the Board of Supervisors and to limit the overall amount a person or group may contribute to all City candidates and political committees.

**A "NO" VOTE MEANS:** If you vote no, you do not want to make these changes to the City's campaign law.

## Controller's Statement on "O"

City Controller Edward Harrington has issued the following statement on the fiscal impact of Proposition O:

Should the proposed ordinance be adopted, in my opinion, it would result in costs of up to $1.6 million annually for direct contributions to eligible Board of Supervisor candidates, as well as administration and auditing of the program.

## How "O" Got on the Ballot

On June 26, 2000 the Ethics Commission voted 4-0 to place Proposition O on the ballot pursuant to Charter section 15.102.

**THIS MEASURE REQUIRES 50%+1 AFFIRMATIVE VOTES TO PASS.**

ARGUMENTS FOR AND AGAINST THIS MEASURE IMMEDIATELY FOLLOW THIS PAGE. THE FULL TEXT BEGINS ON PAGE P-219
SOME OF THE WORDS USED IN THE BALLOT DIGEST ARE EXPLAINED ON PAGE P-2



# Public Campaign Finance

## PROPONENT'S ARGUMENT IN FAVOR OF PROPOSITION O

The Ethics Commission proposes campaign finance reforms to encourage candidates to limit their spending, decrease the time candidates spend raising money, increase the opportunity for candidates to run for office, and ensure the integrity of the electoral process.

Proposition O would offer partial public financing as an incentive to candidates for the Board of Supervisors to limit their spending. The program's annual cost would not exceed $2 per resident. Candidates would qualify by raising $7,500 in private contributions, meeting certain eligibility criteria, and agreeing to limit campaign spending to $75,000 in the general election and $20,000 in the runoff election. Candidates could receive up to $43,750 for the general election, and up to $17,000 for a runoff election. Candidates would be released from their agreement to limit campaign spending if spending by their opponents or independent committees exceeded certain amounts.

Currently, a donor may contribute up to $500 per candidate for the general election and up to $250 per candidate for a runoff election. Currently, there is no limit on the total amount a donor may contribute to all candidates. The Ethics Commission proposes an overall limit on the amount a donor may contribute, to all candidates, of $500 times the number of offices voted on in the general election, and $250 times the number of offices voted on in the runoff election.

Currently, there is no limit on contributions to independent committees. To reduce the influence of large contributions on elected officials, the Ethics Commission proposes a limit of $500 on the amount a person or entity may contribute to each independent committee and an overall limit of $3,000 per year on the amount a donor may contribute to all such committees. Contributions to ballot measure committees would not be limited.

*San Francisco Ethics Commission*

## REBUTTAL TO PROPONENT'S ARGUMENT IN FAVOR OF PROPOSITION O

**Proposition O will use an estimated $2.7 million to $5 million of San Francisco taxpayers' money to pay for political campaigns.**

Prop O creates a city subsidy program for political campaigns at a time when the City is struggling to keep the General Hospital Pharmacy open and fully fund AIDS services.

The other components of the measure — limitations on contributions to political committees — either already exist in city law, or have been struck down by the federal courts as limitations on free speech.

Despite a 10-1 vote by the Board of Supervisors rejecting the phony campaign finance reform proposals contained in Prop O,

an un-elected commission comprised of political appointees moved to put it on the ballot.

Please send the City a message that your tax dollars should be spent on healthcare, housing and infrastructure, not political campaigns.

**Vote No on Prop O.**

*Supervisor Barbara Kaufman*

---

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.

# Public Campaign Finance



## OPPONENT'S ARGUMENT AGAINST PROPOSITION O

### No on Prop.O:
**It Uses San Franciscans' Tax Money to Finance Political Campaigns**

Earlier this year, the Board of Supervisors voted against a fake campaign finance reform proposal that would have allowed candidates for the Board of Supervisors to use City tax money to finance their campaigns.

The architects of this proposal went around the Board of Supervisors and got a commission comprised of political appointees to put it on the ballot as Proposition O.

Send the so-called reformers a clear message: NO TAX MONEY FOR POLITICAL CAMPAIGNS

Vote No on Proposition O.

*Supervisor Barbara Kaufman, San Francisco Board of Supervisors*

## REBUTTAL TO OPPONENT'S ARGUMENT AGAINST PROPOSITION O

The San Francisco Charter mandates that the Ethics Commission review the City's campaign laws and recommend improvements. The Charter authorizes the Commission to propose these changes directly to the voters.

The Commission's proposal, Proposition O, would provide public financing to candidates for the Board of Supervisors. Candidates who agree to limit their campaign spending would be entitled to receive partial public funding of their campaigns. Public financing has worked well in Los Angeles, Tucson and other cities. The annual cost for this program would be limited to $2 per resident, a tiny fraction of the City's total budget.

Proposition O would also strengthen limits on campaign contributions and reduce potential opportunities for contributors to influence elected officials.

Proposition O would also strengthen campaign reporting and disclosure requirements, so that before election day voters have access to information about where political committees get their money.

The voters created the five-member Ethics Commission to be independent of any particular political interest — the Mayor, Board of Supervisors, City Attorney, District Attorney and Controller each appoint one member of the Ethics Commission.

*San Francisco Ethics Commission*

---

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.



# Public Campaign Finance

## PAID ARGUMENTS IN FAVOR OF PROPOSITION O

$2 dollars per person per year is a *small* price to pay for an electoral reform that *loosens the grip of wealthy contributors* on San Francisco elections and begins to return government to the voters. We advocate full public financing, but support **Prop O** as an important first step.

*SF Alliance for Democracy and the Gray Panthers*

The true source of funds used for the printing fee of this argument is San Francisco Alliance for Democracy and the Gray Panthers.

---

Vote "YES" on Prop O because it will reduce the influence of soft money in city politics. Soft money (also known as independent expenditures) is flooding and overwhelming San Francisco. $2.6 million in soft money was spent in last year's election.

As Supreme Court Justice David Souter said in the majority opinion upholding limits on contributions (Nixon v. Shrink Missouri), "Democracy only works if people have faith in those who govern" not if voters believe that "large donors call the tune."

*San Francisco Common Cause Board*

The true source of funds used for the printing fee of this argument is the San Francisco Common Cause Board.

---

Government of, by, and for the people-- free from the wealthy economic elite-can only exist with public financing of elections.

*Joel Ventresca*
San Francisco Environmental Commissioner (1994-97)

The true source of funds used for the printing fee of this argument is Joel Ventresca.

---

Democratization spreads around the world, but withers here. Those with money to buy elections are tireless in defending their right to do so. We must be equally persistent in asserting our right to fair elections. YES ON "O"!

*Bernal Heights Democratic Club*

The true source of funds used for the printing fee of this argument is Bernal Heights Democratic Club.

---

People of low and modest incomes cannot get their voices heard and are losing their homes. **Kick** big money donors out, keep seniors in their homes.

Pass Prop O!

*Chuck Ayala*
Member, AARP-SF

The true source of funds used for the printing fee this argument is AARP.

---

Maximum contributions of $500. Less influence of soft money. **Partial** public financing of Board of Supervisor races. Cleanup city hall. All for $2 per person per year. YES on Prop O!

*Richard G. Ow*
Immigrant Rights Commissioner

The true source of funds used for the printing fee of this argument is Richard G. Ow.

---

Increased displacement of San Franciscans is a direct result of the *influence of big money* skewing our City's planning process. Money talks and the Planning Commission is listening! Proposition O reduces the influence of big money and *decreases the displacement* of our people.

*Criss Romero*, Democratic County Committee, and Past President of Harvey Milk LGBT Democratic Club, 1998-2000

The true source of funds used for the printing fee of this argument is California Common Cause.

---

Prop O will allow a greater *diversity of candidates* to have their voices heard and serve on the Board of Supervisors. Let's help make City Hall resemble San Francisco's *greatest asset*: its *diverse people* and diverse neighborhoods.

*Eric Mar,*
Member, Democratic County Central Committee

The true source of funds used for the printing fee of this argument is California Common Cause.

---

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.

# Public Campaign Finance



## PAID ARGUMENTS IN FAVOR OF PROPOSITION O

The Tenants Union says vote **"Yes"** on **Prop O!**

The *huge* campaign contributions given by corporations and wealthy landlords with development projects pending before city departments *corrupts* our political system.

The consequences are **mass evictions** of tenants and the deterioration of our neighborhoods. Put a *halt* to this by supporting the Ethics Commission's campaign finance reform proposal.

*S.F Tenants Union*

The true source of funds used for the printing fee of this argument is California Common Cause.

---

Proposition O tackles influence-buying at City Hall by independent expenditure campaigns. It will limit contributions to $500 and require disclosure on all such campaigns *before* election day, so we know who is trying to buy the election.

**Vote Yes on Prop O!**

*Harvey Milk Lesbian, Gay, Bisexual, Transgender Democratic Club*

The true source of this funds used for the printing fee of this argument is Harvey Milk Lesbian, Gay, Bisexual, Transgender Democratic Club.

---

Stop "special interest" domination of City Hall!
Vote YES on Prop O!

*Jake McGoldrick*
Candidate for District 1 Supervisor

The true source of funds used for the printing fee of this arguments is McGoldrick for Supervisor.

The three largest contributors to the true source recipient committee are: 1. Hiroshi Fukuda 2. Mowitza Biddle 3. Steve Williams.

---

This measure was placed on the ballot by the ETHICS COMMISSION. It restores voluntary spending caps, reasonable donation limits and mandates reporting requirements for independent expenditures. Prop O was drafted by the CITY ATTORNEY consulting with national legal experts. It will help open CITY HALL to everyone. VOTE YES on Prop O.

*San Francisco Green Party*

The true source of funds used for the printing fee of this argument is the San Francisco Green Party.

The three largest contributors to the true source recipient committee are: 1. Marge Harburg 2. Jo Chamberlain 3. John Strawn.

The **League of Women of Voters of San Francisco** strongly supports campaign finance reform.

Public financing of elections for the Board of Supervisors will reduce the influence of big money in politics.

Proposition O limits on contributions and partial public financing will enable more candidates to compete more equitably for public office.

Join the **League of Women Voters of San Francisco** in reducing the influence of special interests, and restoring voter's confidence in the political process.

Vote YES on **Proposition O!**

*Holli P. Thier, J.D.*
President
*Martha Benioff*
President

The true source of funds used for the printing fee of this argument is League of Women Voters of San Francisco.

---

Vote YES on the Ethics Commission's Prop O--the **TRUE** campaign finance reform. Vote NO on Prop 34--the **SHAM** reform.

*Charles Marsteller*

The true source of funds used for the printing fee of this argument is Charlie Marsteller.

---

As leaders of local environmental organizations, we know we won't make progress on these issues until we get special interest money out of politics. Very simply, Proposition O will reduce the influence that big money has on our Board of Supervisors.

Vote **YES** on **O** and take a big step toward bringing everyday people back into the political process.

*Dan Kalb*
Former Ethics Commissioner
*Wade Crowfoot*
Environmental Activist

The true source of funds used for the printing fee of this argument is Dan Kalb.

---

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.



# Public Campaign Finance

## PAID ARGUMENTS IN FAVOR OF PROPOSITION O

**You get what you pay for!**
Special interests now buy our politicians and we pay later. Proposition O is the first step in taking back our government. San Francisco can again lead and the Nation will follow.
**For good government, vote YES on O.**

*Jim Reid,* Candidate for Supervisor, District 6

The true source of funs used for the printing fee of this argument is Jim Reid.

---

The Ethics Commission put this on the ballot to clean up San Francisco elections. They had advice from the best legal minds. The cost is capped at $2 per resident. That's a small price to pay for its benefits.
**Yes on O!**

*Electoral Reform Coalition.*

The true source of funds used for the printing fee of this argument is Electoral Reform Coalition.

---

Soft money contributions have eroded public confidence in elections. Disclosing who is behind so-called "independent expenditures" lets the public know what special interest is funding a campaign.
Matching-funds already work in other jurisdictions.
Vote YES on O.

*Matt Gonzalez*

The true source of funds used for the printing fee of this argument is Matt Gonzalez.

---

Proposition O will bring San Francisco in line with other major cities by providing partial financing of district campaigns. This reduces the influence of corporate money in vote buying.
**Vote Yes on Prop O!**

*San Francisco Tomorrow*

The true source of funds used for the printing fee of this argument is San Francisco Tomorrow.

The three largest contributors to the true source recipient committee are: 1. Jane Morrison 2. Jennifer Clary 3. Jake McGoldrick

*Want to make politicians accountable to you,* instead of the polluters, developers and special interests that finance their campaigns?
**Vote YES on O!**
Let's level the playing field by providing *modest public financing* to qualified candidates.

*San Francisco League of Conservation Voters*

The true source of funds used for the printing fee of this argument is San Franciscans for a Clean Election.

The three largest contributors to the true source recipient committee are: 1. Roy Ulrich 2. Elizabeth Lyman Potter 3. David Zebker.

---

Vote YES on Proposition O so candidates can be elected based on their *qualifications*--not on the checkbooks of special interests. Let's restore people's belief that government *serves* the people.

*Esther Marks,*
*Debra Walker,*
Community Leaders

The true source of funds for the printing fee of this argument is Esther Marks.

---

**Vote YES on Proposition O to:**
• limit the amount of money that *special interests groups* can spend
• *make it easier for challengers* without personal wealth to mount effective campaigns
• make Supervisors *accountable to the taxpayers* not campaign contributors
• *require better disclosure* of who is paying for campaign ads.
Let's cleanup local elections. **Vote YES on Proposition O.**

*Earl Lui*
Member of the Board, California Common Cause

The true source of funds used for the printing fee of this argument is California Common Cause.

The three largest contributors to the true source recipient committee are: 1. Roy Ulrich 2. Elizabeth Lyman Potter 3. David Zebker.

---

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.

# Public Campaign Finance



## PAID ARGUMENTS IN FAVOR OF PROPOSITION O

It's easy to become cynical about lobbyists controlling the political process. But with huge independent expenditures flooding San Francisco campaigns due to a ruling last year, the stakes are high. With special interest money ruling the day, consumers and working families will feel the pinch, the environment will suffer and development interests will overcome neighborhood opposition every time.

Voters can level the playing field by passing Proposition O. Let's restore voter confidence in the electoral system.

*Tom Ammiano*
President, Board of Supervisors

The true source of funds used for the printing fee of this argument is San Franciscans for a Clean Election.

The three largest contributors to the true source recipient committee are: 1. Roy Erlich  2. Elizabeth Lyman Potter  3. David Zebker.

---

Passing Proposition O is an *important first step* to implementing campaign finance reform **in San Francisco.** With any luck in November, *the next step* will be **Washington, D.C.** Please join us in supporting Prop O.

*San Francisco Democratic Party*

The true source of funds used for the printing fee of this argument is San Franciscans for a Clean Election.

The three largest contributors to the true source recipient committee are: 1.Roy Ulrich  2. Elizabeth Lyman Potter  3. David Zebker.

---

Proposition O *improves* the campaign finance system that voters passed last year with 80% of the vote.  Prop O will give power back to the people.

Vote "YES" on Prop O!

*Gwenn Craig,* Chair, San Francisco Elections Task Force.

The true source of funds used for the printing fee of this argument is Gwenn Craig.

---

Past efforts to limit the impact of big money on elections have been frustrated by legal restrictions.  Prop O has been held legally valid.  It will help reduce the undue influence of money in electoral politics.

*Terence Hallinan*
San Francisco District Attorney

The true source of funds used for the printing fee of this argument is Terence Hallinan.

---

Please join the League of Women Voters, the American Association of Retired Persons, Common Cause and other public interest groups in voting

**YES on Proposition O.**

Proposition O will restore campaign spending limits and require better disclosure of exactly who is bankrolling local election campaigns.

**Vote YES on Proposition O!**

*San Franciscans for Clean Elections*

The true source of funds used for the printing fee of this argument is San Franciscans for Clean Elections.

The three largest contributors to the true source recipient committee are: 1. Roy Ulrich,  2. Elizabeth Lyman Potter  3. David Zebker.

---

Recent elections show that current campaign finance rules threaten our democracy with a sea of corporate money. Vote to return political power to the voting public. Vote yes on O.

*Beryl Magilavy*
Candidate for Supervisor, District 6

The true source of funds used for the printing fee of this argument is Committee to Elect Magilavy Supervisor.

The three largest contributors to the true source recipient committee are: 1. Jacob Sigg  2. Esther Marks  3. Carolyn Caine.

---

**Vote YES on Proposition O**

Prop. O is fundamental campaign finance reform that will help keep our leaders focused on the needs of the electorate, not the special interests.  Prop. O is a giant step in the right direction – Please vote YES on O.

*Assemblymember Kevin Shelley.*

The true source of funds used for the printing fee of this argument is Shelley for Assembly.

The three largest contributors to the true source recipient committee are: 1. Hotel Employees & Restaurant Employees  2. Don Fisher  3. The Gap.

---

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.



# Public Campaign Finance

## PAID ARGUMENTS AGAINST PROPOSITION O

Vote No on Prop O.

Prop O will require San Francisco **to spend at least $1,600,000 annually on candidate campaigns.** We do not believe candidate qualifications, campaign openness or public discourse will improve with large infusions of your tax dollars. Injecting more money into the process will not help.

*"The Chamber neither contributes funds to, nor endorses, candidates. We do support open government and campaigns -- but this isn't an effective use of your tax dollars,"* says G. Rhea Serpan, president & CEO.

A.Lee Blitch,
Chair, Board of Directors
San Francisco Chamber of Commerce.

The true source of funds for the printing fee of this argument is the San Francisco Chamber of Commerce.

Proposition O will be an inappropriate expenditure of public funds. Vote NO on Proposition O.

Harold M. Hoogasian
Supervisoral Candidate, District Seven

The true source of funds used for the printing fee of this argument is Harold M. Hoogasian.

I am running a grassroots campaign for Supervisor. The Districts are small enough for candidates to meet the voters personally and I have visited over 18,000 homes. I don't think we need to publicly finance campaigns for District elections. A hardworking candidate can visit every voter personally.

Ron Dudum
Candidate for Supervisor—District 4

The true source of funds used for the printing fee of this argument is Ron Dudum.

No Tax Money for Political Campaigns!

It is unconscionable to think that, at a time when the HIV infection rate among young San Franciscans is climbing and we can't keep hospitals open, that a city commission would suggest using tax money to pay for Supervisors' political campaigns.

Vote No on Prop O!

*Alice B. Toklas Lesbian and Gay Democratic Club*

The true source of funds used for the printing fee of this argument is the San Francisco Sensible Government.

Proposition O is a solution in search of a problem. This year, without taxpayer financing, 86 candidates are running for Supervisor. The shift to district elections has substantially reduced the importance of money in supervisorial races. It's pretty hard to believe that Proposition O -- if passed -- would have encouraged any serious candidate to run who isn't running already, or have changed the outcome of any race.

While Proposition O won't change who runs or wins, it will have a real impact on taxpayers. It would spend millions of our tax dollars on campaigns -- money that is better spent elsewhere: schools, housing, and parks, to name just a few. Proposition O also revives provisions from past initiatives that have not fared well in the courts. They restrain constitutionally guaranteed rights of free speech. Hasn't the City already wasted enough money on these losing battles?

If it ain't broke, don't fix it.

The San Francisco Republican Party urges you to vote No on Proposition O.

*San Francisco Republican Party,*
*Donald A. Casper,* Chairman
*Mike Garza,* Candidate
12th Congressional District
*Howard Epstein,* Candidate                 *Terence Faulkner,* Candidate
12th Assembly District                            3rd Senate District
*Harold Hoogasian,* Candidate
District VII Supervisor
*Julie Bell*                                              *Erik Bjorn*
*Albert Chang*                                       *Elsa Cheung*
*Lee S. Dolson, Ph.D.*                           *Joel Hornstein*
*Edmond Jew*                                        *Rodney Leong*
*Denis Norrington*                                *Grace Norton-Fitzpatrick*
*Rita O'Hara*                                        *Les Payne*
*Judy Smith*                                         *Dana Walsh*
*Sue Woods*

The true source of funds used for the printing fee of this argument is the above signers and the San Francisco Republican Party.

Arguments printed on this page are the opinion of the authors and have not been checked for accuracy by any official agency.

# TEXT OF PROPOSED ORDINANCE
## PROPOSITION O

AMENDING THE SAN FRANCISCO CAMPAIGN AND GOVERNMENTAL CONDUCT CODE, ARTICLE 1, CHAPTER 1, TO ESTABLISH NEW CONTRIBUTION LIMITS AND PROVIDE PUBLIC FINANCING FOR SUPERVISORIAL ELECTION CAMPAIGNS.

Note: Additions are underlined. Deletions are in ~~strikethrough~~ text.

Be it ordained by the People of the City and County of San Francisco:

Section 1. The San Francisco Campaign and Governmental Conduct Code is hereby amended by amending Article 1, Chapter 1 to read as follows:

## CHAPTER I: CAMPAIGN FINANCE

SEC. 1.100. PURPOSE AND INTENT. (a) Huge sums of moneys often are necessary to finance American election campaigns. Inherent to the high cost of election campaigning is the problem of improper influence, real or potential, exercised by campaign contributors over elected officials. In addition, this fundraising distracts public officials seeking reelection from focusing upon important public matters, encourages contributions which may have a corrupting influence, and gives incumbents an unfair fundraising advantage over potential challengers. These developments undermine the integrity of the governmental process, the competitiveness of campaigns and public confidence in local officials.

(b) It is the purpose and intent of the People Board of Supervisors of the City and County of San Francisco in enacting this Chapter to (1) place realistic and enforceable limits on the amount individuals may contribute to political campaigns in municipal elections and to provide full and fair enforcement of all the provisions in this Chapter; (2) ensure that all individuals and interest groups in our city have a fair opportunity to participate in electoral and governmental processes; (3) create an incentive to limit overall expenditures in campaigns, thereby reducing the pressure on candidates to raise large campaign war chests for defensive purposes beyond the amount necessary to communicate reasonably with voters; (4) reduce the advantage of incumbents and thus encourage competition for elective office; (5) allow candidates and officeholders to spend a smaller proportion of their time on fundraising and a greater proportion of their time dealing with issues of importance to their constituents' community; (6) ensure that serious candidates are able to raise enough money to communicate their views and positions adequately to the public, thereby promoting public discussion of the important issues involved in political cam-

paigns; (7) limit contributions to candidates and committees, including committees that make independent expenditures, to eliminate or reduce the appearance or reality that large contributors may exert undue influence over elected officials; and (8) help restore public trust in governmental and electoral institutions.

(c) This Chapter is enacted in accordance with the terms of Sections 5 and 7 of Article XI of the Constitution of the State of California and Section 1.101 of the Charter of the City and County of San Francisco.

SEC. 1.102. CITATION. This Chapter may be cited as the San Francisco Campaign Finance Reform Ordinance.

SEC. 1.104. DEFINITIONS. Whenever in this Chapter the following words or phrases are used, they shall mean:

(a) "Candidate" shall mean any individual listed on the ballot for election to any City and County elective office or who otherwise has taken affirmative action to seek nomination or election to such office. The term "candidate" shall also mean the candidate's campaign committee.

(b) "Charitable organization" shall mean an entity exempt from taxation pursuant to Title 26, Section 501 of the United State Code.

(c) "City elective office" shall mean the offices of Mayor, Member of the Board of Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor, Public Defender, Member of the Board of Education of the San Francisco Unified School District and Member of the Governing Board of the San Francisco Community College District.

(d) (e) "Committee" shall be defined as set forth in the Government Code of the State of California (commencing at Section 81000). mean any person acting, or any combination of two or more persons acting jointly, in behalf of or in opposition to a candidate or to the qualification for the ballot or adoption of one or more measures.

(e) (d) "Contribution" shall be defined as set forth in Government Code of the State of California (commencing at Section 81000); provided, however, that "contribution" shall include loans of any kind or nature.

(f) (e) "Election" shall mean any primary, general or run-off municipal election held in the City and County of San Francisco for City elective office. With respect to the offices of Public Defender and Assessor, primary and general elections are separate elections for purposes of this ordinance. The primary election period for these offices shall extend from January 1 of the first year of an election cycle up to and including the date of the primary election, and the general election period for these offices shall extend from the day follow-

ing the primary election up to and including December 31 of the fourth year of the election cycle. With respect to the offices of Mayor, District Attorney, Sheriff, Treasurer and Supervisor, general and run-off elections are separate elections for the purposes of this ordinance. The general election period shall extend from January 1 of the first year of an election cycle up to and including the date of the general election, and the run-off election period shall extend from the date of the general election up to and including December 31 of the fourth year of the election cycle.

(g) "Election cycle" shall mean a four-year period preceding a term of office as defined by the San Francisco Charter, beginning on January 1, and ending on December 31 of the fourth year thereafter.

(h) (f) "Enforcement authority" shall mean the District Attorney of the City and County of San Francisco for criminal enforcement and the City Attorney for civil enforcement. Nothing in this Chapter shall be construed as limiting the authority of any law enforcement agency or prosecuting attorney to enforce the provisions of this Chapter under any circumstances where such law enforcement agency or prosecuting attorney otherwise has lawful authority to do so.

(i) "Ethics Commission" shall mean the San Francisco Ethics Commission.

(j) "Executive Director" shall mean the Executive Director of the Ethics Commission, or the Executive Director's designee.

(k) "Matching contribution" shall mean a contribution, other than a qualifying contribution, that is made by an individual who is a resident of San Francisco and that complies with all requirements of this Chapter.

(l) (f) "Measure" shall mean any City referendum, recall or ballot proposition, whether or not it qualifies for the ballot. any City and County Charter amendment or other election, whether by initiative, referendum or recall procedure or otherwise, or circulated for purposes of submission to a popular vote at any election, whether or not the proposition qualifies for the ballot.

(m) (h) "Person" shall mean any individual, partnership, corporation, association, firm, committee, club or other organization or group of persons, however organized.

(i) "Controlled Committee" shall mean a controlled committee, as defined in California Government Code Section 82106, of an elected City and County officer or candidate for such office, that is primarily formed or exists to support or oppose one or more proposed City and County charter amendments, ordinances, bond measures, resolutions, referendums or declarations of policy that have qualified for submission to the electorate, or regarding which a notice of intention to circulate a petition has been filed with the Registrar of Voters, or

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

~~regarding which a motion has been introduced at the Board of Supervisors to have such a proposed measure submitted to the voters.~~

~~(j) "City elective office" shall include and be limited to the offices of Mayor, Member of the Board of Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor, Public Defender, Member of the Board of Education of the San Francisco Unified School District and Member of the Governing Board of the San Francisco Community College District.~~

~~(k) "Election cycle" shall mean a four year period preceding a term of office as defined by the San Francisco Charter, beginning on January 1, and ending on December 31 of the fourth year thereafter.~~

(n) ~~(l)~~ "Qualified campaign expenditure" for candidates shall mean ~~includes all of the following:~~

(1) Any expenditure made by a candidate, or by a committee controlled by the candidate, for the purpose of influencing or attempting to influence the actions of the voters for the election of the candidate to City elective office. ~~Any expenditure made by a candidate, officeholder or committee controlled by the candidate or officeholder, for the purpose of influencing or attempting to influence the actions of the voters for or against the election of any candidate for City elective office;~~

(2) A nonmonetary contribution provided to the candidate, officeholder or committee controlled by the candidate ~~or officeholder;~~

(3) The total cost actually paid or incurred by the candidate or controlled committee of the candidate for a slate mailing or other campaign literature produced or authorized by more than one candidate. ~~That portion of the total cost of a slate mailing or mailing of other campaign literature produced or authorized by more than one candidate which is the cost actually paid or incurred by the committee or controlled committee of the candidate;~~

(4) "Qualified campaign expenditure" shall not include expenses incurred in connection with an administrative or judicial proceeding, payments for administrative, civil or criminal fines, including late filing fines, or for inaugural activities or officeholder expenses.

(o) "Qualifying contribution" shall mean a contribution of not less than $10 and not more than $100 that is made by written instrument by an individual who is a resident of San Francisco and that complies with all requirements of this Chapter.

(p) "Surplus funds" shall mean unexpended funds held by a candidate after the date on which the candidate was either elected or not elected to City elective office.

### SEC. 1.106. ADOPTION OF GENERAL LAW — EXCEPTIONS. Except as otherwise

provided in this Chapter, the provisions of Title 9 of Government Code of the State of California (commencing at Section 81000), including the penal provisions thereof, shall be applicable to any election held in the City and County of San Francisco.

### SEC. 1.108. CAMPAIGN CONTRIBUTION TRUST ACCOUNT — ESTABLISHMENT.

Each committee ~~campaign~~ treasurer shall establish a campaign contribution trust account for the candidate or committee at an office of a bank located in the City and County of San Francisco, the account number and branch identification of which shall be filed with the Ethics Commission within 10 days of the establishment thereof. All of the expenditures by the candidate or committee for the City elective office sought shall be made from that account.

### SEC. 1.110. CAMPAIGN STATEMENTS — PUBLIC ACCESS.

(a) ~~PUBLIC~~ INSPECTION AND COPY-MAKING. Campaign statements are to be open for public inspection and reproduction at the office of the Ethics Commission during regular business hours and from 10:00 a.m. to 5:00 p.m. on the Saturday preceding an election.

(b) RETENTION. Every campaign statement required to be filed in accordance with Section 1.106 shall be preserved by the Ethics Commission for at least eight years from the date upon which it was required to be filed under the terms of this Chapter.

~~SEC. 1.112. CAMPAIGN STATEMENTS — RETENTION. Every campaign statement required to be filed in accordance with Section 1.106 shall be preserved by the Ethics Commission for at least four years from the date upon which it was required to be filed under the terms of this Chapter~~

### SEC. 1.112. AMENDMENT OR REPEAL OF CHAPTER.

The voters may amend or repeal this Chapter. The Board of Supervisors may amend this Chapter if all of the following conditions are met:

(a) The amendment furthers the purposes of this Chapter;

(b) the Ethics Commission approves the proposed amendment in advance by at least a four-fifths vote of all its members;

(c) the proposed amendment is available for public review at least 30 days before the amendment is considered by the Board of Supervisors or any committee of the Board of Supervisors; and

(d) the Board of Supervisors approves the proposed amendment by at least a two-thirds vote of all its members.

### SEC. 1.114. CONTRIBUTION LIMITS.

~~CAMPAIGN CONTRIBUTIONS — LIMI-~~

~~TATIONS. (a) No person other than a candidate shall make, and no campaign treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person with respect to a single election in support of or opposition to such candidate, including contributions to political committees supporting or opposing such candidate, to exceed $150.~~

(a) ~~(b)~~ LIMITS ON CONTRIBUTIONS TO CANDIDATES— PRIMARY AND GENERAL ELECTIONS.

(1) Per Candidate Limit. ~~For candidates who adopt the expenditure ceilings as defined in Section 1.128 of this Chapter, no~~ No person other than a candidate shall make, and no candidate ~~campaign treasurer~~ shall solicit or accept, any contribution which will cause the total amount contributed by such person to ~~with respect to a single election in support of or opposition to~~ such candidate in the general election ~~including contributions to political committees supporting or opposing such candidate,~~ to exceed $500.

(2) Overall Limit. No person shall make any contribution which will cause the total amount contributed by such person to all candidates in the general election to exceed $500 multiplied by the number of City elective offices to be voted on at the general election.

(3) Definitions. With respect to the offices of Public Defender and Assessor, the limit imposed by this subsection apply only to the primary election. For purposes of this subsection, the Board of Supervisors shall be deemed to consist of eleven separate City elective offices, the San Francisco Community College District shall be deemed to consist of seven separate City elective offices, and the Board of Education of the San Francisco Unified School District shall be deemed to consist of seven separate City elective offices.

(b) LIMITS ON CONTRIBUTIONS TO CANDIDATES — RUN-OFF ELECTIONS.

(1) Per Candidate Limit. No person other than a candidate shall make, and no candidate shall solicit or accept, any contribution which will cause the total amount contributed by such person to such candidate for the run-off election to exceed $250. The amount a person may contribute to a candidate in connection with a run-off election shall be controlled solely by the limits imposed by this subsection without regard to the amount said person contributed to the candidate in the general or primary election.

(2) Overall Limit. No person shall make any contribution which will cause the total amount contributed by such person to all candidates in a run-off election to exceed $250 multiplied by the number of City elective offices to be voted on at that run-off election.

(3) Definition. With respect to the offices of Public Defender and Assessor, the limit imposed by this subsection applies only to the

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

general election. For purposes of this subsection, the Board of Supervisors shall be deemed to consist of eleven separate City elective offices, the San Francisco Community College District shall be deemed to consist of seven separate City elective offices, and the Board of Education of the San Francisco Unified School District shall be deemed to consist of seven separate City elective offices.

(c) LIMITS ON CONTRIBUTIONS TO COMMITTEES.

(1) Per Committee Limit. No person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to the committee to exceed $500 per calendar year.

(2) Overall Limit. No person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to all committees to exceed $3000 per calendar year.

(3) Definitions. For purposes of this subsection, "committee" shall mean any committee making expenditures to support or oppose a candidate, but shall not include candidates' campaign committees.

(d) CONTRIBUTOR INFORMATION REQUIRED. If the cumulative amount of contributions received from a contributor is $100 or more, the committee treasurer shall not deposit the contribution unless the committee treasurer has the following information: the contributor's full name; the contributor's address; the contributor's occupation; and the name of the contributor's employer or, if the contributor is self-employed, the name of the contributor's business.

(e) ~~(e)~~ FORFEITURE OF EXCESSIVE CONTRIBUTIONS. Each ~~committee, campaign~~ treasurer who receives a contribution which exceeds the limits imposed by this Section or which does not comply with the requirements of this Section shall pay promptly, from available campaign funds, if any, the amount received in excess of the amount permitted by this Section to the City Treasurer for deposit in the General Fund of the City and County.

(f) ~~(d)~~ RETURN OF CONTRIBUTIONS. A contribution shall not be considered to be received if it is not negotiated, deposited, or utilized, and in addition it is returned to the donor within 72 hours of receipt. In the case of a late contribution as defined in Government Code Section 82036, it shall not be deemed received if it is returned to the contributor within 48 hours of receipt.

(g) ~~(e)~~ FAIRNESS DOCTRINE. This Section shall not apply to any in-kind contribution of television or radio airtime to any candidate or committee granted to said candidate or committee pursuant to the "Fairness Doctrine" articulated in Cullman Broadcasting, 40 FCC

576 (1963).

### SEC. 1.116 LIMITS ON LOANS TO CANDIDATES. No candidate for the Board of Supervisors may have outstanding loans of the candidate's personal funds to the candidate's campaign committee at any time of more than $15,000.

~~SEC. 1.116. LIMITS ON CONTRIBUTIONS TO CONTROLLED COMMITTEES.~~

~~(a) No person other than a candidate or elected City and County officer shall make, and no controlled committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to a controlled committee of the candidate or elected City and County officer to exceed $500.~~

~~(b) If any person is found guilty of violating the terms of this Section, each controlled committee treasurer who received part or all of the contribution or contributions which constitute the violation shall pay promptly, from available campaign funds, if any, the amount received from such person in excess of the amount permitted by this Section to the City and County Treasurer for deposit in the General Fund of the City and County.~~

~~(c) This Section shall not apply to any in-kind contribution of radio or television airtime to any controlled committee granted to said candidate or committee pursuant to the "Fairness Doctrine."~~

### SEC. 1.118. RUN-OFF ELECTIONS. ~~MUNICIPAL RUN-OFF ELECTION.~~ All provisions of this Chapter, unless specified otherwise herein, shall be applicable in any ~~municipal~~ run-off for any City elective ~~and County~~ office. In addition, the following provisions shall be applicable in any such ~~municipal~~ run-off election:

~~(a) No person other than a candidate shall make, and no campaign treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person in the municipal run-off election in support of or opposition to such candidate, including contributions to political committee supporting or opposing such candidate, to exceed $100.~~

~~(b) For candidates who adopt the expenditure ceilings as defined in Section 1.128 of this Chapter, no person other than a candidate shall make, and no campaign treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person in the municipal run-off election in support of or opposition to such candidate, including contributions to political committee supporting or opposing such candidate, to exceed $250. (c) Each campaign treasurer who receives a contribution which exceeds the limit imposed by this Section shall pay promptly, from available~~

~~campaign funds, if any, the amount received in excess of the amount permitted by this Section to the City Treasurer for deposit in the General Fund of the City and County.~~

~~(a) (d)~~ TIME LIMITATION ON ACCEPTANCE OF CONTRIBUTIONS. No person shall make, and no ~~candidate campaign treasurer~~ shall solicit or accept, any contribution in connection with a run-off election for a City elective office until the day following the date of the general election for that office.

~~(e) The amount a person may contribute in support of or opposition to a candidate in connection with a run-off election shall be controlled solely by the limits imposed by this Section without regard to the amount said person contributed in support of or opposition to the candidate in the general election.~~

(b) ~~(f)~~ USE OF UNEXPENDED FUNDS. Any candidate who qualifies for a run-off election may utilize unexpended campaign funds from the general election campaign for the run-off election~~, provided that the applicable expenditure ceilings shall continue to apply~~.

~~(g) A contribution shall not be considered to be received if it is not negotiated, deposited, or utilized, and in addition it is returned to the donor within 72 hours of receipt. In the case of a late contribution as defined in Government Code Section 82036, it shall not be deemed received if it is returned to the contributor within 48 hours of receipt.~~

### SEC. 1.120. CONTRIBUTION LIMITS - POST-ELECTION LEGAL PROCEEDINGS. All provisions of this Chapter, unless specified otherwise herein, shall be applicable in any post-election recounts, election contests or other proceedings held pursuant to law. In addition, the following provisions shall be applicable in any such post-election legal proceedings:

(a) No person other than a candidate shall make, and no ~~candidate campaign treasurer~~ shall solicit or accept, any contribution which will cause the total amount contributed by such person in post-election legal proceedings to any candidate in support of or opposition to any candidate, including contributions to political committees supporting or opposing such candidate, to exceed, in addition to the contribution limit contained in Sections 1.114 ~~and 1.118~~, $100.

(b) Notwithstanding any other provision of this Chapter to the contrary, for the purposes of conducting post-election recounts, election contests or other proceedings held pursuant to law, the delivery of in-kind legal services by lawyers in support of or in opposition to candidates, including in-kind contributions to ~~political~~ committees supporting or opposing candidates, shall not be subject to any contribution

(Continued on next page)

*LEGAL TEXT OF PROPOSITION O (CONTINUED)*

limitations set forth in this Chapter.

(c) If any person is found guilty of violating the terms of this Section, each campaign treasurer who received part or all of the contribution or contributions which constitute the violation shall pay promptly, from available campaign funds, if any, the amount received from such person in excess of the amount permitted by this Section to the City and County Treasurer for deposit in the General Fund of the City and County.

**SEC. 1.122. SOLICITATION OR ACCEPTANCE OF CAMPAIGN CONTRIBUTIONS — LIMITATIONS.** No intended candidate for any ~~public office of the~~ City ~~elective office and County~~, and no committee acting on behalf of a candidate, shall solicit or accept, or cause to be solicited or accepted, any contribution unless and until said candidate shall have filed a declaration of intention to become a candidate for a specific City and County office with the Department of Elections on a form to be prescribed by the Director of Elections; provided, however, that in any election in which members of the Board of Supervisors are elected by votes cast in a district, the office of a member of the Board of Supervisors shall be deemed to be a specific office of the City and County.

No person shall file a declaration of intention to become a candidate for more than one City elective office ~~of said City and County~~. For the purposes of this Section a committee acting on behalf of a candidate need not be controlled by or acting under the authorization of the candidate.

Except as provided below, any contributions solicited or accepted under this Section shall be expended only on behalf of the candidacy for the office specified in said declaration of intention to become a candidate. Contributions solicited or accepted under this Section for one individual shall not be expended for the candidacy of any other individual or in support of or opposition to any measure. If an individual ceases to be a candidate or fails to qualify under the provisions of the Charter for an office for which contributions have been solicited or accepted, then all unexpended contributions shall be returned on a pro rata basis to those persons who have made said contributions or donated to the General Fund of the City and County of San Francisco.

Unexpended contributions held by a candidate or committee after the date of the election in which said candidate or measure appeared on the ballot may be returned on a pro rata basis to those persons who have made said contributions, donated to a charitable organization, donated to the General Fund of the City and County of San Francisco, or as contributions to a candidate or a committee acting on behalf of a candidate, transferred to any legally constitut-

ed committee established by or on behalf of the candidate, pursuant to the provisions of Government Code of the State of California (commencing at Section 81000).

**SEC. 1.124. PERSONS PROHIBITED FROM MAKING CONTRIBUTIONS IN THE NAME OF ANOTHER.** (a) No contribution of $100 or more other than an in-kind contribution shall be made unless by written instrument containing the name of the donor and the name of the payee.

(b) No contribution shall be made, directly or indirectly, by any person in a name other than the name by which such person is identified for legal purposes.

(c) Any candidate who receives a contribution made in violation of this Section shall pay promptly, from available campaign funds, the amount of the contribution to the City Treasurer for deposit in the General Fund of the City and County.

**SEC. 1.126. CONTRIBUTION LIMITS - CONTRACTORS DOING BUSINESS WITH THE CITY ~~PROHIBITED FROM MAKING CONTRIBUTIONS~~.** No person who contracts with the City and County of San Francisco, for the rendition of any material, supplies or equipment to the City, or for selling or leasing any land or building to or from the City, whenever such transaction would require approval by a City elective officer, or the board on which that City elective officer serves, shall make any contribution to such an officer, or candidate for such an office, or committee controlled by such officer or candidate at any time between commencement of negotiations and either the completion of, or the termination of, negotiations for such contract.

**SEC. 1.128. EXPENDITURE CEILINGS.** All candidates for City elective office who adopt campaign expenditure ceilings as defined below ~~are permitted the higher contribution limits as defined in Sections 1.114(b) and 1.115(b). Before accepting any contributions at the higher contribution limits, candidates who adopt voluntary expenditure ceilings~~ must ~~first~~ file a statement with the Department of Elections indicating acceptance of the expenditure ceiling. Said statement shall be filed no later than the deadline for filing nomination papers with the Department of Elections, and once filed may not be withdrawn. This statement is a public document.

**SEC. 1.130. AMOUNT OF EXPENDITURE CEILINGS.** (a) In primary elections, any candidate for Assessor or Public Defender who agrees to expenditure ceilings shall not make total qualified campaign expenditures

exceeding $175,000. In general elections, any candidate for Assessor or Public Defender who agrees to expenditure limits shall not make total qualified campaign expenditures exceeding $100,000.

(b) In general elections, any candidate for Mayor who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $600,000. In run-off elections, any candidate for Mayor who agrees to expenditure limits shall not make total qualified campaign expenditures exceeding $400,000.

(c) In general elections, any candidate for City Attorney, District Attorney, Treasurer or Sheriff who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $175,000. In run-off elections, any candidate for City Attorney, District Attorney, Treasurer or Sheriff who agrees to expenditure limits shall not make total qualified campaign expenditures exceeding $100,000.

(d) In general elections, any candidate for the Board of Supervisors who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $75,000. In run-off elections, any candidate for the Board of Supervisors who agrees to expenditure limits shall not make total qualified campaign expenditures exceeding $20,000.

(e) Any candidate for the Board of Education of the San Francisco Unified School District or the Governing Board of the San Francisco Community College District who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $75,000.

(f) The Ethics Commission is authorized to adjust annually the expenditure ceilings imposed by this Section to reflect the change in the California Consumer Price Index for that year.

**SEC. 1.132. TIME PERIODS FOR EXPENDITURES.** (a) For purposes of the expenditure ceilings for the offices of Assessor and Public Defender, qualified campaign expenditures made at any time on or before the date of the primary shall be considered primary election expenditures, and qualified expenditures made after the date of the primary election shall be considered general election expenditures. However, in the event that payments are made but the goods or services are not used during the period purchased, the payments shall be considered qualified campaign expenditures for the time period in which they are used. Payments for goods or services used during both time periods shall be prorated.

(b) For purposes of the expenditure ceilings for the offices of City Attorney, District Attorney, Treasurer, Sheriff and Supervisor, qualified campaign expenditures made at any

*(Continued on next page)*

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

time before the general election shall be considered general election expenditures, and qualified expenditures made after the general election shall be considered run-off election expenditures. However, in the event that payments are made but the goods or services are not used during the period purchased, the payments shall be considered qualified campaign expenditures for the time period in which they are used. Payments for goods or services used during both time periods shall be prorated.

SEC. 1.134. EXPENDITURE CEILINGS LIFTED — OFFICES OTHER THAN SUPERVISOR. This Section shall apply only if at least one candidate for the City elective office has filed a statement with the Department of Elections pursuant to Section 1.128 indicating acceptance of the applicable expenditure limits. (a) If a candidate declines to accept expenditure ceilings and receives contributions or makes qualified campaign expenditures in excess of 100 50 percent of the applicable expenditure ceiling, or if an independent expenditure committee or committees in the aggregate spend in support of or in opposition to a candidate more than 25 100 percent of the applicable expenditure ceiling, the applicable expenditure limit shall no longer be binding on any candidate seeking election to the same office, and any candidate running for the same office who accepted expenditure limits shall be permitted to continue to receive contributions at the amount set for such candidates in Section 1.114(b) or 1.118(b).

(b) Any candidate who declines to adopt the voluntary expenditure ceiling and who receives contributions, makes expenditures or has funds in his campaign trust account that exceed 100 50 percent of the applicable expenditure ceiling shall, within 24 hours of exceeding 100 50 percent of the applicable expenditure ceiling, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Within 24 hours after receiving such notice, the Ethics Commission shall inform every other candidate for that office by registered mail, return receipt requested, that the expenditure campaign ceiling has been lifted.

(c) Any independent expenditure committee that spends in support of or in opposition to a candidate more than 25 percent of the applicable expenditure ceiling shall, within 24 hours of reaching this threshold, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Thereafter, any such committee shall file a supplemental statement with the Ethics Commission each time the independent expenditure committee spends in support

of or in opposition to such candidate an additional 5 five percent of the applicable expenditure ceiling. The supplemental statements shall be filed within 24 hours of reaching these spending thresholds.

SEC. 1.136. PUBLIC FINANCING OF ELECTION CAMPAIGNS. Candidates for the Board of Supervisors who are certified by the Ethics Commission as eligible to receive public financing of their election campaigns, and who comply with the conditions and restrictions specified in Section 1.140 of this Chapter, may receive public funds as provided in this Chapter to defray the costs of their election campaigns.

SEC. 1.138. ELECTION CAMPAIGN FUND: APPROPRIATION OF FUNDS. (a) ESTABLISHMENT of ELECTION CAMPAIGN fund. There is hereby established a special fund of the City and County of San Francisco called the Election Campaign Fund. All money deposited in the Fund is hereby appropriated for use as specified in this Chapter and the implementing regulations.

(b) APPROPRIATION TO ELECTION CAMPAIGN FUND. Each fiscal year the City and County of San Francisco shall appropriate to the Election Campaign Fund an amount sufficient to provide funding for election campaigns as authorized by this Chapter for all candidates for the Board of Supervisors who may be eligible to receive such funds. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount required. If at any time the amount appropriated is insufficient to fund all eligible candidates, the Ethics Commission shall notify the Mayor and Board of Supervisors, and the City and County shall appropriate additional funds. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating any additional funds required.

(c) APPROPRIATION TO ETHICS COMMISSION. Each fiscal year the City and County of San Francisco shall appropriate to the Ethics Commission an amount sufficient to pay for the costs of administration of the public financing program. This appropriation shall be in addition to and separate from the regular annual appropriation made to the Ethics Commission. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount required.

(d) LIMITATION ON EXPENDITURE OF FUNDS. The annual appropriation to this public financing program, including the cost of administration, shall not exceed $2.00 per resident of the City and County of San Francisco. At the request of the Ethics Commission, the Controller shall estimate the number of residents of the City and County of San Francisco

for purposes of this subsection.

SEC. 1.140. ELIGIBILITY TO RECEIVE PUBLIC FINANCING.

(a) REQUIREMENTS. To be eligible to receive public financing of campaign expenses under this Chapter, a candidate must:

(1) be seeking election to the Board of Supervisors and be eligible to hold the office sought;

(2) have received at least $7,500 in qualifying contributions from at least 75 contributors. Candidates who are attempting to qualify for public financing are permitted to solicit contributions up to the limits imposed by Section 1.114(a) of this Chapter, but only the first $100 will be counted as a qualifying contribution;

(3) be opposed by another candidate who has either established eligibility to receive public financing, or received contributions or made expenditures which in the aggregate equal or exceed $7,500;

(4) agree to the following conditions:

(A) the candidate bears the burden of proving that each contribution the candidate relies upon to establish eligibility is a qualifying contribution;

(B) the candidate bears the burden of proving that expenditures made with public funds provided under this Chapter comply with Section 1.148 of this Chapter;

(C) the candidate shall not make qualified campaign expenditures which in the aggregate exceed the expenditure limits specified in Section 1.130(d) of this Chapter, except as provided in Section 1.146 of this Chapter; and

(D) the candidate shall agree to participate in at least one debate with the candidate's opponents.

(b) ADJUSTMENT OF EXPENDITURE LIMITS AND THRESHOLDS. Whenever the Ethics Commission pursuant to Section 1.130(f) adjusts the voluntary expenditure ceilings to reflect changes in the California Consumer Price Index, the Commission is authorized to adjust the threshold limits in subsections (a)(2), (a)(3) and (a)(4)(C) of this Section, and subsections (a)(1) and (a)(2) of Section 1.152, to also reflect changes in the California Consumer Price Index.

SEC. 1.142. PROCESS FOR ESTABLISHING ELIGIBILITY; CERTIFICATION BY THE ETHICS COMMISSION. (a) DECLARATION BY CANDIDATE. To be eligible to receive public financing of campaign expenses under this Chapter, a candidate shall declare, under penalty of perjury, that the candidate satisfies the requirements specified in Section 1.140. Candidates shall submit the dec-

(Continued on next page)

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

laration and any supporting material required by the Ethics Commission to the Ethics Commission on or after June 1 of the election year, but no later than the deadline for filing nomination papers with the Director of Elections. Once the declaration and supporting material are submitted, they may not be amended. The declaration and supporting material may be withdrawn and refiled, provided that the refiling is made no later than the deadline for filing nomination papers.

(b) DETERMINATION OF ELIGIBILITY. The Executive Director of the Ethics Commission shall review the candidate's declaration and supporting material to determine whether the candidate is eligible to receive public funds under this Chapter. The Executive Director may audit the candidate's records, interview contributors and take whatever steps the Executive Director deems necessary to determine eligibility. At the request of the Executive Director, the Controller shall assist in this review process.

(c) Determination of Opposition. To determine whether a candidate is opposed as required under Section 1.140(a)(3) of this Chapter, the Executive Director shall review the material filed pursuant to Section 1.152(a) of this Chapter, and may review any other material.

(d) CERTIFICATION. If the Executive Director determines that a candidate has satisfied the requirements of Section 1.140, the Executive Director shall notify the candidate and certify to the Controller that the candidate is eligible to receive public financing under this Chapter. The Executive Director shall not certify that a candidate is eligible to receive public financing if the candidate's declaration or supporting material is incomplete or otherwise inadequate to establish eligibility. The Executive Director shall determine whether to certify a candidate no later than 30 days after the date the candidate submits his or her candidate declaration and supporting material.

(e) RESUBMISSION. If the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall notify the candidate. Notwithstanding Section 1.142(a) of this Chapter, the candidate may, within five business days of the date of notification, resubmit the declaration and supporting material. If the candidate does not timely resubmit, the Executive Director's determination is final.

If, after viewing resubmitted material, the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall notify the candidate of this fact. Additional resubmissions may be permitted in the Executive Director's discretion. If the candidate fails to resubmit in the time specified by the

Executive Director, or if no further resubmissions are permitted, the Executive Director's determination is final.

(f) RECONSIDERATION. A candidate may request that the Executive Director reconsider a final determination that the candidate is ineligible to receive public funds under this Chapter. The candidate must request reconsideration in writing within five days of the date of notification of ineligibility.

(g) APPEAL TO THE ETHICS COMMISSION. If, after reconsideration, the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the candidate may appeal the Executive Director's final determination to the Ethics Commission. The candidate must deliver the written appeal to the Ethics Commission within five days of the date of notification of the Executive Director's determination following reconsideration.

### SEC. 1.144. DISBURSEMENT OF PUBLIC FUNDS. (a) PAYMENT BY CONTROLLER. Upon certifying that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall forward the certification to the Controller and the Controller shall disburse payments to the candidate from the Election Campaign Fund in accordance with the certification and this Section.

(b) TIME OF PAYMENTS. The Controller shall not make any payments under this Chapter until the day following the deadline for filing nomination papers with the Director of Elections.

(c) PAYMENTS FOR GENERAL ELECTION EXPENSES. Upon certification of eligibility, and in accordance with subsection (b) of this Section, the candidate shall receive a payment of $5,000 from the Election Campaign Fund. Thereafter, for each of the first $5,000 dollars of matching contributions raised by the candidate, the candidate shall receive four dollars from the Election Campaign Fund. Thereafter, for each additional dollar of matching contributions raised by the candidate, the candidate shall receive one dollar from the Election Campaign Fund. The maximum amount of public funds a candidate may receive to defray general election expenses under this Chapter is $43,750. The amount of public funds paid under this Section shall not be affected by the lifting of expenditure limits under Section 1.146.

(d) PAYMENTS FOR RUN-OFF ELECTION EXPENSES. Each candidate who is certified to receive public funds under this Chapter and who qualifies for a run-off election shall receive a payment of $5,000 from the Election Campaign Fund. Thereafter, for each dollar of matching contributions raised by the candidate, the candidate shall receive four dollars from the

Election Campaign Fund. The maximum amount of public funds such candidates may receive to defray run-off election expense under this Chapter is $17,000. The amount of public funds paid under this Section shall not be affected by the lifting of expenditure limits under Section 1.146.

(e) PRORATION OF FUNDS. Notwithstanding subsections (c) and (d) of this Section, if the Ethics Commission makes a final determination, pursuant to Section 1.154(b) of this Chapter, that funds in the Election Campaign Fund are insufficient, the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds.

(f) DEPOSIT IN CAMPAIGN CONTRIBUTION TRUST ACCOUNT. Candidates must deposit all payments received from the Election Campaign Fund in the candidate's Campaign Contribution Trust Account.

(g) TERMINATION OF PAYMENTS. The Controller shall terminate all payments to a candidate who is otherwise eligible to receive public financing if the candidate:

(1) withdraws or fails to qualify to have his or her name printed on the ballot for the election for which the candidate applied for public financing;

(2) fails to comply with the conditions specified in Section 1.140 of this Chapter; or

(3) fails to comply with any of the reporting requirements imposed by this Chapter or the Political Reform Act, California Government Code Section 81000, et seq.

### SEC. 1.146. EXPENDITURE CEILINGS LIFTED — CANDIDATES FOR SUPERVISOR. (a) TRIGGER PROVISIONS.

(1) Nonparticipating candidate. If a candidate who has not filed a declaration under Section 1.142(a) of this Chapter, or who has received notice under Section 1.142 that the candidate is ineligible to receive public funds, receives contributions or makes qualified campaign expenditures in excess of 100 percent of the applicable expenditure ceiling, the applicable expenditure ceiling shall no longer be binding on any candidate running in the same supervisorial district;

(2) Independent Expenditures. If a committee or committees in the aggregate make independent expenditures in support of or in opposition to a candidate in excess of 100 percent of the applicable expenditure ceiling, the applicable expenditure ceiling shall no longer be binding on any candidate running in the same supervisorial district as the candidate who was the subject of the independent expenditures that exceeded the ceiling.

(Continued on next page)

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

(b) NOTIFICATION. Within 24 hours of receiving notice, pursuant to Section 1.152 of this Chapter, either of the trigger provisions in subsection (a) of this Section have been met, the Ethics Commission shall inform every candidate in the affected supervisorial district by certified mail that the expenditure ceilings have been lifted.

SEC. 1.148: RESTRICTIONS ON USE OF PUBLIC FUNDS; SURPLUS FUNDS. (a) USE FOR QUALIFIED CAMPAIGN EXPENDITURES ONLY. Candidates who receive public financing may use the public funds solely to pay for qualified campaign expenditures, as defined by Section 1.104 of this Chapter, and to repay loans used to pay for qualified campaign expenditures. Candidates may not use public funds to pay for expenses incurred in connection with an administrative or judicial proceeding. Candidates may not use public funds to pay administrative, civil or criminal fines, including late filing fines, or to pay for inaugural activities or officeholder expenses.

(b) PURCHASE OF EQUIPMENT. Any equipment purchased by a candidate with public funds provided under this Chapter that has a useful life beyond the election campaign for which the funds were provided, and a fair market value exceeding $100, becomes City and County property on the day following the date the candidate is elected or not elected to office.

(c) WITHDRAWAL OR FAILURE TO QUALIFY. Any candidate who receives public financing but who withdraws or fails to qualify to have his or her name printed on the ballot in the election for which the public funds were provided shall repay the Election Campaign Fund the full sum received from the Fund.

(d) SURPLUS FUNDS. Any candidate who receives public financing and who has surplus funds shall, no later than 30 days after the date the funds become surplus, deposit those funds in the Election Campaign Fund.

SEC. 1.150. AUDIT; REPAYMENT. (a) AUDIT. The Ethics Commission shall audit all candidates who receive public financing under this Chapter. At the request of the Executive Director, the Controller shall assist in conducting these audits.

(b) REPAYMENT. If the Ethics Commission determines that any portion of the payments made to a candidate from the Election Campaign Fund exceeded the aggregate amount of payments to which the candidate was entitled under this Chapter, the Commission shall notify the Controller and the candidate. The candidate shall pay to the Controller an amount equal to the amount of excess payments. In addition, if the Commission determines that any amount of any

payment made to a candidate from the Election Campaign Fund was used for something other than qualified campaign expenditures, the candidate shall pay to the Controller an amount equal to the improper expenditure. All payments received by the Controller under this Section shall be deposited in the Election Campaign Fund.

SEC. 1.152. SUPPLEMENTAL REPORTING. In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, the following disclosure requirements shall apply:

(a) REPORTING BY CANDIDATES WHO DO NOT RECEIVE PUBLIC FUNDS.

(1) GENERAL. No later than the deadline for filing nomination papers with the Director of Elections, each candidate who has not filed a declaration under Section 1.142(a) of this Chapter or who has received notice under Section 1.142 that the candidate is ineligible to receive public funds under this Chapter shall file a statement with the Ethics Commission indicating whether the nonparticipating candidate has received contributions, made expenditures or has funds in his or her campaign trust account that in the aggregate equal or exceed $7,500. The statement shall also indicate whether the nonparticipating candidate agrees to limit his or her qualified campaign expenditures to the expenditure ceilings as provided in Section 1.128.

(2) AFTER DEADLINE. If the nonparticipating candidate first reaches or exceeds the $7,500 threshold in subsection (a)(1) of this Section after the deadline for filing nomination papers, or receives notice of ineligibility to receive public funds after that date, the nonparticipating candidate shall, within 24 hours of reaching or exceeding the threshold or receiving notice of ineligibility, file a statement indicating this fact with the Ethics Commission.

(3) TRIGGER REPORTING. If the nonparticipating candidate receives contributions, makes expenditures or has funds in his or her campaign trust account that exceed 75 percent of the applicable expenditure ceiling, the nonparticipating candidate shall, within 24 hours of reaching that level, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Thereafter, the nonparticipating candidate shall file a supplemental statement with the Ethics Commission within 24 hours of receiving contributions or making expenditures or having funds in his trust account that equal or exceed 100 percent of the applicable expenditure ceiling.

(b) SUPPLEMENTAL REPORTING BY COMMITTEES. (1) GENERAL. Except as

provided in Section 81009.5(b) of the California Government Code, any committee that makes contributions or independent expenditures totaling $500 or more in a calendar month during the six months immediately preceding an election, to support or oppose a candidate for City elective office at that election, shall disclose, prior to the date of the election, all contributions and loans received and all expenditures made. The Ethics Commission shall prescribe the form, content and filing deadlines for these statements. The Ethics Commission may require that these statements be filed electronically.

(2) TRIGGER REPORTING. Except as provided in Section 81009.5(b) of the California Government Code, any committee that makes independent expenditures in support of or in opposition to a candidate that equal or exceed five percent of the applicable expenditure ceiling shall, within 24 hours of reaching this threshold, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Thereafter, any such committee shall file a supplemental statement with the Ethics Commission each time the committee makes independent expenditures in support of or in opposition to the candidate which equal or exceed an additional five percent of the applicable expenditure ceiling. The supplemental statements shall be filed within 24 hours of reaching these spending thresholds.

SEC. 1.154. INSUFFICIENT FUNDS IN ELECTION CAMPAIGN FUND.

(a) REPORT BY CONTROLLER. At the request of the Ethics Commission, the Controller shall provide a statement of the total amount of funds in the Election Campaign Fund.

(b) FINAL DETERMINATION. No later than 15 days after the deadline for filing nomination papers with the Department of Elections, the Ethics Commission shall make a final determination whether the amount in the Election Campaign Fund is sufficient to fund all candidates for the Board of Supervisors who may be eligible to receive public financing for their election campaigns under this Chapter. If the Commission's final determination is that the amount in the Fund is insufficient, the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds.

SEC. 1.156. REPORT TO THE MAYOR AND BOARD OF SUPERVISORS. Following each election at which members of the Board of Supervisors are elected, the Ethics

(Continued on next page)

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

Commission shall submit a report to the Mayor and Board of Supervisors. The report shall state the amount of public funds used to pay for election campaigns in that election and such other information as the Ethics Commission deems useful, including the number of candidates who received public funds; the number of nonparticipating candidates; the amount of qualified campaign expenditures made by all candidates in that election; and the amount of independent expenditures made in connection with the election.

SEC. 1.158. IMPLEMENTING REGULATIONS; FORMS. Pursuant to Charter Section 15.102, the Ethics Commission shall adopt regulations to implement this Chapter. The Ethics Commission shall also specify the form and content of all forms and statements required to be filed under this Chapter.

SEC. 1.160. NO LIMITATION OF CANDIDATE LIABILITY. Nothing in this Chapter shall operate to limit the candidate's liability for, nor the candidate's ability to pay, any fines or other payments imposed pursuant to administrative or judicial proceedings.

SEC. ~~1.136.~~ 1.162. INDEPENDENT EXPENDITURES FOR MASS MAILINGS, SLATE MAILINGS OR OTHER CAMPAIGN LITERATURE. Any person who makes independent expenditures for a mass mailing, slate mailing or other campaign materials which support or oppose any candidate for City elective office shall place the following statement on the mailing or materials in typeface no smaller than 14 points:

Notice to Voters
(Required by City and County of San Francisco)
This mailing is not authorized or approved by any candidate for City and County office or by any election official.
It is paid for by
(name and committee identification number).
(address, city, state).
Total cost of this mailing is (amount)

SEC. ~~1.138~~ 1.164. DUTIES OF ETHICS COMMISSION. In addition to other duties required under the Charter and the terms of this Chapter, the Ethics Commission shall:

(a) Prepare and publish written instructions explaining the duties of persons, candidates and committees under this Chapter.

(b) Determine whether required statements and declarations have been filed with the Ethics Commission, and, if so, whether they conform on their face with the requirements of this Chapter.

(c) Notify promptly all persons, candidates

P-226

and committees known to the Ethics Commission who have failed to file a statement in the form and at the time required by Section 1.106 hereof.

(d) Report apparent violations of this Chapter to the District Attorney.

(e) Compile and maintain a current list of all statements or parts of statements filed with the Ethics Commission pertaining to each candidate and each measure.

(f) Cooperate with the District Attorney in the performance of the duties of the District Attorney as they are related to this Chapter.

(g) Enforce or cause to be enforced the provisions of this Chapter.

(h) Prepare and publish adequate procedures to notify all persons, candidates and committees in advance relative to filing dates and forms required by Section 1.106 hereof.

SEC. ~~1.140.~~ 1.166. DUTIES OF ENFORCEMENT AUTHORITY. In addition to the other duties required of him or her under the provisions of this Chapter, the enforcement authority for civil enforcement shall review such campaign statements filed with the Ethics Commission as the Commission shall refer to him or her for legal compliance with the provisions of this Chapter.

SEC. ~~1.142.~~ 1.168. ENFORCEMENT; ADVICE. ~~DISTRICT ATTORNEY COMPLAINTS, LEGAL ACTION, INVESTIGATORY POWERS, CITY ATTORNEY ADVICE.~~

(a) ENFORCEMENT - GENERAL PROVISIONS. Any person who believes that a violation of this Chapter has occurred may file a complaint with the Ethics Commission, City Attorney or District Attorney. The Ethics Commission shall investigate such complaints pursuant to Charter Section C3.699-13 and its implementing regulations. The City Attorney and District Attorney shall investigate, and shall have such investigative powers as are necessary for the performance of their duties under this Chapter.

(b) ENFORCEMENT - CIVIL ACTIONS. The City Attorney, or any voter, may bring a civil action to enjoin violations of or compel compliance with the provisions of this Chapter. No civil action alleging a violation of the provisions of this Chapter shall be filed more than four years after the date the cause of action accrued or the date that the facts constituting the cause of action were discovered by the civil prosecutor, whichever is later.

No voter may commence an action under this subsection without first providing written notice to the City Attorney of intent to commence an action. The notice shall include a statement of the grounds for believing a cause of action exists. The voter shall deliver the

notice to the City Attorney at least sixty days in advance of filing an action. No voter may commence an action under this subsection if the Ethics Commission has issued a finding of probable cause that the defendant violated the provisions of this Chapter, or if the City Attorney or District Attorney has commenced a civil or criminal action against the defendant, or if another voter has filed a civil action against the defendant under this subsection.

A Court may award reasonable attorney's fees and costs to any voter who obtains injunctive relief under this subsection. If the Court finds that an action brought by a voter under this subsection is frivolous, the Court may award the defendant reasonable attorney's fees and costs.

~~(a) Any person who believes that a violation of any portion of this Chapter has occurred may file a complaint with the District Attorney. If the District Attorney determines that there is reason to believe a violation of this Chapter has occurred, he or she shall make an investigation. Whenever the District Attorney has reason to believe a willful violation of this Chapter has occurred or is about to occur, he or she may institute such legal action as from time to time as he or she deems necessary to prevent further violations.~~

~~(b) The District Attorney shall have such investigative powers as are necessary for the performance of the duties prescribed in this Chapter and may demand, and be furnished, records of campaign contributions and expenses at any time.~~

(c) ADVICE. Any person may request advice from the Ethics Commission or City Attorney with respect to any provision of this Chapter. The Ethics Commission shall provide advice pursuant to Charter Section C3.699-12. ~~Any person may request the City Attorney for advice with respect to any provision of this Chapter.~~ The City Attorney shall within 14 days of the receipt of said written request provide the advice in writing or advise the person who made the request that no opinion will be issued. The City Attorney shall send a copy of said request to the District Attorney upon its receipt. ~~(d)~~ The City Attorney shall within nine days from the date of the receipt of said written request send a copy of his or her proposed opinion to the District Attorney. The District Attorney shall within four days inform the City Attorney whether he or she agrees with said advice, or state the basis for his or her disagreement with the proposed advice.

~~(e)~~ No person other than the City Attorney who acts in good faith on the advice of the City Attorney shall be subject to criminal or civil penalties for so acting; provided that, the mate-

(Continued on next page)

## LEGAL TEXT OF PROPOSITION O (CONTINUED)

rial facts are stated in the request for advice and the acts complained of were committed either in reliance on the advice or because of the failure of the City Attorney to provide advice within 14 days of the request or such later extended time.

SEC. 1.144. 1.170. PENALTIES. (a) GENERAL PROVISIONS — CRIMINAL. Any person who knowingly or willfully violates any provision of this Chapter shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred dollars or by imprisonment in the County jail for a period of not more than six months or by both such fine and imprisonment; provided, however, that any willful or knowing failure to report contributions or expenditures done with intent to mislead or deceive or any willful or knowing violation of the provisions of Section 1.114 or Section 1.118 of this Chapter shall be punishable by a fine of not less than $500 or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 or Section 1.118 of this Chapter, or three times the amount expended in excess of the amount allowable pursuant to Section 1.130, whichever is greater.

(b) GENERAL PROVISIONS - CIVIL. Any person who intentionally or negligently violates any of the reporting requirements or contribution or expenditure limitations set forth in this Chapter shall be liable in a civil action brought by the civil prosecutor for an amount up to $500 or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 or Section 1.118, or three times the amount expended in excess of the amount allowable pursuant to Section 1.130, whichever is greater.

(c) MISUSE OF PUBLIC FUNDS. Any person who willfully or knowingly uses public funds, paid pursuant to this Chapter, for any purpose other than the purposes authorized by this Chapter shall be guilty of a misdemeanor and punishable by a fine of not less than $500, or an amount not more than $5,000 or the amount three times the amount improperly spent, whichever is greater, or by imprisonment in the County jail for a period of not more than six months, or by both such fine and imprisonment. Any person who willfully, knowingly or negligently uses public funds for any purpose other than the purposes authorized by this Chapter shall be liable in a civil action brought by the civil prosecutor for an amount up $5,000 or an amount of three times the amount improperly spent, whichever is greater.

(d) PROVISION OF FALSE OR MISLEADING INFORMATION TO THE ETHICS COMMISSION; WITHHOLDING OF INFORMATION. Any person who knowingly or willfully furnishes false or fraudulent evidence, documents, or information to the Ethics Commission under this Chapter, or misrepresents any material fact, or conceals any evidence, documents, or information relevant to certification of eligibility for public financing, or to an audit, or fails to furnish to the Ethics Commission any records, documents, or other information required to be provided under this Chapter shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of up to $5,000, or by imprisonment in the County jail for a period of not more than six months, or by both such fine and imprisonment.

(e) DEPOSIT IN THE ELECTION CAMPAIGN FUND. All fines paid pursuant to subsections (c) or (d) of this Section are to be deposited in the Election Campaign Fund of the City and County of San Francisco.

SEC. 1.146. 1.172. EFFECT OF VIOLATION ON OUTCOME OF ELECTION. If a candidate is convicted of a violation of this Chapter at any time prior to his or her election his or her candidacy shall be terminated immediately and he or she shall be no longer eligible for election, unless the court at the time of sentencing specifically determines that this provision shall not be applicable.

No person convicted of a misdemeanor under this Chapter after his or her election shall be a candidate for any other City and County office for a period of five years following the date of the conviction unless the court shall at the time of sentencing specifically determine that this provision shall not be applicable.

A plea of nolo contendere shall be deemed a conviction for purposes of this Section.

SEC. 1.148. 1.174. EFFECT OF VIOLATION ON CERTIFICATION OF ELECTION RESULTS. The Director of Elections shall not issue any certificate of nomination or election to any candidate until his or her campaign statements required in Section 1.106 have been filed.

SEC. 1.150. 1.176. RULES OF CONSTRUCTION. This Chapter shall be construed liberally in order to effectuate its purposes. No error, irregularity, informality, neglect or omission of any officer in any procedure taken under this Chapter which does not directly affect the jurisdiction of the Board of Supervisors or the City and County to control campaign contributions shall avoid the effect of this Chapter.

SEC. 1.152. 1.178. SEVERABILITY. If any provision of this Chapter, or the application thereof to any person or circumstance, is held invalid, the validity of the remainder of the Chapter and the applicability of such provisions to other persons and circumstances shall not be affected thereby.



# VIEWS

Runs like the Dickens!

April 14, 1992   75¢/80¢ CANADA   12345

## Woman adopts FOUR-LEGGED BABY!

"More to Love", says Mom.

### AMAZING THINGS HAPPEN AT ANIMAL CARE & CONTROL

If you're looking for a new addition to your family, we have great news.

We're Animal Care & Control of San Francisco. A full-service agency, with trained adoption counselors to help you find the right pet for you *and* your lifestyle.

We provide basic health screening, vaccinations, and veterinary examinations. And we'll help arrange to spay or neuter your new pet.

We also have a corps of dedicated volunteers who work to ensure the continued well being of every animal. There are dog walkers, cat socializers, even adoption follow-up counselors.

We're open seven days a week, 11 A.M. to 6 P.M. So call us today.

Because someone very special is waiting—just for you.

1200 15th Street • Harrison & 15th

## 554-6364

**Animal Care & Control**
CITY AND COUNTY OF SAN FRANCISCO
©1989 City and County of San Francisco

Paid for by Donations to the City's Animal Shelter

P-228

# EXHIBIT B

**Regulations to Campaign Finance Reform Ordinance**
**Effective June 8, 2007**

**Regulation 1.104-1: Definition of Matching Contribution.**
"Matching contribution" shall mean a monetary contribution, other than a loan or a qualifying contribution, that is made by an individual, other than the candidate or the candidate's immediate family, who is a resident of San Francisco and that complies with all requirements of the Campaign Finance Reform Ordinance, San Francisco Campaign & Governmental Conduct Code Section 1.100, et seq. ("CFRO"). "Matching contribution" shall not mean contributions made to a candidate to support the candidate's election to a different office, or to support the candidate's election to the same office in a different election year, where those contributions were unexpended and carried forward as contributions to a new campaign. "Matching contribution" shall not include contributions that are received more than 18 months before the date of the election.

**Regulation 1.104-2: Definition of Qualifying Contribution.**
"Qualifying contribution" shall mean a monetary contribution, other than a loan, of not less than $10 and not more than $100 that is made by an individual, other than the candidate or the candidate's immediate family, who is a resident of San Francisco, and that complies with all requirements of the Campaign Finance Reform Ordinance, San Francisco Campaign & Governmental Conduct Code Section 1.100, et seq. "Qualifying contribution" shall not mean contributions made to a candidate to support the candidate's election to a different office, or to support the candidate's election to the same office in a different election year, where those contributions were unexpended and carried forward as contributions to a new campaign. "Qualifying contribution" shall not include contributions that are received more than 18 months before the date of the election.

**Regulation 1.104-3:  Definition of Immediate Family.**
"Immediate family" means the spouse or registered domestic partner and dependent children of the candidate.

**Regulation 1.104-4:  Individual Expenditure Ceiling.**
A candidate who is certified to receive public funds from the Mayoral Election Campaign Fund is subject to an individual expenditure ceiling of $1,375,000 unless the Executive Director raises the individual expenditure ceiling of the candidate under section 1.134.5.

**Regulation 1.104-5:  Determination of Total Opposition Spending.**
(a)      To determine the total opposition spending against a candidate who has been certified eligible to receive public funding, the Executive Director shall (1) add the amount of costs made or incurred for independent expenditures, member communications or electioneering communications that are intended to oppose the candidate that are reported on Form SFEC-152(b)-3; or (2) add the amounts the Executive Director or Ethics Commission has determined, pursuant to section 1.134.5(d), are independent expenditures, electioneering communications or member communications that have the effect of opposing the candidate; or (3) add the amounts of any other expenditures of

1

which the Executive Director or Ethics Commission becomes aware that should be used to calculate the amount of total opposition spending.

(b)      For the purposes of determining total opposition spending, spending by a candidate to support himself or herself or to oppose his or her opponents in the same election does not constitute opposition spending.

### Regulation 1.104-6:  Determination of Total Supportive Funds.

(a)      To determine the total supportive funds of a candidate for Mayor, the Executive Director shall use the aggregate amount of contributions that are reported by the candidate on Forms SFEC-152(b)-1 and SFEC-152(b)-2.  The Executive Director shall then add to this contribution amount any amounts that (1) are reported on Forms SFEC-152(b)-3 related to independent expenditures, electioneering communications or member communications that are intended to support the candidate; or (2) the Executive Director or Ethics Commission has determined, pursuant to section 1.134.5(d), are independent expenditures, electioneering communications or member communications that have the effect of supporting the candidate; or (3) the Executive Director or Ethics Commission has determined should be used to calculate the amount of total supportive funds.

(b)      Spending by any person to oppose one candidate does not constitute spending to support the candidate's opponents for the purpose of determining total supportive funds.

### Regulation 1.104-7:  Member Communication.

For the purposes of sections 1.134 and 1.152(b)(3), a member communication shall have the same meaning as communications to members, employees, shareholders or families of members, employees or shareholders of an organization as those terms are defined by and used in California Government Code section 85312 and Title 2 of the California Code of Regulations, section 18531.7, and any subsequent amendments to those sections.

### Regulation 1.104-8:  Trust Account Limit.

Unless his or her individual expenditure ceiling is increased, the trust account limit of any candidate who is certified eligible to receive public funds may not exceed $1,375,000.  The trust account limit is reduced by any expenditure made by the candidate.  The trust account limit will be increased if the individual expenditure ceiling of the candidate is increased.

Example:  John A, a candidate for Mayor, has been certified eligible to receive public funds from the Mayoral Election Campaign Fund.  John's individual expenditure ceiling begins at $1,375,000.  John spends $30,000.  His trust account limit is now $1,345,000.

Example:  John's individual expenditure ceiling has been raised to $1,475,000.  John has spent an additional $170,000, for a total of $200,000.  His trust account limit is now $1,275,000.

2

**Regulation 1.107-1:  Training Requirements for Candidates and Candidate Treasurers.**
Each candidate for City elective office and the candidate's treasurer must attend a training program on the Campaign Finance Reform Ordinance conducted or sponsored by the Ethics Commission no earlier than 12 months and no later than 30 days prior to the election at which the candidate's name will appear on the ballot.

**Regulation 1.107-2:  Training Opportunities.**
The Ethics Commission shall provide a training workshop on the Campaign Finance Reform Ordinance at least once within 30 days of the last day to file nomination papers. A candidate or treasurer who is unable to attend a workshop training as required by section 1.107 may contact Ethics Commission staff to schedule one-on-one training, and staff will make all reasonable efforts to provide such training.  Such a person may also receive training from the Ethics Commission website, provided that the Commission has posted such a training video on its website along with a statement that expressly states that watching the video meets the requirement of section 1.107.

**Regulation 1.107-3:  Certificate of Training.**
Each candidate or treasurer who receives training must complete and submit a certification of training (Form SFEC-107) at such training.  Each candidate or treasurer who receives training from the Ethics Commission website must file a certificate indicating that he or she has completed the online training course.  The certificate of training (Form SFEC-107) will be available at the training session(s) or on the Ethics Commission's website.

**Regulation 1.108-1: Candidate Campaign Trust Account.**
Each treasurer for a candidate must file Form SFEC-108-1 with the Ethics Commission within 10 days of establishing any account required by section 1.108.

**Regulation 1.108-2:  Prohibition of Multiple Accounts.**
(a)　　A candidate may, but is not required to, use funds in his or her campaign contribution trust account for inaugural expenses.  All funds in the campaign contribution trust account are subject to the applicable contribution limit set forth in section 1.114. Funds expended from the campaign contribution trust account for inaugural expenses are not subject to the applicable expenditure ceiling in section 1.130.

(b)　　An inaugural committee, such as a nonprofit public benefit corporation, that is not created by or under control of an elected officeholder, is not subject to the CFRO.

**Regulation 1.108-3:  Campaign Contingency Accounts for Candidates for Mayor.**
(a)　　Each candidate for Mayor who is certified eligible to receive public funds may establish a campaign contingency account, separate from his or her campaign contribution trust account, into which the candidate may deposit contributions in anticipation of the candidate's individual expenditure ceiling being raised.

(b)      The campaign contingency account must be established at the same bank as the candidate's campaign contribution trust account and may be an interest-bearing savings account.  The candidate must file Form SFEC-108-2 with the Ethics Commission to provide the account number within 10 days of establishment of the campaign contingency account.

(c)      The candidate must report all contributions deposited into the campaign contingency account as if it were deposited into the candidate's campaign contribution trust account.

(d)      No candidate may make expenditures from his or her campaign contingency account.  A candidate may transfer funds from his or her campaign contingency account into his or her campaign contribution trust account, provided that the funds in the campaign contribution trust account do not exceed the candidate's trust account limit.

(e)      Within 10 days after the date of the election, each candidate must turn over all funds in his or her campaign contingency account to the Mayoral Election Campaign Fund so that the balance in the candidate's campaign contingency account is zero.  To turn funds over to the Mayoral Election Campaign Fund, each candidate must submit a money order for the amount of funds in the campaign contingency account, made payable to the City and County of San Francisco, and deliver the money order to the Ethics Commission no later than the 10th day after the date of the election.  The cost of the money order may be subtracted from the amount being turned over.  Each candidate must also Form SFEC-108-3 with the Ethics Commission certifying that the amount being turned over is accurate.

**Regulation 1.112-1:  Electronic Campaign Disclosure – Date of Expenditures.**
(a)      For the purposes of disclosure under section 1.112, the "date" that any expenditure required to be reported  is "incurred" is the date that the payment is made or the date that consideration, if any, is received, whichever is earlier.

(b)      For the purposes of disclosure under section 1.112, the "date" that an accrued expense is "incurred" is the date that the debt or obligation is contracted.

(c)      For the purposes of disclosure under section 1.112, an expenditure that qualifies as a monetary or nonmonetary contribution to a candidate or committee is "incurred" by a contributor on the earlier of the following dates:  (A) the date that funds are expended by the contributor for goods or services; or (B) the date that the contributor mails or delivers the funds.

**Regulation 1.114-1:  Limits on Contributions from Corporations.**
(a)      A corporation may establish, administer and solicit contributions to a separate segregated fund ("SSF") to be utilized by the corporation for making contributions to candidates for City elective office, provided that the SSF is (i) a federal committee, or (ii) a committee that complies with the reporting requirements of state and local law and this section.

(b)    References to Federal Law.  All references to federal statutes and regulations in this section include any existing or subsequent amendments, modifications, and formal judicial or federal administrative interpretation of those statutes and regulations.

(c)    Definitions.

(1)    Connected Organization.  For the purpose of this regulation, "connected organization" shall have the meaning set forth in 2 U.S.C. § 431(7).

(2)    Corporation.  For the purpose of section 1.114, "corporation" shall mean any corporation organized pursuant to the laws of the state of California, the United States, or any other state, territory, or foreign country, whether for profit or not, except as set forth in subsection (c)(2)(A) through (D).

(A)    Limited Liability Companies.  A limited liability company (LLC) that elects to be treated as a partnership under the Internal Revenue Code is not a "corporation" for the purposes of section 1.114(b).  A limited liability company that elects to be treated as a corporation under the Internal Revenue Code is a "corporation" for the purposes of section 1.114(b).

(B)    Partnerships with corporate members.  A partnership whose only members are corporations is a "corporation" for the purposes of section 1.114(b).  A partnership or an LLC with one or more members that are corporations and one or more members that are not corporations may contribute to a candidate for City elective officer under section 1.114(b) if the contributions are attributable exclusively to sources that are not corporations.

(C)    Professional corporations.  A professional corporation is a "corporation" for the purposes of section 1.114(b).

(D)    Nonprofit corporations.  A nonprofit corporation is a "corporation" for the purposes of section 1.114(b), provided, however, that a nonprofit corporation may make a contribution to a candidate for City elective office without violating the prohibitions set forth in section 1.114(b) if (1) it is a "qualifying nonprofit corporation" as defined in 11 C.F.R. section 114.10(c), and (2) it complies with 11 C.F.R. section 114.10(f).

(d)    SSF Name.  Every SSF must adopt a name in compliance with 2 U.S.C. section 432(e)(5) and 11 C.F.R. section 102.14(c).

(e)    Treasurer.  Each SSF must have a treasurer pursuant to Government Code section 84100 and the CFRO.  No contribution or expenditure shall be accepted or made by or on behalf of an SSF during any period in which the office of treasurer is vacant. No expenditure shall be made for or on behalf of an SSF without the authorization of the treasurer or his or her designated agent.  The treasurer shall be responsible for compliance with applicable provisions in the Political Reform Act (Government Code § 81000 et al.) and this Chapter.

(f)    Administration of SSF.

(1)     Funds paid by a connected organization for purposes described in 11 C.F.R. section 114.1(a)(2)(i)-(iii) shall not be contributions subject to the limits set forth in section 1.114(b).

(2)     Commingling Funds.  Each SSF and connected organization must comply with 2 U.S.C. section 432(b)(3) and 11 C.F.R. section 102.15.

(3)     Soliciting and Accepting Contributions.  When soliciting or accepting contributions, the SSF must comply with 11 C.F.R. section 114.5(a)-(c), (g)(1), (h)-(k); 11 C.F.R. section 114.6(a), (c)-(e); and 11 C.F.R. section 114.7.

(4)     An SSF may act as a conduit for an earmarked donation from a person to a candidate, subject to the provisions of 11 C.F.R. section 110.6(a), (b) and (d).

(5)     If an SSF receives a contribution that appears to be prohibited under this Chapter, the SSF shall comply with 11 C.F.R. section 103.3(b), the Political Reform Act, and the CFRO.

(g)     Affiliation.  If two or more SSFs are "affiliated" under 11 C.F.R. section 110.3(a) or the CFRO, those SSFs shall be treated as a single affiliated committee for the purposes of section 1.114(b).

(h)     Termination.  An SSF may terminate when:

(1)     it no longer intends to receive contributions or make expenditures;

(2)     neither the committee seeking to terminate nor any affiliated committee has any outstanding debts or obligations; and

(3)     the committee is not involved in any enforcement action, audit or litigation with the Ethics Commission.

(i)     Each SSF shall comply with all applicable campaign registration and reporting requirements in the Political Reform Act, the Campaign and Governmental Conduct Code and these regulations.

**Regulation 1.114-2: Limits on Contributions to Committees.**

(a)     Limits on Contributions to Committees.

(1)     Contribution Limits.  Committees that make expenditures to support or oppose candidates for City elective office are subject to the contribution limits established by section 1.114(c) of the San Francisco Campaign and Governmental Conduct Code.

(2)     Exception.  A committee may solicit and accept contributions in excess of the limits established by section 1.114(c) if the committee makes expenditures for any lawful purpose other than supporting or opposing candidates for City elective office, provided that funds received from contributions in excess of the limits set forth in section 1.114(c) are used only for lawful purposes other than supporting or opposing candidates for City elective office.

(b)     Compliance Methods.

Demonstration of compliance with the contribution limits established by section 1.114(c) may be accomplished using any of the methods described below.

6

(1)    Establish a separate committee.  A separate committee may be established for the purpose of raising funds to make expenditures to support or oppose candidates for City elective office.  Such a committee may not solicit or accept contributions in excess of the limits established by section 1.114(c).

(2)    Use of a separate bank account.  A committee may segregate funds used for expenditures to support or oppose candidates for City elective office into a separate bank account.  All expenditures to support or oppose candidates for City elective office must be made with funds from this account.  A committee may not deposit into this account any contributions that were solicited or accepted in excess of the limitations established by section 1.114(c).

(3)    Use of "first in, first out" accounting method.  A committee may demonstrate, using a first in, first out accounting method, that it has received an amount of contributions at or below the limits established by section 1.114(c) equal to the amount of expenditures to support or oppose candidates for City elective office.  Such committees may attribute only the first $500 of a contribution received in excess of the limits established by section 1.114(c), and may not attribute funds from a contributor who has already reached his or her cumulative limit set forth in section 1.114(c).  In accordance with subsection (a)(2) of this regulation, a committee may not pay for an expense, bill or debt incurred to support or oppose candidates for City elective office with funds received in excess of the limits, and then attribute subsequently raised contributions of $500 or less to such expenses, bills or debts incurred.

(4)    Use of any other method.  A committee may demonstrate compliance with the contribution limits set forth in section 1.114(c) by using a method that is not described above.  A committee shall bear the burden of proof that any such method demonstrates compliance with the contribution limits set forth in section 1.114(c).

At the time that the committee files a Form 465 to report expenditures to support or oppose candidates for City elective office, it must file Form SFEC-114 to identify the method that it will use to show compliance with section 1.114(c).  Once filed, the Form SFEC-114 need not be filed again.

(c)    Safe Harbors.

(1)    Committees. A committee that solicits or accepts a contribution which, when aggregated with contributions the same contributor has given to other committees that support or oppose candidates for City elective office, would otherwise constitute a violation of section 1.114(c), shall not be in violation of that section, provided that: (A) the committee did not know or have reason to know at the time the contribution was solicited or accepted that the contribution was in excess of the limits set forth in section 1.114(c); (B) the committee provided, within two weeks of the later of either receiving the contribution or attributing the contribution to an expenditure to support or oppose a candidate for City elective office, notice to the contributor of the amount of his or her contribution that was used to support or oppose a candidate for City elective office; and (C) the committee either returns or reattributes the contribution within 72 hours of receiving notification from the contributor that the contributor has already reached his or her cumulative limit set forth in section 1.114(c).  The notice described in this subsection shall contain the following or substantially similar language:

7

"San Francisco law prohibits contributors from giving a cumulative amount of more than $3,000 in a calendar year to committees that support or oppose candidates for City elective office in San Francisco.  We have used [or will use] [amount of contribution attributed] of your contribution to [name of committee] to support [or oppose] a candidate for City elective office in San Francisco.  Please apply this amount towards your $3,000 cumulative limit for the [year in which the contribution was received, e.g., 2002] calendar year.  In order to avoid any possible liability, please notify us within two weeks of receipt of this letter if you have already reached your $3,000 cumulative limit for the [year in which the contribution was received, e.g., 2002] calendar year."

Treasurers shall maintain a record of all notices sent pursuant to this section, containing the date of each notice and the name and address of the person to whom each notice is sent.

(2)    Contributors.  A contributor who makes a contribution which, when aggregated with other contributions the same contributor has donated to committees that make expenditures to support or oppose candidates for City elective office, would otherwise be in violation of section 1.114(c), shall not be in violation of that section, provided that: (A) the contributor did not know or have reason to know at the time the contribution was made that the contribution was in excess of the contribution limits set forth in section 1.114(c); and (B) the contributor informs a committee that the contributor has already reached his or her cumulative limit within two weeks of receiving a notification from the committee that his or her contribution will be or was used for an expenditure to support or oppose a candidate for City elective office.

(d)    Campaign funds held in the bank account of a committee prior to January 1, 2001.

(1)    Funds that were held in the bank account of a committee prior to January 1, 2001 are not subject to the contribution limitations established by section 1.114(c) of the San Francisco Campaign and Governmental Conduct Code.

(2)    To determine whether a committee has funds that were held in its bank account prior to January 1, 2001, the committee shall subtract from the amount of funds it held in its bank account on December 31, 2000, the amount of the committee's accrued expenses that existed on December 31, 2000 and the amount of money it has spent since January 1, 2001 on expenditures.  Expenditures to pay for accrued expenses that existed on December 31, 2000 shall not be included in the amount of money spent since January 1, 2001.  Any funds remaining may be used for expenditures to support or oppose candidates for City elective office.

(e)    Definitions.

(1)    For purposes of section 1.114(c) and this regulation, the term "expenditure" has the same meaning as in Government Code section 82025.  This includes but is not limited to: a direct monetary contribution or loan made to a candidate for City elective office; a payment made to a vendor for goods or services for a candidate for City elective office (a nonmonetary contribution); a donation to a candidate for City elective office of goods on hand, or the payment of salary or expenses for a campaign employee who spends 10 percent or more of his or her compensated time in any one

8

month working for a candidate for City elective office; or a payment made for a communication (e.g., a mailing, billboard, or radio advertisement) that expressly advocates the election or defeat of a clearly identified candidate for City elective office, but the payment is not made to, in coordination or cooperation with, or at the behest of, the candidate or his or her agent (an independent expenditure).

   (2)    For the purposes of this regulation, the phrase "first in, first out" means that campaign funds being used by a committee for expenditures to support or oppose a candidate for City elective office are attributed to contributors in chronological order beginning with the earliest of the committee's contributors on or after January 1, 2001 or, if there has been a prior expenditure to support or oppose a candidate for City elective office, beginning with the earliest contributor for which unattributed contributions remain.

**Regulation 1.115-1:  Coordination of Expenditures.**
An expenditure is presumed not independent of the candidate on whose behalf or for whose benefit the expenditure is made when any of the provisions of section 1.115(b) are met regardless of whether the activities of the spender or the spender's agent are voluntary or compensated.

**Regulation 1.116-1:  Loan Limits; Adjustments.**
On or before January 31 of each year, the Ethics Commission may adjust the loan limits imposed by section 1.116 to reflect changes in the California Consumer Price Index.  If the Commission chooses to make an adjustment, the adjustment shall be made using the following formula: the loan limit in effect on January 1, 2004, multiplied by the current CPI, divided by the base CPI from 2003, rounded to the nearest one thousand dollars ($1,000). The adjustments shall be based upon the September forecast of U.S. Bureau of Labor Statistics California Consumer Price Index for All Urban Consumers for the calendar year immediately preceding the year in which the adjustment is to take effect. The resulting figure shall be the adjusted loan limitation in effect for all city elections held until the Commission next chooses to adjust the limits.

**Regulation 1.118-1:  Payment of Accrued Expenses.**
 (a)    A candidate who accepts goods or services on credit must pay for such accrued expenses in full no later than 180 calendar days after receipt of a bill or invoice and in any event no later than 180 calendar days after the last calendar day of the month in which the goods were delivered or the services were rendered, unless it is clear from the circumstances that the failure to pay is reasonably based on a good faith dispute. Notwithstanding the existence of a good faith dispute, a candidate must pay for that portion of accrued expenses, if any, for which no good faith dispute exists.

(b)    A candidate will not be deemed to have violated section 1.118 for any calendar day on which an accrued expense remains partially or wholly unpaid if (1) the candidate's status as a candidate has terminated pursuant to 2 C.C.R. section 81404 on or before that calendar day, or (2) the creditor has forgiven the debt as permitted by law on or before that calendar day.  Notwithstanding the foregoing, any amount in excess of $500 that remains unpaid at the time of termination or that has been forgiven by the

9

creditor as permitted by law shall be deemed a violation of section 1.114(a) by the candidate. Such an expense shall not be deemed a violation of section 1.114(a) by the creditor unless it is otherwise deemed a contribution under law.

(c)    Section 1.118 applies to expenses that were accrued by a candidate on or after January 1, 2007.

## Regulation 1.122-1:  Surplus Funds Held by a Committee Other Than a Candidate's Campaign Committee.

(a)    Surplus Funds Held by a Committee Primarily Formed to Support or Oppose a Measure. Funds remaining in the campaign account of a committee primarily formed to support or oppose a measure at the end of the post-election reporting period following the election at which the measure appeared on the ballot are surplus funds. Such funds must be:

      (1)    returned on a last-in, first-out basis to those persons who have made such contributions;

      (2)    donated to a charitable organization; or

      (3)    donated to the City and County of San Francisco.

(b)    Funds Held by Any Other Committee.

Funds held by a committee other than a candidate or a committee primarily formed to support or oppose a measure cannot become surplus funds for the purposes of the San Francisco Campaign Finance Reform Ordinance and may be used for any lawful purpose.

## Regulation 1.122-2    Transfer of Funds in a Candidate's Campaign Account.

(a)    The use and transfer of funds held in a candidate's campaign account during an election, after the candidate's withdrawal or when such funds become surplus, are regulated by both state and local law. Candidates and treasurers must comply with both state and local law in the handling of such funds. Under some circumstances such as when funds become surplus, state law prohibits the transfer of funds.

(b)    A candidate who transfers funds from one candidate campaign account to another must file Form SFEC-122 to disclose whether LIFO or FIFO was used and information regarding the contributions that were transferred.

## Regulation 1.126-1: Contribution Limits – Contractors Doing Business with the City:  Definitions.

(a)    Commencement of Negotiations.

Negotiations are commenced when a prospective contractor first communicates with an officer or employee of the City, the Unified School District, ~~or~~ the Community College District; or a state agency on whose board an appointee of a city elective officer sits about the possibility of obtaining a specific contract. This initial communication may occur in person, by telephone, or in writing, and may be initiated by the prospective contractor or the officer or employee.

Examples of communications between prospective contractors and officers and employees of the City, the Unified School District, the Community College District or a state agency on whose board an appointee of a city elective officer sits that commence negotiations include, but are not limited to, the following: A prospective contractor contacts an officer or employee to promote himself or herself for a specific contract; an officer or employee contacts a prospective contractor to propose that the contractor apply for a specific contract; a prospective contractor submits a bid, proposal or response to a Request for Qualifications to compete for a specific contract.

Examples of communications between prospective contractors and officers and employees that do not commence negotiations include, but are not limited to the following: Inquiries regarding a particular contract, and requests for information or documents relating to a Request for Proposal or Request for Qualifications, provided that the inquiry or request does not involve promotion of the prospective contractor's interest in a specific contract; distribution or receipt of Requests for Proposals; distribution or receipt of Requests for Qualifications; attendance at an interested persons meeting that is open to the public; and requests to be placed on a mailing list.

(b)     Contract.
For the purposes of section 1.126, a contract does not include the following:
          (1)      a work order or purchase order submitted under an existing contract; or
          (2)      a modification of an existing contract where the majority of the terms of the contract remain in full force and effect and the total amount of the modification does not exceed $50,000 in a fiscal year.

(*c*)     Date the Contract Is Approved.
A contract is approved when it is finalized and signed by the City, a state agency on whose board an appointee of a City elective officer sits, the Unified School District or the Community College District and the contractor.

(d)     Person who Contracts With.
(1)      For the purposes of section 1.126, a "person who contracts with" includes any named party or prospective named party to a contract, as well as any member of that named party or prospective named party's board of directors, its chairperson, chief executive officer, chief financial officer, chief operating officer, any person with an ownership interest of more than 20 percent in the named or prospective named party, any subcontractor listed in a bid or contract, and any committee as defined in Chapter 1 of the Campaign and Governmental Conduct Code that is sponsored or controlled by the named party or prospective named party.
(2)      If a named party or prospective named party does not have a board of directors or chairperson of the board of directors, a "person who contracts with" includes any person who directs or participates in directing the affairs and activities of the named party or prospective named party.
(3)      If a named party or prospective named party does not have a chief executive officer, chief financial officer, or chief operating officer, a "person who contracts with" includes any president of the named party or prospective named party or any person who

directs the overall activities, financial activities, or operations of the named party or prospective named party.

(e)    Personal services.
For the purposes of section 1.126(a)(2)(A), personal services means services that are provided by a person or an entity.  Such services include but are not limited to tasks such as consulting, architectural, engineering, design, legal, financial, accounting, janitorial, and security.

(f)    State Agency on whose Board an Appointee of a City Elective Officer Serves.
For the purposes of section 1.126, a state agency on whose board a City elective officer or an appointee of a City elective officer serves is limited to the following:   Health Authority, Housing Authority Commission, Industrial Development Authority Board, Parking Authority, Redevelopment Agency Commission, Relocation Appeals Board, Treasure Island Development Authority, and Local Workforce Investment Board.  The City elective officers who appoint members of these boards for the purposes of section 1.126 are:
 (1)    Health Authority:  Board of Supervisors and Mayor
 (2)    Housing Authority Commission:  Mayor
 (3)    Industrial Development Authority Board:  Mayor and Board of Supervisors
 (4)    Parking Authority:  Mayor and Board of Supervisors
 (5)    Redevelopment Agency Commission:  Mayor and Board of Supervisors
 (6)    Relocation Appeals Board:  Mayor and Board of Supervisors
 (7)    Treasure Island Development Authority:  Mayor
 (8)    Local Workforce Investment Board:  Mayor

(g)    Termination of Negotiations.
Negotiations are terminated when the City, a state agency on whose board an appointee of a city elective officer sits, the Unified School District or the Community College District and/or the prospective contractor end the negotiation process before a final decision is made to award the contract.

Examples of actions that terminate negotiations include, but are not limited to, the following: A prospective contractor formally withdraws or is disqualified from consideration for a specific contract.

**Regulation 1.126-2:  Party that is Subject to the Prohibition.**
(a)    The prohibition set forth in section 1.126(b) applies to the named party or prospective named party who contracts with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District or the San Francisco Community College District. This includes:
 (1)    any named party or prospective named party to the contract;
 (2)    any member of that named party's board of directors, its chairperson, chief executive officer, chief financial officer, chief operating officer,

12

(3)    any person with an ownership interest of more than 20 percent in the named party;

(4)    any subcontractor listed in a bid or contract;  and

(5)    any committee as defined in the California Government Code (commencing at section 81000) that is sponsored or controlled by the named party or prospective named party.

(b)    The prohibition set forth in section 1.126(b) does not apply to any member of the board of directors, chairperson, chief executive officer, chief financial officer or chief operating officer of  any person with an ownership interest of more than 20 percent in the named party or prospective named party to a contract, or of any subcontractor listed in a bid or contract.

**Regulation 1.126-3:  Notification.**
Any prospective party to a contract with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District or the Community College District must inform each person described in section 1.126(a)(1) of the prohibition in section 1.126(b) by the commencement of negotiations for such contract.  The notice is sufficient if it:

(a)  is provided in written form,

(b)  is sent by U.S. mail, email, facsimile transmission, or personal delivery; and

(c)  contains language similar to the following [please fill in information in brackets]:

Notice:
I [name of party] am seeking to enter into a contract with [name of agency, board or commission] that will have a value of $50,000 or more in a fiscal year.  Under section 1.126 of the San Francisco Campaign and Governmental Conduct Code, I am required to advise you that because you [check appropriate box]
☐Serve as a director  on the board of directors of my company;
☐Serve as the chairperson, chief executive officer, chief financial officer, chief operating officer, or other person who directs the activities of my company;
☐Have an ownership interest of more than 20 percent in my company;
☐Are listed as a subcontractor on my bid or contract;
☐Are a committee that I sponsor or control,
you are prohibited from making a contribution to the following City elective officers or candidates for City elective office:  [fill in name of City elective officer or candidate for City elective office].
This prohibition will last from [date of commencement of negotiations] until the termination of negotiations or six months have elapsed from the date the contract is approved.  I will advise you of the date that negotiations terminate or six months after the contract is approved.  In the meantime, if you have questions, please contact me at [contact information].

13

**Regulation 1.126-4:  Filing Reports with the Ethics Commission.**
(a)      Every individual who holds a City elective office shall notify the Ethics
Commission, within five business days of the approval of a contract by the officer, or by
the board on which the officer sits, or by the board of a state agency on which an
appointee of the officer sits, of each contract so approved by filing Form SFEC-126 with
the Ethics Commission.

(b)      An individual who holds City elective office need not file Form SFEC-126 with
the Ethics Commission if the clerk or secretary of the board on which the individual
serves or the board of a state agency on which an appointee of the officer serves has filed
a Form SFEC-126 on behalf of the board.  The filer may attach a copy of the minutes that
record the approval of a contract to the Form SFEC-126, so long as the minutes reflect
the information required by the Form SFEC-126 and the filer signs the Form SFEC-126.
If the board passes a resolution directing its clerk or secretary to file Form SFEC-126 and
the clerk or secretary fails to do so, the City elective officer is not deemed to have
violated section 1.126(c) unless the City elective officer has reason to know that Form
SFEC-126 had not been filed.  If the City elective officer is notified by the Ethics
Commission that a Form SFEC-126 has not been filed, the City elective officer must file
the form within 5 working days of such notice.

(c)      The Commission will post information regarding such contracts on its website.

(d)      For the purposes section 1.126(c)(2), approval of a contract by "a board on which
the officer sits" means approval of a contract by the City elective office board to which
the officer  was elected.  For example, for a member of the Board of Supervisors, "a
board on which the officer sits" is the Board of Supervisors; for a member of the Board
of Education of the Unified School District, "a board on which the officer sits" is the
Board of Education of the Unified School District; and for a member of the Governing
Board of the Community College District, "a board on which the officer sits" is the
Governing Board of the Community College District.

**Regulation 1.126-5:  Affiliated Entities.**
Whenever a named party or prospective named party to a contract is prohibited from
making a contribution under section 1.126, any affiliated entity (as defined in section
1.114(d)) of that named party or prospective name party is also prohibited from making a
contribution under section 1.126.

**Regulation 1.128-1:  Acceptance or Rejection of Voluntary Expenditure Ceilings.**
(a)      Time for Filing; General Deadline.  Every candidate for City elective office must
file Form SFEC-128 with the Ethics Commission indicating whether the candidate
accepts or does not accept the applicable expenditure ceiling.  The Form must be filed no
earlier than June 1 in a year where the election is held in November, or 120 days before
an election held at any other time, and no later than the deadline for filing nomination
papers.

(b)      Candidate Who Exceeds Spending Limit Before Nomination Deadline.  A
candidate who has made or incurred expenses for qualified campaign expenditures in

excess of 100 percent of the applicable expenditure ceiling must file Form SFEC-128 with the Ethics Commission by one of the following deadlines:

(1)  If the expenses are made or incurred before June 1 of the year in which an election occurs in November, the candidate must file Form SFEC-128 no later than June 1 of the election year; or

(2)  If the expenses are made or incurred on or after June 1 of the year in which an election occurs in November but before the deadline for filing nomination papers, the candidate must file Form SFEC-128 within 24 hours of reaching such threshold.

(3)  If the expenses are made or incurred prior to the 120th day before the election for an election that occurs at a time other than in November, the candidate must file Form SFEC-128 no later than the 120th day before the election.

(4)  If the expenses are made or incurred after the 120th day prior to an election but before the deadline for filing nomination papers for an election that occurs at a time other than in November, the candidate must file Form SFEC-128  within 24 hours of reaching such threshold.

(c)     A candidate may not accept the voluntary expenditure ceiling by filing Form SFEC-128 if the applicable ceiling has already been lifted under section 1.134.

(d)     A candidate who seeks to participate in the public financing program for the Board of Supervisors must file Form SFEC-142(b)-1 with the Ethics Commission to indicate that he or she agrees to accept the voluntary expenditure ceiling, which remains binding on the candidate unless it is lifted.   A candidate who seeks to participate in the public financing program for Mayor must file Form SFEC-142(b)-2 with the Ethics Commission to indicate that he or she agrees to accept the individual expenditure ceiling established for that candidate by the Ethics Commission.

(e)     Notice to Department of Elections and Public Notice.  Within 24 hours after the deadline for filing nomination papers, the Executive Director shall notify the Department of Elections of which candidates have accepted the voluntary expenditure ceiling and shall also post this information on its website and issue a press release.

(f)     Failure to File.  Failure to file Form SFEC-128 within the time specified in this section shall be deemed a rejection of the voluntary expenditure ceilings for the purposes of administering the CFRO.  Failure to file shall also constitute a violation of section 1.128 and subject the nonfiler to applicable penalties.

(g)     Policy of the Commission.  The Ethics Commission encourages all candidates to comply with the voluntary expenditure ceilings established in Campaign and Governmental Conduct Code Section 1.130.

**Regulation 1.130-1:  Amount of Expenditure Ceilings; Adjustments**

(a)     Under section 1.130(f) of the Campaign and Governmental Conduct Code, the Commission is authorized to adjust the spending limits annually to reflect changes in the California Consumer Price Index.  Beginning in year 2007, the spending limits under section 1.130 shall be adjusted as follows:

(1)     The voluntary expenditure ceilings in Campaign and Governmental Conduct Code section 1.130(a)–(c) and (d) shall be adjusted annually to reflect changes in the Consumer Price Index. The adjustment shall be made using the following formula: the voluntary expenditure ceiling amount in effect in October 2006, multiplied by the

current CPI, divided by the base CPI from 2006, rounded to the nearest one thousand dollars ($1,000).[1] The resulting figure shall be the adjusted voluntary expenditure limitation in effect for all City elections except the Mayor.

       (2)     The voluntary expenditure ceilings in Campaign and Governmental Conduct Code section 1.130(b) shall be adjusted annually to reflect changes in the Consumer Price Index. The adjustment shall be made using the following formula: the voluntary expenditure ceiling amount in effect April 1, 2006, multiplied by the current CPI, divided by the base CPI from April 2006, rounded to the nearest five thousand dollars ($5,000).[2] The resulting figure shall be the adjusted voluntary expenditure limitation in effect for elections for Mayor.

(b)     The adjustments shall be based upon the October forecast of U.S. Bureau of Labor Statistics California Consumer Price Index for All Urban Consumers for San Francisco-Oakland-San Jose for the calendar year immediately preceding the year in which the adjustment is to take effect.

**Regulation 1.130-2:  Individual Expenditure Ceilings for Candidates for Mayor.**
A candidate for Mayor who has been certified eligible for public funding may have his or her individual expenditure ceiling raised in accordance with section 1.134.5.  Therefore, notwithstanding section 1.130(b), any such candidate whose individual expenditure ceiling has been raised may make or incur total qualified campaign expenditures that exceed $1,375,000, provided that such expenditures may not exceed the candidate's individual expenditure ceiling.

**Regulation 1.134-1:  Reports by Candidates Who Do Not Accept Voluntary Expenditure Ceilings.**
Any candidate who declines to accept the voluntary expenditure ceiling and who receives contributions, makes expenditures, incurs expenses or has funds in his or her campaign trust account that exceed 100 percent of the applicable expenditure ceiling must file Form SFEC-134(b) with the Ethics Commission within 24 hours of exceeding 100 percent of the applicable expenditure ceiling.  A candidate need not file this form if the Ethics Commission has already lifted the applicable voluntary expenditure ceiling.

**Regulation 1.134-2:  Reports by Committees or Persons that Make Independent Expenditures, Electioneering Communications and Member Communications.**
Any person that makes expenditures or payments or incurs expenses for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate for City elective office

---

[1] For example, the California Consumer Price Index for All Urban Consumers for October 2006 is 211.8. Assume in October 2007 the California CPI increased to 213.0.  Therefore an adjusted expenditure ceiling beginning in January 1, 2008 that was previously $229,000 would be calculated as follows: ($229,000 x213/211.8 = $230,000 ($230,297 rounded to the nearest $1,000).

[2] For example, the California Consumer Price Index for All Urban Consumers for April 2006 is 210.5. Assume in October 2007 the California CPI increased to 213.  Therefore an adjusted expenditure ceiling beginning in 2008 that was previously $1,375,000 would be calculated as follows: ($1,375,000 x 213/210.5 = $1,390,000 ($1,291,330 rounded to the nearest $5,000).

that in the aggregate equals or exceeds $5,000 must file Form SFEC-134(c) with the Ethics Commission within 24 hours of reaching this threshold.  A person need not file this form if the Ethics Commission has already lifted the applicable voluntary expenditure ceiling.  Thereafter, until such time as the applicable expenditure ceiling is lifted, the person shall file Form SFEC-134(c) within 24 hours of every time such person makes expenditures or payments, or incurs expenses for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate for City elective office in the same race that in the aggregate equals or exceeds $5,000.  For the purposes of section 1.134 and this regulation, the phrase "in support of or in opposition to" includes any communication that refers to a clearly identified candidate for City elective office or a City elective officer who is the subject of a recall election.

**Regulation 1.134.5-1:  Lifting of Individual Expenditure Ceiling.**
The Executive Director will raise the individual expenditure ceiling of a candidate who has been certified eligible to receive public funding either when the total supportive funds of any other candidate exceed $1,375,000, in increments of $100,000, or when total opposition spending against the candidate exceeds $100,000.  The Executive Director will review information provided on Forms SFEC-152(b)-1, SFEC-152(b)-2 and SFEC-152(b)-3 to make his or her determination to raise the individual expenditure ceiling.

Example:  Four candidates are certified eligible to receive public funding.  Reports filed at the Ethics Commission indicate that Candidate Ava's supportive funds total $1,475,000 and Candidate Barry's supportive funds total $1,600,000, which are higher than the total supportive funds of Candidate Clare or Candidate Dave.  The Executive Director will raise the individual expenditure ceilings of Ava, Clare and Dave to $1,575,000; the Executive Director will raise the individual expenditure ceiling of Barry to $1,475,000.

Example:  Total opposition spending against Barry reaches $100,000.  Because Barry's individual expenditures ceiling was already $1,475,000, the Executive Director will raise his individual expenditure ceiling an additional $100,000 to $1,575,000.

**Regulation 1.134.5-2:  Lifting of Individual Expenditure Ceiling; Limitations.**
The Executive Director may lift the individual expenditure ceiling of a candidate only in increments of $100,000.

Example:  The individual expenditure ceiling of Jane, a candidate for Mayor who has been certified eligible to receive public funding, is $1,375,000.  Ann, an opponent of Jane, reports total contributions of $1,000,000; committees also report spending to support Ann in the amount of $400,000.  The Executive Director may not raise the individual expenditure ceiling of Jane because Ann's total supportive funds, $1,400,000, do not exceed Jane's individual expenditure ceiling by at least $100,000.

Example:  Ann has raised an additional $100,000 in contributions, making her total supportive funds $1,500,000.  The Executive Director will now raise Jane's individual

expenditure ceiling to $1,475,000 because Ann's total supportive funds exceeds Jane's individual expenditure ceiling by at least $100,000.

Example:  Several committees make independent expenditures to oppose Jane; by September 2007, their reported expenditures total $250,000.  Because Jane's individual expenditure ceiling was $1,475,000, the Executive Director will now raise it to $1,675,000 based on the reported expenditures and the restriction that the individual expenditure ceiling may only be raised in $100,000 increments.

**Regulation 1.134.5-3:  Lifting of Individual Expenditure Ceiling:  Requests for Independent Determination.**
Any candidate for Mayor may request that the Executive Director make an independent determination whether a communication filed pursuant to section 1.152(b)(3) actually supports or opposes a candidate or is neutral.  Such requests must be filed within three business days from the date that the communication is filed with the Ethics Commission. Such requests must be filed on Form SFEC 134.5, identify the communication in question, and set forth reasons why the candidate believes that the communication supports or opposes a candidate or is neutral.

**Regulation 1.135-1:  Supplemental Reporting.**
Electronic Filing.
Committees that are required by section 1.112 to file electronically must also electronically file any report required by Section 1.135, provided that the Commission has prescribed the format for such report at least 60 days before the report is due.

**Regulation 1.140-1:  Thresholds for Qualifying for Public Financing; Adjustments.**
On or before January 31 of each year, the Ethics Commission may adjust the dollar thresholds in Subsections 1.140(a)(3) and (4) to reflect changes in the California Consumer Price Index.  If the Commission chooses to make such adjustments, the adjustments shall be made using the following formula: the threshold in effect on January 1, 2004, multiplied by the current CPI, divided by the base CPI from 2003, rounded to the nearest one hundred dollars ($100).  The adjustments shall be based upon the September forecast of U.S. Bureau of Labor Statistics California Consumer Price Index for All Urban Consumers for the calendar year immediately preceding the year in which the adjustment is to take effect.  The resulting figure shall be the adjusted thresholds in effect for all applicable elections held until the Commission next chooses to adjust the thresholds.

**Regulation 1.140-2:  Payment of Outstanding Late Fees, Forfeitures or Penalties and Filing of Outstanding Forms, Statements or Reports.**
To be eligible to receive public financing of campaign expenses, a candidate must have paid any outstanding late fees, forfeitures or penalties owed to the City by the candidate or any of the candidate's previous campaign committees, which were imposed for violations of Chapters 1 through 5 of Article I of the Campaign and Governmental Conduct Code ("C&GC Code"), the campaign finance provisions of the California Political Reform Act (Government Code §§ 84100-85704, or Chapter 1, Article III of the

C&GC Code.  A candidate must also have filed any outstanding forms, statements or reports owed to the City by the candidate or any of the candidate's previous campaign committees, which were required to be filed pursuant to Chapters 1 through 5 of Article I of the C&GC Code, the campaign finance provisions of the California Political Reform Act, or Chapter 1, Article III of the C&GC Code.  For purposes of these sections, a "candidate's previous campaign committees" includes any campaign committee controlled by the candidate or committee for which the candidate served as treasurer or assistant treasurer.

**Regulation 1.140.5-1:  Adjustments of Qualifying Limits and Thresholds – Mayor.**
The Ethics Commission shall adjust the dollar thresholds in sections 1.140.5(a)(3), 1.140.5(a)(4) and 1.140.5(a)(5) to reflect changes in the California Consumer Price Index, provided that such adjustments will be rounded off to the nearest $5,000.  The adjustments shall be made using the following formula: the threshold in effect on January 1, 2007, multiplied by the current CPI, divided by the base CPI from 2006, rounded to the nearest five thousand dollars ($5000).  The adjustments shall be based upon the October forecast of U.S. Bureau of Labor Statistics California Consumer Price Index for All Urban Consumers for the calendar year immediately preceding the year in which the adjustment is to take effect.  The resulting figure shall be the adjusted thresholds in effect for all applicable elections held until the Commission next adjusts the thresholds.

**Regulation 1.140.5-2:  Adjustment of Maximum Qualifying Contribution.**
The Ethics Commission shall adjust the maximum amount of a contribution that constitutes a qualifying contribution for candidates under section 1.104 to reflect changes in the California Consumer Price Index, provided that such adjustments shall be rounded off to the nearest $10.  The adjustments shall be made using the following formula: the maximum qualifying contribution amount in effect on January 1, 2007, multiplied by the current CPI, divided by the base CPI from 2006, rounded to the nearest ten dollars ($10).  The adjustments shall be based upon the October forecast of U.S. Bureau of Labor Statistics California Consumer Price Index for All Urban Consumers for the calendar year immediately preceding the year in which the adjustment is to take effect.  The resulting figure shall be the maximum qualifying contribution amount in effect for all applicable elections held until the Commission next adjusts the amount.

**Regulation 1.142-1: Statement of Participation or Non-Participation.**
Each candidate for the Board of Supervisors or Mayor must file with the Ethics Commission Form SFEC-142(a) – Statement of Participation or Non-Participation in the Public Financing Program – no later than the deadline for filing nomination papers.  The Statement shall be signed and verified by the candidate under penalty of perjury.

**Regulation 1.142-2:  Process for Establishing Eligibility; Documentation of Qualifying Contributions; Form and Content.**
(a)    Filing Requirement.
Every candidate for the Board of Supervisors who wishes to become eligible to receive public financing must file Form SFEC-142(b)-1 (Declaration for Public Funds), Form SFEC-142(c)-1 (Qualifying Contributions List), and supporting material with the Ethics

Commission on or after June 1 of the election year, but no later than the 70th day before the election.

Every candidate for Mayor who wishes to become eligible to receive public financing must file Form SFEC-142(b)-2 (Declaration for Public Funds), Form SFEC-142(c)-2 (Qualifying Contributions List), and supporting material with the Ethics Commission no sooner than nine months before and no later than the 70th day before the election.

(b)    Forms SFEC-142(b)-1, SFEC-142(b)-2, SFEC-142(c)-1 and SFEC-142(c)-2. The information disclosed on Forms SFEC-142(b)-1 and SFEC-142(b)-2 shall include but is not limited to the following:  the names, mailing and email addresses, and telephone and facsimile numbers for the candidate and treasurer; a list of authorized persons to receive payments from the Supervisor or Mayoral Election Campaign Fund; and a declaration under penalty of perjury by the candidate that he or she understands the requirements for participation in the public financing program.

The information disclosed on Forms SFEC-142(c)-1 and SFEC-142(c)-2 shall include but is not limited to: each contributor's full name, the address of each contributor's primary residence, the total amount contributed by each contributor, the amount of each contributor's qualifying contribution, the date on which the candidate received each contributor's qualifying contribution, and the deposit batch number for each qualifying contribution.  When the cumulative amount of contributions from any contributor equals or exceeds $100, the information for any qualifying contribution from such contributor must also include the contributor's occupation, the contributor's employer or, if the contributor is self-employed, the name of the contributor's business.  The Ethics Commission may require candidates to file this information electronically.

(c)    Supporting Material.
The supporting material shall include a copy of the deposit slip and deposit receipt for each qualifying contribution.  In addition, the supporting material shall demonstrate evidence of each contributor's primary residence, which may include but is not limited to a photocopy of the written instrument used by the contributor to make the qualifying contribution; a copy of a credit card merchant's verification form and the contributor's authorization form; a copy of a contribution card that includes the committee's name, the amount of the contribution, and the contributor's name, address of primary residence, occupation, employer (or name of business if self-employed), and signature; a copy of the contributor's utility bill; or a copy of the contributor's driver's license or state-issued identification card.

**Regulation 1.142-3:  Process For Establishing Eligibility; Irrevocability of Decision to Participate or Not Participate; Withdrawal Of Declaration.**
(a)    Irrevocability of Decision to Participate in the Public Financing Program after the Deadline for Filing Nomination Papers.
When a candidate submits Form SFEC-142(a), the statement of participation or non-participation pursuant to Section 1.142(a), the candidate agrees or declines to participate

in the public financing program.  This agreement is irrevocable after the deadline for filing nomination papers.

(b)    Withdrawal of Candidate Declaration Permitted until the 70th Day Before the Election.
When a candidate submits Forms SFEC-142(b)-1, SFEC-142(b)-2, SFEC-142(c)-1, SFEC-142(c)-2 and supporting material, under Section 1.142(b) to establish eligibility to receive public financing, the candidate may withdraw and refile the forms up until the 70th day before the election.  After the 70th day before the election has passed, candidates are no longer permitted to withdraw and refile their forms.  Although eligible candidates are not obligated to accept public funds, candidates for the Board of Supervisors are required to fully comply with the requirements imposed by Section 1.140(a) and candidates for Mayor are required to fully comply with the requirements imposed by Section 1.140.5(a) regardless of whether they accept public funds.  Similarly, eligible candidates may not relieve themselves of their obligations under Section 1.140(a) or Section 1.140.5 by repaying previously received public funds to the Supervisor Election Campaign Fund or Mayoral Election Campaign Fund.

**Regulation 1.142-4:  Certification.**
(a)    Executive Director's Determination.
      (1)    The Executive Director shall determine whether to certify a candidate no later than 30 days after the candidate submits the following:  for candidates for the Board of Supervisors, Form SFEC-142(a), a statement of participation or non-participation pursuant to section 1.142(a), a declaration (Form SFEC-142(b)-1), and supporting material pursuant to section 1.142(b)(1); for candidates for Mayor, Form SFEC-142(a)-2, a statement of participation or non-participation pursuant to section 1.142(a), a declaration (Form SFEC-142(b)-2), and supporting material pursuant to section 1.142(b)(2).
      (2)    Any candidate who files Form SFEC-142(a) indicating an intent to participate in the public financing program under section 1.142(a) but who fails to file Form SFEC-142(b)-1 or SFEC-142(b)-2 by the 70th day before the election is ineligible to participate in the public financing program and the Executive Director shall notify the candidate that he or she is ineligible.
      (3)    The Executive Director may take whatever steps he or she deems necessary to determine whether to certify a candidate including, but not limited to, reviewing the materials submitted by a candidate, auditing a candidate's records, and interviewing a candidate's contributors. In addition, the Executive Director may require any candidate to file Form SFEC-152(a) or SFEC-152(b)-1 in order to determine whether a candidate who seeks public financing is opposed by another candidate pursuant to section 1.140(a)(4) or 1.140.5(a)(4).

(b)    Conditional Certification.
The Executive Director may issue a conditional certification if a candidate for the Board of Supervisors has satisfied every requirement for certification except the requirement that the candidate be opposed by another candidate who has either established eligibility to receive public financing, or has received contributions or made expenditures which in

21

the aggregate equal or exceed $5,000. A candidate who has received a conditional certification shall be eligible to begin to receive public financing at any time after the Executive Director determines that the candidate is opposed by another candidate who has either established eligibility to receive public financing, or has received contributions or made expenditures which in the aggregate equal or exceed $5,000. The issuance of a conditional certification shall constitute the Executive Director's determination in order to satisfy the 30-day requirement set forth in subsection (a) of this regulation and subsection (e) of Section 1.142. A conditional certification does not establish the eligibility of a candidate to receive public funds.

The Executive Director may issue a conditional certification if a candidate for Mayor has satisfied every requirement for certification except the requirement that the candidate be opposed by another candidate who has either established eligibility to receive public financing, or has received contributions or made expenditures which in the aggregate equal or exceed $50,000. A candidate who has received a conditional certification shall be eligible to begin to receive public financing at any time after the Executive Director determines that the candidate is opposed by another candidate who has either established eligibility to receive public financing, or has received contributions or made expenditures which in the aggregate equal or exceed $50,000. The issuance of a conditional certification shall constitute the Executive Director's determination in order to satisfy the 30-day requirement set forth in subsection (a) of this regulation and subsection (e) of Section 1.142. A conditional certification does not establish the eligibility of a candidate to receive public funds.

(c)      Resubmission.
Any candidate who is notified by the Executive Director that the candidate is ineligible to receive public funding may, within five business days of the date of notification, resubmit his or her declaration and supporting documentation. If the candidate does not timely resubmit, the Executive Director's determination is final. If, after viewing resubmitted material, the Executive Director does not certify the candidate, the Executive Director shall notify the candidate of this fact. Additional resubmissions may be permitted in the Executive Director's discretion. If the candidate fails to resubmit in the time specified by the Executive Director, or if no further resubmissions are permitted, the Executive Director's determination is final.

(d)      Appeal to Commission.
A candidate may appeal to the Ethics Commission the Executive Director's final determination not to certify or conditionally certify a candidate. Either the Ethics Commission or a member of the Commission designated by the Commission may consider and decide such appeals. The candidate must deliver the written appeal to the Ethics Commission within five calendar days of the Executive Director's final determination.

**Regulation 1.144-1: Disbursement of Public Funds; Payments for Election Expenses for Candidates for Board of Supervisors.**
(a)      Application of Regulation.

The Ethics Commission may suspend all or part of this Regulation pursuant to Regulation 1.144-2.

(b)     Initial Payment to Eligible Candidates.
Following certification of eligibility pursuant to Section 1.142, but not before the day following the deadline for filing nomination papers, the Controller shall pay $5,000 from the Election Campaign Fund to each eligible candidate.

If, pursuant to Regulation 1.144-2, the Executive Director makes an initial determination that the total amount of funds in the Election Campaign Fund may be insufficient to fund all candidates who may be eligible to receive public financing, and that pro-ration of the available funds may be required, the Executive Director shall immediately notify the Ethics Commission, the Mayor, the Board of Supervisors and the Controller.  The Executive Director may direct the Controller to withhold all or part of the initial payments to candidates pending the Ethics Commission's final determination about pro-ration of funds.

(c)     Payments Based on Matching Contributions; Submission of Claims for Public Funds.
After the initial payment made pursuant to subsection (b) of this Regulation, the amount of additional public funds received by an eligible candidate depends on the amount of matching contributions raised by the candidate and documented in a timely claim submitted by the candidate to the Executive Director on Forms SFEC-144(a)-1 and SFEC-144(b)-1.

For each of the first $5,000 dollars of matching contributions raised by the candidate, the candidate shall receive four dollars from the Supervisor Election Campaign Fund.  Thereafter, for each additional dollar of matching contributions raised by the candidate, the candidate shall receive one dollar from the Supervisor Election Campaign Fund.  The maximum amount of public funds an eligible candidate may receive to defray general election expenses is $43,750.  However, if the Executive Director makes an initial determination or the Ethics Commission makes a final determination, pursuant to Regulation 1.144-3̶2, that the total amount of funds in the Supervisor Election Campaign Fund is insufficient to fund all candidates who may be eligible to receive public financing, and that pro-ration of the available funds is required, the Executive Director or the Ethics Commission shall instruct the Controller as to how to pro-rate the available funds.
        (1)     Schedule for Submission of Claims.
Pre-Election.  Following certification of eligibility, but not before the day following the deadline for filing nomination papers, eligible candidates may submit to the Executive Director claims for public funds.  Eligible candidates may submit these claims on a rolling basis. At least once each week, the Executive Director shall facially review such claims, and determine whether to grant such claims in whole or in part.  The Executive Director's review of these claims shall be governed by subsection (c)(4) of this Regulation.

Post-Election; General Rule. Following the election, and continuing through the 30th day following the date of the election, eligible candidates may continue to submit claims for public funds. Eligible candidates may submit these post-election claims on a rolling basis. At least once every two weeks, the Executive Director shall facially review such claims, and determine whether to grant such claims in whole or in part.

(2)    No Monetary Thresholds for Submission of Claims.

There is no minimum or maximum monetary threshold for submission of a claim for public funds from the Supervisor Election Campaign Fund.

(3)    Content of Claims; Supporting Documentation; Verification.

Each claim for public funds shall be filed on Forms SFEC-144(a)-1 and (b)-1. Form SFEC-144(b)-1 shall include: the contributor's full name, the address of the contributor's primary residence, the amount of the contributor's matching contribution, the date on which the candidate received the contributor's matching contribution, the total amount contributed by the contributor, and the deposit batch number for each matching contribution. When the cumulative amount of contributions from any contributor equals or exceeds $100, the information for any matching contribution from such contributor must also include the contributor's occupation, the contributor's employer or, if the contributor is self-employed, the name of the contributor's business. The claim shall also indicate whether the candidate previously submitted the contributor's qualifying or matching contributions as a basis for a claim for public funds. The Ethics Commission may require candidates to file claims electronically.

Each claim for public funds shall also include a copy of the deposit slip and deposit receipt for each matching contribution. In addition, the supporting material for each claim shall demonstrate evidence of each contributor's primary residence, which may include but is not limited to: photocopies of the written instrument used by the contributor to make the matching contribution; a copy of a credit card merchant's verification form and the contributor's authorization form; a copy of a contribution card that includes the committee's name, the amount of the contribution, and the contributor's name, address of primary residence, occupation, employer (or name of business if self-employed), and signature; a copy of the contributor's utility bill; or a copy of the contributor's driver's license or state-issued identification card.

Each claim for public funds shall be signed and verified under penalty of perjury by the eligible candidate and the treasurer of the candidate's campaign committee. The candidate and treasurer shall verify that the claim and supporting documentation is true and complete to the best of their knowledge, information and belief.

(4)    Process for Review of Claims.

(A)    Facial Review; Determination of Claims.

The Executive Director shall facially review each claim to determine whether the eligible candidate is entitled to payment of public funds. For purposes of this Regulation, "facial review" means review of the claim and supporting documentation. In addition, "facial review" may, but need not, include, interviews of contributors who voluntarily agree to be interviewed, and review of public and other documents voluntarily provided to the Executive Director.

The Executive Director shall not approve payment of public funds if the candidate's claim or supporting material is incomplete or otherwise inadequate.  The Executive Director may, however, approve payment for less than the full amount claimed by the candidate if the payment is for a portion of the claim that is complete and adequate.

The Executive Director's determination based upon facial review of a claim for public funds does not preclude the Ethics Commission from auditing the claimant, or demanding repayment of funds, pursuant to Section 1.150.

> (B)    Resubmission; Final Determination by the Executive Director.
If the Executive Director rejects a claim for public funds in whole or in part, the Executive Director shall notify the candidate and state the reasons for the rejection.  The candidate may, within 24 hours of the date of notification, resubmit the rejected claim and supporting documentation.  If the candidate does not timely resubmit, the Executive Director's determination is final.  If, after viewing resubmitted material, the Executive Director rejects a claim for public funds, the Executive Director shall notify the candidate of this fact. Additional resubmissions may be permitted in the Executive Director's discretion.  If the candidate fails to resubmit in the time specified by the Executive Director, or if no further resubmissions are permitted, the Executive Director's determination is final.

> (C)    Appeal to the Ethics Commission.
If the Executive Director rejects a claim for public funds in whole or in part, the candidate may appeal the Executive Director's final determination to the Ethics Commission, or a member of the Commission designated by the Commission to consider and decide such appeals.  The candidate must deliver the written appeal to the Ethics Commission within three days of the date of the Executive Director's final determination.

(d)    Payment by Controller; Payment Checks Available at Ethics Commission Office. Following a final determination, by either the Executive Director or the Ethics Commission, to approve a payment of public funds, the Executive Director shall immediately certify this fact to the Controller.  At least once each week, the Controller shall issue checks for the approved payments and deliver the checks to the Ethics Commission. Eligible candidates, or their officially authorized designees, may pick up payment checks at the Ethics Commission office during regular business hours.

**Regulation 1.144-2: Disbursement of Public Funds; Pro-Ration Of Funds.**
(a)    Suspension of Regulations.
If the Ethics Commission makes a final determination, pursuant to Section 1.154(b), that funds in the Supervisor Election Campaign Fund are insufficient, the Commission shall immediately notify the Mayor, Board of Supervisors and Controller, and instruct the Controller how to distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds.  The Ethics Commission may suspend all or part of Regulation 1.144-1 and disbursement of public funds shall be governed exclusively by this Regulation.

(b)      Initial Determination by the Executive Director.

On the day following the deadline for submission of nomination papers, the Executive Director shall make an initial determination of whether the total amount of funds in the Supervisor Election Campaign Fund is sufficient to fund all candidates who may be eligible to receive public financing.  If the Executive Director's initial determination is that the total funds may be insufficient, the Executive Director shall immediately notify the Ethics Commission, the Mayor, the Board of Supervisors and the Controller.

When estimating whether the total amount of funds in the Supervisor Election Campaign Fund is sufficient to fund all candidates who may be eligible to receive public financing, the Executive Director shall assume all of the following: All candidates who applied to participate in the public financing program will be deemed eligible to participate; and each eligible candidate will become entitled to receive the maximum amount of public funds for the election. The Executive Director may modify these assumptions based on the facts and circumstances of the particular election.  For example, if a candidate who applies to participate in the public financing program is unopposed, then the Executive Director need not assume that the candidate will be deemed eligible to participate in the public financing program.

The Executive Director shall determine whether the Controller may, pursuant to subsection (b) of Regulation 1.144-1, proceed to make all or part of the initial $5,000 payments and other payments to eligible candidates, or delay all payments until the Ethics Commission makes a final determination whether the funds in the Supervisor Election Campaign Fund are sufficient.

(c)      Final Determination by the Ethics Commission.

No later than 60 days before the election, the Ethics Commission shall make a final determination, pursuant to Section 1.154(b), whether the funds in the Supervisor Election Campaign Fund are sufficient to fund all candidates who may be eligible to receive public financing. The Ethics Commission shall use the methods and assumptions specified in subsection (b) of this Regulation to make this determination.

    (1)      Sufficient Funds.

If the Ethics Commission determines that the funds are sufficient, the Ethics Commission shall immediately notify the Mayor, the Board of Supervisors and the Controller.  The Controller shall proceed to make the payments specified in subsections (c) and (d) of Section 1.144, and Regulations 1.144-1.

    (2)      Insufficient Funds.

If the Ethics Commission determines that the funds are insufficient, the Ethics Commission shall immediately notify the Mayor, the Board of Supervisors and the Controller.  The Ethics Commission shall direct the Controller how to pro-rate the funds. The Ethics Commission's decision as to how to pro-rate the available funds shall be governed by the following principles:  The Ethics Commission shall reserve an equal amount of funds for each candidate who has applied to participate in the public financing program; although the maximum amount a candidate may be entitled to receive may be lowered for all candidates, the matching formula and claims process shall remain the

same; and the Ethics Commission shall not reserve funds for the possibility of run-off elections at the expense of funding candidates in the general election.

The Ethics Commission may revise its decision concerning how to pro-rate available funds based on new facts and circumstances such as but not limited to the following: One or more candidates who applied to participate in the public financing program fail to qualify to have their names placed on the ballot; one or more candidates who applied to participate in the public financing program withdraw from the election; or one or more candidates who applied to participate in the public financing program fail to establish eligibility to participate in the program.

(d)     Effect of Pro-Ration; Rules and Requirements Still Apply.
Even if the Ethics Commission pro-rates public funds under this Regulation, candidates who participate in the public financing program are required to comply fully with the requirements imposed by Section 1.140(a).

**Regulation 1.144.5-1: Disbursement of Public Funds; Payments for Election Expenses for Candidates for Mayor Before Per Candidate Available Disbursement Limit is Determined.**
Until the per candidate available disbursement limit has been determined, candidates for Mayor who have been certified as eligible to receive public financing for their election campaigns shall have access to funds from the Mayoral Election Campaign Fund as follows:

(a)     Initial Payment to Eligible Candidates.
Following certification of eligibility pursuant to Section 1.142, the Controller shall pay a one-time payment of $50,000 from the Mayoral Election Campaign Fund to each eligible candidate on a first-come, first-served basis.

(b)     Payments Based on Matching Contributions; Submission of Claims for Public Funds.
After the initial payment made pursuant to subsection (a) of this Regulation, the amount of additional public funds received by an eligible candidate depends on the amount of matching contributions raised by the candidate and documented in a timely claim submitted by the candidate to the Executive Director on Forms SFEC-144(a)-2 and SFEC-144(b)-2.

For each of the first $100,000 of matching contributions raised by the candidate, the candidate shall receive four dollars from the Mayoral Election Campaign Fund. Thereafter, for each additional dollar up to $400,000 of matching contributions raised by the candidate, the candidate shall receive one dollar from the Mayoral Election Campaign Fund.  The maximum amount of public funds an eligible candidate may receive to defray election expenses is $850,000, unless the candidate's individual expenditure ceiling is raised.

**Regulation 1.144.5-2: Disbursement of Public Funds; Payments for Election Expenses for Candidates for Mayor After Per Candidate Available Disbursement Limit is Determined.**

If the per candidate available disbursement limit is determined to be less than or equal to $850,000, each participating candidate shall have access to funds from the Mayoral Election Campaign Fund on a first-come, first-served basis up to a maximum per candidate of $850,000.

If the per candidate available disbursement limit is determined to be greater than $850,000, each participating candidate shall have access to the amount of the per candidate disbursement limit up to the candidate's individual expenditure ceiling. A candidate who has already received at least $850,000 may continue to receive public funds at the rate of one dollar for each dollar of a matching contribution raised up to the per candidate disbursement limit, provided that no funds will be disbursed if the disbursement of funds will result in the candidate exceeding his or her trust account limit.

**Regulation 1.144.5-3:  Schedule for Submission of Claims from Mayoral Election Campaign Fund.**

(a)      Pre-Election.  Following certification of eligibility, eligible candidates may submit to the Executive Director claims for public funds.  Eligible candidates may submit claims on a rolling basis. The Executive Director shall review such claims and determine whether to grant such claims in whole or in part within four business days of the submission, except that in the last 14 days before an election, the Executive Director shall review such claims and determine whether to grant them in whole or in part within two business days of the submission.

(b)      Monetary Thresholds for Submission of Claims.

Following certification, any submission of a claim for public funds must include a minimum of $5,000 in matching contributions, except that in the last 14 calendar days preceding an election, a claim must include a minimum of $1,000 in matching contributions.

(c)      Content of Claims; Supporting Documentation; Verification.

Each claim for public funds shall be filed on Forms SFEC-144(a)-2 and SFEC-144(b)-2. Form SFEC-144(b)-2 shall include: the contributor's full name, the address of the contributor's primary residence, the amount of the contributor's matching contribution, the date on which the candidate received the contributor's matching contribution, the total amount contributed by the contributor, and the deposit batch number for each matching contribution.  When the cumulative amount of contributions from any contributor equals or exceeds $100, the information for any matching contribution from such contributor must also include the contributor's occupation, the contributor's employer or, if the contributor is self-employed, the name of the contributor's business.  The claim shall also indicate whether the candidate previously submitted the contributor's qualifying or matching contributions as a basis for a claim for public funds.  The Ethics Commission may require candidates to file claims electronically.

Each claim for public funds shall also include a copy of the deposit slip and deposit receipt for each matching contribution. In addition, the supporting material for each claim shall demonstrate evidence of each contributor's primary residence, which may include but is not limited to: photocopies of the written instrument used by the contributor to make the matching contribution; a copy of a credit card merchant's verification form and the contributor's authorization form; a copy of a contribution card that includes the committee's name, the amount of the contribution, and the contributor's name, address of primary residence, occupation, employer (or name of business if self-employed), and signature; a copy of the contributor's utility bill; or a copy of the contributor's driver's license or state-issued identification card.

Each claim for public funds shall be signed and verified under penalty of perjury by the eligible candidate and the treasurer of the candidate's campaign committee. The candidate and treasurer shall verify that the claim and supporting documentation is true and complete to the best of their knowledge, information and belief.

(d)    Process for Review of Claims.
    (1)    Facial Review; Determination of Claims.
The Executive Director shall facially review each claim to determine whether the eligible candidate is entitled to payment of public funds. For purposes of this Regulation, "facial review" means review of the claim and supporting documentation. In addition, "facial review" may, but need not, include interviews of contributors who voluntarily agree to be interviewed, and review of public and other documents voluntarily provided to the Executive Director.

The Executive Director shall not approve payment of public funds if the candidate's claim or supporting material is incomplete or otherwise inadequate. The Executive Director may, however, approve payment for less than the full amount claimed by the candidate if the payment is for a portion of the claim that is complete and adequate.

The Executive Director's determination based upon facial review of a claim for public funds does not preclude the Ethics Commission from auditing the claimant, or demanding repayment of funds, pursuant to Section 1.150.

    (2)    Resubmission; Final Determination by the Executive Director.
If the Executive Director rejects a claim for public funds in whole or in part, the Executive Director shall notify the candidate and state the reasons for the rejection. The candidate may, within 24 hours of the date of notification, resubmit the rejected claim and supporting documentation. If the candidate does not timely resubmit, the Executive Director's determination is final. If, after viewing resubmitted material, the Executive Director rejects a claim for public funds, the Executive Director shall notify the candidate of this fact. Additional resubmissions may be permitted in the Executive Director's discretion. If the candidate fails to resubmit in the time specified by the Executive Director, or if no further resubmissions are permitted, the Executive Director's determination is final.

(3)     Appeal to the Ethics Commission.

If the Executive Director rejects a claim for public funds in whole or in part, the candidate may appeal the Executive Director's final determination to the Ethics Commission, or a member of the Commission designated by the Commission to consider and decide such appeals.  The candidate must deliver the written appeal to the Ethics Commission within three days of the date of the Executive Director's final determination.

(e)     Payment by Controller; Payment Checks Available at Ethics Commission Office.

Following a final determination, by either the Executive Director or the Ethics Commission, to approve a payment of public funds, the Executive Director shall immediately certify this fact to the Controller.  Within 48 hours of notification from the Ethics Commission, the Controller shall issue checks for the approved payments and deliver the checks to the Ethics Commission, except that within the last 60 calendar days preceding the election, the Controller shall issue checks for the approved payments and deliver the checks to the Ethics Commission within 24 hours of notification.  Eligible candidates, or their officially authorized designees, may pick up payment checks at the Ethics Commission office during regular business hours.

**Regulation 1.148-1: Restrictions on Use of Public Funds; Purchase of Equipment.**

(a)     Ownership of Equipment.

Any equipment purchased by a candidate with public funds that has a useful life beyond the election campaign for which the funds were provided, and a fair market value exceeding $100, becomes City and County property on the day following the date the candidate is elected, defeated, withdraws, or fails to qualify as a candidate.

(b)     Disclosure of Purchased Equipment.

Within 30 days of the date the candidate is elected, defeated, withdraws, or fails to qualify as a candidate, the candidate shall file Form SFEC-148(b) with the Ethics Commission, which shall contain a complete list of all equipment purchased by the candidate.  The list shall include a good faith estimate of the fair market value of each piece of equipment, and state whether the candidate used public funds to purchase the equipment.

(c)     Surrender of Purchased Equipment.

(1)     The Executive Director may permit candidates to retain equipment purchased with public funds until the deadline for filing the first semi-annual campaign disclosure statement for the calendar year immediately following the election, or the date the candidate files the first semi-annual campaign disclosure statement for the calendar year immediately following the election, whichever is sooner.

(2)     The Executive Director shall advise candidates regarding how and to whom to surrender property purchased with public funds.

**Regulation 1.148-2: Restrictions on Use of Public Funds; Expenses that Do Not Affect the Outcome of the Election.**

Candidates who receive public funds may use such funds to pay for qualified campaign expenditures, as defined in section 1.104, and to pay for other expenses incurred after the election that do not directly affect the outcome of the election.  Such expenses that do not

directly affect the outcome of the election include any pro-rata costs of post-election rent and utility bills that accrue until the campaign office is closed or 30 days after the election, whichever is sooner; expenses associated with the Ethics Commission's audit of the campaign committee; and expenses related to preparing and filing post-election campaign finance disclosure reports as required by the California Political Reform Act and the San Francisco Campaign Finance Reform Ordinance.

**Regulation 1.152-1:  Supplemental Reporting in Elections for Board of Supervisors-Candidates.**

Any candidate for the Board of Supervisors who has filed a statement indicating that he or she does not intend to participate in the public financing program or who has received notice that he or she is ineligible to receive public funds shall file Form SFEC-152(a) with the Ethics Commission no later than the deadline for filing nomination papers to indicate whether the candidate has received contributions, made expenditures or has funds in his or her campaign trust account that in the aggregate equal or exceed the dollar threshold specified in Section 1.152, as adjusted by Regulation 1.152-4.  Any candidate who files Form SFEC-152(a) indicating that he or she has not received contributions, made expenditures or has funds in his or her campaign trust account that in the aggregate equal or exceed the dollar threshold specified in Section 1.152, as adjusted by Regulation 1.152-4, shall file supplemental Form SFEC-152(a) with the Ethics Commission within 24 hours after he or she reaches or exceeds the dollar threshold specified in Section 1.152, as adjusted by Regulation 1.152-4.

This Regulation shall apply only in a race where at least one candidate is seeking public financing.

**Regulation 1.152-2:  Supplemental Reporting in Elections for Mayor-Candidates.**

Each candidate for Mayor must file Form SFEC-152(b)-1 to indicate when the candidate has received contributions, made expenditures or has funds his or her campaign contribution trust account that in the aggregate equal or exceed $50,000 within 24 hours of reaching or exceeding that limit.  Thereafter, each candidate for Mayor must file Form SFEC-152(b)-2 to indicate when the candidate has received contributions, made expenditures or has funds in his or her Campaign Contribution Trust Account that in the aggregate equal or exceed $1,000,000, within 24 hours of reaching or exceeding the threshold.  Thereafter, each candidate for Mayor must file Form SFEC-152(b)-2 to indicate every time that the candidate has received additional contributions, makes additional expenditures or has additional funds in his or her campaign contribution trust account that in the aggregate equal or exceed $50,000, within 24 hours or reaching or exceeding that threshold.

**Regulation 1.152-3:  Supplemental Reporting for Elections for Mayor-Persons Other than Candidates.**

Any person that makes independent expenditures, electioneering communications or member communications that clearly identify a candidate for Mayor and that in the aggregate equal or exceed $5,000, must, within 24 hours of reaching or exceeding the threshold, file an original copy of the communication and the Form SFEC-152(b)-3 with

31

the Ethics Commission.  Thereafter, any time that the person makes or incurs expenses of $5,000 or more for the purpose of making independent expenditures, electioneering communications or member communications that clearly identify a candidate for Mayor, the person must file the Form SFEC-152(b)-3 and an original copy of the communication with the Ethics Commission within 24 hours of reaching or exceeding the threshold.

On the Form SFEC-152(b)-3, the person must state the costs of the communication, list the candidate or candidates for Mayor who are identified in the communication, and indicate whether the communication is intended to support or oppose the candidate or candidates, or whether the communication is intended to be neutral.  No independent expenditure may be deemed neutral.

**Regulation 1.152-4:  Supplemental Reporting Thresholds; Adjustments.**
On or before January 31 of each year, the Ethics Commission may adjust the dollar thresholds in Section 1.152 to reflect changes in the California Consumer Price Index.  If the Commission chooses to make adjustments, the adjustment shall be made using the following formula:  For Section 1.152(a), the threshold in effect on January 1, 2004, multiplied by the current CPI, divided by the base CPI from 2003, rounded to the nearest one hundred dollars ($100).  For Section 1.152(b), the threshold in effect on January 1, 2007, multiplied by the current CPI, divided by the base CPI from 2006, rounded to the nearest one thousand dollars ($1000).

The adjustments shall be based upon the October forecast of U.S. Bureau of Labor Statistics California Consumer Price Index for All Urban Consumers for San Francisco-Oakland-San Jose for the calendar year immediately preceding the year in which the adjustment is to take effect.  The resulting figure shall be the adjusted threshold in effect for all applicable elections held until the Commission next chooses to adjust the threshold.

**Regulation 1.161-1:  Filing Requirements for Mass Mailings.**
(a)     Filing Requirement.  Except during the final 16 days before an election, each candidate for City elective office who pays for a mass mailing as defined by Section 1.161 shall, within five working days after the date of the mailing, file with the Ethics Commission two of the original pieces of the mailing and an itemized disclosure statement (Form SFEC-161).

(b)     During the final 16 days before an election, each candidate for City elective office who pays for a mass mailing as defined by Section 1.161 shall, within 48 hours of  the mailing, file with the Ethics Commission two of the original pieces of the mailing and an itemized disclosure statement (Form SFEC-161).

(c)     Estimated Costs of Mass Mailings.  Candidates who do not have information about the actual costs associated with a mass mailing when they file Form SFEC-161 may provide good faith estimates, provided that they amend the statement within 48 hours of receiving information about the actual costs of the mass mailing.

(d)     Date of the Mailing, defined.  For the purposes of Section 1.161, the phrase, "date of the mailing" shall mean the date on which the candidate or the candidate's agent

delivers the mailing to the United States Postal Service for delivery of one or more pieces of the mass mailing to addresses within the City and County of San Francisco.

**Regulation 1.161.5-1.  Electioneering Communications.**
(a)    Filing requirement.  Every person who makes payments, including any enforceable promises to make payments, for electioneering communications in an aggregate amount of $1,000 or more during any calendar year shall, within 48 hours of each disclosure date, file an itemized statement on Form SFEC-161.5 with the Ethics Commission.  Persons who do not have information about the actual payments made, including  enforceable promises to make a payment, for an electioneering communication when they file Form SFEC-161.5 may provide good faith estimates of the amount of any such payments, provided that they amend the statement within 48 hours of receiving information about the actual amount of the previously estimated payments.

(b)    Every person who files Form SFEC-161.5 with the Ethics Commission must submit at the time of the filing a legible copy of the electioneering communication if in printed form, a full transcript of the electioneering communication if in spoken form, and a legible paper or electronic photograph of the electioneering communication if in billboard form.

(c)    Filing Form SFEC-161.5 electronically.
Filing itemized statements electronically.  Any person who has made payments for electioneering communications in an amount of $5,000 or more in a calendar year shall electronically file Form SFEC-161.5, provided that the Commission has prescribed the format for such report at least 60 days before the report is due.

(d)    Definitions.  For the purposes of Section 1.161.5, the following terms and phrases shall mean:
    (1)    "Candidate debate or forum" shall mean an event at which a candidate for City elective office makes a speech or participates in a panel discussion.
    (2)    "Communications to all members, employees and shareholders of an organization" shall include communications such as newsletters, letters, flyers or similar material distributed to all members, employees or shareholders of an organization, but shall not include communications that constitute general public advertising such as broadcast, cable, satellite or radio communications, billboards, signs, or newspaper and magazine advertisements.
        (A)    An "organization," other than a political party, means a sole proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, limited liability company, limited liability partnership, association, labor union and any other organization or group of persons acting in concert, including a committee as defined by Government Code section 82013, but excluding a candidate or individual.
        (B)    "Member" means any person who, pursuant to a specific provision of an organization's articles or bylaws, has the right to vote directly or indirectly for the election of a director or directors or an officer or officers or on a disposition of all or substantially all of the assets of the organization or on a merger or on a dissolution. "Member" also means any person who is designated in the articles or bylaws as a member and, pursuant to a specific provision of an organization's articles or bylaws, has the right to vote on changes to the articles or bylaws, or pays or has paid membership dues in an amount predetermined by the organization so long as the organization is tax exempt under 26 U.S.C. 501, subdivision (c).  Members of a local union are considered to be members of any national or international union of which the local union is a part and of any federation with which the local, national, or international union is affiliated.

33

(C)     A person is not a "member" of an organization if the person is only on a mailing or contact list of the organization without meeting the definition provided in subdivision (2)(B) of this regulation.

(D)     "Shareholder" means the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation.

(3)     "Internet Communication" shall include communications made via the internet that involve some type of payment such as paid internet advertisements including a banner or pop-up advertisement, emails that the sender is paid to make, and emails sent to addresses purchased from another person.  Internet communications shall not include any communications made in a web blog, a listserve sent to persons who have contacted the sender, a discussion forum, or a general posting on a web page.

(4)     "Sharing or exercising direction and control" shall mean the officers, directors, executive directors or their equivalent, partners, and, in the case of unincorporated organizations, owners of the entity or individuals making or authorizing the disbursement for the electioneering communication.

**Regulation 1.172-1.  Extension of Deadlines that Fall on Weekends and Holidays.**

(a)     Except as otherwise provided in Regulation 1.172-1(b) and (c), when a filing deadline under Chapter 1 of the Campaign and Governmental Conduct Code falls on a weekend day or holiday, the deadline will be extended until the next business day during which the Ethics Commission is open.  For purposes of this regulation, the term "weekend" means Saturday and Sunday and the term "holiday" means any holiday on which the Ethics Commission is authorized by law to close.

(b)     The deadline will not be extended for campaign reports that are due during the late reporting period or the last sixty (60) days before an election.

**Regulation 1.174-1:  Notification to Director of Elections, the Board of Supervisors and the Public.**

The Executive Director shall notify the Director of Elections, the Board of Supervisors and the public via a posting on the Commission website and a press release, within 24 hours of the date the Director of Elections submits a certified statement of the results of the election to the Board of Supervisors, whether each candidate who according to the certified statement of results has been elected to a City elective office has filed all required campaign declarations, statements or reports.

The Director of Elections shall not issue a certificate of nomination or election to any candidate who has not filed all required campaign declarations, statements or reports.

S:\C.F.R.O\Regulations\All CFRO regs 6.8.07.doc

34