# EXHIBIT C

San Francisco Campaign and Governmental Conduct Code (10.14.06 update)

CHAPTER 1: CAMPAIGN FINANCE

Sec. 1.100. Purpose and Intent.
Sec. 1.102. Citation.
Sec. 1.103. Amendment or Repeal of Chapter.
Sec. 1.104. Definitions.
Sec. 1.106. Adoption of General Law--Exceptions.
Sec. 1.107. Training for Treasurers
Sec. 1.108. Candidate Campaign Contribution Trust Accounts and Campaign Contingency Accounts.
Sec. 1.110. Campaign Statements--Public Access.
Sec. 1.112. Electronic Campaign Disclosure.
Sec. 1.113. Disclosure Requirements During Signature Gathering Periods for Initiatives, Referenda and Recalls.
Sec. 1.114. Contribution Limits.
Sec. 1.115. Coordination of Expenditures.
Sec. 1.116. Limits on Loans to Candidates.
Sec. 1.118. Payment of Accrued Expenses.
Sec. 1.120. Contribution Limits--Post-Election Legal Proceedings.
Sec. 1.122. Solicitation or Acceptance of Campaign Contributions--Limitations.
Sec. 1.126. Contribution Limits--Contractors Doing Business with the City, the Unified School District and the San Francisco Community College District.
Sec. 1.128. Acceptance or Rejection of Voluntary Expenditure Ceilings.
Sec. 1.130. Amount of Expenditure Ceilings.
Sec. 1.134. Expenditure Ceilings Lifted.
Sec. 1.134.5. Lifting of Individual Expenditure Ceilings.
Sec. 1.135. Supplemental Reporting.
Sec. 1.136. Public Financing of Election Campaigns.
Sec. 1.138. Supervisor Election Campaign Fund; Appropriation of Funds.
Sec. 1.138.5. Mayoral Election Campaign Fund; Appropriation of Funds.
Sec. 1.140. Eligibility to Receive Public Financing--Candidates for the Board of Supervisors.
Sec. 1.140.5. Eligibility to Receive Public Financing--Candidates for Mayor.
Sec. 1.142. Process for Establishing Eligibility; Certification by the Ethics Commission.
Sec. 1.144. Disbursement of Public Funds--Candidates for the Board of Supervisors.
Sec. 1.144.5. Disbursement of Public Funds--Candidates for Mayor.
Sec. 1.146. Termination of Payments.
Sec. 1.148. Restrictions on Use of Public Funds; Unexpected Public Funds.
Sec. 1.150. Audit; Repayment.
Sec. 1.152. Supplemental Reporting in Elections for Board of Supervisors and Mayor.
Sec. 1.154. Insufficient Funds in Supervisor Election Campaign Fund.
Sec. 1.156. Report to the Mayor and Board of Supervisors.
Sec. 1.158. Implementing Regulations; Forms.
Sec. 1.160. No Limitation of Candidate Liability.
Sec. 1.161. Disclosure and Filing Requirements for Mass Mailings.
Sec. 1.161.5. Disclosure and Filing Requirements for Electioneering Communications.

Sec. 1.162. Independent Expenditures for Mass Mailings.
Sec. 1.162.5 Disclosure Requirements—Campaign Advertisements.
Sec. 1.163. Disclosure Requirements—Recorded Telephone Messages.
Sec. 1.163.5. Distribution of Campaign Advertisements Containing False Endorsements.
Sec. 1.164. Duties of Ethics Commission.
Sec. 1.166. Duties of Enforcement Authority.
Sec. 1.168. Enforcement; Advice.
Sec. 1.170. Penalties.
Sec. 1.172. Extension of Deadlines that Fall on Weekends and Holidays.
Sec. 1.174. Effect of Violation on Certification of Election Results.
Sec. 1.176. Rules of Construction.
Sec. 1.178. Severability.

SEC. 1.100. PURPOSE AND INTENT.

(a)  Huge sums of moneys often are necessary to finance American election campaigns. Inherent to the high cost of election campaigning is the problem of improper influence, real or potential, exercised by campaign contributors over elected officials. In addition, this fundraising distracts public officials seeking reelection from focusing upon important public matters, encourages contributions which may have a corrupting influence, and gives incumbents an unfair fundraising advantage over potential challengers. These developments undermine the integrity of the governmental process, the competitiveness of campaigns and public confidence in local officials.

(b)  It is the purpose and intent of the People of the City and County of San Francisco in enacting this Chapter to:

(1)  Place realistic and enforceable limits on the amount individuals may contribute to political campaigns in municipal elections and to provide full and fair enforcement of all the provisions in this Chapter;

(2)  Ensure that all individuals and interest groups in our city have a fair opportunity to participate in elective and governmental processes;

(3)  Create an incentive to limit overall expenditures in campaigns, thereby reducing the pressure on candidates to raise large campaign war chests for defensive purposes beyond the amount necessary to communicate reasonably with voters;

(4)  Reduce the advantage of incumbents and thus encourage competition for elective office;

(5)  Allow candidates and officeholders to spend a smaller proportion of their time on fundraising and a greater proportion of their time dealing with issues of importance to their constituents' community;

(6)  Ensure that serious candidates are able to raise enough money to communicate their views and positions adequately to the public, thereby promoting public discussion of the important issues involved in political campaigns;

(7)  Limit contributions to candidates and committees, including committees that make independent expenditures, to eliminate or reduce the appearance or reality that large contributors may exert undue influence over elected officials;

(8)  Assist voters in making informed electoral decisions and ensure compliance with campaign contribution limits through the required filing of campaign statements detailing the sources of campaign contributions and how those contributions have been expended;

(9)   Make it easier for the public, the media and election officials to efficiently review and compare campaign statements by requiring committees that meet certain financial thresholds to file copies of their campaign statements on computer diskettes or other designated electronic media;

(10)   Help restore public trust in governmental and electoral institutions; and

(11)     Help ensure the integrity of the election process by prohibiting campaign advertisements that contain knowing false endorsements of current and former public officials, candidates, political clubs, and organizations.  Such false endorsements undermine the integrity of the electoral process by misleading and confusing voters about the actual support for or opposition to candidates or ballot measures and it is too burdensome for individual voters, inundated with campaign messages, to verify the accuracy of such claims and for persons whose positions are misrepresented to correct the misrepresentations close in time to the election.

(c)   This Chapter is enacted in accordance with the terms of Sections 5 and 7 of Article XI of the Constitution of the State of California and Section 1.101 of the Charter of the City and County of San Francisco.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation Former Administrative Code Section 16.501; amended by Ord. 114-76, App. 4/2/76; Proposition N, 11/7/95)


SEC. 1.102. CITATION.

This Chapter may be cited as the San Francisco Campaign Finance Reform Ordinance.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000) (Derivation Former Administrative Code Section 16.502; amended by Ord. 114-76, App. 4/2/76; Proposition N, 11/7/95)


SEC. 1.103. AMENDMENT OR REPEAL OF CHAPTER.

The voters may amend or repeal this Chapter. The Board of Supervisors may amend this Chapter if all of the following conditions are met:

(a)   The amendment furthers the purposes of this Chapter;

(b)   The Ethics Commission approves the proposed amendment in advance by at least a four-fifths vote of all its members;

(c)   The proposed amendment is available for public review at least 30 days before the amendment is considered by the Board of Supervisors or any committee of the Board of Supervisors; and

(d)   The Board of Supervisors approves the proposed amendment by at least a two-thirds vote of all its members.

(Added by Ord. 3-06, File No. 051439, App. 1/20/2006)


SEC. 1.104. DEFINITIONS.

Whenever in this Chapter the following words or phrases are used, they shall mean:

(a)   "Candidate" shall mean any individual listed on the ballot for election to any City elective office or who otherwise has taken affirmative action to seek nomination or election to such office. The term "candidate" shall also mean the candidate's campaign committee.

3

(b)  "Charitable organization" shall mean an entity exempt from taxation pursuant to Title 26, Section 501 of the United State Code.

(c)  "City elective office" shall mean the offices of Mayor, Member of the Board of Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor, Public Defender, Member of the Board of Education of the San Francisco Unified School District and Member of the Governing Board of the San Francisco Community College District. The Board of Supervisors shall be deemed to consist of eleven separate City elective offices, the San Francisco Community College District shall be deemed to consist of seven separate City elective offices, and the Board of Education of the San Francisco Unified School District shall be deemed to consist of seven separate City elective offices.

(d)  "Committee" shall be defined as set forth in the Government Code of the State of California (commencing at Section 81000).

(e)  "Contribution" shall be defined as set forth in Government Code of the State of California (commencing at Section 81000); provided, however, that "contribution" shall include loans of any kind or nature.

(f)  "Election" shall mean any primary, general, or special municipal election held in the City and County of San Francisco for City elective office, regardless of whether the election is conducted by district or Citywide.

(g)  "Enforcement authority" shall mean the District Attorney of the City and County of San Francisco for criminal enforcement, the City Attorney for civil enforcement, and the Ethics Commission for administrative enforcement. Nothing in this Chapter shall be construed as limiting the authority of any law enforcement agency or prosecuting attorney to enforce the provisions of this Chapter under any circumstances where such law enforcement agency or prosecuting attorney otherwise has lawful authority to do so.

(h)  "Ethics Commission" shall mean the San Francisco Ethics Commission.

(i)  "Executive Director" shall mean the Executive Director of the Ethics Commission, or the Executive Director's designee.

(j)  "Individual Expenditure Ceiling" shall mean the expenditure ceiling established for each individual candidate for Mayor who has been certified by the Ethics Commission as eligible to receive public funds under this Chapter.

(k)  "Matching contribution" shall mean a contribution up to $500, that is made by an individual, other than the candidate, who is a resident of San Francisco. Matching contributions shall not include loans, contributions that are received more than 18 months before the date of the election, contributions made by the candidate's immediate family or qualifying contributions, and must comply with all requirements of this Chapter. Matching contributions under $100 that are not made by written instrument must be accompanied by written documentation of the contributor's name and address.

(l)  "Measure" shall mean any City, San Francisco Unified School District or San Francisco Community College District referendum, recall or ballot proposition, whether or not it qualifies for the ballot.

(m)  "Person" shall mean any individual, partnership, corporation, association, firm, committee, club or other organization or group of persons, however organized.

(n)  "Qualified campaign expenditure" for candidates includes all of the following:

(1)   Any expenditure made by a candidate, or by a committee controlled by the candidate, for the purpose of influencing or attempting to influence the actions of the voters for the election of the candidate to City elective office.

(2)   A nonmonetary contribution provided to the candidate, officeholder or committee controlled by the candidate.

(3)   The total cost actually paid or incurred by the candidate or controlled committee of the candidate for a slate mailing or other campaign literature produced or authorized by more than one candidate.

(4)   Expenses incurred, but for which payment has not yet been made.

(5)   Expenses associated with complying with applicable laws, including but not limited to the California Political Reform Act, Government Code Section 81000, et seq., and the provisions of this Chapter.

(6)   "Qualified campaign expenditure" shall not include filing fees, expenses incurred in connection with an administrative or judicial proceeding, payments for administrative, civil or criminal fines, including late filing fines, costs incurred after the election that do not directly affect the outcome of the election, including but not limited to utility bills, expenses associated with an audit, and expenses related to preparing post-election campaign finance disclosure reports as required by the California Political Reform Act, Government Code section 81000, et seq., and the provisions of this Chapter, or for inaugural activities or officeholder expenses.

(o)   "Qualifying contribution" shall mean a contribution of not less than $10 and not more than $100 that is made by an individual who is a resident of San Francisco and that complies with all requirements of this Chapter. Qualifying contributions shall not include loans, contributions that are received more than 18 months before the date of the election or contributions made by the candidate or the candidate's immediate family. Qualifying contributions under $100 that are not made by written instrument must be accompanied by written documentation of the contributor's name and address.

(p)   "Recorded telephone message" shall mean a recorded audio message that expressly supports or opposes a candidate for City elective office that is distributed by telephone.

(q)   "Surplus funds" shall mean funds remaining in a candidate's campaign account at the time the candidate leaves City elective office, or at the end of the post-election reporting period following the defeat of the candidate for City elective office, whichever occurs last, and funds remaining in the campaign account of a committee primarily formed to support or oppose a measure at the end of the post-election reporting period following the election at which the measure appeared on the ballot.

(r)   "Total Opposition Spending" shall mean the sum of any expenditures made or expenses incurred by any person or persons for the purpose of making independent expenditures, electioneering communications or member communications in opposition to a specific candidate for Mayor.

(s)   "Total Supportive Funds" shall mean the sum of all contributions received by a candidate for Mayor other than any funds in the candidate's Campaign Contingency Account, plus the expenditures made or expenses incurred by any person or persons for the purpose of making independent expenditures, electioneering communications or member communications in support of that same candidate.

(t)   "Trust Account Limit," shall mean the amount of funds in the Campaign Contribution Trust Account of a candidate for Mayor who has been certified by the

5

Ethics Commission as eligible to receive public funds under this Chapter such that the expenditure of this amount would cause the candidate to reach, but not exceed, the candidate's Individual Expenditure Ceiling. The Trust Account Limit shall be reduced as the candidate spends money and shall be increased when his or her Individual Expenditure Ceiling increases.

(u) "Voter" means an individual registered to vote in San Francisco.

(v) "Written instrument" means a check, credit card receipt, or record of electronic transfer of funds.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 187-01, File No. 010779, App. 8/31/2001; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation Former Administrative Code Section 16.503; amended by Ord. 361-80, App. 8/5/80; Ord. 365-94 App. 10/28/94; Proposition N, 11/7/95)

SEC. 1.106. ADOPTION OF GENERAL LAW--EXCEPTIONS.

Except as otherwise provided in, or inconsistent with, this Chapter or other provisions of local law, the provisions of the Government Code of the State of California (commencing at Section 81000), relating to local elections including any subsequent amendments, are hereby incorporated as part of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.504; amended by Ord. 114-76, App. 4/2/76)

SEC. 1.107. TRAINING FOR TREASURERS.

(a) Training Requirements.

(1) Candidates. Every candidate for City elective office and their treasurers shall attend a training program conducted or sponsored by the Ethics Commission prior to each election at which the candidate's name will appear on the ballot.

(2) Treasurers. Every committee treasurer shall attend the next training program conducted or sponsored by the Ethics Commission after the date the committee files either its original statement of organization or an amendment to a statement of organization designating a new treasurer.

(b) Exception. An individual who serves as the treasurer for more than one committee is not required to attend a training required by subsection (a) if that individual has attended such a training within the previous 12 months.

(c) Definition. For the purposes of this section, "committee" shall mean any committee that: (1) qualifies as committee pursuant to subdivision (a) of Section 82013 of the California Government Code as incorporated into this Chapter by Section 1.104; and (2) is required to file its semi-annual campaign statements with the Ethics Commission.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.108. CANDIDATE CAMPAIGN CONTRIBUTION TRUST ACCOUNTS AND CAMPAIGN CONTINGENCY ACCOUNTS.

(a) CANDIDATE CAMPAIGN CONTRIBUTION TRUST ACCOUNTS.

(1)   Establishment of Account.  Each treasurer for a candidate shall establish a campaign contribution trust account for the candidate at an office of a bank located in the City and County of San Francisco, the account number and branch identification of which shall be filed with the Ethics Commission within 10 days of the establishment of the account. All of the expenditures by the candidate for the City elective office sought shall be made from that account.

(2)   Prohibition on Multiple Accounts.  All funds, services or in-kind contributions received by a City elective officer, or by any person or committee on behalf of a City elective officer, for expenses incurred directly in connection with carrying out the usual and necessary duties of holding office shall be deposited, credited or otherwise reported to the officer's campaign contribution trust account and shall be subject to the contribution limits in Section 1.114 of this Chapter.  Nothing in this Section shall prohibit an officer from spending personal funds on official or related business activities.

(3)   Account Limits.  A candidate for Mayor who has been certified by the Ethics Commission as eligible to receive public funds under this Chapter shall not, at any time, have an amount of funds greater than the candidate's Trust Account Limit in his or her Campaign Contribution Trust Account.

(b)   CAMPAIGN CONTINGENCY ACCOUNTS FOR CANDIDATES FOR MAYOR.

(1)   Notwithstanding any other section of this Code, including subsection (a)(2), a candidate for Mayor who has been certified by the Ethics Commission as eligible to receive public funds under this Chapter may maintain a Campaign Contingency Account separate from his or her Campaign Contribution Trust Account into which he or she may deposit contributions in anticipation of the candidate's Individual Expenditure Ceiling being raised. All contributions deposited into this account shall be reported as if it were deposited into the candidate's Campaign Contribution Trust Account.

(2)   No expenditures shall be made from a Campaign Contingency Account established pursuant to this section. Funds may be transferred between a candidate's Campaign Contingency Account and the candidate's Campaign Contribution Trust Account, provided that the amount of funds in the candidate's Campaign Contribution Trust Account does not exceed the candidate's Trust Account Limit. All funds that qualify as matching contributions and are transferred from the Campaign Contingency Account to the Campaign Contribution Trust Account shall be eligible to be matched with public funds in accordance with the procedures set forth in this Chapter. Within 10 days after the date of the election, the candidate shall turn over all funds in the Campaign Contingency Account to the Mayoral Election Campaign Fund.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.505; amended by Ord. 114-76, App. 4/2/76; Proposition N, 11/7/95; Ord. 386-95, App. 12/14/95)


SEC. 1.110. CAMPAIGN STATEMENTS--PUBLIC ACCESS.

(a)   INSPECTION AND COPYMAKING. Campaign statements are to be open for public inspection and reproduction at the office of the Ethics Commission during regular business hours and such additional hours as the Ethics Commission determines

appropriate. The Commission shall provide public notice of the hours that the office is open for inspection and reproduction.

(b)   RETENTION. Every campaign statement required to be filed in accordance with Section 1.106 shall be preserved by the Ethics Commission for the period required under Section 81009 of the California Government Code and any subsequent amendments thereto, or such additional periods as the Ethics Commission determines appropriate, provided that the period of retention is not less than eight years from the date the statement was required to be filed.

(Formerly Secs. 1.110 and 1.112; added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.506; amended by Ord. 114-76, App. 4/2/76; Ord. 386-95, App. 12/14/95)


SEC. 1.112. ELECTRONIC CAMPAIGN DISCLOSURE.

(a)   FILING ELECTRONIC CAMPAIGN STATEMENTS.

(1)   Filing Electronic Copies of Campaign Statements.  Whenever any committee that meets the requirements of Subsection (b) of this Section is required by this Chapter or the California Political Reform Act (Government Code Section 81000 et seq.) to file a campaign disclosure statement or report with the Ethics Commission, the committee shall file at the same time a copy of the statement or report in an electronic format with the Ethics Commission, provided the Ethics Commission has prescribed the format at least 60 days before the statement or report is due to be filed.

(2)   Continuous Filing of Electronic Statements.  Once a committee is subject to the electronic filing requirements imposed by this Section, the committee shall remain subject to the electronic filing requirements, regardless of the amount of contributions received or expenditures made during each reporting period, until the committee files a termination statement pursuant to this Chapter and the California Political Reform Act (Government Code Section 81000 et seq.).

(3)   Disclosure of Expenditure Dates.  All electronic statements filed under this Section shall include the date any expenditure required to be reported on the statement was incurred, provided that the Commission's forms accommodate the reporting of such dates.

(b)   COMMITTEES SUBJECT TO ELECTRONIC FILING REQUIREMENTS. A committee is subject to this Section if the committee is: (1) required to file a statement of organization under this Chapter and the California Political Reform Act (Government Code Sections 81000 et seq.); and (2) is controlled by a candidate, or is formed or exists primarily to support or oppose a candidate, or is formed or exists primarily to support or oppose a ballot measure which is being voted on only in the City and County, or is a general purpose committee active only in the City and County; and (3) receives contributions, or makes independent expenditures, totaling $5,000 or more in a calendar year.

(Added by Proposition O, 11/7/2000; amended by Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Former Sec. 1.112 was added by Ord. 114-76, App. 4/2/76; amended by Ord. 386-95, App. 12/14/95; renumbered by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000)

SEC. 1.113.  DISCLOSURE REQUIREMENTS DURING SIGNATURE GATHERING PERIODS FOR INITIATIVES, REFERENDA AND RECALLS.

(a)   In order to ensure that any person interested in the finances of any committee that is raising or spending funds to support or oppose a measure, such committees shall file their financial disclosure documents on dates that are within the time period in which signatures are gathered.

(b)   For initiatives and recalls, campaign disclosure statements shall be filed on the 15th day of the signature gathering period covering days 1-10, on the 30th day covering days 11-25, and every 30 days thereafter for the 30-day period ending five days earlier through the end of the signature-gathering period.

(c)   For referenda, which have a 30-day signature gathering period, campaign disclosure statements shall be filed on the 10th day of the period covering days 1-5, on the 25th day of the period covering days 6-20, and by the 60th day after the end of the period covering days 21-30.

(d)   Otherwise, campaign statements shall be completed and filed as specified in this Chapter and state law.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.114. CONTRIBUTION LIMITS.

(a)   LIMITS ON CONTRIBUTIONS TO CANDIDATES.

(1)   Per Candidate Limit. No person other than a candidate shall make, and no candidate campaign treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to such candidate in an election to exceed $500.

(2)   Overall Limit. No person shall make any contribution which will cause the total amount contributed by such person to all candidates in an election to exceed $500 multiplied by the number of City elective offices to be voted on at that election.

(b)   LIMITS ON CONTRIBUTIONS FROM CORPORATIONS.  No corporation organized pursuant to the laws of the state of California, the United States, or any other state, territory, or foreign country, whether for profit or not, shall make a contribution to a candidate for City elective office, provided that nothing in this subsection shall prohibit such a corporation from establishing, administering, and soliciting contributions to a separate segregated fund to be utilized for political purposes by the corporation, provided that the separate segregated fund complies with the requirements of federal law including section 432(e) and 441b of Title 2 of the United States Code, including any subsequent amendments to those sections.

(c)   LIMITS ON CONTRIBUTIONS TO COMMITTEES.

(1)   Per Committee Limit. No person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to the committee to exceed $500 per calendar year.

(2)   Overall Limit. No person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to all committees to exceed $3000 per calendar year.

(3)   Definitions. For purposes of this Subsection, "committee" shall mean any committee making expenditures to support or oppose a candidate, but shall not include candidates' campaign committees.

(d)   AGGREGATION OF AFFILIATED ENTITY CONTRIBUTIONS.
(1)   General rule. For purposes of the contribution limits imposed by this Section and Section 1.120, the contributions of an entity whose contributions are directed and controlled by any individual shall be aggregated with contributions made by that individual and any other entity whose contributions are directed and controlled by the same individual.
(2)   Multiple entity contributions controlled by the same persons. If two or more entities make contributions that are directed and controlled by a majority of the same persons, the contributions of those entities shall be aggregated.
(3)   Majority-owned entities. Contributions made by entities that are majority-owned by any person shall be aggregated with the contributions of the majority owner and all other entities majority-owned by that person, unless those entities act independently in their decisions to make contributions.
(4)   Definition. For purposes of this Section, the term "entity" means any person other than an individual and "majority-owned" means a direct or indirect ownership of more than 50 percent.
(5)   Effective Date. This Subsection shall take effect January 1, 2004.
(e)   CONTRIBUTOR INFORMATION REQUIRED. If the cumulative amount of contributions received from a contributor is $100 or more, the committee shall not deposit any contribution that causes the total amount contributed by a person to equal or exceed $100 unless the committee has the following information: the contributor's full name; the contributor's street address; the contributor's occupation; and the name of the contributor's employer or, if the contributor is self-employed, the name of the contributor's business. A committee will be deemed not to have had the required contributor information at the time the contribution was deposited if the required contributor information is not reported on the first campaign statement on which the contribution is required to be reported.
(f)   FORFEITURE OF UNLAWFUL CONTRIBUTIONS. In addition to any other penalty, each committee that receives a contribution which exceeds the limits imposed by this Section or which does not comply with the requirements of this Section shall pay promptly the amount received or deposited in excess of the amount permitted by this Section to the City and County of San Francisco and deliver the payment to the Ethics Commission for deposit in the General Fund of the City and County; provided that the Commission may provide for the waiver or reduction of the forfeiture.
(g)   RETURN OF CONTRIBUTIONS. A contribution to a candidate or committee making expenditures to support or oppose a candidate shall not be considered to be received if it is not cashed, negotiated, or deposited and in addition it is returned to the donor before the closing date of the campaign statement on which the contribution would otherwise be reported, except that a contribution to a candidate or committee making expenditures to support or oppose a candidate made before an election at which the candidate is to be voted on but after the closing date of the last campaign statement required to be filed before the election shall not be considered to be deemed received if it is not cashed, negotiated or deposited and is returned to the contributor within 48 hours of receipt. For all committees not addressed by this Section, the determination of when contributions are considered to be received shall be made in accordance with Government Code Section 81000, et seq.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 126-06, App. 6/23/06; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.508; amended by Ord. 79-83, App. 2/18/83; Proposition N, 11/7/95)

SEC. 1.115.  COORDINATION OF EXPENDITURES.

(a)  General.  An expenditure is not considered independent and shall be treated as a contribution from the person making the expenditure to the candidate on whose behalf, or for whose benefit the expenditure is made, if the expenditure funds a communication that expressly advocates the nomination, election or defeat of a clearly identified candidate and is made under the following circumstance:

(1)  the expenditure is made at the request, suggestion, or direction of, or in cooperation, consultation, concert or coordination with, the candidate on whose behalf , or for whose benefit, the expenditure is made; or

(2) the communication funded by the expenditure is created, produced or disseminated:

(A) after the candidate has made or participated in making any decision regarding the content, timing, location, mode, intended audience, volume of distribution, or frequency of placement of the communication; or

(B) after discussion between the creator, producer or distributor of a communication, or the person paying for that communication, and the candidate or committee regarding the content, timing, location, mode, intended audience, volume of distribution or frequency of placement of that communication, the result of which is agreement on any of these topics.

(b)  Rebuttable presumption of coordination.  In addition to subsection (a) of this section, there shall be a presumption that an expenditure funding a communication that expressly advocates the nomination, election or defeat of a clearly identified candidate is not independent of the candidate on whose behalf or for whose benefit the expenditure is made, when:

(1) it is based on information about the candidate or committee's campaign needs or plans provided to the spender by the candidate;

(2) it is made by or through any agent of the candidate in the course of the agent's involvement in the current campaign;

(3) the spender retains the services of a person, including a campaign consultant, who provides, or has provided, the candidate with professional services related to campaign or fundrasing strategy for that same election;

(4)  the communication replicates, reproduces, republishes or disseminates, in whole or in substantial part, a communication designed, produced, paid for or distributed by the candidate; or

(5) in the same election that the expenditure is made, the spender or spender's agent is serving or served in an executive or policymaking role for the candidate's campaign or participated in strategy or policy making discussions with the candidate's campaign relating to the candidate's pursuit of election to office and the candidate is pursuing the same office as a candidate whose nomination or election the expenditure is intended to influence.

(c)  Exceptions.  Notwithstanding the foregoing, an expenditure shall not be considered a contribution to a candidate merely because:

(1)  the spender interviews a candidate on issues affecting the spender;

(2)  the spender has obtained a photograph, biography, position paper, press release, or similar material from the candidate;

(3) the spender has previously made a contribution to the candidate;

(4) the spender makes an expenditure in response to a general, non-specific request for support by a candidate, provided that there is no discussion with the candidate prior to the expenditure relating to details of the expenditures;

(5) the spender has invited the candidate or committee to make an appearance before the spender's members, employees, shareholders, or the families thereof, provided that there is no discussion with the candidate prior to the expenditure relating to details of the expenditure;

(6) the spender informs a candidate that the spender has made an expenditure provided that there is no other exchange of information not otherwise available to the public, relating to the details of the expenditure; or

(7) the expenditure is made at the request or suggestion of the candidate for the benefit of another candidate or committee.

(d)  Definition.  For purposes of this section, the terms "candidate" includes an agent of the candidate when the agent is acting within the course and scope of the agency.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.116. LIMITS ON LOANS TO CANDIDATES.

(a)  A candidate's loan of personal funds to the candidate's campaign may not exceed at any time more than

(1)  $15,000 for a candidate for the Board of Supervisors, Board of Education of the San Francisco Unified School District or the Governing Board of the San Francisco Community College District,

(2)  $120,000 for a candidate for Mayor, or

(3)  $35,000 for a candidate for Assessor or Public Defender, City Attorney, Treasurer, District Attorney or Sheriff.

(b)  A candidate may not charge interest on any loan the candidate has made to the candidate's campaign.

(c)  In addition to any other penalty, loans made by a candidate to the candidate's campaign in excess of the amounts in subsection (a) shall be deemed a contribution to the campaign and may not be repaid to the candidate.

(d)  Whenever the Ethics Commission adjusts the voluntary expenditure ceilings to reflect changes in the California Consumer Price Index, as authorized under Section 1.130, the Commission is authorized to adjust the loan amounts in this Section to reflect changes in the Consumer Price Index.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 228-06, File No. 060501, App. 9/14/2006. Former Sec. 1.116 was added by Ord. 365-94, App. 10/28/94; renumbered by Ord. 71-00, File No. 000358, App. 4/28/2000; repealed by Proposition O, 11/7/2000)


SEC. 1.118.  PAYMENT OF ACCRUED EXPENSES.

(a)  A candidate who accepts goods or services on credit shall pay for such accrued expenses in full no later than 180 calendar days after receipt of a bill or invoice and in no event later than 180 calendar days after the last calendar day of the month in which the goods were delivered or the services were rendered, unless it is clear from the circumstances that the failure to pay is reasonably based on a good faith dispute.  For purposes of this subsection, a good faith dispute shall be presumed if the candidate produces the following:

(1) evidence that the candidate protested the payment of a bill no later than 30 calendar days after the last calendar day of the month in which the goods were delivered or the services were rendered; and

(2) evidence that the protest was based on the time of delivery, quality or quantity of goods delivered or services rendered or the price of the goods delivered or the services provided.

(b)  The provisions of subsection (a) do not apply to debt owed to a financial institution for an outstanding credit card balance.

(c)  Each and every calendar day any accrued expense remains partially or wholly unpaid after the time periods set forth in subsection (a) constitutes a separate violation.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; repealed by Ord. 3-06, File No. 051439, App. 1/20/2006) (Derivation: Former Administrative Code Section 16.509; amended by Ord. 174-80, App. 5/2/80; Proposition N, 11/7/95)


SEC. 1.120. CONTRIBUTION LIMITS--POST-ELECTION LEGAL PROCEEDINGS.
All provisions of this Chapter, unless specified otherwise herein, shall be applicable in any post-election recounts, election contests or other proceedings held pursuant to law. In addition, the following provisions shall be applicable in any such post-election legal proceedings:

(a)  No person other than a candidate shall make, and no candidate shall solicit or accept, any contribution which will cause the total amount contributed by such person in post-election legal proceedings to any candidate to exceed, in addition to the contribution limit contained in Sections 1.114, $100.

(b)  Notwithstanding any other provision of this Chapter to the contrary, for the purposes of conducting post-election recounts, election contests or other proceedings held pursuant to law, the delivery of in-kind legal services by lawyers in support of or in opposition to candidates, including in-kind contributions to committees supporting or opposing candidates, shall not be subject to any contribution limitations set forth in this Chapter.

(c)  If any person violates this Section, each campaign treasurer who received part or all of the contribution or contributions which constitute the violation shall pay promptly the amount received from such person in excess of the amount permitted by this Section to the City and County Treasurer for deposit in the General Fund of the City and County.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 3-06, File No. 051439, App. 1/20/2006) (Derivation: Former Administrative Code Section 16.509-1; added by Ord. 81-83, App. 2/25/83)

SEC. 1.122. SOLICITATION OR ACCEPTANCE OF CAMPAIGN
CONTRIBUTIONS-- LIMITATIONS.

(a)   DECLARATION OF INTENT REQUIRED. No intended candidate for any City
elective office, and no committee acting on behalf of a candidate, shall solicit or accept,
or cause to be solicited or accepted, any contribution unless and until said candidate shall
have filed a declaration of intention to become a candidate for a specific City elective
office with the Department of Elections on a form to be prescribed by the Director of
Elections.

No person shall file a declaration of intention to become a candidate for more than one
City elective office. For the purposes of this Section a committee acting on behalf of a
candidate need not be controlled by or acting under the authorization of the candidate.

(b)   USE OF CAMPAIGN FUNDS.

(i)   General.  Except as otherwise provided in this Chapter, funds in a candidate's
campaign account may be used only on behalf of the candidacy for the office specified in
the candidate's declaration of intention filed under subsection (a) or for expenses
associated with holding that office, provided that such expenditures are reasonably
related to a legislative, governmental, or political purpose.  Contributions solicited or
accepted under this Section for one individual shall not be expended for the candidacy of
any other individual or in support of or opposition to any measure, or be donated to a
charitable organization.  Nothing in this section shall prohibit a candidate in a ranked
choice election from expending funds to support the ranking of another candidate if the
primary purpose of the expenditure is to further the candidate's own campaign.

(ii)   Withdrawal from candidacy. Campaign funds held by an individual who ceases to be
a candidate or fails to qualify for an office for which contributions have been solicited or
accepted shall be:

(A)   returned on a "last in, first out" basis to those persons who have made said
contributions;

(B)   donated to the City and County of San Francisco; or

(C)   donated to a charitable organization.

(c)   SURPLUS FUNDS. Surplus funds held by a candidate or committee shall be:

(i)   returned on a "last in, first out" basis to those persons who have made said
contributions;

(ii)   donated to a charitable organization; or

(iii)   donated to the City and County of San Francisco,

(d)   Transfer of Funds.  At any time, funds held in a candidate's campaign account may
be transferred to any legally constituted committee established by or on behalf of the
candidate under the Government Code of the State of California (commencing at Section
81000). Contributions transferred under this subsection shall be attributed to specific
contributors using a "first in, first out" or "last in, first out" accounting method.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O,
11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 228-06, File No. 060501,
App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510; amended by
Ord. 80-83, App. 2/18/83; Ord. 224-96, App. 6/17/96)

Sec. 1.124.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; repealed by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.510-1; added by Proposition N, 11/7/95)

SEC. 1.126. CONTRIBUTION LIMITS--CONTRACTORS DOING BUSINESS WITH THE CITY.

(a)  Definitions.

For purposes of this section, the following words and phrases shall mean:

(1) "Person who contracts with" includes any party or prospective party to a contract, as well any member of that party's board of directors, its chairperson, chief executive officer, chief financial officer, chief operating officer, any person with an ownership interest of more than 20 percent in the party, any subcontractor listed in a bid or contract, and any committee, as defined by this Chapter that is sponsored or controlled by the party, provided that the provisions of Section 1.114 of this Chapter governing aggregation of affiliated entity contributions shall apply only to the party or prospective party to the contract.

(2)  "Contract" means any agreement or contract, including any amendment or modification to an agreement or contract, with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District, or the San Francisco Community College District for:

(A) the rendition of personal services,

(B) the furnishing of any material, supplies or equipment,

(C) the sale or lease of any land or building, or

(D) a grant, loan or loan guarantee.

(b)  Prohibition.

No person who contracts with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District or the San Francisco Community College District,

(1)  shall make any contribution to:

(A)  an individual holding a City elective office if the contract must be approved by such individual, the board on which that individual serves or a board on which an appointee of that individual serves;

(B) a candidate for the office held by such individual; or

(C) a committee controlled by such individual or candidate

(2)  whenever the agreement or contract has a total anticipated or actual value of $50,000 or more, or a combination or series of such agreements or contracts approved by that same individual or board have a value of $50,000 or more in a fiscal year of the City and County

(3)  at any time from the commencement of negotiations for such contract until:

(A)   the termination of negotiations for such contract; or

(B)   six months have elapsed from the date the contract is approved.

(c)        Notification.

(1)        Prospective Parties to Contracts.  Any prospective party to a contract with the City and County of San Francisco, a state agency on whose board an appointee of a City elective officer serves, the San Francisco Unified School District or the San Francisco

Community College District shall inform each person described in subsection (a)(1) of the prohibition in subsection (b) by the commencement of negotiations for such contract.
(2)      Individuals Who Hold City Elective Office.  Every individual who holds a City elective office shall, within five business days of the approval of a contract by the officer, a board on which the officer sits or a board of a state agency on which an appointee of the officer sits, notify the Ethics Commission, on a form adopted by the Commission, of each contract approved by the individual, the board on which the individual serves or the board of a state agency on which an appointee of the officer sits.  An individual who holds a City elective office need not file the form required by this subsection if the clerk or secretary of a board on which the individual serves or a board of a state agency on which an appointee of the officer serves has filed the form on behalf of the board.
(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-2; added by Proposition N, 11/7/95)

SEC. 1.128. ACCEPTANCE OR REJECTION OF VOLUNTARY EXPENDITURE CEILINGS.
(a)   All candidates for City elective office must file a statement with the Ethics Commission indicating whether they accept or do not accept the applicable expenditure ceiling. This statement, which is a public document, shall be filed no later than the deadline for filing nomination papers with the Department of Elections, and may not be withdrawn after such deadline.  The form may not be filed prior to June 1 at an election occurring in November or 120 days before an election held at any other time, and once filed may not be withdrawn.  A candidate may not accept or reject the applicable expenditure ceiling under this section if the applicable expenditure ceiling has already been lifted under section 1.134 of this Chapter.
        The Director of Elections shall cause to be published in the Voter Information Pamphlet, on the same page as appears the candidate's statement of qualifications, a notice informing voters whether the candidate has accepted the voluntary expenditure ceiling.  For candidates who have accepted the voluntary expenditure ceiling, the notice shall state: "The above candidate has accepted the City's voluntary spending limit."  For candidates who have not accepted the voluntary expenditure ceiling, the notice shall state:  "The above candidate has NOT accepted the City's voluntary spending limit."  If a candidate was precluded from accepting or rejecting the limits because the expenditure ceiling for a particular race was lifted under section 1.134 of this Chapter before the candidate filed the statement required by this section, the notice for that candidate shall state "The voluntary spending limit was lifted before this candidate decided whether to accept or not accept the limit."  The notice shall be printed in the same font size and type as the candidate's statement of qualifications.  Nothing in this subsection shall prevent a candidate from participating in a public financing program authorized by this Chapter.
(b)   Any candidate who files a statement pursuant to this Section accepting the applicable expenditure ceiling and makes campaign expenditures in excess of the expenditure ceiling, at a time when the ceiling has not been lifted, is subject to the penalties in Section 1.170 for violation of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 293-04, File No. 041396, App. 12/24/2004; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-3; added by Proposition N, 11/7/95)

SEC. 1.130. AMOUNT OF EXPENDITURE CEILINGS.

(a)   Any candidate for Assessor, Public Defender, City Attorney, District Attorney, Treasurer, or Sheriff who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $229,000.

(b)   Any candidate for Mayor who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $1,375,000.

(c)   Any candidate for the Board of Supervisors who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $86,000.

(d)   Any candidate for the Board of Education of the San Francisco Unified School District or the Governing Board of the San Francisco Community College District who agrees to expenditure ceilings shall not make total qualified campaign expenditures exceeding $98,000.

(e)   The Ethics Commission is authorized to adjust annually the expenditure ceilings imposed by this Section to reflect the change in the California Consumer Price Index for that year.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-4; added by Proposition N, 11/7/95)

SEC. 1.132.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; repealed by Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.510-5; added by Proposition N, 11/7/95)

SEC. 1.134. EXPENDITURE CEILINGS LIFTED.

This Section shall apply only if at least one candidate for the City elective office has filed a statement with the Ethics Commission pursuant to Section 1.128 indicating acceptance of the applicable expenditure limits, and the applicable expenditure limit has not already been lifted.

(a)   If a candidate who has filed a statement under Section 1.128 declining to accept expenditure ceilings receives contributions or makes qualified campaign expenditures in excess of 100 percent of the applicable expenditure ceiling, or if a person or persons make expenditures or payments, or incur expenses for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to a candidate that total more than 100 percent of the applicable expenditure ceiling, the applicable expenditure limit shall no longer be binding on any candidate seeking election to the same City elective office. This subsection shall not apply to a candidate for Mayor who has been certified by the Ethics Commission as

eligible to receive public funds under this Chapter and is therefore subject to an Individual Expenditure Ceiling.

(b)   Any candidate who has not accepted the voluntary expenditure ceiling and who receives contributions, makes expenditures, incurs expenses or has funds in his campaign trust account that exceed 100 percent of the applicable expenditure ceiling shall, within 24 hours of exceeding 100 percent of the applicable expenditure ceiling, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Within 24 hours after receiving such notice, the Ethics Commission shall inform every other candidate for that office that the expenditure ceiling has been lifted.

(c)   Any person that makes expenditures or payments, or incurs expenses for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate in an amount of $5,000 or more shall, within 24 hours of reaching this threshold, file a statement with the Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and any additional information required by the Ethics Commission. Thereafter, until such time as the applicable expenditure ceiling is lifted, any such person shall file a supplemental statement with the Ethics Commission each time the committee makes expenditures or payments or incurs expenses for the purpose of making independent expenditures, electioneering communications or member communications or incurs expenses in support of or in opposition to any candidate of an additional $5,000. The supplemental statements shall be filed within 24 hours of reaching these spending thresholds. This subsection shall not apply to any expenditures, payments, or expenses incurred for the purpose of making independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate for Mayor if the Ethics Commission has certified that at least one candidate for Mayor is eligible to receive public funds under this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 71-05, File No. 041489, App. 4/15/2005; Ord. 75-05, File No. 050624, App. 4/27/2005; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006) (Derivation: Former Administrative Code Section 16.510-6; added by Proposition N, 11/7/95)


SEC. 1.134.5. LIFTING OF INDIVIDUAL EXPENDITURE CEILINGS.
This Section shall apply only if the Ethics Commission has certified that at least one candidate for Mayor is eligible to receive public funds under this Chapter.

(a)   The Executive Director shall lift the Individual Expenditure Ceiling of a candidate for Mayor to an amount equal to the highest level of the Total Supportive Funds of any other candidate seeking election to the same office if such amount is greater than $1,375,000, provided that the Executive Director may lift a candidate's Individual Expenditure Ceilings only in increments of $100,000.

(b)   The Executive Director shall lift the Individual Expenditure Ceiling of a candidate for Mayor by an amount equal to the candidate's Total Opposition Spending, provided that the Executive Director may lift a candidate's Individual Expenditure Ceiling only in increments of $100,000.

(c)   On the fourth business day after a statement is filed pursuant to Section 1.152(b)(3) of this Chapter, the Executive Director shall determine whether to lift the Individual Expenditure Ceilings of each candidate for Mayor pursuant to subsections (a) and (b) of this Section based on the information in the statement unless pursuant to subsection (d) a candidate for Mayor requests that the Executive Director make a determination regarding which candidate or candidates the communication filed with the statement supports or opposes or whether the Communication is neutral.

(d)   Any candidate for Mayor may request that the Executive Director review the original or copy of a communication filed pursuant to Section 1.152(b)(3) of this Chapter to make an independent determination regarding which candidate or candidates for Mayor the communication actually supports or opposes or whether the communication is neutral. Such requests must be filed with the Executive Director within three business days from the date the original or copy of the communication is filed. Factors the Executive Director shall use to determine whether the communication supports or opposes one or more candidates include the following:

(1)   the communication clearly identifies one or more mayoral candidates;

(2)   the timing of the communication coincides with the mayoral campaign;

(3)   the communication targets voters in a particular election;

(4)   the communication identifies one or more candidate's position on a public policy issue and urges the reader or viewer to take action, including calling the candidate to support or oppose the candidate's position;

(5)   the position of one or more candidates on the public policy issue has been raised as distinguishing these candidates from others in the campaign, either in the communication itself or in other public communications;

(6)   the communication is not part of an ongoing series of substantially similar advocacy communications by the organization on the same issue; and

(7)   any other factors the Executive Director deems relevant.

Within three business days of the date the request for a determination is received, the Executive Director shall make his or her initial determination.

Within one business day of the date that the Executive Director makes an initial determination, any candidate for Mayor may submit to the Executive Director a request that the Ethics Commission review the Executive Director's initial determination.

Within one business day of receiving the request, the Executive Director shall notify each Commissioner of the candidate's request.

If within one business day of the Executive Director's notice, two or more members of the Commission inform the Executive Director that they would like to review the initial determination, the Executive Director shall schedule a meeting of the Commission on a date that occurs within one week of the Commissioners' requests. If three members of the Commission vote to overrule the Executive Director's initial determination, the Commission shall make a final determination based on the factors set forth above.

If no candidate requests review of the Executive Director's initial determination, if a request is made and two or more members of the Commission do not request to review the initial determination, or within one week of two members of the Commission requesting to review the initial determination, at least three members of the Commission do not vote to overrule the Executive Director's initial determination, the Executive Director's determination shall become final.

19

The Executive Director shall determine whether to lift the Individual Expenditure Ceilings of each candidate for Mayor pursuant to subsections (a) and (b) of this Section within one business day of a final determination.
(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.135. SUPPLEMENTAL REPORTING.
(a)  Supplemental Preelection Statements.  In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, all San Francisco general purpose committees shall file preelection statements before any election held in the City and County of San Francisco at which a candidate for City elective office or City measure is on the ballot, if the committee makes contributions or expenditures totaling five hundred dollars ($500) or more during the period covered by the preelection statement.
(b)  Time for Filing Supplemental Preelection Statements.  Preelection statements required by this Section shall be filed as follows:
(1)  For the period ending 45 days before the election, the statement shall be filed no later than 40 days before the election;
(2)  For the period ending 17 days before the election, the statement shall be filed no later than 12 days before the election.
(c)  The Ethics Commission may require that these statements be filed electronically.

(Added by Ord. 141-03, File No. 030034, App. 6/27/2003; amended by Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.136. PUBLIC FINANCING OF ELECTION CAMPAIGNS.
Candidates for the Board of Supervisors or Mayor who are certified by the Ethics Commission as eligible to receive public financing of their election campaigns, and who comply with the applicable conditions and restrictions specified in Section 1.140 and 1.140.5 of this Chapter, may receive public funds as provided in this Chapter to defray the costs of their election campaigns.
(Added by Proposition O, 11/7/2000; amended by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.138. SUPERVISOR ELECTION CAMPAIGN FUND; APPROPRIATION OF FUNDS.
(a)   ESTABLISHMENT OF SUPERVISOR ELECTION CAMPAIGN FUND. There is hereby established a special fund of the City and County of San Francisco called the Supervisor Election Campaign Fund. All money deposited in the Fund is hereby appropriated for use as specified in this Chapter and the implementing regulations.
(b)   APPROPRIATION TO SUPERVISOR ELECTION CAMPAIGN FUND. Each fiscal year the City and County of San Francisco shall appropriate to the Supervisor Election Campaign Fund an amount sufficient to provide funding for election campaigns as authorized by this Chapter for all candidates for the Board of Supervisors who may be eligible to receive such funds. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount required. If at any time the amount appropriated is insufficient to fund all eligible candidates, the Ethics Commission shall notify the

Mayor and Board of Supervisors, and the City and County shall appropriate additional funds. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating any additional funds required.

(c)    APPROPRIATION TO ETHICS COMMISSION. Each fiscal year the City and County of San Francisco shall appropriate to the Ethics Commission an amount sufficient to pay for the costs of administration of the public financing program. This appropriation shall be in addition to and separate from the regular annual appropriation made to the Ethics Commission. The Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount required.

(d)    LIMITATION ON EXPENDITURE OF FUNDS. The annual appropriation to this public financing program, including the cost of administration, shall not exceed $2.00 per resident of the City and County of San Francisco. At the request of the Ethics Commission, the Controller shall estimate the number of residents of the City and County of San Francisco for purposes of this subsection.

(Added by Proposition O, 11/7/2000; amended by Ord. 31-06, File No. 051773, App. 2/23/2006)


SEC. 1.138.5. MAYORAL ELECTION CAMPAIGN FUND; APPROPRIATION OF FUNDS.

(a)    ESTABLISHMENT OF MAYORAL ELECTION CAMPAIGN FUND. There is established a special fund of the City and County of San Francisco called the Mayoral Election Campaign Fund. All money deposited in the Fund is appropriated for use as specified in this Chapter and the implementing regulations. This special fund is separate from the Election Campaign Fund established in Section 1.138(a) of this Chapter.

(b)    APPROPRIATION TO MAYORAL ELECTION CAMPAIGN FUND. Except as provided in subsections (b)(3) and (b)(4), each fiscal year the City and County of San Francisco shall appropriate $2.00 per resident of the City and County of San Francisco to the Mayoral Election Campaign Fund to provide funding for election campaigns as authorized by this Chapter for all candidates for Mayor who may be eligible to receive such funds. At the request of the Ethics Commission, the Controller shall estimate the number of residents of the City and County of San Francisco for purposes of this subsection.

(1)    Any funds in the Mayoral Election Campaign Fund not used in one election shall be carried over for use in the following election, provided that at no time shall the total amount in the Mayoral Election Campaign Fund exceed $12 million. Any funds in the Mayoral Election Campaign Fund in excess of $12 million shall be returned to the General Fund.

(2)    Funds necessary for the Ethics Commission to administer the public financing program for candidates for Mayor authorized under section 1.136 of this Chapter shall be taken from the Mayoral Election Campaign Fund. The Commission's administrative expenses for such public financing program for any election shall not exceed 15% of the total amount of funds in the Mayoral Election Campaign Fund for that election.

(3)    In order to ensure that four years worth of appropriations under this subsection are available to provide public financing to candidates seeking election at the next mayoral election, the City and County of San Francisco shall appropriate $8.00 per resident of the

City and County of San Francisco to the Mayoral Election Campaign Fund by July 1, 2006.

(4)   If the Office of Mayor becomes vacant and an election is held to fill the vacancy for the remainder of the term, the City and County of San Francisco shall appropriate additional funds to the Mayoral Election Campaign Fund in an amount that ensures that at least $8.00 per resident is available in the Mayoral Election Campaign Fund for that election and the next regularly scheduled mayoral election.

(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.140. ELIGIBILITY TO RECEIVE PUBLIC FINANCING--CANDIDATES FOR THE BOARD OF SUPERVISORS.

(a)   REQUIREMENTS. To be eligible to receive public financing of campaign expenses under this Chapter, a candidate for the Board of Supervisors must:

(1)   Be seeking election to the Board of Supervisors and be eligible to hold the office sought;

(2)   Have filed a statement indicating that he or she intends to participate in the public financing program under Section 1.142(a) of this Chapter;

(3)   Have received at least $5,000 in qualifying contributions from at least 75 contributors before the 70th day before the election;

(4)   Be opposed by another candidate who has either established eligibility to receive public financing, or received contributions or made expenditures which in the aggregate equal or exceed $5,000;

(5)   Agree to the following conditions:

(A)   The candidate bears the burden of proving that each contribution the candidate relies upon to establish eligibility is a qualifying contribution;

(B)   The candidate bears the burden of proving that expenditures made with public funds provided under this Chapter comply with Section 1.148 of this Chapter;

(C)   The candidate shall not make qualified campaign expenditures which in the aggregate exceed the expenditure limits specified in Section 1.130 of this Chapter, except as provided in Section 1.134 of this Chapter; and

(D)   The candidate shall agree to participate in at least one debate with the candidate's opponents.

(6)   Have paid any outstanding late fines or penalties, owed to the City by the candidate or any of the candidate's previous campaign committees, which were imposed for violations of Chapters 1 though 5 of this Article, the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704), Chapter 1 of Article II of this Code or Chapters 1 or 2 of Article III of this Code, provided that the Ethics Commission had notified the candidate of such fines or penalties by the timeof certification;

(7)   Have filed any outstanding forms, owed to the City by the candidate or any of the candidate's previous campaign committees, which were required to be filed pursuant to Chapters 1 through 5 of this Article, the campaign finance provisions of the Political Reform Act (Government Code sections 84100-85704), or Chapter 1, Article III of this Code, provided that the Ethics Commission had notified the candidate of such outstanding forms by the time of certification;

(8)   Have no finding by a court within the prior five years that the candidate knowingly, willfully, or intentionally violated Chapters 1 through 4 of this Article or the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704). For purposes of this section, a plea of nolo contendere shall be treated the same as a finding by a court of a willful violation.

(b)   ADJUSTMENT OF EXPENDITURE LIMITS AND THRESHOLDS. Whenever the Ethics Commission pursuant to Section 1.130 adjusts the voluntary expenditure ceilings to reflect changes in the California Consumer Price Index, the Commission is authorized to adjust the threshold limits in subsections (a)(3) and (a)(4) of this Section, and Section 1.152, to reflect changes in the California Consumer Price Index.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 236-05, File No. 051033, App. 10/7/2005; Ord. 31-06, File No. 051773, App. 2/23/2006)


SEC. 1.140.5. ELIGIBILITY TO RECEIVE PUBLIC FINANCING--CANDIDATES FOR MAYOR.

(a)   REQUIREMENTS FOR CANDIDATES. To be eligible to receive public financing of campaign expenses under this Chapter, a candidate for Mayor must:

(1)   Be seeking election to the office of Mayor and be eligible to hold the office sought;

(2)   Have submitted a declaration under Section 1.142(b) of this Chapter indicating that the candidate meets the eligibility criteria of this section;

(3)   Have received at least $25,000 in qualifying contributions from at least 250 contributors by the 70th day before the election.

(4)   Be opposed by another candidate who has either established eligibility to receive public financing, or received contributions or made expenditures that in the aggregate equal or exceed $50,000;

(5)   Agree to the following conditions.

(i)   The candidate shall not spend on the candidate's campaign more than the candidate's Individual Expenditure Ceiling of $1,375,000, or as adjusted under Section 1.134.5 of this Chapter;

(ii)   The candidate bears the burden of proving that each contribution the candidate relies upon to establish eligibility is a qualifying contribution and that all contributions comply with the requirements set forth in this Chapter;

(iii)   The candidate bears the burden of proving that expenditures made with public funds provided under this Chapter comply with Section 1.148 of this Chapter;

(iv)   The candidate will not make any payments to a contractor or vendor in return for the contractor or vendor making a campaign contribution to the candidate or make more than a total of 50 payments, other than the return of a contribution, to contractors or vendors that have made contributions to the candidate;

(v)   Notwithstanding Sections 1.114 and 1.116, the candidate shall not loan or donate more than $5,000 of his or her own money to the campaign;

(vi)   The candidate shall not accept any loans to his or her campaign with the exception of a candidate's loan to his or her own campaign as permitted by this section; and

(vii)   The candidate shall agree to participate in at least three (3) debates with the candidate's opponents.

(6)   Have paid any outstanding late fines or penalties, owed to the City by the candidate or any of the candidate's previous campaign committees, which were imposed for violations of Chapters 1 though 5 of this Article, the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704), Chapter 1 of Article II of this Code or Chapters 1 or 2 of Article III of this Code, provided that the Ethics Commission had notified the candidate of such fines or penalties by the timeof certification;

(7)   Have filed any outstanding forms, owed to the City by the candidate or any of the candidate's previous campaign committees, which were required to be filed pursuant to Chapters 1 through 5 of this Article, the campaign finance provisions of the Political Reform Act (Government Code sections 84100-85704), or Chapter 1, Article III of this Code, provided that the Ethics Commission had notified the candidate of such outstanding forms by the time of certification;

(8)   Have no finding by a court within the prior five years that the candidate knowingly, willfully, or intentionally violated Chapters 1 through 4 of this Article or the campaign finance provisions of the California Political Reform Act (Government Code sections 84100-85704). For purposes of this section, a plea of nolo contendre shall be treated the same as a finding by a court of a willful violation.

(b)   ADJUSTMENT OF EXPENDITURE LIMITS AND THRESHOLDS. The Ethics Commission shall adjust:

(1)   the figures in subsections (a)(3), (a)(4), and (a)(5) of this Section to reflect changes in the California Consumer Price Index, provided that such adjustments shall be rounded off to the nearest $5,000; and

(2)   the maximum amount of a contribution that constitutes a qualifying contribution for mayoral candidates pursuant to section 1.104 to reflect changes in the California Consumer Price Index, provided that such adjustments shall be rounded off to the nearest $10.

(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)


SEC. 1.142. PROCESS FOR ESTABLISHING ELIGIBILITY; CERTIFICATION BY THE ETHICS COMMISSION.

(a)   STATEMENT OF PARTICIPATION OR NON-PARTICIPATION. Each candidate for the Board of Supervisors or Mayor must sign and verify under penalty of perjury a Statement of Participation or Non-Participation in the public financing program. The statement must be filed by the candidate with the Ethics Commission no later than the deadline for filing nomination papers. On the statement, each candidate shall indicate whether he or she intends to participate in the public financing program. A statement of participation or non-participation may not be amended after the deadline for filing nomination papers.

(b)   DECLARATION BY CANDIDATE.

(1)   Candidates for the Board of Supervisor. To become eligible to receive public financing of campaign expenses under this Chapter, a candidate for the Board of Supervisors shall declare, under penalty of perjury, that the candidate satisfies the requirements specified in Section 1.140. Candidates shall submit the declaration and any supporting material required by the Ethics Commission to the Ethics Commission on or after June 1 of the election year, but no later than the 70th day before the election. Once

the declaration and supporting material are submitted, they may not be amended. The declaration and supporting material may be withdrawn and refiled, provided that the refiling is made no later than the 70th day before the election.

(2)   Candidates for Mayor. To become eligible to receive public financing of campaign expenses under this Chapter, a candidate for Mayor shall declare, under penalty of perjury, that the candidate satisfies the requirements specified in Section 1.140.5. Candidates shall be permitted to submit the declaration and any supporting material required by the Ethics Commission to the Ethics Commission starting nine (9) months before the date of the election, but no later than the 70th day before the election. Once the declaration and supporting material are submitted, they may not be amended. The declaration and supporting material may be withdrawn and refiled, provided that the refiling is made no later than the 70th day before the election.

(3)   Extension of Deadlines. If any deadline imposed by this section falls on a Saturday, Sunday, or legal holiday, the deadline shall be the next business day.

(c)   DETERMINATION OF ELIGIBILITY. The Executive Director of the Ethics Commission shall review the candidate's declaration and supporting material to determine whether the candidate is eligible to receive public funds under this Chapter. The Executive Director may audit the candidate's records, interview contributors and take whatever steps the Executive Director deems necessary to determine eligibility. At the request of the Executive Director, the Controller shall assist in this review process.

(d)   DETERMINATION OF OPPOSITION. To determine whether a candidate for the Board of Supervisors is opposed as required under Section 1.140(a)(3) of this Chapter or a candidate for Mayor is opposed as required under Section 1.140.5(a)(4) of this Chapter, the Executive Director shall review the material filed pursuant to Section 1.152 of this Chapter, and may review any other material.

(e)   CERTIFICATION. If the Executive Director determines that a candidate for the Board of Supervisors has satisfied the requirements of Section 1.140 or a candidate for Mayor has satisfied the requirements of Section 1.140.5, the Executive Director shall notify the candidate and certify to the Controller that the candidate is eligible to receive public financing under this Chapter. The Executive Director shall not certify that a candidate is eligible to receive public financing if the candidate's declaration orsupporting material is incomplete or otherwise inadequate to establish eligibility. The Executive Director shall determine whether to certify a candidate no later than 30 days after the date the candidate submits his or her declaration and supporting material, provided that the Executive Director shall make all determinations regarding whether to certify a candidate no later than the 55th day before the election.

(f)   RESUBMISSION. If the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall notify the candidate. Notwithstanding Section 1.142(b) of this Chapter, the candidate may, within five business days of the date of notification, resubmit the declaration and supporting material. If the candidate does not timely resubmit, the Executive Director's determination is final.

If, after viewing resubmitted material, the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the Executive Director shall notify the candidate of this fact. Additional resubmissions may be permitted in the Executive Director's discretion. If the candidate fails to resubmit in the

time specified by the Executive Director, or if no further resubmissions are permitted, the Executive Director's determination is final.

(g)   RECONSIDERATION. A candidate may request that the Executive Director reconsider a final determination that the candidate is ineligible to receive public funds under this Chapter. The candidate must request reconsideration in writing within five days of the date of notification of ineligibility.

(h)   APPEAL TO THE ETHICS COMMISSION. If, after reconsideration, the Executive Director declines to certify that a candidate is eligible to receive public financing under this Chapter, the candidate may appeal the Executive Director's final determination to the Ethics Commission. The candidate must deliver the written appeal to the Ethics Commission within five days of the date of notification of the Executive Director's determination following reconsideration.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006)


SEC. 1.144. DISBURSEMENT OF PUBLIC FUNDS--CANDIDATES FOR THE BOARD OF SUPERVISORS.

(a)   PAYMENT BY CONTROLLER. Upon certifying that a candidate for the Board of Supervisors is eligible to receive public financing under this Chapter, the Executive Director shall forward the certification to the Controller and the Controller shall disburse payments to the candidate from the Supervisor Election Campaign Fund in accordance with the certification and this Section.

(b)   TIME OF PAYMENTS. The Controller shall not make any payments under this Chapter to a candidate for the Board of Supervisors until the day following the deadline for filing nomination papers with the Director of Elections.

(c)   PAYMENTS FOR ELECTION EXPENSES. Upon certification of eligibility, and in accordance with subsection (b) of this Section, the candidate shall receive a payment of $5,000 from the Supervisor Election Campaign Fund. Thereafter, for each of the first $5,000 dollars of matching contributions raised by the candidate, the candidate shall receive four dollars from the Supervisor Election Campaign Fund. Thereafter, for each additional dollar of matching contributions raised by the candidate, the candidate shall receive one dollar from the Supervisor Election Campaign Fund. The maximum amount of public funds a candidate for the Board of Supervisors may receive to defray election expenses under this Chapter is $43,750. The amount of public funds paid to a candidate for the Board of Supervisors under this Section shall not be affected by the lifting of expenditure limits under Section 1.134.

(d)   PRORATION OF FUNDS. Notwithstanding Subsections (c) and (d) of this Section, if the Executive Director makes an initial or the Ethics Commission makes a final determination, pursuant to Section 1.154(b) of this Chapter, that funds in the Supervisor Election Campaign Fund are insufficient, the Executive Director or the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds.

(e)   DEPOSIT IN CAMPAIGN CONTRIBUTION TRUST ACCOUNT. Candidates must deposit all payments received from the Supervisor Election Campaign Fund in the candidate's Campaign Contribution Trust Account.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.144.5. DISBURSEMENT OF PUBLIC FUNDS--CANDIDATES FOR MAYOR.

(a)   PAYMENT BY CONTROLLER. Upon certifying that a candidate for Mayor is eligible to receive public financing under this Chapter, the Executive Director shall forward the certification to the Controller, and the Controller shall disburse payments to the candidate from the Mayoral Election Campaign Fund in accordance with the certification and this Section.

(b)   TIME OF PAYMENTS. The Controller shall not make any payments under this Chapter to any candidate for Mayor more than nine (9) months before the date of the election. Payments from the Controller shall be disbursed to eligible candidates within 48 hours of the Controller receiving notification from the Ethics Commission regarding the amount of the disbursement, except that within 60 calendar days before the election, such payments shall be made within 24 hours.

(c)   PAYMENTS FOR ELECTION EXPENSES.

(1)   Until the Per Candidate Available Disbursement Limit has been determined, candidates for Mayor who have been certified by the Ethics Commission as eligible to receive public financing for their election campaigns will have access to up to $850,000 in funds from the Mayoral Election Campaign Fund on a first come, first served basis according to the formula set forth in subsection (c)(3) of this Section.

(2)   Once the Per Candidate Available Disbursement Limit has been determined, candidates for Mayor who have been certified by the Ethics Commission as eligible to receive public financing for their election campaigns shall have access to funds from the Mayoral Election Campaign Fund as follows:

(A)   If the Executive Director determines that the Per Candidate Available Disbursement Limit is greater than $850,000, each participating candidate shall have access to the amount of the Per Candidate Disbursement, subject to the limitations set forth under subsection (c)(3)(D) and (c)(3)(E) of this Section.

(B)   If the Executive Director determines the Per Candidate Available Disbursement Limit is less than or equal to $850,000, participating candidates shall have access to funds from the Mayoral Election Campaign Fund on a first come, first served basis up to a maximum per candidate of $850,000.

(3)   A candidate for Mayor who is certified as eligible to receive public financing under this Chapter shall receive payments for eligible matching contributions according to the following formula:

(A)   Upon qualification the candidate shall receive a one-time payment of $50,000 from the Mayoral Election Campaign Fund.

(B)   After the initial payment under subsection (c)(3)(A), for the first $100,000 in matching contributions raised by the candidate, the candidate shall receive four dollars from the Mayoral Election Campaign Fund for each dollar raised.

(C)   After the payments under subsection (c)(3)(B), for the next $400,000 in matching contributions raised by the candidate, the candidate shall receive one dollar from the Mayoral Election Campaign Fund for each dollar raised.

(D)   The maximum amount of public funds a mayoral candidate may receive is $850,000, unless the candidate's Individual Expenditure Ceiling is lifted according to the rules set forth under Section 1.134.5. The amount of public funds paid under this Section shall not be affected by the lifting of expenditure limits under Section 1.134.

(E)   If the Per Candidate Available Disbursement Limit has been determined to be an amount greater than $850,000, a candidate who has already received at least $850,000 in disbursements from the City shall continue to be eligible to receive public funds from the City at the rate of one dollar for each dollar of a matching contribution raised up to the Per Candidate Disbursement Limit, provided that no funds shall be disbursed if disbursement of the funds would result in the candidate exceeding his or her Trust Account Limit.

(d)   PER CANDIDATE AVAILABLE DISBURSEMENT LIMIT. On the 59th day before the election, the Executive Director shall divide the total amount of non-administrative funds in the Mayoral Election Campaign Fund by the number of qualified candidates. This number shall be deemed the Per Candidate Available Disbursement Limit. For the purposes of this section, the total amount of non-administrative funds in the Mayoral Election Campaign Fund shall be the total amount of funds that existed in the Fund nine months before the date of election plus any funds deposited into the Fund between that date and the 59th day before the election minus any funds necessary to cover the administrative costs associated with implementing the mayoral public financing program.

If there are candidates who have submitted a Declaration of Qualification but whose eligibility has not been determined as of the 59th day before the election, the Executive Director shall assume that they are qualified for the purposes of determining the Per Candidate Available Disbursement Limit. The Per Candidate Available Disbursement Limit shall be revised upward according to the formula above if and when it is determined that the candidate or candidates in question did not qualify to receive public financing.

Immediately upon calculating the Per Candidate Available Disbursement Limit, the Executive Director shall inform the Controller of the initial determination of the Per Candidate Available Disbursement Limit. Thereafter, the Executive Director shall immediately inform the Controller of any subsequent changes in the Per Candidate Available Disbursement Limit due to a determination that a candidate has not qualified to receive public financing.

(e)   SUBMISSION OF CLAIMS FOR PUBLIC FUNDS. The Ethics Commission shall determine the information needed to submit a claim for payment of public funds. The Executive Director shall certify each request for payment of public funds within four business days of the request, except that within 14 calendar days before the election, when the certification of a request for public funds shall be made within two business days of the request. Any submission of a claim for public funds must include a minimum of $5,000 of matching contributions; provided that in the 14 calendar days preceding an election, a claim must include a minimum of $1,000 of matching contributions. All claims for public funds must be submitted no later than 5:00 P.M. on the 30th day following the date of the election.

(f)   DEPOSIT IN CAMPAIGN CONTRIBUTION TRUST ACCOUNT. Candidates must deposit all payments received from the Mayoral Election Campaign Fund in the candidate's Campaign Contribution Trust Account.
(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.146. TERMINATION OF PAYMENTS.
The Controller shall terminate all payments to a candidate who is otherwise eligible to receive public financing if the candidate:
(a)   withdraws or fails to qualify to have his or her name printed on the ballot for the election for which the candidate applied for public financing;
(b)   fails to comply with the conditions specified in Section 1.140 of this Chapter if a candidate for the Board of Supervisors or Section 1.140.5 if a candidate for Mayor; or
(c)   knowingly or willfully fails to comply with any of the reporting requirements imposed by this Chapter or the Political Reform Act, California Government Code Section 81000, et seq.
(Added by Ord. 31-06, File No. 051773, App. 2/23/2006)(Former Sec. 1.146 was added by Proposition O, 11/7/2000; repealed by Ord. 141-03, File No. 030034, App. 6/27/2003)

SEC. 1.148. RESTRICTIONS ON USE OF PUBLIC FUNDS; UNEXPENDED PUBLIC FUNDS.
(a)   USE FOR QUALIFIED CAMPAIGN EXPENDITURES ONLY. Candidates who receive public financing may use the public funds solely to pay for qualified campaign expenditures, as defined by Section 1.104 of this Chapter, and to repay loans used to pay for qualified campaign expenditures except that public funds may be used to pay filing fees and costs incurred after the election that do not directly affect the outcome of the election, including but not limited to utility bills, expenses associated with an audit, and expenses related to preparing post-election campaign finance disclosure reports as required by the California Political Reform Act, Government Code section 81000, et seq., and the provisions of this Chapter.  Candidates may not use public funds to pay for expenses incurred in connection with an administrative or judicial proceeding. Candidates may not use public funds to pay administrative, civil or criminal fines, including late filing fines, or to pay for inaugural activities or officeholder expenses. Candidates may not use public funds to pay post-election bonuses to campaign employees or for election victory celebrations or similar post-election campaign events.

(b)   PURCHASE OF EQUIPMENT. Any equipment purchased by a candidate with public funds provided under this Chapter that has a useful life beyond the election campaign for which the funds were provided, and a fair market value exceeding $100, becomes City and County property on the day following the date the candidate is elected or not elected to office.
(c)   WITHDRAWAL OR FAILURE TO QUALIFY. Any candidate who receives public financing but who withdraws or fails to qualify to have his or her name printed on the ballot in the election for which the public funds were provided shall repay the Supervisor Election Campaign Fund if the candidate was a candidate for the Board of Supervisors or to the Mayoral Election Campaign Fund if the candidate was a candidate for Mayor the full sum received from the Fund.

(d)   UNEXPENDED PUBLIC FUNDS.

(i)   General. Any candidate who receives public financing and who has unexpended public funds shall pay to the City and County of San Francisco and deliver to the Ethics Commission those funds for deposit in the Supervisor Election Campaign Fund if the candidate was a candidate for the Board of Supervisors or to the Mayoral Election Campaign Fund if the candidate was a candidate for Mayor no later than 30 days after the Ethics Commission completes its audit of the candidate. Unexpended funds may be used to pay for expenses associated with an audit such as bank fees, treasurer fees and storage fees until the Ethics Commission completes its audit of the candidate.

(ii)   Definition. For purposes of this section, unexpended public funds shall mean all funds remaining in the candidate's account on the 30th day after the candidate is elected or not elected to office, regardless of the source of the funds, but shall not exceed the amount of public funds provided to the candidate. Funds raised after this date do not constitute unexpended funds and may be used for any lawful purpose.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.150. AUDIT; REPAYMENT.

(a)   AUDIT. The Ethics Commission shall audit all candidates who receive public financing under this Chapter. Audits of candidates for Mayor conducted under this subsection shall begin within 60 days after the date the candidates' first post-election campaign disclosure report is required to be filed pursuant to Section 1.106 of this Chapter. At the request of the Executive Director, the Controller shall assist in conducting these audits.

(b)   REPAYMENT.

(1)   If the Ethics Commission determines that any portion of the payments made to a candidate from the Supervisor Election Campaign Fund or the Mayoral Election Campaign Fund exceeded the aggregate amount of payments to which the candidate was entitled under this Chapter, the Commission shall notify the Controller and the candidate. In addition to any other penalties, the candidate shall pay to the City and County of San Francisco, and deliver to the Ethics Commission an amount equal to the amount of the excess payments, and if the Commission determines that any amount of any payment made to a candidate from the Supervisor Election Campaign Fund or the Mayoral Election Campaign Fund was used for something other than qualified campaign expenditures, the candidate shall pay to the Ethics Commission an amount equal to the improper expenditure.

(2)   Any candidate for Mayor who receives public funds under this Chapter and exceeds his or her Individual Expenditure Ceiling by ten percent or more shall, in addition to any other penalties, pay to the Ethics Commission an amount equal to the amount of public funds the candidate received under this Chapter.

(3)   Any candidate for the Board of Supervisors who receives public funds under this Chapter and who exceeds, by ten percent or more, an expenditure ceiling that has not been lifted shall, in addition to any other penalties, pay to the Ethics Commission an amount equal to the amount of public funds the candidate received under this Chapter.

(4)   All payments delivered to the Ethics Commission under this Section shall be deposited in the Supervisor Election Campaign Fund if made by a candidate for the Board of Supervisors or in the Mayoral Election Campaign Fund if made by a candidate for Mayor.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.152. SUPPLEMENTAL REPORTING IN ELECTIONS FOR BOARD OF SUPERVISORS AND MAYOR.

(a)   Candidates for the Board of Supervisors. In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, each candidate for the Board of Supervisors who has filed a statement indicating that he or she does not intend to participate in the public financing program under Section 1.142(a) of this Chapter or who has received notice under Section 1.142 that the candidate is ineligible to receive public funds under this Chapter shall, no later than the deadline for filing nomination papers, file a statement with the Ethics Commission indicating whether the nonparticipating candidate has received contributions, made expenditures or has funds in his or her campaign trust account that in the aggregate equal or exceed $5,000. If the nonparticipating candidate first reaches or exceeds the $5,000 threshold after the deadline for filing nomination papers, or receives notice of ineligibility to receive public funds after that date, the nonparticipating candidate shall, within 24 hours of reaching or exceeding the threshold or receiving notice of ineligibility, file a statement indicating this fact with the Ethics Commission. The supplemental reports are not required if no candidate in a race seeks public financing or if the Executive Director of the Ethics Commission has determined that at least two candidates in a race have received contributions or have funds in their campaign trust account that equal or exceed $5,000.

(b)   Candidates for Mayor.

(1)   In addition to the campaign disclosure requirements imposed by the California Political Reform Act and other provisions of this Chapter, each candidate for Mayor shall file a statement with the Ethics Commission indicating when the candidate has received contributions, made expenditures or has funds in his or her Campaign Contribution Trust Account that in the aggregate equal or exceed $50,000 within 24 hours of reaching or exceeding that amount.

(2)   In addition to the supplemental report in subsection (b)(1) of this Section, each candidate for Mayor shall file a statement with the Ethics Commission disclosing when the candidate has received contributions, made expenditures or has funds in his or her Campaign Contribution Trust Account that in the aggregate equal or exceed $1,000,000. The candidate shall file this report within 24 hours of reaching or exceeding the threshold. Thereafter, the candidate shall file an additional supplemental report within24 hours of every time the candidate receives additional contributions, makes additional expenditures or has additional funds in his or her campaign trust account that in the aggregate equal or exceed $50,000.

(3)   Any person that makes independent expenditures, electioneering communications, or member communications that clearly identify any candidate for Mayor in an amount that

in the aggregate equals or exceeds $5,000, shall, within 24 hours of reaching or exceeding the spending threshold, provide an original copy of the communication to the Ethics Commission and file a statement with the Ethics Commission disclosing the cost of each communication. Every person who is required to file a statement with the Ethics Commission pursuant to this subsection shall indicate on the statement which candidate or candidates for Mayor the independent expenditures, electioneering communications, or member communications disclosed on the statement are intended to support or oppose, or whether they are intended to be neutral, provided that an independent expenditure may not be neutral. For the purposes of this subsection, the costs of a communication that supports or opposes more than one candidate or ballot measure shall be apportioned among each candidate and measure in the communication.

Thereafter, any such person shall file a supplemental statement with the Ethics Commission each time the person makes independent expenditures, electioneering communications or member communications in support of or in opposition to any candidate for Mayor in an amount that in the aggregate equals or exceeds an additional $5,000. The supplemental statements shall be filed within 24 hours of reaching or exceeding the spending threshold.

The Executive Director shall post the information disclosed on statements required by this subsection on the web page of the Ethics Commission within two business days of the statement being filed.

(4)   The supplemental statements required by subsections (b)(2) and (b)(3) are not required until the Ethics Commission has certified that at least one candidate for Mayor is eligible to receive public funds under this Chapter, provided that within two days of the date that the Ethics Commission provides notice under this subsection that it has certified that a candidate for Mayor is eligible to receive public funds under this Chapter any report that would be required under (b)(2) or (b)(3) must be filed. Within two business days of certifying that at least one candidate for Mayor is eligible to receive public financing under this Chapter, the Ethics Commission shall post a notice on its web page, send out a press release and send written notice by regular or electronic mail to any person who has requested such notice.

(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006)


SEC. 1.154. INSUFFICIENT FUNDS IN SUPERVISOR ELECTION CAMPAIGN FUND.

(a)   REPORT BY CONTROLLER. At the request of the Ethics Commission, the Controller shall provide a statement of the total amount of funds in the Supervisor Election Campaign Fund.

(b)   DETERMINATION. Within 24 hours of the deadline for filing nomination papers, the Executive Director shall notify the Controller whether the amount in the Supervisor Election Campaign Fund is sufficient to fund all candidates who have filed a notice of intent to participate in the public financing program and who may be eligible to receive public financing. No later than 60 days before the election, the Ethics Commission shall make a final determination whether the amount in the Supervisor Election Campaign Fund is sufficient to fund all candidates for the Board of Supervisors who may be eligible

to receive public financing for their election campaigns under this Chapter. If the Executive Director's initial or the Commission's final determination is that the amount in the Fund is insufficient, the Executive Director or the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds. Notwithstanding an initial determination that the funds are insufficient and the distribution of some funds on a pro rata basis, if the Commission makes a final determination that there are sufficient funds for all eligible candidates, the Commission may distribute the full amount of funds to eligible candidates.
(Added by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.156. REPORT TO THE MAYOR AND BOARD OF SUPERVISORS.
(a)   Following each election at which the Mayor or members of the Board of Supervisors are elected, the Ethics Commission shall submit a report to the Mayor and Board of Supervisors. The report shall state the amount of public funds used to pay for election campaigns in that election and such other information as the Ethics Commission deems useful, including the number of candidates who received public funds; the number of nonparticipating candidates; the amount of qualified campaign expenditures made by all candidates in that election; and the amount of independent expenditures made in connection with the election.
(b)   Following the November 2007 municipal election, the Ethics Commission shall conduct a study and submit a report to the Mayor and Board of Supervisors regarding the feasibility and costs of converting the partial public financing program for Mayoral candidates into a full public financing program.
(Added by Proposition O, 11/7/2000; amended by Ord. 31-06, File No. 051773, App. 2/23/2006)

SEC. 1.158. IMPLEMENTING REGULATIONS; FORMS.
Pursuant to Charter Section 15.102, the Ethics Commission shall adopt regulations to implement this Chapter. The Ethics Commission shall also specify the form and content of all forms and statements required to be filed under this Chapter.
(Added by Proposition O, 11/7/2000)

SEC. 1.160. NO LIMITATION OF CANDIDATE LIABILITY.
Nothing in this Chapter shall operate to limit the candidate's liability for, nor the candidate's ability to pay, any fines or other payments imposed pursuant to administrative or judicial proceedings.
(Added by Proposition O, 11/7/2000)

SEC. 1.161. DISCLOSURE AND FILING REQUIREMENTS FOR MASS MAILINGS.
(a)   DISCLOSURE.
In addition to the requirements set forth in California Government Code Section 84305, each mass mailing paid for by a candidate for City elective office shall include on the outside of each piece of mail in the mass mailing the following statement in not less than 14 point type and in a color or print which contrasts with the background so as to be easily legible: "paid for by _____ (insert candidate's name and street address)." A

post office box may be stated in lieu of a street address if the candidate's address is a matter of public record with the San Francisco Ethics Commission.

(b)   FILING.

(1)   Each candidate for City elective office who pays for a mass mailing shall, within five working days after the date of the mailing, file two of the original pieces of the mailing with the San Francisco Ethics Commission.

(2)   Each candidate for City elective office who pays for a mass mailing shall, within five working days after the date of the mailing, file an itemized disclosure statement with the San Francisco Ethics Commission for that mailing.

(3)   A candidate for City elective office shall file the original pieces of mail and the itemized disclosure statement required by subsections (b)(1) and (b)(2) within 48 hours of the date of the mailing if the date of the mailing occurs within the final 16 days before the election.

(4)   Every original filed pursuant to this subsection shall be clearly legible.

Every original or copy filed pursuant to this subsection shall be clearly legible.

(c)   DEFINITIONS.

(1)   For the purposes of this Section, "Itemized disclosure statement" shall mean a detailed description of the separate costs associated with a mass mailing, including but not limited to photography, design, production, printing, distribution and postage. Each cost shall be disclosed on a form promulgated by the San Francisco Ethics Commission in a manner that demonstrates each separate charge or payment for each mass mailing.

(2)   For the purposes of this Section, "Mass mailing" shall be defined as set forth in the California Political Reform Act (Government Code Sections 81000 et seq.), provided that the mass mailing is paid for by a candidate for City elective office with funds raised for the candidate's campaign, and that the mass mailing advocates for or against candidates for City elective office.

(Added by Ord. 211-01, File No. 010778, App. 10/26/2001; amended by Ord. 89-02, File No. 012130, App. 6/14/2002; Ord. 228-06, File No. 060501, App. 9/14/2006)

SEC. 1.161.5. DISCLOSURE AND FILING FOR ELECTIONEERING COMMUNICATIONS.

(a)   DISCLOSURE STATEMENTS.

(1)   Every electioneering communication shall include a disclosure statement identifying the person who paid for the communication. Such disclosure statement shall, at a minimum, contain the following words, "paid for by _____ (insert the name of the person who paid for the communication)."

(2)   Any disclosure statement required by this Section to be in printed form shall be printed in a type and color so as to be easily legible to the intended public.  Such disclosure statement shall be printed in at least 14 point type and in a color or print that contrasts with the background so as to be easily legible to the intended public.

(3)   Any disclosure statement required by this Section to be in spoken form shall be spoken at the same volume and speed as the rest of the communication so as to be clearly audible and understood by the intended public and otherwise appropriately conveyed for the hearing impaired.

(b)   REPORTING OBLIGATIONS.

(1)   Every person who makes payments for electioneering communications in an aggregate amount of $1,000 during any calendar year shall, within 48 hours of each disclosure date, file an itemized statement with the San Francisco Ethics Commission.

(2)   Each itemized statement required to be filed under this Section shall be filed on a form promulgated by the San Francisco Ethics Commission and shall contain the following information:

(A)   the full name, street address, city, state and zip code of the person making payments for electioneering communications;

(B)   the name of any individual sharing or exercising direction and control over the person making payments for electioneering communications;

(C)   the total amount of payments made by the person for electioneering communications during the calendar year;

(D)   a detailed description of each payment made by the person for electioneering communications during the calendar year, provided that the person has not already reported such payments on an itemized statement filed under this Section; such detailed description shall include the date the payment was made, the full name and address of the person to whom the payment was made; the amount of the payment, and a brief description of the consideration for which each payment was made;

(E)   a detailed accounting of any payments of $100 or more that the person has received from another person, which were used for making electioneering communications, provided that the person has not already reported such payments received on an itemized statement filed under this Section; such detailed accounting shall include the dollar amount or value of each payment, the date of the payment's receipt, the name, street address, city, state, and zip code of the person who made such payment, the occupation and employer of the person who made such payment, if any, or, if the person is self-employed, the name of the person's business, and the cumulative amount of payments received for the purpose of making electioneering communications from that person during the calendar year;

(F)   the total amount of all payments reported under subsection (E) during the calendar year;

(G)   a legible copy of the electioneering communication if in printed form, or a transcript of the electioneering communication if in spoken form; and

(H)   any other information required by the Ethics Commission consistent with the purposes of this Section.

(3)   The filer shall verify, under penalty of perjury, the accuracy and completeness of the information provided in the itemized statement, and shall retain for a period of five years all books, papers and documents necessary to substantiate the itemized statements required by this Section.

(4)   The Ethics Commission may require any itemized statement to be filed electronically and may permit any required statement to be filed by facsimile. The Ethics Commission shall promulgate regulations to implement this subsection before any person shall be required to file an itemized statement electronically or permitted to file a statement by facsimile.

(5)   If any person files an itemized statement after any deadline imposed by this Section, the Ethics Commission shall, in addition to any other penalties or remedies established in this Chapter, fine the person $10 per day after the deadline until the statement is received

by the Ethics Commission. The Ethics Commission may reduce or waive a fine if the Commission determines that the late filing was not willful and that enforcement will not further the purposes of this Chapter. The Ethics Commission shall deposit funds collected under this Section in the General Fund of the City and County of San Francisco.

(c)   DEFINITIONS. Whenever in this Section the following words or phrases are used, they shall mean:

(1)   "Disclosure Date" shall mean:

(A)   the first date during any calendar year when an electioneering communication is distributed after a person has made payments aggregating $1,000 for electioneering communications; and

(B)   after a person has met the threshold under subsection

(A), any date during that same calendar year when an electioneering communication is distributed, if that same person made any payments for such electioneering communication.

(2)   "Distributed" shall mean any act that permits an electioneering communication to be viewed, read or heard.

(3)   "Electioneering Communication" shall mean any communication, including but not limited to any broadcast, cable, satellite, radio, internet, or telephone communication, and any mailing, flyer, doorhanger, pamphlet, brochure, card, sign, billboard, facsimile, or printed advertisement, that:

(A)   refers to a clearly identified candidate for City elective office or a City elective officer who is the subject of a recall election; and

(B)   is distributed within 90 days prior to an election for the City elective office sought by the candidate or a recall election regarding the City elective officer to 500 or more individuals who are registered to vote or eligible to register to vote in the election or recall election. There shall be a rebuttable presumption that any that any broadcast, cable, satellite, or radio communication and any sign, billboard or printed advertisement is distributed to 500 or more individuals who are eligible to vote in or eligible to register to vote in an election for the City elective office sought by the candidate or a recall election regarding the City elective officer.

(C)   The term "Electioneering Communication" shall not include:

(i)   communications that constitute expenditures or independent expenditures under this Chapter;

(ii)   communications made by a slate mailer organization if such communications are required to be disclosed under California Government Code Section 81000, et seq.;

(iii)   communications paid for by the City or any other local, state or federal government agency;

(iv)   spoken communications between two or more individuals in direct conversation unless such communications are made by telephone and at least one of the individuals is compensated for the purposes of making the telephone communication;

(v)   communications that appear on bumper stickers, pins, stickers, hat bands, badges, ribbons and other similar memorabilia;

(vi)   news stories, commentaries or editorials distributed through any newspaper, radio station, television station, or other recognized news medium unless such news medium is owned or controlled by any political party, political committee or candidate;

36

(vii)   communications to all members, employees and shareholders of an organization, other than a political party, provided that such communications do not constitute general public advertising such as, but not limited to, broadcasting, billboards, and newspaper advertisements;

(viii)   communications that occur during a candidate debate or forum; and

(ix)   communications made solely to promote a candidate debate or forum made by or on behalf of the person sponsoring the debate or forum, provided that such communications do not otherwise discuss the positions or experience of a candidate for City elective office or a City elective officer who is the subject of a recall election.

(4)   "Internet Communication" shall include paid internet advertisements such as "banner" and "pop up" advertisements, paid emails or emails sent to addresses purchased from another person, and similar types of internet communications as defined by the Ethics Commission by regulation, but shall not include web blogs, listserves sent to persons who have contacted the sender, discussion forums, or general postings on web pages.

(5)   "Payment" shall be defined as set forth in Government Code of the State of California (commencing at Section 81000); provided, however, that "payment" shall also include any enforceable promise to make a payment.

(6)   "Refers to a clearly identified candidate for City elective office or a City elective officer who is the subject of a recall election" shall mean any communication that contains the candidate's or officer's name, nickname or image or makes any other unambiguous reference to the candidate or officer such as "your Supervisor" or "the incumbent."

(D)   REGULATIONS. The Ethics Commission shall issue regulations implementing this Section, including regulations defining all members, employees and shareholders of an organization.

(Added by Ord. 71-05, File No. 041489, App. 4/15/2005; amended by Ord. 75-05, File No. 050624, App. 4/27/2005; Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.162. INDEPENDENT EXPENDITURES FOR MASS MAILINGS.

Any person who makes independent expenditures for a mass mailing which support or oppose any candidate for City elective office shall place the following statement on the mailing in typeface no smaller than 14 points:

Notice to Voters

(Required by City and County of San Francisco)

This mailing is not authorized or approved by

any candidate for City and County office

or by any election official. It is paid for by

(name and committee identification number).

(address, city, state).

Total cost of this mailing is (amount).

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.510-7; added by Proposition N, 11/7/95)

SEC. 1.162.5.  DISCLOSURE REQUIREMENTS – CAMPAIGN ADVERTISEMENTS.

(a)      Disclosure.  Any campaign advertisement that urges support for or opposition to one or more candidates for City elective office shall include a disclosure statement identifying the person who paid for the advertisement.  Such disclosure statement shall, at a minimum, contain the following words, "paid for by _____ (insert the name of the person who paid for the communication)" and appear at least once on the advertisement.

(1)      Any disclosure statement required by this section to be in printed form shall be printed in a type and color so as to be easily legible to the intended public.  Such disclosure statement shall be printed in at least 14-point type and in a color or print that contrasts with the background so as to be easily legible to the intended public.

(2)      Any disclosure statement required by this section to be in spoken form shall be spoken at the same volume and speed as the rest of the communication so as to be clearly audible and understood by the intended public and otherwise appropriately conveyed for the hearing impaired.

(b)      Definitions.  For the purposes of this section, the term "campaign advertisement" means:

(1)      programming received by a television or radio;

(2)      a communication placed in a newspaper; periodical or magazine of general circulation;

(3)      posters, door hangers, and yard signs produced in quantities of 200 or more; and

(4)      a billboard.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.163. DISCLOSURE REQUIREMENTS--RECORDED TELEPHONE MESSAGES.

Any recorded telephone message distributed to 500 or more individuals or households must include the following statement: "paid for by _____ (insert name of person who paid for the recorded telephone message)." Statements required pursuant to this Section shall be audible and played at the same volume and speed as the rest of the recorded telephone message. Any person paying for a recorded telephone message must maintain a transcript of the message and a record of the number of distributed calls for each message.

(Added by Ord. 187-01, File No. 010779, App. 8/31/2001; amended by Ord. 141-03, File No. 030034, App. 6/27/2003)


SEC. 1.163.5.  DISTRIBUTION OF CAMPAIGN ADVERTISEMENTS CONTAINING FALSE ENDORSEMENTS.

(a) Prohibition.  No person may sponsor any campaign advertisement that is distributed within 90 days prior to an election and that contains a false endorsement, where the person acts with knowledge of the falsity of the endorsement or with reckless disregard for the truth or falsity of the endorsement.   A false endorsement is a statement, signature, photograph, or image representing that a person expressly endorses or conveys support for or opposition to a candidate or measure when in fact the person does not expressly

endorse or convey support for or opposition to the candidate or measure as stated or implied in the campaign communication.

(b)  Definitions.  Whenever in this section the following words or phrases are used, they shall mean:

(1)  "Campaign advertisement" is any mailing, flyer, doorhanger, pamphlet, brochure, card, sign, billboard, facsimile, printed advertisement, broadcast, cable, satellite, radio, internet, or recorded telephone advertisement that refers to one or more clearly identified candidates or ballot measures.  The term "campaign advertisement" does not include:

(A)  bumper stickers, pins, stickers, hat bands, badges, ribbons and other similar campaign memorabilia;

(B)  news stories, commentaries or editorials distributed through any newspaper, radio, station, television station or other recognized news medium unless such news medium is owned or controlled by any political party, political committee or candidate; or

(C)  material distributed to all members, employees and shareholders of an organization, other than a political party;

(2)  "Internet advertisement" includes paid internet advertisements such as "banner" and "pop-up" advertisements, paid emails, or emails sent to addresses purchased from another person, and similar types of internet advertisements as defined by the Ethics Commission by regulation, but shall not include web blogs, listserves sent to persons who have contacted the sender, discussion forums, or general postings on web pages.

(3) "Sponsor" means to pay for, direct, supervise or authorize the production of campaign advertisement.

(c)  Enforcement and penalties.  The penalties under section 1.170(a) of this Chapter do not apply to violations of this section.  Notwithstanding the 60-day waiting period in section 1.168 of this Chapter, a voter may bring an action to enjoin a violation of this section immediately upon providing written notice to the City Attorney.  A court may enjoin a violation of this section only upon a showing of clear and convincing evidence of a violation.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)


SEC. 1.164. DUTIES OF ETHICS COMMISSION.

In addition to other duties required under the Charter and the terms of this Chapter, the Ethics Commission shall:

(a)  Prepare and publish written instructions explaining the duties of persons, candidates and committees under this Chapter.

(b)  Determine whether required statements and declarations have been filed with the Ethics Commission, and, if so, whether they conform on their face with the requirements of this Chapter.

(c)  Notify promptly all persons, candidates and committees known to the Ethics Commission who have failed to file a statement in the form and at the time required by State and local law.

(d)  Report apparent violations of this Chapter to the District Attorney.

(e)  Compile and maintain a current list of all statements or parts of statements filed with the Ethics Commission pertaining to each candidate and each measure.

(f)  Cooperate with the District Attorney and the City Attorney in the performance of their duties as they are related to this Chapter.

(g)  Enforce or cause to be enforced the provisions of this Chapter.

(h)  Prepare and publish adequate procedures to notify all persons, candidates and committees in advance relative to filing dates and forms required by State and local law. (Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.512; amended by Ord. 292-76, App. 7/17/76; Ord. 386-95, App. 12/14/95)

SEC. 1.166. DUTIES OF ENFORCEMENT AUTHORITY.

In addition to the other duties required of him or her under the provisions of this Chapter, the enforcement authority for civil enforcement shall review such campaign statements filed with the Ethics Commission as the Commission shall refer to him or her for legal compliance with the provisions of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000) (Derivation: Former Administrative Code Section 16.513; amended by Ord. 361-80, App. 8/5/80; Ord. 386-95, App. 12/14/95)

SEC. 1.168. ENFORCEMENT; ADVICE.

(a)  ENFORCEMENT--GENERAL PROVISIONS.

Any person who believes that a violation of this Chapter has occurred may file a complaint with the Ethics Commission, City Attorney or District Attorney. The Ethics Commission shall investigate such complaints pursuant to Charter Section C3.699-13 and its implementing regulations. The City Attorney and District Attorney shall investigate, and shall have such investigative powers as are necessary for the performance of their duties under this Chapter.

(b)  ENFORCEMENT--CIVIL ACTIONS.

The City Attorney, or any voter, may bring a civil action to enjoin violations of or compel compliance with the provisions of this Chapter.

No voter may commence an action under this Subsection without first providing written notice to the City Attorney of intent to commence an action. The notice shall include a statement of the grounds for believing a cause of action exists. The voter shall deliver the notice to the City Attorney at least sixty days in advance of filing an action. No voter may commence an action under this Subsection if the Ethics Commission has issued a finding of probable cause that the defendant violated the provisions of this Chapter, or if the City Attorney or District Attorney has commenced a civil or criminal action against the defendant, or if another voter has filed a civil action against the defendant under this Subsection.

A Court may award reasonable attorney's fees and costs to any voter who obtains injunctive relief under this Subsection. If the Court finds that an action brought by a voter under this Subsection is frivolous, the Court may award the defendant reasonable attorney's fees and costs.

(c)  STATUTE OF LIMITATIONS.

(1)  Criminal. Prosecution for violation of this Chapter must be commenced within four years after the date on which the violation occurred.

(2)  Civil. No civil action alleging a violation in connection with a campaign statement required under this Chapter shall be filed more than four years after an audit could begin,

or more than one year after the Executive Director submits to the Commission any report of any audit conducted of the alleged violator, whichever period is less. Any other civil action alleging a violation of any provision of this Chapter shall be filed no more than four years after the date on which the violation occurred.

(3)   Administrative. No administrative action alleging a violation of this Chapter and brought under Charter Section C3.699-13 shall be commenced more than five years after the date on which the violation occurred. The date on which the Commission forwards a complaint or information in its possession regarding an alleged violation to the District Attorney and City Attorney as required by Charter Section C3.699-13 shall constitute the commencement of the administrative action.

(4)   Collection of fines and penalties. A civil action brought to collect fines or penalties imposed under this Chapter shall be commenced within four years after the date on which the monetary penalty or fine was imposed. For purposes of this Section, a fine or penalty is imposed when a court or administrative agency has issued a final decision in an enforcement action imposing a fine or penalty for a violation of this Chapter or the Executive Director has made a final decision regarding the amount of a late fine or penalty imposed under this Chapter. The Executive Director does not make a final decision regarding the amount of a late fine or penalty imposed under this Chapter until the Executive Director has made a determination to accept or not accept any request to waive a late fine or penalty where such waiver is expressly authorized by statute, ordinance, or regulation.

(d)   ADVICE. Any person may request advice from the Ethics Commission or City Attorney with respect to any provision of this Chapter. The Ethics Commission shall provide advice pursuant to Charter Section C3.699-12. The City Attorney shall within 14 days of the receipt of said written request provide the advice in writing or advise the person who made the request that no opinion will be issued. The City Attorney shall send a copy of said request to the District Attorney upon its receipt. The City Attorney shall within nine days from the date of the receipt of said written request send a copy of his or her proposed opinion to the District Attorney. The District Attorney shall within four days inform the City Attorney whether he or she agrees with said advice, or state the basis for his or her disagreement with the proposed advice.

No person other than the City Attorney who acts in good faith on the advice of the City Attorney shall be subject to criminal or civil penalties for so acting; provided that, the material facts are stated in the request for advice and the acts complained of were committed in reliance on the advice.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered and amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006) (Derivation: Former Administrative Code Section 16.514; amended by Ord. 361-80, App. 8/5/80)

SEC. 1.170.  PENALTIES.

(a)   CRIMINAL.

Any person who knowingly or willfully violates any provision of this Chapter shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $5,000 for each violation or by imprisonment in the County jail for a period of not more than six months or by both such fine and imprisonment; provided, however, that

any willful or knowing failure to report contributions or expenditures done with intent to mislead or deceive or any willful or knowing violation of the provisions of Section 1.114 of this Chapter shall be punishable by a fine of not less than $5,000 for each violation or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 of this Chapter, or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140.5, whichever is greater.

(b)  CIVIL.

Any person who intentionally or negligently violates any of the provisions of this Chapter shall be liable in a civil action brought by the civil prosecutor for an amount up to $5,000 for each violation or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140.5, whichever is greater.

(c)  ADMINISTRATIVE.

Any person who intentionally or negligently violates any of the provisions of this Chapter shall be liable in an administrative proceeding before the Ethics Commission held pursuant to the Charter for an amount up to $5,000 for each violation, or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Section 1.114 or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140.5, whichever is greater.

(d)  LATE FILING FEES.

(1)  Fees for Late Paper Filings.  In addition to any other penalty, any person who files a paper copy of any statement or report after the deadline imposed by this Chapter shall be liable in the amount of ten dollars ($10) per day after the deadline until the statement is filed.

(2)  In addition to any other penalty, any person who files an electronic copy of a statement or report after the deadline imposed by this Chapter shall be liable in the amount of twenty-five dollars ($25) per day after the deadline until the electronic copy or report is filed.

(3)  Limitation on Liability.  Liability imposed by subsection (d)(1) shall not exceed the cumulative amount stated in the late statement or report, or one hundred dollars ($100), whichever is greater.  Liability imposed by subsection (d)(2) shall not exceed the cumulative amount stated in the late statement or report, or two hundred and fifty dollars ($250), whichever is greater.

(4)  Reduction or Waiver.  The Ethics Commission may reduce or waive a fee imposed by this subsection if the Commission determines that the late filing was not willful and that enforcement will not further the purposes of this Chapter.

(e)  MISUSE OF PUBLIC FUNDS.

Any person who willfully or knowingly uses public funds, paid pursuant to this Chapter, for any purpose other than the purposes authorized by this Chapter shall be subject to the penalties provided in this section.

(f)  PROVISION OF FALSE OR MISLEADING INFORMATION TO THE ETHICS COMMISSION; WITHHOLDING OF INFORMATION.

Any person who knowingly or willfully furnishes false or fraudulent evidence, documents, or information to the Ethics Commission under this Chapter, or misrepresents

any material fact, or conceals any evidence, documents, or information, or fails to furnish to the Ethics Commission any records, documents, or other information required to be provided under this Chapter shall be subject to the penalties provided in this section.

(g)   PERSONAL LIABILITY.

Candidates and treasurers are responsible for complying with this Chapter and may be held personally liable for violations by their committees.

(h)   JOINT AND SEVERAL LIABILITY.

If two or more persons are responsible for any violation of this Chapter, they shall be jointly and severally liable.

(i)   EFFECT OF VIOLATION ON OUTCOME OF ELECTION.

(1)   If a candidate is convicted of a violation of this Chapter at any time prior to his or her election, his or her candidacy shall be terminated immediately and he or she shall be no longer eligible for election, unless the court at the time of sentencing specifically determines that this provision shall not be applicable. No person convicted of a misdemeanor under this Chapter after his or her election shall be a candidate for any other City elective office for a period of five years following the date of the conviction unless the court shall at the time of sentencing specifically determine that this provision shall not be applicable.

(2)   If a candidate for Mayor is found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more at any time prior to his or her election, he or she is ineligible for election, unless the court specifically determines that this provision shall not be applicable. If feasible, the candidate's name shall be removed from the ballot. No candidate for Mayor who is found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more after his or her election shall be a candidate for any City elective office for a period of 5 years following the court's determination unless the court specifically determines that this provision shall not be applicable. The Ethics Commission may make a recommendation to the Board of Supervisors that a candidate found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more should be removed from office.

(3)   A plea of nolo contendere shall be deemed a conviction for purposes of this Section.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered and amended by Proposition O, 11/7/2000; Ord. 141-03, File No. 030034, App. 6/27/2003; Ord. 3-06, File No. 051439, App. 1/20/2006; Ord. 31-06, File No. 051773, App. 2/23/2006; Ord. 228-06, File No. 060501, App. 9/14/2006) (Derivation: Former Administrative Code Section 16.515; amended by Ord. 361-80, App. 8/5/80; Proposition N, 11/7/95)

SEC. 1.172.  EXTENSION OF DEADLINES THAT FALL ON WEEKENDS AND HOLIDAYS.

The Ethics Commission may, by regulation, extend any deadline imposed by this Chapter that falls on a Saturday, Sunday or holiday on which the Ethics Commission is authorized by law to close.

(Added by Ord. 228-06, File No. 060501, App. 9/14/2006)

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000); repealed by Ord. 141-03, File No. 030034, App. 6/27/2003; (Derivation: Former Administrative Code Section 16.516; amended by Ord. 361-80, App. 8/5/80)

SEC. 1.174. EFFECT OF VIOLATION ON CERTIFICATION OF ELECTION RESULTS.

The Director of Elections shall not issue any certificate of nomination or election to any candidate until all of the candidate's campaign declarations, statements, or reports required under State and local law have been filed.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000; amended by Ord. 141-03, File No. 030034, App. 6/27/2003) (Derivation: Former Administrative Code Section 16.517; amended by Ord. 114-76, App. 4/2/76)

SEC. 1.176. RULES OF CONSTRUCTION.

This Chapter shall be construed liberally in order to effectuate its purposes. No error, irregularity, informality, neglect or omission of any officer in any procedure taken under this Chapter which does not directly affect the jurisdiction of the Board of Supervisors or the City and County to control campaign contributions shall avoid the effect of this Chapter.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000) (Derivation: Former Administrative Code Section 16.518; amended by Ord. 114-76, App. 4/2/76)

SEC. 1.178. SEVERABILITY.

If any provision of this Chapter, or the application thereof to any person or circumstance, is held invalid, the validity of the remainder of the Chapter and the applicability of such provisions to other persons and circumstances shall not be affected thereby.

(Added by Ord. 71-00, File No. 000358, App. 4/28/2000; renumbered by Proposition O, 11/7/2000) (Derivation: Former Administrative Code Section 16.519; amended by Ord. 114-76, App. 4/2/76)

S:\C.F.R.O\CFRO text\update 10.16.06.doc

# EXHIBIT D

Title 3 MUNICIPAL ELECTIONS

## Chapter 3.12 THE CITY OF OAKLAND CAMPAIGN REFORM ACT*

Note to Chapter 3.12

Article I Findings and Purpose

3.12.010 Title.

3.12.020 Findings and declarations.

3.12.030 Purpose of this Act.

Article II Definitions

3.12.040 Interpretation of this Act.

Article III Contribution Limitations

3.12.050 Limitations on contributions from persons.

3.12.060 Limitations on contributions from broad-based political committees.

3.12.070 Return of contributions.

3.12.080 Aggregation of payments.

3.12.090 Loans.

3.12.100 Family contributions.

3.12.110 One campaign committee and one checking account per candidate for city office.

3.12.120 Money received by city officials and candidates treated as contributions, income or gifts.

3.12.130 Identification of contributor required.

3.12.140 Contractors doing business with the city of Oakland, the Oakland Redevelopment Agency or the Oakland Unified School District prohibited from making contributions.

3.12.150 Officeholder fund.

3.12.160 Allowance for donation of office space.

3.12.170 Legal expense funds.

3.12.180 Volunteer services exemption.

Article IV Expenditure Ceilings

3.12.190 Expenditure ceilings.

3.12.200 Amount of expenditure ceilings.

3.12.210 Time periods for expenditures.

3.12.220 Expenditure ceilings lifted.

Article V Independent Expenditures

3.12.230 Independent expenditures for mass mailings, state mailings or other campaign materials.

Article VI Agency Responsibility

3.12.240 Duties of the Public Ethics Commission.

3.12.250 Duties of the City Clerk.

Article VII Enforcement

3.12.260 Public Ethics Commission as enforcing body.

3.12.270 Criminal misdemeanor actions.

3.12.280 Enforcement actions.

3.12.290 Injunctive relief.

3.12.300 Cost of litigation.

3.12.310 Disqualification.

Article VIII Miscellaneous Provisions

3.12.320 Applicability of other laws.

3.12.330 Severability.

**Note to Chapter 3.12**

* Editor's Note: Per Ord. 11969, passed March 18, 1997, effective January 1, 1997, except to acts occurring on or before December 31, 1996, Chapter 3.12, the Oakland Campaign Reform Act, is suspended pending further legislative action by ordinance, by the Oakland City Council in response to pending legal challenges to Proposition 208, the California Political Reform Act of 1996. Chapter 3.12 will be automatically reinstated without legislative action by the Oakland City Council if Proposition 208 is enjoined in its entirety.
Prior ordinance history: Ords. 11612, 11874, 12043 and 12075.

**Article I Findings and Purpose**

**3.12.010 Title.**

This chapter shall be known as the city of Oakland Campaign Reform Act, hereinafter "the Act." (Ord.

12158 (part), 1999)

### 3.12.020 Findings and declarations.

The Oakland City Council finds and declares each of the following:
A. Monetary contributions to political campaigns are a legitimate form of participation in our political process, but the financial strength of certain individuals or organizations should not enable them to exercise a disproportionate or controlling influence on the election of candidates.
B. The rapidly increasing costs of political campaigns have forced many candidates to raise larger and larger percentages of money from interest groups with a specific financial stake in matters under consideration by city government. This has caused the public perception that votes are being improperly influenced by monetary contributions. This perception is undermining the credibility and integrity of the governmental process.
C. Candidates are raising less money in small contributions and more money in large individual and organizational contributions. This has created the public impression that the small contributor has an insignificant role to play in political campaigns.
D. High campaign costs are forcing officeholders to spend more time on fundraising and less time on the public's business. The constant pressure to raise contributions is distracting officeholders from urgent governmental matters.
E. Officeholders are responding to high campaign costs by raising larger amounts of money. This fundraising distracts them from important public matters, encourages contributions, which may have a corrupting influence, and gives incumbents an overwhelming and patently unfair fundraising advantage over potential challengers.
F. The integrity of the governmental process, the competitiveness of campaigns and public confidence in local officials are all diminishing. (Ord. 12158 (part), 1999)

### 3.12.030 Purpose of this Act.

The purpose of this Act is to accomplish the following:
A. To ensure that all individuals and interest groups in our city have a fair and equal opportunity to participate in elective and governmental processes.
B. To reduce the influence of large contributors with a specific financial stake in matters under consideration by the city, and to counter the perception that decisions are influenced more by the size of contributions than by the best interests of the people of Oakland.
C. To limit overall expenditures in campaigns, thereby reducing the pressure on candidates to raise large campaign war chests for defensive purposes, beyond the amount necessary to communicate reasonably with voters.
D. To reduce the advantage of incumbents and thus encourage competition for elective office.
E. To allow candidates and officeholders to spend a smaller proportion of their time on fundraising and a greater proportion of their time dealing with issues of importance to their constituents and the community.
F. To ensure that serious candidates are able to raise enough money to communicate their views and positions adequately to the public, thereby promoting public discussion of the important issues involved in political campaigns.
G. To help restore public trust in governmental and electoral institutions. (Ord. 12158 (part), 1999)

### Article II Definitions

### 3.12.040 Interpretation of this Act.

Unless the term is specifically defined in this Act or the contrary is stated or clearly appears from the context, the definitions set forth in Government Code Sections 81000 et seq., as they appear in 1998 shall govern the interpretation of this Act.
"Broad-based political committee" means a committee of persons which has been in existence for more than six months, receives contributions from one hundred (100) or more persons, and acting in concert makes contributions to five or more candidates.
"City offices" for the purposes of this Act include: Mayor, City Attorney, City Auditor, City Councilmembers and School Board Directors.

"Election" means any primary or general election held in the city of Oakland for city office. Primary and general elections are separate elections for purposes of this Act. The primary election period shall extend from January 1st of the first year of an election cycle up to and including March 30th of the fourth year of the election cycle, and the general election period shall extend from April 1st of the fourth year of the election cycle up to and including December 31st of the fourth year of the election cycle.

"Election cycle" means a four-year period preceding a term of office as defined by the Oakland City Charter, beginning on January 1st, and ending on December 31st of the fourth year thereafter.

"Person" means an individual, proprietorship, firm, partnership, joint venture, syndicate, business, trust, company, corporation, association, committee, and any other organization or group of persons acting in concert.

Qualified Campaign Expenditure.

1. "Qualified campaign expenditure" for candidates means and includes all of the following:

a. Any expenditure made by a candidate, officeholder or committee controlled by the candidate or officeholder, for the purpose of influencing or attempting to influence the actions of the voters for or against the election of any candidate for city office.

b. A nonmonetary contribution provided at the request of or with the approval of the candidate, officeholder or committee controlled by the candidate or officeholder.

2. "Qualified campaign expenditure" does not include any payment if it is clear from the surrounding circumstances that it was not made in any part for political purposes.

"Redevelopment Agency" means the Oakland Redevelopment Agency. (Ord. 12158 (part), 1999)

### Article III Contribution Limitations

#### 3.12.050 Limitations on contributions from persons.

A. No person shall make to any candidate for city office and the controlled committee of such a candidate, and no such candidate for city office and the candidate's controlled committee shall accept from any such person, a contribution or contributions totaling more than one hundred dollars ($100.00) for each election except as stated in subsection B of this section.

B. For candidates who adopt the expenditure ceilings as defined in Article IV of this Act, no person shall make to a candidate for city office and the controlled committee of such candidate, and no such candidate for city office and the controlled committee of such candidate shall accept contributions totaling more than five hundred dollars ($500.00) from any person for each election.

C. Any person who makes independent expenditures supporting or opposing a candidate for city office shall not accept any contribution for the purpose of influencing elections for city office in excess of the amounts stated in subsections A.

D. This section is not intended to prohibit or regulate contributions to persons or broad based political committees for the purpose of influencing elections for offices other than city offices.

E. Upon the effective date of the ordinance codified in this section, persons making independent expenditures supporting or opposing a candidate for city office shall separately account for contributions received and contributions or expenditures made for the purpose of influencing such elections for city office. Where a person has separately accounted for such contributions and expenditures for such elections for city office, contributors to that person may contribute more than the amount set forth in subsection A of this section, so long as no portion of the contribution in excess of the set forth amounts is used to influence elections for city office.

F. Candidates for city office shall not be held responsible for violations of this provision by any person.

G. Beginning January 1, 2001, the City Clerk shall once annually, on a calendar year basis, increase the contribution limitation amounts upon a finding that the cost of living in the immediate San Francisco Bay Area, as shown on the Consumer Price Index (CPI) for all items in the San Francisco Bay Area as published by the U.S. Department of Labor, Bureau of Statistics, has increased. The increase of the contribution limitation amounts shall not exceed the CPI increase, using 1999 as the index year. The adjustment shall be rounded to the nearest one hundred (100). The City Clerk shall publish the contribution limitation amounts no later than February 1st of each year. (Ord. 12260 § 1 (part), 2000: Ord. 12207 § 2, 2000; Ord. 12197 (part), 1999: Ord. 12158 (part), 1999)

#### 3.12.060 Limitations on contributions from broad-based political committees.

A. No broad-based political committee shall make to any candidate for city office and the controlled

committee of such a candidate, nor shall a candidate and the candidate's controlled committee accept from a broad-based political committee, a contribution or contributions totaling more than two hundred fifty dollars ($250.00) for each election except as stated in subsection B of this section.

B. For candidates who adopt the expenditure ceilings as defined in Article IV of this Act, no broad-based political committee shall make to any candidate for city office and the controlled committee of such candidate, nor shall a candidate and the candidate's controlled committee accept from a broad-based political committee, a contribution or contributions totaling more than one thousand dollars ($1,000.00) for each election.

C. Any broad-based political committee that makes independent expenditures supporting or opposing a candidate for city office shall not accept any contribution for the purpose of influencing elections for city office in excess of the amounts stated in subsection A of this section.

D. This section is not intended to prohibit or regulate contributions to persons or broad-based political committees for the purpose of influencing elections for offices other than city offices.

E. Upon the effective date of the ordinance codified in this section, a broad-based political committee making independent expenditures supporting or opposing a candidate for city office shall separately account for contributions received and contributions or expenditures made for the purpose of influencing such elections for city office. Where a broad-based political committee has separately accounted for such contributions and expenditures for such elections for city office, contributors to that broad-based political committee may contribute more than the amounts set forth in subsection A of this section, so long as no portion of the contribution in excess of the set forth amounts is used to influence elections for city office.

F. Candidates for city office shall not be held responsible for violations of this provision by any broad-based political committee.

G. Beginning January 1, 2001, the City Clerk shall once annually, on a calendar year basis, increase the contribution limitation amounts upon a finding that the cost of living in the immediate San Francisco Bay Area, as shown on the Consumer Price Index (CPI) for all items in the San Francisco Bay Area as published by the U.S. Department of Labor, Bureau of Statistics, has increased. The increase of the contribution limitation amounts shall not exceed the CPI increase, using 1999 as the index year. The adjustment shall be rounded to the nearest one hundred (100). The City Clerk shall publish the contribution limitation amounts no later than February 1st of each year. (Ord. 12260 § 1 (part), 2000: Ord. 12207 § 2, 2000; Ord. 12197 (part), 1999: Ord. 12158 (part), 1999)


### 3.12.070 Return of contributions.

A contribution shall not be considered received if it is not negotiated, deposited, or utilized, and in addition it is returned to the donor before the closing date of the campaign statement on which the contribution would otherwise be reported. In the case of a late contribution as defined in Government Code Section 82036, it shall not be deemed received if it is returned to the contributor within forty-eight (48) hours of receipt. (Ord. 12158 (part), 1999)


### 3.12.080 Aggregation of payments.

For purposes of the contribution limitations enumerated in this Act, the following shall apply:

A. All payments made by a person, committee or broad-based political committee whose contributions or expenditure activity is financed, maintained or controlled by any corporation, labor organization, association, political party or any other person, committee or broad based political committee, including any parent, subsidiary, branch, division, department or local unit of the corporation, labor organization, association, political party or any other person, or by any group of such persons shall be considered to be made by a single person, committee or broad based political committee.

B. Two or more entities shall be treated as one person when any of the following circumstances apply:

1. The entities share the majority of members of their boards of directors.
2. The entities share two or more officers.
3. The entities are owned or controlled by the same majority shareholder or shareholders.
4. The entities are in a parent-subsidiary relationship.

C. An individual and any general or limited partnership in which the individual has more than a fifty (50) percent share, or an individual and any corporation in which the individual owns a controlling interest (more than fifty (50) percent), shall be treated as one person.

D. No committee and no broad-based political committee which supports or opposes a candidate for office shall have as officers individuals who serve as officers on any other committee which supports

or opposes the same candidate. No such committee or broad-based political committee shall act in concert with, or solicit or make contributions on behalf of, any other committee or broad-based political committee. This subdivision shall not apply to treasurers of committees if these treasurers do not participate in or control in any way a decision on which a candidate or candidates receive contributions. (Ord. 12158 (part), 1999)

### 3.12.090 Loans.

A. A loan shall be considered a contribution from the maker and the guarantor of the loan and shall be subject to the contribution limitations of this Act.

B. Every loan to a candidate or the candidate's controlled committee shall be by written agreement and shall be filed with the candidate's or committee campaign statement on which the loan is first reported.

C. The proceeds of a loan made to a candidate by a commercial lending institution in the regular course of business on the same terms available to members of the public and which is secured or guaranteed shall not be subject to the contribution limitations of this Act.

D. Other than loans pursuant to subsection C of this section, extensions of credit in excess of one thousand five hundred dollars ($1,500.00) for a period of more than ninety (90) days are subject to the contribution limitations of this Act, unless the candidate can demonstrate good faith evidence of an intent to repay through a set payment schedule which is being adhered to through repayment of the extension of credit on a regular basis. (Ord. 12158 (part), 1999)

### 3.12.100 Family contributions.

A. Contributions by a husband and wife shall be treated as separate contributions and shall not be aggregated.

B. Contributions by children under eighteen (18) years of age shall be treated as contributions by their parents and attributed proportionately to each parent (one-half to each parent or the total amount to a single custodial parent). (Ord. 12158 (part), 1999)

### 3.12.110 One campaign committee and one checking account per candidate for city office.

A candidate for city office shall have no more than one campaign committee and one checking account for the city office being sought, out of which all expenditures for that office shall be made. This section should not prohibit the establishment of savings accounts, but no qualified campaign expenditures shall be made out of these accounts. (Ord. 12158 (part), 1999)

### 3.12.120 Money received by city officials and candidates treated as contributions, income or gifts.

Any funds received by any elected city official or candidate running in the jurisdiction or any committee controlled by such an official or candidate shall be considered either a campaign contribution, income or a gift. All campaign contributions received by such persons shall be subject to the provisions of this Act unless such campaign contributions are used exclusively for elections held outside the jurisdiction. All income and gifts shall be subject to the disqualification provisions of the Political Reform Act, Government Code Sections 87100 et seq. (Ord. 12158 (part), 1999)

### 3.12.130 Identification of contributor required.

No contribution of one hundred dollars ($100.00) or more shall be deposited into a campaign checking account of a candidate for city office unless the name, address, occupation, and employer of the contributor is on file in the records of the recipient of the contribution. (Ord. 12158 (part), 1999)

### 3.12.140 Contractors doing business with the city of Oakland, the Oakland Redevelopment Agency or the Oakland Unified School District prohibited from making contributions.

A. No person who contracts or proposes to contract with or who amends or proposes to amend such a contract with the city for the rendition of services, for the furnishing of any material, supplies, commodities or equipment to the city or for selling any land or building to the city or for purchasing any land or building from the city whenever the value of such transaction would require approval by the City Council shall make any contribution to the Mayor, a candidate for Mayor, a City Councilmember, a candidate for City Council, the City Attorney, a candidate for City Attorney, the City Auditor, a candidate for City Auditor, or committee controlled by such officeholder or candidate at any time between commencement of negotiations and either one hundred eighty (180) days after the completion of, or the termination of, negotiations for such contract.

B. No person who contracts or proposes to contract with or who amends or proposes to amend such a contract with the Redevelopment Agency for the rendition of services, for the furnishing of any material, supplies, commodities or equipment to the Redevelopment Agency or for selling any land or building to the Redevelopment Agency or for purchasing any land or building from the Redevelopment Agency, whenever the value of such transaction would require approval by the Redevelopment Agency, shall make any contribution to the Mayor, a candidate for Mayor, a City Councilmember, a candidate for City Council, the City Attorney, a candidate for City Attorney, the City Auditor, a candidate for City Auditor, or committee controlled by such officeholder or candidate at any time between commencement of negotiations and either one hundred eighty (180) days after the completion of, or the termination of, negotiations for such contract.

C. No person who contracts or proposes to contract with or who amends or proposes to amend such a contract with the Oakland School District, for the rendition of services, for the furnishing of any material, supplies, commodities or equipment to the School District or for selling any land or building to the School District or for purchasing any land or building from the School District whenever the value of such transaction would require approval the School Board, shall make any contribution to a School Board member, candidate for School Board Directors or committee controlled by such officeholder or candidate at any time between commencement of negotiations and either one hundred eighty (180) days after the completion of, or the termination of, negotiations for such contract.

D. "Services" means and includes labor, professional services, consulting services, or a combination of services and materials, supplies, commodities and equipment which shall include public works projects.

E. For contributions to city officers other than School Board Directors, transactions that require approval by the City Council or Redevelopment Agency include but are not limited to:

1. Contracts for the procurement of services that are professional or consulting services exceeding fifteen thousand dollars ($15,000.00).

2. Contracts for the procurement of services exceeding fifty thousand dollars ($50,000.00), other than contracts for professional or consulting services.

3. Contracts for the furnishing of any materials, supplies, commodities or equipment exceeding fifty thousand dollars ($50,000.00).

4. Contracts for the sale of any building or land to or from the city or the Redevelopment Agency.

5. Amendments to contracts described in subsections (E)(1), (2), (3), and (4) of this section.

F. For contributions to School Board Directors, transactions that require approval by the School Board include but are not limited to:

1. Professional services and consulting contracts exceeding twenty-five thousand dollars ($25,000.00), including personal service agreements.

2. Contracts requiring School Board approval under Public Contract Code Section 20111.

3. Construction contracts exceeding twenty-five thousand dollars ($25,000.00) whether or not they are subject to the provisions of the Public Contract Code.

4. Contracts for the sale of any building or land to or from the School District.

5. Amendments to contracts described in subsections (F)(1), (2), (3), and (4) of this section.

G. "Commencement of negotiations" for city contracts occurs when a contractor or contractor's agent formally submits a bid, proposal, qualifications or contract amendment to any elected or appointed city officer or employee or when any elected or appointed city officer or employee formally proposes submission of a bid, proposal, qualifications or contract amendment from a contractor or contractor's agent.

H. "Commencement of negotiations" for Redevelopment Agency contracts occurs when a contractor or contractor's agent formally submits a bid, proposal, qualifications or contract amendment to any elected or appointed Redevelopment Agency officer or employee or when any elected or appointed Redevelopment Agency officer or employee formally proposes submission of a bid, proposal, qualifications or contract amendment from a contractor or contractor's agent.

I. "Commencement of negotiations" for Oakland School District contracts occurs when a contractor or contractor's agent formally submits a bid, proposal, qualifications or contract amendment to any

elected or appointed School District officer or employee or when any elected or appointed School District officer or employee formally proposes submission of a bid, proposal, qualifications or contract amendment from a contractor or contractor's agent.

J. "Commencement of negotiations" does not include unsolicited receipt of proposal or contract information or documents related to them, requests to be placed on mailing lists or routine inquiries for information about a particular contract, request for proposal or any information or documents relating to them or attendance at an informational meeting.

K. "Completion of negotiations" occurs when the city, the Redevelopment Agency or the School District executes the contract or amendment.

L. "Termination of negotiations" occurs when the contract or amendment is not awarded to the contractor or when the contractor files a written withdrawal from the negotiations, which is accepted by an appointed or elected City officer, Redevelopment Agency officer, City employee or Redevelopment Agency employee or an appointed or elected School District officer or employee.

M. The Oakland City Manager shall be responsible for implementing procedures for City of Oakland and Redevelopment Agency contracts to ensure contractor compliance with the Oakland Campaign Reform Act. A proposed or current contractor must sign and date the following statement at the time the contractor formally submits a bid, proposal, qualifications or contract amendment:

The Oakland Campaign Reform Act limits campaign contributions and prohibits contributions from contractors doing business with the City of Oakland, the Oakland Redevelopment Agency or the Oakland Unified School District during specified time periods. Violators are subject to civil and criminal penalties.

I have read Oakland Municipal Code Chapter 3.12, including section 3.12.140, the contractor provisions of the Oakland Campaign Reform Act, and certify that I/we have not knowingly, nor will I/we make contributions prohibited by the Act.

Business Name
_____
Date
_____
Signature
_____

The signed and dated statement must be received and filed by the City Clerk at the same time the proposal is submitted. Contracts may not be awarded to any contractors who have not signed this certification. The City Clerk shall keep an updated list of current contractors available for inspection.

N. The Oakland Superintendent of Schools shall be responsible for implementing procedures for Oakland School District contracts to ensure contractor compliance with the Oakland Campaign Reform Act. A proposed or current contractor must sign and date the following statement at the time the contractor formally submits a bid, proposal, qualifications or contract amendment:

The Oakland Campaign Reform Act limits campaign contributions and prohibits contributions from contractors doing business with the City of Oakland, the Oakland Redevelopment Agency or the Oakland Unified School District during specified time periods. Violators are subject to civil and criminal penalties.

I have read Oakland Municipal Code Chapter 3.12, including section 3.12.140, the contractor provisions of the Oakland Campaign Reform Act, and certify that I/we have not knowingly, nor will I/we make contributions prohibited by the Act.

Business Name
_____
Date
_____
Signature
_____

The signed and dated statement must be received and filed with the School District at the same time the proposal is submitted. Contracts may not be awarded to any contractors who have not signed this certification. The School District shall keep an updated list of current contractors available for inspection.

O. A person who contracts with the City, the Redevelopment Agency or the School District for the

rendition of services, for the furnishing of any material, supplies, commodities or equipment to the City, the Redevelopment Agency or the School District, or for selling any land or building to the City, the Redevelopment Agency or the School District or for purchasing any land or building from the Redevelopment Agency or the School District, whenever the value of such transaction would require approval by the City Council, the Redevelopment Agency or the School Board, and who violates subsection A of this section, shall be subject to the enforcement provisions of Article VII of this Act.

P. Elected city officeholders, candidates for city office and their controlled committees shall include a notice on all campaign fundraising materials equivalent to eight point roman boldface type, which shall be in a color or print which contrasts with the background so as to be easily legible, and in a printed or drawn box and set apart from any other printed matter. The notice shall consist of the following statement:

The Oakland Campaign Reform Act limits campaign contributions by all persons (OMC §§ 3.12.050 and 3.12.060) and prohibits contributions during specified time periods from contractors doing business with the City of Oakland, the Oakland Redevelopment Agency or the Oakland Unified School District (OMC § 3.12.140, paragraphs A., B., and C.).

(Ord. 12158 (part), 1999)

## 3.12.150 Officeholder fund.

A. Every elected city officeholder shall be permitted to establish one officeholder expense fund. All contributions deposited into the officeholder expense fund shall be deemed to be held in trust for expenses associated with holding the office currently held by the elected city officer. Contributions to the officeholder fund must be made by a separate check or other separate written instrument. Single contributions may not be divided between the officeholder fund and any other candidate committee. For District Councilmembers, City Auditor and School Board Directors total contributions to an officeholder fund shall not exceed twenty-five thousand dollars ($25,000.00) per year in office. For Councilmember-At-Large and City Attorney, total contributions to an officeholder fund shall not exceed thirty thousand dollars ($30,000.00) per year in office. For the office of the Mayor, total contributions to an officeholder fund shall not exceed fifty thousand dollars ($50,000.00) per year in office.

B. Expenditures from an officeholder fund may be made for any political, governmental or other lawful purpose, but may not be used for any of the purposes prohibited in subsection (C)(1) through (5) of this section. Such allowable expenditures shall include, but are not limited to the following categories:

1. Expenditures for fundraising (including solicitations by mail) for the officeholder expense fund;
2. Expenditures for office equipment, furnishings and office supplies;
3. Expenditures for office rent;
4. Expenditures for salaries of part-time or full-time staff employed by the officeholder for officeholder activities;
5. Expenditures for consulting, research, polling, photographic or similar services except for campaign expenditures for any city, county, regional, state or federal elective office;
6. Expenditures for conferences, meetings, receptions, and events attended in the performance of government duties by (1) the officeholder (2) a member of the officeholder's staff; or (3) such other person designated by the officeholder who is authorized to perform such government duties;
7. Expenditures for travel, including lodging, meals and other related disbursements, incurred in the performance of governmental duties by (1) the officeholder, (2) a member of the officeholder's staff, (3) such other person designated by the officeholder who is authorized to perform such government duties, or a member of such person's household accompanying the person on such travel;
8. Expenditures for meals and entertainment directly preceding, during or following a governmental or legislative activity;
9. Expenditures for donations to tax-exempt educational institutions or tax exempt charitable, civic or service organizations, including the purchase of tickets to charitable or civic events, where no substantial part of the proceeds will have a material financial effect on the elected officer, any member of his or her immediate family, or his or her committee treasurer;
10. Expenditures for memberships to civic, service or professional organizations, if such membership bears a reasonable relationship to a governmental, legislative or political purpose;
11. Expenditures for an educational course or educational seminar if the course or seminar maintains or improves skills which are employed by the officeholder or a member of the officeholder's staff in the performance of his or her governmental responsibilities;
12. Expenditures for advertisements in programs, books, testimonials, souvenir books, or other

publications if the advertisement does not support or oppose the nominations or election of a candidate for city, county, regional, state or federal elective office;

13. Expenditures for mailing to persons within the city which provide information related to city-sponsored events, school district-sponsored events, an official's governmental duties or an official's position on a particular matter pending before the Council, Mayor, or School Board;

14. Expenditures for expressions of congratulations, appreciation or condolences sent to constituents, employees, governmental officials, or other persons with whom the officeholder communicates in his or her official capacity;

15. Expenditures for payment of tax liabilities incurred as a result of authorized officeholder expense fund transactions;

16. Expenditures for accounting, professional and administrative services provided to the officeholder fund;

17. Expenditures for ballot measures.

C. Officeholder expense funds shall not be used for the following:

1. Expenditures in connection with a future election for any city, county, regional, state or federal elective office;

2. Expenditures for campaign consulting, research, polling, photographic or similar services for election to city, county, regional, state or federal elective office;

3. Membership in any athletic, social, fraternal, veteran or religious organization;

4. Supplemental compensation for employees for performance of an act which would be required or expected of the person in the regular course or hours of his or her duties as a city official or employee;

5. Any expenditure that would violate the provisions the California State Political Reform Act, including Government Code Sections 89506 and 89512 through 89519.

D. No funds may be transferred from the officeholder fund of an elected city officeholder to any other candidate committee.

E. Annual contributions received by or made to the officeholder fund shall be subject to the contribution limitations of Article III of this Act.

F. Expenditures made from the officeholder fund shall not be subject to the voluntary expenditure ceilings of Article IV of this Act. (Ord. 12158 (part), 1999)


## 3.12.160 Allowance for donation of office space.

A. Donation of office space for use by city officeholders in furtherance of their duties and responsibilities by a person or broad based political committee shall not be considered a campaign contribution subject to the provisions of this Act, provided that:

1. The donation is made to the City and accepted pursuant to Oakland City Charter Section 1203 for use by the Mayor, City Councilmembers, City Attorney or City Auditor or in the case of School Board Directors, the donation is made to the Oakland Unified School District; and

2. The name, address, employer, and occupation of the donor, and the current market value of the donated office space, are provided to the City Clerk.

B. Use of office space donated pursuant to this section by a city officeholder shall not be considered a "qualified campaign expenditure" pursuant to Section 3.12.040 of this Act. (Ord. 12158 (part), 1999)


## 3.12.170 Legal expense funds.

A. An elected city officeholder or candidate for city office may receive contributions for a separate legal expense fund, for deposit into a separate account, to be used solely to defray attorney's fees and other legal costs incurred in the candidate's or officeholder's legal defense to any civil, criminal, or administrative action or actions arising directly out of the conduct of the campaign or election process, or the performance of the candidate's or officeholder's governmental activities and duties. Contributions to the legal expense fund must be earmarked by the contributor for contribution to the fund at the time the contribution is made. All funds contributed to an officeholder or candidate for legal expense fund must be deposited into the officeholder's appropriate campaign bank account prior to being deposited into the legal expense fund. The legal expense fund may be in the form of a certificate of deposit, interest-bearing savings account, money market account, or similar account, which shall be established only for the legal expense fund.

B. Contributions received by or made to the legal expense fund shall not be subject to the contribution limitations of Article III of this Act.

C. Expenditures made from the legal expense fund shall not be subject to the voluntary expenditure

ceilings of Article IV of this Act. (Ord. 12158 (part), 1999)

### 3.12.180 Volunteer services exemption.

Volunteer personal services, and payments made by an individual for his or her own travel expenses if such payments are made voluntarily without any understanding or agreement that they shall be directly or indirectly repaid to him or her, are not contributions or expenditures subject to this Act. (Ord. 12158 (part), 1999)

## Article IV Expenditure Ceilings

### 3.12.190 Expenditure ceilings.

All candidates for city office who adopt campaign expenditure ceilings as defined below are permitted the higher contribution limit as defined in Sections 3.12.050C and 3.12.060C of this Act. Before accepting any contributions at the higher contribution limit, candidates who adopt voluntary expenditure ceilings must first file a statement with the City Clerk on a form approved for such purpose indicating acceptance of the expenditure ceiling. Said statement shall be filed no later than the time for filing for candidacy with the City Clerk. This statement will be made public. (Ord. 12158 (part), 1999)

### 3.12.200 Amount of expenditure ceilings.

A candidate for office of Mayor who voluntarily agrees to expenditure ceilings shall not make qualified expenditures exceeding seventy cents ($.70) per resident for each election in which the candidate is seeking elective office. A candidate for other citywide offices who voluntarily agrees to expenditure ceilings shall not make qualified expenditures exceeding fifty cents ($.50) per resident for each election in which the candidate is seeking office. A candidate for District City Councilmember who voluntarily agrees to expenditure ceilings shall not make qualified expenditures exceeding one dollar and fifty cents ($1.50) per resident in the electoral district for each election in which the candidate is seeking elective office. A candidate for School Board Director who voluntarily agrees to expenditure ceilings shall not make qualified campaign expenditures exceeding one dollar ($1.00) per resident for each election in the electoral district for each election for which the candidate is seeking office. Residency of each electoral district shall be determined by the latest decennial census population figures available for that district.
Beginning in 1999, the City Clerk shall once annually on a calendar year basis increase the expenditure ceiling amounts upon a finding that the cost of living in the immediate San Francisco Bay Area, as shown on the Consumer Price Index (CPI) for all items in the San Francisco Bay Area as published by the U.S. Department of Labor, Bureau of Statistics, has increased. The increase of the expenditure ceiling amounts shall not exceed the CPI increase, using 1998 as the index year. The increase shall be rounded to the nearest thousand. The City Clerk shall publish the expenditure ceiling amounts no later than February 1st of each year. (Ord. 12197 (part), 1999: Ord. 12158 (part), 1999)

### 3.12.210 Time periods for expenditures.

For purposes of the expenditure ceilings, qualified campaign expenditures made at any time on or before March 31st of the election year shall be considered primary election expenditures, and qualified campaign expenditures made from April 1st until December 31st of the election year shall be considered general election expenditures. However, in the event that payments are made but the goods or services are not used during the period purchased, the payments shall be considered qualified campaign expenditures for the time period in which they are used. Payments for goods or services used in both time periods shall be prorated. (Ord. 12158 (part), 1999)

### 3.12.220 Expenditure ceilings lifted.

If a candidate declines to accept expenditure ceilings and receives contributions or make qualified campaign expenditures equal to fifty (50) percent or more of the expenditure ceiling, or if an independent expenditure committee in the aggregate spends more than fifteen thousand dollars

($15,000.00) on a District City Council or School Board election or seventy thousand dollars ($70,000.00) in a City Attorney, Auditor, Councilmember-at-Large or Mayoral election, the applicable expenditure ceiling shall no longer be binding on any candidate running for the same office, and any candidate running for the same office who accepted expenditure ceilings shall be permitted to continue receiving contributions at the amounts set for such candidates in Sections 3.12.050C and 3.12.060C of this Act. The independent expenditure committee amounts of fifteen thousand dollars ($15,000.00) and seventy thousand dollars ($70,000.00) respectively, shall be increased in proportion to any increase of the voluntary expenditure ceiling amounts resulting from an increase in the CPI as provided by Section 3.12.180 of this chapter. (Ord. 12158 (part), 1999)

## Article V Independent Expenditures

### 3.12.230 Independent expenditures for mass mailings, state mailings or other campaign materials.

Any person who makes independent expenditures for a mass mailing, slate mailing or other campaign materials which support or oppose any candidate for city office shall place the following statement on the mailing in typeface of no smaller than fourteen points:

**Notice to Voters**
**(Required by the City of Oakland)**

This mailing is not authorized or approved by any City candidate or election official.
It is paid for by

_____
(name)

_____
(address, city, state)

Total cost of this mailing is:

_____
(amount)

(Ord. 12158 (part), 1999)

## Article VI Agency Responsibility

### 3.12.240 Duties of the Public Ethics Commission.

The Public Ethics Commission shall:
A. Oversee compliance with the Act.
B. Propose necessary regulations in furtherance of this Act subject to City Council approval. (Ord. 12158 (part), 1999)

### 3.12.250 Duties of the City Clerk.

The City Clerk shall prescribe the necessary forms for filing the appropriate statements. (Ord. 12158 (part), 1999)

## Article VII Enforcement

### 3.12.260 Public Ethics Commission as enforcing body.

The Public Ethics Commission is the sole body for civil enforcement of this Act. In the event criminal violations of the Act come to the attention of the Public Ethics Commission, the commission shall promptly advise in writing the City Attorney and the appropriate prosecuting enforcement agency.

(Ord. 12158 (part), 1999)

### 3.12.270 Criminal misdemeanor actions.

Any person who knowingly or willfully violates Articles III, IV, or V of this Act is guilty of a misdemeanor. Any person who knowingly or wilfully causes any other person to violate any provision

of the Act, or who knowingly or wilfully aids and abets any other person in violation of any provision of this Act, shall be liable under the provisions of this section. Prosecution for violation of any provision of this Act shall be commenced within four years after the date on which the violation occurred. (Ord. 12158 (part), 1999)

### 3.12.280 Enforcement actions.

A. Any person who intentionally or negligently violates Articles III, IV or V of this Act is subject to enforcement proceedings before the Public Ethics Commission pursuant to the Public Ethics Commission General Rules of Procedure.
B. If two or more persons are responsible for any violation, they shall be jointly and severally liable.
C. Any person alleging a violation of Articles III, IV or V of this Act shall first file with the Public Ethics Commission a written complaint on a form approved for such purpose. The complaint shall contain a statement of the grounds for believing a violation has occurred. The Commission shall respond within ninety (90) days after receipt of the complaint indicating whether there is probable cause to conduct a hearing and whether mediation will be undertaken.
D. If mediation is not undertaken, if any party refuses mediation, or if mediation is unsuccessful in resolving the issues raised in the complaint, the Commission may within ninety (90) days thereafter convene a hearing. The Commission has full authority to settle any action filed by or on behalf of the Commission in the interest of justice.
E. If the Commission determines a violation has occurred, the Commission is hereby authorized to administer appropriate penalties and fines not to exceed three times the amount of the unlawful contribution or expenditure.
F. No complaint alleging a violation of any provision of this Act shall be filed more than two years after the date the violation occurred. (Ord. 12158 (part), 1999)

### 3.12.290 Injunctive relief.

The Public Ethics Commission may sue for injunctive relief to enjoin violations or to compel compliance with the provisions of this Act. (Ord. 12158 (part), 1999)

### 3.12.300 Cost of litigation.

The court may award to a complainant or respondent who prevails in any action for injunctive relief, his or her costs of litigation, including reasonable attorney's fees. (Ord. 12158 (part), 1999)

### 3.12.310 Disqualification.

In addition to any other penalties prescribed by law, if an official receives a contribution in violation of Sections 3.12.050 and 3.12.060, the official shall not be permitted to make, participate in making or in any way attempt to use his or her official position to influence a governmental decision in which the contributor has a financial interest. The provisions of Government Code Sections 87100 et seq. and the regulations of the Fair Political Practices Commission shall apply to interpretations of this section. (Ord. 12158 (part), 1999)

### Article VIII Miscellaneous Provisions

### 3.12.320 Applicability of other laws.

Nothing in this Act shall exempt any person from applicable provisions of any other laws of this state or jurisdiction. (Ord. 12158 (part), 1999)

### 3.12.330 Severability.

If any provision of this Act, or the application of any such provision to any person or circumstances, shall be held invalid, the remainder of this Act to the extent it can be given effect, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby, and to this extent the provisions of this Act are severable. (Ord. 12158 (part), 1999)

<< previous | next >>

# EXHIBIT E

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OAKPAC, OAKLAND METROPOLITAN CHAMBER OF COMMERCE, an unincorporated association, OAKLAND METROPOLITAN CHAMBER OF COMMERCE INDEPENDENT EXPENDITURE COMMITTEE ("OAK-IE-PAC"), an unincorporated association; MICHAEL COLBRUNO, an individual; and SCOTT B. PETERSON, an individual;<br><br>       Plaintiffs,<br><br>       v.<br><br>THE CITY OF OAKLAND; THE CITY OF OAKLAND PUBLIC ETHICS COMMISSION; DOES 1 through 10.<br><br>       Defendants. | Case No. C 06-6366<br><br>**TEMPORARY RESTRAINING ORDER** |

The application of Plaintiffs OakPAC, Oakland Metropolitan Chamber of Commerce ("OakPAC"), Oakland Metropolitan Chamber of Commerce Independent Expenditure Committee ("Oak-IE-PAC"), Michael Colbruno, and Scott Peterson for a Temporary Restraining Order to prevent Defendants the City of Oakland ("City") and the City of Oakland Public Ethics Commission ("Commission") during the pendency of this litigation from enforcing its ordinance restricting contributions to persons and broad

1

based committees making independent expenditures and thereby infringing their First Amendment rights of speech and association has duly been considered by this Court. Proper notice pursuant to Local Rule 65-1(b) was provided to Defendants.  The Court reviewed pleadings submitted by the parties, and all parties were heard at the hearing. Having considered all the arguments, and good cause appearing, the Court **GRANTS** Plaintiffs' Temporary Restraining Order and Defendants are accordingly enjoined from enforcing the limitations set forth in Oakland Municipal Code ("OMC") sections 3.12.050(C-E) and 3.12.060 (C-E).

The Court's conclusion is based on the following findings:

1.    Plaintiffs have demonstrated a substantial likelihood of success on the merits of their First Amendment challenge to OMC sections 3.12.050(C-E) and 3.12.060(C-E). By law, independent expenditures can not be coordinated with candidates benefitting from the expenditures.  (California Government Code ["GC"]) sections 82031 and 85500.)  Under these restrictions, when making independent expenditures, Plaintiffs can not consult with, interact with, or otherwise coordinate its independent expenditure communications with the benefitting candidate and/or his or her agents.

2.  OCRA's limits on contributions to independent political committees are triggered only by the content of the speech conducted by the committee, *i.e.*, speech expressly advocating the election or defeat of a candidate.  (*See* OMC sections 3.12.050(C) & 3.12.060(C); Cal. Govt. Code section 82031.)  By limiting the source of funds available for political committees to conduct independent expenditures, OCRA's challenged provisions act as both a limit on contributions to the committee and as a limit on its expenditures.  *See Lincoln Club v. City of Irvine*, 292 F.3d 934, 939 (9th Cir. 2002).

3.    As both the Ninth Circuit and this District have recognized, expenditure regulations impinge upon the "quantity of expression" that the Supreme Court sought to protect in *Buckley v. Valeo*, 424 U.S. 1, 21 (1976).  The City's ordinance thus has the effect of "restricting the number of issues discussed, the depth of their exploration, and

---

2

1   the size of the audience reached." *Id*. at 19.  In such instances, courts apply strict scrutiny

2   to assess the constitutionality of the regulation.  *See Lincoln Club*, 292 F.3d at 937-939.

3   The City, however, argues that pursuant to footnote 48 in *McConnell v. Federal Election*

4   *Commission*, 540 U.S. 93, 152 n.48 (2003), which discussed *California Medical*

5   *Association v. Federal Election Commission*, 453 U.S. 182 (1981), the Court should

6   apply a lesser level of scrutiny.  The Court, however, is unpersuaded by the City's reading

7   of these decisions and finds no basis in the language the City cites to support application

8   of a lesser level of scrutiny.  Particularly, the Court finds *McConnell* distinguishable, in

9   that, the contribution regulations at issue in that case did not impinge on core First

10  Amendment interests, like the municipal ordinances at issue here.  Moreover, the focus in

11  *McConnell* was on contribution limits and the connection between contributors, national

12  party committees receiving contributions, and those holding federal office.  On this

13  record, there is no evidence of such a nexus between the Plaintiffs and their expenditures

14  and the municipal candidates.  The Court therefore concludes that the appropriate

15  standard of review for the City's ordinance is strict scrutiny.  Accordingly, the City's

16  ordinance must be narrowly tailored to serve a compelling government interest.

17      4.    Under strict scrutiny, OMC sections 3.12.050(C-E) and 3.12.060(C-E) do not

18  serve a compelling governmental interest.  The only government interest proffered by

19  Defendant is preventing the corruption of candidates for public office, or the appearance

20  of corruption.  However, because independent expenditures must be conducted without

21  the input or knowledge of the benefitting candidate, the Court finds no basis in the record

22  before it to support limits on contributions to independent expenditure committees under

23  the anti-corruption rationale.

24      5.    Based on the arguments presented by the parties, the Court finds that

25  Plaintiffs have no adequate remedy at law to secure the rights to speech secured to them

26  by the First Amendment.  Unless this court enjoins Defendants from enforcing OMC

27  sections 3.12.050(C-E) and 3.12.060(C-E), Plaintiffs and other persons who desire to

28

3

[PROPOSED] TEMPORARY RESTRAINING ORDER

1  exercise their rights of speech and association in the November 7, 2006 election, but are

2  limited in doing so, will be irreparably damaged.  In fact, "the loss of First Amendment

3  freedoms, for even minimal periods of time, unquestionably constitutes irreparable

4  injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

5     5.   Because OMC sections 3.12.050(C-E) and 3.12.060(C-E) have the practical

6  effect of limiting the amount of independent expenditures that can be made and

7  interfering with the ability of like-minded persons to support their political views, these

8  harms to Plaintiffs' expressive and associational freedoms far outweigh any potential

9  harm to the City.

10     For these reasons, the Court finds granting Plaintiffs' Request for a Temporary

11  Restraining Order appropriate.  Under Federal Rule of Civil Procedure 65(c), parties

12  seeking injunctive relief are required to post bond with the Court, "in such sum as the

13  court deems proper."  "In noncommercial cases, however, courts should consider the

14  hardship a bond requirement would impose on the party seeking the injunction in addition

15  to the expenses the enjoined party may incur as a result of the injunction."  *Cupolo v. Bay

16  Area Rapid Transit*, 5 F. Supp.2d 1078, 1086 (N.D. Cal. 1997).)  The Court may waive

17  the bond requirement altogether when "the balance of equities weighs overwhelmingly in

18  favor of the party seeking the injunction."  *Id.*  This is a non-commercial case posing

19  absolutely no risk of any added expense for the City as a result of the injunction.  In

20  contrast, the financial hardship imposed on Plaintiffs by a bond requirement is severe.

21  Here, any bond requirement would only further impede Plaintiffs' ability to conduct the

22  political advocacy forming the basis for their request for injunctive relief.  Because a

23  bond requirement would present an severe financial burden, the Court **GRANTS**

24  Plaintiffs' request that the Court exercise its discretion to waive such a requirement.

25  / / /

26  / / /

27  / / /

28

[PROPOSED] TEMPORARY RESTRAINING ORDER

1    In sum, this Court **GRANTS** Plaintiffs' Application for a Temporary Restraining

2    Order.  Together with its officers, agents, servants, employees, attorneys, and those

3    persons in active concert or participating with them who receive actual notice of this

4    Order, Defendants the City and the Commission are hereby enjoined from enforcing

5    OMC sections 3.12.050(C-E) and 3.12.060(C-E).  This Temporary Restraining Order

6    shall remain in effect until <u>November 2, 2006,</u> or until dissolved by further order of this

7    Court.

8    **IT IS SO ORDERED.**

9

10    Dated: 10/19/2006                    By:  _____

                                           Martin J. Jenkins

11                                          United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

5

# EXHIBIT F

1   JOHN A. RUSSO - State Bar #129729
    BARBARA J. PARKER Assistant City Attorney- State Bar #069722
2   MARK T. MORODOMI, Deputy City Attorney- State Bar #120914
    One Frank H. Ogawa Plaza, 6th Floor
3   Oakland, California  94612
    Telephone:  (510) 238-6101          Fax:  (510) 238-6500
4   Email: mmorodomi@oaklandcityattorney.org
    X02940/392064
5
    Attorneys for
6   CITY OF OAKLAND and CITY OF OAKLAND
    PUBLIC ETHICS COMMISSION
7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10  OAKPAC, OAKLAND METROPOLITAN          Case No. CV 06-06366MJJ
    CHAMBER OF COMMERCE, an
11  unincorporated association,           **STIPULATED STAY ORDER**
    OAKLAND METROPOLITAN CHAMBER
12  OF COMMERCE INDEPENDENT                 GRANTED
    EXPENDITURE COMMITTEE ("OAK-IE-
13  PAC"), an unincorporated association;
    MICHAEL COLBRUNO, an individual; and
14  SCOTT B. PETERSON, an individual,

15              Plaintiffs,

16        v.

17  THE CITY OF OAKLAND;
    THE CITY OF OAKLAND PUBLIC ETHICS
18  COMMISSION;
    DOES 1 TO 10,
19
                Defendants.
20

21                        **STIPULATION**

22        Plaintiffs OakPAC, Oakland Metropolitan Chamber of Commerce, Oakland

23  Metropolitan Chamber of Commerce Independent Expenditure Committee, Michael

24  Colbruno, and Scott Peterson, on the one hand, and Defendants City of Oakland ("City")

25  and the City of Oakland Public Ethics Commission ("Commission"), on the other hand, by

26  and through their respective counsel, hereby stipulate to the following stay order.

                                    -1-

1

2 **SO STIPULATED**

3

Dated: December 12, 2006                By: _____/s/_____

4                                             Gabe Camarillo

5                                             The Sutton Law Firm, P.C.
                                              Attorneys for Plaintiffs

6

Dated: December 12, 2006                By: _____/s/_____

7                                             Mark T. Morodomi, Supervising Deputy City
                                              Attorney

8                                             Attorney for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATED STAY ORDER                                                    CV 06-06366MJJ

**ORDER**

1.     The Court takes judicial notice of the appeal in *San Jose Silicon Valley Chamber of Commerce Political Action Committee, COMPAC ISSUES FUND v. The City of San Jose; San Jose Elections Commission*, District Court Number: CV-06-04252-JW, USCA Docket #06-17001.

2.     All proceedings in this action are hereby stayed.

3.     The Case Management Conference currently set for January 23, 2007, is continued until the lifting of this stay.

4.     The Court shall schedule a status conference on July _24_, 2007 at 2:00 P.M., to determine further proceedings in this case, including lifting of the stay.

5.     Pursuant to an agreement of the parties, commencing December 13, 2006, and during the pendency of this stay, Defendants the City and the Commission together with their officers, agents, servants, employees, attorneys, and those persons in active concert or participating with them shall not enforce Oakland Municipal Code sections 3.12.050 (C-E) and 3.12.060 (C-E).

**IT IS SO ORDERED.**

Dated: _12/18/2006_      By: _____
                                   Martin J. Jenkins
                                   United States District Judge

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

San Jose Silicon Valley Chamber of
Commerce Political Action Committee, et al.,

               Plaintiffs,

  v.

The City of San Jose, et al.,

               Defendants.

_____/

NO. C 06-04252 JW

**ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiffs, San Jose Silicon Valley Chamber of Commerce Political Action Committee and COMPAC Issues Fund, sponsored by the Silicon Valley Chamber of Commerce (collectively, "COMPAC,") have filed this action against the City of San Jose, the San Jose Elections Commission, (collectively, "Defendants,") under 42 U.S.C. § 1983, claiming that San Jose Municipal Code Section 12.06.310 violates the First and Fourteenth Amendments both facially and as-applied.   Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  The Court conducted a hearing on September 18, 2006.  Based upon the papers submitted to date and the oral arguments of counsel, the Court GRANTS COMPAC's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

## II.  BACKGROUND

The parties have jointly stipulated to the following facts:

Beginning on May 16, 2006, COMPAC distributed to San Jose residents six versions of mailers and one version of telephone messages relating to recent events in San Jose.  (Stipulated Facts and Exhibits to Respective Summary Judgment Motions by All Parties ¶ 1, hereafter "Stipulated Facts," Docket Item No. 11.)  Each mailer and telephone message referred to City Councilperson Cindy Chavez ("Chavez"), a mayoral candidate in the June 6, 2006 primary election and November 2006 general election.  (Stipulated Facts ¶¶ 2-3.)  Each mailer or telephone message attributed actions, decisions, or voting stances to Chavez regarding San Jose's $4 million payment related to the Grand Prix Auto Race, the Norcal garbage contract, certain city eminent domain actions, or Mayor-City Council relations.  (Stipulated Facts, Exs. A-H.)  Each mailer concluded, "There has to be a better way for San Jose," or "There just has to be a better way for San Jose."  Id. The mailers and telephone messages were paid for with contributions to COMPAC from individuals and organizations, some of whom contributed more than $250 each.  (Stipulated Facts ¶ 7.)

A citizen complaint about COMPAC's messages was filed with the San Jose Election Commission ("Election Commission") on May 17, 2006.  (Stipulated Facts ¶ 4.)  The Election Commission began an investigation, conducted by its Evaluator, to determine whether the mailers and telephone messages violated the San Jose Municipal Code's ("SJMC") requirements for independent expenditures or contribution limits on independent committees.  Id.  The Evaluator concluded that COMPAC's mailers and telephone calls were not "independent expenditures" under SJMC law, because they did not "expressly advocate" Chavez's election or defeat or otherwise refer to Chavez's mayoral campaign or candidacy.  (Stipulated Facts at ¶ 6.)

The Election Commission held a hearing on May 31, 2006.  (Stipulated Facts ¶ 8.)  It adopted the Evaluator's conclusion that COMPAC had not violated the SJMC's independent expenditures restrictions or reporting requirements.  Id.  However, it found that COMPAC, by funding its communications with individual contributions exceeding $250, had violated SJMC Section 12.06.310, which provides:

**Contribution Limitations to Independent Committees.**

A.  No person shall make nor shall any person accept any contribution to or on behalf of an independent committee expending funds or making contributions in aid of and/or opposition to the nomination or election of a candidate for city council or mayor which will cause the total amount contributed by such person to such independent committee to exceed two hundred fifty dollars per election.

B.  Independent committees contributing to election campaigns in addition to City of San Jose council or mayoral campaigns shall segregate contributions received or expenditures made for the purpose of influencing such San Jose elections from all other contributions or expenditures.  Where an independent committee has segregated such contributions and expenditures for such city elections, contributors to that committee may contribute more than two hundred fifty dollars so long as no portion of the contribution in excess of two hundred fifty dollars is used to influence San Jose council or mayoral elections.

C.  This section is not intended to prohibit or regulate contributions to independent committees to the extent such contributions are used on behalf of or in opposition to candidates for offices other than mayoral or council offices of the city of San Jose.

The Elections Commission decided to impose a civil fine against COMPAC.  (Stipulated Facts ¶ 9.)  The exact amount of the fine is pending receipt of information from COMPAC about the number of contributions exceeding $250 that it used to fund the communications.  Id.

On June 21, 2006, the Elections Commission issued COMPAC a letter of public reprimand for its violation of SJMC Section 12.06.310.  (Stipulated Facts ¶ 10.)

On July 11, 2006, COMPAC filed this 42 U.S.C. § 1983 action, asserting that Section 12.06.310 violates  the First and Fourteenth Amendments of the United States Constitution.  Both parties have moved for summary judgment.

## III.  STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

3

**United States District Court**

For the Northern District of California

1   portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

2   with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material

3   fact."  Id. at 323.  If it meets this burden, the moving party is then entitled to judgment as a matter of

4   law when the non-moving party fails to make a sufficient showing on an essential element of its case

5   with respect to which it bears the burden of proof at trial.  Id. at 322-23.

6          The non-moving party "must set forth specific facts showing that there is a genuine issue for

7   trial."  Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly

8   supported motion for summary judgment simply by alleging some factual dispute between the

9   parties.  To preclude the entry of summary judgment, the non-moving party must bring forth

10  material facts, i.e., "facts that might affect the outcome of the suit under the governing law...Factual

11  disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc.,

12  477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there is

13  some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475

14  U.S. 574, 586 (1986).

15         The court must draw all reasonable inferences in favor of the non-moving party, including

16  questions of credibility and of the weight to be accorded particular evidence.  Masson v. New

17  Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita,

18  475 U.S. at 588; T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987).  It is

19  the court's responsibility "to determine whether the 'specific facts' set forth by the non-moving party,

20  coupled with disputed background or contextual facts, are such that a rational or reasonable jury

21  might return a verdict in its favor based on that evidence."  T.W. Elec. Serv., 809 F.2d at 631.

22  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

23  evidence is such that a reasonable jury could not return a verdict for the non-moving party."

24  Anderson, 477 U.S. at 248.  However, "[w]here the record taken as a whole could not lead a rational

25  trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475

26  U.S. at 587.

27

28                                                        4

United States District Court

For the Northern District of California

1

## IV. DISCUSSION

2    Plaintiffs seek summary judgment on their claims that the City of San Jose and the Elections

3   Commission violated their Fourteenth Amendment due process and First Amendment free speech

4   rights by imposing or threatening to impose public censure and civil penalties pursuant to an

5   allegedly unconstitutional municipal ordinance.  Defendants seek summary judgment on the grounds

6   that the contested campaign contribution ordinance is consistent with the First Amendment and is

7   not vague or overbroad.

8   **A.    First Amendment**

9       **i.    Standard of Review**

10    COMPAC contends that the challenged ordinance is subject to strict scrutiny, because it

11  imposes a content-based expenditure limit on an independent political committee.  (Memorandum

12  and Points of Authority in Support of Motion for Summary Judgment or Partial Summary Judgment

13  by All Plaintiffs at 16, hereafter "Plaintiffs' Motion," Docket Item No. 10.)  The Defendants contend

14  that the ordinance is subject to a lower level of constitutional scrutiny because it is a contribution

15  limit.  (Memorandum of Points and Authorities in Support of Defendants' Motion for Summary

16  Judgment or in the Alternative, for Partial Summary Judgment at 16, hereafter, "Defendants'

17  Motion," Docket Item No. 28.)

18    The Supreme Court first drew a distinction between government-imposed limits on

19  expenditures and contributions in Buckley v. Valeo, 424 U.S. 1 (1976).  In Buckley, numerous

20  plaintiffs (including candidates, political parties, and contributors) brought suit against defendant

21  government officials in their official capacity and as members of the Federal Election Commission.

22  Id. at 7-8.  The plaintiffs challenged the constitutionality of various provisions of the Federal

23  Election Campaign Act of 1971 ("FECA").  Id. at 7.  Certain of the challenged FECA provisions

24  prohibited contributions exceeding $25,000 per year or $1,000 per single candidate for an election

25  campaign, and from spending more than $1,000 per year "relative to a clearly identified candidate."

26  Id. at 12-13.  In this seminal case, the Supreme Court held that both FECA's contribution and

27  expenditure limits implicated First Amendment interests, but "its expenditure ceilings impose[d]

28
                                                5

significantly more severe restrictions on protected freedoms of political expression and association

than [did] its limitations on financial contributions." Id. at 23. The Supreme Court held that

contribution limits will be upheld even if they represent a "significant interference with protected

rights of political association," so long as they are closely drawn to match a sufficiently important

governmental interest. Id. at 25. The Court explained:

> [A] limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication. A contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support. The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing. At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate. A limitation on the amount of money a person may give to a candidate or campaign organization thus involves little direct restraint on his political communication, for it permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues. While contributions may result in political expression if spent by a candidate or association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor.

Id. at 20-21. Expenditure limits present greater cause for constitutional concern because "[a]

restriction on the amount of money a person or group can spend on political communication during a

campaign necessarily reduces the quantity of expression by restricting the number of issues

discussed, the depth of their exploration, and the size of the audience reached." Id. at 19. More

recent Supreme Court cases "have construed Buckley as requiring strict scrutiny of limitations on

independent expenditures and lesser constitutional scrutiny of limitations on contributions." Lincoln

Club v. City of Irvine, 292 F.3d 934 (9th Cir. 2001), citing (inter alia) Fed. Elec. Comm'n v.

Colorado Republican Fed. Campaign Comm'n, 533 U.S. 431 (2001); Nixon v. Shrink Missouri Gov't

PAC, 528 U.S. 377, 387 (2000).

  The leading Ninth Circuit case bearing on the contribution/expenditure distinction is Lincoln

Club, to which both COMPAC and Defendants cite heavily. In Lincoln Club, the City of Irvine

enacted a campaign finance law that placed a ceiling of $320 on the contributions a person or

committee could receive from a single source during a two-year election cycle. 292 F.3d at 936.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Plaintiff and its two affiliated political action committees were funded by annual dues of $2000 per

2   member; because their dues payments exceeded the law's ceiling, the plaintiff was barred from

3   making any expenditures whatsoever to support or oppose candidates.  Id.  Plaintiff sued the city

4   under 42 U.S.C. § 1983, alleging that the law violated its First Amendment rights of free speech and

5   association.  Id.  The Ninth Circuit noted that its own and Supreme Court precedent cases had dealt

6   with contributions to candidates rather than to independent expenditure committees.  Id. at 937.  It

7   characterized the ordinance before it as both an expenditure and contribution limitation.  First, the

8   ordinance restricted contributions to independent expenditure committees, which was not a

9   constitutionally severe burden on speech and associational freedoms post-Buckley.  Id. at 938.

10  Second and more problematically, the campaign finance law restricted expenditures; it barred

11  independent committees from making any political contributions if their source of money was

12  membership dues exceeding the Ordinance's maximum.  Id.  To comply with the ordinance, the

13  plaintiff's choices were (1) to rearrange its financial structure drastically or (2) to abstain from

14  making any political expenditures in Irving municipal elections.  Id.  at 938-39.  The Ninth Circuit

15  concluded, "The Ordinance's expenditure limitation is a double-edged sword, placing a substantial

16  burden on protected speech (i.e. barring expenditures) while simultaneously threatening to burden

17  associational freedoms (i.e. by requiring a restructuring of the Lincoln Club.)  We conclude that

18  such substantial burdens on protected speech and associational freedoms necessitate the application

19  of strict scrutiny to the Ordinance."  Id. at 939.  Since the Ninth Circuit's decision, no district court

20  in this circuit has confronted this issue.

21          This case is factually distinguishable from Lincoln Club in multiple ways.  However, the

22  Court concludes – applying the rationale of Lincoln Club – that SJMC Section 12.06.310 serves as a

23  dual limit on contributions and expenditures.  On one hand, the ordinance limits contributions that

24  the committee can use to support or oppose a candidate for municipal government to $250.  Here,

25  strict scrutiny is not triggered as per Buckley, particularly since there is no substantial interference

26  with protected rights of political association.  Would-be contributors may donate to COMPAC in

27  whatever increments they choose, subject to the ordinance's requirements regarding segregating

28                                                  7

United States District Court

For the Northern District of California

funds to be used for aiding or opposing a candidate. However, the restriction also serves as a content-based expenditure limit – independent committees may spend only $250 per donor, if they are spending to aid or oppose a candidate for San Jose municipal office.[1] The Defendants' conduct substantiates the conclusion that the ordinance does function as an expenditure limit. As COMPAC correctly contends:

> That the ordinance is essentially a limitation on expenditures is also exemplified by the Commission's enforcement action against COMPAC: the Commission did not issue a reprimand against COMPAC's <u>contributors</u> for violating the $250 limit – but rather against COMPAC for funding its mailers and telephone messages. More importantly, the Commission did not base its reprimand solely on COMPAC's receipt of contributions exceeding $250, but on the Commission's <u>interpretation</u> of COMPAC's expenditures – the Commission concluded that the mailers and telephone messages aided or opposed a mayoral candidate.

(Plaintiff's Motion at 15.) It is indisputable that there has been no showing of hardship to COMPAC comparable in magnitude to that suffered in <u>Lincoln Club</u>. Rather than facing a complete bar on expenditures, COMPAC faces restrictions on expenditures. Rather than an ordinance requiring a complete restructuring of its finances, COMPAC is confronted with a statute requiring it to set procedures in place to segregate funds exceeding $250 under particular circumstances. However, since <u>Buckley</u>, the Supreme Court has viewed expenditure limits with heightened concern because of their potential to alter the quantity and manner of a political speaker's speech. <u>Buckley</u>, 424 U.S. at 19. Even though the harm to the COMPAC here is not as pronounced as in <u>Lincoln Club</u>, the Court holds that the appropriate level of constitutional review is strict scrutiny: the restriction must be narrowly tailored to serve an overriding state interest. <u>ACLU of Nevada v. Heller</u>, 378 F.3d 979, 992-93 (9th Cir. 2004).

---

[1]  That the ordinance is a content-based expenditure limitation is made clear because it is susceptible to the following interpretation: contributions of <u>any</u> amount may be made to an independent committee, even for the committee's use in aid of or opposition to candidates. Applying the ordinance, a contributor could donate $1000 to COMPAC to be used in aid of or opposition to the nomination or election of four candidates for San Jose Mayor or City Council— but COMPAC could not use the entire sum in aid of or opposition to a single candidate.

8

### ii. Constitutionality of the Ordinance Under Strict Scrutiny

The Defendants contend that contribution limits serve two important government interests: to prevent "both the actual corruption threatened by large financial contributions and the eroding of public confidence in the electoral process through the appearance of corruption." (Defendants' Motion at 16, quoting <u>McConnell v. Federal Elections Commission</u>, 540 U.S. 93, 136 (2003)). COMPAC first contends that the proffered government interest in campaign finance regulation – preventing corruption and the appearance of corruption – is not an overriding state interest when "grafted on" to laws regulating independent committees rather than candidates. (Plaintiffs' Motion at 16-17.) Second, COMPAC contends that the contested ordinance is not narrowly drawn to serve a compelling government interest due to vagueness, overbreadth, and a contribution limit so low as to create serious associational and expressive problems. (Plaintiffs' Motion at 17-18.)

The Court finds that preventing corruption and the appearance of corruption is an important government interest when applied to contribution limits on candidates or committees who coordinate with candidates. <u>McConnell</u>, 540 U.S. at 136. However, SJMC Section 12.06.310 is not narrowly tailored to serve that interest, because it also serves as an expenditure limit on independent committees. Far from narrow tailoring, the ordinance sweeps broadly to regulate a significant amount of protected speech. For instance, COMPAC correctly contends that the contested ordinance, as presently written and interpreted by the Election Commission, could encompass conduct as mundane as "mentioning the vote of a city official on a piece of legislation in a newsletter sent to...members." (Plaintiffs' Motion at 17.) The Defendants contend that COMPAC's conduct is distinguishable from this example: "it is hard to believe that COMPAC is genuinely so confused as to not know the difference between its mass mail and telephone campaign targeting a mayoral candidate launched three weeks before the mayoral election and simply inviting an official to speak on a panel or mentioning a City Council vote in a newsletter." (Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 12, hereafter, "Defendants' Opposition," Docket Item No. 35.) Moreover, although it is not dispositive, the $250 contribution limit per election is low, particularly in its failure to adjust for inflation. In invalidating $200-400 limits on individual

**United States District Court**
For the Northern District of California

9

United States District Court

For the Northern District of California

1   contributions to state races, the Supreme Court considered, *inter alia*, the limits placed on

2   challengers seeking to run competitive campaigns, the absence of automatic adjustment for inflation,

3   and the absence in the record of "any special justification that might warrant a contribution limit so

4   low or so restrictive as to bring about the serious associational and expressive problems" described.

5   Randall v. Sorrell, 126 S.Ct. 2479, 2495-99 (2006).

6          Although the Defendants are correct that COMPAC's conduct is factually distinguishable,

7   the Court holds that SJMC Section 12.06.310 regulates more speech than is necessary to advance the

8   government interest of preventing corruption and the appearance thereof.[2]  As such, it cannot survive

9   a strict scrutiny challenge.

10  **B.      Fourteenth Amendment**

11          **i.      Vagueness**

12          COMPAC challenges the constitutionality of SJMC Section 12.06.310, contending that the

13  words "in aid of or opposition to" violate due process because their meaning is "entirely dependent

14  on the subjective interpretation of the Commission," they invite an "arbitrary and discriminatory

15  application" of the law, and as applied, they have had a chilling effect on COMPAC's exercise of its

16  free speech rights.  (Plaintiffs' Motion at 5-9.)  Defendants contend that the ordinance's language is

17  not vague or overbroad because the Supreme Court has found similar language constitutional, the

18  language is properly tailored, and COMPAC could have obtained an advisory opinion about the

19  legality of its planned mailer and telephone campaign.  (Defendants' Motion at 19-21.)

20          A high ("stringent") degree of clarity is constitutionally required of laws that "threaten to

21  inhibit the exercise of constitutionally protected rights," including laws affecting freedom of speech.

22  Hoffman Estates v. Flipside, 455 U.S. 489, 499 (1982).  SJMC Section 12.06.310 cannot pass

23  constitutional muster because it does not provide fair or adequate warning to speakers in the political

24  process as to what conduct is prohibited.  Nowhere in the Defendants' papers is a satisfactory

25  explanation to the scenarios that COMPAC raises:

26  _____

27          [2] Defendants also argue that due deference to the legislative determination is appropriate.
    (Defendants' Motion at 18.)  This argument is predicated on an incorrect level of scrutiny.

28                                                    10

What does in aid of or in opposition to a candidate mean?  If a COMPAC mailer praises a candidate's stance on an unpopular issue, does that aid or oppose the candidate?  What if a communication vilifies a candidate's support of a popular issue?  Does televising a candidate forum sponsored by a business group aid or oppose a candidate who has taken positions unpopular with the business community?

(Plaintiffs' Motion at 6.)

SJMC Section 12.06.310 is subject to "arbitrary and discriminatory application."  (Plaintiffs' Motion at 7.)  This finding is exemplified by the Election Commission's adoption of the Evaluator's Report, which said of COMPAC's conduct, "Slogans like 'there has to be a better way for San Jose' and 'is this any way to run a city,' may not rise to the level of 'express advocacy,' but the intent to affect the election seems clear to us."  (Stipulated Facts, Exh. at 18.)  The Court finds that it is clear that San Jose's framework for independent committees to follow is constitutionally untenable.  Put simply, a committee knows that it may not finance communications "in aid of or in opposition to" a candidate with contributions exceeding $250.  If the committee is unclear on whether its proposed communication would violate the ordinance – for instance, because it merely plans to mention how elected representatives seeking reelection voted on a particular issue – it may seek an advisory opinion from the Election Commission.  The Election Commission, in issuing its advisory opinion, may consider what the intention of the would-be communicator appears to be.  This statutory setup is plainly vague, as it does not afford a would-be speaker a reasonable means of discerning ex ante whether its conduct is lawful.  Further, it affords troubling discretion to the Election Commission to base its determination of whether a speaker's communication is lawful on that speaker's perceived intent.

Defendants' principal argument is that the Supreme Court found in <u>McConnell</u> that the words "oppose," "attack," and "support" were not unconstitutionally vague.  (Defendants' Motion at 20.)  In <u>McConnell</u>, the Supreme Court considered the constitutionality of the Bipartisan Campaign Reform Act of 2002 ("BCRA").  540 U.S. at 115.  The BCRA was enacted to close a gap in campaign finance law that allowed political parties and candidates to circumvent the Federal Election Campaign Act of 1971 ("FECA").  <u>Id.</u> at 132.  FECA imposed "hard money" contribution limitations, imposing a ceiling on contributions for the purpose of advocating a candidate's election

11

United States District Court

For the Northern District of California

1   or defeat.  Political parties and candidates were circumventing FECA's limitations through soft-

2   money contributions.  Id. at 124.  BCRA was enacted to eliminate FECA's soft money loophole.

3   Under BCRA, one of the new categories of "federal election activity" subject to restrictions was "a

4   public communication that refers to a clearly identified candidate for Federal office (regardless of

5   whether a candidate for state or local office is also mentioned or identified) and that promotes or

6   supports a candidate for that office; or attacks or opposes a candidate for that office (regardless of

7   whether the communication expressly advocates a vote for or against a candidate.)" 2 U.S.C. §

8   431(20)(A)(iii).

9        Defendants appear to contend as an absolute proposition that the Supreme Court held that the

10  words "oppose," "attack," and "support" were not unconstitutionally vague in McConnell.

11  (Defendants' Opposition at 14-15.)  The correct reading of McConnell is not so broad.  The Supreme

12  Court's finding that those words satisfied due process must be interpreted in the context of BCRA,

13  which was an "electioneering communication" ordinance.  It applied pointedly and specifically only

14  to (1) broadcast, satellite, and cable communications (2) clearly identifying a candidate for federal

15  office (3) airing within sixty days of a general election or thirty days of a primary, and (4) targeted

16  to the relevant electorate, i.e. those in the relevant jurisdiction, if for an election other than President

17  or Vice-President.  540 U.S. at 189-191; see also 2 U.S.C. § 434(f)(3)(A)(i).  In contrast, the SJMC

18  ordinance applies (1) to expenditures on all manner of communications; (2) that can be construed in

19  aid of or opposition to a candidate, which could potentially include ads that do not directly mention

20  the candidate,[3] and (3) without regard to the timing relative to the election.  Thus, three of the four

21  constraints that lent meaning to the words in BCRA are not applicable here.

22       Defendants contend that COMPAC could have obtained an advisory opinion from the

23  Elections Commission or the San Jose City Attorney.  (Defendants' Motion at 21.)  However, it is

24  axiomatic that Defendants cannot salvage an unconstitutionally vague law by offering would-be

25  _____

26       [3]  Of course this is not one such case.  However, if the Election Commission is willing to
    consider the Evaluator's determination of intent, then it is conceivable that the ordinance could apply
27  to communications not directly referencing a candidate if the speaker's perceived intent is to aid or
    oppose a candidate.

28                                                    12

United States District Court

For the Northern District of California

speakers an opportunity to have their speech green-lighted in advance, and the case that Defendants

cite in support of this proposition does not so hold.[4]  In McConnell, the Supreme Court was satisfied

that the challenged statutory language was not unconstitutionally vague, independently of the

possibility of the plaintiffs obtaining an advisory opinion.  The Supreme Court's vagueness

discussion upholding the BCRA's use of the words "promote," "oppose," "attack," and "support" did

so in the context of speech by *political parties*.  McConnell, 540 U.S. at 170.  The Supreme Court

held that the four challenged words "clearly set forth the confines within which potential party

speakers must act in order to avoid triggering the provisions." Id. (emphasis added.)  In holding that

the four words "provide explicit standards for those that apply them" and "give the person of

ordinary intelligence a reasonable opportunity to know what is prohibited," the Supreme Court

wrote:

> This is particularly the case here, since actions taken by political parties are presumed
> to be in connection with election campaigns. See Buckley, 424 U.S. at 79 (noting
> that a general requirement that political committees disclose their expenditures raised
> no problems because the term "political committee" "need only encompass
> organizations that are under the control of a candidate or the major purpose of which
> is the nomination or election of a candidate" and thus a political committee's
> expenditures "are, by definition, campaign-related.")

Id.  The Supreme Court's focus, then, was on political parties and their speakers.  Due to the

presumption that political parties act in connection with political campaigns, it was reasonable that

their members of "ordinary intelligence" could ascertain whether party speech promoted, opposed,

attacked, or supported a candidate.  Only after that finding did the Supreme Court write in dicta,

"Furthermore, should plaintiffs feel that they need further guidance, they are able to seek advisory

opinions for clarification and thereby 'remove any doubt there may be as to the meaning of the law.'"

Id.  Here, the conduct of an independent committee—not a political candidate or committee "the

major purpose of which is the nomination or election of a candidate"— has been implicated by

SJMC Section 12.06.310.  As such, Defendants cannot rely on the Supreme Court's dicta on

advisory opinions in McConnell to salvage an unconstitutionally vague law.

---

[4]  Defendants cite to Buckley v. Valeo, 424 U.S. at 24.  (Defendants' Motion at 21.)
However, their quotation is taken from McConnell, 540 U.S. at 170 n.64.

United States District Court

For the Northern District of California

1    The Court concludes that SJMC Section 12.06.310 violates the Due Process Clause of the

2    Fourteenth Amendment, because it is impermissibly vague and susceptible to arbitrary or

3    discriminatory interpretation.

4        **ii.    Overbreadth**

5        Because SJMC Section 12.06.310 is unconstitutionally vague, the Court deems it

6    unnecessary to address the question of whether the ordinance is overbroad.

7        **iii.    Narrowing Construction**

8        COMPAC contends that the Court should give the challenged ordinance a limiting

9    construction, applying it only to express advocacy.  (Plaintiffs' Motion at 10-11.)  The Ninth Circuit

10    has held that "McConnell left intact the ability of courts to make distinctions between express

11    advocacy and issue advocacy, where such distinctions are necessary to cure vagueness and over-

12    breadth in statutes which regulate more speech than that for which the legislature has established a

13    significant government interest."  Heller, 378 F.3d 985 (quoting Anderson v. Spear, 356 F.3d 651,

14    664-65 (6th Cir. 2004)).

15        Federal courts are "without power to adopt a narrowing construction of a state statute unless

16    such a construction is reasonable and readily apparent."  Stenberg v. Carhart, 530 U.S. 914, 944

17    (2000) (quoting Boos v. Barry, 485 U.S. 312, 330 (1988)).  Here, COMPAC contends that the Ninth

18    Circuit has held that statutes that turn on whether conduct "influences" an election are subject to a

19    narrowing construction.  (Plaintiffs' Motion at 12, citing Heller, 378 F.3d at 986 n.5.)  The Ninth

20    Circuit in Heller referenced two other circuit decisions that held statutes susceptible to constitutional

21    narrowing: (1) a Seventh Circuit case regarding the phrase "to influence the election of a

22    candidate...or the outcome of a public question" and (2) a Fourth Circuit case regarding the phrase

23    "for the purpose of influencing the outcome of an election for public office."  Id., citing Brownsburg

24    Area Patrons Affecting Change v. Baldwin, 137 F.3d 503, 510 (7th Cir. 1998); Va. Soc'y for Human

25    Life, Inc. v. Caldwell, 152 F.3d 268, 269 (4th Cir. 1998).  One question posed by Caldwell, Heller,

26    and Baldwin is whether this case's phrase, "in aid of or opposition to," is closer to "influencing,"

27    which the Fourth and Seventh Circuits held were susceptible to narrowing constructions, or "related

28                                                  14

United States District Court

For the Northern District of California

to," which the Ninth Circuit held was not.  However, the Court need not decide this question,

because, as the Fourth Circuit held in <u>Caldwell</u>:

> A federal district court "lacks jurisdiction authoritatively to construe state legislation." <u>United States v. Thirty-Seven (37) Photographs</u>, 402 U.S. 363, 369 (1971).  As the Seventh Circuit has explained: "An important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative.  If the district judge [reads the state's] statute so narrowly as to obviate all constitutional questions, it would still be possible for the state to prosecute people for violating the statute as broadly construed, because the enforcement of the statute would not have been enjoined."

152 F.3d at 270 (some citations omitted).  For this reason, the Court's supplying a narrowing

construction would not supply COMPAC with the relief that it seeks.  The plaintiff in <u>Caldwell</u>

faced exactly this issue:

> The district court's holding, that the Virginia statutes at issue did not apply to [plaintiff], could not prevent a private party from suing to enjoin [plaintiff's] distribution of campaign literature based on the statutes, nor could it prevent the state from prosecuting [plaintiff] for failing to comply with the statutes.  Because the scope of the statutes' applicability had not authoritatively been narrowed and by their plain terms they applied to [plaintiff], [plaintiff's] speech was still chilled by the statutes.

<u>Id.</u>  The proper remedy, then, for the violation of due process at issue here is for the Court to

invalidate the statute and enjoin its enforcement.

## V.  CONCLUSION

The Court GRANTS COMPAC's Motion for Summary Judgment and DENIES Defendants'

Motion for Summary Judgment.  Plaintiffs are entitled to reasonable attorney's fees.

Dated: September 20, 2006

_James Ware_

JAMES WARE
United States District Judge

15

1    **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2    Gabe Omar Camarillo gcamarillo@campaignlawyers.com
     Ion Brady Meyn imeyn@campaignlawyers.com
3    James Ross Sutton jsutton@campaignlawyers.com
     Lisa Herrick cao.main@sanjoseca.gov
4    Sandra Sang-ah Lee sandra.lee@sanjoseca.gov

5

6    **Dated: September 20, 2006**                    **Richard W. Wieking, Clerk**

7                                                      **By:    /s/ JW Chambers**
                                                             **Elizabeth Garcia**
8                                                          **Courtroom Deputy**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

# EXHIBIT H

FILED

SEP 8 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORN'
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCANS FOR SENSIBLE GOVERNMENT; SAN FRANCISCANS FOR SENSIBLE GOVERNMENT POLITICAL ACTION COMMITTEE; KATHLEEN HARRINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>LOUISE RENNE, in her official capacity as City Attorney of the City and County of San Francisco; CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | No. C 99-02456 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

RECEIVED

SEP - 9 1999

REMCHO JOHANSEN & PURCELL

In this action, Plaintiffs San Franciscans for Sensible Government (SFSG), San Franciscans for Sensible Government Political Action Committee (SFSG-PAC), and Kathleen Harrington seek to enjoin Defendants Louise Renne and the City and County of San Francisco from enforcing § 16.508 of the San Francisco Administrative Code on the grounds that the limitations on campaign contributions contained therein violate Plaintiffs' rights to freedom of speech and freedom of association, as guaranteed by the First and Fourteenth Amendments. The matter was heard on September 3, 1999. Having considered all of the papers filed by the parties and oral argument on the motion, the Court grants Plaintiffs' motion for a preliminary injunction.

United States District Court
For the Northern District of California

BACKGROUND

Plaintiff SFSG is a nonprofit organization, incorporated in 1995, which seeks to promote fiscal responsibility and efficiency in San Francisco's city government.

Plaintiff SFSG-PAC is a political action committee (PAC or committee), established by SFSG in 1998 for the purpose of raising funds and supporting or opposing candidates and ballot measures in San Francisco's city elections. See Mosher Dec. at ¶ 6. According to Plaintiffs, SFSG-PAC does not make direct contributions to candidates, but rather supports or opposes candidates by making independent expenditures. See id. at ¶ 7. Mark Mosher is the vice president of SFSG.

Plaintiff Kathleen Harrington is an individual who resides in San Francisco. Ms. Harrington, who has previously contributed to SFSG-PAC, states that she desires to contribute more than $500 to SFSG-PAC to help enable it to make independent expenditures in support of Mayor Brown's reelection campaign for the November 2, 1999, general municipal election in San Francisco. See Harrington Dec. at ¶¶ 2, 4. In addition, Ms. Harrington states that she wishes to make direct donations to Mayor Brown's campaign. See id.

Defendant Louise Renne is the City Attorney for Defendant City and County of San Francisco.

In 1973, the voters of San Francisco passed the San Francisco Municipal Election Campaign Contribution Control Ordinance. See San Francisco Administrative Code, Article XII (the Ordinance). Section 16.508 of the Ordinance states,

> (a) No person other than a candidate shall make, and no

2

campaign treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person with respect to a single election in support of or opposition to such candidate, including contributions to political committees supporting or opposing such candidate, to exceed $150.

(b) For candidates who adopt the expenditure ceilings as defined in Section 16.510-3 this Chapter, no person other than a candidate shall make, and no campaign treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person with respect to a single election in support of or opposition to such candidate, including contributions to political committees supporting or opposing such candidate, to exceed $500.

(c) Each campaign treasurer who receives a contribution which exceeds the limit imposed by this Section shall pay promptly, from available campaign funds, if any, the amount received in excess of the amount permitted by the Section to the City Treasurer for deposit in the General Fund of the City and County.

(d) A contribution shall not be considered to be received if it is not negotiated, deposited, or utilized, and in addition it is returned to the donor within 72 hours of receipt. In the case of a late contribution as defined in the Government Code Section 82306, it shall not be deemed received if it is returned to the contributor within 48 hours of receipt.

(e) This Section shall not apply to any in-kind contribution of television or radio airtime to any candidate or committee granted to said candidate or committee pursuant to the "Fairness Doctrine" articulated in Cullman Broadcasting, 40 FCC 576 (1963). (Amended by Ord. 79-83, App. 2/18/83; amended by Proposition N, 11/7/95)

Id. at § 16.508.

The Ordinance states, "'Contribution' shall be defined as set forth in Government Code of the State of California (commencing at Section 81000); provided, however, that 'contribution' shall include loans of any kind or nature." Id. at § 16.503(d). Section 82015 of the Government Code states, in relevant part,

"Contribution" means a payment, a forgiveness of a loan, a payment of a loan by a third party, or an enforceable promise to make a payment except to the extent that full and adequate

3

consideration is received unless it is clear from the surrounding circumstances that it is not made for political purposes. An expenditure made at the behest of a candidate, committee or elected officer is a contribution to the candidate, committee or elected officer unless full and adequate consideration is received for making the expenditure.

Cal. Govt. Code § 82015.[1]

The Ordinance defines "committee" as "any person acting, or any combination of two or more persons acting jointly, in behalf of or in opposition to a candidate or to the qualification for the ballot or adoption of one or more measures." Ordinance at § 16.503(c).

The Ordinance applies to "any primary, general, or runoff municipal election held in the City and County of San Francisco for City elective office." Ordinance at § 16.503(e). City elective office includes the following offices: Mayor, Member of the Board of Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor, Public Defender, Member of the Board of Education of the San Francisco Unified School District, and Member of the Governing Board of the San Francisco Community College District. See id. at § 16.503(i).

Sections 16.503(f) and 16.515 of the Ordinance provide that the City Attorney is responsible for enforcing the civil penalties for violation of the Ordinance and the District Attorney is responsible for enforcing the criminal penalties. See Ordinance at

---

[1] In contrast to campaign "contributions," which are usually given to either a candidate, a political party, or a PAC, to be used in support of or in opposition to a candidate's election, campaign "expenditures" are typically direct expenditures made for the purpose of influencing the actions of voters for or against the election of a candidate.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  §§ 16.503(f), 16.515.  Pursuant to the 1993 amendments, the Ethics

2  Commission also has the power to enforce the Ordinance.  See San

3  Francisco Charter at Appendix C, § C3.699-13(c).

4      Prior to 1993, the Ordinance stated that any person could

5  request advice from the City Attorney regarding the application of

6  the Ordinance to a specific proposed course of conduct.  Section

7  16.514(c)-(e) provides that persons who act in good faith on the

8  City Attorney's advisory opinion are immune from civil or criminal

9  prosecution for engaging in any conduct which is the same in all

10  material respects as the conduct addressed in the City Attorney's

11  advisory opinion.  See Ordinance at § 16.514(c)-(e).

12      In 1993, the voters of San Francisco amended the Ordinance to

13  transfer the advisory function to the Ethics Commission.  See

14  Charter at Article XV, § 15.102 and Appendix C, § C3.699-12(b).

15  The amendments require the Ethics Commission to forward any

16  proposed advisory opinion to both the City Attorney and the

17  District Attorney.  The amended Ordinance retains the safe harbor

18  provision for any individual who acts in reliance on an advisory

19  opinion of the Ethics Commission provided that the City Attorney

20  and District Attorney concur in the opinion.

21      In 1992, Kathryn Donovan, who currently represents Plaintiffs

22  in this action, wrote to the City Attorney's Office to request

23  advice regarding the application of the Ordinance to several

24  proposed courses of conduct by a hypothetical political committee.

25  On August 4, 1992, the City Attorney responded by stating,

26      If individuals form an "entity" that is independent of a
       candidate but which will solicit contributions and make
27      "independent expenditures" in support of the candidacy of an

28                              5

1    individual, that entity becomes a committee formed for the
2    purpose of soliciting contributions and making expenditures on
     behalf of a candidacy.  Solicitation and acceptance of
3    contributions by the committee would be subject to the
     contribution limit of the Ordinance.

4    Verified Complaint, Ex. B. at 4.  According to the City Attorney,

5    although the Ordinance does not regulate independent expenditures

6    made by a committee, it does regulate a committee's expenditures if

7    they constitute contributions within the meaning of Government Code

8    § 82015.  In addition, if a committee is making independent

9    expenditures in support of or in opposition to a candidate, the

10   Ordinance puts limits on contributions to a committee making such

11   expenditures.  The City Attorney explained,

12       If the Ordinance had no application to contributions to the
         Committee, it is not difficult to conceive of situations where
13       a candidate seeks municipal office with the reasonable
         expectation that, because of his position on some issue such
14       as vegetarianism, he will be the beneficiary of large
         expenditures (comprised of large contributions) by the
15       Committee.  Under these circumstances, the government interest
         in regulating contributions to such committees is virtually as
16       great as the public interest in limiting contributions made
         directly to the candidate.
17
         The Board of Supervisors, in adopting the Ordinance, could not
18       have intended to enact legislation that could be circumvented
         or undermined in these ways.  Accordingly, we conclude that
19       contributions made to a committee, that are ultimately used to
         support or oppose an individual's candidacy for City office
20       are subject to the Ordinance's $500 aggregate limit.

21   Verified Complaint, Ex. B at 9-10.

22       In his letter of July 28, 1992, the District Attorney

23   concurred with much of the City Attorney's opinion, but dissented

24   in part stating that it appeared that the City Attorney's opinion

25   "is attempting to control independent committee expenditures (by

26   improperly controlling contributions) contrary to the mandates of

27   [Federal Election Comm'n v. National Conservative Political Action

28
                                    6

United States District Court
For the Northern District of California

1   _Comm._, 470 U.S. 480 (1985)]."  Verified Complaint, Ex. C at 1.

2       In response to the City Attorney's Donovan opinion, James

3   Sutton wrote a letter to the City Attorney requesting clarification

4   as to the necessary steps a general purpose committee must take to

5   meet its obligations to ascertain whether its contributors have

6   exceeded the contribution limit.  In a letter, dated September 22,

7   1992, the City Attorney responded by stating,

8       a general purpose committee will be charged with knowledge of
    information contained in the disclosure statements of the
9       candidate controlled committee (that is, the committee formed
    by the candidate) to elect or reelect a candidate on file at
10      the time the general purpose committee expends previously
    collected funds to support that candidate.  These reports may
11      be readily obtained from the Registrar's Office.  After
    obtaining this information, the committee must ensure that
12      funds used to make expenditures consist entirely of funds from
    contributors which, when aggregated with reported
13      contributions made by those contributors to the candidate, do
    not exceed the Ordinance's $500 limit per contributor.  No
14      further obligations are imposed on the committee.

15  _Id._, Ex. D at 2.

16      On September 23, 1994, the City Attorney responded to a

17  request for advice from Arthur Bruzzone, the Chairman of the San

18  Francisco County Republican Central Committee.  The City Attorney

19  reiterated,

20      Although a political committee may make an unlimited amount of
    _independent expenditures_ in support of or in opposition to a
21      candidate for local office, the committee may not _contribute_
    more than a total of $500 in support or in opposition to a
22      candidate for local office in a single election.  A committee
    must also ensure that funds used to make _independent_
23      _expenditures_ consist entirely of funds from contributors which
    would not exceed the $500 limit when aggregated with other
24      contributions made by those contributors in support of or in
    opposition to the candidate supported or opposed by the
25      committee.

26  _Id._, Ex. E at 2 (original emphasis).  The District Attorney, in a

27  letter dated September 20, 1994, dissented from the City Attorney's

28                                            7

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  position because "the City Attorney response is again attempting to

2  control independent committee expenditures (by improperly

3  controlling contributions) . . ." Id., Ex. F at 2.

4      In July, 1998, City Attorney Louise Renne and Deputy City

5  Attorney Claire M. Sylvia met with Plaintiffs' attorneys Kathryn

6  Donovan and Frederick Lowell to discuss the Donovan opinion.

7  According to Ms. Sylvia, neither Ms. Donovan nor Mr. Lowell

8  disclosed that they represented Plaintiffs nor did they seek advice

9  on the legality of any specific course of conduct. See Sylvia Dec.

10  at ¶ 2. On July 17, 1998, Ms. Donovan wrote to the City Attorney

11  requesting that she reconsider the Donovan opinion. On September

12  10, 1999, Ms. Sylvia called Ms. Donovan to inform her that the City

13  Attorney had decided not to alter her position on the Ordinance as

14  expressed in the Donovan opinion. See id. at ¶¶ 3-4.

15      Notwithstanding the City Attorney's continued commitment to

16  the interpretation of the Ordinance set forth in the Donovan

17  opinion, Ms. Sylvia stated that the City Attorney's Office "has

18  never brought a civil enforcement action against any contributor or

19  political committee for violation of the principles stated in the

20  Donovan Opinion." Id. at ¶ 5. Neither party introduced evidence

21  of any civil or criminal prosecutions under the Ordinance since its

22  enactment in 1973.

23      Neither party introduced any evidence to show that either

24  Plaintiffs or their attorneys sought advice from the City Attorney

25  about the Ordinance's effect on Plaintiffs' proposed 1998 or 1999

26  election expenditures.

27      According to Mr. Mosher, SFSG-PAC made independent

28

        8

1  expenditures to oppose San Francisco Supervisor Tom Ammiano's

2  reelection campaign in 1998.  Mosher states that, due to the

3  restrictions imposed by the Ordinance, SFSG-PAC was unable

4  effectively to communicate with voters during the campaign.  See

5  Mosher Dec. at ¶¶ 8-11.  Mosher further states that the "onerous

6  tracking and record-keeping tasks imposed by the Ordinance required

7  SFSG-PAC to spend considerable funds on attorneys' fees." Id. at

8  ¶ 12.  Based on SFSG-PAC's experience during the 1998 campaign,

9  Mosher predicts that the Ordinance will impede SFSG-PAC's ability

10  to make independent expenditures in support of Mayor Brown's

11  campaign for reelection.  See id. at ¶¶ 15-17.

12       On May 24, 1999, Plaintiffs filed their verified complaint,

13  alleging that § 16.508 of the Ordinance, to the extent that it

14  places limits on contributions to PACs which make only independent

15  expenditures, violates the First and Fourteenth Amendments to the

16  United States Constitution.  In addition, Plaintiffs allege that

17  Defendants' actions, in enforcing the Ordinance, will deprive

18  Plaintiffs of the rights, privileges, and immunities secured to

19  them by the Constitution and laws of the United States.

20                              DISCUSSION

21  1.   Legal Standard

22       The Supreme Court has noted that "a preliminary injunction is

23  an extraordinary and drastic remedy, one that should not be granted

24  unless the movant, by a clear showing, carries the burden of

25  persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)

26  (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and

27  Procedure § 2948, 129-30 (2nd Ed. 1995)).  The purpose of a

28
                                   9

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    preliminary injunction is to preserve status quo ante litem pending

2    determination of the action on the merits.    See Taylor By and

3    Through Taylor v. Honig, 910 F.2d 627, 628 (9th Cir. 1990)(citing

4    Los Angeles Memorial Coliseum Comm'n v. National Football League,

5    634 F.2d 1197, 1200 (9th Cir. 1980)).

6        The moving party is entitled to a preliminary injunction if it

7    establishes either: (1) a combination of probable success on the

8    merits and the possibility of irreparable harm; or (2) that there

9    exist serious questions regarding the merits and the balance of

10    hardships tips sharply in its favor.    See Baby Tam & Co., Inc. v.

11    City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998); Rodeo

12    Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.

13    1987).    "These two formulations represent two points on a sliding

14    scale in which the required degree of irreparable harm increases as

15    the probability of success decreases."    Baby Tam, 154 F.3d at 1100

16    (quoting United States v. Nutri-cology, Inc., 982 F.2d 394, 397

17    (9th Cir. 1992)).

18        "If the public interest is involved, the district court must

19    also determine whether the public interest favors [the plaintiff]."

20    Westlands Water District v. Natural Resources Defense Council, 43

21    F.3d 457, 459 (9th Cir. 1994)(citing Fund for Animals, Inc. v.

22    Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992)).

23    2.    Ripeness

24        Defendants argue that, because Plaintiffs have not been

25    threatened with either civil or criminal prosecution, they have not

26    suffered any actual injury and their claims are thus not ripe.

27        Article III of the United States Constitution limits federal

28                                    10

United States District Court

For the Northern District of California

1  jurisdiction to cases or controversies.  The ripeness doctrine

2  ensures that federal courts adjudicate only actual, and not

3  hypothetical, cases or controversies by preventing the courts "from

4  entangling themselves in abstract disagreements."  Abbott

5  Laboratories v. Gardner, 387 U.S. 136, 148 (1967); see also Lee v.

6  State of Oregon, 107 F.3d 1382, 1387 (9th Cir.), cert. denied, 118

7  S. Ct. 328 (1997).  "When a party is challenging the validity of a

8  statute or regulation, the ripeness doctrine can be specifically

9  understood 'as involving the question of when may a party seek

10  preenforcement review.'"  Lee, 107 F.3d at 1388 (quoting Erwin

11  Chemerinksy, Federal Jurisdiction § 2.4 at 115-16 (3rd Ed. 1999)).

12  The ripeness doctrine requires federal courts to determine:

13  (1) whether the issues are fit for judicial decision; and

14  (2) whether the parties will suffer hardship if the court declines

15  to consider the issues.  See Abbott Laboratories, 387 U.S. at 149.

16      In support of their position, Defendants assert that:

17  (1) Plaintiffs never sought an advisory opinion about their

18  proposed course of conduct; (2) it is unclear whether Plaintiffs'

19  proposed conduct is the same as that addressed in the Donovan

20  opinion; and (3) even if Plaintiffs' proposed conduct is the same

21  as that discussed in the Donovan opinion, the City Attorney's

22  Office has never prosecuted anyone on the basis of the legal

23  position set forth in that opinion and thus Plaintiffs face no

24  reasonable or actual threat of prosecution.  Defendants further

25  maintain that Plaintiffs' extremely successful prior fundraising

26  efforts belie their contention that the Ordinance's limitations are

27  causing them harm.

28

United States District Court
For the Northern District of California

1    Plaintiffs argue that, to demonstrate injury, they need

2   neither seek an advisory opinion nor be threatened with prosecution

3   if the challenged law, on its face, proscribes constitutionally

4   protected activity.  See North Carolina Right to Life, Inc. v.

5   Bartlett, 168 F.3d 705, 710 (4th Cir. 1999); Russell v. Burris, 146

6   F.3d 563, 566-67 (8th Cir.), cert. denied, 119 S. Ct. 510 (1998);

7   Adult Video Ass'n v. Barr, 960 F.2d 781, 786 (9th Cir. 1992),

8   judgment vacated by, 509 U.S. 917 (1993).  Plaintiffs maintain

9   that, because contributions to PACs can be limited only if the PACS

10  in turn make direct contributions to candidates or coordinate their

11  expenditures with a candidate, see, e.g., Colorado Republican

12  Federal Campaign Comm. v. Federal Election Comm'n, 518 U.S. 604,

13  616-18 (1996)(hereinafter CRFCC), the Ordinance's limitations on

14  contributions to PACs which make only independent expenditures

15  clearly implicate and proscribe speech that is highly protected

16  under the First and Fourteenth Amendments.  In addition, Plaintiffs

17  argue that, because the Donovan opinion clearly addresses

18  Plaintiffs' proposed conduct, they face a reasonable risk of

19  prosecution if they engage in such speech.  Plaintiffs also rely on

20  Elrod v. Burns, 427 U.S. 347, 373 (1976), to argue that they need

21  not demonstrate any actual inability to raise funds to show injury

22  because restrictions on First Amendment rights constitute a

23  constitutionally cognizable injury.

24    Plaintiffs are correct that, "where 'plaintiffs allege an

25  intention to engage in a course of conduct arguably affected with a

26  constitutional interest which is clearly proscribed by statute,

27  courts have found standing to challenge the statute, even absent a

28
                                12

United States District Court
For the Northern District of California

1  specific threat of enforcement.'" Russell, 146 F.3d at 566-67

2  (quoting United Food & Commercial Workers Int'l Union v. IBP, Inc.,

3  857 F.2d 422, 428 (8th Cir. 1988)); see also Adult Video, 960 F.2d

4  at 786.

5       Although contributions to candidates and candidate-controlled

6  committees constitute speech, and are thus afforded some protection

7  under the First Amendment, the Supreme Court has allowed

8  limitations on such direct contributions. See Buckley v. Valeo,

9  424 U.S. 1, 46-47 (1976)(contributions to candidates and

10 coordinated expenditures may be limited). In addition, the Supreme

11 Court has held that contributions to PACs that make direct

12 contributions to, or coordinate expenditures with, candidates or

13 candidate-controlled committees may be limited. See California

14 Medical Ass'n v. Federal Election Comm'n, 453 U.S. 182, 197-98, 203

15 (1981); CRFCC, 518 U.S. at 616-18. By contrast, the Supreme Court

16 has indicated that making contributions to PACs and political

17 parties, which make only independent expenditures and neither make

18 contributions to, nor coordinate their expenditures with,

19 candidates or candidate-controlled committees, is highly protected

20 speech and may not be regulated. See California Medical, 453 U.S.

21 at 197-99[2]; Federal Election Comm'n v. National Conservative

22 Political Action Comm., 470 U.S. 480, 497-98 (1985)(hereinafter

23

24       [2]  In California Medical, although a majority, composed of a
   plurality and Justice Blackmun concurring, allowed limits on
25 contributions to PACs that make direct contributions to candidates,
   Justice Blackmun stated that limits on contributions to PACs making
26 only independent expenditures are clearly unconstitutional. See
   California Medical, 453 U.S. at 196-98 (plurality), 202-03
27 (concurring opinion).

28                                        13

United States District Court
For the Northern District of California

1  NCPAC)(limits on expenditures by PACs are unconstitutional absent

2  coordination between committee and candidate); CRFCC, 518 U.S. at

3  616-18 (absent coordination with the candidate, political party

4  expenditures may not be limited).  Thus, if the Ordinance, on its

5  face, restricts such speech, Plaintiffs need not show a specific or

6  reasonable threat of prosecution.

7      Plaintiffs' challenge to § 16.508 of the Ordinance is limited.

8  This case does not address the constitutionality of limitations on

9  contributions to PACs that make any direct contributions to or

10  coordinate expenditures with candidates or candidate-controlled

11  committees.  At issue in this action is only the narrow, though

12  important, question of the constitutionality of the Ordinance's

13  limitations on contributions to independent committees which make

14  only independent expenditures for the purposes of supporting or

15  opposing candidates in a municipal election.

16      Section 16.508 unambiguously limits the total amount that a

17  person may contribute "with respect to a single election in support

18  of or opposition to" a particular candidate.  Id. at § 16.508.  The

19  Ordinance does not distinguish between direct contributions to

20  candidates and candidate-controlled committees, contributions to

21  PACs that make such direct contributions, and contributions to PACs

22  that make only independent expenditures.  The Ordinance thus

23  proscribes all contributions, in support of or in opposition to a

24  candidate, which result in an individual or entity contributing

25  funds in excess of the stated limits.

26      SFSG-PAC submitted evidence that it has not previously made

27  any direct contributions, does not currently make direct

28

14

1  contributions, and has no present intent of ever making direct

2  contributions.  Ms. Harrington has stated that she wishes to

3  contribute funds to SFSG-PAC in excess of the amount permitted

4  under § 16.508 of the Ordinance.  Defendants have failed to

5  introduce any evidence to contradict this showing.  Accordingly,

6  Plaintiffs have demonstrated that § 16.508 of the Ordinance

7  facially proscribes the precise sort of highly protected speech in

8  which they wish to engage and, thus, they need not demonstrate a

9  specific or reasonable threat of prosecution.  Cf. Montana Right to

10 Life Ass'n v. Eddleman, 999 F. Supp. 1380, 1386-87 (D. Mont. 1998).

11 The Court thus finds that Plaintiffs' claims are ripe for

12 adjudication.

13 3.    Plaintiffs' Motion for a Preliminary Injunction

14        For the reasons stated above, the Court finds that Plaintiffs

15 have demonstrated a likelihood of success on their claim that

16 § 16.508 of the Ordinance facially proscribes highly protected

17 speech and thus contravenes controlling Supreme Court precedent.

18 See Buckley, 424 U.S. 1, 46-47; California Medical, 453 U.S. at

19 197-99, 202-03; NCPAC, 470 U.S. at 497-98; CRFCC, 518 U.S. at 616-

20 18.   In addition, Plaintiffs are correct that the chilling effect

21 of constitutionally suspect campaign finance laws is sufficient

22 evidence of irreparable injury to justify issuing a preliminary

23 injunction.  See, e.g., Service Employees Int'l Union v. Fair

24 Political Practices Comm'n, 955 F.2d 1312, 1315 n.4 (9th Cir.),

25 cert. denied, 505 U.S. 1230 (1992)(upholding district court's

26 permanent injunction of campaign finance law); Shrink Missouri

27 Gov't PAC v. Adams, 151 F.3d 763, 764 (8th Cir. 1998), cert.

28                                    15

United States District Court
For the Northern District of California

1  granted on other grounds, 119 S. Ct. 901 (1999); see also Elrod v.

2  Burns, 427 U.S. 347, 373 (1976)("The loss of First Amendment

3  freedoms, for even minimal periods of time, unquestionably

4  constitutes irreparable injury").  The Court, therefore, grants

5  Plaintiffs' motion for a preliminary injunction.

6                              CONCLUSION

7       For the foregoing reasons, Plaintiffs' motion for a

8  preliminary injunction (Docket #8) is granted.  Defendants are

9  hereby enjoined from enforcing § 16.508 of the Ordinance to the

10  extent that it limits the amount that an individual or entity may

11  contribute to independent political action committees that have

12  made and will make only independent expenditures in support of or

13  in opposition to a candidate and that neither make direct

14  contributions to a candidate or candidate-controlled committee nor

15  coordinate their expenditures with a candidate or candidate-

16  controlled committee.

17  IT IS SO ORDERED.

18

19

20  Dated:  SEP - 8 1999

21                                    CLAUDIA WILKEN
                                       United States District Judge

22

23  Copies mailed to counsel
    as noted on the following page

24

25

26

27

28                                    16

# EXHIBIT I

**FILED**

UNITED STATES COURT OF APPEALS

OCT 2 0 1999

FOR THE NINTH CIRCUIT

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

---

SAN FRANCISCANS FOR SENSIBLE
GOVERNMENT; et al.,

          Plaintiffs-Appellees,

v.

LOUISE RENNE, in her official capacity as
City Attorney of the City and County of San
Francisco; et al.,

          Defendants-Appellants.

---

CALIFORNIA DEMOCRATIC PARTY;
CALIFORNIA CITIES,

          Amici Curiae.

No. 99-16995

DC# CV-99-2456-CW
Northern California
(Oakland)

ORDER

---

Before: BROWNING, WALLACE and LEAVY, Circuit Judges

    Defendants appeal from the district court's September 8, 1999 order

preliminarily enjoining them from enforcing San Francisco Administrative Code

§ 16.508.  We review for abuse of discretion the grant of a preliminary injunction.

*See Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir. 1982).

We affirm.

99-16995

Neither the Supreme Court nor this court has answered the serious, narrow and close legal question presented here.  Because that question is unresolved, and because we find that the harms cited by the parties are relatively equal, we conclude that the district court did not abuse its discretion by granting a preliminary injunction.  *See id.*  We express no opinion as to the constitutionality of section 16.508.

The stay entered by this court on October 5, 1999 is lifted.

The motions of the California Democratic Party and the California cities of Agoura Hills, San Diego, San Luis Obispo, Thousand Oaks, Long Beach, Los Angeles and San Buenaventura for leave to file amicus curiae briefs are granted. The Clerk is directed to file the amicus briefs received October 12, 1999 and October 14, 1999.

**AFFIRMED.**

# EXHIBIT J

RECEIVED

ORIGINAL
FILED

JUN 2 3 2000

JUN 2 6 2000

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

SAN FRANCISCANS FOR SENSIBLE
GOVERNMENT, SAN FRANCISCANS
FOR SENSIBLE GOVERNMENT
POLITICAL ACTION COMMITTEE,
KATHLEEN HARRINGTON,

Plaintiffs,

vs.

LOUISE RENNE and CITY AND
COUNTY OF SAN FRANCISCO,

Defendants.

Case No. C 99-2456 CW

[~~PROPOSED~~] STIPULATED
JUDGMENT

ENTERED IN CIVIL DOCKET    JUN    2000
19

JUN 2 9 2000

THE PARTIES HAVING REQUESTED ENTRY OF JUDGMENT PURSUANT TO A

SETTLEMENT AGREEMENT, WHICH IS HEREBY INCORPORATED, AND GOOD

CAUSE APPEARING, IT IS HEREBY ORDERED that:

1.      Defendants and all of their officers, agents, servants, employees, attorneys,

representatives, agencies, departments, and divisions shall not enforce Section 1.114 of the San

Francisco Campaign and Governmental Conduct Code (former S.F. Admin. Code § 16.508), as it

exists on the date of the entry of this judgment, to the extent that it limits the amount an

individual or entity may contribute to independent political action committees that have made

and will make only independent expenditures in support of or in opposition to a candidate and

that neither make direct contributions to a candidate or candidate-controlled committee nor

coordinate their expenditures with a candidate or candidate-controlled committee.[1]

---

[1] Section 16.508 of the San Francisco Administrative Code was recodified as section
1.114 of the San Francisco Campaign and Governmental Conduct Code.

PROPOSED STIPULATED JUDGMENT
CASE NO. C 99-2456 CW

1    2.    This judgment is entered by consent of the parties to settle litigation over section

2  1.114 of the San Francisco Campaign and Governmental Conduct Code (former S.F. Admin.

3  Code § 16.508) in the form that section exists on the date of entry of this judgment.  The

4  stipulated judgment shall not have any res judicata (claim preclusion) or collateral estoppel

5  (issue preclusion) effect in the event of future litigation over any future legislation adopted by

6  the City and County of San Francisco.  The parties are not precluded from contending in any

7  such future litigation that this Court's September 9, 1999 order granting a preliminary injunction

8  in this case has, or does not have, persuasive or precedential value.

9    3.    Plaintiffs waive any claim to attorney fees and each party shall bear its own

10  attorney fees and costs.

11

12        Dated:                                            CLAUDIA WILKEN

13                          JUN 2 6 2000        _____

14                                              CLAUDIA WILKEN
                                                UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED STIPULATED JUDGMENT                    2
CASE NO. C 99-2456 CW