J. Gerald Hebert
Tara Malloy
Paul S. Ryan
The Campaign Legal Center
1640 Rhode Island Ave., NW, Suite 650
Washington, DC  20036
Tel: (202) 736-2200
Fax: (202) 736-2222
tmalloy@campaignlegalcenter.org

*Counsel for Amici Curiae*

David Waggoner (Bar No. 242519)
3937 17th Street
San Francisco, CA 94114
Tel: (415) 305-7708
dpwaggoner@gmail.com

*Counsel for Amici Curiae*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND AND BUILDING OWNERS and MANAGERS ASSOCIATION OF SAN FRANCISCO INDEPENDENT EXPENDITURE POLITICAL ACTION COMMITTEE, political action committees organized under the laws of California and of the City and County of San Francisco,

Plaintiffs,

vs.

DENNIS J. HERRERA, in his official capacity as City Attorney of the City and County of San Francisco, KAMALA K. HARRIS, in her official capacity as District Attorney of the City and County of San Francisco, the SAN FRANCISCO ETHICS COMMISSION of the City and County of San Francisco, and CITY AND COUNTY OF SAN FRANCISCO,

Defendants.

No. C-07-3199 JSW

**BRIEF *AMICI CURIAE* FOR THE CALIFORNIA CLEAN MONEY CAMPAIGN, CALIFORNIA COMMON CAUSE, CAMPAIGN LEGAL CENTER, CENTER FOR GOVERNMENTAL STUDIES AND DEMOS IN SUPPORT OF DEFENDANTS**

# TABLE OF CONTENTS

Page

SUMMARY OF THE ARGUMENT ................................................................................1

ARGUMENT ................................................................................................................2

    I.   CFRO § 1.114(c) Is a Contribution Limit, and Is Not Subject to Strict
        Scrutiny Review ..............................................................................................2

        A.  Plaintiffs' Attempt to Conflate Contribution Limits and
             Expenditure Limits Is Contrary to Supreme Court Authority. .................2

        B.  The Application of Strict Scrutiny to San Francisco's
             Contribution Limits Would Have Consequences at the National
             Level. .....................................................................................................5

    II.  The Supreme Court Affirmed in *McConnell* that the Regulation of
        Contributions to Committees Making Independent Expenditures is
        Constitutional and Supported by Important Government Interests. .................8

        A.  The *McConnell* Decision Made Clear that Limiting Contributions
             to Committees That Make Independent Expenditures Is
             Constitutionally Permissible. ...................................................................8

        B.  The *McConnell* Court Found that the Regulation of
             Contributions to Political Parties – Even Those Used for
             Independent Expenditures – Was Supported by Important
             Government Interests ..............................................................................11

        C.  The State's Broad Anti-Corruption Interest Articulated in
             *McConnell* Also Supports the Constitutionality of CFRO §
             1.114(c). .................................................................................................13

CONCLUSION .............................................................................................................16

# TABLE OF AUTHORITIES

**Cases:**

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................................. *passim*

*California Medical Assn. v. FEC*, 453 U.S. 182 (1981) ..........................................6, 8, 9, 10

*Colorado Republican Fed. Campaign Committee v. FEC*, 518 U.S. 604 (1996) ......................4, 6

*FEC v. Beaumont*, 539 U.S. 146 (2003) ...........................................................................2, 3

*FEC v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431 (2001) .............11, 15, 16

*FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985) ....................................4

*Lincoln Club of Orange County v. City of Irvine*, 292 F.3d 934 (9th Cir. 2002) ...........................4

*McConnell v. FEC*, 540 U.S. 93 (2003).................................................................................. *passim*

*OAKPAC v. City Oakland*, No. 06-CV-06366-MJJ (N.D. Cal. Oct. 19, 2006)...............................4

*San Franciscans for Sensible Government v. Renne*, No. C-99-02456-CW (N.D. Cal. 1999),
*aff'd* No. 99-16995 (9th Cir. Oct. 20, 1999) ...................................................................................4

*San José Silicon Valley Chamber of Commerce Political Action Committee, et al. v. City of San
José, et al.*, No. C 06-04252 JW (Sept. 20, 2006), *on appeal*, No. 06-17001 (9th Cir. briefed
March 28, 2007) ..............................................................................................................................4

*Shrink Missouri Government PAC v. Nixon*, 528 U.S. 377 (2000) .................................................3


**Federal Statutes:**

Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81 (2002) ..................4

BCRA § 323(a), 2 U.S.C.A. § 441i(a) (West 2007) ..................................................................5, 11

BCRA § 323(b), 2 U.S.C.A. § 441i(b) (West 2007)........................................................................11

Internal Revenue Code, 26 U.S.C. § 527(e)(1)-(2) (West 2007) ....................................................6

2 U.S.C.A. § 431(4)(A) (West 2007).................................................................................................7

2 U.S.C.A. § 431(9)(A)(i) (West 2007).............................................................................................7

2 U.S.C.A. § 431(8)(A)(i) (West 2007).............................................................................................7

**State and Local Statutes**:

San José Municipal Code § 12.06.310......................................................................... 1-2

Cal. Gov't Code § 82031 .........................................................................................4

CFRO § 1.114(c)................................................................................ *passim*

CFRO § 1.100(b) .........................................................................................14

**Regulations and Administrative Materials:**

FEC Conciliation Agreement, MURs 5511 and 5525 (Dec. 13, 2006) .........................................7

FEC Conciliation Agreement, MUR 5754 (Dec. 13, 2007) .........................................7

## SUMMARY OF ARGUMENT

In 2000, San Francisco voters approved Proposition O, which included a limit on contributions to political committees making expenditures to support or oppose candidates in municipal elections. Plaintiffs claim that this contribution limit, codified at CFRO § 1.114(c), violates the First and Fourteenth Amendments to the extent it limits contributions to committees making only independent expenditures. *See* Plaintiffs' Motion for Preliminary Injunction ("PI Motion") at 1. *Amici* respectfully submit that plaintiffs are unlikely to succeed on the merits of this challenge, and urge this Court to reject their request for a preliminary injunction.

*Amici* focus on two arguments asserted by plaintiffs that are incorrect and contrary to Supreme Court precedent. *First*, plaintiffs portray the contribution limits of CFRO § 1.114(c) as expenditure limits subject to strict scrutiny. Plaintiffs' attempt to conflate contribution restrictions and expenditure restrictions contradicts long-standing Supreme Court precedent, *see, e.g.*, *Buckley v. Valeo*, 424 U.S. 1 (1976), which clearly distinguishes between the two types of restrictions. The mere fact that CFRO § 1.114(c) may reduce the funds available to plaintiffs for expenditures, an effect common to all statutory contribution limits, does not transform CFRO § 1.114(c) into an expenditure limit, nor warrant the application of strict scrutiny. *Second*, plaintiffs err in maintaining that the City's interest in preventing actual or apparent corruption is "not served by limits on contributions to independent political committees." *See* PI Motion at 15. This position is directly contrary to the Supreme Court's recent decision in *McConnell v. Fed. Election Comm'n* ("FEC"), 540 U.S. 93 (2003), a seminal case which plaintiffs inexplicably ignore. The *McConnell* Court upheld federal law limits on contributions to national and state parties, even if the party committees used such funds for independent expenditures. 540 U.S. at 134-73. The *McConnell* decision thus dispels any doubt regarding the constitutionality of limits on contributions to committees making independent expenditures.

## ARGUMENT

**I.  CFRO § 1.114(c) Is a Contribution Limit, and Is Not Subject to Strict Scrutiny Review.**

The threshold issue in this case is whether CFRO § 1.114(c) serves as a limit on expenditures, or a limit on contributions.  Section 1.114(c) imposes a $500 limit on contributions to a committee making expenditures to support or oppose a candidate in City elections, and a $3000 overall limit on a person's contributions to all such committees in a calendar year.  CFRO § 1.114(c)(1), (2).  Although these provisions set no limit on the overall spending of independent committees, the plaintiffs claim they act as a "direct restraint" of expenditures, warranting application of strict scrutiny.  *See* PI Motion at 14.  *Amici* submits that plaintiffs misconstrue the City's <u>contribution</u> limits as <u>expenditure</u> limits, and misconstrue Supreme Court precedent on this issue by arguing for application of strict scrutiny.

    A.    <u>Plaintiffs' Attempt to Conflate Contribution Limits and Expenditure Limits Is Contrary to Supreme Court Authority.</u>

Beginning with *Buckley*, the Supreme Court has subjected restrictions on campaign expenditures to closer scrutiny than limits on campaign contributions.  *See McConnell*, 540 U.S. at 134-38; *FEC v. Beaumont*, 539 U.S. 146, 161-62 (2003).  The difference in treatment is based on the Supreme Court's conclusion that a cap on expenditures imposes a greater burden on First Amendment rights than does a limit on contributions.

In *Buckley*, the Court found that expenditure limits bar individuals from "any significant use of the most effective modes of communication," and therefore represent "substantial … restraints on the quantity and diversity of political speech."  *Buckley*, 424 U.S. at 19-20.  Consequently, limits on expenditures must satisfy strict scrutiny review.  *Id*. at 44-45.  In contrast, a contribution limit "entails only a marginal restriction upon [one's] ability to engage in free communication," because "a contribution serves as a general expression of support for the

candidate and his views, but does not communicate the underlying basis for the support." *Id.* at 20, 21; *see also Shrink Missouri Government PAC v. Nixon*, 528 U.S. 377, 387-88 (2000).  *See also Beaumont*, 539 U.S. at 147-48 (holding that contributions "lie closer to the edges than to the core of political expression").  Furthermore, in terms of practical effect, a contribution limit leaves donors free to "engage in independent political expression," to "associate actively through volunteering their services," and to "assist to a limited but nonetheless substantial extent in supporting candidates and committees with financial resources."  *Buckley*, 424 U.S. at 28. Because contribution limits thus impose a lesser burden on First Amendment rights than do expenditure limits, they are constitutionally "valid" if they "satisf[y] the lesser demand of being closely drawn to match a sufficiently important interest." *McConnell*, 540 U.S. at 136, *quoting Beaumont*, 539 U.S. at 162 (internal quotations omitted).

Plaintiffs' characterization of San Francisco's contribution limit as "a direct restraint on independent expenditures by political committees" warranting strict scrutiny review is thus inconsistent with Supreme Court precedent and plainly in error.

First, CFRO § 1.114(c) is not a "direct restraint" on expenditures.  This section in no way caps or limits the total amount of money a political committee can spend for independent expenditures.  Political committees are free to accept contributions from as many individuals as are willing to contribute – and to spend every penny supporting or opposing candidates for City office.  In attempting to characterize CFRO § 1.114(c) as an expenditure limit, plaintiffs misapprehend the nature of the laws that have been deemed "expenditure limits" in Supreme Court precedent:

- *Buckley*, 424 U.S. at 39-40, 51, found unconstitutional Section 608(e)(1) of the Federal Election Campaign Act (FECA), which <u>capped</u> independent expenditures "relative to a clearly identified candidate during a calendar year" at $1,000.

- *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 501 (1985), struck down a law prohibiting an independent political committee from spending over $1,000 to further the campaign of a presidential candidate accepting public financing.

- *Colorado Republican Fed. Campaign Comm. v. FEC (Colorado I)*, 518 U.S. 604, 626 (1996), invalidated a section of FECA that <u>capped</u> the total independent expenditures a political party could make in general elections.

The case law makes clear that only those laws that function as an <u>absolute cap</u> on an entity's political expenditures are to be deemed "expenditure limits" subject to strict scrutiny.

Second, plaintiffs are wrong in suggesting that the <u>indirect</u> effect that CFRO § 1.114(c) may have on a political committee's expenditures warrants application of strict scrutiny.  Every contribution limit in federal, state and local campaign finance law has the indirect effect of reducing the funds available to the recipient candidate, party or committee to make expenditures. This does not transform a contribution limit into an expenditure limit.

Indeed, plaintiffs can only arrive at this absurd conclusion by ignoring *McConnell*, the dispositive case on this issue.[1]  There, the Supreme Court considered a challenge to several provisions of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81 (2002), that sought to check the stream of large "soft money" contributions into

---

[1]      The cases plaintiffs cite in support of their position either predate *McConnell* or have rendered no final decision.  Both *San Franciscans for Sensible Government v. Renne*, No. C-99-02456-CW (N.D. Cal. 1999), *aff'd* No. 99-16995 (9th Cir. Oct. 20, 1999), *see* PI Motion Exs. H & I, and *Lincoln Club of Orange County v. City of Irvine*, 292 F.3d 934 (9th Cir. 2002) are outdated.  They were decided before the *McConnell* decision upheld BCRA and made clear that contribution limits applied to independent party committees passed constitutional muster.  The two cases plaintiffs cite from this Court are both ongoing, and thus also have minimal precedential value.  *San José Silicon Valley Chamber of Commerce Political Action Committee, et al. v. City of San José, et al.*, No. C 06-04252 JW (Sept. 20, 2006), *on appeal*, No. 06-17001 (9th Cir. briefs fully submitted March 28, 2007) is currently on appeal to the Ninth Circuit Court of Appeals.  Similarly, *OAKPAC v. City Oakland*, No. 06-CV-06366-MJJ (N.D. Cal. Oct. 19, 2006) is still in its preliminary stages: plaintiffs cite only an interlocutory order granting a temporary restraining order.  Indeed, the *OAKPAC* case has been stayed in light of the ongoing *San José C*OMPAC appeal.  *See* PI Motion Ex. F.  Thus, as even this cursory review makes clear, the legal authority cited by plaintiffs in no way requires this Court to rule in favor of plaintiffs and contrary to long-standing Supreme Court campaign finance precedent.

national, state and local party committees.  One soft money provision – which resembles CFRO § 1.114(c) – imposes federal contribution limits on all funds raised and spent by national party committees, regardless whether the funds are ultimately used for candidate contributions, coordinated expenditures or wholly independent expenditures.  *See* 2 U.S.C.A. § 441i(a) (West 2007).  The *McConnell* Court rejected plaintiffs' argument that, because BCRA's soft money provisions affect not only a party's contributions to candidates but also its independent "spending of funds," the provision should be reviewed under strict scrutiny.  540 U.S. at 138. Instead, the Court found that the soft money provisions do not "in any way limit[] the total amount of money parties can spend," and only restrict the "source and individual amount" of donations.  *Id*. at 139.  The overall effect of such a contribution limit is "merely to require candidates and political committees to raise funds from a greater number of persons."  *Id*. at 136, *citing Buckley*, 424 U.S. at 21-22.  Similarly, here CFRO § 1.114(c) only restricts the "source and individual amount" of donations to political committees.  If the plaintiffs wish to increase their independent expenditures in City elections they can do so through the simple expedient of increasing their donor base.  According to the reasoning in *McConnell*, CFRO § 1.114(c) thus functions purely as a contribution limit, and should be reviewed as such.

      B.    <u>The Application of Strict Scrutiny to San Francisco's Contribution Limits Would Have Consequences at the National Level.</u>

This Court should also note that the conflation of contribution limits and expenditure limits has implications that extend beyond the instant case.  A decision to apply strict scrutiny to San Francisco's contribution limits here would undermine the national structure of campaign finance jurisprudence, which since *Buckley*, has relied upon the distinction between contribution limits and expenditure limits in determining the appropriate standard of review.  It is no answer to say that the plaintiffs' expenditures are independent, and that the application of strict scrutiny

is warranted on that basis. There are many federal contribution limits that potentially reduce the money available to parties and political committees for independent expenditures – but that have been upheld by the Supreme Court as constitutionally permissible. *See, e.g.*, *California Medical Assn. v. FEC*, 453 U.S. 182 (1981) (*CalMed*) (upholding $5,000 limit on contributions to multicandidate political committees). Indeed, the *McConnell* decision depends upon the constitutionality of limiting contributions to political parties even if the limits affect the parties' independent spending. *See* discussion of *McConnell*, *supra*. This point is also illustrated by *Colorado I,* where the Supreme Court struck down FECA's limit on party independent expenditures, but did not disturb the contribution limits governing the parties' fundraising – even though these contribution limits indirectly affected the parties' independent spending. 518 U.S. at 616-17. Were this Court to apply strict scrutiny to CFRO § 1.114(c) because of its indirect effect on independent expenditures, the logic of this decision would conflict with longstanding Supreme Court precedent and dictate application of strict scrutiny to many existing contribution limits, which hitherto have been subject to a less rigorous standard of review.

Moreover, the invalidation of San Francisco's contribution limits in this case would also run counter to recent actions by the FEC to regulate so-called "527 groups," named after Section 527 of the Internal Revenue Code under which they are organized. *See* 26 U.S.C.A. § 527 (West 2007). These groups played a prominent role in the 2000, 2004 and 2006 federal elections, serving as conduits for huge sums of unregulated money from wealthy individuals and entities. Like plaintiffs here, the election-related activities of these 527 groups consisted <u>exclusively of making independent expenditures</u>.[2] Notwithstanding the wholly independent nature of these

---

[2]    These groups attempted to evade the election laws by claiming that they that they did not meet the definition of "political committee" under FECA – *i.e.* they did not "receive[] contributions aggregating in excess of $1,000 . . . or make[] expenditures aggregating in excess

groups' activities, the FEC in recent months has determined that several 527 groups active in past elections violated federal law by failing to register as "political committees" and comply with federal contribution limits and disclosure requirements.  Progress for America Voter Fund, for example, paid a $750,000 civil penalty for its failure to register as a political committee and comply with applicable contribution limits.  *See* Conciliation Agreement, Matter Under Review ("MUR") 5487 (February 28, 2007).[3]  Similarly, Swift Boat Veterans paid a $299,500 civil penalty for its failure to register as a political committee and comply with applicable contribution limits.  *See* Conciliation Agreement, MURs 5511 and 5525 (Dec. 13, 2006).[4]

It is important to note that the FEC's enforcement of federal contribution limits with respect to these 527 groups did not turn on whether the group's expenditures were "independent."  Instead, the FEC's analysis rests upon a two-part inquiry: (1) whether the 527 group met the statutory definition of "political committee,"[5] and (2) whether the group had as a major purpose "the nomination or election of a candidate."  *See Buckley*, 424 U.S. at 79 (1976).  Pursuant to this two-part test, the FEC found that 527 groups such as Swift Boat Veterans were "political committees" because they had made independent expenditures exceeding $1,000, and had as their "major purpose" election activity, as evidenced by the nature of their independent spending and their public statements or positions.  In short, the FEC found that certain 527 groups were political committees – subject to contribution limits – by virtue of their independent expenditures in federal elections, and could be regulated as such without constitutional violation.

---

of $1,000" during a calendar year "for the purpose of influencing any election for Federal office."  2 U.S.C.A. §§ 431(4)(A), (8)(A)(i), (9)(A)(i) (West 2007).  As a result, these groups asserted that they could not be constitutionally required to comply with the contribution limits, source prohibitions and disclosure requirements that apply under FECA to political committees.

[3]  *Available at* http://eqs.nictusa.com/eqsdocs/00005AA7.pdf.

[4]  *Available at* http://eqs.nictusa.com/eqsdocs/00005900.pdf.

[5]  *See* n.2 *supra.*

The analysis governing the FEC's regulation of 527 groups clearly implicates independent expenditure groups like plaintiffs.  The FEC's test for "political committee" status – focusing on the level of a group's expenditures (or contributions) and its major purpose – would likely encompass plaintiffs, if they spent money to influence federal elections.[6]  Certainly, it does not appear that CFRO § 1.114(c) regulates significantly more speech activity or a broader category of political committees than FECA does on the federal level.  A decision by this Court to strike down CFRO § 1.114(c) as violative of the First Amendment would thus contradict the analytical framework that governs the FEC's evaluation of 527 group activity.

## II.  The Supreme Court Affirmed in *McConnell* that the Regulation of Contributions to Committees Making Independent Expenditures Is Constitutional and Supported by Important Government Interests.

The instant case turns on whether the state can limit contributions to committees that make only independent expenditures, and whether such contribution limits are justified by a "sufficiently important state interest."  Until the 2003 Supreme Court decision in *McConnell*, this issue was an open question in campaign finance law.  In *McConnell*, however, the Supreme Court upheld BCRA's provisions limiting contributions to party committees, even those used for independent spending, and made clear that contribution limits on political committees making independent expenditures were justified by the state's anti-corruption interest.

A.  The *McConnell* Decision Made Clear that Limiting Contributions to Committees That Make Independent Expenditures Is Constitutionally Permissible.

The Supreme Court has long held that contributions to political action committees can be limited without running afoul of the First Amendment.  In *CalMed*, the Court upheld FECA's $5,000 limit on contributions to multicandidate political committees.  *See* 453 U.S. at 185, *citing*

---

[6]     Both plaintiffs state that they intend to make "independent expenditures" in San Francisco elections in support or opposition to City candidates.  *See* PI Motion at 4-5, 8-9. Plaintiffs' motion further indicates that their major purpose – and perhaps their sole purpose – would be related to the nomination or election of candidates in City elections.  *See id.*

2 U.S.C. § 441a(a)(1)(C).  Although the plaintiffs argued that the contribution limit was "akin to an unconstitutional expenditure limit," *CalMed*, 453 U.S. at 195, the Court rejected this argument.   Appling a less rigorous standard of review appropriate for contribution limits, the Court found that the $5,000 limit served the state's interests in preventing actual or apparent corruption, and in preventing circumvention of FECA's other contribution restrictions.  *Id.* at 195-98.

Although *CalMed* did not directly address the constitutionality of limits on contributions to committees making only independent expenditures,[7] the *McConnell* decision has eliminated all doubt on this issue.  The *McConnell* Court noted that its earlier *CalMed* decision had necessarily upheld limits on contributions to committees used to make independent expenditures:

> [In *CalMed*], we upheld FECA's $ 5,000 limit on contributions to multicandidate political committees.  It is no answer to say that such limits were justified as a means of preventing individuals from using parties and political committees as pass-throughs to circumvent FECA's $1,000 limit on individual contributions to candidates.  Given FECA's definition of

---

[7]      In *CalMed*, the plurality opinion appeared to avoid considering "the hypothetical application" of FECA to political committees that make only independent expenditures.  *Id.* at 197, n.17.  Further, in a separate opinion, Justice Blackmun, whose fifth vote was necessary for the decision, suggested that FECA's $5,000 limit could <u>not</u> apply to such committees.  *Id.* at 203 (Blackmun, J., concurring in judgment) ("[a] different result would follow if [the $ 5,000 limit] were applied to contributions to a political committee established for the purpose of making independent expenditures").  However, because CALPAC, the committee at issue in *CalMed*, made direct contributions to candidates, the idea of a committee making only independent expenditures was merely a hypothetical.  Blackmun's suggestion was therefore dictum, and would not have been controlling even if he had represented the majority.
      Justice Blackmun's vote in *CalMed* also undercut his dictum.  The plaintiff had argued that even if Congress could limit contributions that the committee would ultimately use for candidate contributions, Congress could not limit those contributions used for administrative expenses and other independent expenditures.  Brief of Appellants at 34-35, *CalMed*, 453 U.S. 182 (1981).  The fact that CALPAC made independent expenditures did not appear to trouble the plurality – or Justice Blackmun.  The Court upheld the limit without regard to how the committee would ultimately use its contributions.  That the Court (with Justice Blackmun's vote) did not strike down the limit on this ground – or narrowly construe the limit as applicable only to funds used to make contributions to candidates – necessarily challenges Blackmun's own stated misgivings about regulating committees making only independent expenditures.

"contribution," the $5,000 … limi[t] restricted not only the source and amount of funds available to parties and political committees to make candidate contributions, but also the source and amount of funds available to engage in express advocacy and numerous other noncoordinated expenditures.

540 U.S. at 152 n.48 (emphasis added).  As the last sentence makes clear, in the view of the *McConnell* Court, *CalMed* held that Congress could limit contributions to entities that would use them for independent expenditures.

The *McConnell* Court continued by noting that *CalMed* could not have upheld FECA's broad limit on contributions to multicandidate political committees without necessarily deciding this point.  With respect to party committees, the type of committee at issue in this portion of *McConnell* itself, the Court wrote in the very next sentence after the passage quoted above:

If indeed the First Amendment prohibited Congress from regulating contributions to fund [express advocacy and numerous other independent expenditures], the otherwise-easy-to-remedy exploitation of parties as pass-throughs (e.g., a strict limit on donations that could be used to fund candidate contributions) would have provided insufficient justification for such overbroad legislation.

*Id*. at 152 n.48.  In other words, if contributions ultimately used to make independent expenditures had no corruptive potential, the overall limit on contributions to multicandidate committees would have been unsustainable.  Congress could have justified the limit only insofar as it remedied so-called "pass-through" corruption and much more narrowly tailored remedies, like "a strict limit on donations that could be used to fund candidate contributions," could have addressed such pass-through corruption concerns.  *Id*.  Thus, the overall limit on contributions to multicandidate committees would have been unconstitutionally overbroad if contributions to committees making only independent expenditures were sacrosanct.  *McConnell* thus clarifies that *CalMed* necessarily stands for the proposition that the state may limit contributions to political committees making independent expenditures.

B. The *McConnell* Court Found that the Regulation of Contributions to Political Parties – Even Those Used for Independent Expenditures – Was Supported by Important Government Interests.

The Supreme Court's decision in *McConnell* to uphold BCRA's soft money provisions reinforces *CalMed*'s proposition that the regulation of contributions to committees making independent expenditures is constitutionally permissible. If contributions that were eventually used as independent expenditures in federal elections had no corruptive potential – if they were always and necessarily sacrosanct – then the Court would have had to strike down many of the soft money provisions it upheld in *McConnell*. Instead, the Court found that the soft money provisions were justified by the state's interest in preventing actual and apparent corruption, broadly defined as "undue influence on an officeholder's judgment, and the appearance of such influence." *Id.* at 150, *quoting FEC v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431, 441 (2001) (*Colorado II*).

The "core" soft money provision considered in *McConnell*, BCRA Section 323(a), codified at 2 U.S.C.A. § 441i(a) (West 2007), subjects all funds solicited, received, directed, or spent by the national parties to federal contribution limits regardless of their ultimate use. Section 323(b) extends this requirement to state and local party entities, imposing federal limits on contributions to such entities which are used to finance "federal election activity," including voter registration, voter identification, and public communications that promote or oppose a clearly identified federal candidate. *See* 2 U.S.C.A. § 441i(b) (West 2007). Significantly, none of the "federal election activities" set forth in Section 323(b) necessarily involves contributions to candidates, and most often such activities are undertaken independently of candidates.

Even though BCRA limited contributions that were ultimately used for independent spending, *McConnell* held that Sections 323(a) and (b) are constitutional, and closely drawn to match the important state interest of preventing corruption and the circumvention of the

campaign finance laws.  The *McConnell* majority construed the state's anti-corruption interest broadly.  It expressly rejected the reasoning of Justice Kennedy's dissenting opinion, which asserted that only contributions "made <u>directly to</u>" or used "in <u>coordination with</u>" a federal office holder or candidate are potentially corrupting.  540 U.S. at 152 (emphasis added); *see also id.* at 286-341 (Kennedy, J., concurring in judgment in part, and dissenting in part).  The majority instead determined that large contributions, even those made to political parties and used for independent expenditures, threaten the integrity of the political system, because they allow contributors to gain access and influence over federal candidates.  *See id.* at 146-48 (influence), 149-51 (access and influence).  As the Court noted, "large soft-money contributions … are likely to create actual or apparent indebtedness on the part of federal officeholders, regardless of how those funds are ultimately used."  *Id.* at 156.

This broad understanding of the state's anti-corruption interest was based on the *McConnell* Court's understanding of the "realities of political fundraising," where information about fundraising flowed freely between party committees and candidates.  *Id.* at 152.  The record in *McConnell* indicated that party committees made candidates "well aware" of contributors to the party, and donors themselves "would report their generosity to officeholders." *Id.* at 147.  Indeed, candidates were active participants in the circumvention of campaign finance laws and "commonly asked donors to make soft-money donations to the national and state committees" in order to assist their campaign.  *Id.* at 146.  Given the exchange of information between the party committees and federal candidates, "[i]t is not only plausible, but likely, that candidates would feel grateful for [soft money donations to parties] and that donors would seek to exploit that gratitude."  *Id.* at 145.

In addition, the Court recognized that Sections 323(a) and (b) serve Congress's interest in preventing circumvention of campaign finance laws. Regarding the constitutionality of Section 323(b), for instance, the *McConnell* Court affirmed that Congress could limit all contributions to state party committees used "for the purpose of influencing federal elections." *Id*. at 167. Although these activities might not pose a threat of state and local parties themselves corrupting federal candidates, they would allow the contributors to corrupt <u>through</u> these committees:

> Congress knew that soft-money donors would react to §323(a) by scrambling to find another way to purchase influence. It was neither novel nor implausible for Congress to conclude that political parties would react to §323(a) by directing soft-money contributions to the state committees, and that federal candidates would be just as indebted to these contributors as they had been to those who had formerly contributed to the national parties. … Preventing corrupting activity from shifting wholesale to state committees and thereby eviscerating FECA clearly qualifies as an important governmental interest.

*Id*. at 165 (internal citations and quotations omitted). The Court thus affirmed that circumvention is a valid state concern, even if the funds raised outside the limits would be used only for independent spending.

In upholding BCRA's soft money provisions, then, *McConnell* necessarily found that contributions to party political committees can corrupt, regardless whether such contributions are used for coordinated or independent expenditures. The Court's key observation was that a contribution's ultimate use is not the basis for identifying its corruptive potential. Rather, the potential for corruption stems from the ability of donors to gain undue access to and influence over candidates as a result of their contributions to a political party.

C. <u>The State's Broad Anti-Corruption Interest Articulated in *McConnell* Also Supports the Constitutionality of CFRO § 1.114(c).</u>

The state interests recognized in *McConnell* as justifying the federal limits on contributions to party committees also supports San Francisco's limits on contributions to <u>non-party</u> committees making independent expenditures. The San Francisco campaign finance

statute, including CFRO § 1.114(c), was enacted to "eliminate or reduce the appearance or reality that large contributors may exert undue influence over elected officials." CFRO § 1.100(b). Thus, in enacting CFRO § 1.114(c), the City and its voters recognized that contributions to political committees are potentially corruptive – regardless of whether the contributions are ultimately used for direct candidate contributions or independent expenditures.[8]

Plaintiffs attempt to discount San Francisco's articulated interest in the contribution limit, claiming that the Supreme Court has "emphatically rejected the notion that independent expenditures by political committees can be linked to any candidate corruption or the appearance of candidate corruption." PI Motion at 15. In so arguing, plaintiffs contradict the holding of *McConnell*. As discussed above, *McConnell* upheld contribution limits on national and state parties, even insofar as they applied to party committees engaged only in independent, non-coordinated federal election activities. The *McConnell* Court expressly <u>rejected</u> plaintiffs' position – *i.e.* that only "contributions made directly to" and "expenditures made in coordination with a federal officeholder" were corruptive – as contrary to "precedent" and "common sense." *McConnell*, 540 U.S. at 152.

In addition to misconstruing *McConnell*, plaintiffs also failed to recognize that in reality contributions to independent committees, like contributions to political parties, lead to actual and apparent corruption in the electoral system. Political parties and independent committees share three essential features that make both entities ideal conduits for contributors who seek to gain influence over candidates and officeholders.

---

[8]    Due to page limit constraints of this brief, *amici* are unable to detail the extensive evidentiary record, compiled by the City prior to voter-enactment of Proposition O, demonstrating an appearance of corruption resulting from large contributions to committees making independent expenditures to influence San Francisco elections in 1999 and 2000. *Amici* respectfully urge the Court to consider such evidence offered in Defendants' Opposition Brief as supporting *amici*'s arguments herein.

First, both party committees and independent political committees exist primarily to advocate for the election or defeat of candidates.  The plaintiffs here are political committees registered with the San Francisco Ethics Commission,[9] which "engage in independent speech in support of or against candidates for elective office."  PI Motion at 2.  Because of this exclusive focus, political committees, like parties, have the "capacity to concentrate power to elect candidates."  *Colorado II*, 533 U.S. at 455.  By pooling individual resources and monitoring, rewarding, and punishing more effectively than can any individual the behavior of candidates and officeholders, political committees "marshal the same power and sophistication for the same electoral objectives as the political parties themselves."  *Id*.  This focus and "capacity to concentrate power" distinguishes both parties and political committees from other independent political players, such as private individuals, which have fewer resources, broader commitments and less inclination to concentrate exclusively on influencing candidate elections.

Second, the informational exchange that takes place between political parties and candidates also occurs between political committees and candidates they support.  As the record indicated in *McConnell*, candidates notice the large contributions received by party committees, and "feel grateful" for such contributions, even if the party uses such contributions for independent party expenditures.  *See McConnell,* 540 U.S. at 145.  It is likely that candidates are equally aware of contributions that go to <u>non-party</u> committees, and equally appreciative of independent committee expenditures that support their campaigns.  Particularly in the microcosm of a municipal election, it is improbable that a local candidate would not note the identities of the individual contributors who made large contributions to those political committees that independently spent money on the candidate's behalf.

---

[9]     Campaign finance reports filed by both committees are available via the San Francisco Ethics Commission's Web site at http://sunset.ci.sf.ca.us/olfspublish300.nsf.

Lastly, and closely related to the first two similarities, is the potential for circumvention posed by parties and political committees. *See Colorado II*, 533 U.S. at 455-56. Because of their narrow focus, electoral power and publicly-recognized fundraising abilities, independent committees, like parties, are "effective conduits for donors desiring to corrupt … candidates and officeholders." *McConnell*, 540 U.S. at 156 n.51. Indeed, the *McConnell* Court acknowledged that independent tax-exempt organizations, such as political organizations registered under Section 527 of the Internal Revenue Code, represented the new front for large-scale circumvention of FECA. *Id.* at 176-80. Similarly, the plaintiffs here present an attractive opportunity for both private donors and political parties to launder large donations through an independent entity that supports their preferred candidates. Finally, even if donors to independent committees are not actually seeking to "corrupt" candidates, this situation certainly gives rise to the appearance that donors are attempting to circumvent San Francisco's campaign finance statutes to acquire political influence over candidates and officeholders.

Due to these characteristics shared by both political parties and independent committees, the same anti-corruption and anti-circumvention interests that support federal limits on contributions to party committees likewise support San Francisco's limits on contributions to committees making independent expenditures.

## CONCLUSION

For the reasons set forth above, this Court should deny plaintiffs' motion for a preliminary injunction.

**RESPECTFULLY SUBMITTED** this 27th day of August, 2007.

By: /s/ David Waggoner

DAVID WAGGONER, CA Bar No. 242519
3937 17th Street
San Francisco, CA 94114
Tel: (415) 305-7708
dpwaggoner@gmail.com

J. GERALD HEBERT, DC Bar No. 447676
TARA MALLOY, NY Bar No. 4251005
PAUL S. RYAN, CA Bar No. 218212
THE CAMPAIGN LEGAL CENTER
1640 Rhode Island Ave. NW,
Suite 650
Washington, DC  20036
Tel: 202-736-2200
Fax: (202) 736-2222
tmalloy@campaignlegalcenter.org

*Counsel for Amici Curiae*