DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE K. SNODGRASS, State Bar #148137
JONATHAN GIVNER, State Bar #208000
ANN O'LEARY, State Bar #238408
Deputy City Attorneys
#1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:    (415) 554-4694
Facsimile:     (415) 554-4675
E-Mail:         jon.givner@sfgov.org

Attorneys for Defendants
DENNIS J. HERRERA and CITY AND COUNTY
OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND and BUILDING OWNERS AND MANAGERS ASSOCIATION OF SAN FRANCISCO INDEPENDENT EXPENDITURE POLITICAL ACTION COMMITTEE, political action committees organized under the laws of California and of the City and County of San Francisco,<br><br>            Plaintiffs,<br><br>      vs.<br><br>DENNIS J. HERRERA, in his official capacity as City Attorney of the City and County of San Francisco, KAMALA D. HARRIS, in her official capacity as District Attorney of the City and County of San Francisco, the SAN FRANCISCO ETHICS COMMISSION of the City and County of San Francisco, and CITY AND COUNTY OF SAN FRANCISCO,<br><br>            Defendants. | Case No. C 07 3199 JSW<br><br>**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:     September 17, 2007<br>Time:                  1:30 p.m.<br>Place:                 Courtroom 2<br><br>Trial Date: |

I, John St. Croix, declare as follows:

1. I have personal knowledge of the matters set forth herein, except as to matters I have specifically indicated are based on information and belief, which I believe to be true.

**BACKGROUND REGARDING SAN FRANCISCO ETHICS COMMISSION**

2. I currently serve as the Executive Director of the San Francisco Ethics Commission ("the Commission"). I have served in this position since August 9, 2004.

3. The Commission serves the public, city employees and officials and candidates for public office through education and enforcement of ethics laws. The voters of the City and County of San Francisco ("the City") amended the City Charter to establish the Commission in November 1993. Chapter 15 and Appendix C of the City Charter set forth the powers and duties of the Commission. As set forth in the Charter, the Commission is comprised of five members appointed by five different elected City officers. The members of the Commission serve staggered six-year terms. The Commission has the power to hire an Executive Director, who serves as the chief executive of the Commission's staff.

4. The Commission acts as filing officer for, and auditor of, financial disclosure statements filed by political candidates and committees and designated City and County employees. The Commission assesses fees and penalties for failure to adhere to deadlines and requirements, audits statements to ensure compliance with contribution limits, administers an education program, and produces educational materials. It also oversees the City's registration and regulation of campaign consultants and lobbyists, investigates local ethics complaints, provides advice on ethical matters and publishes statistical reports.

5. Among other responsibilities, the Commission and its staff may recommend new laws, rules and programs regarding campaign finance and governmental ethics. By a four-fifths vote, the Commission may submit to the City's voters at a general election any ordinance which the City's Board of Supervisors would be empowered to pass relating to conflicts of interest, campaign finance, lobbying, campaign consultants or governmental ethics. *See* San Francisco Charter § 15.102. Additionally, the Commission has the authority to adopt, amend and rescind rules and regulations consistent with and related to carrying out the City's local laws regarding campaign finance, conflicts

of interest, lobbying, campaign consultants, and governmental ethics. *See id.* When the Commission adopts such a rule or regulation, it goes into effect 60 days after adoption unless two-thirds of the City's Board of Supervisors vote to veto the rule or regulation. *See id.*

6. The Ethics Commission meets once a month for noticed public meetings held in accordance with state and local public meetings laws. Prior to each meeting, the Commission's staff compiles a package of materials related to topics within the jurisdiction of the Commission. Commonly, these "agenda packets" include memoranda prepared by staff members regarding topics on the agenda for the upcoming meeting as well as articles from local or national press regarding the Ethics Commission's activities. The staff provides copies of these packets to members of the Commission in advance of each meeting and occasionally supplements the packets with additional information on the day of the meeting. Copies of the materials, excluding confidential information, are also made available to members of the public. Each meeting is recorded, and the Commission's staff drafts minutes after each meeting. Prior to final adoption at a future meeting, the Commission may make amendments to the minutes to ensure that they accurately reflect what took place during the meeting. After their adoption, the minutes from each meeting serve as the record of the Commission's discussion and action at that meeting.

7. As the Executive Director of the Ethics Commission, I am the custodian of records for the documents that the Commission maintains. Accordingly, I supervise the maintenance of records relating to meetings and campaign finance filings.

**THE ETHICS COMMISSION'S CONSIDERATION OF CAMPAIGN FINANCE REFORM IN 1999 AND 2000**

8. I understand that the plaintiffs in this lawsuit challenge Sections 1.114(c)(1) and 1.114(c)(2) of San Francisco's Campaign and Governmental Conduct Code, as well as Regulation 1.114-2 of the Regulations to the Campaign Finance Reform Ordinance. Sections 1.114(c)(1) and 1.114(c)(2) were enacted into law by the San Francisco voters through the adoption of Proposition O in 2000. The Ethics Commission placed the measure that became Proposition O on the ballot in June 2000 pursuant to its authority under San Francisco Charter section 15.102.

9. I understand and believe that on November 1, 1999, the City's Board of Supervisors ("the Board") passed Resolution Number 1018-99 urging the Ethics Commission to study and hold public hearings on measures designed to curb the influence of special-interest contributions on public policy and administration, including public financing of candidate campaigns for local elective office; to consider specific components of a public financing measure; to consider other campaign finance reforms designed to reduce the influence of campaign contributions on the design and/or award of public contracts; to consider expanded disclosure requirements for candidate, independent expenditure, and non-candidate controlled committees; to submit such proposed campaign reform measures as it deemed necessary to the Board of Supervisors for their consideration; and to study and recommend to the Board of Supervisors methods by which the City and County could provide candidates for public office with cost-effective, direct access to voters. I base this understanding on the Board's minutes from its November 1, 1999 meeting, which I reviewed at http://www.sfgov.org/site/bdsupvrs_page.asp?id=11821.

10. Based on records kept by the Commission, I understand that between November 1999 and June 2000, the City's Ethics Commission held 13 regular and special meetings at which the Commission and/or its staff discussed or considered proposals regarding submitting to the voters a measure to amend the City's Campaign Finance Reform Ordinance and adopt a public financing program. The Commission held public meetings on November 8, 1999; December 1, 1999; December 2, 1999; December 6, 1999; January 10, 2000; January 13, 2000; February 7, 2000; February 15, 2000; March 13, 2000; April 17, 2000; May 15, 2000; June 12, 2000; and June 26, 2000. Commission staff prepared agenda packets for Commission members in advance of each of these meetings. At each of these meetings, the Commission heard comment from members of the public who were present, as reflected in the minutes of the meetings. The agenda packets and minutes for these meetings are retained as public records by the Commission.

11. Attached hereto as Exhibit A are true and correct copies of the agenda and minutes for the Commission's meeting of November 8, 1999 and the following selected materials from the agenda packet for that meeting: two memoranda from Ginny Vida, the Commission's Executive Director, dated November 1, 1999, and a third memorandum from Ms. Vida dated November 3, 1999. The

1  agenda, minutes and the memoranda briefly describe the Board of Supervisors' November 1, 2000
2  resolution and the Commission's charge to draft legislation to implement campaign finance reform.
3  At that meeting, the Commission directed its staff to draft an ordinance for consideration by the
4  Commission for possible placement on the March 2000 ballot.

5      12.    On December 1, 1999, the Commission held a special meeting to consider legislation
6  regulating campaign finance. Attached hereto as Exhibit B are true and correct copies of the agenda
7  and minutes for the Commission's meeting of December 1, 1999 and a memorandum included in the
8  agenda packet from Ms. Vida to the Commission explaining the staff's proposed legislation to create
9  a public financing program for campaigns for local elective office.

10     13.    On December 2, 1999, the Commission held a second special meeting to consider
11 legislation regulating campaign finance. Attached hereto as Exhibit C are true and correct copies of
12 the agenda and minutes for the Commission's meeting of December 2, 1999 and a memorandum
13 included in the agenda packet from Ms. Vida to the Commission explaining the staff's alternative
14 proposal of a pilot program for partial public financing of campaigns for local office.

15     14.    On December 6, 1999, the Commission held a regular meeting at which it continued to
16 discuss potential legislation regulating campaign finance. Attached hereto as Exhibit D are true and
17 correct copies of the agenda and minutes for the Commission's meeting of December 6, 1999 and
18 selected local media articles included in the agenda packet for that meeting. The newspaper articles
19 included in the packet stated that "prominent associations of big and small business leaders are
20 vowing to do whatever it takes to help Mayor Willie Brown beat [opponent Tom] Ammiano in the
21 Dec. 14 runoff election"; "[o]rganizations such as the Building Owners and Managers Association
22 and San Franciscans for Sensible Government, a business lobbying group, spent thousands during the
23 fall" and "big money [from business] is headed [Mayor Brown's] way again for the last three weeks
24 of the campaign"; and "the mayor's big-spending backers aren't bound by any similar restrictions. . . .
25 [M]ore than $332,000 already has been pumped into efforts to re-elect Brown, with much more
26 expected to come." At that meeting, as reflected on page 5 of the minutes, the Commission passed a
27 motion to complete hearings and make a recommendation to the Board of Supervisors on proposed
28 legislation in time for the November election.

15. On January 10, 2000, the Commission held a regular meeting at which it continued to discuss potential legislation. Attached hereto as Exhibit E are true and correct copies of the agenda and minutes for the Commission's meeting of January 10, 2000 and a Board of Supervisors resolution included in the agenda packet for that meeting. At that meeting, as reflected in the minutes, the Commission heard testimony from several experts, including Robert Stern, the Director of the Center for Governmental Studies; Rebecca Avila, the Executive Director of the Los Angeles Ethics Commission; and Tom Volgy, former Mayor of Tucson, Arizona. At this meeting, the Commission considered a resolution introduced at the Board of Supervisors noting that "[c]ommittees that make independent expenditures are playing an increasingly significant role in local election campaign[s]" and that "[t]he purpose of . . . contribution limits and disclosure requirements is to prevent real and apparent corruption of elected officials and promote more voter confidence in the integrity of local elections and government." The January 10 meeting was the first televised meeting of the Ethics Commission.

16. On January 13, 2000, the Commission held another special meeting to discuss potential legislation. Attached hereto as Exhibit F are true and correct copies of the agenda and minutes for the Commission's meeting of January 13, 2000 and the following selected materials included in the agenda packet for that meeting: a memorandum dated January 7, 2000 titled "Televising of January 10 Meeting"; and an undated memorandum titled "Overview of Los Angeles Campaign Finance System." At that meeting, as reflected in the minutes, the Commission's Deputy Director reported the contents of her conversations regarding public financing programs with Ruth Jones, a member of the Arizona Clean Elections Commission and Professor of Political Science at Arizona State University; Ray Lisi of the Federal Elections Commission; and Bruce Cain, Professor of Political Science at University of California at Berkeley.

17. On February 7, 2000, the Commission held another special meeting to discuss potential legislation. Attached hereto as Exhibit G are true and correct copies of the agenda and minutes for the Commission's meeting of February 7, 2000 as well as the following selected materials from the agenda packet for that meeting: a memorandum from Ginny Vida; and an email message from Commissioner Robert Dockendorff. At that meeting, as reflected in the minutes, the

1  Commission discussed reporting requirements for committees that make independent expenditures
2  benefiting candidates in local races.

3       18.    On February 15, 2000, the Commission held a regular meeting at which it continued to
4  discuss potential legislation.  Attached hereto as Exhibit H are true and correct copies of the agenda
5  and minutes for the Commission's meeting of February 15, 2000 as well as the following selected
6  materials from the agenda packet for that meeting:  a memorandum from the Clerk of the Board of
7  Supervisors and a memorandum from Ms. Vida titled "Amending the San Francisco Administrative
8  Code to Provide for Public Financing of Election Campaigns."  At that meeting, as reflected in the
9  minutes, the Commission voted to adopt draft legislation amending the Campaign Finance Reform
10 Ordinance and to forward the legislation to the Board of Supervisors.  The legislation proposed the
11 creation of a public financing system and new disclosure requirements for committees making
12 independent expenditures.

13      19.    On March 13, 2000, the Commission held a regular meeting at which Ms. Vida
14 reported to the Commission regarding the legislation.  Attached hereto as Exhibit I are true and
15 correct copies of the agenda and minutes for the Commission's meeting of March 13, 2000 as well as
16 the following selected materials from the agenda packet for that meeting:  the Executive Director's
17 Report, and a copy of Ms. Vida's February 16, 2000 testimony before the Board of Supervisors'
18 Finance Committee.

19      20.    On April 17, 2000, the Commission held a regular meeting at which Ms. Vida reported
20 to the Commission regarding the legislation.  Attached hereto as Exhibit J are true and correct copies
21 of the agenda and minutes for the Commission's meeting of April 17, 2000 and the following selected
22 materials included in the agenda packet for that meeting:  the Executive Director's Report; an April
23 14, 2000 memorandum from Ms. Vida titled "Three public financing proposals that will be
24 considered by the Finance Committee on April 19, 2000"; the Board of Supervisors' Legislative
25 Digest for these three pieces of legislation titled "Public Financing of Election Campaigns," "Public
26 Finance and Disclosure for Campaigns" and "Public Matching Funds and Disclosure for Campaigns";
27 and copies of Ms. Vida's April 5, 2000 and April 12, 2000 testimony before the Board of Supervisors'
28 Finance Committee.

1    21.    On May 15, 2000, the Commission held a regular meeting at which the Commission discussed placing campaign finance reform legislation on the ballot in the November 2000 election. Attached hereto as Exhibit K are true and correct copies of the agenda and minutes for the Commission's meeting of May 15, 2000 and the following selected materials included in the agenda packet for that meeting: the Executive Director's Report; and a May 11, 2000 memorandum titled "Proposal to Submit a Ballot Initiative Providing for Public Financing of Election Campaigns." At that meeting, as reflected in the minutes, the Commission heard testimony from Robert Stern, Director of the Center for Government Studies. According to the minutes, Mr. Stern advised the Commission to consider amending the proposed legislation to limit contributions to committees to fund independent expenditures because of "the influence of independent expenditures in the last mayoral election." Following this testimony, the Commission voted to place the legislation on the November ballot, subject to amendments to be agreed upon by the Commission.

22.    On June 12, 2000, the Commission held a regular meeting at which the Commission further discussed placing campaign finance reform legislation on the ballot in the November 2000 election. Attached hereto as Exhibit L are true and correct copies of the agenda and minutes for the Commission's meeting of June 12, 2000 and the following item included in the agenda packet for that meeting: a June 7, 2000 memorandum titled "Draft Legislation for 'Fair Elections Ordinance' Ballot Initiative Providing for Public Financing of Elections."

23.    On June 26, 2000, the Commission held another special meeting at which it voted to place the legislation that became Proposition O on the ballot. Attached hereto as Exhibit M are true and correct copies of the agenda and minutes for the Commission's meeting of June 26, 2000 and the following item included in the agenda packet for that meeting: a June 21, 2000 memorandum titled "Revisions to the Public Financing Proposal" from Deputy City Attorney Julie Moll with a copy of proposed legislation attached.

24.    Attached hereto as Exhibit N are true and correct copies of the agenda and minutes for the Commission's meeting of November 13, 2000 and the following items included in the agenda packet for that meeting: the Executive Director's Report; a Commission press release dated November 5, 2000; and a series of newspaper articles regarding the Commission's activities ("Soft

1  Money Flows in the City," S.F. Chronicle Oct. 28, 2000 ["Downtown interests continued their flood
2  of soft money spending on behalf of Board of Supervisors candidates backed by Mayor Willie
3  Brown."]; "High Stakes for Players in Convoluted S.F. Elections," S.F. Chronicle, Oct. 30, 2000
4  ["[S]tanding in the shadows are the town's developers, big businesses, small businesses, real estate
5  agents, labor unions and just about everyone else with a financial stake in the outcome – pumping
6  hundreds of thousands of dollars of 'soft money' into their picks."]; "S.F.'s Prop. O would limit soft
7  money," S.F. Bay Guardian, Nov. 1, 2000; "Follow the Money," S.F. Bay Guardian, Nov. 1, 2000;
8  "S.F. Campaign Measure Could Aid Dark Horses," S.F. Chronicle, Nov. 2, 2000; "City Charter
9  muddles campaign for Prop. O," S.F. Chronicle, Nov. 2, 2000; "Prop. O is real reform for S.F.," S.F.
10 Examiner, Nov. 1, 2000; "S.F. Measure to Fund Supervisors' Races May Cut Reliance on Big
11 Money," S.F. Chronicle, Nov. 9, 2000; "Runoff for Most Supervisor Spots Newsom, Ammiano
12 Easily Win Re-Election," S.F. Chronicle, Nov. 8, 2000; "Punks, politicos in last-minute campaign
13 blitz," S.F. Chronicle, Nov. 6, 2000; "Spending Limits Canceled in District 8 Supervisor Race," S.F.
14 Chronicle, Nov. 7, 2000).

## THE PLAINTIFF COMMITTEES' ACTIVITIES IN 1999 AND 2000

25. The plaintiffs in this matter both were active during the 1999 and 2000 election cycle. Attached hereto as Exhibit O are the Committee on JOBS Advocacy Fund's Long Form Campaign Statement (Form 420) and Amendment to Campaign Disclosure Statement (Form 405), dated January 11, 2000 and February 25, 2000, respectively, disclosing its activities in calendar year 1999. These records indicate that in 1999, the committee received $170,284 in monetary contributions from 27 contributors, for an average contribution of over $6,000 per contributor. Contributors included PG&E Employee's State/Local PAC ($14,045), Donald Fisher Community Property ($10,000), Gap, Inc. ($8,778), SBC Communications/Pacific Bell ($14,045), Wells Fargo & Company Special Account ($14,045), Chevron Corporation ($12,640) and Shorenstein Realty Services, L.P. ($8,778).

26. Attached hereto as Exhibit P are the following filings from the Committee on JOBS Advocacy Fund covering activities during the calendar year 2000: (a) Long Form Campaign Statement (Form 420) and Amendment to Campaign Disclosure Statement (Form 405), for the filing period from January 1, 2000 through February 19, 2000, dated February 25, 2000 and October 16,

1   2000, respectively; (b) Campaign Statements (Form 460) for the filing period from February 20, 2000
2   through June 30, 2000, dated July 31, 2000 and October 16, 2000; (c) Campaign Statement (Form
3   460) for the filing period from July 1, 2000 through September 30, 2000, dated October 5, 2000; (d)
4   Campaign Statement (Form 460) for the filing period from October 1, 2000 through October 21,
5   2000, dated October 26, 2000; (e) Campaign Statement (Form 460) for the filing period from October
6   22, 2000 through November 25, 2000, dated November 30, 2000; and (f) Campaign Statement (Form
7   460) for the filing period from November 26, 2000 through December 31, 2000, dated January 30,
8   2000.  These records indicate that in 2000, the committee received $785,000 in 63 itemized
9   contributions, for an average contribution of $12,460.  When calculating this figure, I included all
10  separately reported contributions in the committee's filings, even though some of the contributors
11  listed separately by the committee in its filings had very similar names or shared addresses.  But
12  accounting for reports of multiple contributions from the same contributors, the records indicate that
13  the committee received $785,000 from 24 distinct contributors (counting entities whose contributions
14  must be aggregated under campaign finance law as a single contributor), for an average contribution
15  of over $30,000 per contributor.  Contributors included:  Shorenstein Realty Services, L.P. and
16  affiliated entities ($85,000), F. Warren Hellman ($70,000), Donald and Doris Fisher ($120,000),
17  Wells Fargo and Company ($60,000), Arthur Andersen, LLP ($25,000), Charles Schwab ($60,000),
18  Gap, Inc. ($60,000), and Chevron Corporation ($65,000).

19      27.     Attached hereto as Exhibit Q is the Long Form Campaign Statement (Form 420) from
20  the Building Owners and Managers Association of San Francisco Independent Expenditure
21  Committee for the filing period from November 28, 1999 through December 31, 1999, dated January
22  12, 2000.  The filing summarizes cumulative contributions and expenditures for the committee for the
23  calendar year 1999.  The committee's filings covering that year indicate that between January 1 and
24  October 16, 1999, the committee received $20,659.42 from 65 contributors, for an average of
25  approximately $318 per contributor.  The committee's filings covering that year also indicate that
26  between October 17 and December 31, 1999, the committee received $73,404.12 from 116
27  contributors, for an average of approximately $633 per contributor.  When calculating the number of
28  contributors, I included all separately reported contributors in the committee's filings, even though

1  some of the contributors listed separately by the committee in its filings had very similar names or
2  shared addresses.

3      28.    Attached hereto as Exhibit R is the Campaign Statement (Form 460) from the Building
4  Owners and Managers Association of San Francisco Independent Expenditure Committee for the
5  filing period from November 26, 2000 through December 31, 2000, dated January 30, 2000.  The
6  filing summarizes cumulative contributions and expenditures for the committee for the calendar year
7  2000.  The committee's filings covering that year indicate that in 2000, the committee received
8  $58,595.60 itemized contributions from 190 contributors, for an average contribution of
9  approximately $308 per contributor, as well as $1,200 in non-itemized contributions of less than $100
10 each.  When calculating the number of contributors, I included all separately reported contributors in
11 the committee's filings, even though some of the contributors listed separately by the committee in its
12 filings had very similar names or shared addresses.

13     29.    I declare under penalty of perjury, under the laws of the State of California, that the
14 foregoing is true and correct.

15     Executed this 27th day of August, 2007 at San Francisco, California.

18     JOHN ST. CROIX