# EXHIBIT B

**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**


# Ethics Commission

December 01, 1999

(Approved 1/10/00)

Minutes of the

San Francisco Ethics Commission

Meeting at City Hall

One Dr. Carlton B. Goodlett Place, Room 408

December 1, 1999, 5:15 p.m.

I. Call to order and roll call.

Commission Chair Isabella Grant called the meeting to order at 5:20 p.m.

**COMMISSION MEMBERS PRESENT:** Isabella H. Grant, Chairperson; Henri E. Norris; Vice-Chairperson; Carol M. Kingsley, Commissioner; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner.

**STAFF PRESENT:** Ginny Vida, Executive Director; Naomi Starkman, Deputy Executive Director; Joe Lynn, Campaign Finance Officer; Katherine Havener, Ethics Investigator/Legal Analyst; Armando Gomez, Elections Clerk; Tina Tan, Intern.

**OFFICE OF THE CITY ATTORNEY:** Claire Sylvia, Deputy City Attorney, Julie Moll Deputy City Attorney.

**OTHERS PRESENT:** Charles Marstellar, SF Common Cause; Myrna Lopez, Mayor's Budget Office; Don Ellison, Common Cause; Jim Reid; Caleb Klepper, Center for Voting and Democracy; David Fairley, Green Party.

**MATERIALS DISTRIBUTED:**

S.F. Ethics Commission Agenda, December 1, 1999

S.F. Ethics Commission Agenda, December 2, 1999

S.F. Ethics Commission Agenda, December 6, 1999

Memo dated November 29, 1999, to Ethics Commission Members from Ginny Vida re: Amending the Campaign Finance Reform Ordinance to Provide for Public Financing of Election Campaigns

Memo dated November 30, 1999, to Ethics Commission Members from Ginny Vida re: Key Provisions of a Partial Public Financing Proposal

II. Public comment re: matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.

There was no public comment.

III. Conference with the City Attorney - Litigation

Motion 99-12-1-42 (Kingsley/Dockendorff) Moved, seconded and passed: that the Commission convene in closed session with the City Attorney regarding the following litigation: (1)Clinton Reilly, Clinton Reilly for Mayor, and Fred A. Rodriguez v. Louise Renne and the City and County of San Francisco, U.S. Disttrict Court No. C99-4395 CW; and (2) San Franciscans for Sensible Government, et al. v. Louise H. Renne and City and County of San Francisco, U.S. District Court No. C99-2456 CW, as permitted by Government Code Section 54956.9(a).

IV. Discussion and vote on whether to disclose action taken or discussions held in closed session.

Motion 99-12-1-43 (Melbostad/Norris) Moved, seconded and passed: The Ethics Commission finds that it is in the interest of the public that the Ethics Commission elect at this time not to disclose its closed session deliberations concerning the litigation listed above.

V. Discussion and possible action re: draft legislation providing for public financing of campaigns for elective office in San Francisco, and whether the Commission should

a) submit for the March 1999 ballot a measure proposing public financing of campaigns for elective office; or b) submit to the Board of Supervisors a proposal providing for public financing of campaigns; or c) submit for a future election a ballot measure providing for public financing of campaigns.

Deputy Executive Director Naomi Starkman provided a summary of the staff's full public financing proposal. Ms. Starkman reported that currently no municipalities have full public financing. Four states have approved, but not implemented, full public financing of campaigns. Ms. Starkman explained that in reviewing other jurisdictions with public and partial financing, it was clear that both systems can take several years to implement.

According to Ms. Starkman, the purpose of the staff proposal is to address the Commission's concerns regarding the current system of privately financed campaigns for election to City office. Ms. Starkman explained that the staff proposal reduces the role of private contributions by offering a set amount of public funding to candidates who can demonstrate a threshold level of public support. Candidates demonstrate public support by raising a specified number of "qualifying contributions" from eligible voters within the candidate's election district. In exchange for public funds, candidates must agree not to accept any private contributions after qualifying for public financing.

Ms. Starkman noted that the set amount of public funds available to each participating candidate is the current voluntary spending limit applicable to the office the candidate is seeking. She explained that if the spending limits are lifted by nonparticipating candidates or committees that make independent expenditures, participating candidates would receive additional public funds in the form of matching funds. Ms. Starkman explained that matching funds would be provided at a rate of one additional dollar for each private dollar raised or spent by nonparticipating candidates in excess of the applicable spending limit.

The additional public funds paid to a participating candidate cannot exceed 200 percent of the spending limits applicable to that candidate.

Ms. Starkman stated that the proposal establishes an Election Campaign Fund and mandates that each fiscal year the City appropriate to the Fund an amount sufficient to fund all candidates for City elective office. According to Ms. Starkman, the proposal also appropriates funds to the Ethics Commission to pay for the administration of the program. In the event that there are insufficient funds, the voluntary spending limits and public financing provisions will not apply. She noted that the proposal also requires additional reporting from nonparticipating candidates and independent expenditure committees. Finally, the proposal authorizes the Commission to adopt regulations to implement the public financing provisions, requires the Commission to audit 25 percent of all candidates who receive public funds and provides for penalties for misuse of public funds.

Commissioner Robert Dockendorff stated that providing funds of up to 200 percent of the spending limit is too high and a $500 fine is too low. Commissioner Dockendorff explained that once candidates accept public funds, there should be no provision to trigger a lifting of the spending limits. Commissioner Dockendorff stated that the current (and proposed) $500 fine for violation of the Campaign Finance Reform Ordinance should be increased to $5,000 or $10,000. Commissioners Henri E. Norris and Paul H. Melbostad agreed with Commissioner Dockendorff that the $500 fine is too low.

Executive Director Ginny Vida stated that the Commission needs to determine the point at which candidates should receive public funds and what should happen if candidates decide not to run for office after receiving public funds. She noted that candidates might receive funds and then withdraw or fail to qualify. Ms. Vida explained that a partial public financing program could limit the amount of money the City expends if a candidate decides not to run.

Commissioner Dockendorff stated that candidates should return all public funds if they fail to qualify or withdraw. Ms. Starkman explained that early disbursements are necessary because there is a need for candidates to start campaigning when other candidates start campaigning. Commissioner Dockendorff stated that candidates should receive public funds only after they qualify for the ballot. He stated that campaigns begin too early, and that disbursing the money later would serve the useful purpose of limiting the campaign period. Ms. Starkman stated that fewer candidates may participate in the program if they have to wait until August to receive funds for a November election.

With Commissioner Norris acting as temporary Chair, Chairperson Grant introduced a motion to refer the issue of public financing to an ad hoc committee of the Commission to allow adequate time for consideration of the issue. She also proposed that the issue of public financing be deliberated at a public hearing where experts and others would be invited to testify, and that the Commission should consult with the Board of Supervisors on a public financing proposal.

After further discussion the Commission asked for public comment.

### Public Comment

**Charles Marstellar** of Common Cause urged the Commission to propose to the Board a pilot public financing program for implementation in district elections in 2000 if the Commission determines that a full public financing program cannot be submitted for the March ballot by the December 8 deadline. Mr. Marstellar stated that the pilot program could be amended by the Commission

or the City after November 2000. Mr. Marsteller read a statement prepared by David Fairley of the Green Party. In his statement Mr. Fairley asserts that qualifications for public funds should be based on how much support a candidate can demonstrate, not on how much money he or she can raise. Mr. Fairley suggests that candidates should qualify for public funds by submitting 300 signatures plus a five dollar check from each signator.

Jim Reid, former candidate for Mayor, stated that it is very premature to discard public financing. Mr. Reid also asserted that the qualifying contributions proposed by staff are too high. He said that it is difficult for candidates to raise money, especially those running for the first time.

Caleb Kleppner of the Center for Voting and Democracy suggested that the Commission amend the proposal for full public financing to provide for partial public financing. Mr. Kleppner stated that the current qualifying factors are too difficult and that the threshold should be 150 contributions at $20 each. According to Mr. Kleppner, no candidates in the last election raised enough money to qualify under the system proposed by the Commission staff. Mr. Kleppner states that the proposed system puts money in the hands of people who already have sufficient fund-raising capability, not in the hands of those who have significant support and for whom public funds could make a difference.

After receiving public testimony, the Commission addressed Commissioner Grant's motion.

Motion 99-12-01-44: (Grant/Norris) Moved, seconded and passed: that the Ethics Commission decline to submit a measure for the March 1999 ballot regarding full public financing of campaigns, in order to provide adequate time for consideration of the issue; and that the issue of public financing be forwarded to an ad hoc committee of the Commission and be deliberated at a public hearing where experts and others are invited to testify, and that the Commission consult with the Board of Supervisors on a public financing proposal.

VI.  Adjournment

Motion 99-12-01-45 (Dockendorff/Kingsley) Moved, seconded and passed: That the meeting be adjourned.

The Commission meeting adjourned at 7:30 p.m.

Respectfully submitted,

Armando Gomez

Elections Clerk



Ethics Commission

1390 Market Street, Suite 801
San Francisco CA 94102
Phone 554-9510  Fax 703-0121

# SAN FRANCISCO ETHICS COMMISSION
# NOTICE OF SPECIAL MEETING AND AGENDA
## FOR
## Wednesday, December 1, 1999, 5:15 P.M.

### City Hall
### 1 Dr. Carlton B. Goodlett Place, Room 408

I.  Call to order and roll call

II. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.

III. (5:15 – 5:45 p.m.) Conference with the City Attorney – Litigation

   Motion that the Ethics Commission convene in closed session with the City Attorney for the purpose of conferring or receiving advice from the City Attorney regarding the following litigation: (1) Clinton Reilly, Clinton Reilly for Mayor, and Fred A. Rodriguez v. Louise Renne and the City and County of San Francisco, U.S. District Court No. C99-4395 CW; and (2) San Franciscans for Sensible Government, et al. v. Louise H. Renne and City and County of San Francisco, U.S. District Court No. C99-2456 CW, as permitted by Government Code Section 54956.9(a).

IV. Discussion and vote on whether to disclose action taken or discussions held in closed session.

   (1) Motion that the Ethics Commission finds that it is in the best interest of the public that the Ethics Commission elect at this time not to disclose its closed session deliberations concerning the litigation listed above.

   OR:

   (2) Motion that the Ethics Commission finds that it is in the public interest to disclose information discussed in closed session, and directs the Chairperson to immediately disclose that information.

V. Discusssion and possible action re: draft legislation providing for public financing of campaigns for elective office in San Francisco, and whether the Commission should
   a) submit for the March 1999 ballot a measure proposing public financing of campaigns for elective office; or b) submit to the Board of Supervisors a proposal providing for public financing of campaigns; or c) submit for a future election a ballot measure providing for public financing of campaigns.

(please turn over for page 2)

(V., continued)

The following documents will be available from the Commission office on Monday, November 29: a) Draft legislation providing for <u>full</u> public financing of campaigns and a staff report summarizing provisions of the full public financing legislation; and b) a staff report outlining components of an alternative proposal for a pilot program providing for <u>partial</u> public financing of campaigns, applicable to candidates in the November 2000 district election for the Board of Supervisors.

VI.   Adjournment

<u>*Know Your Rights Under the Sunshine Ordinance*</u>

*Government's duty is to serve the public, reaching its decisions in full view of the public. Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance assures that deliberations are conducted before the people and that City operations are open to the people's review.*

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force at 554-6075.*

---

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

---

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street #701, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554--8757 and web site www.ci.sf.ca.us/ethics*

*s:agenda/120199 special mtg.doc*



# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D. DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

Date: November 29, 1999

To: Members, Ethics Commission

From: Ginny Vida, Executive Director  *G.V.*
By: Naomi Starkman, Deputy Executive Director

Re: Amending the Campaign Finance Reform Ordinance to Provide for Public Financing of Election Campaigns

## I. Introduction

At its November 8, 1999 meeting, the Ethics Commission directed staff to draft legislation for full public financing of election campaigns for local elective office. A copy of the draft legislation is attached. In addition to providing for full public financing of campaigns, the staff proposal clarifies current definitions in the Campaign Finance Reform Ordinance, reorganizes existing terms, and amends the law to provide for additional reporting requirements. The purpose of this memorandum is to summarize the main, substantive points of the legislation as they relate to public financing of campaigns.

## II. Overview of the Staff Proposal

The purpose of the staff proposal is to address the Commission's concerns regarding the current system of privately financed campaigns for election to City office. The staff proposal reduces the role of private contributions by offering a set amount of public funding to candidates who can demonstrate a threshold level of public support. Candidates demonstrate public support by raising a specified number of "qualifying contributions" from eligible voters within the candidate's election district. In exchange for public funds, candidates must agree not to accept any private contributions after qualifying for public financing.

The set amount of public funds available to each participating candidate is the current voluntary spending limit applicable to the office the candidate is seeking. If the spending limits are lifted by nonparticipating candidates or committees that make independent expenditures, participating candidates will receive additional public funds in the form of matching funds. Matching funds would be provided at a rate of one additional dollar for each private dollar raised or spent by nonparticipating candidates in excess of the applicable spending limit. The additional public funds paid to a participating candidate cannot exceed 200 percent of the spending limits applicable to that candidate.

The proposal establishes an Election Campaign Fund and mandates that each fiscal year the City appropriate to the Fund an amount sufficient to fund all candidates for City elective office. The proposal also appropriates funds to the Ethics Commission to pay for the administration of the program. In the event that there are insufficient funds, the voluntary spending limits and public financing provisions will not apply.

The proposal also requires additional reporting from nonparticipating candidates and independent expenditure committees. Finally, the proposal authorizes the Commission to adopt regulations to implement the public financing provisions, requires the Commission to audit 25 percent of all candidates who receive public funds and provides for penalties for misuse of public funds.

1390 Market Street, Suite 801 • San Francisco, CA 94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us          Web site: http://www.ci.sf.ca.us/ethics/

III. Specific Provisions of the Staff Proposal

A. Qualifying Contributions

In order for candidates to receive public funds, they must raise a certain number of "qualifying contributions" from eligible voters. These qualifying contributions demonstrate the candidates' viability and public support. The proposal defines "qualifying contributions" as any contribution of $50 made by a person who is eligible to vote for the candidate to whom the contribution is made. Candidates who are attempting to qualify for public financing are permitted to solicit contributions up to the current contribution limit of $500, but only the first $50 counts as a qualifying contribution. The candidate bears the burden of proving that each qualifying contribution is valid.

The proposal sets the requisite number of qualifying contributions as follows:

| Candidate | Amount of Qualifying Contributions |
|---|---|
| Mayor | 1,000 qualifying contributions (@ $50 each = $50,000) |
| Board of Supervisors | 400 qualifying contributions (@ $50 each = $20,000) |
| Assessor, Public Defender, City Attorney, District Attorney, Treasurer, and Sheriff | 600 qualifying contributions (@ $50 each = $30,000) |
| Board of Education, College Board | 400 qualifying contributions (@ $50 each = $20,000) |

B. Additional Eligibility Criteria

In addition to raising qualifying contributions, candidates who wish to receive public financing must meet the following criteria:

- Seek election to City office;
- Agree not to exceed the spending limits for the office in question;
- Agree not to accept private contributions after becoming certified to receive public financing;
- Be opposed by a candidate who has either established eligibility to receive public financing, or received contributions or made expenditures in the following amounts:

| Candidate | Amount |
|---|---|
| Mayor | $50,000 |
| Board of Supervisors | $20,000 |
| Assessor, Public Defender, City Attorney, District Attorney, Treasurer, and Sheriff | $30,000 |
| Board of Education, College Board | $20,000 |

To be eligible to receive public financing, candidates must submit a declaration that the candidate has satisfied all of the eligibility criteria. Candidates who are elected in June (Assessor and Public Defender) must submit a declaration on or after February 1, and no later than the date by which nomination papers must be filed with the Department of Elections (usually 60 days prior to the election.) Candidates who are elected in November (all other candidates) must submit a declaration on or after June 1, and no later than the date by which nomination papers must be filed.

C. Appropriation of Funds

The proposal establishes a special fund called the Election Campaign Fund ("Fund"). Each fiscal year the City is required to appropriate to the Fund an amount sufficient to fund all candidates for City elective office who may be eligible to receive public financing. If at any time the amount appropriated is insufficient to fund all

2

The proposal provides that the spending limits are lifted if a nonparticipating candidate spends 100 percent of the spending limits applicable to that office. In addition, the spending limits are lifted if committees that makes independent expenditures in the aggregate spend more than 100 percent of the applicable spending limit in support of, or in opposition to, a candidate. If the spending limits are lifted, participating candidates are eligible for additional matching funds. Participating candidates are given one additional dollar for each private dollar raised or spent by nonparticipating candidates in excess of the applicable spending limit. If one or more nonparticipating candidates exceed the spending limit, the matching is made with reference to the opponent who has raised or spent the largest amount at the time of the calculation for matching funds. The additional matching public funds paid to a participating candidate cannot exceed 200 percent of the spending limits applicable to that candidate.

Matching public funds are available 30 days before the election and are paid to participating candidates every seven days.

| Candidate | Maximum Public Funds Available if Spending Limits are Lifted for the General Election |
| --- | --- |
| Mayor | $1,800,000 |
| Board of Supervisors | $225,000 |
| Assessor, Public Defender, City Attorney, District Attorney, Treasurer, or Sheriff | $525,000 |
| Board of Education, College Board | $225,000 |

G.    Restrictions on Use of Public Funds

Participating candidates may only use public funds to pay for qualified campaign expenditures and not to pay for expenses incurred in connection with an administrative or judicial proceeding. If a participating candidate uses any portion of public funds to purchase equipment that has a useful life beyond that of the election campaign, the equipment becomes the property of the City.

Any candidate who receives public financing but who withdraws or fails to qualify for the ballot must repay the Fund the full sum received by the Fund, less the amount incurred for qualified campaign expenditures prior to the date of withdrawal or the date by which candidates must file their nomination papers with the Department of Elections. A participating candidate must return to the Fund any surplus public funds within 30 days of an election.

H.    Insufficient Funds

The Commission must determine in advance of the election whether there are sufficient funds to finance the campaigns of all eligible candidates. If the Commission determines that the amount in the Fund is insufficient, the Commission may not certify any candidates and the voluntary spending limits and public financing provisions will not apply.

I.    Supplemental Reporting

Nonparticipating candidates who receive contributions, make expenditures, or have funds in their campaign trust accounts that exceed specific amounts (as detailed below) are required to file a statement with the Commission within 24 hours stating that fact.

| Candidate | Amount |
| --- | --- |
| Mayor | $50,000 |
| Board of Supervisors | $20,000 |
| Assessor, Public Defender, City Attorney, District Attorney, Treasurer, and Sheriff | $30,000 |
| Board of Education, College Board | $20,000 |

4

eligible candidates, the City is mandated to appropriate additional funds. The Commission will assist the Mayor and the Board of Supervisors in estimating any additional funds required.

D.   Available Public Funds

Each participating candidate is entitled to receive the amount of the spending limit applicable to that office. This amount is reduced by the amount of private contributions, including qualifying contributions, received by the candidate prior to becoming certified.

| Candidate | Spending Limit for General Election |
|---|---|
| Mayor | $600,000 |
| Board of Supervisors | $75,000 |
| Assessor, Public Defender, City Attorney, District Attorney, Treasurer, or Sheriff | $175,000 |
| Board of Education, College Board | $75,000 |

Candidates who qualify for a run off election are entitled to receive the full amount of the spending limit applicable to the candidate in that election. The spending limits in the run off election are as follows:

| Candidate | Spending Limit for Run Off Election |
|---|---|
| Mayor | $400,000 |
| Board of Supervisors | $20,000 |
| Assessor, Public Defender, City Attorney, District Attorney, Treasurer, or Sheriff | $100,000 |

Please note that there are no run off elections for candidates for the Board of Education or the College Board.

E.   Certification and Disbursement of Public Funds

The Executive Director is required to review the candidate's certification to determine whether the candidate satisfies the eligibility criteria to receive public financing. If a candidate is certified, the Executive Director will inform the Controller that a candidate is eligible to receive public funds. Thereafter, the Controller disburses payments to the candidate from the Fund in three installments of one-third of the spending limit applicable to the elective office. The first disbursement is reduced by the amount of private contributions received by the candidate.

| Candidate | Time of Disbursement | Amount per Disbursement |
|---|---|---|
| Mayor | 6/15, 8/15, 10/15 | $200,000 (1/3 of $600,000) |
| Board of Supervisors | 6/15, 8/15, 10/15 | $25,000 (1/3 of $75,000) |
| Assessor, Public Defender | 1/15, 3/15, 5/15 | $58,333 (1/3 of $175,000) |
| City Attorney, District Attorney, Treasurer, and Sheriff | 6/15, 8/15, 10/15 | $58,333 (1/3 of $175,000) |
| Board of Education, College Board | 6/15, 8/15, 10/15 | $25,000 (1/3 of $75,000) |

As noted, candidates who qualify for a run off election are entitled to receive the full amount of the spending limit applicable to the candidate in that election. That disbursement is made in one installment.

F.   Lifting of Spending Limits and Matching Funds

The proposal changes the way by which the spending limits are lifted. Currently, the spending limits are lifted if a candidate who declines to adopt the limits receives contributions, make expenditures, or has funds in his/her campaign trust account that exceed 50 percent of the applicable spending limit. In addition, the spending limits can be lifted if committees that make independent expenditures spend in the aggregate more than 25 percent of the applicable spending limit in support of, or in opposition to, a candidate.

3

Nonparticipating candidates who receive contributions, make expenditures or have funds in their campaign trust accounts that exceed 75 percent of the applicable spending limit must notify the Commission within 24 hours of reaching this threshold. Thereafter, nonparticipating candidates must file supplemental statements within 24 hours when the candidate receives contributions, makes expenditures or has funds in his or her campaign trust account that equal or exceed 100 percent of the spending limit.

Any committee that makes independent expenditures in support of or in opposition to a candidate that equal or exceed 5 percent of the applicable spending limit must file a statement with the Commission within 24 hours of reaching this threshold. Thereafter, committees must file supplemental statements within 24 hours each time the committee makes independent expenditures in support of or in opposition to the candidate which equal or exceed an additional 5 percent of the spending limit.

Finally, starting on the date that the spending limits are lifted, each nonparticipating candidate who has exceeded the spending limit must file supplemental expenditure reports with the Commission every 14 days. Starting 30 days before election day, the nonparticipating candidate must file supplemental expenditure reports every 7 days.

J.     Regulatory Authority

The proposal authorizes the Commission to adopt regulations to implement the public financing provisions of the CFRO.

K.     Audits and Investigations

The proposal requires the Commission to audit at least 25 percent of the candidates who receive public financing. If the Commission determines that candidates used the funds for something other than qualified campaign expenditures, the candidate must return the amount of the improper expenditure to the Fund.

Any person who believes that a violation of the public financing provisions has occurred may file a complaint with the Commission. The proposal provides that the Commission will investigate such complaints pursuant to Charter Section C3.699-13 and the Commission's implementing regulations.

L.     Penalties

The proposal provides for penalties for misuse of public funds. Any person who willfully or knowingly uses public funds will be guilty of a misdemeanor and punishable by a fine of no less than $500, or three times the amount improperly spent, whichever is greater, or by imprisonment in the County jail for a period of not more than six months. Any person who willfully, knowingly or negligently uses public funds will be liable in a civil action for an amount up to $500 or three times the amount improperly spent, whichever is greater.