# EXHIBIT C

**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**



**Ethics Commission**

1390 Market Street, Suite 801
San Francisco CA  94102
Phone 554-9510  Fax 703-0121

# SAN FRANCISCO ETHICS COMMISSION
# NOTICE OF <u>SPECIAL MEETING</u> AND AGENDA
## FOR
## Thursday, December 2, 1999,  5:00 P.M.

### City Hall
### 1 Dr. Carlton B. Goodlett Place, Room 408

I.   Call to order and roll call

II.   Discusssion and possible action re: draft legislation providing for public financing of
campaigns for elective office in San Francisco, and whether the Commission should
a) submit for the March 1999 ballot a measure proposing public financing of campaigns
for elective office; or b) submit to the Board of Supervisors a proposal providing for
public financing of campaigns; or c) submit for a future election a ballot measure
providing for public financing of campaigns.

The following documents will be available from the Commission office on Monday,
November 29:  a) Draft legislation providing for <u>full</u> public financing of campaigns and a
staff report summarizing provisions of the full public financing legislation; and  b) a staff
report outlining components of an alternative proposal for a pilot program providing for
<u>partial</u> public financing of campaigns, applicable to candidates in the November 2000
district election for the Board of Supervisors.

III.   Public comment on matters appearing or not appearing on the agenda that are within the
jurisdiction of the Ethics Commission.

IV.   Adjournment

<u>*Know Your Rights Under the Sunshine Ordinance*</u>

*Government's duty is to serve the public, reaching its decisions in full view of the public.  Commissions, boards,
councils and other agencies of the City and County exist to conduct the people's business.  This ordinance
assures that deliberations are conducted before the people and that City operations are open to the people's
review.*

(please turn over for page 2)

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force at 554-6075.*

-------------------------------------------------------------------------------------------------------

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

-------------------------------------------------------------------------------------------------------

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street #701, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554--8757 and web site www.ci.sf.ca.us/ethics*

*s:agenda/120299 special mtg.doc*





sfgov | residents | business | government | visitors | online services | search   go !

Ethics Commission >> Meeting Information

# Ethics Commission

December 02, 1999

(Approved 1/10/00)

Minutes of the

San Francisco Ethics Commission

Special Meeting at City Hall

One Dr. Carlton B. Goodlett Place, Room 408

December 2, 1999; 5:00 p.m.

**I. Call to order and roll call**

Commission Chairperson Isabella H. Grant called the meeting to order at 5:15 p.m.

**COMMISSION MEMBERS PRESENT:** Isabella H. Grant, Chairperson; Henri E. Norris, Vice-Chairperson; Carol.M. Kingsley, Commissioner; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner.

**STAFF PRESENT:** Ginny Vida, Executive Director; Naomi Starkman, Deputy Executive Director; Joe Lynn, Campaign Finance Officer; Katherine Havener, Ethics Investigator/Legal Analyst; Shaista Shaikh, Campaign Finance Auditor.

**OFFICE OF THE CITY ATTORNEY:** Julie Moll, Deputy City Attorney; Claire Sylvia, Deputy City Attorney.

**OTHERS PRESENT:** Don Ellison, Common Cause; Caleb Kleppner, Center for Voting and Democracy; Jim Reid, Reid for Supervisor; Charles Marsteller, San Francisco Common Cause; Tom Hall; Christopher L. Bowman, San Francisco Republican Party; John Henry Pearce, Legislative Aide to Supervisor Tom Ammiano; Henry Evers, Common Cause; Brad Benson, Legislative Aide to Supervisor Tom Ammiano; and Jane Morrison, San Francisco Tomorrow.

**MATERIALS DISTRIBUTED:**

S.F. Ethics Commission Agenda, December 2, 1999

> Memo dated November 29, 1999, to Ethics Commission Members from Ginny Vida re: Amending the Campaign Finance Reform Ordinance to Provide for Public Financing of Election Campaigns

> Memo dated November 30, 1999, to Ethics Commission Members from Ginny Vida re: Key Provisions of a Partial Public Financing Proposal

III. Discussion and possible action re: draft legislation providing for public financing of campaigns for elective office in San Francisco, and whether the Commission should a) submit for the March 1999 ballot a measure proposing public financing of campaigns for elective office; or b) submit to the Board of Supervisors a proposal providing for public financing of campaigns; or c) submit for a future election a ballot measure providing for public financing of campaigns.

The Commission first heard public comment regarding matters not relating to public financing of campaigns.

Public Comment

Charles Marsteller of San Francisco Common Cause informed the Commission of an informal opinion issued by the Fair Political Practices Commission which states that county committees are exempt from filing pre-election campaign statements. He stated that such an exemption creates a loophole for committees that make independent expenditures because the committees are not required to report the source of their funds until after the election. He suggested that the Commission may wish to address this issue by revising the Campaign Finance Reform Ordinance.

Commission Chair Isabella H. Grant noted that the purpose of tonight's meeting was to consider partial public financing of campaigns and to decide whether the Commission should: 1) submit for the March 1999 ballot a measure proposing partial financing of campaigns for elective office; or 2) submit to the Board of Supervisors a proposal providing for partial public financing of campaigns; or 3) refer the issue of partial public financing to an ad hoc committee for further consideration. At Chairperson Grant's request, Executive Director Ginny Vida and Deputy Executive Director Naomi Starkman reported on the key provisions of a partial public financing proposal.

Ms. Starkman explained that the Commission has not yet determined the specific components of a partial public financing proposal. She stated that a key consideration is determining how candidates should qualify for public money. She asked the Commissioners to consider the purpose of the program. She noted that the Commission had previously agreed to focus on reducing the role of private contributions, thereby reducing corruption or the appearance of corruption in campaigns.

Ms. Starkman said that all of the municipalities that have partial public financing require candidates to demonstrate their viability as candidates by raising a certain number of qualifying contributions. She explained that there are two factors in considering qualifying contributions: 1) the number of contributions; and 2) the total amount of contributions. Ms. Starkman explained that the number of qualifying contributions should reflect real support for a candidate, and that the threshold amount should be high enough to screen out candidates who are unable to demonstrate a significant level of support. At the same time, she noted that the threshold must be low enough so as not to present a barrier to serious challengers.

Ms. Starkman noted that the full public financing measure previously discussed by the Commission at last night's meeting would require candidates for the Board of Supervisors to raise 400 contributions of $50 each. She explained that there are 11 districts in San Francisco and that each district has an average population of 65,700 and an average of 40,700 registered voters. She explained that staff took 1 percent of 40,000 to arrive at the number 400, which appeared to indicate a reasonable amount of public support for a candidate.

She further explained that staff had decided to recommend $50 as the individual contribution amount, rather than smaller amounts of $5 or $10, because lower amounts would impose a greater administrative burden on the Commission in verifying each qualifying contribution.

Ms. Starkman also noted that staff had initially considered a qualifying threshold consisting only of signatures, but had determined that verification of signatures would place too much of a burden on either the Commission or the Department of Elections. She explained that staff had determined that a monetary contribution, however small, is a better gauge of commitment than a signature alone. Ms. Starkman noted that while many people will sign anything, very few people will contribute $50 to a person whom they do not seriously support.

Finally, Ms. Starkman presented statistics on jurisdictions that have partial public financing. She noted that Los Angeles requires candidates for City Council to raise $25,000 or more in contributions of $250 or less. In New York City, candidates for City Council must raise $5,000 from a minimum of 50 contributors; and in Long Beach, candidates for City Council must raise at least $5,000 in contributions of $250 or less. In Tucson, candidates for City Council must receive 200 contributions of $10 or more from Tucson residents. In Oakland, candidates for City Council must raise 5 percent of the spending limit. Ms. Starkman explained that on average the spending limit for Council Members is $82,000.

Commissioner Paul Melbostad noted that Judge Claudia Wilken's injunction against San Francisco's variable contribution limits had prompted the Commission to consider the issue of public financing of campaigns. Commissioner Melbostad said that it would not be appropriate for members of the Board of Supervisors to decide upon a public financing proposal when nine of the eleven supervisors may be contenders in the November 2000 district supervisorial races. He also noted that if the Commission does not place a measure on the ballot, the new spending limits, approved overwhelmingly by voters in the November 1999 election, may be rendered unenforceable.

Commissioner Melbostad stated that he had worked with staff to propose key provisions for a pilot program to partially fund candidates for the Board of Supervisors in the November 2000 election. Vice-Chairperson Henri E. Norris said that she was concerned about rushing into a decision regarding public financing of campaigns. She said the Commission had not yet heard from experts on the subject and that it was the Commission's duty to carefully consider any publically financed program. She noted her preference for a program of full public financing, rather than partial financing, of campaigns.

Commissioner Robert D. Dockendorf stated that: 1) he did not agree with the concept of lifting expenditure limits; 2) the threshold for qualifying for partial public financing should be reduced to $10,000 at a range of $10 to $50 per contributor; and 3) public financing should not be provided until a candidate qualifies for the ballot.

Chairperson Grant requested comment from the public regarding public financing.

## Public Comment

Christopher L. Bowman of the San Francisco Republican Party stated that taxpayers should not be forced to subsidize candidates whom the taxpayers may not support. Mr. Bowman requested that if the Commission decides to propose public financing for election campaigns, it should do so after the November 2000 district elections. Mr. Bowman noted that if district elections

and public financing were to be implemented simultaneously, it would be difficult to determine whether any problems that might arise were due to district elections or public financing.

Tom Hall expressed support for public financing. He noted that taxpayers subsidize many items that they may not agree with.

Brad Benson, Legislative Aide to Supervisor Tom Ammiano, stated that the proposed minimum amount of $50 for qualifying contributions should be lowered because a significant number of San Francisco residents cannot afford to contribute that amount. Mr. Benson asked the Commission to consider alternative funding mechanisms in addition to the City's general fund. Mr. Benson also stressed the urgency of implementing a proposal for the November 2000 election. He noted that Judge Wilkens' injunctions have resulted in large amounts of money being spent in the current election.

Jane Morrison, President of San Francisco Tomorrow, expressed support for the $75,000 spending limit imposed by Proposition K for district elections. Ms. Morrison urged the Commission to take the necessary steps to protect this limit. Ms. Morrison stated that the $50 qualification threshold should be replaced by a $10 or $20 threshold.

Don Ellison of Common Cause urged the Commission to adopt a plan that would be effective for the November 2000 district elections. Mr. Ellison said that matching only those contributions of $50 or more would be unfair to low-income residents.

Jim Reid stated that the number of contributions required for qualifying for public financing should be lower than 400. Mr. Reid urged the Commission to place a measure on the March ballot so that a pilot program could be implemented for the November 2000 district elections.

Charles Marsteller of Common Cause urged the Commission to place a public financing proposal on the March ballot. He stated that the Board of Supervisors may not place such an issue on the ballot and would not act in time to implement a public financing program for the November 2000 district elections. Mr. Marsteller further stated that the Ethics Commission is the only commission in the country that has the authority to place a measure directly on the ballot.

Caleb Kleppner of the Center for Voting and Democracy stated that the qualification threshold of 400 contributions at $50 or more is restrictive and that the Commission would consequently be funding those candidates with exceptional fundraising ability. Mr. Kleppner further stated that a candidate's viability should not be measured by his ability to raise funds but rather his ability to address issues. Mr. Kleppner recommended lowering the $50 threshold to include contributions of $5 or $10, thereby allowing residents of all income levels to participate.

John Henry Pearce, speaking on behalf of Board President Tom Ammiano, conveyed the Supervisor's appreciation to the Commission for addressing the matter of public financing. Mr. Pearce stated that the Commission is the appropriate body to make a decision regarding public financing.

Commissioner Carol M. Kingsley expressed her concern the Commission cannot not assure proper funding for the proposal. She suggested that the Ethics Commission consider alternative funding sources, other than the general fund, such as a check-off system regarding property tax.

Commissioner Melbostad introduced the following motion, which was not approved:

Motion 99-12-02-41 (Melbostad/Dockendorff) Moved and seconded: That the Ethics Commission staff draft legislation for a partial public financing program for the November 2000 election for possible submission to the voters at the March 2000 election. (Melbostad, Dockendorff—yes; Grant, Norris, Kingsley—no)

After some discussion, Vice-Chairperson Norris introduced a motion that further consideration of partial public financing be referred to the same ad hoc committee that will study full public financing.

Motion 99-12-2-42 (Norris/Kingsley) Moved, seconded and passed: That consideration of a partial public financing proposal be referred to the ad hoc committee for further study.

IV. **Public Comment**

There was no further public comment.

V. **Adjournment**

The meeting was adjourned at 7:15 p.m.

Respectfully
Submitted,

_____

Shaista
Shaikh

Campaign
Finance
Auditor



# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

DATE:          November 30, 1999

TO:            Members, Ethics Commission

From:          Ginny Vida
               Executive Director

RE:            KEY PROVISIONS OF A **PARTIAL** PUBLIC FINANCING PROPOSAL

On Tuesday, November 23, the staff met with Commissioner Paul Melbostad to discuss public financing. At Commissioner Melbostad's request, we discussed and identified a list of possible components of an alternative proposal providing for a pilot program for partial public financing of campaigns for elective office. The pilot program would apply only to the November 2000 district elections for the Board of Supervisors. This memorandum describes the basic components of the proposed pilot program.

## COMPONENTS OF PILOT PROGRAM PROVIDING FOR PARTIAL PUBLIC FINANCING

Offices covered. Applies only to candidates for Board of Supervisors in the November 2000 district elections. Would provide a mechanism for extending the program.

Spending limits. All publicly financed candidates would be required to accept the voluntary spending limits of $75,000 for the general election and $20,000 for the run-off election, if a run-off is needed.

Contribution limit. The existing $500 contribution limit would remain in effect for all candidates, whether or not they participate in the public financing program.

Qualifying contributions. In order to qualify for partial public financing, candidates would need to raise a total of $20,000 from 400 qualified voters in the district at $50 per contributor. (Commissioner Melbostad would prefer a lower threshold of $10,000 raised from 200 contributors at $50 per contributor.) An amount of up to $500 could be accepted from each contributor, but only $50 of each contribution would count toward the qualification threshold.

Matching funds. After a candidate reaches the qualification threshold, the City would match dollar for dollar what the candidate raises. The total amount of private and public funds received by the candidate could not exceed the spending limit of $75,000. For example, assuming a qualifying threshold of $20,000, a candidate qualifies by raising $20,000 from 400 qualified voters. The spending limit is $75,000. That leaves a balance of $55,000. The City would provide matching funds of up to $27,500 (half of $55,000) until the $75,000 spending limit is reached. If the candidate raises only $7,000 in private funds beyond the initial $20,000, the City would match only the $7,000. Only contributions received from qualified voters within the district would be matched. The initial $20,000 raised by the candidate would not be matched. Any personal funds contributed by the candidate would also not be matched.

In a run-off election, the City would match up to $10,000 of funds raised by a candidate after the general election. An amount of $10,000 raised by the candidate, plus $10,000 from the City, would bring the candidate up to the $20,000 spending limit for the run-off.

Additional requirements. To receive matching funds, the candidate would also have to agree to:

- Accept the voluntary spending limit of $75,000 for the general election and $20,000 for the run-off election, if a run-off is needed;
- Limit personal spending to $10,000;
- Limit campaign expenditures to qualified campaign expenditures; and
- Be opposed by another candidate who has qualified for public financing; or be opposed by a non-participating candidate who raises or spends $20,000 or more in the general election.

Lifting the spending limits. The spending limits in a district would be lifted (eliminated) if:

- A non-participating candidate spends more than 100 percent of the spending limit for the general election or 100 percent of the spending limit for the run-off election; or

- Committees make independent expenditures that, in the aggregate, equal at least 50 percent of the spending limit in support of one candidate in the district.

Provision of matching funds when the limits are lifted. To help offset the higher spending of non-participating opponents, the City would provide additional matching funds to participating candidates if the spending limits are lifted. If the spending limits are lifted in the general election by a non-participating candidate who raises or spends above the voluntary spending limit, the City would grant matching funds to participating candidates in the district, up to an additional $25,000 above the spending limit (i.e., 33 percent of the $75,000 spending limit). The matching funds would be provided at a rate of $1 of matching funds for each dollar spent by a non-participating opponent above the limit. For example, Candidate A, a non-participating candidate, causes the spending limit to be lifted. He/she spends $40,000 above the $75,000 limit on his/her campaign. The City then grants matching funds of $25,000 to each of the participating candidates in that district.

Additional dollar-for-dollar matching public funds of up to $25,000 would also be made to participating candidates when the spending limits are lifted due to aggregate independent spending by committees that exceeds 50 percent of the spending limit and that benefits a single candidate in the district. The matching funds would be provided based on the level of independent spending by committees in excess of the spending limits. For example, Committees A, B, and C make independent expenditures to benefit a single candidate in the district. The aggregate expenditures exceed $37,500 (50 percent of the spending limit). In that case, the City would provide matching funds of $25,000 to the participating candidates in that district.

If the spending limits are lifted in a district in the run-off election, the City would grant participating candidates up to an additional $10,000 in matching funds (i.e., 50 percent of the $20,000 spending limit for the run-off.), based on a non-participating opponent's spending above the limit, or aggregate spending of independent expenditure committees benefiting a single candidate in the district.

Timetable. A candidate could begin raising contributions as early as January 2000 and could apply for public financing as early as June 1. Candidates who are certified by the Ethics Commission to receive public financing would be eligible to receive an initial payment of matching funds as early as June 15.

Report to the Board and the Mayor. The Ethics Commission would study the effects of partial public financing in the pilot program and provide a report to the Board and the Mayor after the November 2000 election. By a vote of two-thirds of its members, the Board of Supervisors could extend the program.

2

Funding:  The pilot program would be funded by an appropriation from the General Fund.

\\ETHICS-01SVR\DATA\SHARED\Public Finance\Misc\Partial.doc