# EXHIBIT D

**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**



Ethics Commission

1390 Market Street, Suite 801
San Francisco, CA 94102
Phone 554-9510 Fax 703-0121

# SAN FRANCISCO ETHICS COMMISSION AGENDA
for
Monday, December 6, 1999, 5:15 p.m.
City Hall
One Dr. Carlton B. Goodlett Place, Room 408

I. Call to order and roll call

II. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.

III. Discussion and possible approval of the minutes of the meeting of November 8, 1999

IV. Executive Director's report

1. Public policy program
2. Investigation and enforcement program
3. Report on volume of calls received via the Whistleblower hotline
4. Campaign finance disclosure program
4. Campaign finance audit program
5. Lobbyist program
6. Campaign consultant program
7. Statements of economic interests
8. Sunshine Ordinance amendments

V. Discussion and possible reconsideration of previously approved format to replace or revise the current format for electronic reporting of campaign finance statements, in accordance with new FPPC forms and in view of new electronic formats adopted by the Secretary of State; and possible consideration of proposed request for supplemental appropriation to implement new or revised electronic format.

DTIS has informed the Commission that the .CAL format is technically superior to the EFPOC format approved by the Commission earlier this year. For this reason, the staff proposes adoption of the .CAL format. The .CAL format is one of two standards that have been adopted by the California Secretary of State. A report prepared by DTIS pertaining to the .CAL proposal is available from the Commission office.

Motion that the Ethics Commission adopt the .CAL format for electronic filing of campaign statements submitted by candidates and committees, that the Commission request a supplemental appropriation in an amount of $10,000 to fund a work order to the Department of Telecommunications and Information Services (DTIS) to implement the .CAL format by April 1, 2000; that the Commission withdraw its earlier request for a supplemental in the amount of $10,000 to fund a work order to DTIS to revise the EFPOC format; and that the Commission suspend use of the current EFPOC format when the .CAL format is ready.

(Please turn over for page 2)

VI. Discusssion and possible action re: draft legislation providing for public financing of campaigns for elective office in San Francisco, and whether the Commission should submit for the March 1999 ballot a measure proposing public financing of campaigns for elective office; or b) submit to the Board of Supervisors a proposal providing for public financing of campaigns; or c) submit for a future election a ballot measure providing for public financing of campaigns. The draft legislation will be available from the Commission office on Friday, November 26.

VII. Discussion of items for future agendas

VIII. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

IX. Adjournment

### *Know Your Rights Under the Sunshine Ordinance*

*Government's duty is to serve the public, reaching its decisions in full view of the public. Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance assures that deliberations are conducted before the people and that City operations are open to the people's review.*

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force at 554-6075.*

---

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

---

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street, Suite 801, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554-8757 and web site http://www.ci.sf.ca.us/ethics/*

P:\SHARED\AGENDA\1999\AG1206 99.doc




sfgov | residents | business | government | visitors | online services | search

Ethics Commission >> Meeting Information

# Ethics Commission

December 06, 1999

(Approved as amended 1/10/00)

Minutes of the

San Francisco Ethics Commission Meeting

at City Hall

One Dr. Carlton B. Goodlett Place, Room 408

December 6, 1999, 5:15 p.m.

**I. Call to order and roll call.**

Commission Chair Isabella H. Grant called the meeting to order at 5:15 p.m.

**COMMISSION MEMBERS PRESENT:** Isabella H. Grant, Chairperson; Henri Norris, Vice-Chairperson; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner; and Carol M. Kingsley, Commissioner.

**STAFF PRESENT:** Naomi Starkman, Deputy Executive Director; Joe Lynn, Campaign Finance Officer; Katherine Havener, Ethics Investigator/Legal Analyst; Tina Tan, Intern.

**OFFICE OF THE CITY ATTORNEY:** Claire Sylvia, Deputy City Attorney

**OTHERS PRESENT:** Sheryl White, Statecraft, Inc.; Brad Benson, Legislative Aide to Supervisor Ammiano; Joan Kingery, West of Twin Peaks Association; William Langfeld, Common Cause; Mike Mooney, Common Cause and Alliance for Democracy; Anita Mayo, Pillsbury, Madison & Sutro; Luke Ellsworth, Alliance for Democracy.

**MATERIALS DISTRIBUTED:**

S.F. Ethics Commission Agenda, December 6, 1999

Draft Minutes of the S.F. Ethics Commission Meeting of November 8, 1999

Approved Minutes of the S.F. Ethics Commission Meeting of October 6, 1999

Executive Director's Report for the Meeting of December 6, 1999

Draft of Ordinance [Public Financing of Election Campaigns - November 29, 1999]

Memo to Ethics Commission Members from Ginny Vida re: Key Provisions of a Partial Financing Proposal dated November 30, 1999

Letter to Ginny Vida, Executive Director, from Maria Gartner, Department of Telecommunications and Information Services, dated November 4, 1999

"Campaign Funds Law in Works," San Francisco Examiner, November 9, 1999

"Business Tax Issue Dogging Ammiano," San Francisco Examiner, November 25, 1999

"Light Time in Tough Race," San Francisco Examiner, November 30, 1999

Letters to the Editor, "A Catholic Voice," San Francisco Chronicle, December 2, 1999

"Mayor Brown, Fazio Way Ahead of Opponents in Fund Raising," San Francisco Chronicle, December 3, 1999

II. **Public comment re: matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.**

Joan Kingery, of the West of Twin Peaks Association, expressed her concern that the Commission did not place on the March, 2000 ballot the issue of public financing of campaigns.

Former mayoral candidate Jim Reid expressed his disappointment that the Commission did not place the public financing issue on the March ballot.

Brad Benson, on leave from Supervisor Ammiano's office, urged the Commission to take action on public financing of campaigns in order to avoid the potential conflict of interest that the Board of Supervisors would have in deciding this matter. He also stated his concern about the lack of reporting by committees that make independent expenditures. Mr. Benson urged the Commission to review the matter because the names of contributors of the vast sums of money spent by committees making independent expenditures would not be reported until after the election.

Commissioner Robert D. Dockendorff stated that an advice letter from the FPPC had led some committees to believe they did not have to file pre-election reports. He stated that a challenge to the advice letter issued by FPPC staff would be appropriate.

Commissioner Paul H. Melbostad expressed his view that non-reporting by such committees was a serious matter.

Anita Mayo of Pillsbury, Madison & Sutro, noted that general purpose county committees do not have to file pre-election reports. She said that the FPPC had advised that committees operating in San Francisco are county committees.

Michael Mooney, a member of the Alliance for Democracy and Common Cause, urged the Commission to continue its efforts on providing a public financing program for San Francisco.

Vice-Chairperson Henri E. Norris stated while members of the public were disappointed that the Commission had not placed a measure on the ballot regarding public financing, she supported the Commission's intention to carefully craft a public financing measure that would withstand court scrutiny.

III. **Discussion and possible approval of minutes of the meeting of November 8, 1999**

99-12-6-43 (Dockendorff/Norris) Moved, seconded and passed: That the minutes of the November 8, 1999 meeting be approved.

IV. Executive Director's Report

Deputy Executive Director Naomi Starkman reported that Executive Director Ginny Vida was attending the annual COGEL conference. Ms. Starkman directed the Commission's attention to the Executive Director's Report. Ms. Starkman asked Campaign Finance Officer Joe Lynn to comment on the most recent campaign report filing.

Mr. Lynn reported that all four candidates in the run-off election met their obligation to file on December 2, 1999. He stated that electronically reported data from the candidates' reports was posted to the Commission's website within 24 hours of its receipt. He explained that because the Commission's On Line Filing System was not set up to receive Independent Expenditure Reports electronically, the posting of that information to the Commission's web site had been delayed.

Mr. Lynn explained that there had been some confusion about whether committees that make independent expenditures are required to file pre-election reports. He stated that the staff was in the process of determining the filing obligations of such committees.

Ms. Mayo noted that these general purpose committees file pursuant to state law, which provides that San Francisco committees are county committees. She said that general purpose county committees do not file in odd-numbered years, the year in which the mayoral races occurred. Ms. Mayo stated that such committees are not skirting the statute but are following their obligations under the law.

Commissioner Dockendorff asked that staff make it a priority to gather more information from the FPPC on the issue.

V. Discussion and possible reconsideration of previously approved format to replace or revise the current format for electronic reporting of campaign finance statements, in accordance with new FPPC forms and in view of new electronic formats adopted by the Secretary of State; and possible consideration of proposed request for supplemental appropriation to implement new or revised electronic format.

Ms. Starkman explained that Forms 419, 420, and 490 have been replaced by a new Form 460. She stated that this new Form must to be formatted for acceptance by the Commission's On-Line Filing System. She explained that although the Commission had previously approved continuing the EFPOC format, DTIS had discovered that the .CAL format was superior and requested that it be adopted.

Commissioner Carol M. Kingsley asked why the earlier $31,000 budget had been changed to $10,000. Mr. Lynn responded that the $31,000 budget included all three formats, EFPOC, X12 and .CAL. The earlier staff recommendation to retain the EFPOC format was based solely on budgetary concerns. Mr. Lynn explained that as DTIS began to develop its new format, it realized that the .CAL format was technically superior. Mr. Lynn reported that while DTIS had earlier estimated that it would cost $16,000 to adopt the .CAL standard, their experience led them to lower the estimate to $10,000.

Commissioner Kingsley questioned whether staff was confident in the budgetary figures set forth by DTIS. Mr. Lynn expressed his confidence in DTIS's budgetary estimate based on past experience with that department.

Sheryl White, President of Statecraft, Inc., reviewed the past history of the formatting decisions by the Department of Elections and the Ethics Commission. She

advocated the X12 standard, a national standard. She noted that in the past Mr. Ron Kane, DTIS, had in the past advocated for the X12 standard. She said that EFPOC was to be a temporary standard until a national standard was adopted. She characterized .CAL as a "proprietary" format and told the Commission that she has brought a lawsuit to challenge the Secretary of State's adoption of the .CAL standard.

Ms. White said that a court hearing would be held in her case on December 17 and that if she won a writ of mandamus, she would challenge any action by the Commission to adopt the .CAL standard. She also stated that adoption of the .CAL standard would require the Commission to incur further costs than called for in the supplemental appropriation: an EDI check costing $30,000, an EDI load server costing $45,000, and an EDI load filer costing $20,000. She also said that not all FPPC requirements have been met by the .CAL standard. She further predicted that the future of data base reporting would be XML, which could handle the X12 standard with a translator.

In response to Commissioner Dockendorff's question, Mr. Lynn said the cost of adopting both the X12 and .CAL standard would be $26,000. Mr. Lynn noted that 9 of the 10 vendors registered with the Secretary of State had adopted the .CAL standard. Mr. Lynn also noted that if the Commission did not act at today's meeting, DTIS would not have the necessary lead-time to accommodate the new Form 460, thus rendering the Commission's On-Line Filing System inoperable.

In response to Commissioner Dockendorff's question, Mr. Lynn said that the $10,000 supplemental appropriation would be all that would be needed to accommodate the new Form 460 in the .CAL format.

Commissioner Kingsley asked whether there would be additional expenditures after adopting the .CAL standard. Mr. Lynn said he understood there would be no additional expenditures. Mr. Lynn said he would be glad to verify this understanding.

Commissioner Dockendorff said that he was satisfied with the recommendation by the staff and DTIS. He also noted that adoption of the .CAL standard would not preclude later adoption of the X12 standard.

Vice-Chairperson Norris said she was concerned about Ms. White's statements and requested that the Commission monitor future developments.

99-12-6-44 (Norris/Dockendorff) Moved, seconded and passed: That the Ethics Commission adopt the .CAL format for electronic filing of campaign statements submitted by candidates and committees, that the Commission request a supplemental appropriation in the amount of $10,000 to fund a work order to the Department of Telecommunications and Information Services (DTIS) to implement the .CAL format by April 1, 2000; that the Commission withdraw its earlier request for a supplemental in the amount of $10,000 to fund a work order to DTIS to revise the EFPOC format; and that the Commission suspend use of the current EFPOC format when the .CAL format is ready. This motion is conditioned upon Mr. Lynn's verification that there will be no large software verification expenditure as the result of this action.

VI. Discussion and possible action re: draft legislation providing for public financing of campaigns for elective office in San Francisco, and whether the Commission should submit for the March 2000 ballot a measure proposing public financing of campaigns for elective office; or b) submit to the Board of Supervisors a proposal providing for public financing of campaigns; or c) submit for a future election a ballot measure providing for public financing of campaigns. The draft legislation will be available from the Commission office on Friday, November 26.

Commissioner Melbostad moved that the Commission place on the March 3, 2000 ballot a measure with the language drafted by the City Attorney providing for public

financing of campaigns with the following changes: 1) change the wording to provide a pilot program of public financing of election campaigns for the Board of Supervisors; 2) delete all references to offices other than the Board of Supervisors; 3) re-write Section 16.511-3 to read "eligibility would be based upon receiving contributions totaling the amount of $5,000 in contributions equal to or greater than $10. For contributions greater than $50, only $50 shall be counted to meet the thresholds of this provision"; and 4) further modify the language in accordance with the staff's proposal for partial public financing.

Commissioner Melbostad said the practical effect of not adopting the proposal would be the election of supervisors in unregulated campaigns.

Commissioner Dockendorff seconded the motion with the amendment that all references to exceeding expenditure limits be deleted. Commissioner Melbostad accepted this as a friendly amendment.

Commissioner Kingsley said she could understand the passion of the public on the subject. Nevertheless, she said, the issue is enormously complex and requires further deliberation. Adopting a full public financing would be a first for a municipality, indicating that care is needed in adopting such a proposal. She stated that further study is needed.

Chairperson Grant expressed her agreement with Commissioner Kingsley. Commissioner Grant noted that not only would full public financing be a first for a city, no state that had adopted such a program had yet implemented its program. She stated that she would like to forward a pilot program providing for partial financing to the Board for enactment. She stated that it could not be assumed that the Board would reject a thoughtful program. She also said that the Commission could continue to address the issue of full public financing. Chairperson Grant also stated that the Commission needs to address what the purpose of the program would be, to fund more candidates or to protect viable candidates from being influenced by private money.

Vice-Chairperson Norris repeated her commitment to full public financing. She stated that the issue of public financing would require further study as well as working with the Board of Supervisors. She stated that if the Board does not act, the voters can hold the Supervisors accountable.

Upon the call of the role, Commissioners Dockendorff and Melbostad voted in favor of the motion; Commissioners Grant, Norris and Kingsley voted no. The motion failed.

Commissioner Melbostad asked whether Vice-Chairperson Norris would object to a motion directing the Ad Hoc Committee on Public Financing to report a measure on a pilot program for the Board of Supervisors so that the Commission could report such a measure to the Board. In response to an inquiry from Commissioner Kingsley, Commissioner Melbostad said that his motion would set a deadline for the Commission to act, but would not preclude the Commission from taking other action.

99-12-6-44 (Melbostad/Dockendorff) Moved, seconded and passed: That the Ethics Commission complete hearings and make a recommendation to the Board of Supervisors on proposed legislation to enact a public financing program in time to be in effect for the November 2000 elections and that the Commission vote on such a recommendation at the regular February meeting of the Commission.

Chairperson Grant said she would like to consider arguments against public financing and the history of the Los Angeles and Tucson programs.

Commissioner Kingsley said that she would like to consider ways of financing a program other than through the general fund.

### VII. Discussion of items for future agendas

Chairperson Grant said it would be good to calendar the lobbyist/union question for the January agenda.

### VIII. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

Mr. Mooney expressed his view that a pilot program seemed the best way to approach the issue of public financing. He also recommended that the former Tucson Mayor, Tom Volgy, be invited to testify. Commissioner Melbostad agreed. Ms. Starkman said Mr. Volgy has been invited to testify before the Commission.

In response to an inquiry from Commissioner Dockendorff, Ms. Starkman said the Commission's Whistleblower hotline does not have a caller ID capability.

Luke Ellsworth, of the Alliance for Democracy, asked why Board approval of the funding would be required if a Commission ballot measure were passed by the voters. Ms. Starkman explained that the funding could only be secured through a Charter amendment, which the Commission did not have authority to place on the ballot.

Mr. Reid said he thought that failure by the Board to fund a measure passed by the voters would be politically unpopular.

### IX. Adjournment

The Commission meeting adjourned at 7:10 p.m.

Respectfully submitted,

_____

Joe Lynn

Campaign Finance Officer

### SF Gate news

- SF Gate Home
- Today's News
- Sports
- Entertainment
- Technology
- Live Views
- Traffic
- Weather
- Health
- Business
- Bay Area Travel
- Columnists
- Classifieds
- Conferences
- Search
- Index





## Mayor Brown, Fazio Way Ahead of Opponents in Fund Raising

Friday, December 3, 1999

**San Francisco Chronicle**
CHRONICLE SECTIONS

Kenneth Howe, John Wildermuth, Chronicle Staff Writers

There has been an overflow of campaign riches for Mayor Willie Brown, who appears already to have raised more money than he can legally spend during the runoff campaign.

A financial report released yesterday shows Brown with $866,000 in the bank, more than double the city's $400,000 voluntary spending limit for the race.

His opponent, Supervisor Tom Ammiano, has raised almost $250,000 for the December 14 runoff election, nearly all of it in $250 chunks from San Franciscans.

In the race for district attorney, challenger Bill Fazio has amassed almost twice the funds of incumbent Terence Hallinan during the past 42-day period, according to financial reports released by the city Ethics Commission.

As of November 27, the closing date for the most recent report, Ammiano had raised $244,765 and had $83,209 in the bank. Brown had raised $3.11 million, the bulk of it during his hard-fought general election campaign.

``Clearly the runoff campaign is going to be much less expensive,'' said P.J. Johnston, a spokesman for Brown's campaign.

Although the spending limit is a voluntary one, Brown has indicated that he intends to abide by it.

``I know of no plan to exceed those limits,'' Johnston said.

But the mayor's big-spending backers aren't bound by any similar restrictions. While not all the independent committees backing Brown have filed their required spending reports, more than $332,000 already has been pumped into efforts to re-elect Brown, with much more

Get a printer-friendly version of this article

**POLITICS '99**

ELECTION '99
SF Gate special section: Archives, stories aplenty

TALKIN' MAYORS
Does Tom have a runoff shot against Willie? Discuss.

Ammiano rips 49ers mall as a boondoggle.

Jordan backs Bill Fazio in race for DA.

Worn-out Brown says runoff campaign takes too long.

Mayor Brown, Fazio way ahead of opponents in fund raising.

Bush survives first debate.

Euro takes tumble, drops below $1 for the first time.

▼ RELATED ARTICLES
powered by Autonomy

09/24/1999 - Brown, Reilly in battle of war chests.

08/03/1999 - Reilly Mayoral Spending Spurts Past $1 Million.

06/24/1999 - Spending cap is off in mayor election.

>>more related articles...

expected to come.

The Hotel and Restaurant Employees International Union has spent $115,478 to put union members out walking precincts for Brown. San Franciscans for Sensible Government, which represents many of the city's largest businesses, has put up $180,425 for TV ads in support of the mayor. The San Francisco Labor Council has provided $27,380 for campaign workers.

By contrast, no independent money has flowed into Ammiano's campaign so far. The supervisor has raised most of his money from individual contributions, which are capped at $250.

``We know we'll be outspent, but we have the people to make a difference,'' said Esther Marks, Ammiano's campaign manager.

Ammiano's 760 donors include Dan Kelly, a school board member; the Rev. Robert Cromey, rector of Trinity Episcopal; the San Francisco Bike Political Action Committee; Mary Burns, who was fired by Brown as head of the city's Recreation and Park Department; and Jack Fertig, who was the original Sister Boom Boom of the Sisters of Perpetual Indulgence.

Brown's contributions come from across the nation. The 2,200 donors listed in his most recent financial report include Dr. Michael Bishop, the Nobel prize winner who is chancellor of the University of California at San Francisco; the Boom Boom Room on Fillmore Street; David Dinkins, former mayor of New York City; Hugh McColl, the Charlotte, N.C.-based head of Bank of America; Nan Tucker McEvoy, a member of the family that owns The Chronicle; John and Denise DeBartolo York, owners of the 49ers; and Elizabeth Furnell, owner of the Gold Club, an upscale strip club.

In the race for district attorney, Fazio contributors donated $134,366 during the latest campaign period, bringing the total he has raised to $244,477.

Fazio's 500 or so contributors included lawyers, police officers and dentists, plus such well-known San Francisco names as writer Barnaby Conrad III and former Fireman's Fund CEO

By comparison, Hallinan picked up only $70,355 during the same period, including an $11,060 loan he made to his own campaign.

Of his roughly 300 contributors, about a third work in the district attorney's office. Altogether, they contributed about $18,000 to their boss during the period.

Between Hallinan and his staff, the district attorney's office contributed roughly 40 percent of the total raised during the period.

Hallinan's other contributors included Supervisor Sue Bierman, the International Brotherhood of Electrical Workers, famed attorney Tony Serra and Margo St. James, the former prostitute who founded the Hookers Ball.

©1999 San Francisco Chronicle   Page A26

Feedback

Yerba Buena Center for the Arts
www.YerbaBuenaArts.org



- SF Gate Home
- Today's News
- Sports
- Entertainment
- Technology
- Live Views
- Traffic
- Weather
- Health
- Business
- Bay Area Travel
- Columnists
- Classifieds
- Conferences
- Search
- Index





### Business tax issue dogging Ammiano

Nov. 25, 1999

**San Francisco Examiner**
EXAMINER SECTIONS

Ilene Lelchuk
OF THE EXAMINER STAFF

## Worried commercial leaders vow to keep Brown in office

Get a printer-friendly version of this article

Mayoral candidate Tom Ammiano has a reputation he's finding tough to beat.

It's been four years since the Board of Supervisors president proposed $75 million or so in tax increases, a plan that never flew but left the business community screaming mad.

Now, as Ammiano campaigns for mayor and pledges his support for neighborhood businesses, prominent associations of big and small business leaders are vowing to do whatever it takes to help Mayor Willie Brown beat Ammiano in the Dec. 14 runoff election.

And it's not just taxes they fear - despite Ammiano's promise at recent debates that he'd propose taxes again only if the booming economy goes bust.

It's Ammiano's living wage proposal. And his call in 1995 for rent control in commercial buildings, which failed because it is against state law. And claims that he refused to meet with disgruntled business leaders.

"We never have been . . . as concerned about this city's soul - political and economic - as we are right now," said Joe O'Donoghue, president of the Residential Builders Association.

In Ammiano's defense, his supporters say it's absurd to brand him as a tax-and-spend liberal.

"Oh, for heaven's sake. What really galls me is that so many members of the business community are caught up in the five-second sound bites of who this guy is," said Jim Herlihy, vice president of an investment management firm in The City.

Still, if the amount of money that business spent on Brown's behalf for the Nov. 2 election is any indication, big money is headed his way again for the last three weeks of the campaign.

Organizations such as the Building Owners and Managers Association and San Franciscans for Sensible Government, a business lobbying group, spent thousands during the fall on TV ads, mailers and workers to walk precincts.

Independent expenditure committees must report their latest expenses to the Ethics Commission on Dec. 2.

Mark Mosher, who runs San Franciscans for Sensible Government which spent $30,000 on a pro-Brown TV ad in September, said he is in fund-raising mode again. Mosher also is executive director of Committee on Jobs, which represents San Francisco's biggest businesses.

"(Ammiano) has repeatedly refused to meet with business people who he disagrees with," Mosher said. "To run this city you need to meet with people of all different points of view and drive a compromise."

Dale Carlson of the Pacific Stock Exchange still holds a grudge on that account. He said Ammiano refused to talk to him in 1995 about the supervisor's proposal to tax stock transactions.

"I've never been treated like this and I don't know anyone else treated like this by elected officials in San Francisco, Sacramento or Washington."

On the smaller business scale, Stephen Cornell of Brownie's Hardware with 10 employees on Russian Hill is worried about Ammiano's living wage proposal.

Although the proposal would not affect Cornell's business directly, he is worried that it would be tougher for him to attract employees.

"I'm in competition for my employees," said Cornell, who also is a member of the Council of District Merchants.

Under Ammiano's plan, contractors and tenants on such city-owned properties as the airport and the port would be required to pay their workers a living wage - either $11 an hour plus benefits or $12 without benefits.

If adopted, it would be the most far-reaching living wage ordinance in the nation. A City Hall task force is studying the proposal and is expected to present its recommendations to the Board of Supervisors by year's end.

Brown, meanwhile, told The <*col. 2 of AMMIANO (#9276 )*> Examiner this week that he wants to encourage businesses to offer living wages through incentives, such as tax breaks for companies that pay their employees more.

The mayor is taking credit for the current economic prosperity, the 3.5 percent unemployment rate and for attracting employers in high-wage industries such as Sony to town.

Ammiano, meanwhile, is billing himself as the mayor who can reinvigorate mom-and-pop businesses.

He is proposing tax incentives, technical assistance and neighborhood-based advisory councils that will tell city leaders, for example, whether they want Starbucks and Rite-Aid to move in.

"We are not against big business by any means," Ammiano spokeswoman Belinda Griswold said. "We are definitely in favor of incentives for big businesses if we get something in return, such as tax breaks in return for child care on the premises, for example."

Ammiano also recently supported legislation to create a Small Business Advisory Commission that gives the community a voice for the first time, Griswold said.

"Tom has been very open to hearing the concerns expressed by small businesses," said supporter Barry Hermanson, who runs a temp agency in the Castro.

Ammiano is unapologetic about his 1995 proposals: a tax on downtown business to pay

transactions at the Pacific Stock Exchange, a tax on real estate transfers of properties over $5million, and a small increase in the payroll tax on corporations that make at least $25 million in profit, which he says would pay for a reduction in payroll tax for small businesses.

Unfortunately for Ammiano, many business people remember those plans all too well.

"There is a certain amount of fear of political instability if Tom Ammiano wins the mayor's race," said Ken Cleaveland, director of governmental affairs for the Building Owners and Managers Association of San Francisco.

"We are playing as active a role as we can to try to get the word out about what is good about Mayor Brown."

©1999 San Francisco Examiner   Page A 1



Feedback
A SF Gate