# EXHIBIT G

**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**Ethics Commission**



1390 Market Street, Suite 801
San Francisco CA 94102
Phone 554-9510  Fax 554-8757

# SAN FRANCISCO ETHICS COMMISSION
# AD HOC COMMITTEE ON PUBLIC FINANCING
# NOTICE OF <u>SPECIAL MEETING</u> AND AGENDA

### FOR
### <u>Monday, February 7, 2000, 5:00 P.M.</u>

### City Hall, 1 Dr. Carlton B. Goodlett Place, Room 400*

*Please note change in room number.

I. Call to order and roll call

II. Discussion and possible vote on draft legislative proposal providing for public financing of campaigns for elective office, and whether the Commission should propose legislation to the Board of Supervisors. Draft legislation will be available from the Ethics Commission office on Friday, February 4.

III. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

IV. Adjournment

### <u>Know Your Rights Under the Sunshine Ordinance</u>

*Government's duty is to serve the public, reaching its decisions in full view of the public. Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance assures that deliberations are conducted before the people and that City operations are open to the people's review.*

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force, Rachel Arnstine O'Hara, Clerk, City Hall, room 362, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102-4683. Office telephone: (415) 554-6171; Fax: (415) 554-6177; E-mail: Rachel_ArnstineO'Hara@ci.sf.ca.us. Copies of the Sunshine Ordinance can be obtained from the Clerk of the Sunshine Task Force, the San Francisco Public Library and on the City's web site at www.ci.sf.ca.us.*

Please turn over for page 2

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

---

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street #701, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554-8757 and web site www.ci.sf.ca.us/ethics*

s:agenda/2000/020700 special mtg.doc




sfgov | residents | business | government | visitors | online services | search

Ethics Commission >> Meeting Information

# Ethics Commission

February 07, 2000

(Approved 7/31/00)

Minutes of the
San Francisco Ethics Commission
Ad Hoc Committee on Public Financing
City Hall
One Dr. Carlton B. Goodlett Place, Room 400
February 7, 2000; 5:00 p.m.

I. Call to order and roll call

Ad Hoc Committee Chairperson Paul H. Melbostad called the meeting to order at 5:15 p.m.

**COMMISSION MEMBERS PRESENT:** Isabella H. Grant, Commission Chairperson; Carol M. Kingsley, Commissioner; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner. Vice-Chairperson Henri E. Norris was excused.

**STAFF PRESENT:** Ginny Vida, Executive Director; Naomi Starkman, Deputy Executive Director; Joe Lynn, Campaign Finance Officer.

**OFFICE OF THE CITY ATTORNEY:** Claire Sylvia, Deputy City Attorney, Chad Jacobs.

**OTHERS PRESENT:** Joan Mandle, Common Cause; J.R. Manuel; Charles Marsteller, Common Cause; Robert O'Malley; Mike Mooney, Alliance for Democracy; Jim Reid; Chuck Squatriglia, San Francisco Chronicle.

**MATERIALS DISTRIBUTED:**

S.F. Ethics Commission Agenda, February 7, 2000

Draft minutes of the January 13, 2000 meeting of the Ad Hoc Committee on Public Financing

Draft legislation: Public Financing of Election Campaigns

Memo from Ginny Vida to the Ethics Commission re: Amending the SF Admin. Code to Provide for Public Financing of Election Campaigns, February 4, 2000

Memo from Ginny Vida to the Ethics Commission re: Report on Funding Alternatives to the General Fund for a Public Financing Program, February 7, 2000

E-mail memorandum from Commissioner Bob Dockendorff re: More Ideas on Public Financing for Proposal for the Board of Supervisors, January 27, 2000

Staff report: "Estimated Cost of Public Finance Program based on Draft Legislation" (spreadsheets identifying estimated costs of a public financing program,

taking into account certain variables)

II. Discussion and possible vote on draft legislative proposal providing for public financing of campaigns for elective office, and whether the Commission should propose legislation to the Board of Supervisors.

Deputy Executive Director Naomi Starkman directed the Committee's attention to the staff memorandum of February 4, 2000, identifying items to be decided regarding a public financing program.

The Committee briefly discussed the staff's proposal to require that qualifying contributions be made by check. It was agreed that this requirement is necessary.

The Commission reconsidered the amount of the qualifying threshold, previously set at $5,000 in amounts ranging from $10 to $100. Commissioner Dockendorff proposed that the threshold be increased to $7,500

In response to an inquiry from Commissioner Dockendorff, Campaign Finance Officer Joe Lynn advised that in the 1998 supervisorial race, there were clusters of candidates who raised over $100,000 and a cluster of candidates who raised under $4,000. Only a small number of candidates raised amounts between $4,000 and $100,000.

Ms. Starkman reviewed the qualifying thresholds of other jurisdictions: Los Angeles, $25,000 or more in contributions of $250 or less; New York City, $5,000 from a minimum of 50 contributors; Long Beach, $5,000 or more in contributions of $250 or less; Tucson, 200 contributions of $10 or more.

Commissioner Melbostad then invited public comment on the threshold issue.

J.R. Manuel, a recent mayoral candidate, stated that most candidates would need financial assistance. He stated, however, that only the serious candidates should be publicly funded.

Joan Mandle, representing Common Cause, recommended a threshold of $5,000, based on the New York model, which she said had worked well. She expressed concern that the $7500 threshold would eliminate too many candidates.

Robert O'Malley, a possible candidate for supervisor, said that his decision on whether to run would be based on the Commission's recommendation. He suggested that the Commission allow qualifying contributions to be made by credit card so that low-income persons could more easily contribute to campaigns.

Jim Reid, a former candidate for Mayor, stated that $7,500 would be a challenging threshold to meet, but if he had to, he could raise that amount.

Mike Mooney, representing the Alliance for Democracy, stated that a lower threshold would be preferable because it would result in a wider pool of candidates.

Charles Marsteller of Common Cause asked the Commission to bear in mind that the universe of persons who make charitable contributions is about four percent of the national population, as compared to one percent of the population that makes political contributions.

After some discussion, the following motion was approved unanimously:

Motion 00-2- 7-7 (Grant/Kingsley) Moved, seconded and passed: That the qualifying threshold should remain at $5,000.

Ms. Starkman raised the issue of how it should be determined that a participating candidate is meaningfully opposed. The Committee agreed that a nonparticipating candidate who raises $5,000 would be considered meaningful opposition.

After some discussion of how matching funds might be awarded in a run-off election, it was agreed that the voluntary spending limit of $20,000 should remain in place.

The Committee also discussed possible alternative funding sources for the program. Executive Director Ginny Vida reported that she had met with Controller Ed Harrington and Deputy City Attorney Julie Moll to explore alternatives to the General Fund as revenue sources. Ms. Vida referred to her memorandum dated February 7, 2000, summarizing that meeting and additional staff research. She reported that the Commission could decide to propose a new tax or surcharge on existing fees to pay for public financing, but that specific surcharges or taxes would require approval by the voters.

Commissioner Dockendorff stated that since the program involves a public benefit, the General Fund would be an appropriate revenue source.

Commissioner Kingsley suggested that the Commission explore a surcharge on parking violation fines.

Commission Chair Isabella H. Grant suggested that voluntary contributions might be solicited when one registers to vote or receives a ballot. A solicitation might also be included in the voter pamphlet. She stated that the Board would appreciate receiving a report from the Commission on funding alternatives.

Commissioner Kingsley encouraged the Commission to make a specific proposal to the Board on funding alternatives to the General Fund.

Commissioner Melbostad stated that the Commission does not have enough information at this time to make a recommendation on alternative funding, but that this lack of information should not preclude recommending a public financing program to the Board.

A member of the public suggested that the General Fund would be an appropriate source in view of expected budget surpluses.

Ms. Vida advised that both the Mayor and the Controller have confirmed that the City's economic forecast is not optimistic because of an anticipated decline in business taxes. She said that for this reason, all City departments have been asked to absorb MOU salary step and cost-of-living increases within their present funding levels for the next fiscal year.

The following motion was subsequently approved:

Motion 00-2-7-8 (Grant, Dockendorff) Moved, seconded and passed: That the Commission recommend general fund support for the proposed plan to provide for public funding for election campaigns for the Board of Supervisors, but that the Commission inform the Board that it has discussed various taxes, surcharges and fees as well as voluntary contributions.

After some discussion, the following motion was approved on certification of candidates for public funding:

Motion 00-2-7-9 (Kingsley/Dockendorff) Moved, seconded and passed: That the Commission accept the staff proposal on how candidates would be certified to receive public funds, except that an adverse decision by the executive director on certification could be appealed to the Commission after first being appealed to the

executive director.

After some discussion, a formula for the awarding of public funds to supervisorial candidates in the general election was approved as follows:

Motion 00-2-7-10 (Kingsley/Dockendorff) Moved, seconded and passed: In the general election a candidate who has been certified to receive public funding would receive an initial grant of $5,000 upon certification. The next $5,000 in contributions raised by the candidate would be matched in public funds by a ratio of $4 for each $1 raised. Contributions thereafter would be matched $1 for $1 until the $75,000 spending limit had been reached. The total maximum amount awarded to a candidate in the general election would be $45,000.

After further discussion, the Committee approved the following formula for the awarding of public funds to supervisorial candidates in run-off elections:

Motion 002-7-11 (Dockendorff/Kingsley) Each participant in the program who reaches the run-off will receive an immediate grant of $5,000 upon certification. If the opposing candidate does not participate in the program (and therefore does not accept the spending limit), the participant's grant will be raised to $20,000. Otherwise, the City will match contributions at a ratio of $2 to $1, up to the $20,000 spending limit after the initial grant of $5,000.

The Committee discussed the staff recommendation that equipment purchased by program participants and valued at $100 or more would become the property of the City following an election. Commissioner Dockendorff recommended that participants be required to rent equipment. After some discussion, it was determined that the staff recommendation would remain in place.

The Committee then discussed reporting requirements by committees that make independent expenditures benefiting candidates in local races. Deputy City Attorney Claire Sylvia advised that the reporting provisions in the draft legislation require all committees that make independent expenditures to file reports with the Ethics Commission (except for state committees that are required by state law to file with the Department of Elections). Deadlines for reports filed by local committees making independent expenditures would be set by the Commission. Ms. Vida stated that it would be desirable to require committees to file electronically so that data from these filings could be promptly displayed on the Commission's web site.

The Committee also discussed the possibility of increasing the $500 penalty to $10,000. Ms. Sylvia advised that the City Attorney's Office would report back to the Commission regarding this proposal.

III. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

Mr. Marsteller asked the Commission to consider a private right of action for pursuing violations under the public financing proposal. Ms. Sylvia said the City Attorney's Office would draft language for the Commission's consideration.

In response to an inquiry from Mr. O'Malley, Ms. Starkman confirmed that a candidate who had not been certified would have five business days to appeal the decision.

There was no further public comment.

IV. Adjournment

Motion 00-2-7-12 (Grant/Norris) Moved, seconded and passed: That the meeting be adjourned.

The meeting was adjourned at 8:45 p.m.

Respectfully submitted,

_____

Joe Lynn
Campaign Finance Officer

P:\SHARED\MINUTES\2000\01.13.00.doc

```
Author:  Ethics Commission at -ETHICS-COMMISSION
Date:    01/27/2000  10:35 AM
Priority: Normal
TO: Ginny Vida, Joe Lynn, Naomi Starkman
Subject: message from Bob Dockendorff
------------------------------- Message Contents -----
```

In addition to the many features in the public financing laws of other jurisdictions and the fine work that staff has already done, I offer the following thoughts. Since I don't know what version of word you are on, here is the text.

More ideas on Public Financing for Proposal for the Board of Supervisors

Independent Expenditure Committees

To every extent possible the same filing and reporting requirements should apply to any committee participating in a San Francisco election, including national and state committees including political "central committees". Filing requirements for all independent expenditure committees that participate in local elections are to be the same. In the last two weeks before an election, require all independent expenditure committees to report within 24 hours of receiving any contribution of $100 or more or making an expenditure of $1,000 or more whether it be for, against, or "informational" about or concerning any candidate running for supervisor.
    Require any national, state and local committees to list the names of the top four contributors on all communications and media expenditures (radio, TV, print, slate cards, telephone, flyers, etc.) concerning candidates running for supervisor.
    Any independent expenditure committee that receives contributions from individuals, committees, organizations or businesses that have contracts, leases, or other financial interests involving the city are prohibited from supporting, opposing, or providing information about any candidate for supervisor.

Contributions
Only individuals who are residents of San Francisco are eligible to contribute to a campaign for a candidate running for supervisor.

Qualification
    After running a spreadsheet projecting the cost of a "primary" election for supervisor, I believe that we should consider a minimum of $7,500 be raised from at least 100 individuals in order to meet the threshold for qualification. This has some logic in that it is 10% of the expenditure limit.

District "Primary" Election Public Finance Limits
    The greatest area of financial exposure is in the "primary" election. Candidates agreeing to Voluntary expenditure limits in the primary election would be limited to spending a total of $75,000. A $15,000 grant would be given to qualifying candidates.  A $2 match would be granted for each $1 raised for the next $10,000 and a $0.50 match for each additional $1 raised up to the total expenditure limit.
There will have to be a "limit" on the total amount of money that is available in each district for public financing. The amount available to each candidate on a matching basis would be reduced as the number of candidates over a specified number qualifies for matching funds. If such a reduction occurs, the candidate or candidates that do not abide by voluntary campaign limits will have an added advantage.

Run-off/General Election Voluntary fund raising limits
    The maximum amount that a candidate agreeing to voluntary campaign limits
could raise from individuals in a run-off campaign would be $20,000. The emphasis in the run-off is on the amount of money raised rather than on the amount expended. The run-off option I am proposing is an immediate $5,000 grant to each run-off candidate that had agreed to voluntary expenditure

limits in the primary election. If both candidates in a run-off had agreed to voluntary limits, then each candidate would receive $0.50 for each $1 raised for a total of $15,000 in public funds. If only one candidate in the run-off had agreed to voluntary limits, that candidate would receive $3 for every dollar raised for a maximum of $65,000 in public funds. This is the "carrot" to encourage all candidates to sign up for voluntary campaign limits in the beginning.



# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D. DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

Date: February 4, 2000

To: Members, Ethics Commission

From: Ginny Vida, Executive Director
By: Naomi Starkman, Deputy Executive Director

Re: Amending the San Francisco Administrative Code to Provide for Public Financing of Election Campaigns

## I. Introduction

At its January 13, 2000 Ad Hoc Committee meeting, the Ethics Commission directed staff to draft legislation for public financing of election campaigns for candidates for the Board of Supervisors. A copy of the draft legislation is attached. The legislation reflects the decisions made by the Committee at its last meeting. The purpose of this memorandum is to summarize the main, substantive points of the legislation and to identify issues the Committee has yet to decide.

## II. The Purpose of the Committee Proposal and Items to be Decided

The purpose of the Committee proposal is to address the Commission's concerns regarding the current system of privately financed campaigns for City elective office. The Committee's goals are manifold: 1) to provide incentives for limiting spending; 2) to allow candidates to spend more time on issues and less time on fundraising; 3) to make elections more competitive by providing access to more candidates; and 4) to limit corruption or the appearance of corruption associated with private contributions.

The Committee has yet to decide several key components of the proposal:

- The amount of funds to be disbursed in the general election and the method of disbursement. (See pages 8-9 of draft legislation.)
- To be eligible to receive public financing, a candidate must be opposed by another candidate who either qualifies for public funds, or who raises or spends a threshold amount of money. The Committee has yet to determine this threshold amount. (See page 5.)
- Additional reporting requirements for candidates who do not receive public funds and committees that make independent expenditures. (See pages 11-12.)

## III. Specific Provisions of the Committee Proposal

### A. Qualifying Contributions

In order for candidates to receive public funds, they must raise a certain number of "qualifying contributions" from eligible voters. The proposal defines "qualifying contributions" as a contribution not less than $10 and not more than $100 made by an individual who is a San Francisco resident. Candidates must raise $5,000 in qualifying contributions from at least 50 contributors. Candidates who are attempting to qualify for public financing are permitted to solicit contributions up to the current contribution limit of $500, but only the first $100 counts as a qualifying contribution. The candidate bears the burden of proving that each qualifying contribution is valid.

1390 Market Street, Suite 801 • San Francisco, CA 94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us
Web site: http://www.ci.sf.ca.us/ethics/

B.     Additional Eligibility Criteria

In addition to raising qualifying contributions, candidates who wish to receive public financing must meet the following criteria:

- Seek election to the Board of Supervisors and be eligible to hold office;
- Be opposed by a candidate who has either established eligibility to receive public financing, or received contributions or made expenditures in an amount to be determined by the Committee[1];
- Agree not to accept private contributions after becoming certified to receive public financing;
- Agree to limit personal spending and loans to $10,000;
- Agree not to spend more than $75,000 in the general election and $20,000 in the run-off election;
- Agree to participate in at least one debate;

To be eligible to receive public financing, candidates must submit a declaration that the candidate has satisfied all of the eligibility criteria. Candidates must submit the declaration and supporting documentation on or after June 1 of the election year, and no later than the date by which nomination papers must be filed with the Department of Elections (usually 60 days prior to the election.)

C.     Appropriation of Funds

The proposal establishes a special fund called the Election Campaign Fund ("Fund"). Each fiscal year the City is required to appropriate to the Fund an amount sufficient to fund all candidates for the Board of Supervisors who may be eligible to receive public financing. If at any time the amount appropriated is insufficient to fund all eligible candidates, the City is mandated to appropriate additional funds. The Commission will assist the Mayor and the Board of Supervisors in estimating any additional funds required.

The proposal also requires the City to appropriate funds to the Commission to pay for the administration of the program. The appropriation is in addition to and separate from the regular annual appropriation made to the Commission. Money appropriated to the Fund can only be used for public financing of election campaigns and cannot be used for any other purpose.

D.     Amount of Funds to be paid to each Candidate

The Committee has yet to decide the total amount of funds available to candidates for the Board of Supervisors. See the discussion regarding disbursement of funds in Section F, below.

E.     Certification

The Executive Director is required to review the candidate's declaration and supporting documentation to determine whether the candidate satisfies the eligibility criteria to receive public financing. The Executive Director may audit the candidate's records and may request the assistance of the Controller in the review process. If a candidate is certified, the Executive Director will inform the Controller that a candidate is eligible to receive public funds. The proposal requires the Executive Director to certify candidates no later than 30 days after the date the candidate submitted his/her declaration and supporting documentation. Thereafter, the Controller disburses payments to the candidate from the Fund.

---

[1] Although the Committee has yet to decide this matter, the proposal currently sets the amount at $5,000. In the draft legislation for full public financing, staff recommended that candidates who do not receive public financing would have to raise an amount equal to the total amount of qualifying contributions to be raised by participating candidates. Using that model, the amount would be $5,000.

2

If the Executive Director's determination is adverse to the candidate, the Executive Director must notify the candidate and may permit the candidate to resubmit the declaration and supporting documentation within five days. A candidate may seek reconsideration of the Executive Director's determination.

F.   Disbursement of Public Funds

The Committee was specifically interested in delaying the availability of public funds in order to discourage early campaigning. For this reason, the proposal provides that the Controller may not make any payments until the day following the deadline for filing nomination papers.

1.   General Election

The Committee has not yet decided how to disburse public funds for the general election or the total amount to be paid per candidate. The proposal sets forth three options for disbursing funds. Each option assumes that candidates have raised at least $5,000 in qualifying contributions and that contributions from individuals in San Francisco will be matched with public funds. The initial $5,000 in qualifying contributions is not matched. (See page 8 of draft legislation.) In addition, each option assumes a maximum distribution of $35,000 per candidate, although the Committee has yet to decide this amount.

A.   Option 1

Candidates may receive one dollar from the Fund for each dollar of matching contributions raised by the candidate, up to a maximum of $35,000, or half of the spending limit, minus the initial $5,000.[2]

B.   Option 2

Candidates may receive two dollars from the Fund for each dollar of matching contributions raised by the candidate, up to a maximum of $35,000. This option would disburse the same amount of money as in Option 1 ($35,000) but the candidates would receive matching funds at a faster rate. The Los Angeles City Ethics Commission is currently considering offering candidates $2 of public funds for every $1 raised by the candidate.

C.   Option 3

Candidates may receive a lump sum payment from the Fund upon qualification. Thereafter, candidates would receive one dollar from the Fund for each dollar of matching contributions raised by the candidate. The Committee has yet to decide the amount of the lump sum and the maximum amount to be made available to candidates. If the Committee selects Option 3, it should consider the following issues: 1) the amount to be disbursed; 2) whether candidates would be eligible to receive matching funds, in addition to the lump sum; and 3) at what rate matching funds would be disbursed.

The Committee should bear in mind that no other partial public finance jurisdiction currently disburses a lump sum to candidates after they qualify for public financing. If it is the Committee's goal to provide candidates with more cash up front, the Committee may want to consider disbursing matching funds at a faster rate. For example, the City could match four dollars of public funds for every one dollar raised.

---

[2] $5,000 (qualifying contributions) + $35,000 (private contributions) + $35,000 (public funds) =$75,000 (spending limit).

3

2. Run-Off Election

Candidates who qualify for a run-off election would receive a payment of $5,000 from the Fund on the day following the general election. Thereafter, candidates may receive one dollar from the Fund for each dollar of matching contributions raised by the candidate, up to a maximum of $5,000 in additional funds. The maximum amount of public funds a candidate would receive for a run-off election is $10,000.

If the Committee adopts Option 1 or Option 2 for the general election, the Committee may want to adopt a parallel provision for the run-off election. This provision would provide that each candidate would receive $5,000 from the Fund and thereafter receive either one or two dollars (or another amount) for each dollar of matching contributions received by the candidate, up to a maximum of $5,000. The maximum amount of public funds a candidate would receive for a run-off election would be $10,000.

G.     Restrictions on Use of Public Funds

Participating candidates may only use public funds to pay for qualified campaign expenditures. If a participating candidate uses any portion of public funds to purchase equipment that has a useful life beyond that of the campaign, and the fair market value exceeds $100, the equipment becomes the property of the City.

Any candidate who receives public financing but who withdraws or fails to qualify for the ballot must repay the Fund the full sum received by the Fund. A participating candidate must return to the Fund any surplus public funds within 30 days of an election.

H.     Insufficient Funds

The Commission, with the assistance of the Controller, must determine in advance of the election whether there are sufficient funds to finance the campaigns of all eligible candidates. If the Commission determines that the amount in the Fund is insufficient, the Commission must seek a supplemental appropriation. If by June 1 of an election year, the Commission determines that the amount in the Fund is insufficient, the public financing provisions will not apply.

I.     Supplemental Reporting

1. Reporting by Candidates Who Do Not Receive Public Funds

Nonparticipating candidates who receive contributions, make expenditures, or have funds in their campaign trust accounts that equal or exceed $5,000[3] are required to file a statement with the Commission no later than the deadline for filing nomination papers with the Director of Elections. This reporting is required so that the Commission can determine whether a candidate who is seeking public funds is opposed by another candidate who either qualifies to receive public funds or who raises or spends a threshold amount of money.

If the candidate first reaches or exceeds this $5,000 threshold after the deadline for filing nomination papers, or is deemed ineligible to receive public funds after that date, the candidate must, within 24 hours of reaching or exceeding the threshold or receiving notice of ineligibility, file a statement with the Commission.

---

[3] This amount has yet to be decided by the Committee. As indicated in footnote 1, the draft legislation provides for a threshold of $5,000, the amount candidates must raise to qualify for public financing.

4

2. Timely Disclosure of Contributions and Expenditures

The Committee expressed interest in requiring increased disclosure from committees that make independent expenditures. The proposal includes two new disclosure requirements. First, the proposal requires that any committee that makes contributions or independent expenditures totaling $500 or more in a calendar month during the six months immediately preceding an election, to support or oppose a candidate for local elective office at that election, must disclose, prior to the date of the election, all contributions and loans received and all expenditures made.

Second, any committee that makes independent expenditures in support of or in opposition to a candidate for local elective office that equal or exceed $5,000[4] must, within 24 hours of reaching this threshold, file a statement with the Commission stating that fact. Thereafter, any such committee much file a supplemental statement with the Commission each time the committee makes independent expenditures in support of or in opposition to the candidate which equal or exceed an additional $5,000. The supplemental statements must be filed within 24 hours of reaching the spending threshold. Please note that this new provision requires disclosure by committees that make independent expenditures on a rolling basis.

J.     Regulatory Authority and Reports by Commission

The Commission has authority to adopt regulations to implement the public financing provisions. The proposal requires the Commission to file reports with the Mayor and the Board of Supervisors following each election at which members of the Board of Supervisors are elected.

K.     Audits and Investigations

The proposal requires the Commission to audit all of the candidates who receive public financing. The proposal provides that the Controller assist in conducting these audits. If the Commission determines that a candidate received public funds exceeding the amount to which the candidate was entitled, the candidate must forfeit the excess to the Fund. In addition, if the Commission determines that candidates used the funds for something other than qualified campaign expenditures, the candidate must return the amount of the improper expenditure to the Fund.

Any person who believes that a violation of the public financing provisions has occurred may file a complaint with the Commission. The proposal provides that the Commission will investigate such complaints pursuant to Charter Section C3.699-13 and the Commission's implementing regulations.

L.     Penalties

The proposal provides for penalties for misuse of public funds. These civil and criminal penalties are in addition to the administrative penalties provided for in the Charter. Any person who willfully or knowingly uses public funds will be guilty of a misdemeanor and punishable by a fine of no less than $500, or three times the amount improperly spent, whichever is greater, or by imprisonment in the County jail for a period of not more than six months. Any person who willfully, knowingly or negligently uses public funds will be liable in a civil action for an amount up to $500 or three times the amount improperly spent, whichever is greater.

P:\SHARED\Public Finance\Commission\Amending the SFAdminCode.doc

---

[4] The amount has yet to be decided by the Committee.

5