# EXHIBIT H

DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION



Ethics Commission

1390 Market Street, Suite 801
San Francisco, CA 94102
Phone 554-9510 Fax 703-0121

**REVISED**

# SAN FRANCISCO ETHICS COMMISSION AGENDA

## for REGULAR MEETING*

### Tuesday, February 15, 2000, 5:00 p.m.

City Hall, One Dr. Carlton B. Goodlett Place, Room 408

*Please note change in day and date of regular meeting.

I. Call to order and roll call

II. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

III. Discussion and possible approval of the minutes of the meetings of January 10 and January 13, 2000

IV. Executive Director's report

1. FY 00-01 budget
2. Public policy program
3. Investigation and enforcement program
4. Report on volume of calls received via the Whistleblower hotline
5. Campaign finance disclosure program
6. Campaign finance audit program
7. Lobbyist program
8. Campaign consultant program
9. Statements of economic interests
10. Amendments to the Sunshine Ordinance
11. Search for Campaign Finance Assistant (Class 1426 Senior Clerk Typist)

V. Discussion and possible approval of proposed FY 00-01 budget. Copies of the proposed budget will be available from the Ethics Commission office on Friday, February 4.

VI. Receipt of testimony, discussion and possible vote on legislative proposal for public financing of campaigns for elective office, and whether the Commission should propose legislation to the Board of Supervisors. Copies of the draft legislation will be available from the Ethics Commission office on Friday, February 4.

VII. Items for future agendas. Discussion only.

VIII. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

IX. Adjournment

(Please turn over for page 2)

### *Know Your Rights Under the Sunshine Ordinance*

*Government's duty is to serve the public, reaching its decisions in full view of the public. Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance assures that deliberations are conducted before the people and that City operations are open to the people's review.*

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force, Rachel Arnstine O'Hara, Clerk, City Hall, room 362, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102-4683. Office telephone: (415) 554-6171; Fax: (415) 554-6177; E-mail: Rachel_ArnstineO'Hara@ci.sf.ca.us. Copies of the Sunshine Ordinance can be obtained from the Clerk of the Sunshine Task Force, the San Francisco Public Library and on the City's web site at www.ci.sf.ca.us.*

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street, Suite 801, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554-8757 and web site http://www.ci.sf.ca.us/ethics/*

P:\SHARED\AGENDA\2000\021500.doc



sfgov | residents | business | government | visitors | online services | search

Ethics Commission >> Meeting Information

# Ethics Commission

February 15, 2000

(Approved as amended 3/13/00)

Minutes of the

San Francisco Ethics Commission

Meeting at City Hall

One Dr. Carlton B. Goodlett Place, Room 408

February 15, 2000; 5:00 p.m.

**I. Call to order and roll call**

Commission Chairperson Isabella H. Grant called the meeting to order at 5:15 p.m.

**COMMISSION MEMBERS PRESENT:** Isabella H. Grant, Chairperson; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner. Vice-Chairperson Henri E. Norris and Commissioner Carol M. Kingsley were excused.

**STAFF PRESENT:** Ginny Vida, Executive Director; Naomi Starkman, Deputy Executive Director; Shaista Shaikh, Campaign Finance Auditor.

**OFFICE OF THE CITY ATTORNEY:** Julie Moll, Deputy City Attorney; Chad Jacobs, Law Clerk.

**OTHERS PRESENT:** Charles Marsteller, San Francisco Common Cause; Brad Benson, Legislative Aide to Supervisor Tom Ammiano; David Pilpel, Sunshine Ordinance Task Force; Joan Mandle and Margaret Ropchan, California Common Cause; and Anita Mayo, Pillsbury, Madison & Sutro.

**MATERIALS DISTRIBUTED:**

S.F. Ethics Commission Agenda, February 15, 2000

Approved minutes of the December 1, 1999 meeting of the Ethics Commission

Approved minutes of the December 2, 1999 Special Meeting of the Ethics Commission

Draft minutes of the January 10, 2000 meeting of the Ethics Commission

Draft minutes of the January 13, 2000 meeting of the Ad Hoc Committee on Public Financing

Draft minutes of the February 7, 2000 meeting of the Ad Hoc Committee on Public Financing

Executive Director's Report for the meeting of February 15, 2000

Memo dated February 16, 2000 to the Ethics Commission Members from Ginny Vida re: Report

on Funding Alternatives to the General Fund for a Public Financing Program

Memo dated February 11, 2000 to the Ethics Commission Members from Ginny Vida re:

> Amending the San Francisco Administrative Code to Provide for Public Financing of Election Campaigns

Memo dated February 11, 2000 to the Ethics Commission Members from Ginny Vida re:

Proposed Annual Budget for FY 00/01

Board of Supervisors Inquiry made at the Board meeting on January 31, 2000

Memo dated January 11, 2000 to Department Heads and Commission Secretaries re: Proposition

G: Amendments to the San Francisco Sunshine Ordinance: Sunshine Ordinance Declaration

"Pay for City Hall Lobbyists Hit Record High Last Quarter," San Francisco Chronicle,

February 4, 2000

Draft Legislation amending the Campaign Finance Reform Ordinance

> **II. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission**

There was no public comment.

III. **Discussion and possible approval of the minutes of the meetings of January 10 and January 13, 2000**

Minutes of the meeting of January 10, 2000:

Commissioner Robert D. Dockendorff requested that staff include the questions he asked Rebecca Avila, Executive Director, Los Angeles Ethics Commission, and Tom Volgy, former Mayor of Tucson, about independent expenditures. Commissioner Dockendorff also requested that the responses to these questions be included in the minutes.

Minutes of the meeting of January 13, 2000:

With respect to the staff report on the interview conducted with Ruth Jones, Member of the Arizona Clean Elections Commission, Commissioner Dockendorff

noted that he had questioned the credibility of Ms. Jones' recommendations for a public financing program for San Francisco. Commissioner Dockendorff requested that the minutes reflect his statement that Ms. Jones has insufficient expertise to comment on San Francisco politics. Commissioner Melbostad also noted that the Commission did not have the opportunity to hear and question Ms. Jones at the January 13 meeting, since her views were conveyed by staff.

Motion 00-2-15-13 (Melbostad/Dockendorff) Moved, seconded and passed: That the minutes of the January 10 and January 13, 2000 meetings be amended and continued to the March 13 meeting for final approval.

Charles Marsteller of San Francisco Common Cause requested that the Commission supplement the approved minutes of the meeting of December 1, 1999 with language that he submitted to staff. The minutes, amended per Mr. Marsteller's request, will be presented for approval at the next meeting.

IV. **Executive Director's Report**

Executive Director Ginny Vida presented her written report to the Commission. She reported that she will testify at a February 16 hearing conducted by the Finance Committee of the Board of the Supervisors. The hearing will address independent spending in the 1999 mayoral election. Ms. Vida noted that at Board President Tom Ammiano's request, the staff has provided to the Committee information on candidate spending, independent spending and lobbyist contributions in the mayoral election. Ms. Vida stated that she would provide a copy of her testimony to the Commission.

V. **Discussion and possible approval of proposed FY 00-01 budget**

Ms. Vida referred the Commission to the February 11, 2000 memo regarding the proposed annual budget. Ms. Vida directed the Commission's attention to the following points :

1) enhancements will be funded by increases in revenues; 2) increases in staff salaries due to cost of living adjustments, step increases and fringe benefits are being absorbed by City departments within their baseline budget per a directive from the Mayor's Office; and 3) DTIS has requested an increase in work orders of $9,501. The total enhancements requested, $38,090, equal the amount of increase in projected revenues.

Ms. Vida noted that the Commission is well ahead of projections to date regarding revenues. She advised that in previous years, since revenue projections were overly conservative, the Commission did not receive credit for above-baseline revenues because they had not been budgeted. Next year's budget reflects improved revenue projections.

Commissioner Dockendorff asked whether, if a public financing proposal is adopted and implemented, there are provisions in the budget for additional staff. Ms. Vida noted that the public financing legislation provides that the Commission will advise the Board as to staff and non-personnel requirements and request an appropriation.

Motion 00-2-15-14 (Dockendorff/Melbostad) Moved, seconded and passed: That the proposed FY 00-01 budget be approved.

VI. Receipt of testimony, discussion, and possible vote on legislative proposal for public financing of campaigns for elective office, and whether the Commission should propose legislation to the Board of Supervisors.

Commission Chair Isabella H. Grant noted that in December and January, the

Ad Hoc Committee on Public Financing considered draft legislation and thereafter agreed on key provisions for a public financing proposal. She referred commissioners to a revised version of the draft legislation calendared for today's agenda.

Deputy Executive Director Naomi Starkman directed the Commission to the February 11, 2000 memo. Ms. Starkman guided the Commission through each section, explaining the changes reflected by the revised legislation.

There was much discussion on whether the two-rule approach to providing funding in the run-off election should be revised. The Commission's concern with the two-rule approach was whether such an approach would be upheld in court.

Ms. Vida reported that Commissioner Carol M. Kingsley had conveyed to staff that the Commission should propose a formula for the run-off election that is consistent with that of the general election. Deputy City Attorney Julie Moll explained that the two-rule approach is novel and the more novel a system of campaign finance regulation, the greater the government's burden is in defending challenges to the regulations. After much discussion and after hearing public comment (see below) on this matter, the Commission agreed that the funding formula for the run-off election should be revised. Per the revision, each participating candidate who qualifies for the run-off may receive a payment of $5,000 the day following the general election. Thereafter, the candidate may receive four dollars for each dollar of contributions raised by the candidate, up to an additional $12,000 in public funds. (A candidate who qualifies for the run-off election would receive a $5,000 initial grant of public funds and upon raising $3,000 in private contributions, would qualify for an additional $12,000 in matching funds. $5,000, plus $3,000, plus $12,000 add up to the $20,000 spending limit for the run-off.)

With respect to reporting requirements, Commissioner Dockendorff urged that the Commission require all persons and committees providing funds to local campaigns to file campaign disclosure statements with the Commission. Ms. Vida reported that the Fair Political Practices Commission has advised that the Commission's authority to impose additional filing requirements is limited to committees active only in San Francisco. Commissioner Paul H. Melbostad stated that he does not believe the Commission is preempted by state law. He said, however, that this can be addressed as a separate issue. Commissioner Dockendorff inquired as to whether the Commission may require all committees that finance local elections to file only with the Commission rather than the current system of some filing with the Commission and some with the Department of Elections. Ms. Vida suggested that the Commission might ask the City to recommend a change in state law.

With respect to penalties that may be imposed for violation of the public financing legislation, the Commission agreed that $500 is a disproportionately small amount in comparison to the large amounts of funds that candidates are capable of raising. After much discussion and public comment (see below), it was determined that the Commission will propose penalties up to $5,000 or three times the amount improperly spent, whichever is greater.

<u>The following is public comment regarding the draft legislation:</u>

David Pilpel, Sunshine Ordinance Task Force noted that Section 8(e), but not other sections of the legislation, requires that all payments received by candidates must be deposited in the candidate's campaign trust account. He suggested moving this provision closer to the beginning of the legislation to give it greater emphasis. Mr. Pilpel also noted that the legislation does not clarify whether surplus funds will be deposited back to the general fund, returned on a pro-rata basis, or used to defray expenses. Finally, Mr. Pilpel

recommended that the Department of Elections and the Ethics Commission agree to provide each other with duplicate copies of statements filed by committees located in the City.

Mr. Marsteller stated his view that the two-rule formula for the run-off election does not present a question of constitutionality. He recommended full public financing for the run-off election. He compared this approach to the public financing system for the presidential race. Mr. Marsteller then expressed concern that the timetable projected for awarding funds to candidates in the general election is too short. He noted that contacting vendors and organizing fundraisers involves a significant amount of time and planning. Commissioner Melbostad explained that given the spending limits, a candidate cannot afford to spend a huge sum of money far in advance of the election. Most of the communication with the voters is done immediately prior to the election, he said. Finally, Mr. Marsteller recommended raising the maximum penalty to $5,000, considering that many instances of non-monetary violations may occur. *Common Cause also recommended that the Commission consider adding a private right to action.*

Joan Mandle of California Common Cause commended the Commission for its work on public financing. Ms. Mandle noted her concerns about the legislation: 1) the legislation addresses only supervisorial candidates; 2) the legislation does not provide additional funds to offset independent expenditures; 3) a $5,000 maximum penalty would be more appropriate; and 4) it would be wise to adopt a formula for awarding funds similar to that of the general election because the two-rule approach may not be upheld in court. Ms. Mandle recommended that for the run-off election candidates receive four dollars for every one dollar raised.

Anita Mayo of Pillsbury, Madison and Sutro stated that Sec 11(b) of the legislation does not make clear whether contributions under $100 would have to be reported. Ms. Mayo noted that it would create a tremendous burden on campaigns if this level of detail were required. Ms. Moll advised that the Commission may determine the specific requirements in regulations.

In response to an inquiry by Mr. Pilpel, it was noted that the general election and run-off election are separate elections.

Commissioner Melbostad requested that in its narrative memo to the Board of Supervisors, staff explain that the Commission had considered alternative fund disbursement for the run-off election.

**Motion 00-2-15-15 (Melbostad/Dockendorff) Moved, seconded and passed: That the Commission adopt and forward to the Board of Supervisors the public financing legislation as amended, and that an accompanying memo include reference to an alternative funding option that was considered for the run-off.**

VII. **Items for future agendas. Discussion only.**

Commissioner Melbostad stated that he would like to present language drafted by Craig Holman, Center for Government Research, regarding the issue of county committees filing pre-election statements with the Ethics Commission.

Ms. Vida noted that Supervisor Mark Leno had asked the Commission to discuss City-sponsored debates. She said this item is projected for the March agenda. She also reminded the Commission that it had previously agreed to review the Whistleblower Ordinance and conflict of interest laws. Commissioner Dockendorff requested that the Commission discuss other offices to be included in future public financing programs. Commission Chair Grant stated that the

Commission should discuss its priorities at the next meeting.

VIII. Public Comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

Ms. Mayo asked whether a deadline for submitting the Sunshine Ordinance Declaration has been determined. Ms. Starkman responded that the declaration is due April 1, 2000 -- the date that the annual statements of economic interests are due.

Mr. Pilpel recommended that the Commission analyze the costs of administering the campaign consultant and lobbyist programs in relation to revenues generated. He recalled that before these programs were implemented, it was estimated that 40 percent of the costs would be recovered.

*Common Cause recommended that the Commission revisit the issue of amending the Lobbyist Ordinance to clarify that unions are covered.*

IX. Adjournment

The meeting was adjourned at 7:20 p.m.

Motion 00-2-7-12 (Melbostad/Dockendorff) Moved, seconded and passed: That the meeting be adjourned.

Respectfully submitted,


_____

Shaista Shaikh

Campaign Finance Auditor



BOARD of SUPERVISORS

City Hall
1 Dr. Carlton B. Goodlett Place, Room 244
San Francisco 94102-4689
Tel. No. 554-5184
Fax No. 554-5163
TDD/TTY No. 554-5227

## BOARD OF SUPERVISORS INQUIRY

**TO:** Ginny Vida
Ethics Commission
1390 Market Street

**FROM:** Gloria L. Young, Clerk of the Board
**DATE:** 2/2/2000
**REFERENCE** 20000131-015
**FILE NO.**

FILED 00 FEB -3 PM 4: 14 BY SAN FRANCISCO ETHICS COMMISSION

Due Date: 3/3/2000

This is an inquiry from a member of the Board of Supervisors made at the Board meeting on 1/31/2000.

Supervisor Ammiano requests the following information:

> To prepare copies, summaries and analysis of contribution and expenditure reports related to the 1999 mayoral race by candidate, independent expenditure, political party and other committees filed with the Ethics Commission and the California Secretary of State; to assemble copies of press accounts of fundraising and expenditure activities by such committees; to request assistance from the Assessor's Office and other City departments to determine the identity of the owners of corporations and businesses that made large donations to independent expenditure and/or political party committees, in order to determine whether such individuals may have made multiple corporate and/or business contributions as a means of by-passing individual contribution limits and/or obscuring the true source of contributions to such committees; to request assistance from the Planning Department, the Redevelopment Agency, the Airport Commission, the Port Commission, the Mayor's Offices of Economic and Community Development and other City departments to determine which contributors to independent expenditure and political party committees have had or currently have business pending before City departments, boards, or commissions and/or the Board of Supervisors and the Mayor; to prepare

information related to targeted voter registration, get-out-the-vote and related activities undertaken by non-profit organizations, including filings made with the California Secretary of State and the Internal Revenue Service related to such organizations' non-profit status; and to prepare taped copies and/or minutes of 1999 and 2000 hearings of the Ethics Commission into campaign finance reform and related matters.

<u>Please indicate the reference number shown above in your response, direct the original to the Clerk of the Board and send a copy to the Supervisor(s) noted above.</u>

Your response to this inquiry is requested by  3/3/2000

# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

Date: February 11, 2000

To: Members, Ethics Commission

From: Ginny Vida, Executive Director
By: Naomi Starkman, Deputy Executive Director

Re: Amending the San Francisco Administrative Code to Provide for Public Financing of Election Campaigns

I. Introduction

At its February 7, 2000 Ad Hoc Committee meeting, the Ethics Commission directed staff to finalize draft legislation for public financing of election campaigns for candidates for the Board of Supervisors. A copy of the draft legislation is attached. The legislation reflects the decisions made by the Committee at its February 7 meeting. The purpose of this memorandum is to summarize the main, substantive points of the legislation.

II. Specific Provisions of the Committee Proposal

A. Qualifying Contributions

In order for candidates to receive public funds, they must raise a certain number of "qualifying contributions" from eligible voters. The proposal defines "qualifying contributions" as a contribution not less than $10 and not more than $100 that is made by written instrument by an individual who is a San Francisco resident. Candidates must raise $5,000 in qualifying contributions from at least 50 contributors. Candidates who are attempting to qualify for public financing are permitted to solicit contributions up to the current contribution limit of $500, but only the first $100 counts as a qualifying contribution. The candidate bears the burden of proving that each qualifying contribution is valid.

B. Additional Eligibility Criteria

In addition to raising qualifying contributions, candidates who wish to receive public financing must meet the following criteria:

- Seek election to the Board of Supervisors and be eligible to hold office;
- Be opposed by a candidate who has either established eligibility to receive public financing, or received contributions or made expenditures which equal or exceed $5,000;
- Agree to limit personal spending and loans to $10,000;
- Agree not to spend more than $75,000 in the general election and $20,000 in the run-off election;
- Agree to participate in at least one debate;

To be eligible to receive public financing, candidates must submit a declaration that the candidate has satisfied all of the eligibility criteria. Candidates must submit the declaration and supporting documentation on or after June 1 of the election year, and no later than the date by which nomination papers must be filed with the Department of Elections (usually 60 days prior to the election).

1390 Market Street, Suite 801 • San Francisco, CA 94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us    Web site: http://www.ci.sf.ca.us/ethics/

C.    Appropriation of Funds

The proposal establishes a special fund called the Election Campaign Fund ("Fund"). Each fiscal year the City is required to appropriate to the Fund an amount sufficient to fund all candidates for the Board of Supervisors who may be eligible to receive public financing. If at any time the amount appropriated is insufficient to fund all eligible candidates, the City is mandated to appropriate additional funds. The Commission will assist the Mayor and the Board of Supervisors in estimating any additional funds required.

The proposal also requires the City to appropriate funds to the Commission to pay for the administration of the program. The appropriation is in addition to and separate from the regular annual appropriation made to the Commission. Money appropriated to the Fund can only be used for public financing of election campaigns and cannot be used for any other purpose.

D.    Amount of Funds to be paid to each Candidate

The maximum amount of public funds a candidate may receive for the general election is $45,000. As a general rule, the maximum amount of public funds per candidate for the run-off election is $15,000. Candidates who are opposed by candidates who spend more than $75,000 in the general election or who declined to agree to comply with the voluntary spending limits for the run-off election, may receive $20,000 in public funds in the run-off election. The maximum amount provided to candidates for both elections is either $60,000 or $65,000 for both elections, as described above.

E.    Certification

The Executive Director is required to review the candidate's declaration and supporting documentation to determine whether the candidate satisfies the eligibility criteria to receive public financing. The Executive Director may audit the candidate's records and may request the assistance of the Controller in the review process. If a candidate is certified, the Executive Director will inform the Controller that a candidate is eligible to receive public funds. The proposal requires the Executive Director to certify candidates no later than 30 days after the date the candidate submitted his/her declaration and supporting documentation. Thereafter, the Controller disburses payments to the candidate from the Fund.

If the Executive Director's determination is adverse to the candidate, the Executive Director must notify the candidate and may permit the candidate to resubmit the declaration and supporting documentation within five days. After resubmission, the Executive Director makes the final determination. A candidate may ask the Executive Director to reconsider the final determination. The candidate may also appeal the final determination to the Ethics Commission. The candidate must deliver the written appeal to the Ethics Commission within five days of the date of notification of the Executive Director's determination following reconsideration.

F.    Disbursement of Public Funds

The proposal provides that the Controller may not make any payments until the day following the deadline for filing nomination papers.

1. General Election

Upon certification of eligibility, candidates may receive a payment of $5,000 from the Fund. Thereafter, candidates may receive <u>four</u> dollars from the Fund for each dollar of matching contributions raised by the candidate, up to an additional $20,000. After that point, candidates may receive <u>one</u> dollar from the Fund for each dollar of matching contributions raised by the candidate, up to an additional $20,000 in public funds.[1] The maximum amount of public funds a candidate may receive for the general election is $45,000.[2]

---

[1] Candidates are permitted to spend up to $75,000, the spending limit in the general election. $5,000 (qualifying contributions) + $5,000 (initial grant of public funds) + $5,000 (private contributions raised) + $20,000 ($4 to $1

2

### 2. Run-Off Election

As a general rule, each candidate may receive a payment of $5,000 from the Fund on the day following the general election. Thereafter, each candidate may receive two dollars from the Fund for each dollar of contributions raised by the candidate, up to an additional $10,000 in public funds.[3] The maximum amount of public funds such candidates may receive is $15,000.

If a participating candidate is opposed by a candidate who spends more than $75,000 in the general election or declined to agree with the voluntary spending limit in the run-off election, the participating candidate will receive $20,000 in public funds for the run-off election. In that case, the maximum amount of public funds a candidate would receive for the run-off election is $20,000.

### G.    Restrictions on Use of Public Funds

Participating candidates may only use public funds to pay for qualified campaign expenditures. If a participating candidate uses any portion of public funds to purchase equipment that has a useful life beyond that of the campaign, and the fair market value exceeds $100, the equipment becomes the property of the City.

Any candidate who receives public financing but who withdraws or fails to qualify for the ballot must repay the Fund the full sum received by the Fund. A participating candidate must return to the Fund any surplus public funds within 30 days of an election.

### H.    Insufficient Funds

The Commission, with the assistance of the Controller, must determine in advance of the election whether there are sufficient funds to finance the campaigns of all eligible candidates. If the Commission determines that the amount in the Fund is insufficient, the Commission must seek a supplemental appropriation. If by June 1 of an election year, the Commission determines that the amount in the Fund is insufficient, the public financing provisions will not apply.

### I.    Supplemental Reporting

### 1. Reporting by Candidates Who Do Not Receive Public Funds

Nonparticipating candidates who receive contributions, make expenditures, or have funds in their campaign trust accounts that equal or exceed $5,000 are required to file a statement with the Commission no later than the deadline for filing nomination papers with the Director of Elections. The statements must also indicate whether the candidate agrees to limit his/her qualified campaign expenditures to $75,000 in the general election and $20,000 in the run-off election. This reporting is required so that the Commission can determine whether a candidate who is seeking public funds is opposed by another candidate who either qualifies to receive public funds or who raises or spends a threshold amount of money. It also clarifies that non-participating candidates must indicate whether they have agreed to comply with the spending limits.

If the candidate first reaches or exceeds this $5,000 threshold after the deadline for filing nomination papers, or is deemed ineligible to receive public funds after that date, the candidate must, within 24 hours of reaching or exceeding the threshold or receiving notice of ineligibility, file a statement with the Commission.

---

matching public funds) + $20,000 (private contributions raised) + $20,000 ($1 to $1 matching public funds) = $75,000.
[2] $5,000 (initial grant of public funds) + $20,000 ($4 to $1 matching public funds) + $20,000 ($1 to $1 matching public funds) = $45,000.
[3] $5,000 (initial grant of public funds) + $10,000 ($2 to $1 matching public funds) = $15,000

### 2. Timely Disclosure of Contributions and Expenditures

The proposal requires that any committee that makes contributions or independent expenditures totaling $500 or more in a calendar month during the six months immediately preceding an election, to support or oppose a candidate for local elective office at that election, must disclose, prior to the date of the election, all contributions and loans received and all expenditures made. The Ethics Commission may require these statements to be filed electronically.

In addition, any committee that makes independent expenditures in support of or in opposition to a candidate for local elective office that equal or exceed $5,000 must, within 24 hours of reaching this threshold, file a statement with the Commission stating that fact. Thereafter, any such committee must file a supplemental statement with the Commission each time the committee makes independent expenditures in support of or in opposition to the candidate which equal or exceed an additional $5,000. The supplemental statements must be filed within 24 hours of reaching the spending threshold. The Ethics Commission may also require these statements to be filed electronically.

### J. Regulatory Authority and Reports by Commission

The Commission has authority to adopt regulations to implement the public financing provisions. The proposal requires the Commission to file reports with the Mayor and the Board of Supervisors following each election at which members of the Board of Supervisors are elected.

### K. Audits and Enforcement

The proposal requires the Commission to audit *all* of the candidates who receive public financing. The proposal provides that the Controller assist in conducting these audits. If the Commission determines that a candidate received public funds exceeding the amount to which the candidate was entitled, the candidate must forfeit the excess to the Fund. In addition, if the Commission determines that candidates used the funds for something other than qualified campaign expenditures, the candidate must return the amount of the improper expenditure to the Fund.

Any person who believes that a violation of the public financing provisions has occurred may file a complaint with the Commission. The proposal provides that the Commission will investigate such complaints pursuant to Charter Section C3.699-13 and the Commission's implementing regulations.

In addition, any person who believes that a violation of the public financing provisions has occurred may file a complaint with the City Attorney or District Attorney. The City Attorney, or any voter, may bring a civil action to enjoin or compel violations of the public financing provisions within four years of the date of the cause of action. No voter may bring a private right of action without first notifying the City Attorney in writing. No voter may bring a private right of action if the Ethics Commission issues a finding of probable cause, or if the City Attorney or District Attorney has commenced a civil or criminal action, or if another voter has brought a separate action against the same defendant.

### L. Penalties

The proposal provides for penalties for misuse of public funds. These civil and criminal penalties are in addition to the administrative penalties provided for in the Charter. Any person who willfully or knowingly uses public funds will be guilty of a misdemeanor and punishable by a fine of no less than $500, or three times the amount improperly spent, whichever is greater, or by imprisonment in the County jail for a period of not more than six months. Any person who willfully, knowingly or negligently uses public funds will be liable in a civil action for an amount up to $500 or three times the amount improperly spent, whichever is greater.

P:\SHARED\Public Finance\Commission\Amending the SFAdminCode.doc