# EXHIBIT K

**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**Ethics Commission**



1390 Market Street, Suite 801
San Francisco, CA 94102
Phone 554-9510 Fax 703-0121

# SAN FRANCISCO ETHICS COMMISSION AGENDA

## for <u>REGULAR MEETING</u>

### <u>Monday, May 15, 2000, 5:00 p.m.</u> *

### San Francisco Civic Center Courthouse, 400 McAllister Street, Room 504*

**<u>*PLEASE NOTE CHANGE IN DATE and LOCATION.</u>**

I.    Call to order and roll call

II.    Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

III.    Discussion and possible approval of the minutes of the meeting of April 17, 2000.

IV.    Executive Director's report

1. FY 00-01 budget
2. Relocation of Commission office
3. Public policy program
4. Advice and opinions
5. Investigation and enforcement program
6. Report on volume of calls received via the Whistleblower Hotline
7. Campaign finance disclosure program
8. Campaign finance audit program
9. Lobbyist program
10. Campaign consultant program
11. Statements of economic interests
12. Declarations received re: amended Sunshine Ordinance

V.    Discussion and possible action re:  Proposal to submit a ballot initiative, in the November 2000 election, amending the San Francisco Administrative Code to provide for public financing of election campaigns. (The deadline for submission of a ballot measure is August 9, 2000.)  Draft legislation will be available from the Commission office on Thursday, May 11.

VI.    Discussion and possible action re:  Items for future agendas.

VII.    Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

VIII.    Adjournment

(Please turn over for page 2)

SF Ethics Commission Agenda – May 15, 2000                                                    2

### *Know Your Rights Under the Sunshine Ordinance*

*Government's duty is to serve the public, reaching its decisions in full view of the public. Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance assures that deliberations are conducted before the people and that City operations are open to the people's review.*

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force, Donna Hall, Administrator, City Hall, Room 244, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102-4869. Office telephone: (415) 554-7724; Fax: (415) 554-5163; E-mail: Donna_Hall@ci.sf.ca.u.s. Copies of the Sunshine Ordinance can be obtained from the Clerk of the Sunshine Task Force, the San Francisco Public Library and on the City's web site at www.ci.sf.ca.us/bdsupvrs/ordinance.htm*

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street, Suite 801, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554-8757 and web site: www.sfgov.org/ethics.*

P:\SHARED\AGENDA\2000\051500.doc



sfgov | residents | business | government | visitors | online services | search    go !

Ethics Commission >> Meeting Information

# Ethics Commission

May 15, 2000

(Approved 6/12/00)

### Minutes of the

### San Francisco Ethics Commission

### Meeting at San Francisco Civic Center Courthouse

### 400 McAllister Street, Room 504

### May 15, 2000; 5:00 p.m.

**I. Call to order and roll call.**

Chairperson Isabella H. Grant called the meeting to order at 5:10 p.m.

COMMISSION MEMBERS PRESENT: Isabella H. Grant, Chairperson; Henri E. Norris, Vice-Chairperson; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner; Carol M. Kingsley, Commissioner.

STAFF PRESENT: Ginny Vida, Executive Director; Naomi Starkman, Deputy Executive Director; Katherine Havener, Ethics Investigator/Legal Analyst; Frank Lester, Staff Assistant.

OFFICE OF THE CITY ATTORNEY: Claire Sylvia, Deputy City Attorney; Chad Jacobs, City Attorney Law Clerk.

OTHERS PRESENT: Robert Stern, Director of the Center for Government Studies; Jim Knox, California Common Cause; Steven Hill, Center for Voting and Democracy; Jim Reid; Joan Mandel, Common Cause; Charles Marsteller, Common Cause; Arroya Simpson, Grey Panthers of San Francisco and the Alliance for Democracy; Mike Mooney of San Francisco Common Cause and Alliance for Democracy.

MATERIALS DISTRIBUTED:

S.F. Ethics Commission Agenda, May 15, 2000

Draft Minutes of the S.F. Ethics Commission Meeting of April 17, 2000

Minutes of the S.F. Ethics Commission Meeting of March 13, 2000

Executive Director's Report, May 15, 2000

Advice letter to Tom Ammiano dated March 10, 2000

Advice letter to Roger Sanders dated March 15, 2000

Advice letter to James R. Sutton dated March 22, 2000

> Letter dated April 28, 2000 from Anthony J. DeLucchi, Department of Real Estate, to Members, Board of Supervisors re: recommendation that legislation be passed authorizing new lease space for Ethics Commission's offices

> Legislation authorizing new lease space for Ethics Commission

> Job announcement for Deputy Director Position

> Memo dated May 11, 2000 from Ginny Vida to Members, Ethics Commission re: Proposal to Submit a Ballot Initiative Providing for Public Financing of Election Campaigns

> Letter dated May 4, 2000 from Charles Marstellar, SF Common Cause to Members of the Ethics Commission

> San Francisco Bay Guardian editorial dated April 26, 2000, "Killing campaign reform"

> San Francisco Chronicle article dated April 25, 2000, "Election Finance Proposals Fail in S.F., Supervisors vote down taxpayer funding"

**II. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.**

There was no public comment.

**III. Discussion and possible approval of the minutes of the meeting of April 17, 2000.**

Motion 00-5-15-29 (Dockendorff/Melbostad) Moved, seconded and passed: That the minutes of the April 17, 2000 meeting be approved.

**IV. Executive Director's Report.**

Executive Director Ginny Vida referred the Commission to the Executive Director's Report in the agenda packet. She informed the Commission that legislation approving a lease for new office space for the

Commission's offices will be considered by the Finance Committee of
the Board of Supervisors on Wednesday, May 17.

Ms. Vida announced the resignation of Deputy Director Naomi Starkman
effective May 26, 2000. She commended Ms. Starkman for the
outstanding contribution she has made to the Ethics Commission.

> V. **Discussion and possible action re: Proposal to submit a ballot
> initiative, in the November, 2000 election, amending the San
> Francisco Administrative Code to provide for public financing
> of election campaigns.**

Commission Chair Isabella Grant stated that the Board of Supervisors
declined by a vote of 10 to 1 to approve the Commission's public
financing legislation. She stated that the Commission should consider
putting a public financing proposal on the November 2000 ballot. She
indicated that the Commission's deadline for placing an initiative on the
ballot is August 9, 2000.

Ms. Vida referred the Commission to the staff's proposal (in the agenda
packet) to submit a ballot initiative providing for public financing of
election campaigns ("the proposal"). She stated that staff proposes that
the Commission place the same measure on the ballot that it sent to
the Board, with the following amendments: 1) the threshold for
qualifying contributions should be increased from $5,000 to $10,000; 2)
a provision should be added which lifts the voluntary spending limit
when a non-participating candidate exceeds 100 percent of the
spending limit, or when independent expenditures exceed 25 percent of
the spending limit; 3) additional reporting should be required of
nonparticipating candidates when they reach both 75 percent and 100
percent of the voluntary spending limit; 4) additional reporting should
be required of committees that make independent expenditures that
equal or exceed five percent of the voluntary spending limit. Ms. Vida
noted that the public financing legislation, if enacted, would not apply
until the next supervisorial race, which is 2002.

Commissioner Grant invited Robert Stern, Director of the Center for
Government Studies, to comment on the proposal.

Mr. Stern stated that the proposal is excellent and would be suitable
for the ballot as written. He stated that if the Commission is interested
in making changes to the proposal, he could offer some suggestions. He
indicated that the qualification threshold could be set at $7,500, which
might prevent frivolous candidates from qualifying but would not deter
legitimate candidates from participating in the program. He agreed
with staff that there should be additional reporting requirements, as
well as a lifting of voluntary spending limits. He stated that although
the district court preliminarily enjoined a similar provision of the
Campaign Finance Reform Ordinance, given what occurred in the last
mayoral election, the City now has the best record in the country upon
which to defend such a provision. Mr. Stern suggested that the limits be
lifted when independent expenditure committees exceed 50 percent of

the spending limit, instead of 25 percent.

Mr. Stern asked the Commission to consider adding a section to the proposal that would limit contributions made to independent expenditure committees. He stated that although the district court found unconstitutional a similar provision in the Campaign Finance Reform Ordinance, the City could now defend the provision, given the influence of independent expenditures in the last mayoral election. Mr. Stern also suggested inserting a provision limiting the amount that a candidate may lend to his or her own committee.

Commissioner Grant then invited Jim Knox, of California Common Cause, to comment on the proposal.

Mr. Knox encouraged the Commission to put a public financing ballot initiative on the November 2000 ballot. He stated that the proposal is a large step forward, but that it could be more comprehensive. He recommended the following changes: 1) a $500 per individual limit on contributions to independent expenditure committees; 2) a $5,000 qualification threshold; and 3) an aggregate contribution limit of $10,000 in any calendar year to candidates, candidate-controlled committees, or committees formed primarily to support or oppose a candidate.

Commissioners Dockendorff and Melbostad expressed interest in adding a provision which would require non-profit, tax-exempt organizations, such as those formed under section 527 of the Internal Revenue Code, to disclose the source of their contributions. Mr. Stern suggested that if the Commissioners were interested in including such a provision, they could require such disclosures if the non-profits run advertisements promoting candidates within 45-60 days of an election.

Steven Hill from the Center for Voting and Democracy indicated his support for the staff proposal. He stated that public financing is a big step towards increasing voter trust in government. He told the Commission that he believed the qualification threshold should be $5,000, not $10,000. He stated that there is no evidence in cities with lower qualification thresholds, such as New York and Long Beach, that the lower threshold caused a proliferation of frivolous candidates to qualify for financing.

Jim Reid, former supervisorial and mayoral candidate, stated that he raised $8,000 for his Mayoral candidacy and $1,800 for his supervisorial run two years ago, and that he would not have qualified for public financing under the staff's proposal. He stated that if the threshold were $10,000 as proposed, only incumbents would qualify for financing. He indicated that very few candidates raised $10,000 in the last supervisorial race.

Joan Mandel of Common Cause urged the Commission to put a public financing initiative on the November 2000 ballot. She recommended that the Commission add a provision limiting contributions to

independent expenditure committees.

Arroya Simpson of the Grey Panthers of San Francisco and the Alliance for Democracy urged the Commission to put a public financing initiative on the November 2000 ballot.

Charles Marsteller of San Francisco Common Cause referred the Commission to his letter, included in the agenda packet. He stated that disclosure by non-profit organizations of contributors to their committees would be a good idea. He also stated that the Commission should include a provision limiting contributions to independent expenditure committees to $500. He recommended that the title of the ballot initiative be changed to the Open Elections Act of 2000.

Mike Mooney of San Francisco Common Cause and Alliance for Democracy urged the Commission to put a public financing initiative on the November 2000 ballot. He stated that be believes a $7,000 qualification threshold would be appropriate, and would prevent frivolous candidates from qualifying for funding.

Commissioner Dockendorff stated that he has a number of problems with the staff's proposals. He stated that the proposal should include a limit on contributions to independent expenditure committees and a disclosure provision for non-profit organizations formed under Section 527 of the Internal Revenue Code. He stated that the qualification threshold of $10,000 was too high, and that it should be $7,500. He stated that he did not believe that the legislation should include a lifting of the limits because candidates that accept public financing should be required to stay within the spending limits. Commissioner Dockendorff recommended that the title of the legislation should be changed to "The Fair Elections Act" or "The Open Elections Act." He recommended that language in the findings be toned down and he questioned why the legislation referred to the California Consumer Price Index.

Commissioner Kingsley moved that the Commission place on the November 2000 ballot the legislation it forwarded to the Board of Supervisors, subject to amendments later agreed upon.

**Motion 00-5-15-30 (Kingsley/Melbostad) Moved, seconded and passed: That the Commission place on the November 2000 ballot the legislation it forwarded to the Board of Supervisors, subject to amendments later agreed upon.**

**Motion 00-5-15-31 (Dockendorff/Kingsley) Moved, seconded and passed: That the name of the legislation to be placed on the November, 2000 ballot be entitled "The Fair Elections Act of 2000."**

The Commission then discussed the qualification threshold. It was agreed that the threshold should be ten percent of the $75,000 spending limit, or $7,500.

The Commission discussed whether the legislation should include a provision lifting the spending limits if a non-participating candidate exceeds 100 percent of the spending limit, or if independent expenditures exceed 25 percent of the spending limit. Ms. Vida stated that without such a provision, candidates would be less inclined to participate in the public financing program for fear that they might face candidates that could raise and spend unlimited amounts. Mr. Stern agreed with Ms. Vida. Commissioner Dockendorff stated that there should not be a provision lifting the limits because the $75,000 voluntary spending limit provides an adequate amount for a candidate to convey his or her message to the voters.

Commissioner Kingsley made a motion to amend the legislation to include lifting of the spending limits if a non-participating candidate exceeds 100 percent of the spending limit, or if independent expenditures exceed 25 percent of the spending limit.

**Motion 00-5-15-32: That the original legislation be amended to include lifting of the spending limits if a non-participating candidate exceeds 100 percent of the spending limit, or if independent expenditures exceed 25 percent of the spending limit.** Aye: Kingsley, Norris, Grant; Nay: Dockendorff, Melbostad.

Commissioner Melbostad asked the staff to report at the next meeting on the following possible additions or changes to the public financing legislation: 1) a way to address the loophole regarding statements filed by committees making independent expenditures; 2) a disclosure requirement for non-profit, tax-exempt organizations; 3) a provision limiting contributions to independent expenditure committees to $500; 4) a provision limiting loans by candidates to their own campaigns whether or not they accept public financing; and 5) review the findings.

**Motion 00-5-15-33 (Grant/Melbostad): That the Commission place on the November, 2000 ballot the legislation it forwarded to the Board of Supervisors, with the following amendments: that the qualification threshold be $7,500; that the legislation contain additional disclosure provisions as recommended by staff; that the title of the legislation be changed to "The Fair Elections Act of 2000;" that the spending limits be lifted when nonparticipating candidates exceed the spending limits or when independent expenditures exceed 25% of the spending limits; and that the legislation include any further amendments that the Commission deems appropriate.**

Aye: Kingsley, Norris, Grant, Melbostad; Nay: Dockendorff.

Commissioner Norris recommended that the legislation cap the amount spent by the City to run and administer the public financing program. After some discussion, it was decided that the legislation should include a program cost cap "not to exceed $2 per year per resident."

Motion 00-5-15-34 (Norris/Melbostad) Moved, seconded and passed: That the legislation also include a program cost cap "not to exceed $2 per year per resident."

VI. Discussion and possible action re: Items for future agendas.

At the next meeting, the Commission will discuss Commissioner Melbostad's proposed additions to the legislation.

VII. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

There was no public comment.

VIII. Adjournment

The meeting was adjourned at 7:50 p.m.

Respectfully submitted,

_____

Katherine Havener

Ethics Investigator/Legal Analyst

# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

## EXECUTIVE DIRECTOR'S REPORT
## TO THE SAN FRANCISCO ETHICS COMMISSION

### For the Meeting of May 15, 2000

**1. FY 00-01 budget.** The Commission's FY 00-01 budget is scheduled for consideration by the Finance Committee of the Board of Supervisors on Tuesday, June 20, at 1:00 p.m. The full Board will hold a budget hearing on Saturday, June 24, at which members of the public are invited to testify.

The Mayor's Budget Office has confirmed that the Campaign Finance Auditor's position will be upgraded from Class 1366 to Class 1654 Principal Accountant, and the Deputy Executive Director's position will be upgraded from Class 1368 to Class 1370. These classifications will become effective June 1, 2000.

**2. Relocation of Commission office.** Legislation authorizing the Commission to enter into a lease for about 3,000 sq. ft. of space at 30 Van Ness, on or about December 1, 2000, was submitted by the Department of Real Estate to the Finance Committee earlier this month. The new space increases our office space by about one-third (1,000 sq. ft). The Finance Committee may consider the legislation on May 24 or May 31. Both of the Commission's leases at Fox Plaza expire on November 30, 2000. The staff is currently working with Real Estate and the architect on a floor plan. The Commission would expect to occupy the new space when the current leases expire.

**3. Public policy program.**

Public financing of election campaigns. Commission Chair Isabella H. Grant testified before the Board of Supervisors on April 24 regarding the Commission's proposed legislation providing for public financing of supervisorial election campaigns. Deputy Executive Director Naomi Starkman and I responded to questions from the Board members. The Board considered the Commission's proposal, Supervisor Ammiano's Amendment to the Whole, and a third proposal by Supervisor Ammiano that provided for public financing only in the case of independent expenditures.

After nearly two hours of deliberation, the Board rejected all three public financing proposals by a vote of 10-1. The Board also defeated, by a vote of 6-3, a separate proposal requiring committees that make independent expenditures to disclose, prior to an election, their contributions and expenditures.

Prior to the Board's vote, I asked all members of the Board for an opportunity to meet and discuss the public financing proposal. Commissioner Grant and I met with

1390 Market Street, Suite 801 • San Francisco, CA 94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us                                Web site: http://www.ci.sf.ca.us/ethics/

Case 3:07-cv-03199-JSW    Document 21-13    Filed 08/27/2007    Page 12 of 27
Executive Director's Report
for the meeting of May 15, 2000

Supervisor Barbara Kaufman and Supervisor Amos Brown on April 21. Later that day, Commissioner Melbostad and I met with Supervisor Mark Leno. In addition, Ms. Starkman and I conferred by telephone with Supervisor Alicia Becerril. I had previously reviewed the legislation with members of the Finance Committee—Supervisors Yee, Ammiano, and Bierman.

A staff report included in the May 15 agenda packet addresses concerns raised by members of the Board on public financing at its April 24 meeting. The staff report also notes proposed changes to the draft legislation for the Commission's consideration in the event that the Commission wishes to place a measure on the November 2000 ballot.

Electronic filing legislation. Draft legislation approved by the Commission at its April 17 meeting, authorizing the Commission to require electronic filing by lobbyists and campaign consultants, was delivered to the Board last month and has been referred to the Rules Committee. I will notify Commission members when this matter is scheduled for consideration by the Committee.

Consolidation of ethics-related laws. The Board recently approved a proposal sponsored by Supervisor Barbara Kaufman to consolidate in the Administrative Code all ethics-related laws regulating election campaigns, lobbying, the conduct of government officials and employees, and whistleblower protections.

Agenda items deferred for future meetings. To allow sufficient time for the Commission to consider, at its May 15 meeting, whether to place a public financing measure on the November ballot, two items held over from the April 17 meeting have been continued to future meetings. The first matter, whether the Commission should establish a separate audit pool for recipient committees that make independent expenditures, will be continued to the June agenda. A second matter, whether the Commission should establish an on-line forum for all candidates for local elective office, may be considered at a future meeting.

**4. Advice and opinions.** Three advice letters were issued since the Commission's last meeting. All three letters relate to the application of the Campaign Finance Reform Ordinance. The first letter, dated March 1, 2000, was issued to Board President Tom Ammiano. The second letter, dated March 15, 2000, was issued to Roger Sanders; and the third letter, dated March 22, 2000, was issued to James R. Sutton. The letters are attached to this report and have been posted on the Commission's web site.

**5. Investigation and enforcement program.** Since January 1, 2000, the Commission received a total of 8 complaints. Since its last regular meeting on April 17, the Commission has received 3 complaints. Of the total number of complaints filed since June 1995, of those currently within our jurisdiction, 7 are currently unresolved, and the staff is conducting preliminary inquiries into those complaints.

Report on volume of calls received via the Whistleblower Hotline. Since the Whistleblower Hotline was established in July 1997, the Commission has received a combined total of 33 Whistleblower complaints via the Hotline, the main telephone line and by mail. Since January 1, 2000, a total of 8 complaints, including 5 Whistleblower complaints, have been filed. Since June

Case 3:07-cv-03199-JSW    Document 21-13    Filed 08/27/2007    Page 13 of 27
Executive Director's Report
for the meeting of May 15, 2000

1995, a combined total of 131 Whistleblower and non-Whistleblower complaints have been filed with the Commission.

## 6.  Campaign finance disclosure program.

Campaign disclosure.  A staff review of 473 committee files identified 58 committees that failed to file paper statements, 12 that failed to file electronic statements, and 29 that filed late statements.  Follow-up notices have been sent, and fines in the amount of $2,370 have been assessed against the 29 late filers.

Electronic filing.  Staff continues to meet twice a month with DTIS staff to discuss delivery of technical services.  DTIS implemented the consolidated Form 460 on May 8.  For the two-week period from April 24 – May 8, as the new form was being installed, committees were unable able to submit electronic filings.  During May and June, the Commission's web site will contain limited campaign finance data during the conversion from the EFPOC to the CAL format.  The new CAL format will be ready on June 21.  Staff and DTIS have also implemented changes in the Commission's back office e-filing system that are designed to automate the Commission's procedures for imposing late fines.

Joe Lynn and Jen Taloa will attend an FPPC workshop for campaign filing officers on May 25 in Sacramento.  Sometime this summer, Mr. Lynn will also attend an electronic filing meeting in Chicago to be convened by the Council on Governmental Ethics Laws.

## 7.  Campaign finance audit program.  As previously reported, the staff anticipates completing a total of ten audits in the current fiscal year, two less than anticipated.  The Commission's decision to focus on committees with higher financial levels has required more auditing time per audit.  Also, our auditor has virtually no clerical support.

In the current fiscal year, audits of two committees with high financial activity (over $500,000), and six committees with financial activity at lower levels (three with activity over $100,000, two with activity over $50,000 and one with activity over $20,000) have been completed.  Audit reports with respect to four of these committees are in the process of being released.  Audit reports are published on the Commission's web site.  Audit work on two other committees has commenced.  The activity levels of these committees are over $50,000, and over $20,000, respectively.

## 8.  Lobbyist program.  There are currently 46 lobbyists registered with the Commission.  The lobbyists filed their first quarter 2000 reports on April 17.  The Commission's summary report of lobbyist filings for the first quarter was issued on April 26, along with a press release.  As of May 9, $26,238 has been collected in lobbyist fees and $2,375 has been collected in lobbyist late fines this fiscal year, for a total of $28,613.  An additional $100 has been assessed but not collected.

Lobbyists on Behalf of the City.  In accordance with the amended Sunshine Ordinance, lobbyists that qualified as "Lobbyists on Behalf of the City" during the first quarter 2000 (February 1

through April 30) will be filing quarterly reports with the Commission on May 15. The reports will be available for public review in the Commission's offices.

**9. Campaign consultant program.** The next campaign consultant quarterly reports are due on June 15. There are currently 16 consultants registered with the Commission. As of May 1, $8,950 has been collected in campaign consultant registration and client fees, and $1,250 has been collected in campaign consultant late fines, for a total of $10,200 in the current fiscal year.

**10. Statements of Economic Interests.** Department heads and members of designated boards and commissions were required to file their annual Statements of Economic Interests on April 1. To date, staff has logged 470 SEI's, including 457 Annual Statements and 13 Assuming Office or Leaving Office Statements. Of Annual Statements received, 396 were filed by the deadline and 74 after the deadline. Staff is completing its annual survey of City boards and commissions to identify persons who have not filed SEIs in accordance with Chapter 58 of the Administrative Code. Staff is also contacting City department heads who have not filed a required "Filing Officer Report" indicating whether designated departmental employees have filed their SEIs with their respective departments.

**11. Sunshine Ordinance Declaration.** To date, 320 Sunshine Ordinance declarations have been filed with the Ethics Commission. Department heads and members of boards and commissions certify in these statements that they have read the amended Ordinance and that they will attend a training session on the new Ordinance.

**12. Staffing.** Deputy Executive Director Naomi Starkman has informed me that she will leave her position on May 26. In her three years of employment with the Commission, Ms. Starkman has made an outstanding contribution and will be greatly missed. A search for a replacement is being conducted. The job notice is included in the agenda packet and is being posted on the web site.

Respectfully submitted,

Ginny Vida, Executive Director

P:\SHARED\EDREPORT\2000\ED051500.doc

4

**SAN FRANCISCO ETHICS COMMISSION**
Whistleblower Complaints Registered with the Ethics Commission since 7/21/97

| TYPE OF COMPLAINT REGISTERED VIA WHISTLEBLOWER HOTLINE | DATE OF CALL |
|---|---|
| Theft of city funds | 7/21/97 |
| Harassment | 7/21/97 |
| Corruption; Misuse of City resources | 7/21/97 |
| Possible violation of Sunshine Ordinance; Mishandling of internal complaint | 7/22/97 |
| Conflict of interest re influencing gov decision re financial interest | 7/24/97 |
| Misuse of Government Property | 7/25/97 |
| Illegal search & seizure; Retaliation, Harassment; Cover-up | 8/19/97 |
| Racial discrimination; Unfair personnel practices re: promotion | 8/20/97 |
| Fraud re: personnel practices | 10/15/97 |

| WHISTLEBLOWER COMPLAINTS REGISTERED VIA THE MAIN LINE | DATE OF CALL |
|---|---|
| Gross Misconduct | 09/16/1997 |
| Gross Misconduct | 09/17/1997 |
| Bribery | 10/07/1997 |
| Corruption | 12/10/1997 |

| WHISTLEBLOWER COMPLAINTS REGISTERED VIA COMPLAINT FORM | DATE RECEIVED |
|---|---|
| Workplace Harassment; Retaliation | 9/10/97 |
| Workplace Harassment | 10/3/97 |
| Misuse of Government Property | 11/3/97 |
| Theft of City property | 11/10/97 |
| Unlawful Retaliation | 1/5/98 |
| Gross Misconduct | 1/7/98 |
| Gross Misconduct | 1/15/98 |
| Unlawful Retaliation | 1/27/98 |
| Fraud; Theft of City Property | 2/20/98 |
| Misuse of Government Property | 3/12/98 |
| Fraud; Theft of City Property | 3/13/98 |
| Unlawful Retaliation | 4/2/98 |
| Gross Misconduct; Bribery | 4/14/98 |
| Fraud; Theft of City Property | 7/24/98 |
| Workplace Harassment; Misuse of Government Property | 6/29/99 |
| Misuse of Government Property | 7/26/99 |
| Misuse of Government Property | 7/26/99 |
| Workplace Harassment; Corruption | 1/4/00 |
| Unlawful Retaliation | 1/25/00 |
| Misuse of Government Property | 2/24/00 |
| Misuse of Government Property | 3/7/00 |
| Wrongful termination, workplace harassment | 4/11/00 |

| NON-WHISTLEBLOWER COMPLAINTS REGISTERED WITH THE HOTLINE | TOTAL |
|---|---|
| Conflict of Interest | 5 |
| Mismanagement in Hiring Practices | 1 |
| Violation of Sunshine Ordinance | 1 |
| Workplace Harassment | 3 |

| WHISTLEBLOWER COMPLAINT CATEGORIES | TOTAL |
|---|---|
| (Improper Government Activities Ordinance, S.F. Admin. Code Sec. 16.401) | |
| Bribery | 2 |
| Coercion | 0 |
| Corruption | 3 |
| Discrimination | 1 |
| Fraud | 4 |
| Gross Economic Waste | 1 |
| Gross Misconduct | 6 |
| Malfeasance | 0 |
| Misuse of Government Property | 6 |
| Racial Harassment | 1 |
| Sexual Harassment | 1 |
| Theft of City Property | 7 |
| Unlawful Retaliation | 6 |

# ETHICS COMMISSION
## CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

March 10, 2000

Tom Ammiano
President, San Francisco Board of Supervisors
Tom Ammiano for Mayor Committee
125 Upper Terrace
San Francisco, CA 94117

Dear President Ammiano:

You requested a formal opinion from the Ethics Commission regarding the interpretation of Section 16.510 of the Campaign Finance Reform Ordinance ("CFRO"), San Francisco Administrative Code Section 16.501, *et seq.*

Under Section C3.699-12 of the San Francisco Charter, the Ethics Commission has specific authority to provide two kinds of advice: written formal opinions or informal advice. Written formal opinions are available to individuals who request advice about their responsibilities under local laws. Formal opinions provide the requester immunity from subsequent administrative, civil and criminal enforcement action if the material facts are as stated in the request for advice and both the City Attorney and District Attorney concur with the Ethics Commission's opinion. *Id.* Informal advice does not provide similar protection. *Id.*

## Question

May my candidate committee use unexpended campaign funds to make a contribution to a state ballot measure committee?

## Answer

No. The CFRO prohibits local candidate committees from using unexpended campaign funds to make contributions to state ballot measure committees.

## Discussion

Section 16.510 of the CFRO addresses the question of how candidates may spend unexpended funds after an election. Section 16.510 provides:

> Unexpended contributions held by a candidate after the date of
> the election in which said candidate appeared on the ballot may be

1390 Market Street, Suite 801 • San Francisco, CA 94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us    Web site: http://www.ci.sf.ca.us/ethics/

# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

March 15, 2000

Roger Sanders
Treasurer, Committee to Re-Elect Assemblywoman Carole Migden #962662
1267 Filbert Street
San Francisco, CA 94109

Dear Mr. Sanders

You requested the Ethics Commission's interpretation of the Campaign Finance Reform Ordinance ("CFRO"), San Francisco Administrative Code Section 16.501, *et seq*.

Under Section C3.699-12 of the San Francisco Charter, the Ethics Commission has specific authority to provide two kinds of advice: written formal opinions or informal advice. Written formal opinions are available to individuals who request advice about their responsibilities under local laws. Formal opinions provide the requester immunity from subsequent administrative, civil and criminal enforcement action if the material facts are as stated in the request for advice and both the City Attorney and District Attorney concur with the Ethics Commission's opinion. *Id*. Informal advice does not provide similar protection. *Id*.

Because you seek advice regarding specific actions which you, or your clients, might take in the future, the Commission is treating your question as a request for a formal opinion.

## Question

May Assemblywoman Carole Migden make a contribution from campaign committee resources to a candidate for local elective office?

## Answer

Yes. The CFRO does not prohibit committees that are controlled by State candidates or officeholders from making contributions to candidates for local elective office. Such contributions are subject to the general provisions of the CFRO, including the limits on campaign contributions.

1390 Market Street, Suite 801 • San Francisco, CA  94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us        Web site: http://www.ci.sf.ca.us/ethics/

# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

March 22, 2000

James R. Sutton
Nielsen, Merksamer, et al.
591 Redwood Highway, #4000
Mill Valley, CA 94941

Dear Mr. Sutton:

You requested the Ethics Commission's interpretation Section 16.509 of the Campaign Finance Reform Ordinance ("CFRO"), San Francisco Administrative Code Section 16.501, *et seq.*

Under Section C3.699-12 of the San Francisco Charter, the Ethics Commission has specific authority to provide two kinds of advice: written formal opinions or informal advice. Written formal opinions are available to individuals who request advice about their responsibilities under local laws. Formal opinions provide the requester immunity from subsequent administrative, civil and criminal enforcement action if the material facts are as stated in the request for advice and both the City Attorney and District Attorney concur with the Ethics Commission's opinion. *Id.* Informal advice does not provide similar protection. *Id.*

Because you seek advice regarding specific actions which you, or your clients, might take in the future, the Commission is treating your question as a request for a formal opinion.

## Question

Does Section 16.509 of the CFRO, which limits contributions to candidates in a "municipal" run-off election, apply to candidates for the Board of Supervisors running in a "district" run-off election under Section 13.102 of the City Charter?

## Answer

Yes. The contribution limits set forth in Section 16.509 of the CFRO apply to candidates for the Board of Supervisors running in a "district" run-off election.

## Discussion

The CFRO limits the amount of money an individual or entity may contribute to a candidate for local elective office. For the general election, the contribution limit is $500. The contribution limit for "municipal" run-off elections is $250. S.F. Admin. Code Sections 16.508(b) and 16.509(b).[1]

---

[1] The CFRO originally imposed variable contribution limits. If a candidate agreed to comply with voluntary spending limits, the candidate could accept up to $500 per contributor in the general election, and up to $250 in the run-off election. If the candidate declined to accept the spending limits, the

1390 Market Street, Suite 801 • San Francisco, CA 94102-5302 • Phone (415) 554-9510 • Fax (415) 554-8757
E-Mail Address: ethics_commission@ci.sf.ca.us        Web site: http://www.ci.sf.ca.us/ethics/

San Francisco
Ethics Commission
Phone (415) 554-9510



1390 Market Street, Suite 801
San Francisco, CA 94102
Fax (415) 703-0121

## EXEMPT EMPLOYMENT OPPORTUNITY

**TITLE and CLASS:**   **SPECIAL ASSISTANT XI, CLASS 1370**
(Deputy Executive Director)    Salary: $56,141 - $61,883

**DEPARTMENT:**    **SAN FRANCISCO ETHICS COMMISSION**

The San Francisco Ethics Commission was created by the passage of Proposition K in November 1993. The Commission's duties include administering and enforcing laws related to campaign finance, registration of lobbyists and campaign consultants, conflicts of interest and governmental ethics. The position of Deputy Executive Director is a full time, full year exempt position.

## DUTIES AND RESPONSIBILITIES:
Under the direction of the Executive Director, the Deputy Executive Director:
- Serves as chief policy analyst; researches and develops policy and legislative recommendations; appears before the Commission and public officials to make presentations;
- Oversees ethics investigation program and campaign finance audit program; supervises and trains the Commission's Legal Analyst/Investigator, Campaign Finance Auditor and part-time Law Clerk;
- Assists in the preparation of the annual budget;
- Drafts advice letters and opinions;
- Serves as a public affairs liaison; regularly represents the Commission before government agencies, universities and political organizations; holds workshops on laws within the Commission's jurisdiction; develops manuals and educational materials; responds to requests for information from the media, officials, other government agencies and the public;
- Administers the campaign consultant registration and reporting program;
- Serves as Acting Executive Director in the absence of the Executive Director.

## MINIMUM REQUIREMENTS:
- Law degree;
- Two or more years of experience in government legislative/policy development and staff supervision;
- Knowledge of governmental ethics laws and issues is desirable;
- Ability to establish and maintain working relationships with Commission members, elected and appointed officials; staff, other departments and organizations, members of the press and the public;
- Excellent research, analytic and communication skills;
- Ability to handle multiple assignments and meet deadlines.

**APPLICATION DEADLINE:** Must be <u>received</u> by <u>June 9, 2000.</u>

Please mail or fax resume and cover letter to the above-referenced address/fax number.  Please address your cover letter to Ginny Vida, Executive Director, San Francisco Ethics Commission.

--------------------------------------------------------------------------

It is the policy of the City and County of San Francisco to afford equal opportunity in employment to all individuals regardless of race, color, sex, national origin, ancestry, marital status, sexual orientation, age or disabilities.

E-mail address:  ethics_commission@ci.sf.ca.us

Web site:  www.sfgov.org/ethics/



# ETHICS COMMISSION
# CITY AND COUNTY OF SAN FRANCISCO

ISABELLA H. GRANT
CHAIRPERSON

HENRI E. NORRIS
VICE-CHAIRPERSON

ROBERT D.
DOCKENDORFF
COMMISSIONER

CAROL M. KINGSLEY
COMMISSIONER

PAUL H. MELBOSTAD
COMMISSIONER

VIRGINIA E. VIDA
EXECUTIVE DIRECTOR

**Date:**    May 11, 2000

**To:**    Members, Ethics Commission

**From:**    Ginny Vida, Executive Director   *G. V.*
By: Naomi Starkman, Deputy Executive Director

**Re:**    Proposal to Submit a Ballot Initiative Providing for Public Financing of Election Campaigns

At its April 24, 2000 meeting, the San Francisco Board of Supervisors declined to pass the Ethics Commission's proposal for public financing of election campaigns. The Board also declined to pass two other public finance measures, which had been introduced by Board President Ammiano. The purpose of this memorandum is to outline some of the concerns raised by the members of the Board regarding the Commission's proposal and to provide the members of the Commission with some additional recommendations, should the Commission decide to submit a measure to the voters in the November 2000 election. The deadline for submission of a ballot measure is August 9, 2000. A revised copy of the Commission's legislation is enclosed.

To assist the Commission in assessing the staffs' recommendations, the staff has attached information on the partial public financing programs in other jurisdictions.

## I.    Summary of the Staff Recommendations

If the Commission decides to submit its public finance measure to the voters, the Commission could submit the measure as it was presented to the Board, or the Commission could decide to amend some sections of the proposal. After considering the comments of the Board members, the staff recommends making the following changes:

- Increase the threshold for qualifying contributions from $5,000 to $10,000; and
- Provide that the voluntary spending limit is lifted when nonparticipating candidates exceed 100 percent of the spending limit, or when independent expenditures exceed 25 percent of the spending limit. In order to determine when the spending limits are lifted, the staff recommends the following new disclosure requirements:
  - Require additional reporting by a nonparticipating candidate when he or she reaches both 75 percent and 100 percent of the voluntary spending limit; and
  - Require additional reporting by committees that make independent expenditures that equal or exceed 5 percent of the voluntary spending limit.

## II.    Comments by the Board of Supervisors

### A.  Qualifying Contributions

The Commission's proposal to the Board provides that in order to receive public funds, participating candidates must receive at least **$5,000** in "qualifying contributions" between $10 and $100 each from at least 50 individual (non-corporate) contributors who are San Francisco residents.  Several members of the Board of Supervisors indicated that they thought the qualifying threshold of $5,000 is too low.  Most members thought that many candidates for the Board could easily raise $5,000, thereby increasing the total number of participating candidates and the cost of the program.  A number of Board members noted that as many as 40 candidates had indicated an intent to run in a single district.

As you know, the Commission staff had previously recommended to the Commission a higher qualifying threshold, noting that it should be high enough to screen out candidates who are unable to demonstrate a threshold level of support, but low enough so as not to present a barrier to serious challengers.  There has been testimony at the Commission and Board level indicating that there is a greater incentive for candidates to raise more qualifying contributions if they know that they will receive public financing.  By increasing the threshold, the number of candidates who would qualify for public financing would likely decrease, thereby reducing the total cost to the City.

For these reasons, the staff recommends doubling the threshold from $5,000 to **$10,000**.  In staff's opinion, $10,000 represents a solid base of support in San Francisco for candidates for the Board of Supervisors.  The proposal provides that qualifying contributions must be raised from at least **100** individuals, rather than 50, as it would be impossible for candidates to raise $10,000 from just 50 contributors.  In addition, the proposal authorizes the Commission to adjust the spending limits and the threshold limits to reflect a change in the California Consumer Price Index.  Finally, it should be noted that the total amount of public funds disbursed in the general election would be decreased from $45,000 to **$42,500** per candidate.[1]

Supervisor Michael J. Yaki stated that limiting qualifying contributions to residents of San Francisco prevents outside interest groups, such as Emily's List and Sierra Club, from making qualifying contributions to candidates in San Francisco.  The staff recommends not changing this requirement.  The purpose of qualifying contributions is to show that a candidate can be elected by San Francisco voters.  Restricting contributions to San Francisco residents serves that purpose, without making fundraising too onerous by, for example, restricting contributions to the candidate's district.  Allowing funds from outside San Francisco to count as qualifying contributions would not serve this purpose.  Public finance programs typically include the requirement that qualifying contributions come from residents of either the district or city in which the candidate is to be elected.

### B.  Lifting of the Voluntary Spending Limits

The Commission's proposal to the Board did not provide for a lifting of the voluntary spending limits or additional public funds in the case of a high-spending opponent or independent expenditures.  The Amendment of the Whole, introduced by President Ammiano, provided for additional funds in these circumstances.  Another proposal introduced by President Ammiano would have provided for public matching funds only in the case of independent expenditures.

---

[1] $5,000 (initial grant of public funds) + $20,000 ($4 to $1 matching public funds) + $17,500 ($1 to $1 matching public funds) = $42,500.

2

There had been some concern that the Commission's proposal does not provide for the lifting of the voluntary spending limits. Staff, in consultation with Chairperson Isabella Grant, who attended the Board hearing, <u>recommends a provision to lift the voluntary spending limits without disbursing additional funds to participating candidates above the maximum amount to be disbursed.</u> Participating candidates would be able to raise and spend additional private funds if faced with a high-spending opponent or independent expenditures. This approach encourages candidates to participate in the program and provides a measure of fairness by releasing candidates from the spending limits due to circumstances beyond their control. The total cost of the program would be contained because the Commission would not provide additional funds to match spending over the limits.

The voluntary spending limits will be lifted if a candidate who declines to adopt the limits receives contributions, make expenditures, or has funds in his/her campaign trust account that exceed <u>100 percent</u> of the applicable spending limit. In addition, the spending limits will be lifted if committees that make independent expenditures spend in the aggregate more than <u>25 percent</u> of the applicable spending limit in support of, or in opposition to, a candidate.

## C. Supplemental Reporting

The Commission's proposal to the Board imposed additional reporting and disclosure requirements on committees other than candidate committees. First, any committee that makes contributions or independent expenditures totaling $500 or more in a calendar month during the six months immediately preceding an election, to support or oppose a candidate for local elective office at that election, would be required to disclose, prior to the date of the election, all contributions and loans received and all expenditures made. The Commission's revised proposal has left this reporting requirement intact.

Second, any committee that makes independent expenditures in support of or in opposition to a candidate for local office that equal or exceed $5,000 would be required to file, within 24 hours of reaching this threshold, a statement with the Commission stating that fact. Thereafter, the committee would be required to file a supplemental statement with the Commission each time the committee makes independent expenditures in support of or in opposition to a candidate which equal or exceed an additional $5,000. The supplemental statements would be filed within 24 hours of reaching the spending threshold. The Commission's revised proposal has been amended to require that committees report when they have reached 5 percent of the spending limit, rather than $5,000, as described below.

The Commission's revised proposal includes new <u>trigger reporting</u> related to the lifting of the voluntary spending limits. Both of these new reporting requirements allow the Commission and the public to have more information about when the spending limits might be lifted. First, a nonparticipating candidate who receives contributions, makes expenditures or has funds in his or her campaign trust account that exceed <u>75 percent</u> of the spending limit (or $56,250) must report a statement of this fact with the Ethics Commission within 24 hours of reaching that level. Thereafter, the nonparticipating candidate must file supplemental statements with the Commission within 24 hours of receiving contributions or making expenditures or having funds in his or her trust account that equal or exceed <u>100 percent</u> of the spending limit.

Second, any committee that makes independent expenditures in support of or in opposition to a candidate that equal or exceed <u>5 percent</u> of the spending limit (or $3,750) must, within 24 hours of reaching this threshold, file a statement with the Commission stating that fact. Thereafter, any such committee must file a supplemental statement with the Commission each time the committee makes independent expenditures in

support of or in opposition to a candidate, which equal or exceed an <u>additional 5 percent</u> of the spending limit. The supplemental statements must be filed within 24 hours of reaching the spending threshold.

Some Board members expressed concern that the disclosure requirements for committees that make independent expenditures were different from the reporting requirements for other committees. There was also confusion as to why the Commission's proposal does not apply to slate mailer organizations. A number of the members of the Board expressed strong opposition to a measure that imposes different reporting requirements on different types of committees or entities.

The Commission has several compelling reasons for including the new reporting requirements. First, the Commission sought to address a gap in state law that came to light during the 1999 mayoral election. Currently, in odd-numbered years, committees active in San Francisco that make independent expenditures are not required to file information about the amount and source of the contributions received prior to an election. Second, because there currently are no limits on contributions to committees that make independent expenditures, individuals and entities can contribute unlimited amounts of money to such committees to spend in support of or in opposition to a candidate. As a result, in the 1999 mayoral election, the public did not have access prior to the election to important information about the source of the extraordinarily large amounts of money raised and spent.

In contrast, candidate-controlled committees are required to report information about the source of their contributions prior to an election in both even and odd-numbered years. Because there is no limit on the amount, disclosure of the contributions is all the more critical, as it is currently the only way the public can address the perceived influence from large campaign contributions. The proposed disclosure provision requires committees that make independent expenditures to report contributions in both even and odd-numbered years. Thus, the proposed filing requirement attempts to address this reporting discrepancy by placing <u>similar</u> disclosure requirements on committees that make independent expenditures.

Third, if the Commission adopts the staff's recommendation that the public finance measure allow for the lifting of the spending limits in response to a high spending candidate or large independent expenditures, additional reporting is essential to enable that program to work. The Commission must have frequent information about expenditures in order to determine in a timely way whether candidates should be released from the spending ceilings.

Finally, some members of the Board asked why the Commission's proposal did not include additional filing requirements for slate mailer organizations. Several members of the Board of Supervisors expressed their views that a slate mailer organization is no different from a committee that makes independent expenditures and should be subjected to the same rules. As staff noted to the Board, slate mailer organizations are defined and regulated by state law. According to the Fair Political Practices Commission, San Francisco may not impose filing requirements on slate mailer organizations which are additional to or different from those provided for in state law. (*Moll* Advice Letter, No. A-97-080.) While the City of San Francisco is free to impose additional filing obligations on political committees active only in San Francisco, it is currently barred from imposing any such requirements on slate mailer organizations.

P:\SHARED\Public Finance\Ballot.doc

4

## GENERAL INFORMATION

| | LOS ANGELES | NEW YORK CITY | LONG BEACH | TUCSON |
|---|---|---|---|---|
| Date Program Enacted | 1990 | 1988 | 1994 | 1985 |
| Date Program Implemented | 1993 | 1989 | 1998 | 1987 |
| Number of elections conducted under program | 4 | 7 | 1 | 6 |
| Number of offices covered by program | Mayor, City Attorney, Controller, and City Council | Mayor, Public Advocate, Comptroller, Borough President and City Council | Mayor, City Attorney, Comptroller, City Auditor, City Prosecutor, and City Council | Mayor and City Council |
| Number of districts | 15 council districts | 51 | 9 council districts | 6 council districts |
| Number of registered voters | 1,458,718 | 3,356,402 | 200,791 | 206,448 |
| 1998-99 Annual City Budget | $4.07 billion | $35 billion | $1.6 billion | $819 million |
| Geographic area | 470 Sq. Miles | 309 Sq. Miles | 50 Sq. Miles | 195 Sq. Miles |
| 1996 Population | 3.7 million | 7.4 million | 421,904 | 449,002 |
| Amount of money set aside for matching fund program | $8 million ($2.20 per capita) | $28 million ($3.80 per capita) | $0 | $325,000 ($.72 per capita) |

## ELIGIBILITY CRITERIA

### LOS ANGELES

| Candidate | Requirement |
|---|---|
| All Candidates | Agree to abide by the spending limits. |
| Mayor | Agree not to contribute more than $100,000 per election from personal funds; |
| | Receive $150,000 or more in contributions of $500 or less; |
| | Be opposed by another candidate who has qualified for matching funds or who has raised, spent, or has cash-on-hand of $200,000 or more. |
| City Attorney and Controller | Agree not to contribute more than $100,000 per election from personal funds; |
| | Receive $75,000 or more in contributions of $500 or less; |
| | Be opposed by another candidate who has qualified for matching funds or who has raised, spent, or has cash-on-hand of $100,000 or more. |
| City Council | Agree not to contribute more than $25,000 per election from personal funds; |
| | Receive $25,000 or more in contributions of $250 or less; |
| | Be opposed by another candidate who has qualified for matching funds or who has raised, spent, or has cash-on-hand of $50,000 or more. |

### NEW YORK CITY

| Candidate | Minimum Dollar Amount Raised | Minimum No. of Contributors |
|---|---|---|
| Mayor | $250,000 | 1,000 |
| Public Advocate, Comptr | $125,000 | 500 |
| Borough President | $10,000 - $46,013 | 100 |
| City Council | $5,000 | 50 |

### LONG BEACH

| Candidate | Requirements |
|---|---|
| All Candidates | Agree to abide by the spending limits. |
| Mayor | Raise at least $20,000 in contributions of $500 or less; |
| | Be opposed by a candidate who has qualified for matching funds or who has raised $40,000 |
| City Attorney, City Audito | Raise at least $10,000 in contributions of $350 or less; |
| | Be opposed by a candidate who has qualified for matching funds or has raised $20,000 |
| City Council | Raise at least $5,000 in contributions of $250 or less; |
| | Be opposed by a candidate who has qualified for matching funds or has raised $10,000 |

### TUCSON

| Candidate | Requirement |
|---|---|
| Mayor | Receive 300 contributions of $10 or more from Tucson residents. |
| City Council | Receive 200 contributions of $10 or more from Tucson residents. |

MATCHING FUNDS FORMULA

## LOS ANGELES

| Candidate | Matching Funds Formula |
|---|---|
| Mayor, City Attorney or Controller | $1 of public matching funds for every $1 raised from an individual in contributions totaling no more than $500 per individual received within 12 months before the election. |
| City Council | $1 of public matching funds for every $1 raised from an individual in contributions totaling no more than $250 per individual received within 12 months before the election. |

## NEW YORK CITY

| Candidate | Matching Funds Formula |
|---|---|
| All participating candidates. | $4 for every $1 raised up to $250 per contributor, for a maximum in public funds of $1,000 per contributor. |
| If the spending limits are lifted. | $5 for every $1 raised up to $1,250 in public funds per contributor. |

## LONG BEACH

| Election | Matching Fund Program |
|---|---|
| Primary elections | $1 in matching funds for every $2 raised through private contributions. |
| General elections | $1 in matching funds for every $1 raised through private contributions. |

## TUCSON

| Candidates | Matching Fund Formula |
|---|---|
| Mayor, Council Member | $1 for $1 match of all individual contributions, regardless of whether the contributors reside within Tucson. |

## MAXIMUM MATCHING FUNDS AVAILABLE

### LOS ANGELES

| Candidate | Primary Election | General Election |
|---|---|---|
| Mayor | $667,000 | $800,000 |
| City Attorney | $300,000 | $350,000 |
| Controller | $267,000 | $300,000 |
| City Council | $100,000 | $125,000 |

### NEW YORK CITY

| Candidate | 2001 Maximum Public Funds | 2001 Maximum Public Funds if the Spending Limits are Lifted |
|---|---|---|
| Mayor | $2,877,050 | $3,487,333 |
| Public Advocate, Comptro | $1,798,500 | $2,180,000 |
| Borough President | $647,350 | $784,667 |
| City Council | $75,350 | $91,333 |

### LONG BEACH

| Candidate | Primary Election | General Election |
|---|---|---|
| Mayor | $67,980 | $51,500 |
| City Attorney, City Auditor, City Prosecutor | $33,900 | $25,500 |
| City Council | $13,530- $22,110 | $10,500 - $16,500 |

### TUCSON

| Mayor | Council Member |
|---|---|
| $77,341.98 | $38,677.59 |