# EXHIBIT M

**DECLARATION OF JOHN ST. CROIX IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**



**Ethics Commission**

1390 Market Street, Suite 801
San Francisco, CA 94102
Phone 554-9510 Fax 703-0121

# SAN FRANCISCO ETHICS COMMISSION
## NOTICE OF SPECIAL MEETING AND AGENDA

### Monday, June 26, 2000, 5:00 p.m.

### City Hall, One Dr. Carlton B. Goodlett Place, Room 408

I.     Call to order and roll call

II.    Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

III.   Discussion and possible action re: Proposal to submit a ballot initiative, in the November 2000 election, amending the San Francisco Campaign and Governmental Conduct Code to provide for public financing of election campaigns. (The deadline for submission of a ballot measure is August 9, 2000.) Draft legislation will be available from the Commission office on Thursday, June 22.

IV.    Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission

V.     Adjournment

_Know Your Rights Under the Sunshine Ordinance_

*Government's duty is to serve the public, reaching its decisions in full view of the public. Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance assures that deliberations are conducted before the people and that City operations are open to the people's review.*

*For more information on your rights under the Sunshine Ordinance (Chapter 67 of the SF Admin. Code) or to report a violation of the ordinance, contact the Sunshine Ordinance Task Force, Donna Hall, Administrator, City Hall, Room 244, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102-4869. Office telephone: (415) 554-7724; Fax: (415) 554-5163; E-mail: Donna_Hall@ci.sf.ca.u.s. Copies of the Sunshine Ordinance can be obtained from the Clerk of the Sunshine Task Force, the San Francisco Public Library and on the City's web site at www.ci.sf.ca.us/bdsupvrs/ordinance.htm*

---

*This location is wheelchair accessible. In order to assist the City's efforts to accommodate persons with severe allergies, environmental illnesses, multiple chemical sensitivity, or related disabilities, attendees at public meetings are reminded that other attendees may be sensitive to various chemical-based products. Please help the City accommodate these individuals.*

---

*Individuals and entities that influence or attempt to influence local legislative or administrative action may be required by the San Francisco Lobbyist Ordinance [SF Admin. Code §16.520 - 16.534] to register and report lobbying activity. For more information about the Lobbyist Ordinance, please contact the Ethics Commission at 1390 Market Street, Suite 801, San Francisco, CA 94102, telephone (415) 554-9510, fax (415) 554-8757 and web site: www.sfgov.org/ethics.*



sfgov | residents | business | government | visitors | online services | search

go !

Ethics Commission >> Meeting Information

# Ethics Commission

June 26, 2000

(Approved 7/31/00)

**Minutes of the**
**Special Meeting of the San Francisco Ethics Commission**
**City Hall, One Dr. Carlton B. Goodlett Place, Room 408**
**June 26, 2000, 5:00 p.m.**

**I. Call to order and roll call.**

Chairperson Isabella H. Grant called the meeting to order at 5:10 p.m.

COMMISSION MEMBERS PRESENT: Isabella H. Grant, Chairperson; Henri E. Norris, Vice-Chairperson; Robert D. Dockendorff, Commissioner; Paul H. Melbostad, Commissioner.

Commissioner Carol M. Kingsley was absent and excused.

STAFF PRESENT: Ginny Vida, Executive Director; Katherine Havener, Ethics Investigator/Legal Analyst; Frank Lester, Staff Assistant; Shaista Shaikh, Campaign Finance Auditor.

OFFICE OF THE CITY ATTORNEY: Claire Sylvia, Deputy City Attorney.

OTHERS PRESENT: Robert Stern, Director, Center for Governmental Studies; Joan Mandle, California Common Cause; Charles Marsteller, Common Cause; Anita Mayo, Pillsbury, Madison and Sutro; Jo Ann Fuller, Common Cause; Mike Mooney, Alliance for Democracy; Fred Ridel; Christopher Bowman; JR Manual.

MATERIALS DISTRIBUTED:

S.F. Ethics Commission Agenda, June 26, 2000

Draft Minutes of the S.F. Ethics Commission Meeting of June 12, 2000

Memorandum dated June 21, 2000 from Julie Moll to Members, Ethics Commission re: Draft Legislation for "Fair Elections Ordinance" Ballot Initiative Providing for Public Financing of Elections

**II. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.**

There was no public comment.

**III. Discussion and possible action re: Proposal to submit a ballot initiative, in the November 2000 election, amending the San Francisco Campaign and Governmental Conduct Code to provide for public financing of election campaigns.**

Commission Chair Isabella H. Grant briefly outlined the issues to be considered by the Commission. Executive Director Ginny Vida noted that the revised draft of the proposed ballot measure incorporates the modifications approved by the Commission at its June 12, 2000 meeting. Ms. Vida explained that the revised legislation would: 1) provide for pro rata distribution of funds; 2) reduce the limit on contributions to each committee from $2,500 to $500; 3) change the overall limit on contributions to candidates and committees from $12,500 to $500 multiplied by the number of City elective offices to be voted on during the calendar year; 4) require that committee treasurers obtain information about the contributor prior to depositing the contribution; 5) delete the document retention periods; 6) substitute the word "appropriation" for "cost"; and 7) authorize the Ethics Commission and the Board to amend the Ordinance in the future.

The Commission proceeded to discuss and vote on additional amendments to the proposed ballot measure. With respect to the threshold that triggers the lifting of the spending limit in the case of independent spending, Ms. Vida expressed concern that a threshold of 25 percent of the spending limit is too low. She said that the limits may be lifted too soon in view of the large amount of independent spending that occurred in 1999. Staff recommended that the spending limit be lifted when independent expenditures reach 100 percent, instead of 25 percent, of the voluntary spending limit.

**Motion 00-6-26-42 (Melbostad/Norris) Moved, seconded and passed: That the Commission amend the proposed legislation to raise the threshold for lifting the spending limits from 25 percent to 100 percent, so that the voluntary spending limits are lifted if independent expenditures exceed 100 percent of the spending limit.**

Ms. Vida also noted that the proposed aggregate contribution limit of $500 times the number of offices on the ballot is set too low to allow a contributor to give the maximum amount to each candidate the contributor could vote for in years in which there are only two or three offices on the ballot. She said this formula does not take into consideration the $250 contribution limit allowed in a run-off.

A discussion ensued on what the appropriate aggregate contribution limit for candidate committees and non-candidate committees should be.

Public Comment

Anita Mayo, of Pillsbury, Madison and Sutro, noted that the legislation included the language "calendar year" regarding contribution limits and suggested that the Commission might be prohibiting contributions during a non-election year. Ms. Mayo stated that a provision prohibiting contributions during non-election years would favor incumbents. Ms. Mayo recommended that Sec. 1.114(d) be a separate section.

Christopher Bowman expressed concern that the provision in the legislation regarding aggregate contribution limits with respect to candidate-controlled committees was too restrictive. Mr. Bowman noted that under this provision, he would be able to contribute to only one candidate for each office. Mr. Bowman recommended that the aggregate contribution limits be revised to allow contributors to contribute to at least two candidates for each office.

Robert Stern, Director of the Center for Governmental Studies, recommended that the aggregate contribution limits for contributions to candidate-controlled committees be $500 multiplied by the number of vacant seats for the general election, and an additional $250 multiplied by the number of vacant seats for the run off election. Mr. Stern recommended that for non-candidate committees, the aggregate contribution limit be a fixed amount, such as, $2,000. Mr. Stern also recommended that the language "calendar year" be deleted from the legislation.

Charles Marsteller, Common Cause, recommended that the Commission adopt parallel models in determining aggregate contribution limits for candidate-controlled and non-candidate committees. Mr. Marsteller recommended that for candidate-controlled committees, the aggregate limit be set at $500 multiplied by the number of vacant seats

for the general election, and $250 multiplied by the number of vacant seats for the run off election. Mr. Marsteller further stated that the aggregate limit for non-candidate committees should be the same as the limit for candidate-controlled committees.

Joan Mandle, Common Cause, endorsed Mr. Stern's proposal.

JR Manual expressed support for a fixed limit for non-candidate committees.

Commissioner Robert D. Dockendorff expressed support for Mr. Marsteller's recommendation.

Commissioner Paul Melbostad noted that independent spending undermines the limits placed on contributions to candidate-controlled committees. Commissioner Melbostad explained that the intent of the legislation is to address the shortcomings of prior contribution limits, not to fuel the undermining of limits placed on contributions to candidate-controlled committees. Ms. Vida recommended that the aggregate contribution limits to non-candidate controlled committees be fixed at $5,000. Commissioner Grant suggested that the limits be fixed at $3,000.

Commissioner Dockendorff expressed his concern regarding a fixed contribution limit for non-candidate controlled committees. He noted that during an election in which there are many contested offices, the amount of money that could be spent on each race would be less.

**Motion 00-6-26-43 (Melbostad/Norris) Moved, seconded and passed: That the Commission amend the legislation so that aggregate contribution limits be set as follows: a) for candidate-controlled committees, $500 multiplied by the number of offices for the general election and $250 multiplied by the number of offices for the run off election, per election cycle; and b) for non-candidate committees, a $3,000 limit per calendar year.**

The Commission then agreed on draft language for a process by which the legislation could be amended by the Ethics Commission and the Board of Supervisors, under certain conditions.

**Motion 00-6-26-44 (Melbostad/Dockendorff) Moved, seconded and passed: That the Commission adopt the provisions of the draft legislation that authorize the Ethics Commission and the Board of Supervisors to amend the Ordinance if specified conditions are met.**

Commissioner Dockendorff recommended that the provision limiting loans of personal funds by a candidate to his/her own campaign apply to all candidates, not just those who accept public financing. Ms. Vida noted that while some candidates have loaned their campaigns money, there is no evidence that elected candidates have abused this practice by raising contributions after assuming office to repay themselves for the loans.

Mr. Stern recommended that the current limit on loans of $10,000 be changed to $25,000. Mr. Stern also recommended that this limit represent the amount of personal loans that a candidate may have outstanding at any time.

Commissioner Melbostad recommended that non-participating candidates limit their loans to $25,000 and participating-candidates limit their loans to $10,000. Commissioners Grant and Dockendorff proposed that equal loan restrictions be applied to all candidates.

**Motion 00-6-26-45 (Dockendorff/Norris) Moved, seconded and passed: That the Commission amend the legislation to require all candidates to limit loans to their campaigns of $15,000 outstanding at any time.**

It was noted that the above restriction does not restrict candidates from contributing their own money to finance their campaigns.

Fred Ridel, Common Cause, noted that the civil enforcement provision in the legislation regarding the private right of action applies only to public financing. Mr. Ridel recommended that the legislation be amended so that the enforcement provision would compel compliance to all provisions of the ordinance and all civil actions alleging violations of the ordinance.

**Motion 00-6-26-46 (Melbostad/Dockendorff)** Moved, seconded and passed: That the Commission amend the legislation so that the private right of action provision applies to all provisions, not just the public financing provisions.

A discussion ensued on retention of campaign statements.

**Motion 00-6-26-47 (Norris/Dockendorff)** Moved, seconded and passed: That the Commission amend the legislation so that: a) the provision in Sec. 1.112 regarding the document retention period be reinstated; and b) the documents be retained for at least eight years, the equivalent of two election cycles.

Ms. Mayo recommended that the Commission adopt the State law definition of a committee.

**Motion 00-6-26-48 (Melbostad/Dockendorff)** Moved, seconded and passed: That the Commission amend the legislation to replace the definition of "committee" with the definition provided by State law.

Deputy City Attorney Claire Sylvia advised that if the Commission had intended to make the private right of action parallel State law, it should change the 30-day period for the civil enforcement authority to act to 120 days. Mr. Stern recommended changing this period to 60 days.

**Motion 00-6-26-49 (Melbostad/Dockendorff)** Moved, seconded and passed: That the Commission amend the legislation so that the 30-day period for the civil enforcement authority to act be changed to a 60-day period.

With respect to notification requirements regarding spending levels, Ms. Mayo stated that she did not see a need to impose these notification requirements in elections where there are no participating candidates and committees. Ms. Mayo stated that if no candidate in a race for a particular office accepts the voluntary expenditure ceiling, then there is no need for notification requirements.

Ms. Vida stated that candidates who are contemplating accepting the voluntary limits would find it helpful to be notified of the level of spending of their opponents. She said that candidates have until the date of filing nomination papers (in early August) to decide whether to accept or decline the limits. She also said that the Voter Information Handbook provides notice to voters as to which candidates have accepted the limits.

**Motion 00-6-26-50 (Melbostad/Grant)** Moved, seconded and passed: That the Commission amend the legislation to eliminate the notification requirement with respect to spending levels when no candidate for a particular elective office has accepted the spending limit.

**Motion 00-6-26-51 (Melbostad/Dockendorff)** Moved, seconded and passed: That the Commission place the proposed measure on the ballot as amended.

**IV. Public comment on matters appearing or not appearing on the agenda that are within the jurisdiction of the Ethics Commission.**

There was no further public comment.

V. **Adjournment**

The meeting was adjourned at 6:45 p.m.

Respectfully submitted,

_____

Shaista Shaikh
Campaign Finance Auditor



CITY AND COUNTY OF SAN FRANCISCO

LOUISE H. RENNE
City Attorney

OFFICE OF THE CITY ATTORNEY

JULIA A. MOLL
Deputy City Attorney

DIRECT DIAL:  (415) 554-4705
E-MAIL:  JULIA_moll@ci.sf.ca.us

## MEMORANDUM

TO:        ISABELLA GRANT
           ROBERT DOCKENDORFF
           CAROL KINGSLEY
           PAUL MELBOSTAD
           HENRI NORRIS
           Members, Ethics Commission

           GINNY VIDA
           Executive Director, Ethics Commission

FROM:      JULIE MOLL
           Deputy City Attorney

DATE:      June 21, 2000

RE:        Revisions to the Public Financing Proposal

At the Ethics Commission meeting on June 12, 2000, the Commission voted to modify its proposed ballot measure. Attached is a revised draft of the measure, which would:

1) provide for pro rata distribution of funds if insufficient funds are appropriated for the public financing program (Sections 1.144(e) and 1.154(b), pp. 23, 28.);

2) reduce the limit on contributions to each committee from $2,500 to $500 (Section 1.114(c), pp. 8-9);

3) change the overall limit on contributions to candidates and committees from $12,500 to $500 multiplied by the number of City elective offices to be voted on during the calendar year. For purposes of this limit, the Board of Supervisors shall be deemed to consist of eleven separate City elective offices (Section 1.114(d), pp. 8-9);

4) require that committee treasurers obtain information about the contributor, including the contributor's full name, address, occupation, and employer, prior to depositing the contribution (Section 1.114(e), p. 9);

5) delete the document retention periods specified in Section 1.112;

6) substitute the word "appropriation" for "cost" in Section 1.138(d) (p.19); and

7) authorize the Board of Supervisors to amend the CFRO if:

    (a)  The amendments further the purposes of the ordinance;

CITY HALL · 1 DR. CARLTON B. GOODLETT PLACE, FLOOR 2 · SAN FRANCISCO, CALIFORNIA 94102-0917
RECEPTION:  (415) 554-4700 · FACSIMILE:  (415) 554-4745

n:\govern\jmoll\ethics\commess\document\ordinanc\cfro2000\voterdg3.doc

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

### Memorandum

| | |
|---|---|
| TO: | Members, |
| | San Francisco Ethics Commission |
| DATE: | June 21, 2000 |
| PAGE: | 2 |
| RE: | Revisions to the Public Financing Proposal |

    (b)  the Ethics Commission approves the proposed amendments in advance by at least a four-fifths vote of all its members;

    (c)  the proposed amendments are available for public review at least 30 days before the amendments are considered by the Board of Supervisors or any committee of the Board of Supervisors; and

    (d)  the Board of Supervisors approves the proposed amendments by at least a two-thirds vote of all its members (Section 1.112, p. 7).

      As indicated above, the previous draft did not provide for pro rata distribution of funds. If the City appropriated insufficient funds to the Election Campaign Fund ("the Fund"), the public financing program would not operate. The previous draft specified that, *no later than June 1* of an election year, the Ethics Commission must determine whether there is sufficient money in the Fund. This early deadline was established so candidates would know *in advance of the application deadline* whether the public financing program would be operational. The revised draft states that if the amount in the Fund is insufficient, the Commission shall distribute the money in the Fund on a pro rata basis to all candidates who are certified as eligible to receive public funds. The revised draft would require the Ethics Commission to determine, *no later than 15 days after the deadline for filing nomination papers*, whether money in the Fund is sufficient. This later deadline is intended to give the Ethics Commission the opportunity to consider, when determining whether the appropriated funds are sufficient, the number of candidates who actually apply and qualify for public funds.

      In addition to the changes enumerated above, the Commission asked the staff to consider language submitted by Bob Stern concerning regulation of issue advocacy (a copy of which is attached), and possible expansion of the proposed private right of action. These issues will be addressed separately by the Commission staff, and are not included in this draft.

      We look forward to discussing this with you, and making any additional changes you deem appropriate.

FILE NO. _____                    ORDINANCE NO. _____

1    [The Fair Elections Ordinance]

2    AMENDING THE SAN FRANCISCO CAMPAIGN AND GOVERNMENTAL CONDUCT CODE,

3    ARTICLE 1, CHAPTER 1, TO ESTABLISH NEW CONTRIBUTION LIMITS AND PROVIDE

4    PUBLIC FINANCING FOR SUPERVISORIAL ELECTION CAMPAIGNS.

5

6              Note:   Additions are underlined.  Deletions are in ~~strikethrough~~ text.

7         Be it ordained by the People of the City and County of San Francisco:

8

9         Section 1.  The San Francisco Campaign and Governmental Conduct Code is hereby

10    amended by amending Article 1, Chapter 1 to read as follows:

11

12                        CHAPTER I:  CAMPAIGN FINANCE

13

14    SEC. 1.100.  PURPOSE AND INTENT.  (a)  Huge sums of moneys often are

15    necessary to finance American election campaigns.  Inherent to the high cost of election

16    campaigning is the problem of improper influence, real or potential, exercised by campaign

17    contributors over elected officials.  In addition, this fundraising distracts public officials seeking

18    reelection from focusing upon important public matters, encourages contributions which may

19    have a corrupting influence, and gives incumbents an unfair fundraising advantage over

20    potential challengers.  These developments undermine the integrity of the governmental

21    process, the competitiveness of campaigns and public confidence in local officials.

22         (b)     It is the purpose and intent of the People ~~Board of Supervisors~~ of the City and

23    County of San Francisco in enacting this Chapter to (1) place realistic and enforceable limits

24    on the amount individuals may contribute to political campaigns in municipal elections and to

25    provide full and fair enforcement of all the provisions in this Chapter; (2) ensure that all

1   individuals and interest groups in our city have a fair opportunity to participate in elective and

2   governmental processes; (3) create an incentive to limit overall expenditures in campaigns,

3   thereby reducing the pressure on candidates to raise large campaign war chests for defensive

4   purposes beyond the amount necessary to communicate reasonably with voters; (4) reduce

5   the advantage of incumbents and thus encourage competition for elective office; (5) allow

6   candidates and officeholders to spend a smaller proportion of their time on fundraising and a

7   greater proportion of their time dealing with issues of importance to their constituents'

8   community; (6) ensure that serious candidates are able to raise enough money to

9   communicate their views and positions adequately to the public, thereby promoting public

10  discussion of the important issues involved in political campaigns; (7) limit contributions to

11  candidates and committees, including committees that make independent expenditures, to

12  eliminate or reduce the appearance or reality that large contributors may exert undue

13  influence over elected officials; and (8) help restore public trust in governmental and electoral

14  institutions.

15      (c)    This Chapter is enacted in accordance with the terms of Sections 5 and 7 of

16  Article XI of the Constitution of the State of California and Section 1.101 of the Charter of the

17  City and County of San Francisco.

18

19      **SEC. 1.102. CITATION.** This Chapter may be cited as the San Francisco Campaign

20  Finance Reform Ordinance.

21

22      **SEC. 1.104. DEFINITIONS.** Whenever in this Chapter the following words or phrases

23  are used, they shall mean:

24      (a)    "Candidate" shall mean any individual listed on the ballot for election to any City

25  and County elective office or who otherwise has taken affirmative action to seek nomination or

1    election to such office. <u>The term "candidate" shall also mean the candidate's campaign</u>

2    <u>committee.</u>

3        (b)    "Charitable organization" shall mean an entity exempt from taxation pursuant to

4    Title 26, Section 501 of the United State Code.

5        <u>(c)    "City elective office" shall mean the offices of Mayor, Member of the Board of</u>

6    <u>Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor, Public Defender,</u>

7    <u>Member of the Board of Education of the San Francisco Unified School District and Member</u>

8    <u>of the Governing Board of the San Francisco Community College District.</u>

9        <u>(d)</u> <s>(c)</s> "Committee" shall mean any person acting, or any combination of two or more

10    persons acting jointly, in behalf of or in opposition to a candidate or to the qualification for the

11    ballot or adoption of one or more measures.

12        <u>(e)</u> <s>(d)</s> "Contribution" shall be defined as set forth in Government Code of the State of

13    California (commencing at Section 81000); provided, however, that "contribution" shall include

14    loans of any kind or nature.

15        <u>(f)</u> <s>(e)</s> "Election" shall mean any primary, general or runoff municipal election held in

16    the City and County of San Francisco for City elective office. With respect to the offices of

17    Public Defender and Assessor, primary and general elections are separate elections for

18    purposes of this ordinance. The primary election period for these offices shall extend from

19    January 1 of the first year of an election cycle up to and including the date of the primary

20    election, and the general election period for these offices shall extend from the day following

21    the primary election up to and including December 31 of the fourth year of the election cycle.

22    With respect to the offices of Mayor, City Attorney, District Attorney, Sheriff, Treasurer and

23    Supervisor, general and runoff elections are separate elections for the purposes of this

24    ordinance. The general election period shall extend from January 1 of the first year of an

25    election cycle up to and including the date of the general election, and the runoff election

ETHICS COMMISSION

1    period shall extend from the date of the general election up to and including December 31 of

2    the fourth year of the election cycle.

3        (g)    "Election cycle" shall mean a four-year period preceding a term of office as

4    defined by the San Francisco Charter, beginning on January 1, and ending on December 31

5    of the fourth year thereafter.

6        (h)  (f)        "Enforcement authority" shall mean the District Attorney of the City and

7    County of San Francisco for criminal enforcement and the City Attorney for civil enforcement.

8    Nothing in this Chapter shall be construed as limiting the authority of any law enforcement

9    agency or prosecuting attorney to enforce the provisions of this Chapter under any

10   circumstances where such law enforcement agency or prosecuting attorney otherwise has

11   lawful authority to do so.

12       (i)    "Ethics Commission" shall mean the San Francisco Ethics Commission.

13       (j)    "Executive Director" shall mean the Executive Director of the Ethics

14   Commission, or the Executive Director's designee.

15       (k)    "Matching contribution" shall mean a contribution, other than a qualifying

16   contribution, that is made by an individual who is a resident of San Francisco and that

17   complies with all requirements of this Chapter.

18       (l)  (g)  "Measure" shall mean any City referendum, recall or ballot proposition, whether

19   or not it qualifies for the ballot.  any City and County Charter amendment or other election,

20   whether by initiative, referendum or recall procedure or otherwise, or circulated for purposes

21   of submission to a popular vote at any election, whether or not the proposition qualifies for the

22   ballot.

23       (m)  (h)  "Person" shall mean any individual, partnership, corporation, association, firm,

24   committee, club or other organization or group of persons, however organized.

25       (i)    "Controlled Committee" shall mean a controlled committee, as defined in

1    ~~California Government Code Section 82106, of an elected City and County officer or~~

2    ~~candidate for such office, that is primarily formed or exists to support or oppose one or more~~

3    ~~proposed City and County charter amendments, ordinances, bond measures, resolutions,~~

4    ~~referendums or declarations of policy that have qualified for submission to the electorate, or~~

5    ~~regarding which a notice of intention to circulate a petition has been filed with the Registrar of~~

6    ~~Voters, or regarding which a motion has been introduced at the Board of Supervisors to have~~

7    ~~such a proposed measure submitted to the voters.~~

8        ~~(j)    "City elective office" shall include and be limited to the offices of Mayor, Member~~

9    ~~of the Board of Supervisors, City Attorney, District Attorney, Treasurer, Sheriff, Assessor,~~

10    ~~Public Defender, Member of the Board of Education of the San Francisco Unified School~~

11    ~~District and Member of the Governing Board of the San Francisco Community College Dist. of.~~

12        ~~(k)    "Election cycle" shall mean a four-year period preceding a term of office as~~

13    ~~defined by the San Francisco Charter, beginning on January 1, and ending on December 31~~

14    ~~of the fourth year thereafter.~~

15        (n) ~~(l)~~ "Qualified campaign expenditure" for candidates <u>shall mean</u> ~~includes all of the~~

16    ~~following:~~

17        (1)    <u>Any expenditure made by a candidate, or a committee controlled by the</u>

18    <u>candidate, for the purpose of influencing or attempting to influence the actions of the voters for</u>

19    <u>the election of the candidate to City elective office.</u>  ~~Any expenditure made by a candidate,~~

20    ~~officeholder or committee controlled by the candidate or officeholder, for the purpose of~~

21    ~~influencing or attempting to influence the actions of the voters for or against the election of~~

22    ~~any candidate for City elective office;~~

23        (2)    A nonmonetary contribution provided to the candidate, ~~officeholder~~ or committee

24    controlled by the candidate ~~or officeholder;~~

25        (3)    <u>The total cost actually paid or incurred by the candidate or controlled committee</u>

ETHICS COMMISSION

1    of the candidate for a slate mailing or other campaign literature produced or authorized by

2    more than one candidate.  ~~That portion of the total cost of a slate mailing or mailing of other~~

3    ~~campaign literature produced or authorized by more than one candidate which is the cost~~

4    ~~actually paid or incurred by the committee or controlled committee of the candidate~~.

5        (4)   "Qualified campaign expenditure" shall not include expenses incurred in

6    connection with an administrative or judicial proceeding, payments for administrative, civil or

7    criminal fines, including late filing fines, or for inaugural activities or officeholder expenses.

8        (o)   "Qualifying contribution" shall mean a contribution of not less than $10 and not

9    more than $100 that is made by written instrument by an individual who is a resident of San

10    Francisco and that complies with all requirements of this Chapter.

11        (p)   "Surplus funds" shall mean unexpended funds held by a candidate after the date

12    on which the candidate was either elected or not elected to City elective office.

13

14    **SEC. 1.106. ADOPTION OF GENERAL LAW — EXCEPTIONS.**  Except as otherwise

15    provided in this Chapter, the provisions of Title 9 of Government Code of the State of

16    California (commencing at Section 81000), including the penal provisions thereof, shall be

17    applicable to any election held in the City and County of San Francisco.

18

19    **SEC. 1.108. CAMPAIGN CONTRIBUTION TRUST ACCOUNT — ESTABLISHMENT.**

20    Each committee ~~campaign~~ treasurer shall establish a campaign contribution trust account for

21    the candidate or committee at an office of a bank located in the City and County of San

22    Francisco, the account number and branch identification of which shall be filed with the Ethics

23    Commission within 10 days of the establishment thereof. All of the expenditures by the

24    candidate or committee for the City elective office sought shall be made from that account.

25

1    SEC. 1.110. CAMPAIGN STATEMENTS — PUBLIC INSPECTION AND

2    COPYMAKING. Campaign statements are to be open for public inspection and reproduction

3    at the office of the Ethics Commission during regular business hours and from 10:00 a.m. to

4    5:00 p.m. on the Saturday preceding an election.

5

6    SEC. 1.112. <u>AMENDMENT OR REPEAL OF CHAPTER. The voters may amend or</u>

7    <u>repeal this Chapter. The Board of Supervisors may amend this Chapter if all of the</u>

8    <u>following conditions are met:</u>

9        <u>(a)    The amendment furthers the purposes of this Chapter;</u>

10       <u>(b)    the Ethics Commission approves the proposed amendment in advance by</u>

11   <u>at least a four-fifths vote of all its members;</u>

12       <u>(c)    the proposed amendment is available for public review at least 30 days</u>

13   <u>before the amendment is considered by the Board of Supervisors or any committee of</u>

14   <u>the Board of Supervisors; and</u>

15       <u>(d)    the Board of Supervisors approves the proposed amendment by at least a</u>

16   <u>two-thirds vote of all its members.</u>

17   ~~CAMPAIGN STATEMENTS — RETENTION. Every campaign statement required to be filed~~

18   ~~in accordance with Section 1.106 shall be preserved by the Ethics Commission for at least~~

19   ~~four years from the date upon which it was required to be filed under the terms of this~~

20   ~~Chapter.~~

21

22   SEC. 1.114. <u>CONTRIBUTION LIMITS.</u> ~~CAMPAIGN CONTRIBUTIONS —~~

23   ~~LIMITATIONS. (a) No person other than a candidate shall make, and no campaign treasurer~~

24   ~~shall solicit or accept, any contribution which will cause the total amount contributed by such~~

25   ~~person with respect to a single election in support of or opposition to such candidate, including~~

1    ~~contributions to political committees supporting or opposing such candidate, to exceed $150.~~

2    (a) ~~(b)~~ LIMITS ON CONTRIBUTIONS TO CANDIDATES – PRIMARY AND GENERAL

3    ELECTIONS. ~~For candidates who adopt the expenditure ceilings as defined in Section 1.128~~

4    ~~of this Chapter, n~~ No person other than a candidate shall make, and no candidate ~~campaign~~

5    ~~treasurer~~ shall solicit or accept, any contribution which will cause the total amount contributed

6    by such person to ~~with respect to a single election in support of or opposition to~~ such

7    candidate, ~~including contributions to political committees supporting or opposing such~~

8    ~~candidate,~~ to exceed $500. With respect to the offices of Public Defender and Assessor, the

9    limit imposed by this subsection applies to the primary election only. With respect to all other

10   City elective offices, the limit imposed by this subsection applies to the general election only.

11   (b)    LIMITS ON CONTRIBUTIONS TO CANDIDATES – RUN-OFF ELECTIONS. No

12   person other than a candidate shall make, and no candidate shall solicit or accept, any

13   contribution which will cause the total amount contributed by such person to such candidate

14   for a run-off election to exceed $250. The amount a person may contribute to a candidate in

15   connection with a run-off election shall be controlled solely by the limits imposed by this

16   subsection without regard to the amount said person contributed to the candidate in the

17   general election. With respect to the offices of Public Defender and Assessor, the limit

18   imposed by this subsection applies to the general election only. With respect to all other City

19   elective offices, the limit imposed by this subsection applies to the run-off election only.

20   (c)    LIMITS ON CONTRIBUTIONS TO COMMITTEES. No person shall make, and

21   no committee treasurer shall solicit or accept, any contribution which will cause the total

22   amount contributed by such person to the committee to exceed $500 per calendar year. For

23   purposes of this subsection, "committee" shall mean any person acting, or any combination of

24   two or more persons acting jointly, in support of or in opposition to a candidate.

25   (d)    OVERALL LIMIT ON CONTRIBUTIONS TO CANDIDATES AND

1    COMMITTEES.  No person shall make any contribution which will cause the total

2    amount contributed by such person to all candidates and committees in a calendar

3    year to exceed $500 multiplied by the number of City elective offices to be voted on

4    during that calendar year.  For purposes of this subsection, "committee" shall mean any

5    person acting, or any combination of two or more persons acting jointly, in support of or in

6    opposition to a candidate.  For purposes of this subsection, the Board of Supervisors

7    shall be deemed to consist of eleven separate City elective offices.

8        (e)    CONTRIBUTOR INFORMATION REQUIRED.  If the cumulative amount of

9    contributions received from a contributor is $100 or more, the committee treasurer

10   shall not deposit the contribution unless the committee treasurer has the following

11   information:  the contributor's full name; the contributor's address; the contributor's

12   occupation; and the name of the contributor's employer or, if the contributor is self-

13   employed, the name of the contributor's business.

14       (f) (c)  FORFEITURE OF EXCESSIVE CONTRIBUTIONS.  Each committee

15   campaign treasurer who receives a contribution which exceeds the limits imposed by this

16   Section or which does not comply with the requirements of this Section shall pay promptly,

17   from available campaign funds, if any, the amount received in excess of the amount permitted

18   by this Section to the City Treasurer for deposit in the General Fund of the City and County.

19       (g) (d)  RETURN OF CONTRIBUTIONS.  A contribution shall not be considered to be

20   received if it is not negotiated, deposited, or utilized, and in addition it is returned to the donor

21   within 72 hours of receipt.  In the case of a late contribution as defined in Government Code

22   Section 82036, it shall not be deemed received if it is returned to the contributor within 48

23   hours of receipt.

24       (h) (e)  FAIRNESS DOCTRINE.  This Section shall not apply to any in-kind

25   contribution of television or radio airtime to any candidate or committee granted to said

ETHICS COMMISSION

n \gov em f\ymof\ethica\commisai\document\ordnanc\cfro2000\woterord.doc

1    candidate or committee pursuant to the "Fairness Doctrine" articulated in Cullman

2    Broadcasting, 40 FCC 576 (1963).

3

4    SEC. 1.116.  LIMITS ON CONTRIBUTIONS TO CONTROLLED COMMITTEES.

5        (a)     No person other than a candidate or elected City and County officer shall make,

6    and no controlled committee treasurer shall solicit or accept, any contribution which will cause

7    the total amount contributed by such person to a controlled committee of the candidate or

8    elected City and County officer to exceed $500.

9        (b)     If any person is found guilty of violating the terms of this Section, each controlled

10   committee treasurer who received part or all of the contribution or contributions which

11   constitute the violation shall pay promptly, from available campaign funds, if any, the amount

12   received from such person in excess of the amount permitted by this Section to the City and

13   County Treasurer for deposit in the General Fund of the City and County.

14       (c)     This Section shall not apply to any in-kind contribution of radio or television

15   airtime to any controlled committee granted to said candidate or committee pursuant to the

16   "Fairness Doctrine."

17

18   SEC. 1.118.  RUN-OFF ELECTIONS.  MUNICIPAL RUN-OFF ELECTION.  All

19   provisions of this Chapter, unless specified otherwise herein, shall be applicable in any

20   municipal run-off for any City and County office.  In addition, the following provisions shall be

21   applicable in any such municipal run-off election:

22       (a)     No person other than a candidate shall make, and no campaign treasurer shall

23   solicit or accept, any contribution which will cause the total amount contributed by such

24   person in the municipal run-off election in support of or opposition to such candidate, including

25   contributions to political committee supporting or opposing such candidate, to exceed $100.

1    ~~(b)  For candidates who adopt the expenditure ceilings as defined in Section 1.128 of~~

2    ~~this Chapter, no person other than a candidate shall make, and no campaign treasurer shall~~

3    ~~solicit or accept, any contribution which will cause the total amount contributed by such~~

4    ~~person in the municipal run-off election in support of or opposition to such candidate, including~~

5    ~~contributions to political committee supporting or opposing such candidate, to exceed $250.~~

6    ~~(c)    Each campaign treasurer who receives a contribution which exceeds the limit~~

7    ~~imposed by this Section shall pay promptly, from available campaign funds, if any, the amount~~

8    ~~received in excess of the amount permitted by this Section to the City Treasurer for deposit in~~

9    ~~the General Fund of the City and County.~~

10    <u>(a)</u> ~~(d)~~  <u>TIME LIMITATION ON ACCEPTANCE OF CONTRIBUTIONS.</u>  No person

11    shall make, and no campaign treasurer shall solicit or accept, any contribution in connection

12    with a run-off election for a City elective office until the day following the date of the general

13    election for that office.

14    ~~(e)  The amount a person may contribute in support of or opposition to a candidate in~~

15    ~~connection with a run-off election shall be controlled solely by the limits imposed by this~~

16    ~~Section without regard to the amount said person contributed in support of or opposition to the~~

17    ~~candidate in the general election.~~

18    <u>(b)</u> ~~(f)~~  <u>USE OF UNEXPENDED FUNDS.</u>  Any candidate who qualifies for a run-off

19    election may utilize unexpended campaign funds from the general election campaign for the

20    run-off election~~, provided that the applicable expenditure ceilings shall continue to apply.~~

21    ~~(g)    A contribution shall not be considered to be received if it is not negotiated,~~

22    ~~deposited, or utilized, and in addition it is returned to the donor within 72 hours of receipt.  In~~

23    ~~the case of a late contribution as defined in Government Code Section 82036, it shall not be~~

24    ~~deemed received if it is returned to the contributor within 48 hours of receipt.~~

25

1    **SEC. 1.120.** <u>CONTRIBUTION LIMITS -</u> **POST-ELECTION LEGAL PROCEEDINGS.**

2    All provisions of this Chapter, unless specified otherwise herein, shall be applicable in any

3    post-election recounts, election contests or other proceedings held pursuant to law. In

4    addition, the following provisions shall be applicable in any such post-election legal

5    proceedings:

6        (a)    No person other than a candidate shall make, and no campaign treasurer shall

7    solicit or accept, any contribution which will cause the total amount contributed by such

8    person in post-election legal proceedings <u>to any candidate</u> ~~in support of or opposition to~~

9    ~~candidates, including contributions to political committees supporting or opposing such~~

10   ~~candidate,~~ to exceed, in addition to the contribution limit contained in Sections 1.114 and

11   1.118, $100.

12       (b)    Notwithstanding any other provision of this Chapter to the contrary, for the

13   purposes of conducting post-election recounts, election contests or other proceedings held

14   pursuant to law, the delivery of in-kind legal services by lawyers in support of or in opposition

15   to candidates, including in-kind contributions to political committees supporting or opposing

16   candidates, shall not be subject to any contribution limitations set forth in this Chapter.

17       (c)    If any person is found guilty of violating the terms of this Section, each campaign

18   treasurer who received part or all of the contribution or contributions which constitute the

19   violation shall pay promptly, from available campaign funds, if any, the amount received from

20   such person in excess of the amount permitted by this Section to the City and County

21   Treasurer for deposit in the General Fund of the City and County.

22

23   **SEC. 1.122. SOLICITATION OR ACCEPTANCE OF CAMPAIGN CONTRIBUTIONS**

24   **— LIMITATIONS.** No intended candidate for any public office of the City and County, and no

25   committee acting on behalf of a candidate, shall solicit or accept, or cause to be solicited or

1    accepted, any contribution unless and until said candidate shall have filed a declaration of

2    intention to become a candidate for a specific City and County office with the Department of

3    Elections on a form to be prescribed by the Director of Elections; provided, however, that in

4    any election in which members of the Board of Supervisors are elected by votes cast in a

5    district, the office of a member of the Board of Supervisors shall be deemed to be a specific

6    office of the City and County.

7        No person shall file a declaration of intention to become a candidate for more than one

8    elective office of said City and County. For the purposes of this Section a committee acting

9    on behalf of a candidate need not be controlled by or acting under the authorization of the

10   candidate.

11       Except as provided below, any contributions solicited or accepted under this Section

12   shall be expended only on behalf of the candidacy for the office specified in said declaration of

13   intention to become a candidate. Contributions solicited or accepted under this Section for

14   one individual shall not be expended for the candidacy of any other individual or in support of

15   or opposition to any measure. If an individual ceases to be a candidate or fails to qualify

16   under the provisions of the Charter for an office for which contributions have been solicited or

17   accepted, then all unexpended contributions shall be returned on a pro rata basis to those

18   persons who have made said contributions or donated to the General Fund of the City and

19   County of San Francisco.

20       Unexpended contributions held by a candidate or committee after the date of the

21   election in which said candidate or measure appeared on the ballot may be returned on a pro

22   rata basis to those persons who have made said contributions, donated to a charitable

23   organization, donated to the General Fund of the City and County of San Francisco, or as

24   contributions to a candidate or a committee acting on behalf of a candidate, transferred to any

25   legally constituted committee established by or on behalf of the candidate, pursuant to the

ETHICS COMMISSION

1   provisions of Government Code of the State of California (commencing at Section 81000).

2

3   **SEC. 1.124.  PERSONS PROHIBITED FROM MAKING CONTRIBUTIONS IN THE**

4   **NAME OF ANOTHER.**  (a)  No contribution of $100 or more other than an in-kind contribution

5   shall be made unless by written instrument containing the name of the donor and the name of

6   the payee.

7   (b)   No contribution shall be made, directly or indirectly, by any person in a name

8   other than the name by which such person is identified for legal purposes.

9   (c)   Any candidate who receives a contribution made in violation of this Section shall

10  pay promptly, from available campaign funds, the amount of the contribution to the City

11  Treasurer for deposit in the General Fund of the City and County.

12

13  **SEC. 1.126.  <u>CONTRIBUTION LIMITS -</u> CONTRACTORS DOING BUSINESS WITH**

14  **THE CITY** ~~PROHIBITED FROM MAKING CONTRIBUTIONS~~**.**  No person who contracts with

15  the City and County of San Francisco, for the rendition of personal services, for the furnishing

16  of any material, supplies or equipment to the City, or for selling <u>or leasing</u> any land or building

17  to <u>or from</u> the City, whenever such transaction would require approval by a City elective

18  officer, or the board on which that City elective officer serves, shall make any contribution to

19  such an officer, or candidate for such an office, or committee controlled by such officer or

20  candidate at any time between commencement of negotiations and either the completion of,

21  or the termination of, negotiations for such contract.

22

23  **SEC. 1.128.  EXPENDITURE CEILINGS.**  All candidates for City elective office who

24  adopt campaign expenditure ceilings as defined below ~~are permitted the higher contribution~~

25  ~~limits as defined in Sections 1.114(b) and 1.118(b).  Before accepting any contributions at the~~

ETHICS COMMISSION

1   ~~higher contribution limits, candidates who adopt voluntary expenditure ceilings~~ must ~~first~~ file a

2   statement with the Department of Elections indicating acceptance of the expenditure ceiling.

3   Said statement shall be filed no later than the deadline for filing nomination papers with the

4   Department of Elections, and once filed may not be withdrawn. This statement is a public

5   document.

6

7      **SEC. 1.130. AMOUNT OF EXPENDITURE CEILINGS.** (a)  In primary elections, any

8   candidate for Assessor or Public Defender who agrees to expenditure ceilings shall not make

9   total qualified campaign expenditures exceeding $175,000.  In general elections, any

10  candidate for Assessor or Public Defender who agrees to expenditure limits shall not make

11  total qualified campaign expenditures exceeding $100,000.

12      (b)    In general elections, any candidate for Mayor who agrees to expenditure ceilings

13  shall not make total qualified campaign expenditures exceeding $600,000.  In run-off

14  elections, any candidate for Mayor who agrees to expenditure limits shall not make total

15  qualified campaign expenditures exceeding $400,000.

16      (c)    In general elections, any candidate for City Attorney, District Attorney, Treasurer

17  or Sheriff who agrees to expenditure ceilings shall not make total qualified campaign

18  expenditures exceeding $175,000.  In run-off elections, any candidate for City Attorney,

19  District Attorney, Treasurer or Sheriff who agrees to expenditure limits shall not make total

20  qualified campaign expenditures exceeding $100,000.

21      (d)    In general elections, any candidate for the Board of Supervisors who agrees to

22  expenditure ceilings shall not make total qualified campaign expenditures exceeding $75,000.

23  In run-off elections, any candidate for the Board of Supervisors who agrees to expenditure

24  limits shall not make total qualified campaign expenditures exceeding $20,000.

25      (e)    Any candidate for the Board of Education of the San Francisco Unified School

ETHICS COMMISSION

1    District or the Governing Board of the San Francisco Community College District who agrees

2    to expenditure ceilings shall not make total qualified campaign expenditures exceeding

3    $75,000.

4         (f)    The Ethics Commission is authorized to adjust annually the expenditure ceilings

5    imposed by this Section to reflect the change in the California Consumer Price Index for that

6    year.

7

8    **SEC. 1.132. TIME PERIODS FOR EXPENDITURES.** (a)  For purposes of the

9    expenditure ceilings for the offices of Assessor and Public Defender, qualified campaign

10   expenditures made at any time on or before the date of the primary shall be considered

11   primary election expenditures, and qualified expenditures made after date of the primary

12   election shall be considered general election expenditures.  However, in the event that

13   payments are made but the goods or services are not used during the period purchased, the

14   payments shall be considered qualified campaign expenditures for the time period in which

15   they are used.  Payments for goods or services used during both time periods shall be

16   prorated.

17        (b)    For purposes of the expenditure ceilings for the offices of City Attorney, District

18   Attorney, Treasurer, Sheriff and Supervisor, qualified campaign expenditures made at any

19   time before the general election shall be considered general election expenditures, and

20   qualified expenditures made after the general election shall be considered run-off election

21   expenditures.  However, in the event that payments are made but the goods or services are

22   not used during the period purchased, the payments shall be considered qualified campaign

23   expenditures for the time period in which they are used.  Payments for goods or services used

24   during both time periods shall be prorated.

25

ETHICS COMMISSION

1    SEC. 1.134 EXPENDITURE CEILINGS LIFTED – OFFICES OTHER THAN

2    SUPERVISOR. (a) If a candidate declines to accept expenditure ceilings and receives

3    contributions or makes qualified campaign expenditures in excess of 100 50 percent of the

4    applicable expenditure ceiling, or if an independent expenditure committee or committees in

5    the aggregate spend in support of or in opposition to a candidate more than 25 percent of the

6    applicable expenditure ceiling, the applicable expenditure limit shall no longer be binding on

7    any candidate seeking election to the same office, and any candidate running for the same

8    office who accepted expenditure limits shall be permitted to continue to receive contributions

9    at the amount set for such candidates in Section 1.114(b) or 1.118(b).

10    (b)    Any candidate who declines to adopt the voluntary expenditure ceiling and who

11    receives contributions, makes expenditures or has funds in his campaign trust account that

12    exceed 100 50 percent of the applicable expenditure ceiling shall, within 24 hours of

13    exceeding 100 50 percent of the applicable expenditure ceiling, file a statement with the

14    Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and

15    any additional information required by the Ethics Commission. Within 24 hours after receiving

16    such notice, the Ethics Commission shall inform every other candidate for that office by

17    registered mail, return receipt requested, that the campaign ceiling has been lifted.

18    (c)    Any independent expenditure committee that spends in support of or in

19    opposition to a candidate more than 25 percent of the applicable expenditure ceiling shall,

20    within 24 hours of reaching this threshold, file a statement with the Ethics Commission, on

21    forms to be provided by the Ethics Commission, stating that fact and any additional

22    information required by the Ethics Commission. Thereafter, any such committee shall file a

23    supplemental statement with the Ethics Commission each time the independent expenditure

24    committee spends in support of or in opposition to such candidate an additional 5 five percent

25    of the applicable expenditure ceiling. The supplemental statements shall be filed within 24

n:\govern\t\mo\ethics\commiss\document\ordinanc\cfro2000\voterord.doc

1    hours of reaching these spending thresholds.

2

3    **SEC. 1.136. PUBLIC FINANCING OF ELECTION CAMPAIGNS.** Candidates for the

4    Board of Supervisors who are certified by the Ethics Commission as eligible to receive public

5    financing of their election campaigns, and who comply with the conditions and restrictions

6    specified in Section 1.140 of this Chapter, may receive public funds as provided in this

7    Chapter to defray the costs of their election campaigns.

8

9    **SEC. 1.138. ELECTION CAMPAIGN FUND; APPROPRIATION OF FUNDS.**

10    (a) ESTABLISHMENT OF ELECTION CAMPAIGN FUND. There is hereby established a

11    special fund of the City and County of San Francisco called the Election Campaign Fund. All

12    money deposited in the Fund is hereby appropriated for use as specified in this Chapter and

13    the implementing regulations.

14        (b)    APPROPRIATION TO ELECTION CAMPAIGN FUND. Each fiscal year the City

15    and County of San Francisco shall appropriate to the Election Campaign Fund an amount

16    sufficient to provide funding for election campaigns as authorized by this Chapter for all

17    candidates for the Board of Supervisors who may be eligible to receive such funds. The

18    Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount

19    required. If at any time the amount appropriated is insufficient to fund all eligible candidates,

20    the Ethics Commission shall notify the Mayor and Board of Supervisors, and the City and

21    County shall appropriate additional funds. The Ethics Commission shall assist the Mayor and

22    Board of Supervisors in estimating any additional funds required.

23        (c)    APPROPRIATION TO ETHICS COMMISSION. Each fiscal year the City and

24    County of San Francisco shall appropriate to the Ethics Commission an amount sufficient to

25    pay for the costs of administration of this Chapter. This appropriation shall be in addition to

ETHICS COMMISSION

n \govern1\jmoif.ethics\commissi\documenf\ordinanc\cfrc2000\voterord.doc

1    and separate from the regular annual appropriation made to the Ethics Commission.  The

2    Ethics Commission shall assist the Mayor and Board of Supervisors in estimating the amount

3    required.

4         (d)      LIMITATION ON EXPENDITURE OF FUNDS.  The annual **appropriation** to

5    this public financing program, including the cost of administration, shall not exceed $2.00 per

6    resident of the City and County of San Francisco.  At the request of the Ethics Commission,

7    the Controller shall estimate the number of residents of the City and County of San Francisco

8    for purposes of this subsection.

9

10    **SEC. 1.140.  ELIGIBILITY TO RECEIVE PUBLIC FINANCING.**

11         (a)      REQUIREMENTS.  To be eligible to receive public financing of campaign

12    expenses under this Chapter, a candidate must:

13         (1)      be seeking election to the Board of Supervisors and be eligible to hold the office

14    sought;

15         (2)      have received at least $7,500 in qualifying contributions from at least 75

16    contributors.  Candidates who are attempting to qualify for public financing are permitted to

17    solicit contributions up to the limits imposed by Section 1.114(a) of this Chapter, but only the

18    first $100 will be counted as a qualifying contribution;

19         (3)      be opposed by another candidate who has either established eligibility to receive

20    public financing, or received contributions or made expenditures which in the aggregate equal

21    or exceed $7,500;

22         (4)      agree to the following conditions:

23         (A)      the candidate bears the burden of proving that each contribution the candidate

24    relies upon to establish eligibility is a qualifying contribution;

25

ETHICS COMMISSION                                          Page 19
                                                          6/21/00

1      (B)   the candidate bears the burden of proving that expenditures made with public

2 funds provided under this Chapter comply with Section 1.148 of this Chapter;

3      (C)   the candidate shall limit loans and contributions of personal funds to the

4 candidate's campaign to a total of $10,000 per election,

5      (D)   the candidate shall not make qualified campaign expenditures which in the

6 aggregate exceed the expenditure limits specified in Section 1.130 of this Chapter, except as

7 provided in Section 1.146 of this Chapter; and

8      (E)   the candidate shall agree to participate in at least one debate with the

9 candidate's opponents.

10      (b) ADJUSTMENT OF EXPENDITURE LIMITS AND THRESHOLDS. Whenever the

11 Ethics Commission pursuant to Section 1.130(f) adjusts the voluntary expenditure ceilings to

12 reflect changes in the California Consumer Price Index, the Commission is authorized to

13 adjust the threshold limits in subsections (a)(2) and (a)(3) and (a)(4)(C) of this Section and

14 Section 1.152 to also reflect changes in the California Consumer Price Index.

15

16      **SEC. 1.142. PROCESS FOR ESTABLISHING ELIGIBILITY; CERTIFICATION BY**

17 **THE ETHICS COMMISSION.** (a) DECLARATION BY CANDIDATE. To be eligible to receive

18 public financing of campaign expenses under this Chapter, a candidate shall declare, under

19 penalty of perjury, that the candidate satisfies the requirements specified in Section 1.140.

20 Candidates shall submit the declaration and any supporting material required by the Ethics

21 Commission to the Ethics Commission on or after June 1 of the election year, but no later

22 than the deadline for filing nomination papers with the Director of Elections. Once the

23 declaration and supporting material are submitted, they may not be amended. The

24 declaration and supporting material may be withdrawn and refiled, provided that the refiling is

25 made no later than the deadline for filing nomination papers.

ETHICS COMMISSION

n:\govern1\moll\ethics\commiss\document\ordinanc\cfra2000\volerord.doc

1       (b)     DETERMINATION OF ELIGIBILITY.  The Executive Director of the Ethics

2    Commission shall review the candidate's declaration and supporting material to determine

3    whether the candidate is eligible to receive public funds under this Chapter.  The Executive

4    Director may audit the candidate's records, interview contributors and take whatever steps the

5    Executive Director deems necessary to determine eligibility.  At the request of the Executive

6    Director, the Controller shall assist in this review process.

7       (c)     DETERMINATION OF OPPOSITION.  To determine whether a candidate is

8    opposed as required under Section 1.140(a)(3) of this Chapter, the Executive Director shall

9    review the material filed pursuant to Section 1.152(a) of this Chapter, and may review any

10   other material.

11      (d)     CERTIFICATION.  If the Executive Director determines that a candidate has

12   satisfied the requirements of Section 1.140, the Executive Director shall notify the candidate

13   and certify to the Controller that the candidate is eligible to receive public financing under this

14   Chapter.  The Executive Director shall not certify that a candidate is eligible to receive public

15   financing if the candidate's declaration or supporting material is incomplete or otherwise

16   inadequate to establish eligibility.  The Executive Director shall determine whether to certify a

17   candidate no later than 30 days after the date the candidate submits his or her candidate

18   declaration and supporting material.

19      (e)    RESUBMISSION.  If the Executive Director declines to certify that a candidate is

20   eligible to receive public financing under this Chapter, the Executive Director shall notify the

21   candidate.  Notwithstanding Section 1.142(a) of this Chapter, the candidate may, within five

22   business days of the date of notification, resubmit the declaration and supporting material.  If

23   the candidate does not timely resubmit, the Executive Director's determination is final.

24      If, after viewing resubmitted material, the Executive Director declines to certify that a

25   candidate is eligible to receive public financing under this Chapter, the Executive Director

ETHICS COMMISSION

1   shall notify the candidate of this fact.  Additional resubmissions may be permitted in the

2   Executive Director's discretion.  If the candidate fails to resubmit in the time specified by the

3   Executive Director, or if no further resubmissions are permitted, the Executive Director's

4   determination is final.

5        (f)    RECONSIDERATION.  A candidate may request that the Executive Director

6   reconsider a final determination that the candidate is ineligible to receive public funds under

7   this Chapter.  The candidate must request reconsideration in writing within five days of the

8   date of notification of ineligibility.

9        (g)    APPEAL TO THE ETHICS COMMISSION.  If, after reconsideration, the

10  Executive Director declines to certify that a candidate is eligible to receive public financing

11  under this Chapter, the candidate may appeal the Executive Director's final determination to

12  the Ethics Commission.  The candidate must deliver the written appeal to the Ethics

13  Commission within five days of the date of notification of the Executive Director's

14  determination following reconsideration.

15

16  **SEC. 1.144. DISBURSEMENT OF PUBLIC FUNDS.** (a) PAYMENT BY

17  CONTROLLER.  Upon certifying that a candidate is eligible to receive public financing under

18  this Chapter, the Executive Director shall forward the certification to the Controller and the

19  Controller shall disburse payments to the candidate from the Election Campaign Fund in

20  accordance with the certification and this Section.

21        (b)    TIME OF PAYMENTS.  The Controller shall not make any payments under this

22  Chapter until the day following the deadline for filing nomination papers with the Director of

23  Elections.

24        (c)    PAYMENTS FOR GENERAL ELECTION EXPENSES.  Upon certification of

25

ETHICS COMMISSION

1  eligibility, and in accordance with subsection (b) of this Section, the candidate shall receive a

2  payment of $5,000 from the Election Campaign Fund.  Thereafter, for each of the first $5,000

3  dollars of matching contributions raised by the candidate the candidate shall receive four

4  dollars from the Election Campaign Fund.  Thereafter, for each additional dollar of matching

5  contributions raised by the candidate the candidate shall receive one dollar from the Election

6  Campaign Fund.  The maximum amount of public funds a candidate may receive to defray

7  general election expenses under this Chapter is $43,750.  The amount of public funds paid

8  under this Section shall not be affected by the lifting of expenditure limits under Section 1.146.

9      (d)    PAYMENTS FOR RUN-OFF ELECTION EXPENSES.  Each candidate who is

10  certified to receive public funds under this Chapter and who qualifies for a run-off election

11  shall receive a payment of $5,000 from the Election Campaign Fund.  Thereafter, for each

12  dollar of matching contributions raised by the candidate, the candidate shall receive four

13  dollars from the Election Campaign Fund.  The maximum amount of public funds such

14  candidates may receive to defray run-off election expenses under this Chapter is $17,000.

15  The amount of public funds paid under this Section shall not be affected by the lifting of

16  expenditure limits under Section 1.146.

17      **(e)    PRO RATION OF FUNDS.  Notwithstanding subsections (c) and (d) of this**

18  **Section, if the Ethics Commission makes a final determination, pursuant to Section**

19  **1.154(b) of this Chapter, that funds in the Election Campaign Fund are insufficient, the**

20  **Commission shall distribute the money in the Fund on a pro rata basis to all candidates**

21  **who are certified as eligible to receive public funds.**

22

23      (f)    DEPOSIT IN CAMPAIGN CONTRIBUTION TRUST ACCOUNT.  Candidates

24  must deposit all payments received from the Election Campaign Fund pursuant to this

25  Chapter in the candidate's Campaign Contribution Trust Account.

ETHICS COMMISSION

n:\gov em1\smoff\ethics\commiss\document\ordinance\cfrm2000\voterord.doc

1      (g)    TERMINATION OF PAYMENTS. The Controller shall terminate all payments to

2  a candidate who is otherwise eligible to receive public financing if the candidate:

3      (1)    withdraws or fails to qualify to have his or her name printed on the ballot for the

4  election for which the candidate applied for public financing;

5      (2)    fails to comply with the conditions specified in Section 1.140 of this Chapter; or

6      (3)    fails to comply with any of the reporting requirements imposed by this Chapter or

7  the Political Reform Act, California Government Code Section 81000, *et seq.*

8

9  **SEC. 1.146. EXPENDITURE CEILINGS LIFTED – CANDIDATES FOR**

10  **SUPERVISOR.**  (a)  TRIGGER PROVISIONS.

11      (1) Nonparticipating candidate. If a candidate who has not filed a declaration under

12  Section 1.142 of this Chapter, or who has received notice under Section 1.142 that the

13  candidate is ineligible to receive public funds, receives contributions or makes qualified

14  campaign expenditures in excess of 100 percent of the applicable expenditure ceiling, the

15  applicable expenditure ceiling shall no longer be binding on any candidate running in the

16  same supervisorial district.

17      (2) Independent Expenditures. If a committee or committees in the aggregate make

18  independent expenditures in support of or in opposition to a candidate in excess of 25 percent

19  of the applicable expenditure ceiling, the applicable expenditure ceiling shall no longer be

20  binding on any candidate running in the same supervisorial district as the candidate who was

21  the subject of the independent expenditures that exceeded the ceiling.

22      (b)    NOTIFICATION. Within 24 hours of receiving notice, pursuant to Section 1.152

23  of this Chapter, that either of the trigger provisions in subsection (a) of this Section have been

24  met, the Ethics Commission shall inform every candidate in the affected supervisorial district

25  by certified mail that the expenditure ceilings have been lifted.

1

2    **SEC. 1.148. RESTRICTIONS ON USE OF PUBLIC FUNDS; SURPLUS FUNDS.** (a)

3    USE FOR QUALIFIED CAMPAIGN EXPENDITURES ONLY.  Candidates who receive public

4    financing may use the public funds solely to pay for qualified campaign expenditures, as

5    defined by Section 1.104 of this Chapter, and to repay loans used to pay for qualified

6    campaign expenditures.  Candidates may not use public funds to pay for expenses incurred in

7    connection with an administrative or judicial proceeding.  Candidates may not use public

8    funds to pay administrative, civil or criminal fines, including late filing fines, or to pay for

9    inaugural activities or officeholder expenses.

10    (b)    PURCHASE OF EQUIPMENT.  Any equipment purchased by a candidate with

11    public funds provided under this Chapter that has a useful life beyond the election campaign

12    for which the funds were provided, and a fair market value exceeding $100, becomes City and

13    County property on the day following the date the candidate is elected or not elected to office.

14    (c)    WITHDRAWAL OR FAILURE TO QUALIFY.  Any candidate who receives public

15    financing but who withdraws or fails to qualify to have his or her name printed on the ballot in

16    the election for which the public funds were provided shall repay the Election Campaign Fund

17    the full sum received from the Fund.

18    (d)    SURPLUS FUNDS.  Any candidate who receives public financing and who has

19    surplus funds shall, no later than 30 days after the date the funds become surplus, deposit

20    those funds in the Election Campaign Fund.

21

22    **SEC. 1.150. AUDIT; REPAYMENT.** (a)  AUDIT.  The Ethics Commission shall audit

23    all candidates who receive public financing under this Chapter.  At the request of the

24    Executive Director, the Controller shall assist in conducting these audits.

25

1    (b)    REPAYMENT. If the Ethics Commission determines that any portion of the

2   payments made to a candidate from the Election Campaign Fund exceeded the aggregate

3   amount of payments to which the candidate was entitled under this Chapter, the Commission

4   shall notify the Controller and the candidate. The candidate shall pay to the Controller an

5   amount equal to the amount of excess payments. In addition, if the Commission determines

6   that any amount of any payment made to a candidate from the Election Campaign Fund was

7   used for something other than qualified campaign expenditures, the candidate shall pay to the

8   Controller an amount equal to the improper expenditure. All payments received by the

9   Controller under this Section shall be deposited in the Election Campaign Fund.

10

11    **SEC. 1.152. SUPPLEMENTAL REPORTING.** In addition to the campaign disclosure

12   requirements imposed by the California Political Reform Act and other provisions of this

13   Chapter, the following disclosure requirements shall apply:

14    (a)    REPORTING BY CANDIDATES WHO DO NOT RECEIVE PUBLIC FUNDS.

15    (1)    GENERAL. No later than the deadline for filing nomination papers with the

16   Director of Elections, each candidate who has not filed a declaration under Section 1.142(a) of

17   this Chapter or who has received notice under Section 1.142 that the candidate is ineligible to

18   receive public funds under this Chapter shall file a statement with the Ethics Commission

19   indicating whether the nonparticipating candidate has received contributions, made

20   expenditures or has funds in his or her campaign trust account that in the aggregate equal or

21   exceed $7,500. The statement shall also indicate whether the nonparticipating candidate

22   agrees to limit his or her qualified campaign expenditures to the expenditure ceilings as

23   provided in Section 1.128.

24    (2) AFTER DEADLINE. If the nonparticipating candidate first reaches or exceeds the

25   $7,500 threshold in subsection (a)(1) of this Section after the deadline for filing nomination

1    papers, or receives notice of ineligibility to receive public funds after that date, the

2    nonparticipating candidate shall, within 24 hours of reaching or exceeding the threshold or

3    receiving notice of ineligibility, file a statement indicating this fact with the Ethics Commission.

4         (3)  TRIGGER REPORTING.  If the nonparticipating candidate receives contributions,

5    makes expenditures or has funds in his or her campaign trust account that exceed 75 percent

6    of the applicable expenditure ceiling, the nonparticipating candidate shall, within 24 hours of

7    reaching that level, file a statement with the Ethics Commission, on forms to be provided by

8    the Ethics Commission, stating that fact and any additional information required by the Ethics

9    Commission.  Thereafter, the nonparticipating candidate shall file a supplemental statement

10   with the Ethics Commission within 24 hours of receiving contributions or making expenditures

11   or having funds in his trust account that equal or exceed 100 percent of the applicable

12   expenditure ceiling.

13        (b)     SUPPLEMENTAL REPORTING BY COMMITTEES. (1)  GENERAL.  Except

14   as provided in Section 81009.5(b) of the California Government Code, any committee that

15   makes contributions or independent expenditures totaling $500 or more in a calendar month

16   during the six months immediately preceding an election, to support or oppose a candidate for

17   City elective office at that election, shall disclose, prior to the date of the election, all

18   contributions and loans received and all expenditures made.  The Ethics Commission shall

19   prescribe the form, content and filing deadlines for these statements.  The Ethics Commission

20   may require that these statements be filed electronically.

21        (2)     TRIGGER REPORTING.  Except as provided in Section 81009.5(b) of the

22   California Government Code, any committee that makes independent expenditures in support

23   of or in opposition to a candidate that equal or exceed five percent of the applicable

24   expenditure ceiling shall, within 24 hours of reaching this threshold, file a statement with the

25   Ethics Commission, on forms to be provided by the Ethics Commission, stating that fact and

ETHICS COMMISSION                                              Page 27
                                                              6/21/00

1   any additional information required by the Ethics Commission.  Thereafter, any such

2   committee shall file a supplemental statement with the Ethics Commission each time the

3   committee makes independent expenditures in support of or in opposition to the candidate

4   which equal or exceed an additionalfive percent of the applicable expenditure ceiling.  The

5   supplemental statements shall be filed within 24 hours of reaching these spending thresholds.

6

7   **SEC. 1.154. INSUFFICIENT FUNDS IN ELECTION CAMPAIGN FUND.**

8   (a)    REPORT BY CONTROLLER.  At the request of the Ethics Commission, the

9   Controller shall provide a statement of the total amount of funds in the Election Campaign

10  Fund.

11  (b)    FINAL DETERMINATION.  No later than **15 days after the deadline for filing**

12  **nomination papers with the Department of Elections**, the Ethics Commission shall make a

13  final determination whether the amount in the Election Campaign Fund is sufficient to fund all

14  candidates for the Board of Supervisors who may be eligible to receive public financing for

15  their election campaigns under this Chapter.  If the **Commission's final determination is**

16  **that the amount in the Fund is insufficient, the Commission shall distribute the money**

17  **in the Fund on a pro rata basis to all candidates who are certified as eligible to receive**

18  **public funds.**

19

20  **SEC. 1.156. REPORT TO THE MAYOR AND BOARD OF SUPERVISORS.**

21  Following each election at which members of the Board of Supervisors are elected, the Ethics

22  Commission shall submit a report to the Mayor and Board of Supervisors.  The report shall

23  state the amount of public funds used to pay for election campaigns in that election and such

24  other information as the Ethics Commission deems useful, including the number of candidates

25  who received public funds; the number of nonparticipating candidates; the amount of qualified

ETHICS COMMISSION

1    campaign expenditures made by all candidates in that election; and the amount of

2    independent expenditures made in connection with the election.

3

4         SEC. 1.158. IMPLEMENTING REGULATIONS; FORMS. Pursuant to Charter Section

5    15.102, the Ethics Commission shall adopt regulations to implement this Chapter. The Ethics

6    Commission shall also specify the form and content of all forms and statements required to be

7    filed under this Chapter.

8

9         SEC. 1.160. NO LIMITATION OF CANDIDATE LIABILITY. Nothing in this Chapter

10   shall operate to limit the candidate's liability for, nor the candidate's ability to pay, any fines or

11   other payments imposed pursuant to administrative or judicial proceedings.

12

13        SEC. 1.136. 1.162. INDEPENDENT EXPENDITURES FOR MASS MAILINGS,

14   SLATE MAILINGS OR OTHER CAMPAIGN LITERATURE. Any person who makes

15   independent expenditures for a mass mailing, slate mailing or other campaign materials which

16   support or oppose any candidate for City elective office shall place the following statement on

17   the mailing or materials in typeface no smaller than 14 points:

18

19                          Notice to Voters

20                     (Required by City and County of

21                              San Francisco)

22              This mailing is not authorized or approved

23              by any candidate for City and County office

24                      or by any election official.

25                          It is paid for by

ETHICS COMMISSION

1          (name and committee identification

2                    number).

3              (address, city, state).

4          Total cost of this mailing is (amount)

5

6      SEC. ~~1.138~~ 1.164. DUTIES OF ETHICS COMMISSION. In addition to other duties

7  required under the Charter and the terms of this Chapter, the Ethics Commission shall:

8          (a)    Prepare and publish written instructions explaining the duties of persons,

9  candidates and committees under this Chapter.

10         (b)    Determine whether required statements and declarations have been filed with

11 the Ethics Commission, and, if so, whether they conform on their face with the requirements

12 of this Chapter.

13         (c)    Notify promptly all persons, candidates and committees known to the Ethics

14 Commission who have failed to file a statement in the form and at the time required by

15 Section 1.106 hereof.

16         (d)    Report apparent violations of this Chapter to the District Attorney.

17         (e)    Compile and maintain a current list of all statements or parts of statements filed

18 with the Ethics Commission pertaining to each candidate and each measure.

19         (f)    Cooperate with the District Attorney in the performance of the duties of the

20 District Attorney as they are related to this Chapter.

21         (g)    Enforce or cause to be enforced the provisions of this Chapter.

22         (h)    Prepare and publish adequate procedures to notify all persons, candidates and

23 committees in advance relative to filing dates and forms required by Section 1.106 hereof.

24

25     SEC. ~~1.140.~~ 1.166. DUTIES OF ENFORCEMENT AUTHORITY. In addition to the

1    other duties required of him or her under the provisions of this Chapter, the enforcement

2    authority for civil enforcement shall review such campaign statements filed with the Ethics

3    Commission as the Commission shall refer to him or her for legal compliance with the

4    provisions of this Chapter.

5

6    **SEC. ~~1.142.~~ 1.168.  ENFORCEMENT; ADVICE.  ~~DISTRICT ATTORNEY—~~**

7    ~~COMPLAINTS, LEGAL ACTION, INVESTIGATORY POWERS, CITY ATTORNEY ADVICE.~~

8         (a)    ENFORCEMENT – GENERAL PROVISIONS.  Any person who believes that a

9    violation of this Chapter has occurred may file a complaint with the Ethics Commission, City

10   Attorney or District Attorney.  The Ethics Commission shall investigate such complaints

11   pursuant to Charter Section C3.699-13 and its implementing regulations.  The City Attorney

12   and District Attorney shall investigate, and shall have such investigative powers as are

13   necessary for the performance of their duties under this Chapter.

14        (b)    ENFORCEMENT – PUBLIC FINANCING PROVISIONS.  The City Attorney, or

15   any voter, may bring a civil action to enjoin violations of or compel compliance with the public

16   financing provisions of this Chapter.  No civil action alleging a violation of the public financing

17   provisions of this Chapter shall be filed more than four years after the date the cause of action

18   accrued or the date that the facts constituting the cause of action were discovered by the civil

19   prosecutor, whichever is later.

20        No voter may commence an action under this subsection without first providing written

21   notice to the City Attorney of intent to commence an action. The notice shall include a

22   statement of the grounds for believing a cause of action exists.  The voter shall deliver the

23   notice to the City Attorney at least thirty days in advance of filing an action.  No voter may

24   commence an action under this subsection if the Ethics Commission has issued a finding of

25   probable cause that the defendant violated the public financing provisions of this Chapter, or if

ETHICS COMMISSION                                                    Page 31
                                                                    6/21/00

1    the City Attorney or District Attorney has commenced a civil or criminal action against the

2    defendant, or if another voter has filed a civil action against the defendant under this

3    subsection.

4        A Court may award reasonable attorney's fees and costs to any voter who obtains

5    injunctive relief under this subsection.  If the Court finds that an action brought by a voter

6    under this subsection is frivolous, the Court may award the defendant reasonable attorney's

7    fees and costs.

8        (a)  Any person who believes that a violation of any portion of this Chapter has

9    occurred may file a complaint with the District Attorney.  If the District Attorney determines that

10   there is reason to believe a violation of this Chapter has occurred, he or she shall make an

11   investigation.  Whenever the District Attorney has reason to believe a willful violation of this

12   Chapter has occurred or is about to occur, he or she may institute such legal action at such

13   time as he or she deems necessary to prevent further violations.

14       (b)    The District Attorney shall have such investigative powers as are necessary for

15   the performance of the duties prescribed in this Chapter and may demand, and be furnished,

16   records of campaign contributions and expenses at any time.

17       (c)    ADVICE.  Any person may request advice from the Ethics Commission or City

18   Attorney with respect to any provision of this Chapter.  The Ethics Commission shall provide

19   advice pursuant to Charter Section C3.699-12.  Any person may request the City Attorney for

20   advice with respect to any provision of this Chapter.  The City Attorney shall within 14 days of

21   the receipt of said written request provide the advice in writing or advise the person who made

22   the request that no opinion will be issued.  The City Attorney shall send a copy of said request

23   to the District Attorney upon its receipt.  (d)  The City Attorney shall within nine days from the

24   date of the receipt of said written request send a copy of his or her proposed opinion to the

25   District Attorney.  The District Attorney shall within four days inform the City Attorney whether

1    he or she agrees with said advice, or state the basis for his or her disagreement with the

2    proposed advice.

3        (e)    No person other than the City Attorney who acts in good faith on the advice of

4    the City Attorney shall be subject to criminal or civil penalties for so acting; provided that, the

5    material facts are stated in the request for advice and the acts complained of were committed

6    either in reliance on the advice or because of the failure of the City Attorney to provide advice

7    within 14 days of the request or such later extended time.

8

9        **SEC. 1.144. 1.170. PENALTIES.** (a) <u>GENERAL PROVISIONS – CRIMINAL.</u> Any

10    person who knowingly or willfully violates any provision of this Chapter shall be guilty of a

11    misdemeanor and upon conviction thereof shall be punished by a fine of not more than $500

12    or by imprisonment in the County jail for a period of not more than six months or by both such

13    fine and imprisonment; provided, however, that any willful or knowing failure to report

14    contributions or expenditures done with intent to mislead or deceive or any willful or knowing

15    violation of the provisions of Section 1.114 or Section 1.118 of this Chapter shall be

16    punishable by a fine of not less than $500 or three times the amount not reported or the

17    amount received in excess of the amount allowable pursuant to Section 1.114 or Section

18    1.118 of this Chapter, or three times the amount expended in excess of the amount allowable

19    pursuant to Section 1.130, whichever is greater.

20        (b)    <u>GENERAL PROVISIONS – CIVIL.</u> Any person who intentionally or negligently

21    violates any of the reporting requirements or contribution or expenditure limitations set forth in

22    this Chapter shall be liable in a civil action brought by the civil prosecutor for an amount up to

23    $500 or three times the amount not reported or the amount received in excess of the amount

24    allowable pursuant to Section 1.114 or Section 1.118, or three times the amount expended in

25    excess of the amount allowable pursuant to Section 1.130, whichever is greater.

1    (c) MISUSE OF PUBLIC FUNDS. Any person who willfully or knowingly uses public

2    funds, paid pursuant to this Chapter, for any purpose other than the purposes authorized by

3    this Chapter shall be guilty of a misdemeanor and punishable by a fine of not less than $500,

4    or an amount not more than $5,000 or the amount three times the amount improperly spent,

5    whichever is greater, or by imprisonment in the County jail for a period of not more than six

6    months, or by both such fine and imprisonment. Any person who willfully, knowingly or

7    negligently uses public funds for any purpose other than the purposes authorized by this

8    Chapter shall be liable in a civil action brought by the civil prosecutor for an amount up $5,000

9    or an amount of three times the amount improperly spent, whichever is greater.

10    (d)    PROVISION OF FALSE OR MISLEADING INFORMATION TO THE ETHICS

11    COMMISSION; WITHHOLDING OF INFORMATION. Any person who knowingly or willfully

12    furnishes false or fraudulent evidence, documents, or information to the Ethics Commission

13    under this Chapter, or misrepresents any material fact, or conceals any evidence, documents,

14    or information relevant to certification of eligibility for public financing or to an audit, or fails to

15    furnish to the Ethics Commission any records, documents, or other information required to be

16    provided under this Chapter shall be guilty of a misdemeanor and upon conviction thereof

17    shall be punished by a fine of up to $5,000, or by imprisonment in the County jail for a period

18    of not more than six months, or by both such fine and imprisonment.

19    (e)    DEPOSIT IN THE ELECTION CAMPAIGN FUND. All fines paid pursuant to this

20    Chapter are to be deposited in the Election Campaign Fund of the City and County of San

21    Francisco.

22

23    SEC. 1.146. 1.172. EFFECT OF VIOLATION ON OUTCOME OF ELECTION. If a

24    candidate is convicted of a violation of this Chapter at any time prior to his or her election his

25    or her candidacy shall be terminated immediately and he or she shall be no longer eligible for

ETHICS COMMISSION

n:\govern1\moh\ethics\commss\document\ordinanc\cfrc2000\cforord.doc

1    election, unless the court at the time of sentencing specifically determines that this provision

2    shall not be applicable.

3          No person convicted of a misdemeanor under this Chapter after his or her election

4    shall be a candidate for any other City and County office for a period of five years following

5    the date of the conviction unless the court shall at the time of sentencing specifically

6    determine that this provision shall not be applicable.

7          A plea of nolo contendere shall be deemed a conviction for purposes of this Section.

8

9          SEC. 1.148. 1.174. EFFECT OF VIOLATION ON CERTIFICATION OF ELECTION

10    RESULTS. The Director of Elections shall not issue any certificate of nomination or election

11    to any candidate until his or her campaign statements required in Section 1.106 have been

12    filed.

13

14          SEC. 1.150. 1.176. RULES OF CONSTRUCTION. This Chapter shall be construed

15    liberally in order to effectuate its purposes. No error, irregularity, informality, neglect or

16    omission of any officer in any procedure taken under this Chapter which does not directly

17    affect the jurisdiction of the Board of Supervisors or the City and County to control campaign

18    contributions shall avoid the effect of this Chapter.

19

20          SEC. 1.152. 1.178. SEVERABILITY. If any provision of this Chapter, or the

21    application thereof to any person or circumstance, is held invalid, the validity of the remainder

22    of the Chapter and the applicability of such provisions to other persons and circumstances

23    shall not be affected thereby.

24

25

1    APPROVED AS TO FORM:

2    LOUISE H. RENNE, City Attorney

3

4    By: _____
          JULIA A. MOLL
5         Deputy City Attorney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ETHICS COMMISSION