DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE K. SNODGRASS, State Bar #148137
JONATHAN GIVNER, State Bar #208000
ANN M. O'LEARY, State Bar #238408
Deputy City Attorneys
#1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:    (415) 554-4694
Facsimile:    (415) 554-4675
E-Mail:       jon.givner@sfgov.org

Attorneys for Defendants
DENNIS J. HERRERA, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND and BUILDING OWNERS AND MANAGERS ASSOCIATION OF SAN FRANCISCO INDEPENDENT EXPENDITURE POLITICAL ACTION COMMITTEE, political action committees organized under the laws of California and of the City and County of San Francisco,<br><br>            Plaintiffs,<br><br>    vs.<br><br>DENNIS J. HERRERA, in his official capacity as City Attorney of the City and County of San Francisco, KAMALA D. HARRIS, in her official capacity as District Attorney of the City and County of San Francisco, the SAN FRANCISCO ETHICS COMMISSION of the City and County of San Francisco, and CITY AND COUNTY OF SAN FRANCISCO,<br><br>            Defendants. | Case No. C 07 3199 JSW<br><br>**[PROPOSED] ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

After reviewing all supporting and reply papers filed by plaintiffs in connection with their motion for a preliminary injunction, all papers filed in opposition to plaintiffs' motion by defendants, and all papers in the file on this matter, and after hearing the arguments of counsel at a hearing held on September 17, 2007, the Court finds and concludes as follows:

### FINDINGS AND CONCLUSIONS

1. The voters of the City and County of San Francisco adopted Proposition O in November 2000. Among other things, Proposition O enacted into law the limits on contributions to independent expenditure committees that are now found at Sections 1.114(c)(1) and (c)(2) of San Francisco's Campaign Finance Reform Ordinance ("CFRO"), codified in the San Francisco Campaign and Governmental Conduct Code (hereinafter "Section 1.114(c)(1) and Section 1.114(c)(2)," and, collectively, "Section 1.114(c).") Plaintiffs challenge Section 1.114(c), as well as Regulation 1.114-2 of the Regulations to the CFRO (hereinafter "Regulation 1.114-2"), contending that they violate the First and Fourteenth Amendments to the United States Constitution, and seek to preliminarily enjoin enforcement of Section 1.114(c) and Regulation 1.114-2.

2. Section 1.114(c)(1) is entitled "Per Committee Limit," and states that "[n]o person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to the committee to exceed $500.00 per calendar year."

3. Section 1.114(c)(2) is entitled "Overall Limit," and states that "[n]o person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to all committees to exceed $3,000.00 per calendar year."

4. Regulation 1.114-2 is entitled "Exception," and states that "[a] committee may solicit and accept contributions in excess of the limits established by section 1.114(c) if the committee makes expenditures for any lawful purpose other than supporting or opposing candidates for City elective office, provided that funds received from contributions in excess of the limits set forth in section 1.114(c) are used only for lawful purposes other than supporting or opposing candidates for City elective office."

5. To obtain a preliminary injunction, plaintiffs are "required to demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious

1  questions going to the merits were raised and the balance of hardships tips sharply in [their] favor."
2  *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999).  Where the public interest is
3  involved, plaintiffs also must show that the "public interest favors the[m]."  *Fund For Animals, Inc. v.*
4  *Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).  "[W]hen a district court balances the hardships of the
5  public interest against a private interest, the public interest should receive greater weight."  *Federal*
6  *Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999).  Under either of
7  the two tests described in *EPL Prolong,*, plaintiffs are not entitled to a preliminary injunction.

8       6.     Plaintiffs have not shown a substantial likelihood of prevailing on the merits of their
9  claims.  Section 1.114(c) and Regulation 1.114-2 limit contributions to independent expenditure
10 committees, but do not place any limit on the amount of such committees' expenditures.  Because the
11 challenged laws impose contribution limits, not expenditure limits, they are valid so long as they
12 satisfy "the lesser demand of being closely drawn to match a sufficiently important interest."
13 *McConnell v. FEC*, 540 U.S. 93, 136, 137 (2003) (quotes omitted); *Nixon v. Shrink Missouri*
14 *Government PAC*, 528 U.S. 377, 387-88 (2000).

15      7.     Plaintiffs contend that Section 1.114(c) and Regulation 1.114-2 constitute expenditure
16 limits, and therefore must be reviewed under strict scrutiny, relying on *Lincoln Club v. City of Irvine*,
17 292 F.3d 934 (9th Cir. 2002).  This Court concludes that *Lincoln Club* does not control here, because
18 that decision turned on highly unusual facts that are absent from this case.  *Lincoln Club* involved a
19 local law that limited contributions to independent expenditure committees to $320.  292 F.3d at 936.
20 The Ninth Circuit noted that although "Irvine's Ordinance clearly places a limit on contributions to
21 independent expenditure committees . . . such a restriction does not place a severe burden on
22 protected speech and associational freedoms.  This is because *Buckley* does not consider political
23 contributions to be fully protected speech."  *Id*. at 938.  Instead, the court held that the law
24 substantially burdened First Amendment rights because that law "barr[ed] an independent expenditure
25 committee from making any independent expenditures whatsoever if the source of the committee's
26 money [was] membership dues that exceed[ed] the Ordinance's prescribed [$320] maximum."  *Id.* at
27 936, 938. Because the plaintiff committees in that case "derive[d] their resources from annual
28 membership dues of $2,000 per member," they had to choose between "maintain[ing their] present

organizational structure," which "precluded [them] from making any political expenditures whatsoever," or "mak[ing] dramatic changes to [their] organizational structure." 292 F.3d at 938-39. The ordinance thus created "substantial burdens on protected speech and associational freedoms [which] necessitate the application of strict scrutiny." *Id*. at 939. *Lincoln Club* is inapplicable and does not control here, because Regulation 1.114-2 allows a committee to accept a contribution exceeding the $500 cap, and spend $500 of that contribution on independent expenditures to support or oppose local candidates, so long as the remainder of the contribution is used for other lawful purposes. San Francisco's contribution limits thus do not compel independent expenditure committees to make the difficult choice between expressive and associational rights that the law at issue in *Lincoln Club* required.

8.  Section 1.114(c) and Regulation 1.114-2 promote a sufficiently important interest. Those laws are intended to "prevent[] … corruption or its appearance," which "constitutes a sufficiently important interest to justify political contribution limits." *McConnell*, 540 U.S. at 143; *Nixon*, 528 U.S. at 388-89; *see* S.F. Campaign & Gov'tal Conduct Code §1.100(b)(7) (stating voters' intent to "[l]imit contributions to candidates and committees, including committees that make independent expenditures, to eliminate or reduce the appearance or reality that large contributors may exert undue influence over elected officials"). This interest is not confined to "prevention of the actual or apparent *quid pro quo* corruption inherent in contributions made directly to, contributions made at the express behest of, and expenditures made in coordination with" candidates. *McConnell*, 540 U.S. at 152. Instead, the interest at issue here is broad enough to allow regulation of "the source and amount of funds available to engage in express advocacy and numerous other noncoordinated expenditures." *Id*. at 152 fn. 48. This interest is sufficient to justify limiting contributions to political committees, including committees that engage in independent expenditures. *Id.*

9.  The record in this case also supports the voters' conclusion that the contribution limits at issue here were necessary to prevent perceptions of undue influence in local governance. When the voters adopted Proposition O in 2000, there were well-documented suspicions of political favoritism in the 1999 and 2000 elections, and it was widely reported in newspaper articles that well-connected individuals and corporations had made very large contributions to independent expenditures and had

received benefits from elected City officials. The record in this case, including numerous newspaper articles concerning those events, testimony of officials knowledgeable in San Francisco electoral finance matters, and the voters' own determination of the necessity of Proposition O's limits, is sufficient to support the application of the above governmental purpose here. *Nixon*, 528 U.S. at 393, 394 (citing newspaper accounts and voters' determination of necessity to support need for contribution limits).

10.  Section 1.114(c) and Regulation 1.114-2 are "closely drawn" to serve the City's interest. A contribution limit is sufficiently closely drawn where it is "focuse[d] precisely on the problem of large campaign contributions . . . while leaving persons free to engage in independent political expression, to associate actively through volunteering their services, and to assist to a limited but nonetheless substantial extent in supporting candidates and committees with financial resources." *Buckley v. Valeo*, 424 U.S. 1, 28 (1976); *McConnell,* 540 U.S. at 154-61 (contribution limits are "closely drawn" where affected political parties have other ways to solicit contributions). Here, persons seeking to contribute to an independent committee can express their political views and associate themselves with candidates and associations in multiple ways, including by contributing up to $500 directly to a candidate, contributing up to $500 to an independent expenditure committee supporting a political candidate, contributing up to $3000 to all independent committees each year, making direct uncoordinated expenditures in support of a candidate in any amount, and volunteering their services to a candidate without restriction.

11.  Plaintiffs also have not shown that they will suffer irreparable injury in the absence of a preliminary injunction. The Court notes that although plaintiffs were active in 2000, when Proposition O was adopted and the contribution limits at issue became law, and plaintiffs have been active since that time, plaintiffs did not sue to challenge those limits until 2007. Such a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

12.  The Court also concludes that the evidence of irreparable harm provided by plaintiffs is impermissibly conclusory, consisting largely of "bald, conclusory allegations that their [efforts] would have been more 'effective' had they been able to raise more money," which the Ninth Circuit

has found to be insufficient. *Montana Right to Life Ass'n v. Eddleman*, 343 F.3d 1085, 1095 (9th Cir. 2003).

13. Plaintiffs also have not shown that they are entitled to a preliminary injunction under the alternate test, under which an injunction will issue if "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiffs'] favor." *Walczak v. EPL Prolong, Inc.*, 198 F.3d at 731. "[S]imply raising a serious claim is not enough to tip the hardship scales." *Paramount Land Co. LP v. California Pistachio Commission*, 491 F.3d 1003, ___ (9th Cir. 2007) Moreover, "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Johnson v. California State Board of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994). Under these principles, the Court concludes that plaintiffs have not made the required showing.

14. The Court is mindful of the Ninth Circuit's admonition that in "balanc[ing] the hardships of the public interest against a private interest, the public interest should receive greater weight." *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999); *Fund For Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992). The U.S. Supreme Court has held that the governmental interests underlying contribution limits "directly implicate the integrity of our electoral process," and that contribution limits therefore "tangibly benefit public participation in political debate." *McConnell*, 540 U.S. at 136-37; *Jacobus*, 338 F.3d at 1107 ("Campaign finance reform presents 'a case where constitutionally protected interests lie on both sides of the legal equation'"). A "failure to regulate the arena of campaign finance allows the influence of wealthy individuals and corporations to drown out the voices of individual citizens, producing a political system unresponsive to the needs and desires of the public, and causing the public to become disillusioned with and mistrustful of the political system." *Jacobus,* 338 F.3d at 1107. The risks of actual or apparent corruption that led San Francisco voters to adopt Proposition O in 2000 are still present, and continue to support the validity of the challenged contribution limits. The Court concludes that the public interest supports defendants' position that Section 1.114(c) and Regulation 1.114-2 should not be preliminarily enjoined.

1   Accordingly,

2   IT IS ORDERED THAT plaintiffs' motion for a preliminary injunction is DENIED.

4   Dated: _____, 2007

_____
The Honorable Jeffrey S. White
United States District Court Judge