CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY



DENNIS J. HERRERA                                  ANN M. O'LEARY
City Attorney                                      Deputy City Attorney

                                                   DIRECT DIAL: (415) 554-4661
                                                   E-MAIL:    ann.o'leary@sfgov.org

                                                   September 14, 2007

***Via Hand Delivery***
The Honorable Jeffrey S. White
United States District Court for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, California  94102

        Re:     Supplemental authority in *Committee on JOBS Candidate Advocacy Fund, et al. v.
                Herrera, et al.*, No. C-07-3199 JSW

Dear Judge White:

        In response to the Court's order with regard to supplemental authority, the Court's
question 1 and Plaintiffs' citation to *Legal Aid Soc'y v. Legal Servs. Corp.*, 961 F. Supp. 1402,
(D. Haw. 1997), first made in their reply brief (p. 13 n. 9), I seek permission under Local Rule 7-
3(d) to draw the Court's attention to the following case:  *American Civil Liberties Union of
Nevada v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1082-83 (D. Nev. 1998).

        Thank you for your consideration.

                                        Very truly yours,

                                        DENNIS J. HERRERA
                                        City Attorney

                                        Ann M. O'Leary
                                        Deputy City Attorney

cc:     Marc H. Axelbaum
        Frederick Kidder Lowell
        Bruce A. Ericson
        Anita D. Stearns Mayo
        August Orval Stofferahn
        Pillsbury Winthrop Shaw Pittman LLP
        Counsel for Plaintiff

        David Waggoner
        Tara Malloy
        The Campaign Legal Center
        Counsel for *Amici Curiae*

CITY HALL · 1 DR. CARLTON B. GOODLETT PLACE · SAN FRANCISCO, CALIFORNIA 94102
RECEPTION: (415) 554-4700 FACSIMILE: (415) 554-4699

n:\ethics\li2007\071633\00437887.doc

*CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court DENIES AS MOOT Defendant's motion to dismiss under Rule 12(b)(6) and Defendant's motion for stay.

IT IS SO ORDERED.



**AMERICAN CIVIL LIBERTIES UNION OF NEVADA, et al., Plaintiffs,**

v.

**CITY OF LAS VEGAS, et al., Defendants.**

**No. CV–S–97–1419–DWH (LRL).**

United States District Court,
D. Nevada.

April 24, 1998.

Plaintiffs brought action against city, mayor, private operator of public mall area, and operator's executive director, challenge prohibitions on distribution of literature or other written material and solicitation of funds in mall area, and restrictions on other public education and protest activities at the mall. On plaintiffs' motion for preliminary injunction, and defendants' motion to dismiss, or in the alternative, for summary judgment, the District Court, Hagen, J., held that: (1) newspaper articles were inadmissible hearsay; (2) portions of affidavits that were not based on personal knowledge or stated legal conclusions would not be considered; (3) mall area was neither traditional public forum nor designated public forum; (4) plaintiffs established likelihood of success on merits of their claim that city's anti-leafleting ordinance violated equal protection clause; (5) city's ban on solicitation was reasonable; (6) licensing scheme for vending in mall likely violated First Amendment; (7) plaintiffs established irreparable harm as to ban on leafleting and licensing scheme but did not show that balance of harms tipped in their favor as to ban on solicitation or policies of mall operator; (8) ban on solicitation did not violate First Amendment; and (9) alleged policy or permit system regarding placement of tables, racks, chairs, and other similar structures in mall did not violate First Amendment.

Motion for preliminary injunction granted in part and denied in part; motion to dismiss or for summary judgment granted in part and denied in part.

**1. Evidence ⚖≈318(1)**

Newspaper's publication of statements by defendant mayor and by executive director of private entity which operated city's public mall area was hearsay, even though statements themselves were not hearsay because they were admissions of party opponents in their official capacities, and plaintiffs in action challenging restrictions on speech in mall area failed to show that newspaper articles were admissible under residual exception to hearsay rule, since testimony from reporters or editors themselves regarding what mayor and director said or wrote would have been better evidence. Fed.Rules Evid.Rule 807, 28 U.S.C.A.

**2. Witnesses ⚖≈219(1)**

Newspaper reporters and editors waived any privilege under Nevada shield law as to content and source of statements quoted in newspaper where content and source were published. N.R.S. 49.275.

**3. Evidence ⚖≈318(1)**

Statements in newspaper articles that city convention and visitors authority designated public mall area as recreation facility in order to receive funds from tourism authority was inadmissible hearsay, in action challenging restrictions on speech in mall area, because statements were offered for truth of matter asserted and did not fall within residual exception to hearsay rule because there were other sources of admissible evidence regarding those facts, and plaintiffs failed to make reasonable efforts to obtain such admissible evidence. Fed.Rules Evid. Rule 807(B), 28 U.S.C.A.

**4. Affidavits ⚖≈3**

Affidavits must be based on personal knowledge and must not contain conclusions of law or ultimate facts.

**5. Affidavits ⊱18**

When ultimate facts or conclusions appear in an affidavit which also contains the proper subject of affidavit testimony, facts within the personal knowledge of the affiant, the extraneous material should be disregarded and only the facts considered.

**6. Civil Rights ⊱268**

Portion of affidavit submitted by plaintiffs on motion for preliminary injunction in action challenging restrictions on speech in public mall area, in which declarant stated that he was informed by another person that certain protest activities were not permitted in mall area, would be stricken because it was not based on declarant's personal knowledge of which activities were prohibited.

**7. Civil Rights ⊱268**

Statements in affidavits submitted by plaintiffs in action challenging restrictions on speech in mall area, which constituted declarants' opinions regarding whether mall was public forum and whether disputed ordinances and policies failed to leave alternative channels of communication open, would not be considered on motion for preliminary injunction, as statements went to ultimate legal issues in the case.

**8. Injunction ⊱147**

Although courts should be wary of granting a preliminary injunction based solely on allegations and conclusory affidavits submitted by plaintiff, there is no bar to issuing an injunction on the basis of affidavits alone.

**9. Injunction ⊱147**

Defendants could not object to new evidence submitted by plaintiffs with their reply brief, on plaintiff's motion for preliminary injunction, where court allowed defendants an opportunity to respond with their own evidence.

**10. Federal Civil Procedure ⊱921**

When new evidence is submitted with a reply brief, the court should not consider the new evidence without giving the non-moving party an opportunity to respond.

**11. Injunction ⊱12, 23**

Every request for injunctive relief is different, and in every case a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.

**12. Injunction ⊱138.1**

Plaintiff seeking a preliminary injunction must show either a combination of probable success on the merits and the possibility of irreparable harm, or the existence of serious questions as to the merits and that the balance of hardships tips sharply in plaintiff's favor.

**13. Injunction ⊱138.12**

In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff before granting preliminary injunction.

**14. Constitutional Law ⊱90(1)**

Application of facial First Amendment challenges is limited to those statutes or ordinances directed narrowly and specifically at expression or conduct commonly associated with expression. U.S.C.A. Const.Amend. 1.

**15. Constitutional Law ⊱90.1(4)**

Plaintiffs could entertain facial challenge to city ordinances prohibiting distribution of literature and solicitation of funds in public mall area because they were directed at expression or conduct commonly associated with expression, and plaintiffs could assert a facial challenge to public mall operator's authority to permit or deny plaintiffs the opportunity to engage in "mall vending" without applying for and being denied permission because ordinance allegedly vested operator with unbridled discretion over whether to deny or permit expressive activity of selling message-bearing merchandise. U.S.C.A. Const.Amend. 1.

**16. Constitutional Law ⊱90.1(4)**

Plaintiffs could not assert facial First Amendment challenge to policy, set by operator of public mall area, regarding placement of tables, racks, chairs, and other similar structures in mall area, as placement of such structures was not conduct commonly associated with expression, and plaintiffs could not assert "as applied" challenge, absent showing

that policy had been applied to plaintiffs. U.S.C.A. Const.Amend. 1.

**17. Civil Rights ⬅262.1**

Merely claiming a First Amendment violation does not provide a sufficient basis for injunctive relief.  U.S.C.A. Const.Amend. 1.

**18. Constitutional Law ⬅90.1(4)**

In a traditional public forum, the government may enforce: (1) content-based restrictions if necessary to serve a compelling state interest and if narrowly drawn to achieve that end and (2) content-neutral time, place and manner restrictions if narrowly tailored to serve a significant state interest and if they leave open alternative channels of communication.  U.S.C.A. Const.Amend. 1.

**19. Constitutional Law ⬅90.1(4)**

Standards that govern whether government may restrict speech in traditional public forum also govern designated public forum which is public property opened by the government as a place for expressive activity. U.S.C.A. Const.Amend. 1.

**20. Constitutional Law ⬅90.1(4)**

In nonpublic forum, the government, as the owner of private property, may restrict speech so long as the regulation is reasonable in light of the purposes of the forum and is not an effort to suppress expression merely because public officials oppose the speaker's view; even a complete ban may be imposed where the function of the property would be disrupted by expressive activity.  U.S.C.A. Const.Amend. 1.

**21. Constitutional Law ⬅234.6**

If public area is a traditional or designated public forum and the ordinance discriminates among speech-related activities, then the classifications are subject to strict scrutiny, for purpose of equal protection challenge, but, if area is a nonpublic forum, then the classifications need only be rationally related to a legitimate governmental purpose.  U.S.C.A. Const.Amend. 14.

**22. Constitutional Law ⬅90.1(4), 234.6**

Public mall area in city was not traditional public forum, for purpose of First Amendment and equal protection challenges to restrictions on various activities in mall area; although mall area was located on and bounded by public streets, and was main-

tained by public funds, mall had commercial purpose, and area was physically distinct from surrounding public forum areas. U.S.C.A. Const.Amend. 1.

**23. Constitutional Law ⬅82(9)**

Nature of public property which falls within the definition of a traditional public forum can be changed or its uses altered to such an extent that it no longer retains its public forum status, although the government cannot change the forum status of public property by fiat.  U.S.C.A. Const.Amend. 1.

**24. Constitutional Law ⬅90.1(4)**

Designated public forum can be created only by intentionally opening a nontraditional public forum for public discourse, and neither government inaction nor permitting members of the public to freely visit a place owned or operated by the government creates a designated public forum. U.S.C.A. Const.Amend. 1.

**25. Constitutional Law ⬅90.1(4)**

In determining whether government intended to designate public area as public forum, the court considers the government's purpose in creating the forum as reflected by the policy and practice of the government and the nature of the property and its compatibility with expressive activity; however, selective access, unsupported by evidence of purposeful designation for public use, does not create a public forum.  U.S.C.A. Const. Amend. 1.

**26. Constitutional Law ⬅90.1(4), 234.6**

Public mall area in city was not designated public forum, for purpose of First Amendment and equal protection challenges to restrictions on various activities in mall area, even though city prohibited only some expressive activities.  U.S.C.A. Const. Amend. 1.

**27. Civil Rights ⬅268**

Plaintiffs established likelihood of success on merits of their claim that city's anti-leafleting ordinance, which was applicable to public mall area, violated equal protection because it contained exception for labor-related activities, since asserted governmental

interests, including maintaining safe and comfortable atmosphere and restricting activities which interrupt pedestrian traffic flow and cause pedestrian congestion, were not rationally related to distinction between labor leafleting and all other types of leafleting. U.S.C.A. Const.Amend. 14.

**28. Constitutional Law ⬄213.1(1, 2)**

To be upheld under the equal protection clause, statutory classifications must be rationally related to a legitimate governmental purpose and those affecting fundamental rights must survive strict scrutiny. U.S.C.A. Const.Amend. 14.

**29. Constitutional Law ⬄234.6**

When government regulation discriminates among speech-related activities in a public forum, the equal protection clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized. U.S.C.A. Const.Amends. 1, 14.

**30. Constitutional Law ⬄90.1(4)**

Restriction on speech in nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation, and access to a nonpublic forum may be based on topic and speaker identity as long as the distinctions drawn are viewpoint-neutral and reasonably related to the purposes of the forum. U.S.C.A. Const.Amend. 1.

**31. Civil Rights ⬄268**

City's ban on solicitation in public mall area, which was nonpublic forum, was reasonable, in light of mall's commercial purpose, so challengers to ban were not likely to succeed on merits of their First Amendment claim for purpose of their motion for preliminary injunction, and ban was legitimate way to further city's interests in preventing pedestrian congestion and interference with pedestrian traffic flow and reducing the risk of fraud and duress. U.S.C.A. Const.Amend. 1.

**32. Civil Rights ⬄268**

Plaintiffs were likely to succeed on merits of facial challenge to licensing scheme governing vending in public mall area, under First Amendment, for purpose of their motion for preliminary injunction, as licensing scheme could not be considered viewpoint-neutral where there were no limits on mall operator's discretion to deny permission to sell message-bearing merchandise based on seller's viewpoint. U.S.C.A. Const.Amend. 1.

**33. Civil Rights ⬄268**

Plaintiffs established irreparable harm as result of city ordinances which banned all leafleting in public mall area and created licensing scheme governing vending in mall, for purpose of their preliminary injunction motion, because loss of First Amendment rights, even for a short time, constitutes irreparable injury. U.S.C.A. Const.Amend. 1.

**34. Civil Rights ⬄268**

Plaintiffs failed to demonstrate that balance of hardships tipped sharply in their favor, for purpose of motion to preliminarily enjoin ordinance which banned solicitation in public mall area and policies of mall operator which allegedly infringed plaintiffs' First Amendment rights, in view of city's interest and public interest in maintaining mall and plaintiffs' delay in seeking preliminary injunction. U.S.C.A. Const.Amend. 1.

**35. Federal Civil Procedure ⬄2543, 2544**

Burden of demonstrating the absence of a genuine issue of material fact lies with the party moving for summary judgment, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Fed. Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**36. Federal Civil Procedure ⬄2470.1**

Material issue of fact that precludes summary judgment is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**37. Federal Civil Procedure ⬄2544**

Once the party moving for summary judgment presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**38. Federal Civil Procedure** ⇐2546

Mere scintilla of evidence will not do to preclude summary judgment, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**39. Federal Civil Procedure** ⇐2544

If the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial in order to avoid summary judgment. Fed.Rules Civ. Proc.Rule 56, 28 U.S.C.A.

**40. Federal Civil Procedure** ⇐2491.5

Material issues of fact as to whether any policies of private operator of public mall area infringed on plaintiffs' First Amendment rights to engage in activities such as demonstrating, speech making, and protesting precluded summary judgment on plaintiffs' challenge to alleged policies, except with respect to alleged policy regarding placement of tables, racks, chairs or similar structures, which was not directed at expressive conduct. U.S.C.A. Const.Amend. 1.

**41. Constitutional Law** ⇐90.1(4)
    **Municipal Corporations** ⇐622

Ordinance's ban on solicitation in public mall area did not violate plaintiffs' First Amendment rights, as mall was nonpublic forum, and ban was viewpoint-neutral and reasonable in light of mall's commercial purpose. U.S.C.A. Const.Amend. 1.

**42. Constitutional Law** ⇐90.1(4)
    **Municipal Corporations** ⇐661(1)

Alleged policy or permit system of operator of public mall area regarding placement of tables, racks, chairs, and other similar structures in the mall did not violate plaintiffs' free speech rights, even if operator had unbridled discretion in using its authority to grant or deny permission to place such structures in the mall, absent showing that placement of structures alone was conduct commonly associated with expression or that policy or permit system had been applied to any plaintiff in connection with any expressive activities such as sale of message-bearing merchandise. U.S.C.A. Const.Amend. 1.

Allen Lichtenstein, Las Vegas, NV, Mark Lopez, ACLU Foundation, New York City, for American Civil Liberties Union of Nevada, Plaintiffs.

Todd L. Bice, Matthew McCaughey, Schreck Morris, Las Vegas, NV, Kristin B. McMillan, Patrick J. Reilly, Hale, Lane Peek, Dennison, Howard, Anderson & Pearl, Las Vegas, NV, for The Fremont Street LLC and Mark Paris, Defendant.

William P. Henry, Office of the City Attorney, Las Vegas, NV, for City of Las Vegas and Mayor Jones, Defendant.

### ORDER

HAGEN, District Judge.

Plaintiffs' motion (# 21) for a preliminary injunction came before the court for oral argument on February 20, 1998. After reviewing the briefs and evidence submitted by both sides and considering their arguments, the court finds, as discussed more fully below, that plaintiffs have satisfied the test for issuing a preliminary injunction barring the enforcement of Las Vegas Municipal Code ("LVMC") § 11.68.100(I) and the standardless licensing scheme pursuant to LVMC § 11.68.100(B). Plaintiffs have not shown they are entitled to an order preliminarily enjoining defendants City of Las Vegas ("the City") and Mayor Jan Laverty Jones from enforcing LVMC § 10.44.030(F) and defendants Fremont Street Limited Liability Corporation ("FSELLC") and Mark Paris, executive director of FSELLC, from enforcing any FSELLC policies or regulations which infringe on plaintiffs' First Amendment rights. Also before the court is defendants' motion (# 18) to dismiss, or in the alternative, for summary judgment.

### I. Factual and Procedural Background

The Fremont Street Experience Mall (the "Mall") was created by the City pursuant to the Pedestrian Mall Act, N.R.S. § 268.810 et seq. See LVMC § 11.68.010 et seq. It was intended to provide an attraction to compete with the Strip and bring tourists and business back to the sagging downtown casinos and businesses. See LVMC § 11.68.010. The City contracted with FSELLC, a private entity, to construct, operate and maintain the

Mall. LVMC § 11.68.060. FSELLC has principal control over all commercial uses and aspects of the property. See LVMC § 11.68.070. Although downtown casinos contributed $25 million to the Mall's initial building costs of $70 million, FSELLC is solely responsible for paying the Mall's operation and maintenance expenses of approximately $6 million to $10 million annually. Defendants' Opp., Exh. B ¶ 15.

Construction on the Mall began in September 1994 and the Mall opened in December 1995. Defendants' Motion to Dismiss ("Defendants' Motion"), Exh. D ¶ 5. The Mall spans a five-block length of what used to be Fremont Street before Fremont Street was closed and the street and its sidewalks demolished and excavated. Defendants' Opp., Exh. B ¶ 5. It also includes cul-de-sac areas on First and Third Streets in which the sidewalks and streets were closed and demolished. Id. After the existing streets and sidewalks were demolished, holes were dug for columns to support the ten-story "celestial superstructure" which was installed over the Fremont Street area. Defendants' Motion, Exh. D ¶ 5. A fifty-foot wide strip of special high-strength concrete was poured over the area. Id. It was coated, stained and formed into a pattern designed to guide pedestrian traffic flow. Id. In addition, underground utilities systems, a special irrigation system, and sound and lighting systems were installed in the Mall complex to facilitate the use of retail carts and kiosks, to service landscaping, and to accommodate special events and activities. Id. ¶¶ 6–7.

Plaintiffs filed their complaint (# 1) for declaratory and injunctive relief on October 9, 1997, alleging that certain City ordinances and FSELLC policies infringe on their First Amendment rights. In particular, plaintiffs challenge the prohibition of the distribution of literature or other written material at the Mall pursuant to LVMC § 11.68.100(I), the prohibition against the solicitation of funds at the Mall pursuant to LVMC § 10.44.030, and all other FSELLC-imposed restrictions on public education or protest activities pursuant to contract or LVMC § 11.68.100. The challenged provision in LVMC § 10.44.030 was enacted in January 1995. Defendants' Motion, Exh. G at 12. The challenged provision in LVMC § 11.68.100 was enacted in August 1995. Defendants' Motion, Exh. F.

On January 9, 1998, defendants FSELLC and Mark Paris moved (# 18) to dismiss plaintiffs' complaint, or in the alternative, for summary judgment. Defendants City of Las Vegas and Mayor Jones joined (# 16) in that motion. On January 20, 1998, plaintiffs filed this motion (# 21) for preliminary injunction. In the motion for preliminary injunction, plaintiffs seek an order enjoining defendants from enforcing the following ordinances or policies on the premises of the Mall: (1) LVMC § 11.68(100)(1) (prohibiting distribution of literature or other written material); (2) LVMC § 10.44.030 (prohibiting solicitation of funds); and (3) all other FSELLC-imposed restrictions on plaintiffs' free speech rights.

## II. *Analysis*

### A. Defendants' Objections to Plaintiffs' Evidence

#### 1. Newspaper Articles

Defendants object to the admissibility of newspaper articles submitted by the plaintiffs in support of their motion for a preliminary injunction. The first article is a letter to the editor from the Mayor of Las Vegas, Jan Laverty Jones, published in the Las Vegas Review Journal on April 16, 1997. Plaintiffs' Motion, Exh. 1. Plaintiffs rely on Mayor Jones' characterization of the Mall as the "Town Square" to support their argument that the Mall is a public forum. See Plaintiffs' Motion at 8.

The other three newspaper articles from the Las Vegas Review–Journal are cited as support for the following factual statement in plaintiffs' memorandum: "At the request of city officials in 1993, the Las Vegas Convention and Visitors Authority designated the Fremont Street Experience a recreation facility, which allowed the city to receive $8 million from the Tourism Authority over eight years." Plaintiffs' Motion at 3, Exhs. 2(a), 2(b), 2(c). Two of the three articles also quote Mark Paris' description of the Mall as "a great gathering place" and his statement that "there are no swings or fields, but it is a great venue to enjoy the Las Vegas climate, special events and one another's company"

and that "it's parochial thinking to think of a park as a field or baseball diamond." Plaintiffs' Motion, Exh. 2(a)s, 2(b). Plaintiffs rely on this description to support their argument that the Mall is a public forum. See Reply at 9–10.

Defendants contend that these newspaper articles cannot be admitted for purposes of proving the truth of the statements made by Mayor Jones and Mr. Paris because those out-of-court statements published in the newspaper constitute double-hearsay. Plaintiffs contend that the out-of-court statements by Mayor Jones and Mr. Paris are not hearsay pursuant to Fed.R.Evid. 801(d)(2) because they are statements of party opponents. Further, plaintiffs argue that the publication of these statements have the requisite level of reliability to invoke Fed. R.Evid. 803(24) and also meet the requirements of Fed.R.Evid. 804(b)(5)[1] given the reporters' unavailability to testify if they invoke the Nevada Shield Law, N.R.S. § 49.275.

[1, 2] Although the statements by Mayor Jones and Mr. Paris are not hearsay because they are admissions of party opponents in their official capacities, the repetition of those statements in newspaper articles and a published letter to the editor does constitute hearsay. See *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir.1991). Moreover, plaintiffs have failed to show that these statements satisfy the requirements of Fed. R.Evid. 807. The rule requires that "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will be best served by admission of the statement into evidence." Fed.R.Evid. 807. As the Ninth Circuit recognized in *Larez*, statements quoted in newspaper articles fail to satisfy the best evidence requirement of subsection (B) because testimony from reporters or editors themselves regarding what Mayor Jones and Mr. Paris said or wrote would have been better evidence. *Larez*, 946 F.2d at 644. Although plaintiffs attempt to invoke the Nevada Shield Law as a justification for failing to obtain affidavits from or present testimony of the newspaper reporters and editors who interviewed Mr. Paris or read Mayor Jones' original letter to the editor, the privilege under that law was waived as to the content and source of the quoted statements because the content and source were published. See *Las Vegas Sun, Inc. v. Eighth Judicial Dist. Court*, 104 Nev. 508, 513, 761 P.2d 849 (1988) ("disclosure of a source and the attribution of remarks to that source is a clear cut waiver of the shield privilege as to that name and those statements"). Accordingly, this court will not consider the statements of Mayor Jones and Mr. Paris in the newspaper articles and letter to the editor in adjudicating plaintiffs' preliminary injunction motion.

[3] The court will also disregard as hearsay the discussion in the newspaper articles of the Las Vegas Convention and Visitors Authority's designation of the Mall as a recreation facility in order to receive funds from the Tourism Authority. The statements in the articles regarding this fact constitute hearsay because they are offered for the truth of the matter asserted. They do not fall within the residual exception of Fed. R.Evid. 807 because there are other sources of admissible evidence regarding these facts (such as public records) and plaintiffs failed to make reasonable efforts to obtain such admissible evidence. See Fed.R.Evid. 807(B).

**2. Affidavits**

Defendants also object to the affidavits of Gary Peck, Greg Gable, and Paul R. Brown submitted in support of plaintiffs' preliminary injunction motion on the basis that they merely recite legal conclusions or conclusory opinions and are not based on personal knowledge. Plaintiffs appear to ignore defendants' argument about the admissibility of the affidavits, addressing only the issue of whether a court may decide a motion for

---

1. Fed.R.Evid. 803(24) and 804(b)(5), the residual exceptions to the hearsay rule, were transferred

to the new rule 807, effective December 1, 1997.

preliminary injunctions solely on the basis of affidavits.

[4–6]   Affidavits must be based on personal knowledge and must not contain conclusions of law or ultimate facts. See *Kim v. United States,* 121 F.3d 1269, 1276–77 (9th Cir.1997) (rejecting affidavit no based on personal knowledge); *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.,* 650 F.2d 118, 121 (6th Cir.1981) (finding conclusions of law in affidavit were not entitled to any weight). "When ultimate facts or conclusions appear in an affidavit which also contains the proper subject of affidavit testimony, facts within the personal knowledge of the affiant, the extraneous material should be disregarded and only the facts considered." *A.L Pickens,* 650 F.2d at 121. Defendants seek to strike the portion of the Brown affidavit in which he declares that he was informed by Gary Peck that certain protest activities are not permitted in the Mall because it is not based on personal knowledge of which activities are prohibited. Defendants are correct that Mr. Brown is not competent to make such a statement and it will be disregarded by the court.

[7]   Defendants also object to other portions of all of the affidavits concerning the characteristics of the Mall because those statements constitute ultimate facts and conclusions of law. Specifically, defendants seek to have stricken the following statements describing the Mall as: "a unique and essential forum for engaging in protest activities because of its function as a central gathering place" (Peck Aff. ¶ 5); "a unique and effective forum" (Gable Aff. ¶ 5); and "the quintessential forum for protesting" (Brown Aff. ¶ 6). Because whether or not the Mall is a public forum is a central legal issue in this case, the opinions of these declarants regarding this legal issue will be disregarded and only the facts underlying their opinions will be considered by the court. Likewise, the extent to which the disputed ordinances and FSELLC policies fail to leave alternative channels of communication open is a legal question and declarants' opinions regarding that issue will not be considered.

[8]   Finally, defendants argue that because plaintiffs may not rely upon the submitted newspaper articles, their only evidence consists of affidavits and preliminary injunctions should not issue on the basis of affidavits alone. Although courts should be wary of granting a preliminary injunction based "solely on allegations and conclusory affidavits submitted by plaintiff," see *Atari Games Corp. v. Nintendo of America, Inc.,* 897 F.2d 1572, 1575 (Fed.Cir.1990) (applying Ninth Circuit law), there is no bar to issuing an injunction on the basis of affidavits alone. See *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 799 F.2d 547, 555 (9th Cir.1986) (affirming issuance of preliminary injunction on basis of affidavits alone where defendant did not request opportunity to present oral testimony and magnitude of inquiry would make evidentiary hearing impractical).

### 3. Evidence Submitted with Reply Brief

[9]   In addition to the newspaper articles and three affidavits, plaintiffs submitted new evidence with their reply, including interrogatory responses, fifty-five photographs, and a supplemental affidavit from Gary Peck. Defendants object to this evidence because they argue that it was not submitted in response to any issue raised in defendants' opposition. Rather, defendants contend that plaintiffs knew that they planned to submit this evidence at the time of filing of their motion but waited until filing their reply brief to submit it in order to sand-bag the defendants.

[10]   When new evidence is submitted with a reply brief, the court should not consider the new evidence without giving the non-moving party an opportunity to respond. See *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996) (allowing plaintiff to submit supplemental declaration in response to defendants' new evidence in their reply), *cert. denied,* —— U.S. ——, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997). Because this court issued a minute order (# 43) allowing defendants an opportunity to respond with their own evidence, defendants' objection on the delay in plaintiffs submission of this evidence is no longer valid.

**B. Plaintiffs' Preliminary Injunction Motion**

**1. Preliminary Injunction Standard**

[11] "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Every request for injunctive relief is different, and in every case "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

[12] The Ninth Circuit requires a plaintiff seeking a preliminary injunction to show either a combination of probable success on the merits and the possibility of irreparable harm, *or* the existence of serious questions as to the merits and that the balance of hardships tips sharply in plaintiff's favor. *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir.1991).

[13] These tests are essentially the same, representing "a continuum of equitable discretion whereby the greater of the relative hardship to the moving party, the less probability of success must be shown." *Regents of Univ. of Calif. v. American Broadcasting Companies, Inc.,* 747 F.2d 511, 515 (9th Cir. 1984). Likewise, the required degree of irreparable harm decreases as the probability of success increases. See *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993). Moreover, "in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992) (citations omitted).

As to the anti-leafleting ordinance and the licensing scheme governing mall vending, plaintiffs have established a likelihood of success on the merits and a possibility of irreparable harm. With respect to the anti-solicitation ordinance and challenged FSELLC policies, however, plaintiffs have failed to show that they will probably succeed on the merits, or that there are serious questions as to the merits *and* the balance of hardships tips sharply in their favor.

**2. Likelihood of Success on the Merits or Serious Questions as to the Merits**

Plaintiffs' action for declaratory and injunctive relief consists of two claims. Plaintiffs' first cause of action alleges that defendants' conduct in enforcing certain City ordinances and FSELLC policies deprives plaintiffs of their First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Complaint (# 1) ¶¶ 36–39. Plaintiffs allege that the City's anti-solicitation and anti-leafleting ordinances are unconstitutional on their face and as applied to plaintiffs. *Id.* ¶ 38. Further, plaintiffs allege that to the extent FSELLC policies allow plaintiffs to engage in First Amendment activities only on a permit or request basis, the lack of standards governing FSELLC's discretion in making this determination deprives plaintiffs of their First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. *Id.* ¶ 39.

Plaintiffs' second cause of action alleges that the City's anti-leafleting ordinance violates plaintiffs' right to equal protection of the laws under the Fourteenth Amendment because it carves out an exception for labor leafleting and it is applied in a such a way as to permit some commercial leafleting. *Id.* ¶ 41. Plaintiffs also allege a violation of the Equal Protection Clause to the extent FSELLC policies contain exceptions for speech or expressive conduct related to labor or other exceptions. *Id.* ¶ 42.

In their reply brief, plaintiffs appear to limit their constitutional challenge to FSELLC policies (at least for purposes of their preliminary injunction motion) to those policies regulating the placement of tables, racks, chairs or similar structures and the distribution of message-bearing merchandise in the Mall under LVMC § 11.68.100(B) and (H). See Reply at 20 n. 9 and 21 (stating that plaintiffs "take the FSELLC defendants at their word that picketing, carrying banners, collecting signatures, and the like are not proscribed" by FSELLC policies). Thus, the court will only consider plaintiffs' challenge to those specific FSELLC policies and no others.

[14, 15]  The Ninth Circuit has limited the application of facial constitutional challenges to those statutes or ordinances "directed narrowly and specifically at expression or conduct commonly associated with expression." *Roulette v. City of Seattle,* 97 F.3d 300, 305 (9th Cir.1996) (rejecting a facial challenge to Seattle ordinance prohibiting persons from sitting or lying down upon public sidewalk because it did not restrict "forms of conduct integral to, or commonly associated with, expression").  Plaintiffs can entertain a facial challenge to the City ordinances at issue in this case because they are directed at expression or conduct commonly associated with expression.  See LVMC §§ 10.44.030, 11.68.100(I); *Perry v. Los Angeles Police Dep't,* 121 F.3d 1365 (9th Cir. 1997) (permitting facial challenge to ordinance banning sales and solicitation of donations), *cert. denied,* —— U.S. ——, 118 S.Ct. 1362, 140 L.Ed.2d 511 (1998).  Plaintiffs may also assert a facial challenge to FSELLC's authority pursuant to LVMC § 11.68.100(B) to permit or deny plaintiffs the opportunity to engage in "mall vending" without applying for and being denied permission because the ordinance allegedly vests FSELLC with unbridled discretion over whether to deny or permit the expressive activity of selling message-bearing merchandise.  See Complaint ¶¶ 2, 48; *Gaudiya Vaishnava Soc. v. City of San Francisco,* 952 F.2d 1059, 1062 (9th Cir. 1990).  Further, "[b]ecause plaintiffs' claims are rooted in the First Amendment, they may argue the impact of the ordinance[s] on their own expressive conduct, as well as the expressive activities of others." *Perry,* 121 F.3d at 1368.

[16]  With respect to the challenged FSELLC policy regarding the placement of tables, racks, chairs, and other similar structures in the Mall, plaintiffs fail to meet the standard for allowing a facial challenge.  LVMC § 11.68.100(H) provides FSELLC with the authority to grant or deny the placement of such structures in the Mall.  However, plaintiffs do not allege that this authority constitutes unbridled discretion over whether to deny or permit *expressive activity* because the placement of structures is not "conduct commonly associated with expression." Although *One World One Family Now, Inc. v. State of Nevada,* 860 F.Supp. 1457 (D.Nev.

1994), held that a licensing scheme regarding placement of tables on public sidewalks was unconstitutional *as applied* to plaintiffs who sought to use such tables to sell their message-bearing merchandise, plaintiffs have failed to show that FSELLC's policy regarding the placement of structures has been applied to them in connection with the sale of message-bearing merchandise.  Thus, plaintiffs have failed to show that they would likely succeed in making a facial or as applied challenge to the FSELLC policy governing the placement of tables, racks, chairs or similar structures on the Mall.

[17]  In considering whether plaintiffs are likely to succeed or have raised serious questions as to the merits of their other facial and "as applied" challenges, this court must determine the type of forum at issue and whether the ordinances or FSELLC policies have placed legitimate restrictions on constitutionally-protected speech or expressive conduct in that particular forum. *Id.* (facial challenge); *Gerritsen v. City of Los Angeles,* 994 F.2d 570, 576 (9th Cir.1993) ("as applied" challenge), *cert. denied,* 510 U.S. 915, 114 S.Ct. 306, 126 L.Ed.2d 253.  Merely claiming a First Amendment violation does not provide a sufficient basis for injunctive relief.  See *One World One Family Now v. City & County of Honolulu,* 76 F.3d 1009, 1016 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 554, 136 L.Ed.2d 403 (1996).

**a. Forum Analysis**

[18–20]  The scope of the government's power to limit speech or other First Amendment activity on public property depends upon the type of forum involved. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44–46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).  A fundamental issue in this case is whether the Mall is a traditional public forum, a designated public forum, or a non-public forum.  If it is a public forum, the right to limit expressive activity is "sharply circumscribed" by the First Amendment. *Id.* at 45, 103 S.Ct. 948.  In a traditional public forum, the government may enforce (1) content-based restrictions if necessary to serve a compelling state interest and if narrowly drawn to achieve that end and (2)

content-neutral time, place and manner restrictions if narrowly tailored to serve a significant state interest and if they leave open alternative channels of communication. *Id.* The same standards govern a designated public forum which is public property opened by the government as a place for expressive activity. *Id.* at 45–46, 103 S.Ct. 948. If the Mall is a nonpublic forum, then the government, as the owner of private property, may restrict speech so long as the regulation is reasonable in light of the purposes of the forum and is "not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46, 103 S.Ct. 948. Even a complete ban may be imposed where the function of the property would be disrupted by expressive activity. *Jacobsen v. United States Postal Service,* 993 F.2d 649, 657–58 (9th Cir.1992).

[21] Forum analysis also governs the level of scrutiny applied in evaluating plaintiffs' equal protection challenge to the anti-leafleting ordinance. If the Mall is a traditional or designated public forum and the ordinance discriminates among speech-related activities, then the classifications are subject to strict scrutiny. *Carey v. Brown,* 447 U.S. 455, 461–62, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). If the Mall is a nonpublic forum, then the classifications need only be rationally related to a legitimate governmental purpose. See *Perry Educ. Ass'n,* 460 U.S. at 54–55, 103 S.Ct. 948; *Monterey County,* 812 F.2d at 1200.

### (1) Traditional Public Forums

[22] The Supreme Court has defined a traditional public forum as property that has as "a principal purpose . . . the free exchange of ideas" and has "immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *International Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 679, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (quoting *Cornelius v. NAACP Legal Defense & Educ.*

*Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) and *Hague v. Committee for Indus. Organization,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Using history and traditional use as guiding principles to determine the nature of the forum, courts have found the category of traditional public fora to include public parks, streets and sidewalks.[2] *Frisby v. Schultz,* 487 U.S. 474, 480–81, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (residential sidewalks are public fora); *United States v. Grace,* 461 U.S. 171, 179–80, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (sidewalks outside of U.S. Supreme Court building are public fora); *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948 (streets and parks are public fora). Other types of public property, although open to public use, such as airports, streets and sidewalks of military bases, and interstate rest areas, are not traditional public fora because they have not historically been available for public expression and their principal purpose has not been to promote "the free exchange of ideas." *Lee,* 505 U.S. at 680–83, 112 S.Ct. 2701 (neither traditional use nor principle purpose of modern air terminals indicate that they are public fora); *Greer v. Spock,* 424 U.S. 828, 834–38, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (streets and sidewalks of military bases are not public fora); *Sentinel Communications Co. v. Watts,* 936 F.2d 1189, 1203–04 (11th Cir.1991) (interstate rest areas are "modern creations" which do not meet the definition of traditional public fora).

[23] Even the nature of public property which falls within the definition of a traditional public forum can be changed or its uses altered to such an extent that it no longer retains its public forum status. See, e.g., *Hale v. Department of Energy,* 806 F.2d 910, 915–16 (9th Cir.1986) (public roadway is not a public forum because "land containing this roadway has been withdrawn from public use for the purpose of nuclear testing" and "its use for expressive, as well as nonexpressive activity, by the public is limited"). However, the government cannot

---

2.    However, not all public sidewalks are traditional public fora. See *United States v. Kokinda,* 497 U.S. 720, 727–29, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality) (sidewalk leading from parking lot to Post Office is not a public forum);

*Monterey County,* 812 F.2d at 1197 (same); *Chad v. City of Fort Lauderdale,* 861 F.Supp. 1057, 1061 (S.D.Fla.1994) (sidewalk built within last two years bordering public beach is not a traditional or designated public forum).

change the forum status of public property by fiat. See *Grace,* 461 U.S. at 180, 103 S.Ct. 1702 (government may not destroy the traditional forum status of public property simply by declaring it to be a nonpublic forum). As Justice Kennedy recognized in his concurrence in *Lee:*

> In some sense the government always retains authority to close a public forum, by selling the property, changing its physical character, or changing its principal use. Otherwise the State would be prohibited from closing a park, or eliminating a street or sidewalk, which no one has understood the public forum doctrine to require. The difference is that when property is a protected public forum the State may not by fiat assert broad control over speech or expressive activities; it must alter the objective physical character or uses of the property, and bear attendant costs, to change the property's forum status.

505 U.S. at 699–700, 112 S.Ct. 2701.

Plaintiffs contend that the Mall is a public forum because transforming a five-block stretch of public streets and sidewalks into a pedestrian mall which resembles "one large sidewalk" does not change the status of the property as a traditional public forum. Defendants, on the other hand, argue that the Mall is not a traditional public forum because its principle purpose is not promoting public expression and it is not a public street nor sidewalk nor park but rather a modern commercial and entertainment facility.

To support their position that the Mall is a traditional public forum, plaintiffs rely on the language of the Pedestrian Mall Act, N.R.S. § 268.810 *et seq.,* and Las Vegas Municipal Code Chapter 11.68 *et seq.* pursuant to which the Mall was created. Section 268.811(3) of the Pedestrian Mall Act defines the term "pedestrian mall" in part as: "an area including portions of one or more *streets* or alleys that has been set aside for use primarily by pedestrians and to which access by motor

vehicles is prohibited or restricted." (Emphasis added). Given this language, plaintiffs contend that the Mall is no more than a stretch of Fremont Street which has been closed to motorized traffic and that it is not a newly created entity. Plaintiffs also note that there is no requirements of improvements to the streets or sidewalks to fit within the definition of a pedestrian mall and that the City ordinance which created the Mall also indicates that it is comprised of streets and sidewalks.[3] According to plaintiffs, the fact that the streets and sidewalks were ripped out and replaced with high-strength patterned concrete does not change the nature of the Mall as a public forum. Likewise, they argue that the metal canopy which stretches over part of the Mall and displays a "part-time" light show cannot convert the streets and sidewalks into a nonpublic commercial and entertainment facility.

The court is unpersuaded by this argument. Although the Pedestrian Mall Act defines pedestrian malls as streets or alleys which have been set aside for pedestrian use and does not require any improvement of such streets, the Act does not prevent or preclude municipalities from transforming the physical character and use of those streets to such an extent as change the property's constitutional forum status from traditional public fora to nonpublic fora. Nor is the court's analysis of this issue aided by the fact that LVMC § 11.68, the specific City ordinance creating the Mall, describes the public property on which the Mall was constructed in terms of the particular streets (and parallel sidewalks) encompassed by the project. It was simply an easy way for the City to describe the boundaries of the Mall project and does not require the conclusion that the public forum status of the property was retained despite the changes to its physical character and use. In fact, the City ordinance creating the Mall supports defendants' position that the Mall is not a traditional public forum. For example, LVMC

---

**3.** Section 11.68.040(A) of the Las Vegas Municipal Code sets forth the legal description of the Mall as follows:

> The following *streets* and rights-of-way as constituting and comprising the Pedestrian Mall are legally described in Exhibit A attached to this ordinance codified in this Chapter and

which is adopted herein as part of this Chapter.
(Emphasis added). "Street" is defined in another section of the LVMC as "all that area dedicated to public use for public street purposes and shall include, but not be limited to, roadways, parkways, alleys, and sidewalks." LVMC § 13.24.020(F).

§ 11.68.010 indicates that the City created the Mall for the principal purpose of restoring the economic growth and vitality of downtown area businesses by providing a pedestrian mall for the "movement, safety, convenience, enjoyment, entertainment, recreation and relaxation of pedestrians," not for the purpose of promoting expression. See *Lee*, 505 U.S. at 682, 112 S.Ct. 2701; *Cornelius*, 473 U.S. at 800, 105 S.Ct. 3439.

Other "undisputed facts" relied upon by plaintiffs to argue that the Mall retains its original status as a traditional public forum include the nature of the Mall as a public thoroughfare that is contiguous on all sides to public streets, the lack of barriers to pedestrian entry or movement, the existence of public streets that run through parts of the Mall, and the use of public funds for the construction and maintenance of the Mall.[4] According to plaintiffs, given these characteristics, if changed at all, the property in dispute has been transformed into one large sidewalk, a traditional public forum, and not into a modern commercial and entertainment facility. Plaintiffs cite *Gerritsen v. City of Los Angeles* to support their argument that the City has attempted to assert broad control over speech or expressive activities in the Mall by fiat without changing the traditional public forum status of the property.[5]

In *Gerritsen*, city officials sought to restrict speech by prohibiting all hand billing in

an one area of a downtown park. The area of the park covered by the hand billing ban, known as Olvera Street, contains a plaza area with an open-air bandstand as well as restaurants, outdoor vendors, shops, a church, and the Mexican Consulate. 994 F.2d at 572, 576. The city argued that the hand billing ban should be upheld because Olvera Street is distinct from the rest of the park (which they conceded was a public forum) given its unique historic and cultural atmosphere which is designed to foster commercial exchange. The court rejected the city's argument because "Olvera Street "is still part of the park and it is indistinguishable from other sections in terms of visitors' expectations of its public forum status." *Id.* at 576. In reaching its conclusion, the court relied the Supreme Court cases of *Boos v. Barry* and *United States v. Grace*,[6] which support the proposition that when a subsection of a public forum is indistinguishable from the larger, undisputed public forum in which it exists, it is one and the same with the larger public forum. *Id.*

*Gerritsen* is distinguishable from this case because the property at issue in *Gerritsen* was a historical area within a public park which itself was admittedly a public forum and there had been no alteration of the physical character or use of the Olvera Street section of the park to indicate that its status as a public forum had changed.[7] In contrast,

---

4. Because plaintiff's evidence of the Las Vegas Convention Authority's designation of the Mall as a "recreational facility" and statements of defendants Mayor Jones and Mr. Paris will not be considered on this motion, that evidence cannot support plaintiffs' claim that the Mall has the characteristics of a traditional or designated public forum held open for expressive activity.

5. Plaintiffs also cite *Perry v. Los Angeles Police Dep't*, 121 F.3d 1365 (9th Cir.1997), which found a city ordinance banning sales and solicitation of donations along the Venice Beach boardwalk to be facially unconstitutional. However, *Perry* is unhelpful to plaintiffs argument because there was *no* dispute in that case concerning the public forum status of the Venice Beach boardwalk. *Id.* at 1368. Likewise, in other cases cited by plaintiffs, *Rohman v. City of Portland*, 909 F.Supp. 767, 772 (D.Or.1995), and *Congregation Lubavitch v. City of Cincinnati*, 997 F.2d 1160, 1161 (6th Cir.1993), this issue was also undisputed.

6. *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), treated public sidewalks surrounding the Soviet and Nicaraguan

embassies no differently from other public sidewalks. *Grace* held that sidewalks surrounding the United States Supreme Court building are indistinguishable from other public sidewalks. 461 U.S. at 179–80, 103 S.Ct. 1702.

7. Other cases relied upon by plaintiffs are likewise distinguishable. In *Kreisner v. City of San Diego*, 1 F.3d 775, 785 (9th Cir.1993), the Ninth Circuit rejected the argument that a pavilion in a city park was a designated public forum instead of a traditional public form because the pavilion was part of a public park which is unquestionably a traditional public forum and because the city made no effort to limits its use. In dicta, the court did express "grave doubts about the City's ability, should it so choose, to withdraw the [pavilion] from its status as a traditional public forum." *Id.* However, by citing *United States v. Grace* in support of its statement, the court indicated that only an attempt to change the forum status by governmental *ipse dixit*, and not by transforming the physical character and use of the property, would be doubtful. See *id.* In *Citizens to End Animal Suffering And Exploita-*

AMERICAN CIV. LIBERTIES UNION v. CITY OF LAS VEGAS    **1077**

Cite as 13 F.Supp.2d 1064 (D.Nev. 1998)

the physical character and use of the public property now encompassed by the Mall has been changed at great expense to the City and the City's private partners in the Mall venture. Formerly consisting of public streets and sidewalks whose traditional use included public expression, the purpose and use of the Mall today is revitalization of the downtown business area by promoting commercial activity in a safe, convenient, relaxing pedestrian environment and by providing entertainment to draw visitors and tourists to the area. Moreover, unlike the sidewalks in *Boos* and *Grace* which bordered nonpublic forum property but were identical to the surrounding public forum sidewalks, the physical characteristics of the Mall clearly distinguish it from the surrounding streets and sidewalks. In contrast to the uncovered, unadorned public streets and sidewalks surrounding the Mall, a 10-story metal canopy hangs over the Mall floor and displays light shows nightly accompanied by music from the speakers throughout the Mall. Cf. *Jacobsen*, 993 F.2d at 657 (noting that portion of a sidewalk under overhang of Post Office building was nonpublic forum federal property and was distinguishable from public forum municipal sidewalks near the Post Office). In addition, the distinctive pattern, color and texture of the single-level floor of the Mall as well as the special lighting, benches, landscaping, and kiosks all provide notice to visitors that they have entered a special enclave which is separate and distinct from the surrounding public forum areas. See *Lee*, 505 U.S. at 680, 112 S.Ct. 2701 ("separation from acknowledged public areas may serve to indicate that the separated property is a special enclave, subject to greater restriction"); *Grace*, 461 U.S. at 179–80, 103 S.Ct. 1702 (distinguishing the sidewalks surrounding the U.S. Supreme Court building in *Grace* from the sidewalks located within an enclosed military base in *Greer* because there was "no indication whatever to persons ... that they have entered some special type of enclave").

**(2) Designated Public Forums**

**[24, 25]** A designated public forum can be created only "by intentionally opening a non-traditional public forum for public discourse." *Lee*, 505 U.S. at 679–80, 112 S.Ct. 2701 (quoting *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439). Neither government inaction nor permitting members of the public to freely visit a place owned or operated by the Government creates a designated public forum. *Id.* In determining government intent, the court considers the government's purpose in creating the forum as reflected by the "policy and practice of the government" and "the nature of the property and its compatibility with expressive activity." *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439. However, "selective access, unsupported by evidence of purposeful designation for public use, does not create a public forum." *Id.* at 805, 105 S.Ct. 3439.

**[26]** In the alternative to its traditional public forum argument, plaintiffs argue that the Mall is a designated public forum because defendants have opened the Mall up to expressive First Amendment activity. As evidence of this designation, plaintiffs rely solely upon representations made by defendants in this proceeding that speech and other activities protected by the First Amendment, other than solicitation or in-hand distribution of literature, are allowed in the Mall, except to the extent they may be regulated by generally applicable ordinances or state statutes. See Reply at 7 (citing Defendants' Opposition at 12 and Exh. A thereto (Paris Decl.) ¶ 9, 10, 12). Because defendants have not specifically restricted other types of expressive activity by ordinance, such as demonstrating, carrying banners, placards or pickets, and collecting signatures, plaintiffs claim that defendants have opened up the Mall to public discourse and that it must be treated as a designated public forum. Plaintiffs cite *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) and *Cinevision Corp. v. City of Burbank*, 745 F.2d 560

*tion, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F.Supp. 65, 75–76 (D.Mass.1990), the court found that the public property at issue, pedestrian lanes in the Faneuil Hall area in Boston, was a traditional public forum or at least a designated public forum because "the entire Faneuil Hall

area has long been a center for public debate and expression" and the lease to defendant contained the express condition that defendant maintain its historic public character. No such condition was contained in the ordinance creating the Mall.

(9th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985), in support of their argument. Both *Southeastern Promotions* and *Cinevision* are distinguishable because the government in those cases sought to restrict the content of theatrical or musical performances which could be presented at a municipally-owned amphitheater or theater. Yet, these public facilities were designed for, dedicated to, and opened up for very *same* expressive activities, performing music and plays, that the government later sought to restrict based on content. See 420 U.S. at 555, 95 S.Ct. 1239, 745 F.2d at 570–71.

Here, in contrast, the City passed ordinances restricting certain types of expressive activities, solicitation and hand billing, in the Mall at the outset of the Mall's development. Yet plaintiffs argue that by failing to restrict *all* types of expressive activity, the City demonstrated its intent to create a public forum. This argument flies in the face of the principles recognized by the Supreme Court in *Lee* and *Kokinda* that the government does not create a designated public forum by inaction, by freely allowing the public to visit the property, or by permitting some speech activities. *Lee,* 505 U.S. at 679–80, 112 S.Ct. 2701; *Kokinda,* 497 U.S. at 729, 110 S.Ct. 3115 (practice of allowing leafleting and picketing on postal premises does "not add up to the dedication of postal property to speech activities"); see also *Perry Educ. Ass'n,* 460 U.S. at 47, 103 S.Ct. 948 ("selective access does not transform government property into public forum").

Rather than inferring intent from inaction, one can find evidence of the City's intent not to designate the Mall as public forum by examining the legislative history of the ordinance creating the Mall, the Mall's purpose and use as a commercial and entertainment facility, and the incompatibility of such use with the expressive activity sought to be limited. See LVMC § 11.68.100 (statement of legislative purpose in creating Mall); Defendants' Motion, Exh. G (legislative history of anti-solicitation ordinance including evidence of incompatibility of solicitation with Mall's purpose); see also *General Media Communications, Inc. v. Cohen,* 131 F.3d 273, 285 (2nd Cir.1997) ("[t]he Supreme Court has recognized that the government's

dedication of property to a commercial enterprise is inconsistent with an intent to create a public forum"); *Hubbard Broadcasting, Inc. v. Metropolitan Sports Facilities Comm'n,* 797 F.2d 552, 555 (8th Cir.1986) (sports complex was not a public forum because it was a commercial venture by the city constructed to fill need for such a facility and to provide economic benefits to area), *cert. denied,* 479 U.S. 986, 107 S.Ct. 576, 93 L.Ed.2d 579 (1986); *International Soc'y for Krishna Consciousness v. New Jersey Sports and Exposition Authority,* 691 F.2d 155, 161 (3d Cir.1982) (finding state-owned athletic and racing complex is a commercial venture not intended to be a public forum and upholding solicitation ban because solicitation is counterproductive to its commercial purpose). In light of these factors, plaintiffs cannot show that they will likely succeed in proving that the City intended to designate the Mall as a public forum. See *Cornelius,* 473 U.S. at 803, 105 S.Ct. 3439; *Planned Parenthood,* 941 F.2d at 825.

### b. Government Restriction on Speech
#### (1) Anti–Leafleting Ordinance

[27–29] Before considering plaintiffs' First Amendment challenge to the City's anti-leafleting ordinance, this court will address their claim that this ordinance violates equal protection because it contains an exception for "any conduct 'arguably protected' by the National Labor Relations Act." LVMC § 11.68.100. To be upheld under the Equal Protection Clause, statutory classifications must be rationally related to a legitimate governmental purpose and those affecting fundamental rights must survive strict scrutiny. "When government regulation discriminates among speech-related activities *in a public forum,* the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey,* 447 U.S. at 461–62, 100 S.Ct. 2286 (emphasis added) (citing *Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 96–97, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). Here, plaintiffs have not shown that they would succeed in proving the Mall is a public forum and there is no fundamental First Amend-

AMERICAN CIV. LIBERTIES UNION v. CITY OF LAS VEGAS    1079
Cite as 13 F.Supp.2d 1064 (D.Nev. 1998)

ment right to engage in expressive activities in a nonpublic forum. See *Perry Educ. Ass'n,* 460 U.S. at 54–55, 103 S.Ct. 948 (distinguishing *Carey* and *Mosley* because "[t]he key to those decisions . . . was the presence of a public forum"); *Monterey County,* 812 F.2d at 1200 ("only when rights of access associated with a public forum are improperly limited may we conclude that a fundamental right is impinged"); thus, the plaintiff could "lay no claim to a fundamental right of access here because the applicable forum is nonpublic"). Thus, the classification need only be rationally related to a legitimate governmental purpose. *Id.*

The governmental interests advanced by defendants in this case are not rationally related to the distinction between labor leafleting and all other types of leafleting. The City has legitimate interests in maintaining a safe and comfortable atmosphere in the Mall in order to compete with other commercial and entertainment venues by reducing litter, preventing harassment and intimidation of pedestrians, and restricting activities which interrupt pedestrian traffic flow and cause pedestrian congestion. See, *e.g., Lee,* 505 U.S. at 683–85, 112 S.Ct. 2701 (traffic flow and pedestrian congestion are legitimate governmental interests); *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (government has legitimate interest in advancing aesthetic values); cf. *Edenfield v. Fane,* 507 U.S. 761, 769, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (protecting public from *commercial* solicitation which intimidates, harasses, or invades the privacy of recipients is a legitimate and important state interest). However, permitting an exception to the leafleting ban for labor leafleting, an activity protected under the National Labor Relations Act, see *Beth Israel Hosp. v. NLRB,* 437 U.S. 483, 491–93, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978), does not rationally advance the City's interests with respect to litter, traffic flow, or protection of pedestrians from harassment. Cf. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 418–19, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)

(applying First Amendment commercial speech analysis and rejecting distinction between news racks distributing newspapers and those distributing commercial handbills because discrimination against commercial handbills did not "reasonably fit" government's legitimate interests in safety and aesthetics). The only other justification for the labor leafleting exception advanced by defendants, that it was necessitated by the federal preemption of state and local law touching upon labor relations, has been rejected by the Supreme Court. See *Mosley,* 408 U.S. at 102 n. 9, 92 S.Ct. 2286 (finding that the federal preemption argument does not justify a total ban of nonlabor picketing).

Because plaintiffs have shown that they would likely succeed on the merits of their equal protection challenge to the anti-leafleting ordinance, the court need not reach the merits of plaintiffs' First Amendment challenge to that ordinance.

**(2) Anti–Solicitation Ordinance**

[30] Because plaintiffs have failed to demonstrate that they would likely succeed in proving the Mall is a traditional or designated public forum, the constitutionality of the solicitation ordinance must be evaluated as a government restriction on speech in a nonpublic forum. As such, the anti-solicitation ordinance will be upheld under the First Amendment if it is reasonable in light of the purposes of the forum and is not designed to prohibit the activity merely because of disagreement with the views expressed.[8] *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948. "The restriction 'need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation.'" *Lee,* 505 U.S. at 683, 112 S.Ct. 2701 (quoting *Kokinda,* 497 U.S. at 730, 110 S.Ct. 3115) (emphasis in original). Moreover, access to a nonpublic forum may be based on topic and speaker identity as long as the distinctions drawn are viewpoint-neutral and reasonably related to the purposes of the forum. *Perry Educ. Ass'n,* 460 U.S. at 49, 103 S.Ct. 948.

8. Because plaintiffs fails to offer any evidence that the anti-solicitation ordinance is not enforced against the hotel-casinos and other businesses along the Mall, the court will not consider

plaintiffs' equal protection challenge to that ordinance based upon selective enforcement. See Defendants' Opp., Exh. B (Paris Aff.) ¶ 8.

#### (a) Reasonableness Analysis

[31]  Plaintiffs contend that the anti-solicitation ordinance places unreasonable restrictions on their First Amendment rights because defendants have not shown that solicitation is incompatible with the commercial and entertainment use of the Mall. In *Lee*, the Supreme Court held that an airport terminal is a nonpublic forum and upheld the ban on solicitation under a reasonableness standard because solicitation activities in an airport are disruptive to the traffic flow of pedestrians and present risks of duress and fraud. 505 U.S. at 683–84, 112 S.Ct. 2701. In addition, because pedestrian congestion is a serious problem for airports, the incremental effects of solicitation activities could prove to be quite disruptive, especially since if the plaintiff was given access, so too must all other religious, nonreligious, and noncommercial organizations. *Id.* at 685, 112 S.Ct. 2701. Moreover, the ban was reasonable given the fact that solicitation was permitted on the sidewalks outside of the airport terminal which provided the plaintiff access to a majority of the airport visitors. *Id.* at 684–685, 112 S.Ct. 2701. The Supreme Court and other courts have reached similar conclusions regarding solicitation bans on Post Office sidewalks, *Kokinda*, 497 U.S. at 737, 110 S.Ct. 3115, in an athletic and racing complex, *New Jersey Sports and Exposition Auth.*, 691 F.2d at 161, and on a tourist beach and bordering sidewalk, *Chad*, 861 F.Supp. at 1061.

As in *Lee*, the City has actual and legitimate interests in preventing pedestrian congestion and interference with pedestrian traffic flow and reducing the risk of fraud and duress. See Defendants' Motion, Exh. G at 1 (specifically identifying these interests in the full text of the ordinance adopted by the City Council); *One World*, 76 F.3d at 1013 (giving deference to city council's determination that government interests were real, not merely conjectural). As in *New Jersey Sports and Exposition Auth.* and *Chad*, the City has actual and valid interests in protecting Mall patrons from unwanted intrusions, harassment or intimidation, preventing competition by solicitors for Mall patrons' money, and limiting disruption to the Mall's commercial purpose and use of attracting visitors and revitalizing the downtown business area.

See Defendants' Motion, Exh. G; *New Jersey Sports and Exposition Auth.*, 691 F.2d at 161 (finding that solicitation is disruptive because it competes with operators of the sports and racing complex for patrons' money and that solicitation ban is a legitimate means of protecting patrons from unwanted intrusions); *Chad*, 861 F.Supp. at 1063 (holding that city had legitimate interest in eliminating nuisance activity on its famous beach, especially since the beach's rehabilitation and redevelopment as a resort destination played an integral part in city's economic development plans). These interests are particularly significant here because the Mall, unlike an airport or other transportation center, must attract visitors in order to compete with numerous other shopping and entertainment venues in Las Vegas. See, e.g., *New Jersey Sports and Exposition Auth.*, 691 F.2d at 162 (recognizing that solicitation could offend or annoy patrons so much that they will choose in the future to attend other competing, privately-owed commercial venues).

According to testimony of numerous witness, written surveys, letters, and other documentation presented to the City Council, solicitation activities in the Mall would disrupt the comfortable environment that the Mall seeks to maintain for its patrons and that disruption would in turn cause visitors, tenants, and corporate sponsors of the Mall to go elsewhere or deter them from coming to the Mall in the first instance. See Defendants' Motion, Exh. G. Without visitors, the City's purpose in creating the Mall to revitalize the downtown business area would be compromised and the Mall itself would be in jeopardy economically.

In addition, as in *Lee*, the solicitation ban does not foreclose all channels of communication by plaintiffs because the public sidewalks and streets surrounding the Mall are unquestionably public fora. Plaintiffs complain that Mall patrons, unlike the airport visitors in *Lee*, have alternative ways to enter and exit the Mall through the hotel-casinos bordering the Mall, that the majority of patrons do not use the surrounding public sidewalks for access to the Mall, and that even those who do use those sidewalks are more dispersed and more difficult to reach than

AMERICAN CIV. LIBERTIES UNION v. CITY OF LAS VEGAS    **1081**
Cite as 13 F.Supp.2d 1064 (D.Nev. 1998)

they would be inside the Mall. In addition to the lack of evidence showing that the majority of patrons enter and exit the Mall from hotel-casinos, plaintiffs' argument is unpersuasive because *Lee* did not hold that a solicitation ban is reasonable *only* if there is an alternative way to easily reach a *majority* of those persons who could be reached within the nonpublic forum itself. See *Lee*, 505 U.S. at 684–85, 112 S.Ct. 2701.

Plaintiffs attempt to distinguish the decision upholding the solicitation ban in *Lee* on the grounds that the challenged restrictions in that case reached "only personal solicitations for immediate payment of money." 505 U.S. at 704, 112 S.Ct. 2701. Relying on dicta in Kennedy's concurrence in *Lee*, plaintiffs argue that the anti-solicitation ordinance in this case is overbroad because it bars written or oral requests for funds at some later date, such the distribution of a written request for a donation accompanied by a preprinted envelope. Kennedy stated that a ban on requests for money at some later date, which was not present in *Lee*, *would be* unreasonable because such solicitations do not involve the same potential for fraud or undue pressure as requests for immediate payment of money. *Id.* at 704–06, 112 S.Ct. 2701. Although the plaintiffs' overbreadth argument addresses the governmental interest in reducing the risk of fraud and duress, it does not take into account the incompatibility of any form of solicitation with the commercial and entertainment purposes of the Mall. The legislative history and common sense alike suggest that potential Mall patrons prefer to visit a commercial and entertainment venue where they will not be stopped and harassed by solicitors asking for money, regardless of whether the request is for an immediate donation or a donation in the future. See Defendants' Motion, Exh. G. As a result, even this more limited kind of personal solicitation in the Mall would disrupt the City's goal in creating the Mall to attract visitors and revitalize the downtown business area. Thus, a ban on all forms of solicitation is reasonable in light of the Mall's commercial purpose and is a legitimate way to further the City's interests.

### (b) Viewpoint Neutral

Because the ordinance imposes a flat ban on solicitation, it does not discriminate on the basis of viewpoint or content. See LVMC §§ 10.44.010(A), 10.44.030(F); *Kokinda,* 497 U.S. at 736, 110 S.Ct. 3115. It simply excludes all solicitation activities irrespective of the purpose behind those activities.

### (3) FSELLC's Discretion Over Mall Vending

[32] Under LVMC § 11.68.100(B), FSELLC has the authority to permit or deny plaintiffs the opportunity to engage in "mall vending." "Mall vending" is defined as "the distribution, display or sale, or any combination thereof, of consumer goods or services (including food, drink, or merchandise) from a pushcart, concession stand, kiosk or other similar structure." LVMC § 11.68.020. The sale of message-bearing merchandise is clearly encompassed in this definition of mall vending. FSELLC's regulation of mall vending under LVMC § 11.68.100(B) must "promote the best interests of the public and carry out the provision[s] of the Pedestrian Mall Act" and is "subject to the City's police power, the provisions of the management agreement and other provisions of [Chapter 11.68] and shall not be construed in derogation of the constitutional or statutory rights of any person." See LVMC § 11.68.070(H). Plaintiffs allege that FSELLC has an unconstitutional "policy" of prohibiting plaintiffs from selling message-bearing merchandise in the Mall. Plaintiffs' argument will be construed as a challenge to the constitutionality of LVMC § 11.68.070(B), rather than a FSELLC policy, because that ordinance creates a licensing scheme which provides FSELLC the discretion to deny or permit the expressive activity of *selling* message-bearing merchandise from structures in the Mall.[9]

In *Gaudiya Vaishnava Soc. v. City and County of San Francisco,* 952 F.2d 1059, (9th Cir.1990), the Ninth Circuit considered a city ordinance which required all individuals, including those hired by charitable organizations, to obtain a peddling permit from the

---

9.  To the extent that plaintiffs seek to "give away" such merchandise to Mall patrons who give them

a donation, such conduct is governed by the anti-solicitation ordinance.

city's police chief before selling merchandise on public streets. The ordinance provided no specific grounds for granting or denying permits but simply stated that the police chief "may" issue a permit. First, the court found that the sale of merchandise which is inextricably intertwined with a statement carrying a religious, political, philosophical or ideological message is protected by the First Amendment. 952 F.2d at 1063–65. Second, the court determined that the complete discretion granted to the police chief in denying or granting peddling permits violates the First Amendment because it allows the police chief to discriminate on the basis of content in a public forum. *Id.* at 1065–66.

Although *Gaudiya* and other cases cited by plaintiffs which invalidated licensing schemes involved public forums rather than nonpublic forums, it appears that this licensing scheme violates the lesser standard of allowing reasonable, viewpoint-neutral restrictions on expressive activity in a nonpublic forum. See *Sentinel,* 936 F.2d at 1199–1200 and n. 11 (finding neutral criteria must be established in permit scheme governing placement of news racks in nonpublic forum rest areas in order to channel discretion of state officials and ensure decisions are not based on content or viewpoint). For example, because nothing in LVMC § 11.68.100(B) or § 11.68.070 limits FSELLC's discretion to deny permission to sell message-bearing merchandise based on the seller's viewpoint, the licensing scheme cannot be considered viewpoint-neutral. See *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) ("a law or policy permitting communication in a certain manner for some but not others raises the specter of content and viewpoint censorship"); cf. also *Gaudiya,* 952 F.2d at 1066 (unfettered discretion to deny a permit application "grants officials the power to discriminate and raises the spectre of selective enforcement on the basis of the *content* of the speech") (emphasis added). Thus, plaintiffs are likely to succeed in their facial challenge to the licensing scheme created by LVMC § 11.68.100(B).

### 3. Irreparable Harm, Balance of Hardships and Public Interest

[33] Because plaintiffs have shown that they would likely succeed on the merits of their challenge to the anti-leafleting ordinance and the ordinance creating a licensing scheme governing sale of message-bearing merchandise, a preliminary injunction is warranted if they show a possibility of irreparable harm. *Gilder,* 936 F.2d at 422. Because the "loss of First Amendment rights, even for a short time, constitutes irreparable injury" and the anti-leafleting ordinance and the ordinance creating a licensing scheme governing the sale of message-bearing merchandise unquestionably limits plaintiffs' ability to engage in expressive activities, there is clearly the possibility of irreparable harm in this case. See *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); see also *Ebel v. City of Corona,* 698 F.2d 390, 393 (9th Cir.1983) (applying *Elrod* ). Thus, plaintiffs have met their burden on their preliminary injunction motion with respect to these ordinances.

[34] However, plaintiffs have *not* shown that they would likely succeed on the merits of their challenge to anti-solicitation ordinance and FSELLC policies. Thus, in order for a preliminary injunction to issue against the enforcement of that ordinance, plaintiffs must demonstrate that the balance of hardships tips sharply in their favor. *Gilder,* 936 F.2d at 422. Plaintiffs have not met this requirement. Although the irreparable harm of the loss of First Amendment rights is well recognized, it does not always outweigh other interests or hardships. See *Hale,* 806 F.2d at 918 (finding plaintiffs' First Amendment claim did not outweigh government's interests in safety and security of nuclear testing site; plaintiffs' inability to demonstrate in a nonpublic forum was not a hardship where nearby public forum provided an alternative channel of communication). Here, the City's interest in maintaining the safe and comfortable environment in the Mall to attract visitors and revitalize the downtown business area is at least as important as plaintiffs' interest in soliciting in the Mall and may outweigh it. Cf. *Chad,* 861 F.Supp. at 1064 (city's interest in maintaining safe "tourist

zone" in nonpublic forum outweighs plaintiff's interest in soliciting, begging or panhandling on tourist beach). The public interest in the economic success of the Mall venture as well as in maintaining an attractive environment for commercial and entertainment activities is advanced by the denial of a preliminary injunction which would bar the enforcement of the anti-solicitation ordinance in the Mall. In contrast, the public interest in safeguarding First Amendment rights is not as strong where the public property at issue is a nonpublic forum, rather than a traditional or designated public forum.

Moreover, plaintiffs seek a preliminary injunction from this court three months after filing their complaint in this case and over two years after the Mall opened. Such a delay "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.,* 762 F.2d 1374, 1377 (9th Cir.1985) (plaintiff's long delay before seeking a preliminary injunction was one of three reasons for court's finding that plaintiff failed to sustain its burden of proving irreparable injury). Plaintiffs' delay also undermines plaintiffs' assertion of immediate, irreparable harm because plaintiffs are seeking a *change* in the status quo; *i.e.,* an order enjoining the enforcement of a City ordinance which was enacted three years ago in 1995. See *Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1092 n. 27 (3rd Cir.1984) ("the district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim relief has allowed the status quo to change through unexplained delay"); see also *3570 East Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1257, 1267 (C.D.Cal.1995), *aff'd,* 99 F.3d 1147 (9th Cir.1996) (finding that enjoining city from enforcing adult business zoning ordinance would be especially harmful because such a radical change from the status quo would occur without any public comment, time for legislative deliberation, or opportunity to study the secondary effects).

Thus, plaintiffs are unable to show that the balance of hardships tips sharply in their favor with respect to the anti-solicitation ordinance and FSELLC policies, and their motion to preliminarily enjoin the enforcement of that ordinance and those policies will be denied.

## C. Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment

Because defendants have presented material outside the complaint as part of a motion to dismiss, their motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b); *Skyberg v. United Food & Commercial Workers Int'l Union,* 5 F.3d 297, 302 n. 2 (8th Cir.1993).

[35, 36] Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, *Zoslaw v. MCA Distr. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983), and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Baker v. Centennial Ins. Co.,* 970 F.2d 660, 662 (9th Cir.1992). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982).

[37–39] Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]here is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). "A mere scintilla of evidence will not

do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Products v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

[40] For the reasons stated above in the court's ruling on plaintiffs' preliminary injunction motion, defendants' motion for summary judgment will be denied with respect to the anti-leafleting ordinance and the ordinance creating a standardless licensing scheme governing mall vending. In addition, because the facts are disputed regarding whether any FSELLC policies exist which infringe on plaintiffs' First Amendment rights to engage in activities such as demonstrating, speech making, and protesting, summary judgment is precluded on plaintiffs' challenge to these alleged policies, except with respect to the alleged policy regarding the placement of tables, racks, chairs or similar structures. Compare 2/13/98 Peck Aff. (filed with Reply) ¶¶ 4–5 with Defendants' Supplemental Affidavits, Exh. A (Aff. of Kristin B. McMillan) ¶¶ 8–9.

[41] As to plaintiffs' challenge to the anti-solicitation ordinance, defendants are entitled to summary judgment. For the reasons discussed above, the Mall is a nonpublic forum and the solicitation ban is viewpoint-neutral and reasonable in light of the commercial purpose of the Mall. Thus, the solicitation ban does not violate the First Amendment. *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948. Plaintiffs have failed to raise a genuine issue of material fact regarding the anti-

solicitation ordinance. For example, on the question of the forum status of the Mall, there is no dispute about the facts surrounding the construction or the physical character or use of the Mall, but only the legal conclusions which should be drawn from such facts. With respect to the question of reasonableness, plaintiffs have also failed to point to any disputed facts, but simply argue that the ban is overbroad to the extent it encompassed requests for donations to be made at some future time. Plaintiffs offer no facts to support this argument and cite instead to dicta in Kennedy's concurrence in *Lee.* This is insufficient to defeat summary judgment.[10]

[42] Similarly, defendants are entitled to summary judgment on plaintiffs' challenge to FSELLC's alleged policy or permit system regarding the placement of tables, racks, chairs, and other similar structures in the Mall. Even if FSELLC has unbridled discretion in using its authority pursuant to LVMC § 11.68.100(H) to grant or deny permission to place such structures in the Mall, plaintiffs cannot assert a facial challenge to this policy or permit system because plaintiffs do not allege nor could they prove that the placement of structures alone is "conduct commonly associated with expression." See *Roulette,* 97 F.3d at 305. Moreover, plaintiffs have failed to produce any evidence that this policy or permit system has been applied to any of them in connection with any expressive activities such as the sale of message-bearing merchandise. Cf. *One World,* 860 F.Supp. at 1462–64 (concluding that a strong likelihood exists that the plaintiffs' use of tables to sell message-bearing merchandise should be characterized as expressive and holding licensing scheme regarding placement of tables on public sidewalks unconstitutional *as applied* to plaintiffs). Thus, plaintiffs' challenge to the FSELLC policy or permit system governing the placement of tables, racks, chairs or similar structures on the Mall must fail as a matter of law.

### III. *Conclusion*

IT IS ORDERED that plaintiffs' motion (# 21) for a preliminary injunction is

---

**10.** Moreover, plaintiffs' reference, in a footnote in their opposition brief, to the need for additional discovery fails to satisfy Fed.R.Civ.P. 56(f).

KARSIAN v. INTER–REGIONAL FINANCIAL GROUP, INC.    **1085**
Cite as 13 F.Supp.2d 1085 (D.Colo. 1998)

*GRANTED* in part and *DENIED* in part. Defendants shall be enjoined from enforcing LVMC § 11.68.100(I) until further order by this court. Defendants shall also be enjoined from enforcing LVMC § 11.68.100(B) against plaintiffs with respect to the sale of merchandise constituting a statement carrying a religious, political, philosophical or ideological message relevant to the purpose of the plaintiff organizations until further order by this court.

**IT IS FURTHER ORDERED** that defendants' summary judgment motion (# 18) is *GRANTED* in part and *DENIED* in part as described above.



**Raymond T. KARSIAN, et al., individually, and for and on behalf of themselves and all other annuity holders similarly situated, and their heirs, assigns, subrogees, and representatives, Plaintiffs,**

v.

**INTER–REGIONAL FINANCIAL GROUP, INC., n/k/a Interra Financial Incorporated and Dain Bosworth, Incorporated, Defendants.**

No. CIV.A. 93–D–1806.

United States District Court,
D. Colorado.

Aug. 7, 1998.

Following jury verdict for plaintiffs, plaintiffs moved to review taxation and defendants objected to clerk's taxation of costs. The District Court, Daniel, J., held that: (1) costs for service of process were taxable; (2) some deposition costs were taxable; (3) costs of daily transcripts were not taxable; (4) some witness fees were taxable; (5) most costs for photocopying were taxable; and (6) cost of editing videotaped exhibits used at trial were taxable.

Costs granted in part and denied in part.

**1. Federal Civil Procedure ⟐2742.1**

There is presumption in favor of awarding costs to prevailing party.

**2. Federal Civil Procedure ⟐2723**

Final award of costs rests within discretion of district court.

**3. Federal Civil Procedure ⟐2735**

Trial court has no discretion to award costs not contemplated by statute governing taxation of costs. 28 U.S.C.A. § 1920.

**4. Federal Civil Procedure ⟐2736**

Prevailing plaintiffs were not entitled to costs for serving individuals defendants would have produced without requirement of service. 28 U.S.C.A. § 1920(1).

**5. Federal Civil Procedure ⟐2736**

Prevailing plaintiffs were not entitled to tax, as costs of service, expenses incurred by their need to hire out-of-state counsel; such costs were attorney fees and not service of process fees. 28 U.S.C.A. § 1920(1).

**6. Federal Civil Procedure ⟐2738**

When deposition was reasonably necessary to litigation, resulting costs are generally allowable. 28 U.S.C.A. § 1920(2).

**7. Federal Civil Procedure ⟐2738**

Costs for depositions taken solely for discovery purposes or for counsel's convenience are not taxable. 28 U.S.C.A. § 1920(2).

**8. Federal Civil Procedure ⟐2738**

Costs of stenographic transcription or videotaping of deposition of individuals who later testified at trial are taxable. 28 U.S.C.A. § 1920(2).

**9. Federal Civil Procedure ⟐2738**

Costs for depositions cited in summary judgment briefs are taxable; only cost of stenographic transcript is taxable, unless witness also testified at trial. 28 U.S.C.A. § 1920(2).

**10. Federal Civil Procedure ⟐2738**

Costs of depositions where depositions excerpts were exchanged for use at trial are taxable; only cost of stenographic transcript is taxable, unless witness also testified at trial. 28 U.S.C.A. § 1920(2).