IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE ON JOBS CANDIDATE ADVOCACY FUND and BUILDING OWNERS AND MANAGERS ASSOCIATION OF SAN FRANCISCO INDEPENDENT EXPENDITURE POLITICAL ACTION COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>DENNIS J. HERRERA, KAMALA D. HARRIS, the SAN FRANCISCO ETHICS COMMISSION and CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | No. C 07-03199 JSW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

On August 10, 2007, Plaintiffs Committee on JOBS Candidate Advocacy Fund ("JOBS") and Building Owners and Managers Association of San Francisco Independent Expenditure Political Action Committee ("BOMA") moved for a preliminary injunction seeking to prevent Defendants Dennis J. Herrera, Kamala D. Harris, the San Francisco Ethics Commission and the City and County of San Francisco ("City"), and Defendants' agents and employees (collectively "Defendants"), from enforcing or otherwise giving effect to sections 1.114(c)(1) and 1.114(c)(2) (collectively, Section 1.114(c)") of the San Francisco Campaign Finance Reform Ordinance ("Ordinance"), codified in the San Francisco Campaign and Governmental Conduct Code, and Regulation 1.114-2 of the Regulations to the Ordinance, to the extent that they limit contributions and expenditures by political committees that make

independent expenditures supporting or opposing candidates in City elections. Plaintiffs contend that these provisions violate the First and Fourteenth Amendments to the Constitution of the United States.

On September 17, 2007, the motion duly came on for hearing before the Court. Having considered the parties' pleadings, relevant legal authority, and the record in this case, and having had the benefit of oral argument, the Court GRANTS Plaintiffs' motion for a preliminary injunction.

## FINDINGS OF FACT

The following factual findings are not meant to be binding, but rather represent those facts this Court finds probable that the parties can prove at trial. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). The Court sets out only those facts necessary to support the grounds for resolving the requested injunctions. *See* Fed. R. Civ. P. 52(a).

The Building Owners and Managers Association of San Francisco ("BOMA-SF"), primarily organized to advance the commercial real estate industry in San Francisco, San Mateo, Marin and Sonoma counties, founded and sponsors a political committee, Plaintiff BOMA. (Declaration of Marc L. Intermaggio ("Intermaggio Decl."), ¶¶ 2, 4.) Plaintiff BOMA does not coordinate its efforts or expenditures with candidates or their campaign committees, but rather decides on its own who to support or oppose, and how to spend its money speaking out on issues and candidates. (*Id.*, ¶ 6.) The primary source of funds for Plaintiff BOMA is a line-item on annual dues invoices sent to BOMA-SF's members. (*Id.*, ¶ 8.)

The Committee on JOBS, a coalition of San Francisco's largest employers, is organized for the purpose of revitalizing the business conditions and environment for individuals and organizations doing business in San Francisco. (Declaration of Nathan Nayman ("Nayman Decl."), ¶ 2.) The Committee on JOBS sponsors a political committee, Plaintiff JOBS, which supports candidates for political office in San Francisco who will promote economic development. (*Id.*, ¶¶ 4-5.) Currently, Plaintiff JOBS does not coordinate its efforts or its expenditures with candidates or their campaign committees, but instead decides independently

2

whom it will support and then determines how it will spend its money to express its viewpoint. (*Id.*, ¶ 6.) JOBS has fewer than 50 members and has always had fewer than 50 members, as restricted by its own by-laws. (Supplemental Declaration of Nathan Nayman ("Nayman Suppl. Decl."), ¶ 5.) JOBS only solicits contributions from its members and does not wish to alter the qualifications for membership, its organizational structure or its mission. (*Id.*, ¶¶ 6-7.)

Defendant Herrara is the City Attorney of the City and County of San Francisco and is responsible for enforcing the civil penalties set forth in the Ordinance. (Complaint at ¶ 23.) Defendant Herrera is sued in his official capacity as City Attorney. (*Id.*; Ordinance §§ 1.104(g), 1.168.)

Defendant Harris is the District Attorney for the City and County of San Francisco and is responsible for enforcing the criminal penalties set forth in the Ordinance. (Complaint at ¶ 24.) Defendant Harris is sued in her official capacity as District Attorney. (*Id.*; Ordinance §§ 1.104(g), 1.168.)

Defendant Ethics Commission is the City department that has the specific authority to administer, enforce and provide advice concerning the Ordinance. Ordinance §§ 1.104(g), 1.164, 1.168.) The Ethics Commission is the department specified in the Ordinance for filing the various campaign disclosure reports required by the Ordinance. (Complaint at ¶ 25.)

Defendant the City is the municipal corporation known by the name of San Francisco and includes all its divisions, commissions, departments, officers, and employees who are charged with enforcement of campaign finance laws, including the City Attorney, District Attorney and the Ethics Commission. (Complaint at ¶ 26.)

In 2000, the voters of San Francisco passed the San Francisco Campaign Finance Reform Ordinance, known as Proposition O.

Section 1.114(c)(1) of the Ordinance provides that "[n]o person shall make, and no committee treasurer shall solicit or accept, any contribution which will cause the total amount contributed by such person to the committee to exceed $500 per calendar year."

1    Section 1.114(c)(2) of the Ordinance provides that "[n]o person shall make, and no
2 committee treasurer shall solicit or accept, any contribution which will cause the total amount
3 contributed by such person to all committees to exceed $3,000 per calendar year."

4    For purposes of these limits, the Ordinance defines "committee" to "mean any
5 committee making expenditures to support or oppose a candidate, but shall not include
6 candidates' campaign committees." Ordinance § 1.114(c)(3). In setting out the definition of
7 the term "committee," the Ordinance at Section 1.104(d) states that "committee" shall be
8 defined as set forth in the California Government Code. California Government Code § 82013
9 defines "committee" as "any person or combination of persons who directly or indirectly"
10 receives contributions of $1,000 or more a year, or makes "campaign contributions" of $10,000
11 or more a year, or makes "independent expenditures" of $1,000 or more a year. Cal. Gov't
12 Code
13 § 82013.

14    Both Plaintiffs JOBS and BOMA are political committees within the meaning of
15 California Government Code § 82013 who make independent expenditures in support of or
16 against candidates for elective office. Therefore, both Plaintiffs are subject to the limitations set
17 out in the Ordinance.

18                            **CONCLUSIONS OF LAW**

19    A party seeking a preliminary injunction must show either (1) a combination of probable
20 success on the merits and the possibility of irreparable injury, or (2) that serious questions are
21 raised and the balance of hardships tips sharply in favor of the moving party. *Stuhlbarg Intern.*
22 *Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839-840 (9th Cir. 2001). "'These
23 formulations are not different tests, but represent two points on a sliding scale in which the
24 degree of irreparable harm increases as likelihood of success on the merits decreases.'"
25 *Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410
26 (9th Cir. 1991) (quoting *Big Country Foods, Inc. v. Board of Education*, 868 F.2d

4

1 1085, 1088 (9th Cir. 1989)).  In addition, the Court must also consider the public interest when
2 it assesses the propriety of issuing an injunction.  *Sammartano v. First Judicial District Court*,
3 303 F.3d 959, 973 (9th Cir. 2002).

4     Plaintiffs have demonstrated a substantial likelihood of success on the merits of their
5 First Amendment challenge to Ordinance Sections 1.114(c)(1) and (c)(2).  By law, independent
6 expenditures cannot be coordinated with candidates benefitting from the expenditures.  Cal.
7 Gov't Code §§ 82031, 85500.  Under these restrictions, when making independent
8 expenditures, Plaintiffs cannot consult with, interact with, or otherwise coordinate its
9 independent expenditure communications with the benefitting candidate and/or his agents.

10     Limits on contributions to independent expenditure committees are subject to strict
11 scrutiny because they "plac[e] a substantial burden on protected speech (*i.e.*, barring
12 expenditures)."  *Lincoln Club v. City of Irvine*, 292 F.3d 934, 939 (9th Cir. 2002).  The
13 Ordinance does not merely restrict contributions.  Similar to the ordinance in *Lincoln Club*, the
14 San Francisco Ordinance also restricts expenditures by barring an independent expenditure
15 committee from making independent expenditures over the limits if the source of the
16 committee's money is membership contributions that exceed the Ordinance's prescribed
17 maximum.  *See Lincoln Club*, 292 F.3d at 938.  Also similar to the ordinance at issue in *Lincoln*
18 *Club*, here, the contribution limitations burden protected speech and associational freedoms by
19 requiring dramatic changes in organizational structure, at least for Plaintiff JOBS, in order to
20 maintain its ability to engage in political speech at the level it maintained prior to the passage of
21 the Ordinance.  (*See* Nayman Suppl. Decl., ¶¶ 5-7, indicating that JOBS has fewer than 50
22 members as restricted by its by-laws and does not wish to restructure to accumulate
23 contributions from larger number of potential members.)

24     Because, just as in *Lincoln Club*, the practical effect of the Ordinance limitations here is
25 to bar independent expenditures over the restrictive limits, the Ordinance functions as an
26 expenditure limit and triggers strict scrutiny.  Just as the Ninth Circuit held, "[n]early all of the
27 Supreme Court and Ninth Circuit cases that have considered the constitutionality of
28 contribution limits, however, have done so in the context of *contributions to candidates* ...."

5

*Lincoln Club*, 292 F.3d at 937. The *Lincoln Club* court therefore determined that the lesser level of scrutiny applied to limits on contributions to candidates did not provide the appropriate level of scrutiny for "an Ordinance that acts as both an expenditure and a contribution limitation." *Id.* By limiting the source of funds available for political committees to conduct independent expenditures, the Ordinance's challenged provisions act as both a limit on contributions to the committee and as a limit on its expenditures. *See OakPAC et al. v. City of Oakland*, C06-5266 MJJ (N.D. Cal. Oct. 19, 2006), at 2 (citing *Lincoln Club*, 292 F.3d at 939); *see also San Jose Silicon Valley Chamber of Commerce Political Action Committee et al. v. City of San Jose*, C06-4252 JW (N.D. Cal. Sept. 20, 2006) (holding that, although somewhat factually distinguishable, the district court should follow *Lincoln Club* and apply a strict level of scrutiny where the committee faces restrictions on its independent expenditures as a result of the municipal statute).[1]

Because Section 1.114(c) as implemented by Regulation 1.114-2(a)(2), operates as a direct restraint on independent expenditures by political committees, the Court subjects it to strict scrutiny, requiring Defendants to show that Section 1.114(c) is narrowly tailored to serve a compelling government interest. *See ACLU of Nevada v. Heller*, 378 F.3d 979, 992-93 (9th Cir. 2004).

Under strict scrutiny, this Court finds that the Ordinance Section 1.114(c) does not serve a compelling governmental interest. Defendants contend that the Ordinance serves the important interest of preventing corruption of candidates for public office, or the appearance of such corruption. "[P]reventing corruption or the appearance of corruption are the only

---

[1] The Court finds Defendants' contention that *McConnell v. Federal Election Commission*, 540 U.S. 93, 152, n.48 (2003), requires a lesser level of scrutiny to be unpersuasive. The *McDonnell* Court faced dissimilar facts. First, the contribution regulations at issue in that case did not impinge on core First Amendment associational interests, like the municipal ordinances at issue here. Second, the focus in *McDonnell* was on contribution limits and the connection between contributors, national party committees receiving contributions, and those holding federal office. *See also OakPAC et al. v. City of Oakland*, C06-5266 MJJ (N.D. Cal. Oct. 19, 2006). On the current record before this Court, there is no evidence of a connection between Plaintiffs and their expenditures and the municipal candidates. The factual record presented consists almost entirely of hearsay newspaper articles with no specific findings that there was either corruption or the appearance of corruption actually connected to the contributions made by independent expenditure committees.

6

1  legitimate and compelling government interests thus far identified for restricting campaign
2  finances." *Federal Election Commission v. National Conservative Political Action Committee*,
3  470 U.S. 480, 496-97 (1985). However, the Supreme Court has held that preventing corruption
4  or the appearance of corruption only justifies the regulation of campaign activity coordinated
5  with candidates, not the independent activities of political committees, because the "absence of
6  prearrangement and coordination of an expenditure with the candidate or his agent not only
7  undermines the value of the expenditure to the candidate, but also alleviates the danger that
8  expenditures will be given as a *quid pro quo* for improper commitments from the candidate."
9  *Id.* at 497 (citing *Buckley v. Valeo*, 424 U.S. 1, 47 (1976); *see also California Medical*
10 *Association v. Federal Election Commission*, 453 U.S. 182, 203 (1981) (Blackmun, J.,
11 concurring) (stressing that the majority's analysis finding corruption a compelling government
12 interest in the context of candidate political committees, would produce a different result if it
13 were applied to contributions to independent expenditures committees. "Multicandidate
14 political committees are therefore essentially conduits for contributions to candidates, and as
15 such they pose a perceived threat of actual or potential corruption. In contrast, contributions to
16 a committee that makes only independent expenditures pose no such threat."); *see also*
17 *OakPAC*, C06-5266 MJJ, at 3 (holding that "because independent expenditures must be
18 conducted without the input or knowledge of the benefitting candidate, the Court finds no basis
19 in the record before it to support limits on contributions to independent expenditure committees
20 under the anti-corruption rationale.") Based on the record before this Court, Defendants have
21 not demonstrated that the Ordinance provides protection from corruption or the appearance of
22 corruption of candidates for public office.

23       In addition, the Ordinance is not narrowly tailored to serve a compelling government
24 interest, should the Court have found that protection from the appearance of corruption
25 constitutes such an interest in this context. Defendants have not argued that the Ordinance was
26 so narrowly tailored, and the Court finds that there is no authority to so find. The Supreme
27 Court held that "[w]here at all possible, government must curtail speech only to the degree
28 necessary to meet the particular problem at hand, and must avoid infringing on speech that does

7

1. not pose the danger that has prompted the regulation." *Federal Election Commission v. Massachusetts Citizens for Life*, 479 U.S. 238, 265 (1986). The Ordinance applies to all committees that make expenditures of at least $1,000 annually, which covers almost all groups that want to participate in political speech in the City. The limits broadly apply to any sort of expenditure that "supports or opposes" a candidate for City office. "A court applying strict scrutiny must ensure that a compelling interest supports *each application* of a statute restricting speech." *Federal Election Commission v. Wisconsin Right to Life, Inc.,* 127 S. Ct. 2652, 2671 (2007). On the current record, the City has failed to meet its burden to show that the subject provisions are narrowly tailored to serve a compelling government interest. *See id.* at 2654 (holding that it is the government's burden to demonstrate that the subject regulation is narrowly tailored to serve a compelling government interest).

Therefore, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of their claim that Section 1.114(c) of the Ordinance facially proscribes highly protected speech and is therefore unconstitutional. In addition, the chilling effect of a constitutionally suspect campaign finance law is sufficient evidence of irreparable harm to justify the issuance of a preliminary injunction. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002) (same). An earlier iteration of the same Ordinance, only with somewhat lower contribution limitations, was enjoined by this very Court on the same basis. *See San Franciscans for Sensible Government v. Renne*, C99-2456 CW (Sept. 9, 1999, at 15-16). Defendants have failed to demonstrate that Plaintiffs here are not likely to prevail on the merits or to suffer irreparable injury in the event enforcement of the suspect Ordinance provisions are not enjoined.

Plaintiffs also satisfy the alternative test for a preliminary injunction, namely that they have raised serious questions of law and have established that the balance of hardships tips in their favor. At oral argument on this motion, Defendants conceded that the questions of law are serious and complex. The Defendants' generalized interest in enforcing its laws cannot trump

8

the public interest in protecting Plaintiffs and others similarly situated from deprivation of First Amendment rights, event for a short period of time. Therefore, Plaintiffs have raised serious questions of law and have established that the balance of hardships tips in their favor. In addition, the Court finds that Plaintiffs have no adequate remedy at law to secure their rights to speech and association guaranteed under the First Amendment.

Accordingly, the Court GRANTS Plaintiffs' motion for a preliminary injunction. Defendants Dennis J. Herrera, Kamala D. Harris, the San Francisco Ethics Commission and the City and County of San Francisco, together with their officers, agents, servants, employees, attorneys, and those person in active concert or participating with them who receive actual notice of this Order, are hereby enjoined from enforcing sections 1.114(c)(1) and 1.114(c)(2) of the Ordinance and Regulation 1.114-2 of the Regulations thereto.

This preliminary injunction shall remain in effect until dissolved by further order of this Court.

The Court GRANTS Plaintiffs' unopposed request that the Court exercise its discretion under Federal Rule of Civil Procedure 65(c) to waive the requirement that they post a bond during the pendency of this preliminary injunction. Although the Rule requires that the parties seeking injunctive relief post a bond with the Court, in "noncommercial cases, however, courts should consider the hardship a bond requirement would impose on the party seeking the injunction in addition to the expenses the enjoined party may incur as a result of the injunction." *Cupolo v. Bay Area Rapid transit*, 5 F. Supp. 2d 1078, 1086 (N.D. Cal. 1997) (citing *Elliott v. Kiesewetter,* 98 F.3d 47, 59 (3d Cir. 1996)). The Court may waive the bond requirement altogether when the "balance of equities weighs overwhelmingly in favor of the party seeking the injunction." *Id.* The Court exercises its discretion to waive the requirement for a bond.

**IT IS SO ORDERED.**

Dated: September 20, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9